## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

          Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

          Defendant.

_____/

### DEFENDANT'S ANSWER TO THE COMPLAINT, COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

Defendant CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") answers and asserts its counterclaims and affirmative defenses, with jury demand, in response to the Complaint of Plaintiff Dr. Jassin Jouria ("Dr. Jouria" or "Plaintiff"), as follows:

(For convenience and clarity, NetCE repeats the headings employed by Plaintiff in the Complaint.  NetCE does not admit or concede any allegation in the Complaint by so doing.)

### NATURE OF THE ACTION

1.      In response to Paragraph 1 of the Complaint, NetCE admits that Plaintiff is seeking declaratory judgment of non-infringement of alleged copyrights, and for non-breach of seven contracts asserted against plaintiff by NetCE.  NetCE admits that Plaintiff attached to the Complaint a copy of what appears to be a composite of one of seven contracts between NetCE and Plaintiff.  NetCE denies any other allegations against it contained in Paragraph 1.

2.      In response to Paragraph 2 of the Complaint, NetCE admits that it believes both that Plaintiff is infringing NetCE's copyrights and that Plaintiff has breached at least seven contracts related to research material and articles pertaining to continuing medical education for medical professionals.  NetCE lacks knowledge and information sufficient and/or necessary to respond to the allegation that Plaintiff "compiled" research material and wrote articles himself, and so denies these allegations.  NetCE denies any other allegations against it contained in Paragraph 2.

3.      In response to Paragraph 3 of the Complaint, NetCE admits that Plaintiff denies that he has infringed any copyrights that NetCE owns.  NetCE also admits that Plaintiff denies that he has breached contracts Plaintiff entered into with NetCE.  NetCE denies any other allegations against it contained in Paragraph 3.

## THE PARTIES

4.      In response to Paragraph 4 of the Complaint, NetCE admits that Plaintiff resides in Florida within the Southern District of Florida.  NetCE lacks information and knowledge sufficient and/or necessary to respond to the allegation that Plaintiff is a "medical doctor" or a "medical researcher," and therefore denies these allegations.  NetCE denies any other allegations against it contained in Paragraph 4.

5.      In response to Paragraph 5 of the Complaint, NetCE admits the allegations in this paragraph.

#37445078_v1

## JURISDICTION AND VENUE

6.      In response to Paragraph 6 of the Complaint, NetCE admits the allegations in this paragraph.

7.      In response to Paragraph 7 of the Complaint, NetCE admits that it is subject to specific personal jurisdiction in Florida.  NetCE lacks information and knowledge sufficient and/or necessary to deny that it "regularly" conducts business in the State of Florida and "throughout" the Southern District of Florida, and therefore denies this allegation.  NetCE denies the allegation that its assertions of copyright infringement and breach of contract were at any point or are now "false."  NetCE denies that it is subject to general personal jurisdiction in Florida.  NetCE  NetCE denies any other allegations against it contained in Paragraph 7.

8.      In response to Paragraph 8 of the Complaint, NetCE admits that venue in the Southern District of Florida is technically proper because, as NetCE admits, it is subject to specific personal jurisdiction in this judicial district.  NetCE admits that while venue in the Southern District of Florida is technically proper, the most convenient and expeditious venue for the present action is in the Eastern District of California, Sacramento Division, where an affirmative suit against Dr. Jouria and Elite Continuing Education ("Elite") for copyright infringement, breach of contract, tortious interference with contractual relations, and unfair business practices is presently pending (the "California lawsuit").  Elite is an essential party in the California lawsuit.  The California lawsuit was filed on September 4, 2015.  Also presently pending is a motion to transfer the instant case to the Eastern District of California pursuant to 28 U.S.C. § 1404 and to consolidate this case (the "Florida lawsuit") with the California litigation.  NetCE denies that it is subject to general personal jurisdiction in this judicial district.  NetCE

#37445078_v1

denies the allegation that a substantial part of the events giving rise to Plaintiff's claims have occurred in the Southern District of Florida.  NetCE denies any other allegations against it contained in Paragraph 8.

## FACTUAL BACKGROUND

9.     In response to Paragraph 9 of the Complaint, to the extent a response is required, NetCE incorporates by reference its responses to Paragraphs 1 -8.

10.     In response to Paragraph 10 of the Complaint, NetCE lacks information and knowledge sufficient and/or necessary to answer this allegation, and therefore denies all allegations in Paragraph 10.

11.     In response to Paragraph 11 of the Complaint, NetCE admits that Plaintiff entered into seven written contracts with NetCE.  NetCE denies that that Plaintiff entered into the contracts "in Florida."  NetCE admits that the terms of the contracts governed Defendant's rendering of medical research and writing services for NetCE's review and consideration for publication and that these services were directed to developing continuing medical education articles to be offered to medical professionals by NetCE.  NetCE admits that it compensated Plaintiff at the parties' agreed-upon rate.  NetCE lacks information and knowledge necessary and/or sufficient to answer the allegation that Plaintiff completed the required research and drafted articles from the research in accordance with the terms of the contracts, and therefore denies this allegation.  NetCE denies any other allegations against it contained in Paragraph 11.

