UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

        Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant.

_____/

**MOTION TO DISMISS, TRANSFER OR STAY THIS ACTION WITH INCORPORATED MEMORANDUM OF LAW**

Defendant CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE"), through undersigned counsel, hereby moves to dismiss, transfer or stay the present action. Dismissal is appropriate as this action is merely an anticipatory action for declaratory relief. In the alternative, the Court should transfer the action to the Eastern District of California, Sacramento Division, pursuant to 28 U.S.C. §1404, or stay this action in favor of the copyright infringement action filed by NetCE against Plaintiff Dr. Jassin Jouria ("Plaintiff") in California.

**INTRODUCTION**

While the parties were engaged in settlement negotiations, Plaintiff rushed to file, but not serve, the instant action seeking only declaratory relief regarding his infringement of several copyrights owned by NetCE. This Court should not reward this behavior and dismiss this action as a mere anticipatory action for declaratory relief, as NetCE has commenced an affirmative action against Plaintiff for copyright infringement in the Eastern District of California. In the alternative, the Court should transfer this action to the Eastern District of California as the

relevant factors under § 1404 support transfer for consolidation with the action pending in that court.

## FACTS

"NetCE" is a company specializing in commissioning and publishing continuing medical education ("CME") courses for a variety of medical professionals in many subjects. NetCE's principal (and only) place of business in Roseville, California, where all of its 39 employees are located.

NetCE first began working with Dr. Jouria in early 2013, when Dr. Jouria pitched a series of courses to NetCE in the areas of general medicine, internal medicine, and pharmacology. NetCE and Dr. Jouria engaged in discussions which culminated in the parties entering into ten standard template agreements ("Freelance Writer Agreements"), under which Dr. Jouria would draft CME articles in agreed-upon areas.[1] NetCE would provide extensive editing, publishing, and marketing services for the Courses. Each of the Freelance Writer Agreements states that NetCE owns all copyrights associated with the materials, that NetCE was the author of the materials under the "work for hire" doctrine, that NetCE had fully leeway to edit and revise submissions, that Dr. Jouria reserves the rights to the articles only in the event of NetCE's explicit refusal of the tendered product, and that California law governs the agreements. (Sample Freelance Writing Agreement attached as Exhibit 1 to the Complaint in the above-captioned matter, *see* §§ 5, 9, 10). NetCE spent significant time addressing the considerable deficits in Dr. Jouria's submissions, including plagiarism, grammar style, spelling, and structure.

---

[1] The Freelance Writer Agreements Dr. Jouria signed are identical to agreements signed by other independent contributors, save details specific to the project (author, name, topic, deadline, etc.).

2

#37445436_v1

Unbeknownst to NetCE, Dr. Jouria submitted seven articles—the property of NetCE under the terms of the agreements—to one of NetCE's primary competitors, Elite Continuing Educators ("Elite"), breaching the contracts and infringing the copyright in the works. NetCE discovered Dr. Jouria's material breach and infringement in early April of 2015.

Immediately upon discovering these bad acts, NetCE sent a cease and desist letter to Dr. Jouria, dated April 9, 2015. *See* Declaration of John Kern in Support of Defendant's Motion to Dismiss, Transfer, or Stay ("Kern Decl."), at ¶2, **Exhibit A**. The letter recounts the pertinent contracts and binding provisions and makes several demands of Dr. Jouria, including that he cease publication and distribution and that he provide an accounting of his profits from his infringing activity. The letter concludes thus:

> If you satisfy the conditions set forth above by the listed deadlines, NetCE will enter into a settlement agreement with you releasing you from any additional claims arising from the at-issue Freelance Writer Agreements. If you fail to comply with NetCE's demands within the listed time periods, we will use your failure to comply as further evidence of "willful infringement" and pursue all available legal remedies.

Dr. Jouria responded through his attorney. NetCE and Dr. Jouria's attorney engaged in communication regarding this matter over email and by phone. *See* Kern Decl., at ¶3, **Exhibit B**. At first, NetCE believed that Dr. Jouria was at the very least somewhat conciliatory and that a settlement agreement was at least possible, if not probable. *Id.* After some weeks of intransigence, and Dr. Jouria's attorney's delayed responses to NetCE's entreaties (including a missed deadline for a written response), NetCE determined that Dr. Jouria was stalling in order to stave off a lawsuit. *Id.* This, in conjunction with NetCE's discovery in August of 2015 of Dr. Jouria's additional infringement and material breaches in selling four additional NetCE articles

3

#37445436_v1

to a CME company called "NurseCE4Less," NetCE began preparing its complaint to be filed in the Eastern District of California where its place of business is located ("California lawsuit").

