# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

        Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

        Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Third Party Plaintiff,

v.

Elite Continuing Education, Inc. and Alpine
Management Services III, LLC,

        Third Party Defendants.

1

**DEFENDANT'S AMENDED ANSWER TO THE COMPLAINT, AFFIRMATIVE
DEFENSES, AMENDED COUNTERCLAIM, AND THIRD-PARTY COMPLAINT**

Defendant CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") hereby submits
its Amended Answer, Affirmative Defenses, and Counterclaim, with jury demand, in response to
the Complaint of Plaintiff Dr. Jassin Jouria ("Dr. Jouria" or "Plaintiff"), and adds claims against
third parties Elite Continuing Education, Inc., and Alpine Management Services III, LLC, as
follows:

(For convenience and clarity, NetCE repeats the headings employed by Plaintiff in the
Complaint.  NetCE does not admit or concede any allegation in the Complaint by so doing.)

NATURE OF THE ACTION

1.     In response to Paragraph 1 of the Complaint, NetCE admits that Plaintiff is
seeking declaratory judgment of non-infringement of alleged copyrights, and for non-breach of
seven contracts asserted against plaintiff by NetCE.  NetCE admits that Plaintiff attached to the
Complaint a copy of what appears to be a composite of one of seven contracts between NetCE
and Plaintiff.  NetCE denies any other allegations against it contained in Paragraph 1.

2.     In response to Paragraph 2 of the Complaint, NetCE admits that it believes both
that Plaintiff is infringing NetCE's copyrights and that Plaintiff has breached at least seven
contracts related to research material and articles pertaining to continuing medical education for
healthcare professionals.  NetCE lacks knowledge and information sufficient and/or necessary to
respond to the allegation that Plaintiff "compiled" research material and wrote articles himself,
and so denies these allegations.  NetCE denies any other allegations against it contained in
Paragraph 2.

2

3.      In response to Paragraph 3 of the Complaint, NetCE admits that Plaintiff denies that he has infringed any copyrights that NetCE owns.  NetCE also admits that Plaintiff denies that he has breached contracts Plaintiff entered into with NetCE.  NetCE denies any other allegations against it contained in Paragraph 3.

## THE PARTIES

4.      In response to Paragraph 4 of the Complaint, NetCE admits that Plaintiff resides in Florida within the Southern District of Florida.  NetCE lacks information and knowledge sufficient and/or necessary to respond to the allegation that Plaintiff is a "medical doctor" or a "medical researcher," and therefore denies these allegations.  NetCE denies any other allegations against it contained in Paragraph 4.

5.      In response to Paragraph 5 of the Complaint, NetCE admits the allegations in this paragraph.

## JURISDICTION AND VENUE

6.      In response to Paragraph 6 of the Complaint, NetCE admits the allegations in this paragraph.

7.      In response to Paragraph 7 of the Complaint, NetCE admits that it is subject to specific personal jurisdiction in Florida.  NetCE lacks information and knowledge sufficient and/or necessary to deny that it "regularly" conducts business in the State of Florida and "throughout" the Southern District of Florida, and therefore denies this allegation.  NetCE denies the allegation that its assertions of copyright infringement and breach of contract were at any

point or are now "false."  NetCE denies that it is subject to general personal jurisdiction in

Florida.  NetCE denies any other allegations against it contained in Paragraph 7.

8.     In response to Paragraph 8 of the Complaint, NetCE admits that venue in the

Southern District of Florida is technically proper because, as NetCE admits, it is subject to

specific personal jurisdiction in this judicial district.  NetCE admits that while venue in the

Southern District of Florida is technically proper, the most convenient and expeditious venue for

the present action is in the Eastern District of California, Sacramento Division, where affirmative

suit against Dr. Jouria and Elite Continuing Education ("Elite") for copyright infringement,

breach of contract, tortious interference with contractual relations, and unfair business practices

is presently pending (the "California lawsuit").  Elite is an essential party in the California

lawsuit.  The California lawsuit was filed on September 4, 2015.  Also presently pending is a

motion to transfer the instant case to the Eastern District of California pursuant to 28 U.S.C. §

1404 and to consolidate this case (the "Florida lawsuit") with the California litigation.  NetCE

denies that it is subject to general personal jurisdiction in this judicial district.  NetCE denies the

allegation that a substantial part of the events giving rise to Plaintiff's claims have occurred in

the Southern District of Florida.  NetCE denies any other allegations against it contained in

Paragraph 8.

## FACTUAL BACKGROUND

9.     In response to Paragraph 9 of the Complaint, to the extent a response is required,

NetCE incorporates by reference its responses to Paragraphs 1 -8.

10.     In response to Paragraph 10 of the Complaint, NetCE lacks information and knowledge sufficient and/or necessary to answer this allegation, and therefore denies all allegations in Paragraph 10.

11.     In response to Paragraph 11 of the Complaint, NetCE admits that Plaintiff entered into seven written contracts with NetCE.  NetCE denies that that Plaintiff entered into the contracts "in Florida."  NetCE admits that the terms of the contracts governed Defendant's rendering of medical research and writing services for NetCE's review and consideration for publication and that these services were directed to developing continuing medical education articles to be offered to healthcare professionals by NetCE.  NetCE admits that it compensated Plaintiff at the parties' agreed-upon rate.  NetCE lacks information and knowledge necessary and/or sufficient to answer the allegation that Plaintiff completed the required research and drafted articles from the research in accordance with the terms of the contracts, and therefore denies this allegation.  NetCE denies any other allegations against it contained in Paragraph 11.

12.     In response to Paragraph 12 of the Complaint, NetCE admits that it had the right, in addition to sole rights of ownership and authorship to the articles under U.S. Copyright law, to edit the articles for the purpose of publishing the articles in the form of course material for continuing medical education.  NetCE denies any other allegations against it contained in Paragraph 12.

13.     In response to Paragraph 13 of the Complaint, NetCE lacks information and knowledge sufficient and/or necessary to answer the allegation that Plaintiff used the same research, and therefore denies this allegation.  NetCE denies the allegation that Plaintiff prepared "new" articles and that the new articles were substantially different from those prepared for

NetCE.  Upon information and belief, NetCE admits that Plaintiff sold the articles to a third party.  NetCE denies any other allegations against it contained in Paragraph 13.

14.     In response to Paragraph 14 of the Complaint, to the extent a response is required, NetCE incorporates by reference its responses to Paragraphs 1-13.

