Exhibit B



This Freelance Writer Agreement (the "*Agreement*") is entered into by **Jassin Jouria, Jr, MD** ("*Writer*"), and CME Resource ("*CME*").

In consideration of the mutual covenants made herein, the parties agree as follows:

1.     **Parties:**  Writer is engaged in the business of writing articles and other materials on a freelance basis.  CME is engaged in the business of the publication of continuing education materials for medical, nursing, dental and other practitioners.

2.     **Relationship:**  The parties expressly agree and acknowledge that the relationship created by this Agreement is one of independent contractor.  CME is not the employer of Writer, and Writer is not, and will not be treated as, an employee of CME for federal tax purposes, or any other purpose.

3.     **Contract Period:**  This Agreement will begin on the date set forth below and shall continue until terminated as provided herein.  If either party violates a term of this Agreement, then the other party (the "*Nonbreaching Party*") may terminate this Agreement, effective immediately upon delivery of written notice of termination by the Nonbreaching Party.  Notwithstanding the foregoing, CME may terminate this Agreement at any time, with or without cause, effective upon thirty (30) days written notice.

4.     **Services to be Provided by Writer:**  Writer agrees to submit, on his or her sole initiative or at the request of CME, written articles to CME on the subjects and in such format and at such times as set forth in <u>Attachment 1</u> (the "Articles").  <u>Attachment 1</u> may be revised from time to time by mutual written agreement between parties.

5.     **Representations and Warranties of Writer:**  By submitting an Article to CME, Writer represents and warrants the following: (a) the Article is accurate and is Writer's original work, (b) the Article has not been obtained by unlawful means and is not owned by any third party, (c) Writer has not submitted the Article to any other party for publication nor has the Article been previously published in any manner or medium, specifically including but not limited to, print or electronic medium, (d) Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article, and (e) the Article by CME will not infringe or violate any copyright or other intellectual property right, privacy rights, publicity rights or any other rights of any third party.

POST OFFICE BOX 997571 • SACRAMENTO, CALIFORNIA 95899-7571
1482 STONE POINT DRIVE • SUITE 120 • ROSEVILLE, CALIFORNIA 95661
PHONE: 800/232-4238 • FAX: 916/783-6067 • WWW.NETCE.COM

1

6.      **Indemnification:**  Writer shall indemnify and hold harmless CME and its agents, directors, employees, licensees and affiliates from and against any claim, loss, damage, liability and expenses (including reasonable attorneys' fees and costs associated therewith) arising from any breach of any of Writer's representations or warranties contained in this Agreement.  Writer shall cooperate with CME if any complaints, claims or litigation should arise regarding the Articles.

7.      **Compensation:** CME agrees to pay Writer **$400** per credit per Article to be published by CME with payments not to exceed an aggregate amount of **$12000** per Article. For purposes of this Agreement, one "credit" is equal to approximately 2,000 words. Under no circumstances will Writer be paid on an hourly, daily or other basis that is a function of time. Writer acknowledges and agrees that CME will only pay writer for Articles that are approved for publication by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer.

8.      **Taxes:**  As an independent contractor, Writer shall be responsible for the reporting, deposit and payment of any and all federal, state, and local taxes, including but not limited to income taxes, FICA taxes, and unemployment taxes incidental to the performance of, or payment under, this Agreement.

9.      **Ownership and Assignment of Intellectual Property:**  Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME.  Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be "works made for hire" under all relevant copyright laws, and CME shall be deemed to be the author thereof.  If and to the extent any Article is determined not to constitute "works made for hire," Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article.  Writer agrees to cooperate with and assist CME in applying for, and executing any applications and/or assignments reasonably necessary to record and evidence CME's rights in the Articles.  Writer hereby appoints CME as his or her attorney-in-fact in the event that Writer does not or cannot perform his or her obligations regarding the ownership and assignment of the Articles, and only for such limited purposes.  Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with CME in editing, fact

2

checking and otherwise reviewing the Articles prior to publication. Writer will be credited as the original author of the Article in any and every republication. Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that CME removes Writer's name from said Article.

10. **Miscellaneous:** This Agreement will be governed by and under the laws of the State of California without regard to its conflicts of laws provisions. This Agreement may be modified only by a written amendment executed by Writer and a duly authorized officer of CME. Any failure by either party to enforce any of the provisions of this Agreement will not be construed as a waiver of such provisions or the right of a party thereafter to enforce each and every such provision. This Agreement constitutes the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

**CME Resource has not received commercial support for the development of this article. CME Resource is obligated to ensure that potential and/or real conflicts of interest of faculty and their immediate family are identified and resolved to preserve the integrity of the content presented.**

11. **Disclosure:** Writer agrees to list below all affiliations with or financial involvement within the last twelve (12) months in any organization or entity with a direct financial interest in the subject matter or materials of the research discussed. Writer also agrees to list below all unlabeled or investigational use of commercial products to be discussed in the article. Refusal to disclose will result in disqualification.

A. Will your article include discussion of any commercial products or services?
Yes _____ No ___✓___ (If No, skip to question B.)

If Yes, in the last twelve (12) months have you or members of your immediate family (spouse or partner) had any relevant financial interest or other relationship with the manufacturer(s) of any of the products or provider(s) of any of the services you intend to cover? *A relevant financial interest or relationship is defined as benefiting by receiving a salary, royalty, intellectual property rights, consulting fee, honoraria, ownership interest (e.g., stocks, stock options or other ownership interest **in any amount**, excluding diversified mutual funds) or other financial benefit (e.g., employment, management position, independent contractor including contracted research, consulting, speaking and teaching, membership on advisory committees or review panels, board membership, and other activities from which remuneration is received, or expected).*
Yes _____ No ___✓___



3

If Yes, please list the manufacturer(s) or provider(s) and describe the nature of the relationship(s).

_____

_____

B. Do you anticipate your article will include discussion of unlabeled use of commercial products? *(Commercial product does not have an FDA-approval indication for the use you will be discussing.)*

Yes_____    No___✓___

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

C. Do you anticipate your article will include discussion of investigational use of commercial products? *(Commercial product is not approved by the FDA for any purpose.)*

Yes_____    No___✓___

Name of commercial product: _____
Investigational use to be discussed: _____

_____

Name of commercial product: _____
Investigational use to be discussed: _____

_____

12.    If any images are included in an Article, Writer agrees not to edit, modify, or falsify such images.

13.    The course completion date of this project is: **March 31, 2013**. On this date, **CME Resource** must physically have all units of **The Lymphatic and Immune Systems: A Comprehensive Review**.

