UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

       Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

       Plaintiff/Counter-Defendant

_____/

CE RESOURCE, INC., d/b/a CME RESOURCE
and NetCE,

       Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC., and
ALPINE MANAGEMENT SERVICES III, LLC,

       Third Party Defendants.

_____/

**ALPINE MANAGEMENT SERVICES III, LLC'S MOTION TO DISMISS CE
RESOURCES, INC.'S THIRD PARTY CLAIMS [DE 36] AND
INCORPORATED MEMORANDUM OF LAW**

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

Specially Appearing Third Party Defendant Alpine Management Services III, LLC ("Alpine"), pursuant to Fed. R. Civ. P. 12(b) and S.D. Fla. L.R. 7.1, moves to dismiss Claims Three, Four and Six of Defendant/Third Party Plaintiff CE Resources, Inc. d/b/a CME Resource and NetCE's ("NetCE") Counterclaims and Third Party Claims [DE 36] ("Complaint"), and states as follows:

## I.   INTRODUCTION

NetCE, a California-based corporation, filed the Complaint, in part,[1] against Alpine seeking damages for: (1) breach of contract (Claim Three); (2) tortious interference with contractual relations (Claim Four); and (3) misappropriation of trade secrets under Florida's Uniform Trade Secrets Act (Fla. Stat. §§ 688.001 *et seq.*) (Claim Six) (collectively, the "Claims").  Alpine, a California limited liability company, however, has no ties to Florida that would establish personal jurisdiction over Alpine in a Florida court for NetCE's Claims.

The Claims should be dismissed with prejudice.  First, there is no *in personam* jurisdiction over Alpine.  NetCE's conclusory allegation that Alpine is subject to personal jurisdiction because it invested in or owned Elite, a Florida company, is simply unavailing. Alpine is a Delaware limited liability company with its principal place of business in California. Alpine never directly invested in or owned Elite.  Alpine never derived direct revenue or value from Elite, and Alpine never directly controlled Elite's business or conduct.  Alpine does not transact business, maintain offices, employees, accounts, property or other assets in Florida. Further, the dispute concerns the alleged breach of a non-disclosure agreement governed by the laws of California, not Florida, entered into between a Delaware entity and a California entity (both having their respective principal place of business in California), and governing conduct outside of Florida.  Likewise, each of the claimed torts was allegedly committed outside of Florida.  There simply is no basis for haling Alpine into court in Florida.

Second, the Claims should be dismissed for failure to state a cause of action.  First, NetCE's breach of contract claim is negated by the allegations in the Complaint and the express language of the agreement between the parties.  Part of the information (4 of the 7 courses that were purportedly drafted by Dr. Jouria) that Alpine allegedly disclosed to Elite was public at the

---

[1]  The Complaint also seeks to assert claims against Plaintiff/Counter Defendant Dr. Jassin Jouria ("Dr. Jouria"), and Third Party Defendant Elite Continuing Education, Inc. ("Elite").

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

time of the alleged disclosure.  Nor is there any plausible basis to conclude that Alpine received or disclosed the remaining 3 courses drafted by Dr. Jouria because NetCE contracted for those courses *after* the negotiations between NetCE and Alpine terminated.  Moreover, NetCE's breach of contract claim is impermissibly premised on speculation that it was inevitable that Alpine disclosed NetCE's purported trade secrets.  But California law (which governs NetCE's breach of contract claim), does not recognize the inevitable disclosure doctrine in this regard. Second, NetCE's tortious interference claim is preempted by the Florida Uniform Trade Secrets Act (Fla. Stat. §§ 688.001 *et seq.*) ("FUTSA") (or California's equivalent) because that claim is based on the same nucleus of fact as NetCE's claim for trade secret misappropriation -- the alleged disclosure by Alpine of information related to the 7 Dr. Jouria courses -- to Elite.  Third, NetCE's misappropriation claim fails to state a cognizable claim under FUTSA (or California's equivalent) because NetCE fails to describe the misappropriated trade secrets with the requisite particularity (and the alleged trade secrets that NetCE does describe, *i.e.,* Dr. Jouria's courses, do not support a misappropriation claim), and fails to sufficiently allege that NetCE took adequate steps to protect its alleged trade secrets.

## II.    THE ALLEGATIONS IN THE COMPLAINT

### 1.  Dr. Jouria and His Conduct

NetCE's Claims arise out of the conduct of Dr. Jassin Jouria.  NetCE is a publisher of continuing medical education materials. Compl. ¶ 19.  NetCE alleges that "[i]n early 2013, Dr. Jouria approached NetCE with a proposal to work on a series of [continuing medical education] courses in the areas of general medicine, internal medicine, and pharmacology." *Id.*¶ 31.  NetCE claims that before hiring Dr. Jouria, it performed online research to confirm that Dr. Jouria was not working for a NetCE competitor.  *Id.* ¶ 33.  Dr. Jouria also allegedly told NetCE that he was not working for any of NetCE's competitors.  *Id.*

Through 2012 and early 2013, Dr. Jouria authored 10 courses for NetCE.  *Id.* ¶ 35.  Only 7 of those courses are at issue in this litigation. *Id.* ¶ 47.

Even after contracting with him, NetCE continued to investigate Dr. Jouria. *Id.* ¶ 49.  As alleged in the Complaint, NetCE eventually discovered a host of issues affecting Dr. Jouria's credibility and professionalism.  For example, NetCE alleged it discovered that "Dr. Jouria had submitted false letters of recommendation with his application to" the Education Commission for

2

Foreign Medical Graduates.  *Id.*  Despite this red flag about Dr. Jouria's integrity, NetCE decided to proceed with the courses that Dr. Jouria was writing.  *Id.* ¶ 50.

