# **EXHIBIT A**

HOLLAND & KNIGHT
John Kern (CA State Bar No. 206001)
Jessica Lanier (CA State Bar No. 303395)
50 California Street, 28th Floor
San Francisco, California 94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910
Email: john.kern@hklaw.com
         jessica.lanier@hklaw.com

Attorneys for CE RESOURCE, INC. *d/b/a* NetCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CE RESOURCE, INC. *d/b/a* NetCE,<br><br>    Plaintiff,<br><br>vs.<br><br>DR. JASSIN JOURIA, an individual, and ELITE CONTINUING EDUCATION, INC., a Florida Corporation.<br><br>    Defendant. | Case No.:<br><br>**PLAINTIFF'S COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS, AND UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 *et seq*** |

Plaintiff CE RESOURCE, INC. *d/b/a* CME RESOURCE and NetCE (hereafter "NetCE" or "Plaintiff"), files this complaint against Defendants DR. JASSIN JOURIA ("Dr. Jouria") and ELITE CONTINUING EDUCATION ("Elite") (collectively, "Defendants"), and alleges as follows:

**PARTIES**

1.  Plaintiff NetCE is a California-based corporation, with its principal place of business at 1482 Stone Point Drive, Suite 120, Roseville, California, 95661.

2.  Defendant Dr. Jouria is a doctor of medicine and author of medical education literature. On information and belief, he is not a practicing physician. On information and belief, Dr. Jouria resides in Florida.

1
PLAINTIFF CE RESOURCE, INC. *D/B/A* NETCE COMPLAINT

3. Defendant Elite is a business entity, with its principal place of business at 1452 North U.S. Highway 1, Suite 100, Ormond Beach, FL, 32174.

4. On information and belief, non-party "NurseCE4Less" is website owned by Health Inservice, Inc., a Butte, Montana company operating in the medical continuing education and training industry.

## JURISDICTION AND VENUE

5. This is an action for copyright infringement arising under the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ("U.S. Copyright Act" or "Copyright Act"), breach of contract, tortious interference with contract relations, and a violation of California's Unfair Business Practices Statute (Cal. Bus. & Prof. Code §17200, *et seq.*).

6. This Court has original jurisdiction over the subject matter of this action under 35 U.S.C. §§ 1331, 1338. The actions for breach of contract, interference with contractual relations, and unfair business practices arise from the same transaction and/or occurrence and are a part of the same case and/or controversy as the claim for copyright infringement. Therefore, this Court has supplemental jurisdiction over this action under 35 U.S.C. § 1367.

7. Dr. Jouria is subject to personal jurisdiction in California. He entered into negotiations and several contractual arrangements with NetCE, a California-based corporation. In entering into these contracts, Dr. Jouria agreed to be governed by the laws of the state of California with respect to any dispute arising with NetCE regarding the agreement governed by the contract. The causes of action herein described arose from Dr. Jouria's contact with California; therefore, California has specific jurisdiction over Dr. Jouria for this matter.

8. Elite is subject to personal jurisdiction in California, because, upon information and belief, it purposefully avails itself of California law by offering continuing education programs and certification courses in California, to California residents, and to persons seeking qualification to practice various professions (dentistry, nursing, massage therapy, pharmacology, counseling, psychology, and social work) within California. In offering these courses, Elite must comply with California regulations as to licensure for a variety of professions. Moreover, Elite is subject to personal jurisdiction in California, because it interfered with a contract between Dr. Jouria and

NetCE, a California-based company. Due to the breadth of its interaction with California, Elite is subject to personal jurisdiction therein.

9. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) because Plaintiff NetCE has its principal place of business there, and because a substantial part of the events giving rise to Plaintiff's claims occurred within the Eastern District of California.

## FACTUAL BACKGROUND

**a.  NetCE: Background, Contributing Faculty Members, and Freelance Writer Agreements**

10. NetCE is one of the nation's leading publishers of Continuing Medical Education ("CME") articles, content, and course materials. NetCE was founded 1991, and its target customers generally are healthcare professionals, including without limitation Nurses, Physicians, Dental Professionals, Social Workers, Counselors, and Psychologists.

11. NetCE is located in Roseville, California, and currently has 39 employees.

12. In order to develop the CME courses and materials it offers to its customers, NetCE contracts with independent authors (referred to in NetCE's marketing materials as its "Contributing Faculty Members"), almost all of whom are licensed medical professionals, credentialed medical scholars and academics, or both.