12.     In response to Paragraph 12 of the Complaint, NetCE admits that it had the right, in addition to sole rights of ownership and authorship to the articles under U.S. Copyright law, to

4

edit the articles for the purpose of publishing the articles in the form of course material for continuing medical education.  NetCE denies any other allegations against it contained in Paragraph 12.

13.     In response to Paragraph 13 of the Complaint, NetCE lacks information and knowledge sufficient and/or necessary to answer the allegation that Plaintiff used the same research, and therefore denies this allegation.  NetCE denies the allegation that Plaintiff prepared "new" articles and that the new articles were substantially different from those prepared for NetCE.  Upon information and belief, NetCE admits that Plaintiff sold the articles to a third party.  NetCE denies any other allegations against it contained in Paragraph 13.

14.     In response to Paragraph 14 of the Complaint, to the extent a response is required, NetCE incorporates by reference its responses to Paragraphs 1-13.

15.     In response to Paragraph 15 of the Complaint, NetCE denies the allegation that it "threatened" Plaintiff.  NetCE admits that, on April 15, 2015, it asserted that Plaintiff infringed NetCE's copyrights in the articles written by Plaintiff pursuant to the seven agreements.  NetCE admits that it also asserted that Plaintiff breached each and all of the seven agreements.  NetCE denies the allegation that Plaintiff used the research Plaintiff conducted to write the seven articles for NetCE to write new and/or different articles; Plaintiff instead produced substantially similar articles and distributed them for profit—he did not have the legal right under U.S. Copyright Law and/or the contracts he signed with NetCE to do so.  NetCE admits that Plaintiff submitted the articles to a third party; Plaintiff did not have the legal right under U.S. Copyright Law and/or the contracts he signed with NetCE to do so.  NetCE admits that it sent Plaintiff written communication  NetCE admits that its communications to Plaintiff made Plaintiff believe that

NetCE had a valid claim and would eventually file a lawsuit against him.  NetCE denies any other allegations against it contained in Paragraph 15.

16.     In response to Paragraph 16 of the Complaint, NetCE admits this allegation.

17.     In response to Paragraph 17 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE denies the remaining allegations against it contained in Paragraph 17.

### FIRST CLAIM FOR RELIEF

### (Non-infringement of Copyright)

18.     In response to Paragraph 18 of the Complaint, NetCE incorporates by reference its responses to Paragraphs 1-17.

19.     In response to Paragraph 19 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE admits that Dr. Jouria has filed a declaratory judgment action under the United States Copyright Act, 17 U.S.C. § 101, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  NetCE admits that as of September 4, 2015, an actual justiciable controversy exists given the filing of NetCE's action in California.  NetCE denies the remaining factual allegations against it contained in Paragraph 19.

20.     In response to Paragraph 20 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE denies the remaining allegations against it contained in Paragraph 20.

#37445078_v1

## SECOND CAUSE OF ACTION

### (Non-breach of Contracts)

21.     In response to Paragraph 21 of the Complaint, NetCE incorporates by reference its responses to Paragraphs 1-17.

22.     In response to Paragraph 22 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE admits that Dr. Jouria has filed a declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 with respect to breach of contract, in federal court under supplemental jurisdiction.  NetCE denies the remaining factual allegations against it contained in Paragraph 22.

23.     In response to Paragraph 23, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE denies that Plaintiff is not in breach of the seven written contracts and denies the remaining factual allegations against NetCE contained in  Paragraph 23.

24.     NetCE denies any and all allegations in this Complaint to which it has not offered an explicit admission.

25.     WHEREFORE, NetCE prays that Plaintiff is not granted any of the relief he requested in the Complaint, or otherwise, that this Court dismiss the Complaint with prejudice and NetCE granted its costs, including but not limited to its reasonable attorneys' fees.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

*Venue and anticipatory suit*.  While venue in the Southern District of Florida is not technically improper, the most convenient, expeditious venue for the present action is in the Eastern District of California, Sacramento division, where an affirmative suit against Dr. Jouria and another party for copyright infringement, breach of contract, tortious interference with contractual relations, and unfair business practices is presently pending.  Moreover, Dr. Jouria filed this complaint knowing that there was a distinct possibility NetCE would pursue copyright infringement and breach of contract actions against him.  In other words, he filed an anticipatory suit.  Moreover, in racing NetCE to the courthouse, Dr. Jouria engaged in inequitable forum shopping.  NetCE has a pending motion to transfer and consolidate this matter to the Eastern District of California, Sacramento division, where the California lawsuit is underway.  The California lawsuit includes Elite, an essential party to the case.  Venue should be transferred to the Eastern District of California-Sacramento division.

### Second Affirmative Defense

*Failure to State Claim*.  Plaintiff has failed to state claim upon which relief may be granted.