Again, unbeknownst to NetCE (and while NetCE and Dr. Jouria's attorney were *still* communicating), Dr. Jouria had filed the present lawsuit ("Florida lawsuit"), in June of 2015. Dr. Jouria did not serve NetCE in this matter until September 15, 2015. NetCE, meanwhile, filed the California lawsuit on September 4, 2015. NetCE made several attempts to serve Dr. Jouria before succeeding. Dr. Jouria's attorney refused to accept service for Dr. Jouria. Moreover, upon information and belief, Dr. Jouria was avoiding process servers at his home. Therefore, NetCE was unable to serve Dr. Jouria until September 22.

## ARGUMENT

**A.      This Court Should Dismiss Plaintiff's Complaint As An Anticipatory Suit**

The Supreme Court repeatedly has recognized that a district court has discretionary power to exercise (or to refrain from exercising) declaratory relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995); U.S.C. § 2201 ("[A]ny court of the United States, upon filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added). In the Eleventh Circuit, as in other circuits, the court weighs a number of factors when determining whether to accept declaratory judgment jurisdiction, including whether the declaratory judgment action exhibits bad faith negotiation, forum shopping, constitutes an anticipatory lawsuit, or a pending action would provide more complete relief. *See Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (dismissing first-filed declaratory judgment action in favor of second-filed suit). Courts also consider similar factors when determining whether "compelling circumstances" exist, the required determination when dismissing a first-filed case in favor of the second-filed. *AT&T*

*Intellectual Property II v. AioTV, Inc.*, 2014 WL 4052803, at *4 (N.D. Ga. Aug. 13, 2014) (disregarding first-filed rule and declining to exercise declaratory judgment jurisdiction where "compelling circumstances" found to exist).

In the instant matter, of course, declining to hear declaratory judgment and/or dismissing this case in favor of the California lawsuit is appropriate for a host of reasons: the Florida lawsuit is anticipatory; Dr. Jouria has demonstrated bad faith; the relevant underlying agreement contains a California choice-of-law clause; Dr. Jouria is guilty of forum-shopping; and the California lawsuit, which involves an additional party and additional claims for relief) would provide a more fulsome relief to this controversy.

1. <u>The Florida Lawsuit Is An Anticipatory Lawsuit; Dr. Jouria Acted With Bad Faith; and Dr. Jouria Is Guilty of Forum Shopping</u>

An anticipatory lawsuit is one filed when one party has concrete, specific notice of imminent litigation and pre-emptively files a lawsuit in his home forum. *Chabon Wellness LLC v. Sundesa, LLC*, Case no. 15-cv-21497, 2015 WL 4538804 at *2 (S.D. Fla. July 27, 2015) (dismissing complaint where first-filed suit deemed anticipatory); *Z-Line Designs, Inc. v. Bell'O International LLC*, 218 F.R.D. 663, 667 (N.D. Cal. 2003) (granting motion to dismiss where "declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first"); *NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 645 (D. Or.1994) (declining to apply first-filed rule where "the party seeking declaratory judgment unfairly took advantage of the other in a race to the courthouse."); *Vital Pharmaceuticals, Inc. v. Cytosport, Inc.*, No. 08-61753, 2009 WL 302277, at *3-4 (S.D. Fla. Feb. 9, 2009) (dismissing first-filed claim where parties had multiple

conversations regarding trademark infringement and plaintiff made gave appearance of trying to resolve the matter amicably).

In almost every case where a court either declines to exercise declaratory judgment jurisdiction or dismisses a case because of anticipatory suit "compelling circumstances" or other equitable reasons, the facts are tellingly similar to those here. In *Z-Line Designs*, for example, following the defendant's sending a cease and desist letter regarding copyright infringement, the parties entered into settlement discussions. The defendant granted the plaintiff an extension to respond to its settlement demands. During that time, the plaintiff filed the declaratory judgment action. *Z-Line Designs*, 218 F.R.D. at 665-668 (dismissing the complaint: first-filed suit anticipatory). This is precisely what has occurred in this case. Importantly, the court in *Z-Line* noted that the cease and desist letter requested information regarding damages, a request to stop sales, alluded to litigation, and made a clear statement of its intent to enforce the defendant's intellectual property rights. *Id.* at 665-67. Each of these components is glaringly explicit in the cease and desist letter sent to Dr. Jouria in April of 2015.[2] *See* Kern Decl. at ¶2, **Ex. A**.