15.     In response to Paragraph 15 of the Complaint, NetCE denies the allegation that it "threatened" Plaintiff.  NetCE admits that, on April 15, 2015, it asserted that Plaintiff infringed NetCE's copyrights in the articles written by Plaintiff pursuant to the seven agreements.  NetCE admits that it also asserted that Plaintiff breached each and all of the seven agreements.  NetCE denies the allegation that Plaintiff used the research Plaintiff conducted to write the seven articles for NetCE to write new and/or different articles; Plaintiff instead produced substantially similar articles and distributed them for profit—he did not have the legal right under U.S. Copyright Law and/or the contracts he signed with NetCE to do so.  NetCE admits that Plaintiff submitted the articles to a third party; Plaintiff did not have the legal right under U.S. Copyright Law and/or the contracts he signed with NetCE to do so.  NetCE admits that it sent Plaintiff written communication.  NetCE admits that its communications to Plaintiff made Plaintiff believe that NetCE had a valid claim and would eventually file a lawsuit against him.  NetCE denies any other allegations against it contained in Paragraph 15.

16.     In response to Paragraph 16 of the Complaint, NetCE admits this allegation.

17.     In response to Paragraph 17 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE denies the remaining allegations against it contained in Paragraph 17.

#48112616_v1

## FIRST CLAIM FOR RELIEF

### (Non-infringement of Copyright)

18.     In response to Paragraph 18 of the Complaint, NetCE incorporates by reference its responses to Paragraphs 1-17.

19.     In response to Paragraph 19 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE admits that Dr. Jouria has filed a declaratory judgment action under the United States Copyright Act, 17 U.S.C. § 101, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  NetCE admits that as of September 4, 2015, an actual justiciable controversy exists given the filing of NetCE's action in California.  NetCE denies the remaining factual allegations against it contained in Paragraph 19.

20.     In response to Paragraph 20 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE denies the remaining allegations against it contained in Paragraph 20.

## SECOND CAUSE OF ACTION

### (Non-breach of Contracts)

21.     In response to Paragraph 21 of the Complaint, NetCE incorporates by reference its responses to Paragraphs 1-17.

22.     In response to Paragraph 22 of the Complaint, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary,

#48112616_v1

NetCE admits that Dr. Jouria has filed a declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 with respect to breach of contract, in federal court under supplemental jurisdiction.  NetCE denies the remaining factual allegations against it contained in Paragraph 22.

23.     In response to Paragraph 23, to the extent this paragraph calls for a legal conclusion, no response is warranted.  To the extent a response is deemed necessary, NetCE denies that Plaintiff is not in breach of the seven written contracts and denies the remaining factual allegations against NetCE contained in  Paragraph 23.

24.     NetCE denies any and all allegations in this Complaint to which it has not offered an explicit admission.

25.     WHEREFORE, NetCE prays that Plaintiff is not granted any of the relief he requested in the Complaint, or otherwise, that this Court dismiss the Complaint with prejudice and NetCE granted its costs, including but not limited to its reasonable attorneys' fees.

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*

*Venue and anticipatory suit.*  While venue in the Southern District of Florida is not technically improper, the most convenient, expeditious venue for the present action is in the Eastern District of California, Sacramento division, where NetCE has filed an affirmative suit against Dr. Jouria and two related parties for copyright infringement, breach of contract, tortious interference with contractual relations, unfair business practices, and trade secret misappropriation.  Dr. Jouria filed this complaint knowing NetCE was poised to file a copyright

8

infringement and breach of contract action against him.  In other words, he filed an anticipatory suit.  In racing NetCE to the courthouse, moreover, Dr. Jouria engaged in inequitable forum shopping.  Nonetheless, for efficiency's sake, and out of respect for this Court's time and resources, NetCE and Dr. Jouria have reached a compromise with respect to their forum dispute. NetCE has agreed (1) to  voluntarily dismiss the parallel lawsuit in California and (2) to withdraw its motion to transfer and consolidate (pending in the Southern District of Florida); in exchange Dr. Jouria has agreed (1) to not oppose, here, NetCE's filing of a Second Amended Counterclaim (wherein NetCE will add the related parties it had sued in the California action), and (2) that any deposition of NetCE witnesses (fact or expert) taken in this case shall occur in Northern California, at a location convenient for those witnesses.

### Second Affirmative Defense

*Failure to State Claim*.  Plaintiff has failed to state claim upon which relief may be granted.

### Third Affirmative Defense

*Unclean Hands*.  Plaintiff's purported claims against NetCE are barred by the doctrine of laches, estoppel, and/or unclean hands.

### Fourth Affirmative Defense

*Declaration of Ownership*.  NetCE owned the copyrights—and the full rights of reproduction, creation and manufacture, derivative works, display, distribution, sale, and performance implicated therein—to each and all of the articles Dr. Jouria produced and submitted to NetCE, as governed by all agreements Dr. Jouria executed with NetCE.  NetCE's

9

ownership is governed by the work-for-hire doctrine as well as the explicit terms of the contracts executed between Dr. Jouria and NetCE.

### Fifth Affirmative Defense

*Enforceable copyrights.*  NetCE possesses enforceable copyrights against Dr. Jouria.

### Sixth Affirmative Defense

*Declaration of substantial similarity.*  The articles that Dr. Jouria submitted to third parties without NetCE's consent were identical or substantially similar to articles to which NetCE had ownership rights.

### Seventh Affirmative Defense

*Copyrightable subject matter.*  The material copied by Dr. Jouria and submitted to third parties without NetCE's permission was copyrightable subject matter.

### Eighth Affirmative Defense

*Derivative works.*  To the extent the works Dr. Jouria submitted to third parties without NetCE's permission are considered and/or deemed derivative works, Dr. Jouria lacked the permission and/or legal right under U.S. Copyright Law and the contracts he executed with NetCE to produce derivative works of NetCE-owned articles.

### Ninth Affirmative Defense

*Not in Public Domain.*  NetCE's asserted copyrights are not in the public domain.

*Tenth Affirmative Defense*

*Not Fair Use*.  Dr. Jouria's (and third parties') use of NetCE's asserted copyrights is not excused by fair use, as defined by 17 U.S.C. § 107.

*Eleventh Affirmative Defense*

*No Joint Authorship*.  Dr. Jouria is not the author or joint author for the infringed works.

## COUNTERCLAIMS AND THIRD PARTY CLAIMS

Defendant and Counter-Plaintiff, NetCE, as and for its Counterclaim against Plaintiff and Counter-Defendant Dr. Jouria, and against Third Party Defendants Elite Continuing Education, Inc., and Alpine Management Services III, LLC, alleges as follows:

1.      In April of 2015, shortly after NetCE discovered Dr. Jouria had sold nearly identical articles belonging to NetCE to a third party, NetCE initiated correspondence with Dr. Jouria in an effort to rectify the egregious and infringing behavior without resorting to litigation. While stalling his responses to this communication in which NetCE was engaged in good faith, Dr. Jouria filed this lawsuit (the "Florida Lawsuit") on June 2, 2015.

2.      On September 4, 2015, NetCE filed a lawsuit regarding the same facts (the "California Lawsuit") in the United States District Court for the Eastern District of California against Dr. Jouria and Elite Continuing Education, INC ("Elite").