This contract becomes null and void if not received by **CME Resource** by **June 7, 2012**. If there are any addendums or special requirements **Jassin Jouria, Jr, MD** desires of this contract, they must be submitted in writing to **CME Resource** prior to this date and a revised contract issued.



4

This Agreement is entered into on this 10ᵗʰ day of _MAY_ 20 12.

**Writer**

Jassin Jouria, Jr, MD

[WRITER'S SOCIAL SECURITY #]

**CME Resource**

By: _scampbell_

Name: **SARAH CAMPBELL**

Title: **DIRECTOR OF DEVELOPMENT**

5

**Attachment I**

Subjects on which CME may accept Articles from Writer:

<u>The Lymphatic and Immune Systems: A Comprehensive Review</u>



This Freelance Writer Agreement (the "***Agreement***") is entered into by **Jassin M. Jouria, Jr., MD** ("***Writer***"), and CME Resource ("***CME***").

In consideration of the mutual covenants made herein, the parties agree as follows:

1.    **Parties:** Writer is engaged in the business of writing articles and other materials on a freelance basis. CME is engaged in the business of the publication of continuing education materials for medical, nursing, dental and other practitioners.

2.    **Relationship:** The parties expressly agree and acknowledge that the relationship created by this Agreement is one of independent contractor. CME is not the employer of Writer, and Writer is not, and will not be treated as, an employee of CME for federal tax purposes, or any other purpose.

3.    **Contract Period:** This Agreement will begin on the date set forth below and shall continue until terminated as provided herein. If either party violates a term of this Agreement, then the other party (the "***Nonbreaching Party***") may terminate this Agreement, effective immediately upon delivery of written notice of termination by the Nonbreaching Party. Notwithstanding the foregoing, CME may terminate this Agreement at any time, with or without cause, effective upon thirty (30) days written notice.

4.    **Services to be Provided by Writer:** Writer agrees to submit, on his or her sole initiative or at the request of CME, written articles to CME on the subjects and in such format and at such times as set forth in Attachment 1 (the "Articles"). Attachment 1 may be revised from time to time by mutual written agreement between parties.

5.    **Representations and Warranties of Writer:** By submitting an Article to CME, Writer represents and warrants the following: (a) the Article is accurate and is Writer's original work, (b) the Article has not been obtained by unlawful means and is not owned by any third party, (c) Writer has not submitted the Article to any other party for publication nor has the Article been previously published in any manner or medium, specifically including but not limited to, print or electronic medium, (d) Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article, and (e) the Article by CME will not infringe or violate any copyright or other intellectual property right, privacy rights, publicity rights or any other rights of any third party.

6.      **Indemnification:** Writer shall indemnify and hold harmless CME and its agents, directors, employees, licensees and affiliates from and against any claim, loss, damage, liability and expenses (including reasonable attorneys' fees and costs associated therewith) arising from any breach of any of Writer's representations or warranties contained in this Agreement.  Writer shall cooperate with CME if any complaints, claims or litigation should arise regarding the Articles.

7.      **Compensation:** CME agrees to pay Writer **$400** per credit per Article to be published by CME with payments not to exceed an aggregate amount of **$12000** per Article. For purposes of this Agreement, one "credit" is equal to approximately 2,000 words. Under no circumstances will Writer be paid on an hourly, daily or other basis that is a function of time. Writer acknowledges and agrees that CME will only pay writer for Articles that are approved for publication by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer.

8.      **Taxes:**  As an independent contractor, Writer shall be responsible for the reporting, deposit and payment of any and all federal, state, and local taxes, including but not limited to income taxes, FICA taxes, and unemployment taxes incidental to the performance of, or payment under, this Agreement.

9.      **Ownership and Assignment of Intellectual Property:**  Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME.  Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be "works made for hire" under all relevant copyright laws, and CME shall be deemed to be the author thereof.  If and to the extent any Article is determined not to constitute "works made for hire," Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article.  Writer agrees to cooperate with and assist CME in applying for, and executing any applications and/or assignments reasonably necessary to record and evidence CME's rights in the Articles.  Writer hereby appoints CME as his or her attorney-in-fact in the event that Writer does not or cannot perform his or her obligations regarding the ownership and assignment of the Articles, and only for such limited purposes.  Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with CME in editing, fact



2

checking and otherwise reviewing the Articles prior to publication. Writer will be credited as the original author of the Article in any and every republication. Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that CME removes Writer's name from said Article.

10. **Miscellaneous:** This Agreement will be governed by and under the laws of the State of California without regard to its conflicts of laws provisions. This Agreement may be modified only by a written amendment executed by Writer and a duly authorized officer of CME. Any failure by either party to enforce any of the provisions of this Agreement will not be construed as a waiver of such provisions or the right of a party thereafter to enforce each and every such provision. This Agreement constitutes the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

**CME Resource has not received commercial support for the development of this article. CME Resource is obligated to ensure that potential and/or real conflicts of interest of faculty and their immediate family are identified and resolved to preserve the integrity of the content presented.**

11. **Disclosure:** Writer agrees to list below all affiliations with or financial involvement within the last twelve (12) months in any organization or entity with a direct financial interest in the subject matter or materials of the research discussed. Writer also agrees to list below all unlabeled or investigational use of commercial products to be discussed in the article. Refusal to disclose will result in disqualification.

A. Will your article include discussion of any commercial products or services?
Yes _____ No _____     (If No, skip to question B.)

If Yes, in the last twelve (12) months have you or members of your immediate family (spouse or partner) had any relevant financial interest or other relationship with the manufacturer(s) of any of the products or provider(s) of any of the services you intend to cover? *A relevant financial interest or relationship is defined as benefiting by receiving a salary, royalty, intellectual property rights, consulting fee, honoraria, ownership interest (e.g., stocks, stock options or other ownership interest in any amount, excluding diversified mutual funds) or other financial benefit (e.g., employment, management position, independent contractor including contracted research, consulting, speaking and teaching, membership on advisory committees or review panels, board membership, and other activities from which remuneration is received, or expected).*
Yes _____ No _____



3

If Yes, please list the manufacturer(s) or provider(s) and describe the nature of the relationship(s).