NetCE alleges that it continued to learn of "other red flags" about Dr. Jouria.  *Id.* ¶ 50.  NetCE learned that Dr. Jouria falsified his resume.  *Id.* ¶ 51.  NetCE also alleges that Dr. Jouria's continuing medical education courses had "significant deficits" in three major areas: (i) medical/scientific accuracy, (ii) grammatical and stylistic errors, and (iii) plagiarism.  *Id.* ¶ 53.  Indeed, NetCE alleges that Dr. Jouria's submissions were so deficient that they "required more editing than was typical for these types of courses."  *Id.* ¶ 54.  Thus, NetCE came to suspect that Dr. Jouria copied sections of his courses from other sources.  *Id.*

NetCE alleges that it discovered that "*Dr. Jouria's works were littered with plagiarized content.*"  *Id.* ¶ 55 (emphasis added).  As a result, NetCE alleges that Dr. Jouria's articles were "*ultimately unusable projects.*"  *Id.* ¶ 61 (emphasis added).  To correct Dr. Jouria's plagiarism, NetCE had to either make "significant editorial work" on Dr. Jouria's courses (*Id.* ¶¶ 59, 63), make "extensive revisions" to his courses (*Id.* ¶ 58), or pay the original copyright holders for permission to reprint the material (*Id.* ¶ 56).  NetCE alleges that Dr. Jouria submitted his 7, allegedly plagiarized, courses to NetCE's competitor, Elite.  *Id.* ¶ 67.  NetCE alleges that NetCE needed until 2015 to correct certain issues with Dr. Jouria's courses.  *Id.* ¶ 63.[2]

### 2. Alpine's Alleged Involvement

In stark comparison to the detailed allegations about Dr. Jouria, NetCE's Complaint offers cursory and inconsistent allegations about Alpine.  NetCE alleges that Alpine is an investment firm that has invested in and cultivated roughly 30 companies across various industries.  Compl. ¶¶ 37-38.  NetCE alleges that in early 2012, Alpine approached NetCE about the possibility of purchasing NetCE.  *Id.* ¶¶ 39, 40.  NetCE admits that it terminated those discussions with Alpine in late 2012. *Id.* ¶ 46.

---

[2]  The Complaint appears to suggest that NetCE did not publish Dr. Jouria's courses until 2015.  Compl. ¶¶ 63, 68.  If so, that allegation cannot be reconciled with the date of first publication contained in NetCE's certificates of registration for those courses.  *See* Compl. Ex. A.  Where, as here, an allegation is inconsistent with the exhibits attached to the complaint, the exhibits control.  *Morse, LLC v. United Wisconsin Life Ins. Co.*, 356 F. Supp. 2d 1296, 1299 (S.D. Fla. 2005) (citing *Fladell v. Palm Beach County Canvassing Board,* 772 So.2d 1240, 1242 (Fla. 2000) ("If an exhibit facially negates the cause of action asserted, the document attached as an exhibit controls and must be considered in determining a motion to dismiss.")

NetCE alleges that, as part of their discussions about a possible acquisition, Alpine and NetCE executed a non-disclosure agreement ("NDA") in July of 2012.  *Id.* ¶ 41; *see also* Compl. Ex. C.  The NDA is governed by California law.  Compl. Ex. C ¶ 7.  The NDA restricts Alpine's ability to use or disclose certain protected information provided by NetCE to Alpine pursuant to the NDA.  *Id.* ¶ 63.  However, the NDA excludes specific categories of information from coverage under the NDA, including information that "*is or becomes generally available to the public* other than as a result of disclosure by Receiving Party or anyone to whom Receiving Party transmits the information in breach of this agreement."  Compl. Ex. C ¶ 2 (emphasis added).  NetCE also agreed that Alpine may be engaged in offering competitive products or services to those offered by NetCE.  *Id.* ¶ 4.

NetCE alleges in a cursory fashion that, as part of the parties' preliminary discussions, it provided Alpine with information about NetCE's "market strategies, industry reports, financial performance data, and generally proprietary information concerning the type of content NetCE furnished, developed, and was planning to develop."  Compl. ¶ 43.  More specifically, NetCE claims that, as part of their discussions before late 2012, NetCE shared drafts of Dr. Jouria's courses with Alpine.  *Id.* ¶ 45.  The Complaint does not identify which, if any, of the 7 courses at issue in this litigation NetCE purportedly showed to Alpine during their discussions.

NetCE alleges upon information and belief that, in violation of the NDA, Alpine passed the information it obtained from NetCE about Dr. Jouria's courses to Elite, a company that Alpine allegedly acquired.  Compl. ¶¶ 77-78.  NetCE, however, fails to allege facts explaining how this allegation is factually possible.  *See generally* Compl. Exs. A & B.[3]

For 3 of the courses – Gastroesophageal Reflux Disease, Cancer and Chemotherapy, and Depression and Dementia in the Elderly – the attached agreements (Compl. Ex. B.) reveal that NetCE did not contract with Dr. Jouria until January 15, 2013, or later ("2013 Courses").  NetCE fails to allege how it could have shared information with Alpine about these 3 courses when

---

[3]  Because NetCE's agreements with Dr. Jouria (Compl. Ex. B) and corresponding certificates of registration from the United States Register of Copyrights disclosing the first publication date of Dr. Jouria's courses (Compl. Ex. A) are attached to the Complaint as exhibits, they are "a part of the pleading for all purposes."  *See* Fed. R. Civ. P. 10(c).