13. The Contributing Faculty Members who draft the CME course materials NetCE edits, markets, and publishes, do so under standard, template agreements (called "Freelance Writer Agreements"), identical---except for the name of the author, deadlines ("course completion dates"), and subject-matter areas---to the seven (7) contracts between NetCE and JOURIA at issue in this case. Currently, NetCE is working with more than 80 Contributing Faculty Members under Freelance Writer Agreements.

14. Under the terms of the Freelance Writer Agreements, the Contributing Faculty Members agree, among other terms, to draft and submit to NetCE for editing and publication CME articles on a specific subject, in a specific format, and by a specific deadline. These Contributing Faculty Members also agree that the articles they submit to NetCE are "works for hire" and that all copyrights associated with these materials belong exclusively to NetCE.

15. The type of writer-publisher arrangement described above is, in fact, quite common in the publishing industry.

16. At present, NetCE has federally registered copyrights for more than 840 CME articles and courses, as well as the catalogs and brochures associated with the CME materials. NetCE also has pending federal copyrights (applications on file with the U.S. Copyright Office) for an additional 27 courses/articles (including for the seven (7) courses at issue).

**b.  Elite Continuing Educators**

17. On information and belief (and according to the Better Business Bureau), Elite Continuing Educators ("Elite") was founded in 1999, and maintains its principal place of business in Florida.

18. On information and belief, Elite began offering continuing education to nurses (and thus became a direct competitor to NetCE) around 2006-2007. Prior to this time, on information and belief, Elite published continuing education course primarily for cosmetologists.

19. On information and belief (according to the information on its website), Elite currently offers approximately 60 CME courses for nursing professionals, including numerous courses authored by Dr. Jouria in the areas of pharmacology and internal medicine.

**c.  Dr. Jasssin Jouria**

20. On information and belief, Dr. Jouria is an M.D., who received his medical degree from Ross University School of Medicine ("RUSM"). RUSM is a private, for-profit medical school, owned and operated by DeVry Education Group and located on the Island Nation of Dominica, in the Caribbean.

21. On information and belief, because he has not completed a residency, Dr. Jouria is not a licensed, certified, or practicing physician

22. In early 2013, Dr. Jouria approached NetCE with a proposal to work on a series of CME courses in the areas of general medical, internal medicine, and pharmacology.

23. At the time of Dr. Jouria's proposal, NetCE was looking to expand its course offerings in these areas in response to newly adopted CME requirements for nurses across the country, particularly in the areas of pharmacology and internal medicine.

4
PLAINTIFF CE RESOURCE, INC. *D/B/A* NETCE COMPLAINT

24. As part of its normal diligence on prospective new contributors, NetCE performed online research to ensure that Dr. Jouria was not already working with any of its competitors to market and publish CME articles. Dr. Jouria confirmed in his discussions with NetCE that he was not working for any of NetCE's competitors.

25. NetCE and Dr. Jouria engaged in discussions which ultimately culminated in the parties entering into ten (10) separate Freelance Writer Agreements, under which Dr. Jouria would prepare draft CME articles in agreed upon areas (hereafter referred to as "Courses"), and NetCE would provide editing, publishing, and marketing services for the Courses.

26. Throughout 2013 and 2014, Dr. Jouria submitted drafts for each of the ten (10) Courses, and NetCE paid Dr. Jouria for each of the ten (10) Courses, pursuant to the terms of the respective Freelance Writer Agreements.

27. Ultimately, NetCE did publish and make available for its customers three (3) of Dr. Jouria's Courses, including (a) Course #98590, entitled "Multiple Sclerosis: A Comprehensive Review," (b) Course #98810, entitled "COPD: An Overview of Pathophysiology and Treatment," and (c) Course #4885, entitled "Pressure Ulcers: Pathogenesis and Management." These three (3) Courses are _not_ in dispute and are _not_ the subject of this lawsuit.