### Third Affirmative Defense

*Unclean Hands*.  Plaintiff's purported claims against NetCE are barred by the doctrine of laches, estoppel, and/or unclean hands.

8

### Fourth Affirmative Defense

*Declaration of Ownership*.  NetCE owned the copyrights—and the full rights of reproduction, creation and manufacture, derivative works, display, distribution, sale, and performance implicated therein—to each and all of the articles Dr. Jouria produced and submitted to NetCE, as governed by all agreements Dr. Jouria executed with NetCE.  NetCE's ownership is governed by the work-for-hire doctrine as well as the explicit terms of the contracts executed between Dr. Jouria and NetCE.

### Fifth Affirmative Defense

*Enforceable copyrights*.        NetCE possesses enforceable copyrights against Dr. Jouria.

### Sixth Affirmative Defense

*Declaration of substantial similarity*.  The articles that Dr. Jouria submitted to third parties without NetCE's consent were identical or substantially similar to articles to which NetCE had ownership rights.

### Seventh Affirmative Defense

*Copyrightable subject matter*.  The material copied by Dr. Jouria and submitted to third parties without NetCE's permission was copyrightable subject matter.

### Eighth Affirmative Defense

*Derivative works.*  To the extent the works Dr. Jouria submitted to third parties without NetCE's permission are considered and/or deemed derivative works, Dr. Jouria lacked

9

the permission and/or legal right under U.S. Copyright Law and the contracts he executed with NetCE to produce derivative works of NetCE-owned articles.

### Ninth Affirmative Defense

*Not in Public Domain.*  NetCE's asserted copyrights are not in the public domain.

### Tenth Affirmative Defense

*Not Fair Use*.  Dr. Jouria's (and third parties') use of NetCE's asserted copyrights is not excused by fair use, as defined by 17 U.S.C. § 107.

### Eleventh Affirmative Defense

*No Joint Authorship*.  Dr. Jouria is not the author or joint author for the infringed works.

10

## COUNTERCLAIM

1.      NetCE has a pending motion before this court to transfer this case to the Eastern District of California, Sacramento division, and consolidate the Florida lawsuit with the pending coercive suit against Dr. Jouria and Elite in the Eastern District of California (again, the "California lawsuit").  The California lawsuit is for copyright infringement, breach of contract, tortious interference with contractual relations, and unfair business practices is presently pending.

2.      In April of 2015, shortly after NetCE discovered that Dr. Jouria had sold nearly identical articles belonging to NetCE to a third party, NetCE initiated correspondence with Dr. Jouria to attempt to rectify the egregious and infringing behavior without resorting to litigation. While stalling his responses to this communication in which NetCE was engaged in good faith, Dr. Jouria filed this anticipatory lawsuit.

3.      Because venue in the Southern District of Florida is technically proper, Counterclaims are included herein as a prophylactic measure to ensure that these claims are not forfeited.  Defendant and Counter-Plaintiff, NetCE, as and for its Counterclaim against Plaintiff and Counter-Defendant Dr. Jouria, alleges as follows:

## PARTIES

4.      Plaintiff NetCE is a California-based corporation, with its principal place of business at 1482 Stone Point Drive, Suite 120, Roseville, California, 95661.

#37445078_v1

5.      Defendant Dr. Jouria graduated medical school and has written medical education literature.  On information and belief, he is not a practicing physician.  Dr. Jouria resides in Florida.

6.      NetCE reserves the right to add Elite Continuing Education ("Elite") and any other parties NetCE discovers to which Dr. Jouria has submitted NetCE's copyrighted works without consent as counterclaim defendants in the event NetCE's motion to transfer and consolidate this case with the California lawsuit is denied.  NetCE also reserves the right to add additional causes of action as applicable that apply to these joined defendants.

7.      Defendant Elite is a business entity, with its principal place of business at 1452 North U.S. Highway 1, Suite 100, Ormond Beach, FL, 32174.  Elite is presently a critical party to the California lawsuit, but has yet to be added to the instant matter.

8.      On information and belief, non-party "NurseCE4Less" is website owned by Health Inservice, Inc., a Butte, Montana company operating in the medical continuing education and training industry.

## JURISDICTION

9.      This Court has subject matter jurisdiction over NetCE's action for copyright infringement, 17 U.S.C. § 101 *et seq*. (U.S. Copyright Act), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a), and breach of contract, tortious interference with contract relations, and a violation of California's Unfair Business Practices Statute (Cal. Bus. & Prof. Code §17200, *et seq*.) under 28 U.S.C. § 1367 (supplemental jurisdiction) and 28 U.S.C. §§ 2201 and 2202 (declaratory judgment) and the doctrines of ancillary and pendent jurisdiction.

#37445078_v1

10.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338.  The actions for breach of contract, interference with contractual relations, and unfair business practices arise from the same transaction and/or occurrence and are a part of the same case and/or controversy as the claim for copyright infringement.  Therefore, this Court has supplemental jurisdiction over this action under 28 U.S.C. § 1367.