*Z-Line* is not an aberration. Rather, there is a veritable army of cases—in all circuits—with strikingly similar facts. *See, e.g., Chabon Wellness*, 2015 WL 4538804, at *2-3 (anticipatory lawsuit found where cease and desist letter explicitly stated defendant would pursue all legal remedies available if the parties failed to resolve the conflict within a set period of

---

[2] Dr. Jouria cannot credibly claim he was **not** keenly aware of the possibility of imminent litigation. Dr. Jouria admits in his Complaint that NetCE "threatened litigation" for breach of contract and copyright infringement in April 15, 2015 correspondence, and that the letter "clearly and unambiguously articulated [NetCE's] intent to commence litigation to enforce [its] purported intellectual property and contractual rights." Complaint at Para. 15.

#37445436_v1

time); *Internet Transaction Solutions, Inc. v. Intel Corp.*, No. 2:06-cv-035, 2006 WL 1281654, at *1 (S.D. Ohio May 8, 2006) (dismissing first-filed complaint in favor of allowing coercive suit in second-filed district); *AT&T Intellectual*, 2014 WL 4052803, at *3-4 ("compelling circumstances" exist where defendant's counsel sent two cease and desist letters, plaintiff and defendant discussed settlement, and defendant was made to believe that parties had reached brief informal standstill while plaintiff considered its position; dismissing complaint for declaratory judgment); *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006) (dismissing trademark infringement suit as anticipatory); *Aeroflex USA, Inc. v. Armacell Enter. GmbH*, No. 3:13-cv-485-TAV-CCS, 2014 WL 652912, at *2-6 (E.D. Tenn. Feb. 20, 2014) (later filed "coercive" action a better or more effective remedy than first-filed action for declaratory judgment); *Foundations Worldwide, Inc. v. Oliver & Tate Enterprises, Inc.*, No. 1:13-cv-506, 2013 WL 4054636, at *4-6 (N.D. Ohio Aug. 12, 2013); *Vital Pharmaceuticals, Inc. v. Cytosport, Inc.*, No. 08-61753-civ, 2009 WL 302277, at *4 (S.D. Fla. Feb. 9, 2009).

Like the plaintiffs in these cases, Dr. Jouria and his attorney led NetCE to believe Dr. Jouria wanted to settle, and they stalled, generating additional time to file the Florida lawsuit in an effort to secure a more convenient and favorable forum for him.  The Florida lawsuit is, plainly, an anticipatory lawsuit, and Dr. Jouria's conduct constitutes forum-shopping.  *Soroka v. Lee Technologies Servs., Inc.*, No. CIV.A.1:06CV0710-TWT, 2006 WL 1734277, at *4 (N.D. Ga. June 19, 2006); *Z-Line Designs*, 218 F.R.D. at 665; *Vital Pharmaceuticals, Inc.*, 2009 WL 302277.

Dr. Jouria and his attorney, as discussed above, waited more than three months after filing the Florida lawsuit to serve NetCE's registered agent.  *See* Kern Decl, ¶7.  The fact that Dr. Jouria and his attorney made no effort for over 90 days, notwithstanding that NetCE has a

7

#37445436_v1

remarkably easy-to-find registered agent for service of process, suggests disingenuousness and bad faith.  Given Dr. Jouria's other behavior, the only conclusion to be drawn from this (and from the fact that Dr. Jouria and his attorney contrived to avoid accepting service of the California lawsuit), is that Dr. Jouria acted again to hijack NetCE's coercive suit, thinking that only after receiving service in the Florida lawsuit would NetCE begin to draft a competing complaint or, in the alternative, be resigned to litigating in a venue with minimal if any connection to the events at hand.  *Vital Pharmaceuticals, Inc.*, 2009 WL 302277, at *4 (delayed service of complaint and postponing accepting service an indicator of bad faith).  Dr. Jouria filed an anticipatory law suit, forum-shopped, and acted in bad faith.  This case should be dismissed.

      2.      <u>California Lawsuit Provides More Fulsome Resolution to the Controversy And Preserves Natural Plaintiff</u>

Under Florida law, where additional causes of action are at issue in the second filed complaint, the first-filed complaint cannot make a full disposition of the issues.  *See Internet Transaction Solutions*, 2006 WL 1281654, at *1  (first-filed declaratory judgment complaint would not make full disposition where the after-filed "coercive" complaint included additional claims; "usefulness" of declaratory judgment is "significantly curtailed once a subsequent coercive suit is filed.").  Moreover, where the second-filed action is for infringement, the second-filed case is by default a more appropriate vehicle to resolve the controversy.  *Xoxide*, 448 F. Supp. 2d at 1192-93 (internal citations and quotations omitted).