3.      On September 15, 2015, Dr. Jouria served this summons and complaint for the Florida Lawsuit on NetCE.

4.      On October 6, 2015, NetCE filed its first answer, affirmative defenses, and counterclaims in the Florida Lawsuit.  On that date, NetCE also filed a motion to dismiss the Florida Lawsuit, transfer this case to the Eastern District of California, Sacramento division, or, in the alternative, consolidate the Florida lawsuit with the pending coercive California Lawsuit against Dr. Jouria and Elite.  In October of 2015, Dr. Jouria filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Florida ("Florida Bankruptcy Court"). Upon Dr. Jouria's request, this Court issued a stay, halting the Florida Lawsuit.  NetCE continued litigating the California Lawsuit and filed an amended complaint in December 2015, adding Alpine Management Services III, LLC ("Alpine") as a defendant.

5.      On May 10, 2016, the Florida Bankruptcy Court dismissed Dr. Jouria's bankruptcy case with prejudice and, crucially, without discharging any of his debts.  Shortly thereafter, on June 15, 2016, this Court lifted its stay.

6.      On May 18, 2016, the California Court ordered the California Lawsuit pending the outcome of NetCE's motion to dismiss, transfer, or consolidate.

7.      Nonetheless, for efficiency's sake, and out of respect for this Court's time and resources, NetCE is withdrawing its motion to dismiss, transfer, or consolidate concurrent with the filing of this Amended Answer, Affirmative Defenses, and Counterclaims.

8.      NetCE also shall voluntarily dismiss the California Action and pursue its claims exclusively in the Southern District of Florida.

## PARTIES

9.      Defendant and Counter-Plaintiff NetCE is a California-based corporation, with its principal place of business at 1482 Stone Point Drive, Suite 120, Roseville, California, 95661.

10.      Plaintiff and Counter- Defendant Dr. Jassin Jouria is a doctor of medicine and author of medical education literature.  On information and belief, he is not a practicing physician.  After filing the Florida Lawsuit, Dr. Jouria applied for bankruptcy in the United States District Court for the Southern District of Florida.  On May 10, 2016, his case was dismissed with prejudice: Dr. Jouria is no longer in bankruptcy.  None of his debts were discharged.  Dr. Jouria resides in Florida.

11.      Defendant Elite is a business entity, with its principal place of business at 1452 North U.S. Highway 1, Suite 100, Ormond Beach, FL, 32174.

12.      Defendant Alpine is a business entity, with its principal place of business at 3 Embarcadero Center, Suite 2330, San Francisco, CA 94111.  Upon information and belief, Alpine purchased Elite in late 2012.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction over NetCE's action for copyright infringement, 17 U.S.C. § 101 *et seq*. (U.S. Copyright Act), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a), and breach of contract, tortious interference with contract relations, violation of California's Unfair Business Practices Statute (Cal. Bus. & Prof. Code §17200, *et seq*.), and misappropriation of trade secrets under Florida's Uniform Trade Secrets Act (Florida Civil Code §§ 688.001 *et seq*.), under 28 U.S.C. § 1367 (supplemental jurisdiction)

#48112616_v1

and 28 U.S.C. §§ 2201 and 2202 (declaratory judgment) and the doctrines of ancillary and pendent jurisdiction.

14.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338.  The actions for breach of contract, interference with contractual relations, unfair business practices, and misappropriation of trade secrets arise from the same transaction and/or occurrence and are a part of the same case and/or controversy as the claim for copyright infringement.  Therefore, this Court has supplemental jurisdiction over this action under 28 U.S.C. § 1367.

15.     Dr. Jouria is subject to personal jurisdiction in Florida because he is domiciled here.  Dr. Jouria has also availed himself of the Florida courts—filing this lawsuit and filing for bankruptcy in Florida federal courts.

16.     Elite is subject to personal jurisdiction in Florida because it is domiciled here. Elite's principal place of business is Ormond Beach, Florida.  Moreover, upon information and belief, Elite purposefully avails itself of Florida law by offering continuing education programs and certification courses in Florida, to Florida residents, and to persons seeking qualification to practice various professions within Florida.  In offering these courses, Elite must comply with Florida regulations as to licensure for a variety of professions.  Moreover, Elite is subject to personal jurisdiction in Florida because it entered into agreements with Dr. Jouria, a Florida resident, to generate content for its courts.

17.     Alpine is subject to personal jurisdiction in Florida because of its investment in and/or ownership of Elite, a Florida company.   Upon information and belief, Alpine executed a purchase agreement with Elite, a Florida company, under which it derives revenues or value

14

from Elite's operations and exercises some degree of control over Elite's business and its

conduct.   Based on the foregoing Alpine has purposefully availed itself of the business

protections and opportunities available in Florida, and the fact it is being sued in Florida is

reasonably foreseeable.

## VENUE

18.     Venue for these Counterclaims and Third-Party claims is proper within the

judicial district pursuant to at least 28 U.S.C. §§ 1391 and 1400.

## FACTUAL BACKGROUND

### a.      NetCE: Background, Contributing Faculty Members, and Freelance Writer Agreements

19.     NetCE is one of the nation's leading publishers of Continuing Medical Education

("CME") articles, content, and course materials.  NetCE was founded 1991, and its target

customers generally are healthcare professionals, including without limitation Nurses,

Physicians, Dental Professionals, Social Workers, Counselors, and Psychologists.

20.     NetCE is located in Roseville, California, and currently has 39 employees.

21.     In order to develop the CME courses and materials it offers to its customers,

NetCE contracts with independent authors (referred to in NetCE's marketing materials as its

"Contributing Faculty Members"), almost all of whom are licensed medical professionals,

credentialed medical scholars and academics, or both.

22.     The Contributing Faculty Members who draft the CME course materials NetCE

edits, markets, and publishes, do so under standard, template agreements (called "Freelance

Writer Agreements"), identical---except for the name of the author, deadlines ("course completion dates"), and subject-matter areas---to the seven (7) contracts between NetCE and JOURIA at issue in this case.  Currently, NetCE is working with more than 80 Contributing Faculty Members under Freelance Writer Agreements.

23.     Under the terms of the Freelance Writer Agreements, the Contributing Faculty Members agree, among other terms, to draft and submit to NetCE for editing and publication CME articles on a specific subject, in a specific format, and by a specific deadline.  These Contributing Faculty Members also agree that the articles they submit to NetCE are "works for hire" and that all copyrights associated with these materials belong exclusively to NetCE.