_____

_____

B. Do you anticipate your article will include discussion of unlabeled use of commercial products? *(Commercial product does not have an FDA-approval indication for the use you will be discussing.)*
Yes_____      No____✓____

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

C. Do you anticipate your article will include discussion of investigational use of commercial products? *(Commercial product is not approved by the FDA for any purpose.)*
Yes_____      No____✓____

Name of commercial product: _____
Investigational use to be discussed: _____

_____

Name of commercial product: _____
Investigational use to be discussed: _____

_____

12.      If any images are included in an Article, Writer agrees not to edit, modify, or falsify such images.

13.      The course completion date of this project is: **July 31, 2013**. On this date, **CME Resource** must physically have all units of **Depression and Dementia in the Elderly**.

This contract becomes null and void if not received by **CME Resource** by **April 15, 2013**. If there are any addendums or special requirements **Jassin M. Jouria, Jr., MD** desires of this contract, they must be submitted in writing to **CME Resource** prior to this date and a revised contract issued.

4

This Agreement is entered into on this _5ᵀᴴ_ day of _April_____ 20_13_.

**Writer**

_____
Jassin M. Jouria, Jr., MD

███ ████████
_____
[WRITER'S SOCIAL SECURITY #]

**CME Resource**

By: _scampbell_____

Name: **SARAH CAMPBELL**

Title: **DIRECTOR OF DEVELOPMENT**

5

**Attachment 1**

Subjects on which CME may accept Articles from Writer:

<u>Depression and Dementia in the Elderly</u>

10/12/2012 Fri 18:10 / ID: #322220

This Freelance Writer Agreement (the "*Agreement*") is entered into by **Jassin Jouria, Jr. MD** ("*Writer*"), and CME Resource ("*CME*").

In consideration of the mutual covenants made herein, the parties agree as follows:

1.     **Parties:**  Writer is engaged in the business of writing articles and other materials on a freelance basis.  CME is engaged in the business of the publication of continuing education materials for medical, nursing, dental and other practitioners.

2.     **Relationship:**  The parties expressly agree and acknowledge that the relationship created by this Agreement is one of independent contractor.  CME is not the employer of Writer, and Writer is not, and will not be treated as, an employee of CME for federal tax purposes, or any other purpose.

3.     **Contract Period:**  This Agreement will begin on the date set forth below and shall continue until terminated as provided herein.  If either party violates a term of this Agreement, then the other party (the "*Nonbreaching Party*") may terminate this Agreement, effective immediately upon delivery of written notice of termination by the Nonbreaching Party.  Notwithstanding the foregoing, CME may terminate this Agreement at any time, with or without cause, effective upon thirty (30) days written notice.

4.     **Services to be Provided by Writer:**  Writer agrees to submit, on his or her sole initiative or at the request of CME, written articles to CME on the subjects and in such format and at such times as set forth in Attachment 1 (the "Articles").  Attachment 1 may be revised from time to time by mutual written agreement between parties.

5.     **Representations and Warranties of Writer:**  By submitting an Article to CME, Writer represents and warrants the following:  (a) the Article is accurate and is Writer's original work, (b) the Article has not been obtained by unlawful means and is not owned by any third party, (c) Writer has not submitted the Article to any other party for publication nor has the Article been previously published in any manner or medium, specifically including but not limited to, print or electronic medium, (d) Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article, and (e) the Article by CME will not infringe or violate any copyright or other intellectual property right, privacy rights, publicity rights or any other rights of any third party.

6.    **Indemnification:** Writer shall indemnify and hold harmless CME and its agents, directors, employees, licensees and affiliates from and against any claim, loss, damage, liability and expenses (including reasonable attorneys' fees and costs associated therewith) arising from any breach of any of Writer's representations or warranties contained in this Agreement. Writer shall cooperate with CME if any complaints, claims or litigation should arise regarding the Articles.

7.    **Compensation:** CME agrees to pay Writer **$400** per credit per Article to be published by CME with payments not to exceed an aggregate amount of **$12000** per Article. For purposes of this Agreement, one "credit" is equal to approximately 2,000 words. Under no circumstances will Writer be paid on an hourly, daily or other basis that is a function of time. Writer acknowledges and agrees that CME will only pay writer for Articles that are approved for publication by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer.

8.    **Taxes:** As an independent contractor, Writer shall be responsible for the reporting, deposit and payment of any and all federal, state, and local taxes, including but not limited to income taxes, FICA taxes, and unemployment taxes incidental to the performance of, or payment under, this Agreement.

9.    **Ownership and Assignment of Intellectual Property:** Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME. Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be "works made for hire" under all relevant copyright laws, and CME shall be deemed to be the author thereof. If and to the extent any Article is determined not to constitute "works made for hire," Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article. Writer agrees to cooperate with and assist CME in applying for, and executing any applications and/or assignments reasonably necessary to record and evidence CME's rights in the Articles. Writer hereby appoints CME as his or her attorney-in-fact in the event that Writer does not or cannot perform his or her obligations regarding the ownership and assignment of the Articles, and only for such limited purposes. Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with CME in editing, fact



2

checking and otherwise reviewing the Articles prior to publication. Writer will be credited as the original author of the Article in any and every republication. Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that CME removes Writer's name from said Article.

     10.   **Miscellaneous:** This Agreement will be governed by and under the laws of the State of California without regard to its conflicts of laws provisions. This Agreement may be modified only by a written amendment executed by Writer and a duly authorized officer of CME. Any failure by either party to enforce any of the provisions of this Agreement will not be construed as a waiver of such provisions or the right of a party thereafter to enforce each and every such provision. This Agreement constitutes the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

**CME Resource has not received commercial support for the development of this article. CME Resource is obligated to ensure that potential and/or real conflicts of interest of faculty and their immediate family are identified and resolved to preserve the integrity of the content presented.**

     11.   **Disclosure:** Writer agrees to list below all affiliations with or financial involvement within the last twelve (12) months in any organization or entity with a direct financial interest in the subject matter or materials of the research discussed. Writer also agrees to list below all unlabeled or investigational use of commercial products to be discussed in the article. Refusal to disclose will result in disqualification.

  A. Will your article include discussion of any commercial products or services?
     Yes _____ No ___✓___    (If No, skip to question B.)