4

NetCE contracted for them *after* NetCE "terminated" its discussions with Alpine "in late 2012," and thus Alpine could not have known of the courses from its discussions with NetCE.[4]

On October 12, 2012, NetCE contracted with Dr. Jouria for 2 courses titled Non-Antibiotic Antimicrobial Pharmacology and Clinical Cardiovascular Pharmacology ("October 2012 Courses"). Compl. Ex. B. The Complaint is silent as to whether NetCE provided Alpine with information about these 2 courses before NetCE terminated its discussions with Alpine. Further, the certificates of registration that NetCE received from the United States Register of Copyrights show that these materials were first published in December 2012 and January 2013. Compl. Ex. A. NetCE's Complaint fails to explain how the information related to these courses remained non-public after their respective dates of publication. The Complaint also fails to allege facts that Alpine used or disclosed any information about these 2 courses prior to their publication.

The Complaint's allegations with respect to the final 2 courses authored by Dr. Jouria also are deficient. On May 10, 2012, NetCE contracted with Dr. Jouria to write the course titled the Lymphatic and Immune Systems ("LIS Course"). Compl. Ex. B. The date of first publication for that course is September 6, 2012. Compl. Ex. A. Further, on August 24, 2012, NetCE contracted with Dr. Jouria to write the article titled Traumatic Brain Injury ("TBI Course") (the LIS Course and the TBI Course, collectively "Mid-2012 Courses"). Compl. Ex. B. The date of first publication for that course is December 20, 2012. Compl. Ex. A. Thus, even if the Complaint alleged facts that NetCE provided Alpine with non-public information about these 2 specific courses (and the Complaint contains no such allegations), the Complaint and its exhibits demonstrate that this information was public before the close of 2012. The Complaint fails to allege facts that Alpine used or disclosed any information about these two courses prior to their publication, and once public, they were no longer protected.

---

[4]  And even if the Complaint plausibly alleges that NetCE provided those courses to Alpine (and it does not), the Complaint acknowledges that they were first published no later than May 2013 (Compl. Ex. A); NetCE fails to allege any facts that Alpine or Elite misappropriated information about these 2013 Courses prior to the date of their first publication.

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

### III.    MEMORANDUM OF LAW

#### A.  THE COURT LACKS PERSONAL JURISDICTION OVER ALPINE[5]

##### 1.  Applicable Standard

NetCE bears the burden of making a prima facie case for personal jurisdiction.  *Thomas v. Brown*, 504 F. App'x 845, 847 (11th Cir. 2013).  When a defendant raises, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or other documents.  *See id.* (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)).  To prevail, a plaintiff must show both (i) that the defendant is subject to jurisdiction under a specific provision of Florida's long-arm statute (Fla. Stat. § 48.193), and (ii) that the exercise of *in personam* jurisdiction comports with the due process clause of the Fourteenth Amendment of the United States' Constitution.  *See General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1342 (S.D. Fla. 2002).  NetCE's Complaint fails to make a prima facie case under either prong of the personal jurisdiction test.

"The Florida long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction."  *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (dismissing complaint for lack of both specific and general personal jurisdiction) (citing Fla. Stat. § 48.193).  Because NetCE's Complaint does not allege that Alpine is engaged in substantial activity in Florida, this Motion addresses only specific personal jurisdiction.  *Id.* at 1239, 1250 ("The statute confers specific jurisdiction over a non-resident defendant if the claim asserted against the defendant arises from the defendant's forum-related contacts . . . and those contacts fall within one of nine statutorily enumerated categories . . . .   The second type of jurisdiction, general jurisdiction, exists over a non-resident defendant 'who is engaged in substantial and not isolated activity within this state,

---

[5]  When a defendant moves to dismiss a complaint for failure to state a claim and for lack of personal jurisdiction, the court should address the personal jurisdiction issue first.  *See Madara v. Hall*, 916 F. 2d 1510, 1513-14 (11th Cir. 1990).

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

whether such activity is wholly interstate, intrastate, or otherwise.'") (citing Fla. Stat. §§ 48.193(1)(a) and (2)).[6]

### 2. The Court Lacks Jurisdiction Under Florida's Long-Arm Statute

"The scope of the Florida long-arm statute is decided by Florida law." *Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d *supra* at 1342 *aff'd* 54 F. App'x 492 (11th Cir. 2002) (internal citations omitted). "This Court must therefore interpret the statute as would the Florida Supreme Court and, absent any guidance from the state's highest court, this Court is bound to adhere to decisions of Florida's intermediate courts." *Id.* "In so doing, **Florida's long-arm statute is to be 'strictly construed.'**" *Id.* (emphasis added).

Under Florida's long-arm statute "a plaintiff must allege specific, ultimate facts that bring the action within the ambit of the applicable long-arm statute." *Walack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp. 2d 1358, 1365 (M.D. Fla. 2003); *see also Taylor Forge Int'l, Inc. v. Specialty Maint. & Const., Inc.*, 685 So. 2d 1360, 1361 (Fla. 2d DCA 1996) ("Before a court may exercise long-arm jurisdiction over a nonresident defendant, the basis for jurisdiction must be alleged with specificity in the complaint.") (citing *Doe v. Thompson,* 620 So.2d 1004 (Fla.1993); *Bower v. C.J. Timm Investment Co.,* 630 So.2d 678 (Fla. 2d DCA 1994)). Here, the Complaint fails to allege specific, ultimate facts to establish jurisdiction over Alpine, a California company with no ties to Florida. Instead, the Complaint relies on the following mistaken and legally insufficient allegations:

> Alpine is subject to personal jurisdiction in Florida because of its investment in and/or ownership of Elite, a Florida company. Upon information and belief, Alpine executed a purchase agreement with Elite, a Florida company, under which it derives revenues or value from Elite's operations and exercises some degree of control over Elite's business and its conduct. Based on the foregoing Alpine has purposefully availed itself of the business protections and opportunities available in Florida, and the fact it is being sued in Florida is reasonably foreseeable.