**d.     The Seven (7) At-Issue Agreements**

28. NetCE and Dr. Jouria entered into seven (7) additional Freelance Writer Agreements, which are at issue in this case. Except for (a) the subject matter description of the Courses, (b) the deadlines for submission of draft Courses, and (c) the compensation NetCE was to pay Dr. Jouria for each Course---these seven (7) agreements were identical in their terms. The subject matter description of the Courses were:

1)   The Lymphatic and Immune Systems;

2)   Traumatic Brain Injury;

3)   Nonantibiotic Antimicrobial Pharmacology;

4)   Cardiovascular Pharmacology;

5)   Gastroesophageal Reflux Disease;

6)   Cancer and Chemotherapy; and

5

PLAINTIFF CE RESOURCE, INC. *D/B/A* NETCE COMPLAINT

    7)  Depression vs. Dementia in the Elderly.

29. Each agreement made clear that the draft Courses were the property of NetCE and that NetCE was the author of each Course Dr. Jouria drafted related to the subject matter of the seven (7) agreements. NetCE paid Dr. Jouria for exclusive ownership and right of first refusal to publish the above articles.

  **e.**  **Problems with Dr. Jouria's Credentials, Submitted Works, and Other Red Flags**

30. After entering into the Freelance Writer Agreements, but prior to completion of the engagement, NetCE continued to collect background information relating to Dr. Jouria's credentials. NetCE discovered that Dr. Jouria was involved in a lawsuit with the Education Commission for Foreign Medical Graduates. This lawsuit had revealed that Dr. Jouria had submitted false letters of recommendation with his application to them.

31. By the time NetCE uncovered the information above, it already was engaged in producing several courses with Dr. Jouria. NetCE decided to fulfill the agreements the parties already had executed, but not to enter into additional contracts or projects with Dr. Jouria.

32. Unfortunately, over the course of the engagement, other red flags emerged about Dr. Jouria's credentials and his truthfulness. For instance, Dr. Jouria's resume indicated that Dr. Jouria attended medical school at Ross University in New Jersey. Ross University is, in fact, an "off-shore" medical school in the Dominican Republic.

33. Further, upon information and belief, although Dr. Jouria is technically an MD as he completed a medical degree, he is technically not permitted to call himself a "doctor" or a "physician," because he has not completed medical residency in the United States (which is a requirement to practice/become licensed).

34. Moreover, when Dr. Jouria began to submit his draft work for NetCE's evaluation and revision, NetCE discovered the work had significant deficits in three major areas: medical/scientific accuracy, grammatical and stylistic errors, and plagiarism.

35. While NetCE budgets time for significant editing of grammar, style, spelling, and structure, Dr. Jouria's submissions required more editing than was typical for these types of courses.

NetCE came to believe that Dr. Jouria copied sections of his submissions from a variety of different sources.

36. Dr. Jouria's works were littered with plagiarized content. NetCE utilized a plagiarism detection program called "iThenticate" to identify areas that were copied (in essence or exactly) and then removed offending passages, and in some cases obtained the original author's permission to reprint them, prior to getting the works ready for publication. iThenticate revealed that the tables of information Dr. Jouria included with his submissions were almost always copied from original sources with no indication as to their author or source and never with permission to reprint.

37. NetCE expended a significant amount of time and effort locating the original sources for each of these tables, requesting permission to reprint the tables and paying reprinting fees to the copyright holder to do so.

38. NetCE conducted extensive literature reviews and appraisal of available guidelines in order to ensure that every submission was supported by evidence-based literature and in keeping with prevailing professional guidelines regarding scientific and medical accuracy. In particular, NetCE's in-house Physician Division Planner, Dr. John Leonard, completed extensive revisions of the courses NetCE published.

39. At the time NetCE discovered Dr. Jouria's relationship with Elite, two of the NetCE courses--Gastroesophageal Reflux Disease and Cancer and Chemotherapy--were close to publication, with an estimated release date of March 1, 2015. The remaining five courses required significant editorial work, but were tentatively scheduled to be completed and released sometime in 2015.

40. The Gastroesophageal Reflux Disease and Cancer and Chemotherapy courses were close enough to publication that NetCE had paid for permission to reprint tables from the original copyright holders. (These tables appear in the Elite courses without attribution or permission.)

41. NetCE paid an independently contracted editor a large sum to make significant improvements and substantive edits to the Cancer and Chemotherapy course.

42. The substantial amount of time spent by NetCE editorial staff developing the courses and related proposal not only cost NetCE money but diverted time and resources from other, viable projects.