11.     Plaintiff is subject to personal jurisdiction in Florida because he is domiciled here.

## VENUE

12.     Venue for this Counterclaim is proper within the judicial district pursuant to at least 28 U.S.C. §§ 1391 and 1400.

13.     As described above, while venue in the Southern District of Florida for Plaintiff's declaratory judgment actions is technically proper, the most convenient, expeditious venue for the present action is in the Eastern District of California, Sacramento division, where a coercive suit against Dr. Jouria and Elite Continuing Education ("Elite") for copyright infringement, breach of contract, tortious interference with contractual relations, and unfair business practices is presently pending.  A motion to transfer and consolidate this matter to the Eastern District of California, Sacramento division, pursuant to 28 U.S.C. § 1404(a), is pending.

## FACTUAL BACKGROUND

a.     **NetCE: Background, Contributing Faculty Members, and Freelance Writer Agreements**

14.     NetCE is one of the nation's leading publishers of Continuing Medical Education ("CME") articles, content, and course materials.  NetCE was founded 1991, and its target

13

customers generally are healthcare professionals, including without limitation Nurses, Physicians, Dental Professionals, Social Workers, Counselors, and Psychologists.

15.     NetCE is located in Roseville, California, and currently has 39 employees.

16.     In order to develop the CME courses and materials it offers to its customers, NetCE contracts with independent authors (referred to in NetCE's marketing materials as its "Contributing Faculty Members"), almost all of whom are licensed medical professionals, credentialed medical scholars and academics, or both.

17.     The Contributing Faculty Members who draft the CME course materials NetCE edits, markets, and publishes, do so under standard, template agreements (called "Freelance Writer Agreements"), identical---except for the name of the author, deadlines ("course completion dates"), and subject-matter areas---to the seven (7) contracts between NetCE and JOURIA at issue in this case.  Currently, NetCE is working with more than 80 Contributing Faculty Members under Freelance Writer Agreements.

18.     Under the terms of the Freelance Writer Agreements, the Contributing Faculty Members agree, among other terms, to draft and submit to NetCE for editing and publication CME articles on a specific subject, in a specific format, and by a specific deadline.  These Contributing Faculty Members also agree that the articles they submit to NetCE are "works for hire" and that all copyrights associated with these materials belong exclusively to NetCE.

19.     The type of writer-publisher arrangement described above is, in fact, quite common in the publishing industry.

20.     At present, NetCE has federally registered copyrights for more than 840 CME articles and courses, as well as the catalogs and brochures associated with the CME materials.

NetCE also has pending federal copyrights (applications on file with the U.S. Copyright Office) for an additional 27 courses/articles (including for the seven (7) courses at issue).

      **b.**    **Elite Continuing Educators**

21.    On information and belief (and according to the Better Business Bureau), Elite was founded in 1999, and maintains its principal place of business in Florida.

22.    On information and belief, Elite began offering continuing education to nurses (and thus became a direct competitor to NetCE) around 2006-2007.  Prior to this time, on information and belief, Elite published continuing education course primarily for cosmetologists.

23.    On information and belief (according to the information on its website), Elite currently offers approximately 60 CME courses for nursing professionals, including numerous courses authored by Dr. Jouria in the areas of pharmacology and internal medicine.

      **c.**    **Dr. Jasssin Jouria**

24.    On information and belief, Dr. Jouria is an M.D., who received his medical degree from Ross University School of Medicine ("RUSM").  RUSM is a private, for-profit medical school, owned and operated by DeVry Education Group and located on the Island Nation of Dominica, in the Caribbean.

25.    On information and belief, because he has not completed a residency, Dr. Jouria is not a licensed, certified, or practicing physician

26.    In early 2013, Dr. Jouria approached NetCE with a proposal to work on a series of CME courses in the areas of general medical, internal medicine, and pharmacology.

27.     At the time of Dr. Jouria's proposal, NetCE was looking to expand its course offerings in these areas in response to newly adopted CME requirements for nurses across the country, particularly in the areas of pharmacology and internal medicine.

28.     As part of its normal diligence on prospective new contributors, NetCE performed online research to ensure that Dr. Jouria was not already working with any of its competitors to market and publish CME articles.  Dr. Jouria confirmed in his discussions with NetCE that he was not working for any of NetCE's competitors.

29.     NetCE and Dr. Jouria engaged in discussions which ultimately culminated in the parties entering into ten (10) separate Freelance Writer Agreements, under which Dr. Jouria would prepare draft CME articles in agreed upon areas (hereafter referred to as "Courses"), and NetCE would provide editing, publishing, and marketing services for the Courses.

30.     Throughout 2013 and 2014, Dr. Jouria submitted drafts for each of the ten (10) Courses, and NetCE paid Dr. Jouria for each of the ten (10) Courses, pursuant to the terms of the respective Freelance Writer Agreements.