Here, any declaratory judgment rulings on the merits in the Florida lawsuit would fall far short of settling the present controversy.  In addition to allegations of copyright infringement and breach of contract, the California lawsuit makes out a claim for unfair competition against Dr. Jouria under California's Unfair Business Practices statute, and it joins Elite as a co-defendant

8

for the copyright infringement and unfair competition claims.  The California lawsuit also asserts a cause of action of tortious interference of prospective economic advantage under California law against Elite for its encouragement and facilitation of Dr. Jouria's infringing and tortious behavior.

The California lawsuit, too, preserves NetCE's rightful place as the natural plaintiff. *Vital Pharmaceuticals, Inc.*, 2009 WL 302277, at *5 (preserving natural plaintiff is an important consideration).[3]  As NetCE owns the copyrights at issue in this matter *and* NetCE was wronged by Dr. Jouria's breach of seven contracts, Dr. Jouria's declaratory judgment action has subverted the natural plaintiff in this matter and therefore should be dismissed.  It is therefore perfectly within this Court's discretion to decline to hear this case under the Declaratory Judgment Act and/or to dismiss this first-filed anticipatory suit in favor of the second-filed coercive suit for copyright infringement, breach of contract, and other California state torts.

B.  **Alternatively, This Court Should Transfer This Action to the Eastern District of California**

In the alternative, pursuant to 28 U.S.C. § 1404, this Court should transfer this action to the Eastern District of California and suggest consolidation of the Florida lawsuit with the California lawsuit pending there.  *See Soroka*, 2006 WL 1734277, at *1-4.  A district court may transfer "any civil action to any other district or division where it might have been brought" "for the convenience of parties and witnesses and in the interests of justice." 28 U.S.C. § 1404.  An action "might have been brought" in the transferee court if that court has personal jurisdiction

---

[3] In copyright infringement matters—or, for that matter, any intellectual property infringement matters—the natural plaintiff is the party who owns the intellectual property at issue.  *See id.; Xoxide*, 448 F.Supp. 2d at 1192-93.  In breach of contract actions, the true plaintiff is the party to the dispute asserting affirmative violations of the contract.  *See Lockheed Martin Corp. v. L-3 Commc'ns Corp.*, 405 F. Supp. 2d 1381, 1383 (N.D. Ga. 2005).

9

#37445436_v1

over the party, subject matter jurisdiction over the claims, and would be a proper venue if the claims had originally been brought in that court. *Meterlogic, Inc. v. Copier Solutions, Inc.,* 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002). If this threshold requirement is satisfied, the court looks next at whether convenience of parties and witnesses and interests of justice favor transfer. *Id.* at 1298-1301.

Where, as here, there are competing parallel litigations, the Eleventh Circuit generally gives priority to the first-filed actions. *Vital Pharmaceuticals*, 2009 WL 302277, at *2-3. Yet, it is appropriate to depart from the general rule when the balance of convenience tips in favor of the second forum or there are special circumstances justifying prioritizing the second action. *Id.* One such "compelling circumstance" is where the plaintiff in the first-filed action has filed an anticipatory declaratory judgment action in his home forum. *Id.*[4]

1. Dr. Jouria Could Have Brought This Action in the Eastern District of California

Without a doubt, this case "might have been brought" by Dr. Jouria in the Eastern District of California. The Eastern District, as a federal court, has original subject matter jurisdiction over copyright matters and over declaratory judgment actions. 17 U.S.C. § 101 *et seq.*; 35 U.S.C. §§ 1331, 1338; *See Meterlogic, Inc.,* 185 F. Supp. 2d at 1299. The Eastern District of California has supplemental jurisdiction over the breach of contract action because the action for breach arises from the same transaction and/or occurrence and is part of the same case and/or controversy as the copyright declaratory judgment issue. 28 U.S.C. § 1367. NetCE is subject to personal jurisdiction in California because it is headquartered there and conducts all of its business from California. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 760, 187 L. Ed. 2d 624

---

[4] It is also important to note that even where "compelling circumstances" are present, a court is not required to abandon the first-filed rule. It is a matter of discretion. *Id.*

(2014).  Dr. Jouria is also subject to personal jurisdiction in California because he voluntarily entered into a business relationship and contracts with a California-based company and because he executed a contract with the explicit provision that the contract would be governed by California law.  *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (specific personal jurisdiction in contract case where transaction consummated in a forum, including executing a contract).