24.     The type of writer-publisher arrangement described above is, in fact, quite common in the publishing industry.

25.     At present, NetCE has federally registered copyrights for more than 840 CME articles and courses, as well as the catalogs and brochures associated with the CME materials. At the time this Complaint was initially filed, NetCE had pending federal copyrights (applications on file with the U.S. Copyright Office) for an additional 27 courses/articles (including for the seven (7) courses at issue).  In the fall of 2015, NetCE received confirmation from the U.S. Copyright Office that the copyrights for all seven (7) courses at issue are now federally registered, registration effective May 15, 2015.  A PDF of these certificates is attached as **<u>Exhibit A</u>**.

**b.    Elite Continuing Educators**

26.     On information and belief (and according to the Better Business Bureau), Elite was founded in 1999, and maintains its principal place of business in Florida.

27.     On information and belief, Elite began offering continuing education to nurses (and thus became a direct competitor to NetCE) around 2006-2007.  Prior to this time, on information and belief, Elite published continuing education course primarily for cosmetologists.

28.     On information and belief (according to the information on its website), Elite currently offers approximately 60 CME courses for nursing professionals, including numerous courses authored by Dr. Jouria in the areas of pharmacology and internal medicine.

**c.    Dr. Jassin Jouria**

29.     On information and belief, Dr. Jouria is an M.D., who received his medical degree from Ross University School of Medicine ("RUSM").  RUSM is a private, for-profit medical school, owned and operated by DeVry Education Group and located on the Island Nation of Dominica, in the Caribbean.

30.     On information and belief, because he has not completed a residency, Dr. Jouria is not a licensed, certified, or practicing physician in the United States.

31.     In early 2013, Dr. Jouria approached NetCE with a proposal to work on a series of CME courses in the areas of general medical, internal medicine, and pharmacology.

32.     At the time of Dr. Jouria's proposal, NetCE was looking to expand its course offerings in these areas in response to newly adopted CME requirements for nurses across the country, particularly in the areas of pharmacology and internal medicine.

33.     As part of its normal diligence on prospective new contributors, NetCE performed online research to ensure that Dr. Jouria was not already working with any of its competitors to market and publish CME articles.  Dr. Jouria confirmed in his discussions with NetCE that he was not working for any of NetCE's competitors.

34.     NetCE and Dr. Jouria engaged in discussions which ultimately culminated in the parties entering into ten (10) separate Freelance Writer Agreements, under which Dr. Jouria would prepare draft CME articles in agreed upon areas (hereafter referred to as "Courses"), and NetCE would provide editing, publishing, and marketing services for the Courses.  Prior to signing the Freelance Writer Agreements (and prior to submitting any content to NetCE), Dr. Jouria was provided with a copy of the Faculty Guide on April 6, 2012; he affirmatively and explicitly told NetCE that he had reviewed and understood the document and the process of submission.

35.     Throughout 2012 and the early part of 2013, Dr. Jouria submitted drafts for each of the ten (10) Courses, and NetCE paid Dr. Jouria for each of the ten (10) Courses, pursuant to the terms of the respective Freelance Writer Agreements.  At the time that payment was rendered to Dr. Jouria, pursuant to his contract and the terms of the Faculty Guide, ownership of the articles (including the seven (7) articles at issue) transferred to NetCE.  [*See* **Exhibit B**, the Freelance Writer Agreements.]

36.     Ultimately, NetCE did publish and make available for its customers three (3) of

Dr. Jouria's Courses, including (a) Course #98590, entitled "Multiple Sclerosis: A

Comprehensive Review," (b) Course #98810, entitled "COPD: An Overview of Pathophysiology

and Treatment," and (c) Course #4885, entitled "Pressure Ulcers: Pathogenesis and

Management."  These three (3) Courses are <u>not</u> in dispute and are <u>not</u> the subject of this lawsuit.

### d.     Alpine Management Services III, LLC

37.     On information and belief, and according to their website, "Alpine Investors" (as

referred to on its website) is an investment firm founded in 2001, which maintains its principal

place of business in San Francisco, California.

38.     Alpine, according to its website, has invested in and helped cultivate roughly

thirty companies in a variety of industries.

39.     In early 2012, described at greater length below, Alpine approached NetCE to

discuss the possibility of investing in or purchasing the company.  Upon information and belief,

shortly after the proposed purchase and/or merger with NetCE did not come to fruition, Alpine

approached Elite in a similar fashion.

### e.     Alpine's Relationship with NetCE and Elite

40.     In early 2012, Alpine approached NetCE to discuss a potential acquisition.

NetCE and Alpine engaged in communications and negotiations on this subject over a several

month period, throughout 2012.  The negotiations included several days of in-person meetings

among NetCE and Alpine representatives and certain authorized parties.

19

41.    During the course of these discussions, and in order to evaluate the feasibility and desirability of an acquisition and sale, the parties agreed to exchange proprietary information. Accordingly, Alpine and NetCE executed a mutual non-disclosure agreement ("NDA") in July of 2012.  [*See* **Exhibit C, the NDA**.]

42.    Pertinent portions of the agreement include:

- "…[NetCE] is willing to furnish [Alpine]… with certain information about its business that includes information which is either non-public, confidential or proprietary in nature."

- "The Information [shared by NetCE] will be kept confidential and shall not, without prior written consent of [NetCE], be disclosed by [Alpine] or its Representatives, other than in connection with the transaction between the parties or as permitted herein.…[Alpine] *shall not transmit the Information to any third parties*, including any agents or contractors." (emphasis added.)

- "This agreement, and all obligations herein, will terminate at the earlier to occur of (i) three years from the date hereof and (ii) the consummation of a definite agreement with respect to the transaction."

43.    During the course of negotiations---in an effort to provide Alpine with information it claimed was necessary to evaluate its valuation of NetCE---NetCE produced significant, non-public information to Alpine, including without limitation its market strategies, industry reports, financial performance data, and generally proprietary information concerning the type of content NetCE furnished, developed, and was planning to develop for future courses (including, for example, specific course topics and authors), as well as NetCE's strategies for the marketplace, industry reports regarding competitors, the competitive landscape, and consumer needs, and NetCE's financial performance data--histories and projections.

44.    At all relevant times, the NDA was in place, and NetCE operated with the belief that it was fully protected by the terms of that agreement.

45.     During 2012 and 2013, Dr. Jouria signed agreements with NetCE (see below), including the seven (7) Freelance Writer Agreements at issue.  In fact, during its negotiations with Alpine, NetCE made Alpine aware of the identity of its existing faculty and shared drafts of Dr. Jouria's work with Alpine.  NetCE also shared other information with Alpine related to courses that had been developed or were in development, including its plan for timing of rollout and publication, its marketing strategies, and its financial expenditures related to the curating of these under-development courses and courses for the future.

46.     In late 2012, NetCE terminated its discussions with Alpine, as the parties were unable to reach mutually satisfactory terms.  Roughly a year thereafter, NetCE discovered that Alpine had---shortly after NetCE ceased its discussions with Alpine---purchased Elite, a competitor of NetCE.