     If Yes, in the last twelve (12) months have you or members of your immediate family (spouse or partner) had any relevant financial interest or other relationship with the manufacturer(s) of any of the products or provider(s) of any of the services you intend to cover? *A relevant financial interest or relationship is defined as benefiting by receiving a salary, royalty, intellectual property rights, consulting fee, honoraria, ownership interest (e.g., stocks, stock options or other ownership interest in any amount, excluding diversified mutual funds) or other financial benefit (e.g., employment, management position, independent contractor including contracted research, consulting, speaking and teaching, membership on advisory committees or review panels, board membership, and other activities from which remuneration is received, or expected).*
     Yes _____ No _____

3

If Yes, please list the manufacturer(s) or provider(s) and describe the nature of the relationship(s).

_____

_____

~~B. Do you anticipate your article~~ will include discussion of unlabeled use of ~~commercial products? (Commer~~cial *product does not have an FDA-approval* ~~for the use you will be~~ *discussing.)*

~~Yes_____     No_____~~

~~Unlabeled use to be discussed:~~ _____

_____

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

C.  Do you anticipate your article will include discussion of investigational use of commercial products? *(Commercial product is not approved by the FDA for any purpose.)*

Yes_____     No __✓__

Name of commercial product: _____
Investigational use to be discussed: _____

_____

Name of commercial product: _____
Investigational use to be discussed: _____

_____

12.     If any images are included in an Article, Writer agrees not to edit, modify, or falsify such images.

13.     The course completion date of this project is: **June 30, 2013**. On this date, **CME Resource** must physically have all units of **Non-Antibiotic Antimicrobial Pharmacology: A Review**.

This contract becomes null and void if not received by **CME Resource** by **October 31, 2012**. If there are any addendums or special requirements **Jassin Jouria, Jr. MD** desires of this contract, they must be submitted in writing to **CME Resource** prior to this date and a revised contract issued.

4

This Agreement is entered into on this 12ᵗʰ day of OCTOBER 2012.

**Writer**                                    **CME Resource**

_____              By: _____
Jassin Jouria, Jr. MD

X_____              Name: **SARAH CAMPBELL**

[WRITER'S SOCIAL SECURITY #]              Title: **DIRECTOR OF DEVELOPMENT**

5



**CME**
RESOURCE
Continuing Medical Education

This Freelance Writer Agreement (the "**Agreement**") is entered into by **Jassin Jouria, Jr., MD** ("**Writer**"), and CME Resource ("**CME**").

In consideration of the mutual covenants made herein, the parties agree as follows:

1.      **Parties:**  Writer is engaged in the business of writing articles and other materials on a freelance basis.  CME is engaged in the business of the publication of continuing education materials for medical, nursing, dental and other practitioners.

2.      **Relationship:**  The parties expressly agree and acknowledge that the relationship created by this Agreement is one of independent contractor.  CME is not the employer of Writer, and Writer is not, and will not be treated as, an employee of CME for federal tax purposes, or any other purpose.

3.      **Contract Period:**  This Agreement will begin on the date set forth below and shall continue until terminated as provided herein.  If either party violates a term of this Agreement, then the other party (the "**Nonbreaching Party**") may terminate this Agreement, effective immediately upon delivery of written notice of termination by the Nonbreaching Party.  Notwithstanding the foregoing, CME may terminate this Agreement at any time, with or without cause, effective upon thirty (30) days written notice.

4.      **Services to be Provided by Writer:**  Writer agrees to submit, on his or her sole initiative or at the request of CME, written articles to CME on the subjects and in such format and at such times as set forth in Attachment 1 (the "Articles").  Attachment 1 may be revised from time to time by mutual written agreement between parties.

5.      **Representations and Warranties of Writer:**  By submitting an Article to CME, Writer represents and warrants the following:  (a) the Article is accurate and is Writer's original work, (b) the Article has not been obtained by unlawful means and is not owned by any third party, (c) Writer has not submitted the Article to any other party for publication nor has the Article been previously published in any manner or medium, specifically including but not limited to, print or electronic medium, (d) Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article, and (e) the Article by CME will not infringe or violate any copyright or other intellectual property right, privacy rights, publicity rights or any other rights of any third party.

6. **Indemnification:** Writer shall indemnify and hold harmless CME and its agents, directors, employees, licensees and affiliates from and against any claim, loss, damage, liability and expenses (including reasonable attorneys' fees and costs associated therewith) arising from any breach of any of Writer's representations or warranties contained in this Agreement. Writer shall cooperate with CME if any complaints, claims or litigation should arise regarding the Articles.

7. **Compensation:** CME agrees to pay Writer **$400** per credit per Article to be published by CME with payments not to exceed an aggregate amount of **$4000** per Article. For purposes of this Agreement, one "credit" is equal to approximately 2,000 words. Under no circumstances will Writer be paid on an hourly, daily or other basis that is a function of time. Writer acknowledges and agrees that CME will only pay writer for Articles that are approved for publication by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer.

8. **Taxes:** As an independent contractor, Writer shall be responsible for the reporting, deposit and payment of any and all federal, state, and local taxes, including but not limited to income taxes, FICA taxes, and unemployment taxes incidental to the performance of, or payment under, this Agreement.

9. **Ownership and Assignment of Intellectual Property:** Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME. Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be "works made for hire" under all relevant copyright laws, and CME shall be deemed to be the author thereof. If and to the extent any Article is determined not to constitute "works made for hire," Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article. Writer agrees to cooperate with and assist CME in applying for, and executing any applications and/or assignments reasonably necessary to record and evidence CME's rights in the Articles. Writer hereby appoints CME as his or her attorney-in-fact in the event that Writer does not or cannot perform his or her obligations regarding the ownership and assignment of the Articles, and only for such limited purposes. Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with CME in editing, fact

2

checking and otherwise reviewing the Articles prior to publication. Writer will be credited as the original author of the Article in any and every republication. Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that CME removes Writer's name from said Article.

10. **Miscellaneous:** This Agreement will be governed by and under the laws of the State of California without regard to its conflicts of laws provisions. This Agreement may be modified only by a written amendment executed by Writer and a duly authorized officer of CME. Any failure by either party to enforce any of the provisions of this Agreement will not be construed as a waiver of such provisions or the right of a party thereafter to enforce each and every such provision. This Agreement constitutes the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

**CME Resource has not received commercial support for the development of this article. CME Resource is obligated to ensure that potential and/or real conflicts of interest of faculty and their immediate family are identified and resolved to preserve the integrity of the content presented.**

11. **Disclosure:** Writer agrees to list below all affiliations with or financial involvement within the last twelve (12) months in any organization or entity with a direct financial interest in the subject matter or materials of the research discussed. Writer also agrees to list below all unlabeled or investigational use of commercial products to be discussed in the article. Refusal to disclose will result in disqualification.