Compl. ¶ 17.

---

[6]   This specific personal jurisdictional challenge is made without waiver of any arguments regarding general personal jurisdiction. In the event that NetCE claims that Alpine is subject to general personal jurisdiction in Florida, Alpine intends to seek leave to brief that issue.

First, the allegation is factually wrong because **Alpine never directly invested in or owned Elite**.  *See* Declaration of Daniel Cremons in Support of Alpine's Motion to Dismiss NetCE's Complaint dated December 22, 2016 ("Cremons Declaration"), attached as Exhibit A hereto, ¶¶ 13-14.  Between 2012 and August 2014, Alpine had an interest in an entity called McKissock, an entity based in Warren, Pennsylvania..  *Id.* ¶ 17.  In 2012, McKissock, whose day-to-day operations were not directly controlled by Alpine, acquired Elite.  *Id.* ¶ 18.  Alpine never derived any direct revenue or value from Elite, and Alpine never controlled Elite's business or conduct.  *Id.* ¶ 16.  Further, the Cremons Declaration establishes that Alpine: (i) has never directly transacted business in Florida; (ii) does not maintain an office, employees, officers or agents in Florida; (iii) does not maintain accounts, or own property or other assets in Florida; (iv) has never sold products or services in Florida; (v) has not committed any tortious acts in Florida; and (vi) has not engaged in any direct solicitation or service activities which caused injury to persons or property in Florida.  *Id.*  ¶¶ 5-7.  On this basis alone, the Claims against Alpine should be dismissed with prejudice.

Second, even assuming *arguendo* that Alpine owned Elite – and Alpine never owned Elite – that fact alone would be insufficient to confer personal jurisdiction over Alpine as a matter of law.  Section 48.193(1)(a) of the Florida Statutes, has 9 separate subparts, each describing different acts which subject a person to long-arm jurisdiction.  *See* Fla. Stat. §38.193(1)(a)(1-9) (2015).  Alpine's alleged investment in or ownership of a Florida company is not one of the enumerated acts[7] and, without more, would not subject Alpine to the jurisdiction of this Court.  *See Walt Disney Co. v. Nelson*, 677 So. 2d 400, 403 (Fla. 5th DCA 1996) ("The Company's status as parent of [two Florida companies] was, without more, ineffective to establish long-arm jurisdiction under § 48.193.") (*citing Qualley v. International Air Serv. Co.,* 595 So.2d 194, 196 (Fla. 3d DCA 1992) (holding that the mere presence of a parent corporation's wholly-owned subsidiary in Florida is insufficient to bring the parent within § 48.193), *cause dismissed,* 605 So.2d 1265 (Fla.1992)).  As this Court recently explained:

---

[7]  Indeed, NetCE's Complaint does not even cite any of the statute's subparts.  Both Alpine and the Court are left to guess the basis for personal jurisdiction over Alpine based on the foregoing allegation.  Plaintiff's omission, in this regard, is fatal to NetCE's Claims.

"A fundamental principle of Anglo–American law is that a business operating as a legally recognized entity is separate and distinct from its owners." 114 Am. Jur. Proof of Facts 3d 403 (2015). "Generally," therefore, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1272 (11th Cir.2002) (citation omitted). A subsidiary's contacts may, however, be imputed to the foreign parent, and therefore potentially subject the parent to personal jurisdiction, "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or [the subsidiary's] separate corporate status is formal only and without any semblance of individual identity." *Id.* (alteration added; citation omitted).

*Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1240–41 (S.D. Fla. 2015).

NetCE did not – and indeed cannot – allege that Elite was Alpine's agent, through which Alpine conducted its own business in Florida. NetCE's allegation that Alpine exercised "some degree of control" over Elite's business and conduct falls woefully short of the alter ego standard that would subject a parent company to personal jurisdiction in Florida. In a similar context, this Court (Judge Moreno) dismissed a plaintiff's claims with prejudice:

Florida's long-arm statute establishes specific personal jurisdiction over corporate defendants whose agents, among other things, either carry out a business venture or commit a tort within Florida. Nevertheless, **the mere presence of a subsidiary within Florida, of itself, cannot subject a non-resident parent to jurisdiction.** Rather, the plaintiff must establish a *prima facie* case that the subsidiary acts as the parent corporation's agent. To establish agency, the plaintiff must prove **(1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the agent's actions.**

To satisfy the third prong of this test, **the parent must exercise "very significant" control over the subsidiary.** For example, [*Enic, PLC v. F.F. South & Co., Inc.*, 870 So. 2d 888 (Fla 5th DCA 2004)] refused to exercise personal jurisdiction over a parent corporation uninvolved in its subsidiary's day-to-day operations in Florida, even where the subsidiary *reported* to the parent corporation . . .. The *Enic* plaintiff also failed to satisfy the first two prongs of the agency test. Neither the parent corporation nor the subsidiary acknowledged an agency relationship. The subsidiary's presence in Florida "was primarily for the purpose of carrying on its own business, not that of the parent." The record revealed "no act" by the parent "which could be interpreted as giving rise to the cause of action alleged by the Plaintiffs."

In this case, Avel claims that it "did not design, market, manufacture, distribute or sell" Stacker. In fact, **Avel asserts that it "does not and has not directed any of the activities of [LAI-USA]** relating to the Stacker game."