43. Physical resources, such as licensed programs, were expended upon editing Dr. Jouria's ultimately unusable projects.

44. Dr. Jouria's publication with Elite prevented NetCE from featuring Dr. Jouria's courses in NetCE's direct mailings.

45. Because NetCE is unable to use the content Dr. Jouria submitted, Dr. Jouria's actions and publication with Elite set NetCE behind its competitors in offering courses in the above-described topics.

46. Lastly, upon information and belief, sales of Dr. Jouria's prior courses with NetCE may be depressed due to the high profile character of his relationship with Elite and customer confusion as to source.

**f.  NetCE's Copyrights are Infringed Through Publication with Elite**

47. In early April 2015, NetCE discovered that Dr. Jouria had materially breached seven (7) of the Freelance Writer Agreements, by publishing seven (7) articles (which he previously had submitted to NetCE) through one of NetCE's competitors, Elite.

48. These articles all fell within the subject matter areas of pharmacology and internal medicine----areas in which Elite, one of NetCE's chief competitors, had not previously published in a significant manner.

49. In fact, upon information and belief, Elite presently offers no other pharmacology courses aside from ones authored by Dr. Jouria.

50. Moreover, the majority of Elite's internal medicine and general medicine courses also are authored by Dr. Jouria.

51. In sum, Dr. Jouria's collaboration with Elite on the seven (7) course at-issue in the case represent a new and significant foray by Elite into an expansion of its CME offerings.

52. By publishing articles through Elite relating to the above-identified topics, Dr. Jouria materially breached the terms of the various Freelance Writer Agreements he signed with NetCE, including, without limitation, the following provisions: (1) §5(d) ("Writer will submit the Article to any other party for publication unless and until [NetCE] expressly rejects the Article . . ..") and (2) §9 ( "Writer hereby understands and agrees that all articles approved for publication by [NetCE]

under this agreement shall belong exclusively to [NetCE] . . ." and . . ."Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and [NetCE] shall be deemed to be the author thereof . . ..").

### g. NetCE's Copyrights are Infringed Through Publication with NurseCE4Less

53. In August of 2015, NetCE discovered that Dr. Jouria had committed additional bad acts, this time with a NetCE competitor called "NurseCE4Less."

54. On information and belief, NurseCE4Less is a website owned by Health Inservice, Inc., a Butte, Montana corporation operating in the medical continuing education and training industry.

55. Dr. Jouria's publication through NursesCE4Less constitutes a material breach of same provisions of four (4) of the Freelance Writer Agreements, as well an infringement of NetCE's copyrights in those 4 works.

56. Dr. Jouria had published substantially similar versions of articles owned by NetCE with a company called NurseCE4Less: "Traumatic Brain Injury," "Nonantibiotic Antimicrobial Pharmacology," "Cardiovascular Pharmacology," and "The Lymphatic and Immune Systems."

57. For NurseCE4Less, Dr. Jouria submitted paraphrased versions of NetCE courses "Nonantibiotic Antimicrobial Pharmacology" and "Cardiovascular Pharmacology" as "Antibiotic and Antimicrobial Pharmacology" in four (4) parts and "Cardiovascular Pharmacology" in three (3) parts.  Some elements (tables and language) are reworked or removed in these infringing NurseCE4Less publications, but the outline and stated learning objectives are identical to the copyrighted NetCE courses.  This constitutes substantial similarity.

58. In breach of the pertinent Freelance Writer Agreements, Dr. Jouria also submitted articles titled "Lymph Nodes & Cancer" in two (2) parts and "Trauma Series: Head Trauma" to NurseCE4Less.  These two articles copy significant sections from NetCE articles "The Lymphatic and Immune Systems" and "Traumatic Brain Injury," respectively.  This, too, constitutes substantial similarity.

59. By publishing articles through the NurseCE4Less website, which are based and relate to the above-identified topics, Dr. Jouria has infringed on NetCE's copyrights and materially

9
PLAINTIFF CE RESOURCE, INC. *D/B/A* NETCE COMPLAINT

breached the terms of the various Freelance Writer Agreements he signed with NetCE, including, without limitation, the following provisions: (1) §5(d) ("Writer will submit the Article to any other party for publication unless and until [NetCE] expressly rejects the Article . . ..") and (2) §9 ( "Writer hereby understands and agrees that all articles approved for publication by [NetCE] under this agreement shall belong exclusively to [NetCE] . . ." and . . ."Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and [NetCE] shall be deemed to be the author thereof . . ..").