31.     Ultimately, NetCE did publish and make available for its customers three (3) of Dr. Jouria's Courses, including (a) Course #98590, entitled "Multiple Sclerosis: A Comprehensive Review," (b)  Course #98810, entitled "COPD: An Overview of Pathophysiology and Treatment," and (c) Course #4885, entitled "Pressure Ulcers: Pathogenesis and Management."  These three (3) Courses are not in dispute and are not the subject of the California lawsuit or the Florida lawsuit.

    **d.**    **The Seven (7) At-Issue Agreements**

32.     NetCE and Dr. Jouria entered into seven (7) additional Freelance Writer Agreements, which are at issue in this case.  Except for (a) the subject matter description of the

Courses, (b) the deadlines for submission of draft Courses, and (c) the compensation NetCE was to pay Dr. Jouria for each Course---these seven (7) agreements were identical in their terms.  The subject matter description of the Courses were:

1)      The Lymphatic and Immune Systems;

2)      Traumatic Brain Injury;

3)      Nonantibiotic Antimicrobial Pharmacology;

4)      Cardiovascular Pharmacology;

5)      Gastroesophageal Reflux Disease;

6)      Cancer and Chemotherapy; and

7)      Depression vs. Dementia in the Elderly.

33.     Each agreement made clear that the draft Courses were <u>entirely</u> the property of NetCE and that NetCE was the author of each Course Dr. Jouria drafted related to the subject matter of the seven (7) agreements.  NetCE retains all rights to these works.  NetCE *paid* Dr. Jouria for exclusive ownership and right of first refusal to publish the above articles.

**e.      Problems with Dr. Jouria's Credentials, Submitted Works, and Other Red Flags**

34.     After entering into the Freelance Writer Agreements, but prior to completion of the engagement, NetCE continued to collect background information relating to Dr. Jouria's credentials.  NetCE discovered that Dr. Jouria was involved in a lawsuit with the Education Commission for Foreign Medical Graduates.  This lawsuit had revealed that Dr. Jouria had submitted false letters of recommendation with his application to them.

35.     By the time NetCE uncovered the information above, it already was engaged in producing several courses with Dr. Jouria.  NetCE decided to fulfill the agreements the parties already had executed, but not to enter into additional contracts or projects with Dr. Jouria.

36.     Unfortunately, over the course of the engagement, other red flags emerged about Dr. Jouria's credentials and his truthfulness.  For instance, Dr. Jouria's resume indicated that Dr. Jouria attended medical school at Ross University in New Jersey.  Ross University is, in fact, an "off-shore" medical school in the Dominican Republic.

37.     Further, upon information and belief, although Dr. Jouria is technically an MD as he completed a medical degree, he is technically not permitted to call himself a "doctor" or a "physician," because he has not completed medical residency in the United States (which is a requirement to practice/become licensed).

38.     Moreover, when Dr. Jouria began to submit his draft work for NetCE's evaluation and revision, NetCE discovered the work had significant deficits in three major areas: medical/scientific accuracy, grammatical and stylistic errors, and plagiarism.

39.     While NetCE budgets time for significant editing of grammar, style, spelling, and structure, Dr. Jouria's submissions required more editing than was typical for these types of courses.  NetCE came to believe that Dr. Jouria copied sections of his submissions from a variety of different sources.

40.     Dr. Jouria's works were littered with plagiarized content.  NetCE utilized a plagiarism detection program called "iThenticate" to identify areas that were copied (in essence or exactly) and then removed offending passages, and in some cases obtained the original author's permission to reprint them, prior to getting the works ready for publication.  iThenticate revealed that the tables of information Dr. Jouria included with his submissions were almost always copied from original sources with no indication as to their author or source and never with permission to reprint.

41.     NetCE expended a significant amount of time and effort locating the original sources for each of these tables, requesting permission to reprint the tables and paying reprinting fees to the copyright holder to do so.

42.     NetCE conducted extensive literature reviews and appraisal of available guidelines in order to ensure that every submission was supported by evidence-based literature and in keeping with prevailing professional guidelines regarding scientific and medical accuracy. In particular, NetCE's in-house Physician Division Planner, Dr. John Leonard, completed extensive revisions of the courses NetCE published.

43.     At the time NetCE discovered Dr. Jouria's relationship with Elite, two of the NetCE courses--Gastroesophageal Reflux Disease and Cancer and Chemotherapy--were close to publication, with an estimated release date of March 1, 2015. The remaining five courses required significant editorial work, but were tentatively scheduled to be completed and released sometime in 2015.

44.     The Gastroesophageal Reflux Disease and Cancer and Chemotherapy courses were close enough to publication that NetCE had paid for permission to reprint tables from the original copyright holders. (These tables appear in the Elite courses without attribution or permission.)

45.     NetCE paid an independently contracted editor a large sum to make significant improvements and substantive edits to the Cancer and Chemotherapy course.

46.     The substantial amount of time spent by NetCE editorial staff developing the courses and related proposal not only cost NetCE money but diverted time and resources from other, viable projects.