Finally, venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) because NetCE's principal place of business is Roseville, California, in the Eastern District, and a substantial part of the events giving rise to the claims occurred within the Eastern District: the copyrights at issue belonged to NetCE; the contracts giving rise to the business relationship between NetCE and Dr. Jouria were negotiated, executed, and kept at NetCE headquarters; and editing, re-writing, workshopping, vetting, approval and publication of the CME articles took place at NetCE's headquarters.

### 2. Private Interest Factors Weigh Strongly In Favor of Transfer

Given that the Eastern District of California is a court where the action might have been brought, this Court should consider whether convenience and the interests of justice favor transfer, considering so-called private interest and public interest factors.  These factors include: (1) convenience of the parties; (2) convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to secure the presence of unwilling witnesses; (5) the cost of obtaining the presence of witnesses; and (6) the public interest. *Cellularvision Tech. & Telecommunications, L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (internal citations omitted).

11

#37445436_v1

        a.        Under These Facts, Dr. Jouria's Choice of Forum Deserves Little Weight

In ordinary circumstances, the plaintiff's choice of forum is afforded considerable deference. *Id.* Where, however, the plaintiff has acted in bad faith, or had engaged in forum shopping, plaintiff's choice of forum gets much less deference. *See Thermal Technologies, Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1379 (S.D. Fla. 2003). An anticipatory lawsuit is a clear red flag of forum shopping. *See Sorkora*, 2006 WL 1734277, at *3 (transferring first-filed declaratory and injunctive relief suit to venue where second-filed coercive suit pending).

As discussed above, Dr. Jouria's Florida lawsuit is an anticipatory lawsuit, bearing all the hallmarks of a surreptitious sprint to the courthouse to secure his preferred venue. Accordingly, his choice of forum should be accorded no consideration. This factor weighs in favor of transfer.

        b.        The Convenience of the Parties and Witnesses, Relative Costs of Litigation, and Connection to Venue Strongly Favor Transfer

The convenience of both party and non-party witnesses is likely the single most important factor in the analysis of whether to grant transfer to another venue. *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1264 (S.D. Fla. 2013) (citation omitted). Transfer to the Eastern District of California would serve this interest.

First, the overwhelming majority of evidence in this case is located in California. *See* Declaration of Sarah Campbell in Support of Defendant's Motion to Dismiss, Transfer, or Stay ("Campbell Decl."). All documents and witnesses with knowledge pertinent to the principal issues of infringement, contractual negotiations, contractual executions, Dr. Jouria's submissions of CME articles, and the process of making such articles suitable for publication and sale are located at NetCE's place of business in Roseville, California. *Id.* Sarah Campbell, the Director

of Development for NetCE; Erin K. Meinyer, the Executive Director of NetCE; and other NetCE employees, including course editors and fact-checkers, are all located in Roseville, California and are all necessary witnesses for NetCE's case. *Id.* NetCE would also call a representative from iThenticate (the plagiarism software NetCE employs); this company is located in Oakland, California. *Id.* All NetCE course documentation, the "Course Development Library," is kept in hard copy (not necessarily saved electronically). *Id.* NetCE has several hundred binders on site at its Roseville office and other hard copy documentation at an off-site warehouse, also in Roseville. *Id.* This documentation includes contracts, edited drafts, results of iThenticate scans, and copyright permissions and licensing. *Id.*

Were the Florida lawsuit to proceed in Florida, NetCE would have to transfer all of this multitude of its evidence, including many original documents. *See Jarvis v. Marietta Corp.*, No. C 98-4951 MJJ, 1999 WL 638231, at *5 (N.D. Cal. Aug. 12, 1999) (transmitting documents to distant forum increases risk that best evidence lost). Transporting the evidence, not to mention all of NetCE's witnesses, to trial in Florida would be exponentially more expensive than transporting Dr. Jouria's evidence, which NetCE believes would be confined to his person and any documents in his immediate possession.

Secondly, the present conflict bears only a tenuous connection to the Southern District of Florida. NetCE has no offices, facilities, or assets of any kind in Florida. Dr. Jouria, meanwhile, resides in Florida, but actively solicited an ongoing business and contractual relationship with NetCE, a California based company. Transfer strongly serves the interests and convenience of NetCE and its witnesses. This factor, as well as all the other so-called "private interest" factors, strongly favors transferring this case to the Eastern District of California.