**f.      The Seven (7) At-Issue Agreements**

47.     NetCE and Dr. Jouria entered into seven (7) additional Freelance Writer Agreements, which are at issue in this case.  Except for (a) the subject matter description of the Courses, (b) the deadlines for submission of draft Courses, and (c) the compensation NetCE was to pay Dr. Jouria for each Course---these seven (7) agreements were identical in their terms.  The subject matter description of the Courses were:

1)      The Lymphatic and Immune Systems;

2)      Traumatic Brain Injury;

3)      Nonantibiotic Antimicrobial Pharmacology;

4)      Cardiovascular Pharmacology;

5)      Gastroesophageal Reflux Disease;

21

6)    Cancer and Chemotherapy; and

7)    Depression vs. Dementia in the Elderly.

48.    Each agreement made clear that the draft Courses were <u>entirely</u> the property of NetCE and that NetCE was the author of each Course Dr. Jouria drafted related to the subject matter of the seven (7) agreements.  NetCE retains all rights to these works.  NetCE *paid* Dr. Jouria for its exclusive ownership and right of first refusal to publish the above articles.

g.    **Complications with Publication**

49.    After entering into the Freelance Writer Agreements, but prior to completion of the engagement, NetCE continued to collect background information relating to Dr. Jouria's credentials.  NetCE discovered that Dr. Jouria was involved in a lawsuit with the Education Commission for Foreign Medical Graduates.  This lawsuit  revealed that Dr. Jouria had submitted false letters of recommendation with his application to them.

50.    By the time NetCE uncovered the information above, it already was engaged in producing several courses with Dr. Jouria.  NetCE decided to fulfill the agreements the parties already had executed, but not to enter into additional contracts or projects with Dr. Jouria.

51.    Unfortunately, over the course of the engagement, other red flags emerged about Dr. Jouria's credentials and his truthfulness.  For instance, Dr. Jouria's resume indicated that Dr. Jouria attended medical school at Ross University in New Jersey.  Ross University is, in fact, an "off-shore" medical school in the Dominican Republic.

52.    Further, upon information and belief, although Dr. Jouria is technically an MD as he completed a medical degree, he is technically not permitted to call himself a "doctor" or a

22

"physician," because he has not completed medical residency in the United States (which is a requirement to practice and become licensed).

53.     Moreover, when Dr. Jouria began to submit his draft work for NetCE's evaluation and revision, NetCE discovered the work had significant deficits in three major areas: medical/scientific accuracy, grammatical and stylistic errors, and plagiarism.

54.     While NetCE budgets time for significant editing of grammar, style, spelling, and structure, Dr. Jouria's submissions required more editing than was typical for these types of courses.  NetCE came to believe that Dr. Jouria copied sections of his submissions from a variety of different sources.

55.     Dr. Jouria's works were littered with plagiarized content.  NetCE utilized a plagiarism detection program called "iThenticate" to identify areas that were copied (in essence or exactly) and then removed offending passages, and in some cases obtained the original author's permission to reprint them, prior to getting the works ready for publication.  iThenticate revealed that the tables of information Dr. Jouria included with his submissions were almost always copied from original sources with no indication as to their author or source and never with permission to reprint.

56.     NetCE expended a significant amount of time and effort locating the original sources for each of these tables, requesting permission to reprint the tables and paying reprinting fees to the copyright holder to do so.

57.     NetCE paid an independently contracted editor a large sum to make significant improvements and substantive edits to the Cancer and Chemotherapy course.

58.     NetCE conducted extensive literature reviews and appraisal of available guidelines in order to ensure that every submission was supported by evidence-based literature and in keeping with prevailing professional guidelines regarding scientific and medical accuracy. In particular, NetCE's in-house Physician Division Planner, Dr. John Leonard, completed extensive revisions of the courses NetCE published.

59.     At the time NetCE discovered Dr. Jouria's relationship with Elite, two of the NetCE courses--Gastroesophageal Reflux Disease and Cancer and Chemotherapy--were close to publication, with an estimated release date of March 1, 2015. The remaining five courses required significant editorial work, but were tentatively scheduled to be completed and released sometime in 2015.

60.     The substantial amount of time spent by NetCE editorial staff developing the courses and related proposal not only cost NetCE money, but diverted time and resources from other, viable projects.

61.     Physical resources were expended upon editing Dr. Jouria's ultimately unusable projects.

62.     The Gastroesophageal Reflux Disease and Cancer and Chemotherapy courses were close enough to publication that NetCE had paid for permission to reprint tables from the original copyright holders. (These tables appear in the Elite courses without attribution or permission.)

63.     The remaining five courses were tentatively scheduled for completion and release sometime in 2015. All courses required significant editorial work.

24

64.     Dr. Jouria's publication with Elite prevented NetCE from featuring Dr. Jouria's courses in NetCE's direct mailings.

65.     Because NetCE is unable to use the content Dr. Jouria submitted, Dr. Jouria's actions and publication with Elite set NetCE behind its competitors in offering courses in the above-described topics.

66.     Lastly, upon information and belief, sales of Dr. Jouria's prior courses with NetCE may be depressed due to the high profile character of his relationship with Elite and customer confusion as to source.

**h.     NetCE's Copyrights are Infringed Through Publication with Elite**

67.     In February of 2015, NetCE discovered that Dr. Jouria had materially breached seven (7) of the Freelance Writer Agreements, by publishing seven (7) articles (which he previously had submitted to NetCE) through one of NetCE's competitors, Elite.

68.     At the time NetCE discovered Dr. Jouria's relationship with Elite, two of the NetCE courses--Gastroesophageal Reflux Disease and Cancer and Chemotherapy--were close to publication, with an estimated release date of March 1, 2015.

69.     As a result of Elite's publication, NetCE was unable to publish any of the seven (7) at issue articles.  Again, NetCE published *none* of the seven (7) at issue articles.  NetCE's competitive advantage and profitability for its courses depends upon a first-to-market posture. Elite's, Alpine's, and Dr. Jouria's actions deprived NetCE of this hard-fought advantage.  For NetCE to publish the seven (7) articles after Elite had done so would have involved additional expenditures and investments that the prospect for diminishing returns no longer justified.

25

Thanks to Alpine, Elite, and Dr. Jouria, the time, resources, and effort expended editing, fact-checking, and source-checking the seven (7) courses, payment to use plagiarism-detecting software, payment for rights to use copyrighted materials in the courses, and the opportunity costs of foregoing other projects due to finite manpower were all completely wasted.

70.    Moreover, Dr. Jouria's publication with Elite prevented NetCE from featuring Dr. Jouria's courses in NetCE's direct mailings.

71.    Because NetCE is unable to use the content Dr. Jouria submitted, Dr. Jouria and Elite's actions (including publication) set NetCE behind its competitors in offering courses in the above-described topics.