A. Will your article include discussion of any commercial products or services? Yes _____ No __✓__ (If No, skip to question B.)

If Yes, in the last twelve (12) months have you or members of your immediate family (spouse or partner) had any relevant financial interest or other relationship with the manufacturer(s) of any of the products or provider(s) of any of the services you intend to cover? *A relevant financial interest or relationship is defined as benefiting by receiving a salary, royalty, intellectual property rights, consulting fee, honoraria, ownership interest (e.g., stocks, stock options or other ownership interest in any amount, excluding diversified mutual funds) or other financial benefit (e.g., employment, management position, independent contractor including contracted research, consulting, speaking and teaching, membership on advisory committees or review panels, board membership, and other activities from which remuneration is received, or expected).* Yes _____ No _____

3

If Yes, please list the manufacturer(s) or provider(s) and describe the nature of the relationship(s).

_____

_____

B. Do you anticipate your article will include discussion of unlabeled use of commercial products? *(Commercial product does not have an FDA-approval indication for the use you will be discussing.)*
Yes_____    No___✓___

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

C. Do you anticipate your article will include discussion of investigational use of commercial products? *(Commercial product is not approved by the FDA for any purpose.)*
Yes_____    No___✓___

Name of commercial product: _____
Investigational use to be discussed: _____

_____

Name of commercial product: _____
Investigational use to be discussed: _____

_____

12.      If any images are included in an Article, Writer agrees not to edit, modify, or falsify such images.

13.      The course completion date of this project is: **March 31, 2013**. On this date, **CME Resource** must physically have all units of **Traumatic Brain Injury**.

This contract becomes null and void if not received by **CME Resource** by **September 27, 2012**. If there are any addendums or special requirements **Jassin Jouria, Jr., MD** desires of this contract, they must be submitted in writing to **CME Resource** prior to this date and a revised contract issued.

4

This Agreement is entered into on this 24 day of _August_ 20 12.

**Writer**                                    **CME Resource**

By: _campbell_

Jassin Jouria, Jr., MD

Name: **SARAH CAMPBELL**

Title: **DIRECTOR OF DEVELOPMENT**

[WRITER'S SOCIAL SECURITY #]

5

**Attachment 1**

Subjects on which CME may accept Articles from Writer:

Traumatic Brain Injury



**CME**
RESOURCE
Continuing Medical Education

This Freelance Writer Agreement (the "*Agreement*") is entered into by **Jassin Jouria, Jr., MD** ("*Writer*"), and CME Resource ("*CME*").

In consideration of the mutual covenants made herein, the parties agree as follows:

1.      **Parties:**  Writer is engaged in the business of writing articles and other materials on a freelance basis.  CME is engaged in the business of the publication of continuing education materials for medical, nursing, dental and other practitioners.

2.      **Relationship:**  The parties expressly agree and acknowledge that the relationship created by this Agreement is one of independent contractor.  CME is not the employer of Writer, and Writer is not, and will not be treated as, an employee of CME for federal tax purposes, or any other purpose.

3.      **Contract Period:**  This Agreement will begin on the date set forth below and shall continue until terminated as provided herein.  If either party violates a term of this Agreement, then the other party (the "*Nonbreaching Party*") may terminate this Agreement, effective immediately upon delivery of written notice of termination by the Nonbreaching Party.  Notwithstanding the foregoing, CME may terminate this Agreement at any time, with or without cause, effective upon thirty (30) days written notice.

4.      **Services to be Provided by Writer:**  Writer agrees to submit, on his or her sole initiative or at the request of CME, written articles to CME on the subjects and in such format and at such times as set forth in Attachment 1 (the "Articles").  Attachment 1 may be revised from time to time by mutual written agreement between parties.

5.      **Representations and Warranties of Writer:**  By submitting an Article to CME, Writer represents and warrants the following:  (a) the Article is accurate and is Writer's original work, (b) the Article has not been obtained by unlawful means and is not owned by any third party, (c) Writer has not submitted the Article to any other party for publication nor has the Article been previously published in any manner or medium, specifically including but not limited to, print or electronic medium, (d) Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article, and (e) the Article by CME will not infringe or violate any copyright or other intellectual property right, privacy rights, publicity rights or any other rights of any third party.



1

6.     **Indemnification:** Writer shall indemnify and hold harmless CME and its agents, directors, employees, licensees and affiliates from and against any claim, loss, damage, liability and expenses (including reasonable attorneys' fees and costs associated therewith) arising from any breach of any of Writer's representations or warranties contained in this Agreement. Writer shall cooperate with CME if any complaints, claims or litigation should arise regarding the Articles.

7.     **Compensation:** CME agrees to pay Writer **$400** per credit per Article to be published by CME with payments not to exceed an aggregate amount of **$12000** per Article. For purposes of this Agreement, one "credit" is equal to approximately 2,000 words. Under no circumstances will Writer be paid on an hourly, daily or other basis that is a function of time. Writer acknowledges and agrees that CME will only pay writer for Articles that are approved for publication by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer.

8.     **Taxes:** As an independent contractor, Writer shall be responsible for the reporting, deposit and payment of any and all federal, state, and local taxes, including but not limited to income taxes, FICA taxes, and unemployment taxes incidental to the performance of, or payment under, this Agreement.

9.     **Ownership and Assignment of Intellectual Property:** Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME. Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be "works made for hire" under all relevant copyright laws, and CME shall be deemed to be the author thereof. If and to the extent any Article is determined not to constitute "works made for hire," Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article. Writer agrees to cooperate with and assist CME in applying for, and executing any applications and/or assignments reasonably necessary to record and evidence CME's rights in the Articles. Writer hereby appoints CME as his or her attorney-in-fact in the event that Writer does not or cannot perform his or her obligations regarding the ownership and assignment of the Articles, and only for such limited purposes. Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with CME in editing, fact

2

checking and otherwise reviewing the Articles prior to publication. Writer will be credited as the original author of the Article in any and every republication. Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that CME removes Writer's name from said Article.