9

> For his part, Feheley refers to various hodge-podge press releases and news clippings allegedly appearing on the LAI-USA website, in an attempt to establish a close corporate relationship between Avel and LAI-USA. **The Court finds these references wholly insufficient to establish that Avel exercises "very significant control" over LAI-USA. More damagingly, Feheley has proffered scant evidence that Avel acknowledges LAI-USA as its agent in Florida, or that LAI-USA has accepted such an undertaking**. For these reasons, the Court must grant Avel's Motion. Feheley bears the burden of establishing a *prima facie* case of agency, and has failed to do so.

*Feheley v. LAI Games Sales, Inc.*, 2009 WL 2474061, at *2–3 (S.D. Fla. Aug. 11, 2009) (emphasis added) (footnotes omitted). Here, NetCE does not allege the existence of an agency relationship between Alpine and Elite.[8]

Third, NetCE does not – and cannot – allege that Alpine committed any tortious acts in Florida, that Alpine breached a contract that required performance in Florida, or that Alpine misappropriated NetCE's trade secrets in Florida. As it relates to Alpine's alleged tortious conduct, both Alpine and NetCE are based in California, with no Florida operations. Thus, a tort, if any, would only injure NetCE in California, not Florida. *Richards v. Sen*, 07-14254-CIV, 2008 WL 4889623, at *6 (S.D. Fla. Nov. 12, 2008) ("The determinative issue when assessing the Florida long-arm statute's applicability to a tortious interference claim is whether the alleged tort occurred in Florida.") (citations omitted); *see also Aluminum & Glass Co., Inc. v. Haney*, 964 So. 2d 228, 234 (Fla. Dist. Ct. App. 2007). ("Even if Arch suffered damage [for misappropriation of trade secrets], it would have been a loss of western clients and the reduction of revenues from its Phoenix operation. No tort occurred in Florida"); *White Wave Intern. Labs, Inc. v. Lohan*, 2011 WL 2669658 at *4 (M.D. Fla. 2011) ("Any alleged misappropriation did not occur within the State of Florida; therefore, § 48.193(1)(b) is not satisfied.").

Further, as to the NDA, it is beyond dispute that neither NetCE nor Alpine was required to perform, at all, in Florida. *See* Fla. Stat. § 48.193(1)(a)(7) (subjecting non-resident to personal jurisdiction where nonresident fails to perform acts "required by the contract to be performed in this state."). There simply is no legal or factual basis upon which the Court can conclude that Alpine is subject to personal jurisdiction in Florida. *See Taylor Forge Int'l, Inc. v. Specialty Maint. & Const., Inc.*, 685 So. 2d 1360, 1361 (Fla. 2d DCA 1996) ("The complaint in this

---

[8] Further, and because Alpine never directly owned or controlled Elite, NetCE cannot satisfy, under any circumstances, any of the three-prongs of the agency test.

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

instance does not allege any of the requirements of section 48.193 that would allow the Florida courts to exercise jurisdiction over a nonresident corporation . . . . Because the complaint fails to allege the basis for long-arm jurisdiction, the trial court should have granted [defendant's] motion to dismiss.").

### 3.  Due Process Considerations Require Dismissal

The due process considerations of minimum contacts have been explained a follows:

> There are three considerations under the due process clause: (1) purposeful availment of the forum state; (2) the cause of action arises out of the activities of which you purposefully availed yourself, i.e., the contacts must proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state, *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)), and (3) reasonable foreseeability that " '[a defendant] should reasonably anticipate being haled into court there.' " *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

*Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 106 F. Supp. 2d 1278, 1282 (S.D. Fla. 1999) *aff'd,* 218 F. 3d 1247 (11th Cir. 2000) (holding that court lacked personal jurisdiction where the defendant "did not reasonably anticipate being haled into a Florida court" and where "due process consideration of minimum contacts and fair play prevent the action from going forward in this court.").

The Complaint does not allege that Alpine has *any* contacts with the State of Florida. Other than the fallacy that Alpine directly owns or invested in Elite and derives revenues or value from Elite (which even if accepted, would be insufficient), there are no allegations from which the Court could find that Alpine has any nexus with Florida.  Further, NetCE's claims are devoid of any allegation that the conduct of Alpine, itself, created a substantial connection with Florida.  Lastly in this regard, even if NetCE's factual allegations are accepted, Alpine cannot have reasonably anticipated being haled into a court in Florida by NetCE.  Alpine never owned, invested in, or controlled Elite.  The NDA does not require performance in Florida, is governed by California law (Compl. Ex. C ¶ 7), and was signed in California by two California-based companies.  Due process considerations require dismissal of the Claims.

11

### B. NetCE's Claims Fail to State Causes of Action

#### 1. Applicable Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Geter v. Galardi S. Enterprises, Inc.*, No. 14-21896-CIV, 2014 WL 4290550, at *1 (S.D. Fla. Aug. 29, 2014) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Although this pleading standard 'does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

"Pleadings must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at *2 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). "To meet this 'plausibility standard,' a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

#### 2. NetCE's Claim for Breach of the NDA is Negated by the Express Terms of the NDA and the Exhibits Attached to the Complaint

To state a claim for breach of contract against Alpine under California law,[9] NetCE must plead facts establishing (1) the existence of a contract, (2) NetCE's performance or excuse for nonperformance, (3) Alpine's breach, and (4) resulting damages to NetCE. *Ali v. Humana, Inc.*, 2012 WL 4829313 at *2 (E.D. Cal. 2012). Here, the Complaint fails to allege facts establishing that Alpine breached the NDA.

California law is well-settled that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638 (West 2011).[10] NetCE has the burden of pleading that Dr. Jouria's courses fall

---

[9] NetCE's breach of contract Claim is governed by California law. *See Muniz v. GCA Services Group, Inc.*, 2006 WL 2130735 at *5 (M.D. Fla. July 28, 2006) ("Florida gives deference to the parties' choice of law. Unless violative of Florida public policy, courts defer to contractual choice of law clauses.") (citing *Gillen v. United Servs. Auto. Ass'n,* 300 So.2d 3, 6-7 (Fla.1974)).