60. Upon information and belief, NurseCE4Less published these articles throughout 2014 and 2015. Each of these articles is presently available for purchase on the NurseCE4Less website.

## CLAIMS FOR RELIEF

### CLAIM ONE: COPYRIGHT INFRINGEMENT
(Against Dr. Jassin Jouria and Elite Continuing Education)

61. NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1-60 as if fully set forth herein.

62. Each of the articles Dr. Jouria submitted to NetCE pursuant to the Contracts is either registered with the United States Copyright office or is the subject of a completed application for copyright registration with the same.

63. Pursuant to the terms of the Contracts and the work for hire doctrine, NetCE is the sole author and lawful owner of the copyright for the articles Dr. Jouria submitted to NetCE. As such NetCE has the exclusive right to copy, reproduce, and distribute copies of the articles or derivative works thereof.

64. Neither Elite nor Dr. Jouria obtained permission from NetCE to republish, reissue, resubmit, or otherwise license the articles, identical versions of the articles, or substantially similar versions of the articles covered by the Contracts.

65. Dr. Jouria infringed NetCE's copyrights by resubmitted the articles covered by the Contracts to Elite for further publication. Elite infringed NetCE's copyrights by publishing the articles Dr. Jouria submitted to NetCE pursuant to the terms of the Contracts.

**CLAIM TWO: BREACH OF CONTRACT**
(Against Dr. Jassin Jouria)

66. NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1-65 as if fully set forth herein.

67. Dr. Jouria entered into seven valid and enforceable written contracts with NetCE (the "Contracts").

68. The Contracts each expressly stated that the articles NetCE approved for publication belonged exclusively to NetCE. In each of the Contracts, Dr. Jouria explicitly agreed that each submitted article was a work for hire under U.S. Copyright law and that NetCE was the author of each of these works.

69. In each of the Contracts, Dr. Jouria expressly represented that the articles he submitted to NetCE were original works, were not obtained unlawfully or owned by any third party, had not been submitted by him to any other party for publication, had not been previously published, would not violate any intellectual property right of any third party, and that he would not submit any article "to any other party for publication unless and until [NetCE] expressly reject[ed]" the article.

70. Each of the seven Contracts names a specific subject for which NetCe agreed to accept content.

71. NetCE agreed to publish each of the articles Dr. Jouria submitted regarding the approved seven subjects. NetCE never "expressly reject[ed]" any of these articles.

72. Dr. Jouria breached his obligations under the Contracts by submitting articles to NetCE pursuant to the terms of the Contracts and, without an explicit rejection for NetCE selling identical or substantially similar articles to Elite.

73. NetCE performed all of its obligations under the Contracts.

74. As a result of these breaches, NetCE has been damaged in an amount to be proven at trial.

//
//
//
//

## CLAIM THREE: TORTIOUS INTERFERENCE
## WITH CONTRACTUAL RELATIONS
(Against Elite Continuing Education)

75. NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1-74 as if fully set forth herein.

76. NetCE and Elite are competitors in the field of continuing professional educational services and materials.

77. The Contracts between Dr. Jouria and NetCE are valid and enforceable.

78. Upon information and belief, Elite was aware of Dr. Jouria's agreements with NetCE ("Contracts").

79. Elite intentionally interfered with the contracts between Dr. Jouria and NetCE by soliciting and publishing articles identical or substantially similar to articles Dr. Jouria submitted to NetCE. Pursuant to the terms of the Contracts, these articles were the property of NetCE. In soliciting and publishing articles that were properly the property of NetCE, Elite prevented Dr. Jouria from performing his obligations pursuant to the Contracts.

80. As a proximate result of Elite's conduct, NetCE has suffered damages in an amount to be proven at trial.

81. In addition, Elite's conduct has permanently and irreparably harmed NetCE. NetCE is therefore entitled to injunctive relief.

82. Elite's aforementioned conduct was willful, malicious, fraudulent and in conscious disregard of NetCE's rights and interests and, on information and belief, was undertaken with the intent to injure NetCE's property and legal rights. Accordingly, an award of punitive damages is justified.