19

47.     Physical resources, such as licensed programs, were expended upon editing Dr. Jouria's ultimately unusable projects.

48.     Dr. Jouria's publication with Elite prevented NetCE from featuring Dr. Jouria's courses in NetCE's direct mailings.

49.     Because NetCE is unable to use the content Dr. Jouria submitted, Dr. Jouria's actions and publication with Elite set NetCE behind its competitors in offering courses in the above-described topics.

50.     Lastly, upon information and belief, sales of Dr. Jouria's prior courses with NetCE may be depressed due to the high profile character of his relationship with Elite and customer confusion as to source.

      **f.**     **NetCE's Copyrights are Infringed Through Publication with Elite**

51.     In early April 2015, NetCE discovered that Dr. Jouria had materially breached seven (7) of the Freelance Writer Agreements, by publishing seven (7) articles (which he previously had submitted to NetCE) through one of NetCE's competitors, Elite.

52.     These articles all fell within the subject matter areas of pharmacology and internal medicine----areas in which Elite, one of NetCE's chief competitors, had not previously published in a significant manner.

53.     In fact, upon information and belief, Elite presently offers no other pharmacology courses aside from ones authored by Dr. Jouria.

54.     Moreover, the majority of Elite's internal medicine and general medicine courses also are authored by Dr. Jouria.

55.     In sum, Dr. Jouria's collaboration with Elite on the seven (7) course at-issue in the case represent a new and significant foray by Elite into an expansion of  its CME offerings.

56.     By publishing articles through Elite relating to the above-identified topics, Dr.

Jouria materially breached the terms of the various Freelance Writer Agreements he signed with

NetCE, including, without limitation, the following provisions: (1) §5(d) ("Writer will submit the

Article to any other party for publication unless and until [NetCE] expressly rejects the Article . .

..") and (2) §9 ( "Writer hereby understands and agrees that all articles approved for publication

by [NetCE] under this agreement shall belong exclusively to [NetCE] . . ." and . . ."Writer agrees

that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made

for hire' under all relevant copyright laws, and [NetCE] shall be deemed to be the author thereof

. . ..").

### g.     NetCE's Copyrights are Infringed Through Publication with NurseCE4Less

57.     In August of 2015, NetCE discovered that Dr. Jouria had committed additional

bad acts, this time with a NetCE competitor called "NurseCE4Less."

58.     On information and belief, NurseCE4Less is a website owned by Health

Inservice, Inc., a Butte, Montana corporation operating in the medical continuing education and

training industry.

59.     Dr. Jouria's publication through NursesCE4Less constitutes a material breach of

same provisions of four (4) of the Freelance Writer Agreements, as well an infringement of

NetCE's copyrights in those 4 works.

60.     Dr. Jouria had published substantially similar versions of articles owned by

NetCE with a company called NurseCE4Less: "Traumatic Brain Injury," "Nonantibiotic

Antimicrobial Pharmacology," "Cardiovascular Pharmacology," and "The Lymphatic and

Immune Systems."

61.     For NurseCE4Less, Dr. Jouria submitted paraphrased versions of NetCE courses "Nonantibiotic Antimicrobial Pharmacology" and "Cardiovascular Pharmacology" as "Antibiotic and Antimicrobial Pharmacology" in four (4) parts and "Cardiovascular Pharmacology" in three (3) parts.  Some elements (tables and language) are reworked or removed in these infringing NurseCE4Less publications, but the outline and stated learning objectives are identical to the copyrighted NetCE courses.  This constitutes substantial similarity.

62.     In breach of the pertinent Freelance Writer Agreements, Dr. Jouria also submitted articles titled "Lymph Nodes & Cancer" in two (2) parts and "Trauma Series: Head Trauma" to NurseCE4Less.  These two articles copy significant sections from NetCE articles "The Lymphatic and Immune Systems" and "Traumatic Brain Injury," respectively.  This, too, constitutes substantial similarity.

63.     By publishing articles through the NurseCE4Less website, which are based and relate to the above-identified topics, Dr. Jouria has infringed on NetCE's copyrights and materially breached the terms of the various Freelance Writer Agreements he signed with NetCE, including, without limitation, the following provisions: (1) §5(d) ("Writer will submit the Article to any other party for publication unless and until [NetCE] expressly rejects the Article . . ..") and (2) §9 ( "Writer hereby understands and agrees that all articles approved for publication by [NetCE] under this agreement shall belong exclusively to [NetCE] . . ." and . . ."Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and [NetCE] shall be deemed to be the author thereof . . ..").

64.     Upon information and belief, NurseCE4Less published these articles throughout 2014 and 2015.  Each of these articles was available for sale on the NurseCE4Less website.

22

Upon information and belief, NurseCE4Less has begun the process of removing these articles from availability for purchase.

### h.      Filing of Lawsuit in Southern District of Florida

65.      Beginning in April of 2015, when NetCE discovered that Dr. Jouria had infringed its copyrights and breached the seven (7) agreements, NetCE began communicating in writing to Dr. Jouria.

66.      The first letter itemized the contracts and courses at issue, reminded Dr. Jouria that NetCE had paid him for exclusive ownership and right of first refusal to publish the articles, and advised Dr. Jouria that he was infringing NetCE's copyrights and breaching the seven (7) contracts.  The letter demanded that Dr. Jouria cease his behavior and act to have the offending courses removed from availability through Elite.  The letter also demanded monetary compensation and included a litigation hold notice, among other things.

67.      Dr. Jouria  and his attorney communicated with NetCE via email, giving every indication that Dr. Jouria wished to resolve the conflict without resorting to the court.  NetCE proceeded forward in good faith, hoping to work out a resolution.

68.      Yet, Dr. Jouria and his attorney acted duplicitously—on the surface convincing NetCE that Dr. Jouria was conciliatory, but in actuality stalling NetCE from filing its complaint in order to give Dr. Jouria an opportunity to file *his* complaint, the Florida lawsuit, first, beating NetCE to court, and securing what he viewed as a more preferable venue for himself (otherwise known as "forum shopping").

69.      When NetCE realized Dr. Jouria and his attorney were stalling, NetCE finalized its complaint and filed it in the Eastern District of California on September 4, 2015.

70.     NetCE's complaint is for breach of contract, copyright infringement, unfair competition, and tortious interference with contract against Dr. Jouria and against Elite.

71.     Dr. Jouria did not serve NetCE with the complaint in this matter until September 15, 2015, further indication of Dr. Jouria's stalling tactics, as he waited until nearly the end of the permissible 120-day period to effect service.

## CLAIMS FOR RELIEF

### CLAIM ONE: COPYRIGHT INFRINGEMENT

72.     NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1-71 of its counterclaims as if fully set forth herein.

73.     Each of the articles Dr. Jouria submitted to NetCE pursuant to the Contracts is either registered with the United States Copyright office or is the subject of a completed application for copyright registration with the same.

74.     Pursuant to the terms of the Contracts and the work for hire doctrine, NetCE is the sole author and lawful owner of the copyright for the articles Dr. Jouria submitted to NetCE.  As such NetCE has the exclusive right to copy, reproduce, and distribute copies of the articles or derivative works thereof.

75.     Neither Elite nor Dr. Jouria nor NurseCE4Less obtained permission from NetCE to republish, reissue, resubmit, or otherwise license the articles, identical versions of the articles, substantially similar versions of the articles, or derivative works of the articles covered by the Contracts.

76.     Dr. Jouria infringed NetCE's copyrights by resubmitted the articles covered by the Contracts to Elite and NurseCE4Less for further publication.  Elite and NurseCE4Less

24

infringed NetCE's copyrights by publishing the articles Dr. Jouria submitted to NetCE pursuant to the terms of the Contracts.

## CLAIM TWO: BREACH OF CONTRACT

77.     NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1-71 of its counterclaims as if fully set forth herein.

78.     Dr. Jouria entered into seven valid and enforceable written contracts with NetCE (the "Contracts").

79.     The Contracts each expressly stated that the articles NetCE approved for publication belonged exclusively to NetCE.  In each of the Contracts, Dr. Jouria explicitly agreed that each submitted article was a work for hire under U.S. Copyright law and that NetCE was the author of each of these works.

80.     In each of the Contracts, Dr. Jouria expressly represented that the articles he submitted to NetCE were original works, were not obtained unlawfully or owned by any third party, had not been submitted by him to any other party for publication, had not been previously published, would not violate any intellectual property right of any third party, and that he would not submit any article "to any other party for publication unless and until [NetCE] expressly reject[ed]" the article.

81.     Each of the seven Contracts names a specific subject for which NetCE agreed to accept content.

82.     NetCE agreed to publish each of the articles Dr. Jouria submitted regarding the approved seven subjects.  NetCE never "expressly reject[ed]" any of these articles.

83.     Dr. Jouria breached his obligations under the Contracts by submitting articles to NetCE pursuant to the terms of the Contracts and, without an explicit rejection for NetCE selling identical or substantially similar articles to Elite and to NurseCE4Less.

84.     NetCE performed all of its obligations under the Contracts.

85.     As a result of these breaches, NetCE has been damaged in an amount to be proven at trial.

### CLAIM THREE : UNFAIR BUSINESS PRACTICES UNDER
### CALIFORNIA BUSINESS & PROFESSIONAL CODE, code § 17200 *et seq*

86.     NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1-71 of its counterclaims as if fully set forth herein.

87.     A business practice or act is "unfair" under California Business and Professions Code § 17200 *et seq.* if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm.

88.     Dr. Jouria has engaged in unlawful, unfair, and fraudulent business acts.  Dr. Jouria read and signed each of the Contracts.  Dr. Jouria submitted articles to NetCE corresponding to the subject matter NetCE approved in the Contracts.  Dr. Jouria was aware that NetCE employees spent a great deal of time fact- and source-checking, editing, and re-organizing the articles.  In flagrant disregard of the terms of the Contracts and NetCE's efforts, Dr. Jouria submitted identical or substantially similar articles to one of NetCE's primary competitors.  Dr. Jouria's actions deprived NetCE completely of the fruits of NetCE's efforts.

89.     Dr. Jouria knew the actions described above were improper.

26

90.     Upon information and belief, Elite was aware of the Contracts and was aware that Dr. Jouria had submitted articles pursuant to the Contracts to NetCE and that NetCE had edited, refined, and finalized the articles Dr. Jouria eventually submitted to Elite.  Upon information and belief, Elite did not require Dr. Jouria to make any representations or warranties that selling articles to Elite would not violate the intellectual property rights of any third party.  Elite accepted the articles Dr. Jouria submitted and published them with minimal, if any, editing or revision.

91.     Defendants' actions discussed herein constitute unfair competition within the meaning of California Business and Professions Code § 17200 *et seq.*

92.     NetCE at all times has acted with the utmost good faith.

93.     As a proximate result of Defendants' actions, consumers were erroneously led to believe that material Elite and Dr. Jouria (and Elite and NurseCE4Less) published together was a product the Defendants had crafted together and that Elite had vetted.

94.     As a direct and proximate result of Defendants' actions, NetCE has suffered and will continue to suffer lost profits in an amount to be proven at trial.

95.     NetCE is entitled to preliminary and permanent injunctive relief that orders Defendants to cease this unfair competition and disgorge any profits associated with unfair competition.

## **REQUEST FOR A JURY TRIAL**

96.     NetCE requests a jury trial of all issues in this action so triable.

27

## PRAYER FOR RELIEF

WHEREFORE, NetCE prays for judgment against Defendant as follows:

1.      For entry of judgment against Defendant on all Claims for Relief;

2.      Pursuant to this Court's equity powers and 28 U.S.C. § 2202, for an injunction permanently requiring Dr. Jouria and all persons or entities acting in concert with him or at his behest to refrain from independently publishing, reproducing, distributing, or placing in the market the copyrighted works of NetCE or any derivative work thereof and permanently requiring Elite to (a) refrain from publishing, reproducing, distributing, or placing in the market the copyrighted works of NetCE or any derivative work thereof and to (b) destroy any existing unauthorized reproductions or disseminations of the copyrighted works of NetCE;

3.      Pursuant to this Court's equity powers and 28 U.S.C. § 2202, for an injunction requiring Dr. Jouria to return any copies of NetCE copyrighted material or any derivative work thereof unlawful obtained, reproduced, or copied and to fully disclose, under penalty of perjury, the names and whereabouts of all persons to whom, and entities to which, such information has been further distributed by them;

4.      Pursuant to this Court's equity powers and 28 U.S.C. § 2202 for an order providing for the impoundment, destruction, or other reasonable disposition of all complete or partial copies of the copyrightable protected material in the possession or control of Dr. Jouria, and a complete disclosure of the location of any such copies;

5.      For compensatory and actual damages in an amount according to proof;

6.      For an award of exemplary damages;

7.      For an award of punitive damages;

8.      For an award reflecting the amount by which Defendants have been unjustly enriched;

9.      For costs of suit and reasonable attorneys' fees incurred in the course of this litigation;

#37445078_v1

10.   For an award of statutory damages;

11.   For post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

12.   For pre-judgment interest, at the maximum rate allowed by U.S. Copyright Law; and

13.   For such other relief as the Court deems just and proper.

## **RESERVATION OF RIGHTS**

14.   NetCE reserves the right to amend its Answer or to amend or add further affirmative defenses and/or claims.

15.   Out of respect for this court's time and in the interests of judicial efficiency, NetCE has not joined Elite to the Florida litigation.  NetCE believes its pending motion to transfer and consolidate (referenced throughout this document) will be granted, thereby negating the need to join Elite, and causes of action specific to Elite, in the Florida lawsuit.  In the event this court denies NetCE's motion to transfer and consolidate, NetCE reserves the rights to add additional parties to this counter-complaint and to add additional causes of action as applicable to any joined parties.

Dated: October 6, 2015

HOLLAND & KNIGHT LLP

*/s/ Philip E. Rothschild*

Philip E. Rothschild
Florida Bar No. 0088536
Email:  phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone:   (954)525-1000
Facsimile:   (954)463-2030

John P. Kern, Esq. (pro hac vice pending)

Email:  john.kern@hklaw.com
Jessica E. Lanier, Esq. (pro hac vice pending)
Email:  Jessica.Lanier@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone:   (415)743-6918
Facsimile:   (415)743-6910

*Attorneys for CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail and electronic mail on October 6, 2015 on all counsel or parties of record on the Service List below.

/s/ Philip E. Rothschild
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
4801 S. University Drive
Suite 237
Fort Lauderdale, FL 33328
Email:  prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*
**[VIA E-MAIL]**

30

#37445078_v1