     3.     <u>Public Interest Factors Also Weigh Strongly In the Interest of Transfer</u>

A § 1404(a) transfer serves to "prevent the waste of time, energy, and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Culp v. Gainsco, Inc.*, No. 0320854CIV, 2004 WL 2300426, at *3 (S.D. Fla. Oct. 1, 2004). In weighing whether a transfer would serve the interests of justice, courts consider certain so-called public interest factors. *Cellularvision*, 508 F. Supp. 2d at 1192.

As discussed at length, NetCE has sued Dr. Jouria (and Elite) for copyright infringement, breach of contract, tortious interference, and unfair competition in the Eastern District of California-- litigation much broader than the Florida lawsuit. The Florida lawsuit is in its infancy—no discovery has been requested or taken, the answer, counterclaims, and affirmative defenses have just been filed. It will not be inconvenient, costly, or redundant to transfer this case to the Eastern District of California.

California has a firm interest in deciding this controversy. As a preliminary matter, the seven contracts at issue all contain a clause stating that the contract is to be governed by California law. The issues giving rise to this lawsuit and the California lawsuit predominantly occurred in California: the contracts were negotiated and executed there and Dr. Jouria's submissions were put through the lengthy process of making them suitable for publication at NetCE's California offices. *See Cellularvision*, 508 F. Supp. 2d at 1192 (noting an interest in having local matters decided "at home.").

Secondly, the breach of contract claim presently before this court will be decided according to California law. The Freelance Writing Agreements—each of the seven here at issue—contain a clause directing that the contracts be governed by California law. *See* Exhibit 1

to the Complaint.  Courts in California, obviously, are better equipped to decide California law.  Moreover, should this court deny the motions to dismiss and to transfer, NetCE will likely amend its answer to the Florida complaint in order to include two additional torts at issue in the impending California lawsuit—tortious interference with prospective economic advantage and unfair competition under Cal. Bus. & Prof. Code § 12700 *et seq*.

Public interest factors, as well as private interest factors weigh in favor of transferring this action to California.

**C.    If this Court Declines to Dismiss or Transfer and Consolidate This Case, This Court Should Stay This Case Until the Resolution of the California Lawsuit**

This court has the inherent power to stay proceedings of an action to control its docket and conserve judicial resources.  *Tomco Equip. Co. v. Se. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1312 (N.D. Ga. 2008).  To determine whether to stay a case, the court considers whether a stay will prejudice the parties or simplify issues in the case, and whether discovery is complete and a trial date has been set.  *Id.* at 1307.  A stay will not prejudice Dr. Jouria, as parallel litigation properly pending in the Eastern District of California will resolve the issues.  There is no danger of evidentiary decay or harm.

The issues to be decided in this action are merely a small subset of the issues presently under consideration in the more expansive, coercive California lawsuit.  Staying this case will simplify the underlying issues—and in fact likely make this case moot.  A determination whether NetCE's copyrights were infringed and/or whether the Freelance Writer Agreements were breached in California will make it unnecessary to define the scope of Dr. Jouria's rights with respect to the articles at issue.  Finally, no trial date has been set and no discovery taken.  There is no danger of redundancy or inefficiency in the event of a stay.

15

In the event this Court declines to dismiss or transfer the Florida lawsuit, NetCE respectfully requests that this Court stay this action, pending resolution of the California lawsuit.

## CONCLUSION

NetCE respectfully requests this Honorable Court to decline to dismiss the Florida lawsuit. In the alternative, NetCE requests that the Florida lawsuit be transferred to the Eastern District of California for consolidation with the pending litigation there that encompasses these issues. Finally, should this Court decline both requests, NetCE asks that the Florida lawsuit be stayed until the California lawsuit is resolved.

Dated:  October 6, 2015                                   Respectfully Submitted,

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email:  phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone:   (954)525-1000
Facsimile:    (954)463-2030

John P. Kern, Esq. (*pro hac vice* application pending)
Email:  john.kern@hklaw.com
Jessica E. Lanier, Esq. (*pro hac vice* application pending)
Email:  Jessica.Lanier@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone:   (415)743-6918
Facsimile:    (415)743-6910

*Attorneys for CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail and electronic mail on October 6, 2015 on all counsel or parties of record on the Service List below.

/s/ Philip E. Rothschild
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
4801 S. University Drive
Suite 237
Fort Lauderdale, FL 33328
Email:  prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*
**[VIA E-MAIL]**