72.    Lastly, upon information and belief, sales of Dr. Jouria's prior courses with NetCE may be depressed due to the high profile character of his relationship with Elite and customer confusion as to source.

73.    All seven (7) articles all fell within the subject matter areas of pharmacology and internal medicine---areas in which Elite, one of NetCE's chief competitors, had not previously published in a significant manner.

74.    In fact, upon information and belief, Elite presently offers no other pharmacology courses aside from ones authored by Dr. Jouria.

75.    Moreover, the majority of Elite's internal medicine and general medicine courses also are authored by Dr. Jouria.

#48112616_v1

76.     In sum, Dr. Jouria's collaboration with Elite on the seven (7) course at-issue in the case represent a new and significant foray by Elite into an expansion of its CME offerings.

77.     Upon information and belief, after Alpine acquired Elite, Elite hired Dr. Jouria as a physician author and planner.  Upon information and belief, this was a new position, one that Elite had not advertised or held.  Upon information and belief, Elite was unware of Dr. Jouria prior to Alpine's purchase of Elite and sharing of NetCE's proprietary and confidential information with Elite.  Shortly after Alpine's Elite acquisition, Elite rapidly and aggressively moved into the medical and pharmacologic space.

78.     Given Elite's subsequent relationship with Alpine, Elite's relationship with Dr. Jouria, and the timing of offering continuing education on the subject matter at issue in this lawsuit, Elite's awareness of NetCE's association with Dr. Jouria gave rise to Elite's duty to vet any submissions by Dr. Jouria in order to ensure he was submitting original material.  Upon information and belief, Alpine and Elite impermissibly used the confidential and proprietary knowledge Alpine obtained from NetCE under the NDA and then wrongfully passed this information along to Elite to give Elite a competitive advantage in the marketplace.

79.     Alpine knew the information was proprietary and confidential and that disclosing the information to additional parties without NetCE's permission was improper.  Elite knew or should have known that the information regarding NetCE that it obtained from Alpine was confidential and proprietary and that its acquisition and use of the information was improper.

80.     By publishing articles through Elite relating to the above-identified topics, Dr. Jouria materially breached the terms of the various Freelance Writer Agreements he signed with NetCE, including, without limitation, the following provisions: (1) §5(d) ("Writer will submit the

Article to any other party for publication unless and until [NetCE] expressly rejects the Article . . ..") and (2) §9 ( "Writer hereby understands and agrees that all articles approved for publication by [NetCE] under this agreement shall belong exclusively to [NetCE] . . ." and . . ."Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and [NetCE] shall be deemed to be the author thereof . . ..").

81.    In the course of events leading up to and following the filing of this lawsuit, representatives from Elite acknowledged the offending content and made assurances that Elite had removed the infringing articles from its website and from availability through internet searches.  As of the initial filing of the Complaint and the filing of the Amended Complaint (December 16, 2015), each of the links to the seven (7) infringing articles remained live and available for purchase.  At least *Cardiovascular Diseases: The Leading Cause of Death in Women*, (which is substantially similar to *Cardiovascular Pharmacology*) remains visible on the course list for nursing and available for purchase as a single course *and* bundled in Elite's "Special Package Pricing – 2015 Edition."  As NetCE now has registered federal copyrights for the offending courses, effective May 15, 2015, Elite's continued willful infringement entitled NetCE to attorneys' fees and statutory damages.  In its reply brief to NetCE's Opposition to its Motion to Stay, Elite indicated that it had de-activated all links to the offending courses, including the archived links it had heretofore, inexplicably, failed to address.  This, however, did not occur until April 2016, over a full year after counsel for NetCE brought the matter to their attention.

## CLAIMS FOR RELIEF

## CLAIM ONE: COPYRIGHT INFRINGEMENT

(Against Dr. Jouria and Elite)

82.     NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 to 81 of its counterclaims and third party claims as if fully set forth herein.

83.     Each of the articles Dr. Jouria submitted to NetCE pursuant to the Contracts is registered with the United States Copyright office, registration effective May 15, 2015, or is the subject of a completed application for copyright registration with the same.  See Exhibit A.

84.     Pursuant to the terms of the Contracts, the work for hire doctrine, and the registrations issued by the United States Copyright office, NetCE is the sole author and lawful owner of the copyright for the articles Dr. Jouria submitted to NetCE.  As such NetCE has the exclusive right to copy, reproduce, and distribute copies of the articles or derivative works thereof.

85.     Neither Elite nor Dr. Jouria obtained permission from NetCE to republish, reissue, resubmit, or otherwise license the articles, identical versions of the articles, or substantially similar versions of the articles covered by the Contracts.

86.     Dr. Jouria infringed NetCE's copyrights by resubmitting the articles covered by the Contracts to Elite for further publication without NetCE's permission.  Elite infringed NetCE's copyrights by publishing the articles Dr. Jouria submitted to NetCE pursuant to the terms of the Contracts.  Elite only recently (April 2016) completely de-activated the publicly available links to these articles.

## CLAIM TWO: BREACH OF CONTRACT
(Against Dr. Jouria)

87.     NetCE hereby repeats and re-alleges each and every allegation contained in

Paragraphs 1 to 81 of its counterclaims and third party claims as if fully set forth herein.

88.     Dr. Jouria entered into seven valid and enforceable written contracts with NetCE.

89.     In each of the Freelance Writer Agreements signed by Dr. Jouria, Dr. Jouria

expressly represented that the articles he submitted to NetCE were original works, were not

obtained unlawfully or owned by any third party, had not been submitted by him to any other

party for publication, had not been previously published, would not violate any intellectual

property right of any third party, and that he would not submit any article "to any other party for

publication unless and until [NetCE] expressly reject[ed]" the article.

90.     Each of the seven Freelance Writer Agreements at issue names a specific subject

for which NetCE agreed to accept content.

91.     NetCE agreed to publish each of the articles Dr. Jouria submitted regarding the

approved seven subjects.  NetCE never "expressly reject[ed]" any of these articles.

92.     Dr. Jouria breached his obligations under the Contracts by submitting articles to

NetCE pursuant to the terms of the Contracts and, without an explicit rejection from NetCE,

selling identical or substantially similar articles to Elite.

93.     As a result, NetCE has been damaged in an amount to be proven at trial.

30

## CLAIM THREE: BREACH OF CONTRACT
### (Against Alpine)

94.     NetCE hereby repeats and re-alleges each and every allegation contained in

Paragraphs 1 to 81 of its counterclaims and third party claims as if fully set forth herein.

95.     NetCE entered into a valid and enforceable NDA with Alpine.

96.     The NDA between Alpine and NetCE contained express prohibitions against

sharing NetCE's proprietary and confidential information with unauthorized third parties.

97.     NetCE performed all of its obligations under the NDA.

98.     Alpine breached its obligations under the NDA by sharing NetCE's confidential

and proprietary information with, at least, Elite.  Upon information and belief, this includes the

*type* of content (not information copied from the public domain by Dr. Jouria or scientific or

medical facts comprising the courses) NetCE furnished, developed, and was planning to develop

for future courses, as well as NetCE's strategies for the marketplace, industry reports regarding

competitors, the competitive landscape, and consumer needs, and NetCE's financial performance

data—histories and projections.  NetCE did not give Alpine permission to share this information.

99.     As a result, NetCE has been damaged in an amount to be proven at trial.

## CLAIM FOUR: TORTIOUS INTERFERENCE
## WITH CONTRACTUAL RELATIONS
### (Against Elite Continuing Education and Alpine)

100.     NetCE hereby repeats and re-alleges each and every allegation contained in

Paragraphs 1 to 81 of its counterclaims and third party claims as if fully set forth herein.

#48112616_v1

A.       **Interference of Alpine and Elite with Freelance Writer Agreements**

101.     NetCE and Elite are competitors in the field of continuing professional educational services and materials.

102.     The Freelance Writer Agreements between Dr. Jouria and NetCE are valid and enforceable.

103.     Upon information and belief, Elite was aware of Dr. Jouria's Freelance Writer Agreements with NetCE .

104.     Elite intentionally interfered with the Freelance Writer Agreements between Dr. Jouria and NetCE by soliciting and publishing articles identical or substantially similar to articles Dr. Jouria submitted to NetCE.  Pursuant to the terms of the Freelance Writer Agreements, these articles were the property of NetCE.  In soliciting and publishing articles that were properly the property of NetCE, Elite prevented Dr. Jouria from performing his obligations pursuant to the Freelance Writer Agreements.

105.     Elite's aforementioned conduct was willful, malicious, fraudulent and in conscious disregard of NetCE's rights and interests and, on information and belief, was undertaken with the intent to injure NetCE's property and legal rights.  Accordingly, an award of punitive damages is justified.

106.     Alpine was also aware of the Freelance Writer Agreements between Dr. Jouria and NetCE.

107.     Alpine intentionally interfered with the contracts between Dr. Jouria and NetCE by sharing information about the articles and subject matter in development with Dr. Jouria with Elite, as well as proprietary information about NetCE's financials and business strategy. Pursuant to the terms of the Contracts, these articles were the property of NetCE.  In tipping Elite off to the existence of NetCE-owned content authored by Dr. Jouria, Alpine prevented Dr. Jouria from performing his obligations pursuant to the Contracts.

108.     As a proximate result of Alpine's conduct, NetCE has suffered damages in an amount to be proven at trial.

109.     In addition, Alpine's conduct has permanently and irreparably harmed NetCE. NetCE is therefore entitled to injunctive relief.

110.     Alpine's aforementioned conduct was willful, malicious, fraudulent and in conscious disregard of NetCE's rights and interests and, on information and belief, was undertaken with the intent to injure NetCE's property and legal rights.  Accordingly, an award of punitive damages is justified.

**B.     Interference of Elite with NDA Signed by Alpine**

111.     The NDA between Alpine and NetCE is valid and enforceable.

112.     Upon information and belief, Elite was aware of  NetCE's NDA with Alpine.

113.     Elite intentionally interfered with the NDA between Alpine and NetCE by obtaining and utilizing confidential information about articles and courses NetCE was preparing to publish, subject matter NetCE was preparing to explore for future publication, and NetCE's

33

business strategy information and financials.  Upon information and belief, Elite also

intentionally interfered with the NDA between Alpine and NetCE by obtaining and reviewing

other confidential and proprietary information NetCE shared with Alpine.  Pursuant to the terms

of the NDA between Alpine and NetCE, all of this information was confidential and shared with

Alpine purely for the purposes of evaluating the propriety of purchasing NetCE.  In exploiting

this confidential and proprietary information, Elite prevented Alpine from fulfilling its

obligations under the contract.

114.    As a proximate result of Elite's conduct, NetCE has suffered damages in an

amount to be proven at trial.

115.    In addition, Elite's conduct has permanently and irreparably harmed NetCE.

NetCE is therefore entitled to injunctive relief.

116.    Elite's aforementioned conduct was willful, malicious, fraudulent and in

conscious disregard of NetCE's rights and interests and, on information and belief, was

undertaken with the intent to injure NetCE's property and legal rights.  Accordingly, an award of

punitive damages is justified.

### CLAIM FIVE: UNFAIR BUSINESS PRACTICES UNDER
### CALIFORNIA BUSINESS & PROFESSIONAL CODE, code § 17200 et seq
(Against Dr. Jouria)

117.    NetCE hereby repeats and re-alleges each and every allegation contained in

Paragraphs 1 to 81 of its counterclaims and third party claims as if fully set forth herein.

34

118.     A business practice or act is "unfair" under California Business and Professions Code § 17200 et seq. if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm.

119.     Dr. Jouria has engaged in unlawful, unfair, and fraudulent business acts.  Dr. Jouria read and signed each of the Freelance Writer Agreements.  Dr. Jouria submitted articles to NetCE corresponding to the subject matter NetCE approved in the Freelance Writer Agreements. Dr. Jouria was aware that NetCE employees spent a great deal of time fact- and source-checking, editing, and re-organizing the articles.  In flagrant disregard of the terms of the Freelance Writer Agreements and NetCE's efforts, Dr. Jouria submitted identical or substantially similar articles to one of NetCE's primary competitors.  Dr. Jouria's actions deprived NetCE completely of the fruits of NetCE's efforts.

120.     Dr. Jouria knew the actions described above were improper.

121.     Dr. Jouria's actions discussed herein constitute unfair competition within the meaning of California Business and Professions Code § 17200 et seq.

122.     NetCE at all times has acted with the utmost good faith.

123.     As a proximate result of Dr. Jouria's actions, consumers were erroneously led to believe that material Elite and Dr. Jouria published together was a product the Defendants had crafted together and that Elite had vetted.

124.     As a direct and proximate result of Dr. Jouria's actions, NetCE has suffered and will continue to suffer lost profits in an amount to be proven at trial.

#48112616_v1

125.    NetCE is entitled to preliminary and permanent injunctive relief that orders Dr. Jouria to cease this unfair competition and disgorge any profits associated with unfair competition.

### CLAIM SIX: MISAPPROPRIATION OF TRADE SECRETS UNDER FLORIDA'S UNIFORM TRADE SECRETS ACT (CIVIL CODE §§ 688.001 *et seq.*).
(Against Elite Continuing Education and Alpine)

126.    NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 to 81 of its counterclaims and third party claims as if fully set forth herein.

127.    NetCE has enjoyed, and continues to enjoy, an advantage over its existing and prospective competitors in the design, development, research, selection, publication, marketing, and sale of products and services because of the above-described confidential and proprietary information, including NetCE's strategies for the marketplace, industry reports regarding competitors, the competitive landscape, and consumer needs, NetCE's process for curating courses, and NetCE's financial performance data--histories and projections (not information copied from the public domain by Dr. Jouria or scientific or medical facts comprising the courses).

128.    NetCE has made reasonable efforts under the circumstances to preserve the confidentiality of its information, including without limitation, containing the dissemination of confidential and proprietary information to necessary NetCE personnel, instructing employees not to share such information beyond the company, and requiring Alpine to sign the NDA prior to revealing the proprietary and confidential information to Alpine.

129.    NetCE's proprietary and confidential information derives independent economic value from not being generally known to the public or to other persons who can obtain economic

value from their disclosure or use.  This is exemplified in part by the fact that NetCE was the vanguard continuing education provider in the subject matter of the courses at issue (as well as in the subject matter of its other courses, which are not at issue in this lawsuit).  As described above, the process by which NetCE selects and curates courses is time-consuming and costly.

130.    Alpine, by virtue of its NDA with NetCE, and Elite, by virtue of its awareness of the NDA and the knowledge that insider information about NetCE was confidential and proprietary, had a duty not to exploit or publicize NetCE's confidential and proprietary information without NetCE's authorizations.  Alpine and Elite knew or should have known that they had acquired such information under circumstances giving rise to a duty to maintain its secrecy or limit its use, and/or derived from or through a person who has such a duty and/or through improper means.  Nevertheless, Alpine disclosed this information to, at least, Elite, and Elite, even knowing that the information was confidential and proprietary and being shared impermissibly, exploited it, and even claimed some of the information as its own work product.

131.    Until it obtained NetCE's confidential information, upon information and belief, Elite had no plans to develop or publish course material in the subject matter of the seven (7) offending articles.

132.    Elite obtained the proprietary and confidential information described above (including without limitation NetCE's plans for future courses and NetCE's development work for courses to reach the market in a short time) from Alpine and not from generally available information or from Elite's own independent efforts.

133.    By their actions, Alpine and Elite have usurped NetCE's competitive advantage and stolen NetCE's market strategy, riding on NetCE's coattails into order to beat it to market

with a series of products.  But for Alpine's knowledge of NetCE's strategy, Elite would have not

had the notion to publish (for they certainly did not *develop*) the seven courses at issue.

134.    Both Alpine's and Elite's actions constitute misappropriation of NetCE's trade

secrets pursuant to Florida Civil Code §§ 688.001 *et seq.*

135.    Alpine's and Elite's actions were done willfully and maliciously, entitling NetCE

to exemplary damages.

136.    As a direct and proximate result of Alpine's and Elite's misappropriation of

NetCE's trade secrets, Elite (and Alpine) have been unjustly enriched, and NetCE has sustained

damages to be proven at trial.

137.    NetCE has also suffered irreparable harm as a result of Alpine's and Elite's

actions, and will continue to suffer irreparable injury that cannot be adequately remedied at law

unless Alpine and its officers, agents, and employees, and all other persons acting in concert with

it, and  Elite and *its* officers, agents, and employees, and all other persons acting in concert with

*it*, are enjoined from engaging in further acts of misappropriation.

138.    NetCE is entitled to attorneys' fees pursuant to § 688.005, Fla. Stat.

**PRAYER FOR RELIEF**

WHEREFORE, NetCE prays for judgment against Counter-Defendant and Third-Party

Defendants (collectively, "Defendants") as follows:

1.      For entry of judgment against Defendants on all Claims for Relief;

2.      Pursuant to this Court's equity powers and 28 U.S.C. § 2202, for an injunction

permanently requiring Dr. Jouria and all persons or entities acting in concert with him or at his

38

behest to refrain from independently publishing, reproducing, distributing, or placing in the market the copyrighted works of NetCE or any derivative work thereof;

requiring Elite to (a) refrain from publishing, reproducing, distributing, or placing in the market the copyrighted works of NetCE or any derivative work thereof and to (b) destroy any existing unauthorized reproductions or disseminations of the copyrighted works of NetCE;

and requiring Alpine to refrain from sharing, disseminating, or in any way using the confidential and proprietary information it obtained from NetCE pursuant to the NDA;

3.      Pursuant to this Court's equity powers and 28 U.S.C.  § 2202, for an injunction requiring Dr. Jouria and Elite to return any copies of NetCE copyrighted material or any derivative work thereof unlawful obtained, reproduced, or copied and to fully disclose, under penalty of perjury, the names and whereabouts of all persons to whom, and entities to which, such information has been further distributed by them;

4.      Pursuant to this Court's equity powers and 28 U.S.C. § 2202 for an order providing for the impoundment, destruction, or other reasonable disposition of all complete or partial copies of the copyrightable protected material in the possession or control of Elite, or Alpine and a complete disclosure of the location of any such copies;

5.      For compensatory and actual damages in an amount according to proof;

6.      For an award of exemplary damages;

7.      For an award of punitive damages;

8.      For an award reflecting the amount by which Defendants have been unjustly enriched;

9.      For reasonable royalties;

10.     For disgorgement of profits from the infringing activity;

11.     For costs of suit and reasonable attorneys' fees incurred in the course of this litigation;

12.     For an award of statutory damages;

13.     For post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

14.     For pre-judgment interest, at the maximum rate allowed by U.S. Copyright Law; and

For such other relief as the Court deems just and proper.


Dated: September 23, 2016                    HOLLAND & KNIGHT LLP


                                             */s/ Philip E. Rothschild*
                                             Philip E. Rothschild
                                             Florida Bar No. 0088536
                                             Email: phil.rothschild@hklaw.com
                                             HOLLAND & KNIGHT LLP
                                             515 East Las Olas Blvd., 12th Floor
                                             Fort Lauderdale, FL 33301
                                             Telephone:   (954)525-1000
                                             Facsimile:   (954)463-2030

                                             */s/ John P. Kern*
                                             John P. Kern, Esq. (*pro hac vice*)
                                             Email: john.kern@hklaw.com
                                             Jessica E. Lanier, Esq. (*pro hac vice*)
                                             Email: Jessica.Lanier@hklaw.com
                                             HOLLAND & KNIGHT LLP
                                             50 California Street, Suite 2800
                                             San Francisco, CA 94111
                                             Telephone:   (415)743-6918
                                             Facsimile:   (415)743-6910

                                             *Attorneys for CE RESOURCE, INC. d/b/a*
                                             *CME RESOURCE and NetCE*


40

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S.

Mail and electronic mail on September 23, 2016 on all counsel or parties of record on the Service

List below.

/s/ Philip E. Rothschild
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
4801 S. University Drive
Suite 237
Fort Lauderdale, FL 33328
Email:  prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*
*[VIA E-MAIL]*

41