10.     **Miscellaneous:** This Agreement will be governed by and under the laws of the State of California without regard to its conflicts of laws provisions. This Agreement may be modified only by a written amendment executed by Writer and a duly authorized officer of CME. Any failure by either party to enforce any of the provisions of this Agreement will not be construed as a waiver of such provisions or the right of a party thereafter to enforce each and every such provision. This Agreement constitutes the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

**CME Resource has not received commercial support for the development of this article. CME Resource is obligated to ensure that potential and/or real conflicts of interest of faculty and their immediate family are identified and resolved to preserve the integrity of the content presented.**

11.     **Disclosure:** Writer agrees to list below all affiliations with or financial involvement within the last twelve (12) months in any organization or entity with a direct financial interest in the subject matter or materials of the research discussed. Writer also agrees to list below all unlabeled or investigational use of commercial products to be discussed in the article. Refusal to disclose will result in disqualification.

A.  Will your article include discussion of any commercial products or services?
Yes _____ No ___✓___     (If No, skip to question B.)

If Yes, in the last twelve (12) months have you or members of your immediate family (spouse or partner) had any relevant financial interest or other relationship with the manufacturer(s) of any of the products or provider(s) of any of the services you intend to cover? *A relevant financial interest or relationship is defined as benefiting by receiving a salary, royalty, intellectual property rights, consulting fee, honoraria, ownership interest (e.g., stocks, stock options or other ownership interest in any amount, excluding diversified mutual funds) or other financial benefit (e.g., employment, management position, independent contractor including contracted research, consulting, speaking and teaching, membership on advisory committees or review panels, board membership, and other activities from which remuneration is received, or expected).*
Yes _____ No _____

   3

If Yes, please list the manufacturer(s) or provider(s) and describe the nature of the relationship(s).

_____

_____

B. Do you anticipate your article will include discussion of unlabeled use of commercial products? *(Commercial product does not have an FDA-approval indication for the use you will be discussing.)*
   Yes_____    No___✓___

   Name of commercial product: _____
   Unlabeled use to be discussed: _____

   _____

   Name of commercial product: _____
   Unlabeled use to be discussed: _____

   _____

C. Do you anticipate your article will include discussion of investigational use of commercial products? *(Commercial product is not approved by the FDA for any purpose.)*
   Yes_____    No___✓___

   Name of commercial product: _____
   Investigational use to be discussed: _____

   _____

   Name of commercial product: _____
   Investigational use to be discussed: _____

   _____

   12.    If any images are included in an Article, Writer agrees not to edit, modify, or falsify such images.

   13.    The course completion date of this project is: **December 31, 2013**. On this date, CME Resource must physically have all units of **Cancer and Chemotherapy**.

This contract becomes null and void if not received by CME Resource by **January 31, 2013**. If there are any addendums or special requirements **Jassin Jouria, Jr., MD** desires of this contract, they must be submitted in writing to CME Resource prior to this date and a revised contract issued.

4

This Agreement is entered into on this _15th_ day of ____JANUARY____ 20 _13_.

**Writer**

_[signature]_
_____
Jassin Jouria, Jr., MD

_[redacted]_
_____
[WRITER'S SOCIAL SECURITY #]

**CME Resource**

By: _campbell_____

Name: **SARAH CAMPBELL**

Title: **DIRECTOR OF DEVELOPMENT**

5

**Attachment 1**

Subjects on which CME may accept Articles from Writer:

<u>Cancer and Chemotherapy</u>

| Form **W-9** (Rev. December 2011) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | Give Form to the requester. Do not send it to the IRS. |

**Name (as shown on your income tax return)**
JASSIN M. JOURIA, JR.

**Business name/disregarded entity name, if different from above**

Check appropriate box for federal tax classification:

[✓] Individual/sole proprietor  [ ] C Corporation  [ ] S Corporation  [ ] Partnership  [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

[ ] Other (see instructions) ▶

[ ] Exempt payee

**Address (number, street, and apt. or suite no.)**
2648 N. 26TH TER.

**Requester's name and address (optional)**

**City, state, and ZIP code**
Hollywood, FL 33020

**List account number(s) here (optional)**

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

**Employer identification number**

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**  Signature of U.S. person ▶                    Date ▶ 01/15/2013

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X                    Form **W-9** (Rev. 12-2011)

10/12/2012 Fri 18:04 / ID: #322219

This Freelance Writer Agreement (the "*Agreement*") is entered into by **Jassin Jouria, Jr. MD** ("*Writer*"), and CME Resource ("*CME*").

In consideration of the mutual covenants made herein, the parties agree as follows:

1.    **Parties:**  Writer is engaged in the business of writing articles and other materials on a freelance basis.  CME is engaged in the business of the publication of continuing education materials for medical, nursing, dental and other practitioners.

2.    **Relationship:**  The parties expressly agree and acknowledge that the relationship created by this Agreement is one of independent contractor.  CME is not the employer of Writer, and Writer is not, and will not be treated as, an employee of CME for federal tax purposes, or any other purpose.

3.    **Contract Period:**  This Agreement will begin on the date set forth below and shall continue until terminated as provided herein.  If either party violates a term of this Agreement, then the other party (the "*Nonbreaching Party*") may terminate this Agreement, effective immediately upon delivery of written notice of termination by the Nonbreaching Party.  Notwithstanding the foregoing, CME may terminate this Agreement at any time, with or without cause, effective upon thirty (30) days written notice.

4.    **Services to be Provided by Writer:**  Writer agrees to submit, on his or her sole initiative or at the request of CME, written articles to CME on the subjects and in such format and at such times as set forth in Attachment 1 (the "Articles").  Attachment 1 may be revised from time to time by mutual written agreement between parties.

5.    **Representations and Warranties of Writer:**  By submitting an Article to CME, Writer represents and warrants the following:  (a) the Article is accurate and is Writer's original work, (b) the Article has not been obtained by unlawful means and is not owned by any third party, (c) Writer has not submitted the Article to any other party for publication nor has the Article been previously published in any manner or medium, specifically including but not limited to, print or electronic medium, (d) Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article, and (e) the Article by CME will not infringe or violate any copyright or other intellectual property right, privacy rights, publicity rights or any other rights of any third party.

1

6.   **Indemnification:** Writer shall indemnify and hold harmless CME and its agents, directors, employees, licensees and affiliates from and against any claim, loss, damage, liability and expenses (including reasonable attorneys' fees and costs associated therewith) arising from any breach of any of Writer's representations or warranties contained in this Agreement. Writer shall cooperate with CME if any complaints, claims or litigation should arise regarding the Articles.

7.   **Compensation:** CME agrees to pay Writer **$400** per credit per Article to be published by CME with payments not to exceed an aggregate amount of **$10000** per Article. For purposes of this Agreement, one "credit" is equal to approximately 2,000 words. Under no circumstances will Writer be paid on an hourly, daily or other basis that is a function of time. Writer acknowledges and agrees that CME will only pay writer for Articles that are approved for publication by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer.

8.   **Taxes:** As an independent contractor, Writer shall be responsible for the reporting, deposit and payment of any and all federal, state, and local taxes, including but not limited to income taxes, FICA taxes, and unemployment taxes incidental to the performance of, or payment under, this Agreement.

9.   **Ownership and Assignment of Intellectual Property:** Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME. Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be "works made for hire" under all relevant copyright laws, and CME shall be deemed to be the author thereof. If and to the extent any Article is determined not to constitute "works made for hire," Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article. Writer agrees to cooperate with and assist CME in applying for, and executing any applications and/or assignments reasonably necessary to record and evidence CME's rights in the Articles. Writer hereby appoints CME as his or her attorney-in-fact in the event that Writer does not or cannot perform his or her obligations regarding the ownership and assignment of the Articles, and only for such limited purposes. Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with CME in editing, fact



2

checking and otherwise reviewing the Articles prior to publication. Writer will be credited as the original author of the Article in any and every republication. Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that CME removes Writer's name from said Article.

10. **Miscellaneous:** This Agreement will be governed by and under the laws of the State of California without regard to its conflicts of laws provisions. This Agreement may be modified only by a written amendment executed by Writer and a duly authorized officer of CME. Any failure by either party to enforce any of the provisions of this Agreement will not be construed as a waiver of such provisions or the right of a party thereafter to enforce each and every such provision. This Agreement constitutes the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

**CME Resource has not received commercial support for the development of this article. CME Resource is obligated to ensure that potential and/or real conflicts of interest of faculty and their immediate family are identified and resolved to preserve the integrity of the content presented.**

11. **Disclosure:** Writer agrees to list below all affiliations with or financial involvement within the last twelve (12) months in any organization or entity with a direct financial interest in the subject matter or materials of the research discussed. Writer also agrees to list below all unlabeled or investigational use of commercial products to be discussed in the article. Refusal to disclose will result in disqualification.

A. Will your article include discussion of any commercial products or services?
Yes _____ No _✓_____   (If No, skip to question B.)

If Yes, in the last twelve (12) months have you or members of your immediate family (spouse or partner) had any relevant financial interest or other relationship with the manufacturer(s) of any of the products or provider(s) of any of the services you intend to cover? *A relevant financial interest or relationship is defined as benefiting by receiving a salary, royalty, intellectual property rights, consulting fee, honoraria, ownership interest (e.g., stocks, stock options or other ownership interest in any amount, excluding diversified mutual funds) or other financial benefit (e.g., employment, management position, independent contractor including contracted research, consulting, speaking and teaching, membership on advisory committees or review panels, board membership, and other activities from which remuneration is received, or expected).*
Yes _____ No _✓_____

3

If Yes, please list the manufacturer(s) or provider(s) and describe the nature of the relationship(s).

_____

_____

B. Do you anticipate your article will include discussion of unlabeled use of commercial products? *(Commercial product does not have an FDA-approval indication for the use you will be discussing.)*
Yes_____     No___✓___

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

C. Do you anticipate your article will include discussion of investigational use of commercial products? *(Commercial product is not approved by the FDA for any purpose.)*
Yes_____     No___✓___

Name of commercial product: _____
Investigational use to be discussed: _____

_____

Name of commercial product: _____
Investigational use to be discussed: _____

_____

12.     If any images are included in an Article, Writer agrees not to edit, modify, or falsify such images.

13.     The course completion date of this project is: **July 31, 2013**. On this date, **CME Resource** must physically have all units of **Clinical Cardiovascular** ~~Pharmacology~~

~~This contract becomes null and void if not~~ received by **CME Resource** by **October 31,** ~~2012. If there are any~~ ~~alterations or special~~ requirements **Jassin Jouria, Jr. MD** desires of this contract, they must be submitted in writing to **CME Resource** prior to this date and a revised contract issued.

4

This Agreement is entered into on this 17⁹ᵗ day of _OCTOBER_ 20 1?.

**Writer**                                    **CME Resource**

_____ _Jassin Jouria_ _____               By: _scampbell_ _____
Jassin Jouria, Jr. MD

_____ ████████ _____                      Name: **SARAH CAMPBELL**
[WRITER'S SOCIAL SECURITY #]
                                              Title: **DIRECTOR OF DEVELOPMENT**

.

5



**CME**
RESOURCE
Continuing Medical Education

This Freelance Writer Agreement (the "***Agreement***") is entered into by **Jassin Jouria, Jr., MD** ("***Writer***"), and CME Resource ("***CME***").

In consideration of the mutual covenants made herein, the parties agree as follows:

1.     **Parties:**  Writer is engaged in the business of writing articles and other materials on a freelance basis.  CME is engaged in the business of the publication of continuing education materials for medical, nursing, dental and other practitioners.

2.     **Relationship:**  The parties expressly agree and acknowledge that the relationship created by this Agreement is one of independent contractor.  CME is not the employer of Writer, and Writer is not, and will not be treated as, an employee of CME for federal tax purposes, or any other purpose.

3.     **Contract Period:**  This Agreement will begin on the date set forth below and shall continue until terminated as provided herein.  If either party violates a term of this Agreement, then the other party (the "***Nonbreaching Party***") may terminate this Agreement, effective immediately upon delivery of written notice of termination by the Nonbreaching Party.  Notwithstanding the foregoing, CME may terminate this Agreement at any time, with or without cause, effective upon thirty (30) days written notice.

4.     **Services to be Provided by Writer:**  Writer agrees to submit, on his or her sole initiative or at the request of CME, written articles to CME on the subjects and in such format and at such times as set forth in Attachment 1 (the "Articles").  Attachment 1 may be revised from time to time by mutual written agreement between parties.

5.     **Representations and Warranties of Writer:**  By submitting an Article to CME, Writer represents and warrants the following:  (a) the Article is accurate and is Writer's original work, (b) the Article has not been obtained by unlawful means and is not owned by any third party, (c) Writer has not submitted the Article to any other party for publication nor has the Article been previously published in any manner or medium, specifically including but not limited to, print or electronic medium, (d) Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article, and (e) the Article by CME will not infringe or violate any copyright or other intellectual property right, privacy rights, publicity rights or any other rights of any third party.

POST OFFICE BOX 997571 • SACRAMENTO, CALIFORNIA 95899-7571
1482 STONE POINT DRIVE • SUITE 120 • ROSEVILLE, CALIFORNIA 95661
PHONE: 800/232-4238 • FAX: 916/783-6067 • WWW.NETCE.COM



1

6.   **Indemnification:**  Writer shall indemnify and hold harmless CME and its agents, directors, employees, licensees and affiliates from and against any claim, loss, damage, liability and expenses (including reasonable attorneys' fees and costs associated therewith) arising from any breach of any of Writer's representations or warranties contained in this Agreement.  Writer shall cooperate with CME if any complaints, claims or litigation should arise regarding the Articles.

7.   **Compensation:** CME agrees to pay Writer **$400** per credit per Article to be published by CME with payments not to exceed an aggregate amount of **$4000** per Article. For purposes of this Agreement, one "credit" is equal to approximately 2,000 words. Under no circumstances will Writer be paid on an hourly, daily or other basis that is a function of time. Writer acknowledges and agrees that CME will only pay writer for Articles that are approved for publication by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer.

8.   **Taxes:**  As an independent contractor, Writer shall be responsible for the reporting, deposit and payment of any and all federal, state, and local taxes, including but not limited to income taxes, FICA taxes, and unemployment taxes incidental to the performance of, or payment under, this Agreement.

9.   **Ownership and Assignment of Intellectual Property:**  Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME.  Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be "works made for hire" under all relevant copyright laws, and CME shall be deemed to be the author thereof.  If and to the extent any Article is determined not to constitute "works made for hire," Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article.  Writer agrees to cooperate with and assist CME in applying for, and executing any applications and/or assignments reasonably necessary to record and evidence CME's rights in the Articles.  Writer hereby appoints CME as his or her attorney-in-fact in the event that Writer does not or cannot perform his or her obligations regarding the ownership and assignment of the Articles, and only for such limited purposes.  Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with CME in editing, fact

 2

checking and otherwise reviewing the Articles prior to publication.  Writer will be credited as the original author of the Article in any and every republication.  Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that CME removes Writer's name from said Article.

10.     **Miscellaneous:**  This Agreement will be governed by and under the laws of the State of California without regard to its conflicts of laws provisions.  This Agreement may be modified only by a written amendment executed by Writer and a duly authorized officer of CME.  Any failure by either party to enforce any of the provisions of this Agreement will not be construed as a waiver of such provisions or the right of a party thereafter to enforce each and every such provision.  This Agreement constitutes the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

**CME Resource has not received commercial support for the development of this article. CME Resource is obligated to ensure that potential and/or real conflicts of interest of faculty and their immediate family are identified and resolved to preserve the integrity of the content presented.**

11.     **Disclosure:**  Writer agrees to list below all affiliations with or financial involvement within the last twelve (12) months in any organization or entity with a direct financial interest in the subject matter or materials of the research discussed. Writer also agrees to list below all unlabeled or investigational use of commercial products to be discussed in the article. Refusal to disclose will result in disqualification.

A.  Will your article include discussion of any commercial products or services? Yes _____ No __✓___      (If No, skip to question B.)

If Yes, in the last twelve (12) months have you or members of your immediate family (spouse or partner) had any relevant financial interest or other relationship with the manufacturer(s) of any of the products or provider(s) of any of the services you intend to cover? *A relevant financial interest or relationship is defined as benefiting by receiving a salary, royalty, intellectual property rights, consulting fee, honoraria, ownership interest (e.g., stocks, stock options or other ownership interest **in any amount**, excluding diversified mutual funds) or other financial benefit (e.g., employment, management position, independent contractor including contracted research, consulting, speaking and teaching, membership on advisory committees or review panels, board membership, and other activities from which remuneration is received, or expected).* Yes _____ No __✓___



3

If Yes, please list the manufacturer(s) or provider(s) and describe the nature of the relationship(s).

_____

_____

B. Do you anticipate your article will include discussion of unlabeled use of commercial products? *(Commercial product does not have an FDA-approval indication for the use you will be discussing.)*
Yes_____   No___✓___

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

Name of commercial product: _____
Unlabeled use to be discussed: _____

_____

C. Do you anticipate your article will include discussion of investigational use of commercial products? *(Commercial product is not approved by the FDA for any purpose.)*
Yes_____   No___✓___

Name of commercial product: _____
Investigational use to be discussed: _____

_____

Name of commercial product: _____
Investigational use to be discussed: _____

_____

12.     If any images are included in an Article, Writer agrees not to edit, modify, or falsify such images.

13.     The course completion date of this project is: **December 31, 2013**. On this date, **CME Resource** must physically have all units of **Gastroesophageal Reflux Disease**.

This contract becomes null and void if not received by **CME Resource** by **January 31, 2013**. If there are any addendums or special requirements **Jassin Jouria, Jr., MD** desires of this contract, they must be submitted in writing to **CME Resource** prior to this date and a revised contract issued.



4

This Agreement is entered into on this 15th day of JANUARY 2013.

**Writer**

Jassin Jouria, Jr., MD

[WRITER'S SOCIAL SECURITY #]

**CME Resource**

By: scampbell

Name: **SARAH CAMPBELL**

Title: **DIRECTOR OF DEVELOPMENT**

5

## Attachment 1

Subjects on which CME may accept Articles from Writer:

<u>Gastroesophageal Reflux Disease</u>

Form **W-9**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)
*JASSIN M. JOURIA, JR.*

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☑ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ ..............

☐ Other (see instructions) ▶

☐ Exempt payee

Address (number, street, and apt. or suite no.)
*2648 N. 26TH TER.*

Requester's name and address (optional)

City, state, and ZIP code
*Hollywood, FL 33020*

List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number

### Part II    Certification

Under penalties of perjury, I certify that:

1   The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2   I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3.   I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

Sign
Here

Signature of
U.S. person ▶     *[signature]*                          Date ▶  *01/15/2013*

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)