[10] The law is the same in this Circuit. *See Slater v. Energy Services Group Intern., Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) ("Under general contract principles, the plain meaning of a

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

within the class of information protected by the NDA.  *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (Court dismissed claim for breach of a non-disclosure agreement because "Honeywell has not pled what the 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements.").  Here, the NDA specifically provides that it *does not protect* information that "*is or becomes generally available to the public*" through no fault of Alpine's.  Compl. Ex. C ¶ 2 (emphasis added).  That provision operates to defeat NetCE's claim that it provided to Alpine information about Dr. Jouria's courses that the NDA protected.

The Complaint fails to allege facts establishing that NetCE gave Alpine non-public information about the 2013 Courses.  Rather, the Complaint and its exhibits reveal that Dr. Jouria contracted to write these courses for NetCE *after* NetCE terminated its discussions with Alpine in late 2012.  The Complaint does not allege facts that NetCE provided earlier drafts of these courses to Alpine, when those courses apparently did not exist before late 2012.

NetCE's Complaint establishes that any information about Dr. Jouria's courses that NetCE could have provided to Alpine was published in 2012 and January 2013 (i.e., the Mid-2012 Courses and the October 2012 were all published between 2012 and January 2013).  *See* Compl. Ex. A; *see also* 17 U.S.C. § 101 (pursuant to federal copyright law, "publication" is "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending").  With that publication, Dr. Jouria's courses became "generally available to the public" and lost any protection pursuant to the NDA.  Compl. Ex. C ¶ 2.

The allegations about Dr. Jouria's plagiarism provide an independent basis to dismiss the claim that Alpine breached the NDA with respect to the 7 courses at issue.  The Complaint alleges that Dr. Jouria plagiarized significant material.  NetCE fails to distinguish in its Claims what information, if any, Dr. Jouria ***did not*** plagiarize.  NetCE fails to delineate between the material in Dr. Jouria's courses that was protected by the NDA and the material that had no protection.  That failure by NetCE is fatal to its claim for breach of the NDA.  *See Pellerin*, 877 F. Supp. 2d at 990-91.

---

contract's language governs its interpretation.") (citing *Belize Telecom, Ltd. v. Belize,* 528 F.3d 1298, 1307 & n. 11 (11th Cir.2008)).

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

NetCE's Complaint fails to allege facts establishing that the NDA protected any information about Dr. Jouria's courses that NetCE could have allegedly provided to Alpine.  On that basis, the Court should dismiss the Third Claim as against Alpine.

### 3. NetCE's Breach of Contract Claim is Impermissibly Based on the Inevitable Disclosure Doctrine

Additionally, the Court should dismiss NetCE's claim for breach of contract against Alpine because it is based on the discredited theory of inevitable disclosure.  *See Whyte v. Schlage Lock Co.*, 125 Cal. Rptr. 2d 277 (Cal. Ct. App. 2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.").  California law does not allow a plaintiff to prove the misuse of confidential information or trade secrets on speculation that a defendant must have "inevitably" relied on the plaintiff's protected information.  *Id.*  The Complaint offers the insufficient allegation that, on information and belief, Alpine must have disclosed information about Dr. Jouria's courses to Elite. Compl. ¶ 98.  Absent from the Complaint are well-pled facts revealing who at Alpine learned of NetCE's plans for Dr. Jouria, whether that individual disclosed the information to Elite, to whom at Elite that person disclosed this information, or when Alpine disclosed that information to Elite.  The more plausible theory is that Dr. Jouria, just as he had done with NetCE, independently provided works to Elite to which Dr. Jouria had no rights.  The Court is allowed to draw that inference over the Complaint's wholly conclusory allegations of misappropriation.  *See Twombly*, 550 U.S. at 568-69, 569 n.14 (Supreme Court held that complaint's conclusory allegations did not "render plaintiff's entitlement to relief plausible," where complaint's factual allegations admitted a natural explanation for the alleged noncompetition activity.).  The Complaint's failure to allege more than mere conclusions in support of the claim that Alpine improperly disclosed information about Dr. Jouria's courses to Elite defeats this claim.  *See Pellerin*, 877 F. Supp. 2d at 989-90 (Court dismissed claim for breach of contract because, in part, Honeywell did not "allege any facts in support of the legal conclusion that Plaintiffs 'used and/or disclosed' and 'acquired and/or used' Honeywell's trade secrets or confidential information").

Further, by bringing this Claim, NetCE is seeking to re-write the NDA to mandate that Alpine could not compete with NetCE.  The NDA does not admit such an interpretation.  In the NDA, NetCE agreed that Alpine "may be engaged in the research, development, production,

marketing, licensing and /or sale of similar products or services to those being considered in connection with this agreement.  Such products or services may be competitive with those of the other and may display the same or similar functionality.  Nothing in this agreement shall be construed to prevent either party from engaging independently in such activities."  Compl. Ex. C. ¶ 4.  California law does not permit a party to blue pencil an agreement in the manner that NetCE seeks.  *See Whyte*, 101 Cal. App. 4th at 1463 (rejecting a party's attempt to use the theory of inevitable disclosure, as doing so would rewrite an agreement to include an un-bargained for non-compete agreement).

Because the Complaint fails to allege any non-conclusory facts that Alpine breached the NDA by using or disclosing confidential information about Dr. Jouria's courses, the Third Claim should be dismissed.

### 4. NetCE's Claim for Tortious Interference Fails to State a Cause of Action

NetCE cannot state a claim for tortious interference with contractual relations (Claim Four) because FUTSA (or its California equivalent, sections 3426 to 3426.11 of the California Civil Code ("CUTSA"), for that matter)[11] preempts that claim.  *See* Fla. Stat. § 688.008(1); *see also* Cal. Civ. Code § 3426.7.  "FUTSA preempts 'conflicting tort, restitutory, and other law[s] of this state providing civil remedies for misappropriation of a trade secret.'"  *Dyncorp Int'l LLC v. AAR Airlift Group, Inc.*, 2016 WL 164606, at *4 (M.D. Fla. Jan. 14, 2016), *reversed on other grounds by* 2016 WL 6833333 (11th Cir. Nov. 21, 2016); *Am. Honda Motor Co. v. Motorcycle*

---

[11]  Florida's choice of law rules for tort actions are based on the "'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws."  *In re: Takata Airbag Products Liab. Litig.*, 2016 WL 6072406, at *4 (S.D. Fla. Oct. 14, 2016) (citing *Grupo Televisa, S.A.,* 485 F.3d at 1240)).  "Courts consider four types of contacts when determining whether one state has a more significant relationship to the matter than another state. The four factors are as follows: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered."  *Id.*  "In Florida, 'absent special circumstances, '[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'''  *Id.* (citing *Pysca Panama, S.A. v. Tensar Earth Techs., Inc.,* 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008)).  Here, it is undisputable that NetCE was injured, if at all, in California, where it is headquartered and has its operations.  Further, the underlying contracts alleged to have been interfered with (between Dr. Jouria and NetCE) are also governed by California law.  Compl. Ex. B, ¶ 10.

*Info. Network, Inc.,* 390 F.Supp.2d 1170, 1180–81 (M.D. Fla. 2005) (where "the allegations of trade secret misappropriation alone comprise the underlying wrong, only the FUTSA claim will survive the motion to dismiss."); *accord K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 260-261 (Cal. Ct. App. 2009) (with the exception of claims based on breach of contract or criminal remedies, CUTSA preempts "claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'").

Here, NetCE's claim (Claim Four) is premised on Alpine's alleged disclosure (to Elite) of NetCE's information about the articles and subject matter that Dr. Jouria was developing for NetCE, as well as NetCE's financials and business strategy.  Compl. ¶ 109.  This is the exact same information upon which NetCE bases its misappropriation of trade secrets claim (Claim Six) against Alpine.  Compl. ¶¶127-130.  Because NetCE's claims for tortious interference with contractual relations and unfair business practices are based "on the same nucleus of facts" as NetCE's claims for trade secret misappropriation, FUTSA – or CUTSA, for that matter – preempts it.  *See, e.g., K.C. Multimedia, Inc.,* 90 Cal. Rptr. 3d *supra* at 264 (affirming dismissal of claims for interference with contract on the basis of preemption because "the conduct at the heart of this claim is the asserted disclosure of trade secrets" by former employees to defendants and was "based on the same nucleus of facts" as the trade secret misappropriation claim).  Therefore, Claim Four should be dismissed.

### 5. NetCE's Claim for Misappropriation of Trade Secrets Fails to State a Cause of Action

To state a claim for trade secret misappropriation under California or Florida law,[12] NetCE must allege essential facts establishing: "(1) the existence of a trade secret, and (2) misappropriation of the trade secret."  *Pellerin*, 877 F. Supp. 2d *supra* at 988 (citation omitted); *see also Greenberg v. Miami Children's Hosp. Research Inst., Inc.,* 264 F. Supp. 2d 1064, 1077

---

[12]  NetCE's misappropriation of trade secrets claim (a tort) is also governed by California law. *See* fn. 11 *supra* at 15; *see also Soc. Language Processing, Inc. v. Ott,* 12-62286-CIV, 2013 WL 1442168, at *5 (S.D. Fla. Apr. 9, 2013) ("Florida choice-of-law rules provide that the principal location of a defendant's unlawful conduct will usually be given the greatest weight in determining choice of law in actions concerning misappropriation of trade secrets.") (citing *Default Proof Credit Card Sys., Inc. v. State St. Bank & Trust Co.,* 753 F.Supp. 1566, 1571 & n. 3 (S.D.Fla.1990).  Because the claim is (improperly) brought pursuant to FUTSA this Motion also refers to Florida law.  However, irrespective of whether the Claim is analyzed under California or Florida law, NetCE fails to state a claim for misappropriation of trade secrets.

(S.D. Fla. 2003) (reciting nearly identical elements for misappropriation claim under FUTSA). As with NetCE's claim for breach of contract, the Complaint fails to allege such facts.

NetCE's trade secret claim rises and falls on the Complaint's allegations regarding the information about Dr. Jouria's courses.  Compl. ¶¶ 45, 47-48, 127.  Critical to NetCE's claim for trade secret misappropriation is the need to plead non-conclusory fact allegations that its alleged trade secret information must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protects its secrecy.  Cal. Civ. Code § 3426.1(d); *see also* Fla. Stat. § 688.002(4); *Greenberg*, 264 F. Supp. 2d *supra* at 1076 (citations omitted) (dismissing claim for misappropriation where plaintiff did not allege facts exhibiting that it took reasonable steps to protect secrecy of trade secrets).  NetCE "must identify the trade secret with *sufficient particularity* to give defendants reasonable notice of the issues which must be met at the time of trial and to provide 'reasonable guidance in ascertaining the scope of appropriate discovery.'"  *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) (emphasis added and citation omitted) (dismissing complaint for failure to adequately describe trade secret); *see also Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, 14-62216-CIV, 2015 WL 1526177, at *9 (S.D. Fla. Apr. 3, 2015) (trade secret must be described with "reasonable particularity").  NetCE's Complaint fails to allege that Alpine possessed any trade secrets with respect to Dr. Jouria's courses.

As with its breach of contract claim, NetCE cannot base its trade secrets claim on information that was impossible for NetCE to disclose to Alpine.  The Complaint and its exhibits establish that NetCE contracted for the 2013 Courses *in 2013*.  Dr. Jouria therefore drafted these three articles ***after*** NetCE terminated its discussions with Alpine in late 2012.  Because Alpine could not have received information about these 3 courses from NetCE, these articles cannot serve as the basis for NetCE's claim for trade secret misappropriation.

Further, any information about Dr. Jouria's courses that NetCE could have provided to Alpine lost any trade secret protection.  The certificates of registration of the Mid-2012 Courses and the October 2012 Courses reflect that they were first published no later than January 2013. Once the courses where published, the trade secrets, if any, were extinguished.  *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009); *Kema, Inc. v. Koperwhats*, 2010 WL 726640, at *3 (N.D. Cal. 2010) (dismissing trade secret claim because

17

plaintiff had sought copyright protection of alleged trade secrets, and holding that "if an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." (citation omitted)); *M.C. Dean, Inc. v. City of Miami Beach, Florida*, 16-21731-CIV, 2016 WL 4179807, at *4 (S.D. Fla. Aug. 8, 2016) ("Disclosing the 'information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret.'") (citations omitted).  These courses have no trade secret protection.

Just as with NetCE's breach of contract claim, the Complaint also fails to distinguish the non-public information in Dr. Jouria's courses from the public information that he allegedly plagiarized.  *Designing Health, Inc. v. Erasmus*, 2000 WL 35789501 at *9 (Dismissing trade secret claim and noting that "'the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies.'") (citations omitted).  Having failed to delineate between non-public and public information contained within Dr. Jouria's courses, NetCE fails to state a claim for misappropriation of trade secrets.

Additionally, other than Alpine's execution of the NDA which, by its own terms, allowed Alpine to compete with NetCE, the Complaint relies on insufficient, conclusory and formulaic allegations that NetCE took adequate steps to protect its alleged trade secrets.  Compl. ¶ 128.  To the contrary, the documents attached to the Complaint establish that NetCE *published* the 7 Dr. Jouria courses at issue in this litigation at the very moment, or shortly after, NetCE alleges it gave the trade secret information about those courses to Alpine.  Compl. Exhibit A.  NetCE's failure to plead facts sufficient to show that it took adequate steps to maintain the secrecy of the allegedly misappropriated information requires dismissal of Claim Six of the Complaint.  *See Envtl. Sols. Assn. 1 v. Prof'l Labs., Inc.*, 2013 WL 12043499, at *3 (S.D. Fla. Dec. 9, 2013) (dismissing trade secret claim where "[counter-plaintiff] has not alleged any facts exhibiting that it took reasonable steps to protect its secrecy.  Rather, [counter-plaintiff] has alleged only that 'information is the subject of efforts that are reasonable under the circumstances to maintain its

18

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

secrecy.'  That allegation is nothing more than a threadbare recital of the requisite element, without any facts as to the reasonable efforts that were taken.").

## IV.   CONCLUSION

For all the foregoing reasons, Alpine respectfully requests that the Court dismiss NetCE's Claims in the Complaint with prejudice, and award Alpine such further relief as this Court deems just and proper.

Respectfully submitted,

**GUNSTER**
*Attorneys for Specially Appearing*
*Third-Party Defendant*
*Alpine Management Services III, LLC*
600 Brickell
Suite 3500
Miami, FL  33131-1897
Phone:  (305) 376-6092
Fax:  (305) 376-6000

By:____/s/ Jorge Guttman_____
        **William K. Hill, Esq.**
        Florida Bar No. 747180
        Email:  whill@gunster.com
        **Jorge D. Guttman, Esq.**
        Florida Bar No. 15319
        E-mail: jguttman@gunster.com

OF COUNSEL

Richard S. Horvath, Jr., Esq.
(*Pro Hac Vice Application Pending*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
*Attorneys for Specially Appearing*
*Third-Party Defendant*
*Alpine Management Services III, LLC*
525 University Avenue
Palo Alto, California  94301
Phone:  (650) 470-4519
Fax:  (650) 798-6602
E-mail: richard.horvath@skadden.com

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served on this day on all counsel of record on the attached Service List.

By: /s/ *Jorge D. Guttman*
Jorge D. Guttman

## SERVICE LIST

Richard S. Ross
Florida Bar No. 436630
prodp@ix.netcom.com
Atrium Centre
4801 S. University Drive, Suite 237
Ft. Lauderdale, FL  33328
Tel:  (954) 252-9110
Fax:  (954) 252-9192
*Attorney for Plaintiff/Counter-Defendant,*
*Dr. Jassin Jouria*

Philip E. Rothschild
Florida Bar No. 0088536
Phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Ft. Lauderdale, FL  33301
Tel:  (954) 525-1000
Fax:  (954) 463-2030
*(Attorney for Defendant/Counter-Claimant/Third Party Plaintiff,*
*CE Resource, Inc. d/b/a CME Resource and NetCE)*

Jessica E. Lanier *(pro hac vice)*
Jessica.lanier@hklaw.com
John P. Kern *(pro hac vice)*
John.kern@hklaw.com
HOLLAND & KNIGHT, LLP
50 California Street, Suite 2800
San Francisco, CA  94111
Tel:  (954) 468-7881
*(Attorney for Defendant/Counter-Claimant/Third Party Plaintiff,*
*CE Resource, Inc. d/b/a CME Resource and NetCE*

MIA_ACTIVE 4545998.6

20

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**