## CLAIM FOUR : UNFAIR BUSINESS PRACTICES UNDER
## CALIFORNIA BUSINESS & PROFESSIONAL CODE, code § 17200 *et seq*
(Against Dr. Jassin Jouria and Elite Continuing Education)

83. NetCE hereby repeats and re-alleges each and every allegation contained in Paragraphs 1-82 as if fully set forth herein.

84. A business practice or act is "unfair" under California Business and Professions Code § 17200 *et seq.* if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm.

85. Dr. Jouria has engaged in unlawful, unfair and fraudulent business acts. Dr. Jouria read and signed each of the Contracts. Dr. Jouria submitted articles to NetCE corresponding to the subject matter NetCE approved in the Contracts. Dr. Jouria was aware that NetCE employees spent a great deal of time fact- and source-checking, editing, and re-organizing the articles. In flagrant disregard of the terms of the Contracts and NetCE's efforts, Dr. Jouria submitted identical or substantially similar articles to one of NetCE's primary competitors. Dr. Jouria's actions deprived NetCE completely of the fruits of NetCE's efforts.

86. Dr. Jouria knew the actions described above were improper.

87. Upon information and belief, Elite was aware of the Contracts and was aware that Dr. Jouria had submitted articles pursuant to the Contracts to NetCE and that NetCE had edited, refined, and finalized the articles Dr. Jouria eventually submitted to Elite. Upon information and belief, Elite did not require Dr. Jouria to make any representations or warranties that selling articles to Elite would not violate the intellectual property rights of any third party. Elite accepted the articles Dr. Jouria submitted and published them with minimal, if any, editing or revision.

88. Defendants' actions discussed herein constitute unfair competition within the meaning of California Business and Professions Code § 17200 *et seq.*

89. NetCE at all times has acted with the utmost good faith.

90. As a proximate result of Defendants' actions, consumers were erroneously led to believe that material Elite and Dr. Jouria published together was a product the Defendants had crafted together and that Elite had vetted.

91. As a direct and proximate result of Defendants' actions, NetCE has suffered and will continue to suffer lost profits in an amount to be proven at trial.

92. NetCE is entitled to preliminary and permanent injunctive relief that orders Defendants to cease this unfair competition and disgorge any profits associated with unfair competition.

13
PLAINTIFF CE RESOURCE, INC. *D/B/A* NETCE COMPLAINT

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

## PRAYER FOR RELIEF

WHEREFORE, NetCE prays for judgment against Defendants as follows:

1. For entry of judgment against Defendants on all Claims for Relief;

2. Pursuant to this Court's equity powers and 28 U.S.C. § 2202, for an injunction permanently requiring Dr. Jouria and all persons or entities acting in concert with him or at his behest to refrain from independently publishing, reproducing, distributing, or placing in the market the copyrighted works of NetCE or any derivative work thereof and permanently requiring Elite to (a) refrain from publishing, reproducing, distributing, or placing in the market the copyrighted works of NetCE or any derivative work thereof and to (b) destroy any existing unauthorized reproductions or disseminations of the copyrighted works of NetCE;

3. Pursuant to this Court's equity powers and 28 U.S.C. § 2202, for an injunction requiring Dr. Jouria and Elite to return any copies of NetCE copyrighted material or any derivative work thereof unlawful obtained, reproduced, or copied and to fully disclose, under penalty of perjury, the names and whereabouts of all persons to whom, and entities to which, such information has been further distributed by them;

4. Pursuant to this Court's equity powers and 28 U.S.C. § 2202 for an order providing for the impoundment, destruction, or other reasonable disposition of all complete or partial copies of the copyrightable protected material in the possession or control of Dr. Jouria or Elite, and a complete disclosure of the location of any such copies;

5. For compensatory and actual damages in an amount according to proof;

6. For an award of exemplary damages;

7. For an award of punitive damages;

8. For an award reflecting the amount by which Defendants have been unjustly enriched;

9. For costs of suit and reasonable attorneys' fees incurred in the course of this litigation;

10. For an award of statutory damages;

11. For post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

12. For pre-judgment interest, at the maximum rate allowed by U.S. Copyright Law; and

13. For such other relief as the Court deems just and proper.

DATED: September 4, 2015

    /s/ John Kern                  
HOLLAND & KNIGHT LLP
John Kern
Jessica Lanier
Attorneys for Plaintiff CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE