# **EXHIBIT D**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN REGISTRY, LLC,
a Delaware limited liability company,

        Plaintiffs,

      v.                            Case No. 2:13-cv-00352-JES-SPC

YONAH HANAW a/k/a JOHN HANAW,
MICHAEL LEVY, SHOWMARK
HOLDINGS, LLC, a Delaware limited
liability company, and SHOWMARK
MEDIA, LLC, a Delaware limited liability
company,

        Defendants.
_____/

**SECOND AMENDED COMPLAINT**

Plaintiff, AMERICAN REGISTRY, LLC (hereinafter Plaintiff or "AMERICAN REGISTRY"), by and through the undersigned counsel, and pursuant to this Court's May 20, 2013 Order (Doc. 6), files this Second Amended Complaint and sues Defendants, YONAH HANAW a/k/a JOHN HANAW (hereinafter "HANAW"), MICHAEL LEVY (hereinafter "LEVY"), SHOWMARK HOLDINGS, LLC (hereinafter "SHOWMARK HOLDINGS") and SHOWMARK MEDIA, LLC (hereinafter "SHOWMARK MEDIA"), and alleges:

**GENERAL ALLEGATIONS**

1.    Plaintiff, AMERICAN REGISTRY, is a limited liability company

1

organized and existing under the laws of the State of Delaware. The members of AMERICAN REGISTRY owning 100% of its membership interests are TWS Partnership, LLC, a Florida limited liability company, Helen Moskowitz, a citizen of the United States domiciled in the State of Florida, and Mitchel Rothschild, a citizen of the United States domiciled in the State of New York. The members of TWS Partnership, LLC owning 100% of its membership interests are Teddy Struhl and Warren Struhl, both citizens of the United States domiciled in the State of Florida. As such, AMERICAN REGISTRY has a dual base for citizenship and is deemed a citizen of the State of Florida and State of New York for diversity purposes.

2. Defendant, HANAW, is a citizen of and domiciled in Israel, over the age of eighteen, and is otherwise *sui* juris.

3. On information and belief, HANAW, by and through SHOWMARK HOLDINGS, owns 75% of the membership interests in SHOWMARK MEDIA.

4. HANAW is subject to personal jurisdiction in the State of Florida because he has contractually consented to this Court's personal jurisdiction over him by virtue of a forum-selection clause in his agreement with AMERICAN REGISTRY more particularly described below.

5. Defendant, LEVY, is a citizen of and domiciled in Israel, over the age of eighteen, and is otherwise *sui* juris.

6. On information and belief, LEVY owns 25% of the membership interests in SHOWMARK MEDIA.

2

7.       LEVY is subject to personal jurisdiction in the State of Florida because of his business relationship with HANAW in the formation and operation of SHOWMARK MEDIA and the "closely-related party doctrine," under which a third party may be bound to a forum-selection clause when it is closely related to the dispute such that it becomes foreseeable that it may be bound by such a clause.

8.       As is set forth below, LEVY, although not a party to HANAW's agreement with AMERICAN REGISTRY inclusive of a forum-selection clause, is closely related to the dispute between AMERICAN REGISTRY and HANAW and shares a common interest with HANAW and SHOWMARK MEDIA in this action, to-wit:  The right to utilize AMERICAN REGISTRY's trade secrets and other confidential proprietary business information to solicit AMERICAN REGISTRY's customers on behalf of SHOWMARK MEDIA.

9.       Defendant, SHOWMARK HOLDINGS, is a limited liability company organized and existing under the laws of the State of Delaware.

10.      On information and belief, HANAW is the sole member of SHOWMARK HOLDINGS.

11.      On information and belief, SHOWMARK HOLDINGS was formed by HANAW to own and hold HANAW's 75% membership interest in SHOWMARK MEDIA.

12.      SHOWMARK HOLDINGS is subject to personal jurisdiction in the State of Florida because of its close relationship with HANAW in the formation and operation of

SHOWMARK MEDIA and the "closely-related party doctrine," under which a third party may be bound to a forum-selection clause when it is closely related to the dispute such that it becomes foreseeable that it may be bound by such a clause.

13. As is set forth below, SHOWMARK HOLDINGS, although not a party to HANAW's agreement with AMERICAN REGISTRY inclusive of a forum-selection clause, is closely related to the dispute between AMERICAN REGISTRY and HANAW and shares a common interest with HANAW and SHOWMARK MEDIA in this action, to-wit: The right to utilize AMERICAN REGISTRY's trade secrets and other confidential proprietary business information to solicit AMERICAN REGISTRY's customers on behalf of SHOWMARK MEDIA.

14. Defendant, SHOWMARK MEDIA, is a limited liability company organized and existing under the laws of the State of Delaware.

15. SHOWMARK MEDIA conducts its business throughout the United States and in this judicial district, including by offering for sale and selling personalized, customized achievement recognition items through its website, www.showmark.com.

16. SHOWMARK MEDIA is subject to personal jurisdiction in the State of Florida because of its close relationship with HANAW in the formation and operation of SHOWMARK MEDIA and the "closely-related party doctrine," under which a third party may be bound to a forum-selection clause when it is closely related to the dispute such that it becomes foreseeable that it may be bound by such a clause.

17. As is set forth below, SHOWMARK MEDIA, although not a party to

4

HANAW's agreement with AMERICAN REGISTRY inclusive of a forum-selection clause, is closely related to the dispute between AMERICAN REGISTRY and SHOWMARK MEDIA shares a common interest with HANAW in this action, to-wit: The right to utilize AMERICAN REGISTRY's trade secrets and other confidential proprietary business information to solicit AMERICAN REGISTRY's customers on behalf of SHOWMARK MEDIA.

18.     This is an action for injunctive relief and damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

19.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

20.     Venue for this Complaint is proper in this Court under, *inter alia*, the forum selection clause contained in the agreement between AMERICAN REGISTRY and HANAW.   All Defendants are bound by the forum selection clause as they are so closely related to the agreement at issue and AMERICAN REGISTRY's dispute with HANAW, and thus, subject to the personal jurisdiction of this Court.

21.     AMERICAN REGISTRY conducts its business throughout the United States and in this judicial district, including by its offering for sale and selling personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners.

22.     In connection with its business operations, AMERICAN REGISTRY has developed and/or acquired extensive confidential materials and information necessary to

conduct its business operations, including, but not limited to, customer lists, customer identity, customer contact information and confidential information about each customer's business, purchase and credit information, sales and operation procedures, software, system architecture, financial data, sales and marketing strategies and data, lists, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY (hereinafter collectively referred to as the "Proprietary Information.")  The Proprietary Information is highly confidential, constitutes trade secrets and is not available to members of the general public or to competitors.

23.     AMERICAN REGISTRY maintains a competitive advantage in the personal achievement recognition market by utilizing the Proprietary Information in its day to day operations.

24.     To maintain this competitive advantage, AMERICAN REGISTRY constantly evaluates its Proprietary Information to assure that it meets the needs of its marketplace; redesigns and enhances its Proprietary Information by adding new, innovative concepts in the marketplace; researches and develops new marketing and business strategies to maintain and upgrade its customer base in the marketplace; and requires its sales agents who have access to Proprietary Information to execute a confidentiality agreement just as HANAW did in this case.

25.     In or around November, 2003, HANAW became a sales agent and independent contractor of AMERICAN REGISTRY.

26.     In furtherance of his independent contractor relationship with AMERICAN REGISTRY, on or about January 13, 2008, HANAW entered into a Sales Agent Program Agreement ("Agreement") with AMERICAN REGISTRY, a true and accurate copy of which is attached hereto as Exhibit "A."

27.     Pursuant to said Agreement, AMERICAN REGISTRY provided HANAW with qualified leads of individuals or companies who were recently recognized for achievement or received a notable mention in the media for which HANAW was responsible for pursuing said leads and providing the prospective customer of a preview of the wall plaque, desktop marquee or other promotional products via permission-based email and/or fax for purchase by the prospect.  HANAW was to use his best efforts to convert the leads into sales.

28.     Pursuant to the Agreement, HANAW understood and recognized that he would be acquiring knowledge of confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY, including, but not limited to, customer lists, customer identity, purchase and credit information, sales and operation procedures of AMERICAN REGISTRY, software of AMERICAN REGISTRY, system architecture of AMERICAN REGISTRY, financial data of AMERICAN REGISTRY, sales and marketing strategies and data of AMERICAN REGISTRY, lists compiled by AMERICAN REGISTRY, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

29.     Pursuant to the Agreement, HANAW agreed to treat all such confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY as confidential and proprietary and further agreed not to publish, communicate, divulge, use or disclose, directly or indirectly, for his own benefit or for the benefit of another, such information.

30.     In or around September, 2009, AMERICAN REGISTRY discovered that HANAW was attempting to deceive AMERICAN REGISTRY by using the phone issued by AMERICAN REGISTRY to dial so that it would appear he was using the phone for sales calls, when in fact he was not.  That month, HANAW's bonus from AMERICAN REGISTRY was based on the number of phone calls placed so HANAW had been gaming that bonus system by placing dummy phone calls.  HANAW was reprimanded for this unethical conduct and confirmed same by agreeing to make each call individually thereafter.

31.     In furtherance of his independent contractor relationship with AMERICAN REGISTRY, on or about November 1, 2009, HANAW entered into a second Sales Agent Program Agreement ("Second Agreement") with AMERICAN REGISTRY, a true and accurate copy of which is attached hereto as Exhibit "B."

32.     Pursuant to the Second Agreement, AMERICAN REGISTRY provided HANAW with qualified leads of individuals or companies who were recently recognized for achievement or received a notable mention in the media for which HANAW was responsible for pursuing said leads and providing the prospective customer of a preview of

the wall plaque, desktop marquee or other promotional products via permission-based email and/or fax for purchase by the prospect.  HANAW was to use his best efforts to convert the leads into sales.

33.     Pursuant to the Second Agreement, HANAW understood and recognized that he would be acquiring knowledge of confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY, including, but not limited to, customer lists, customer identity, purchase and credit information, sales and operation procedures of AMERICAN REGISTRY, software of AMERICAN REGISTRY, system architecture of AMERICAN REGISTRY, financial data of AMERICAN REGISTRY, sales and marketing strategies and data of AMERICAN REGISTRY, lists compiled by AMERICAN REGISTRY, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

34.     Pursuant to the Second Agreement, HANAW agreed to treat all such confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY as confidential and proprietary and further agreed not to publish, communicate, divulge, use or disclose, directly or indirectly, for his own benefit or for the benefit of another, such information.

35.     Pursuant to the Second Agreement, HANAW agreed that upon separation from AMERICAN REGISTRY, he would deliver all records, data, information, and other documents produced or acquired and all copies thereof in each case to AMERICAN

REGISTRY.

36.     On or about March 26, 2010, AMERICAN REGISTRY terminated HANAW's status as an independent contractor sales agent for AMERICAN REGISTRY.

37.     As grounds for the termination, AMERICAN REGISTRY discovered that HANAW was paid bonuses that were in fact not due to him by placing orders for new contacts on his accounts when in reality the orders were for previous buyers who were requesting the orders.   Once the order was placed by HANAW and the bonus recorded as a new buyer, HANAW would go back into the order and change the details to reflect the previous buyer's details.

38.     In or around April, 2010, shortly after his termination from AMERICAN REGISTRY, HANAW met with LEVY to discuss the formation and organization of a company that would offer for sale personalized, customized achievement recognition items through an e-commerce website.

39.     Shortly thereafter, upon information and belief, HANAW and LEVY caused the formation and organization of Showmark Media, LLC, a limited liability company organized under the laws of the State of Florida.

40.     Showmark Media, LLC, a Florida limited liability company, was formed on May 12, 2010 and subsequently dissolved on July 19, 2010.

42.     After dissolving the Florida limited liability company, HANAW and LEVY formed SHOWMARK MEDIA on September 10, 2010.

43.     Upon information and belief, HANAW and LEVY own 75% and 25%,

respectively, of the membership interests in SHOWMARK MEDIA. HANAW holds his 75% interest in SHOWMARK MEDIA by and through SHOWMARK HOLDINGS, an entity which is 100% owned and controlled by HANAW.

44. During the course of his independent contractor relationship with AMERICAN REGISTRY, HANAW had access to, and acquired knowledge of AMERICAN REGISTRY's Proprietary Information, including, but not limited to customer lists, customer identity, purchase and credit information, sales and operation procedures, software, system architecture, financial data, sales and marketing strategies and data, list, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

45. Upon information and belief, HANAW is utilizing and disclosing AMERICAN REGISTRY's Proprietary Information, including, but not limited to customer lists, customer identity, purchase and credit information, sales and operation procedures, software, system architecture, financial data, sales and marketing strategies and data, list, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY in the operation of SHOWMARK MEDIA.

46. HANAW is willfully, knowingly, maliciously, and wrongfully misappropriating the Proprietary Information and disclosed the Proprietary Information to third parties. Specifically, HANAW, prior to and after having his sales agency

relationship terminated by AMERICAN REGISTRY, wrongfully took AMERICAN REGISTRY's customer specific information and data which allowed HANAW to try and attempt to obtain and convert business of those customers for HANAW and SHOWMARK MEDIA.

47.     HANAW's misappropriation and disclosure included, but is not limited to, attempting to convert AMERICAN REGISTRY's customers to SHOWMARK MEDIA; possessing and using AMERICAN REGISTRY's Proprietary Information without just cause or permission; actively soliciting customers of AMERICAN REGISTRY to move to SHOWMARK MEDIA; disclosing the Proprietary Information to SHOWMARK MEDIA; and/or wrongfully taking the property described above which belongs to and is the property of AMERICAN REGISTRY.

48.     By reasons of the acts and conduct as alleged herein, AMERICAN REGISTRY has been required to retain the services of its undersigned counsel for the purpose of bringing this action, and AMERICAN REGISTRY has obligated itself to pay a reasonable fee for their services.

49.     All conditions precedent to the maintenance of this action have been performed or fulfilled.

## COUNT I

### BREACH OF CONTRACT AGAINST HANAW
### (SECOND AGREEMENT)

50.     AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 49, as if fully set forth herein.

51.     HANAW, by reason of the acts and conduct alleged in this Count I, has breached and violated, and has threatened to breach and violate, the confidentiality and proprietary information provision of the Second Agreement by using or disclosing confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY, including, but not limited to, customer lists, customer identity, purchase and credit information, sales and operation procedures of AMERICAN REGISTRY, software of AMERICAN REGISTRY, system architecture of AMERICAN REGISTRY, financial data of AMERICAN REGISTRY, sales and marketing strategies and data of AMERICAN REGISTRY, lists compiled by AMERICAN REGISTRY, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

52.     As a direct and proximate result of the above alleged acts and conduct of HANAW, AMERICAN REGISTRY has been damaged in an as-yet-undetermined amount, exclusive of interest and costs, consisting of lost profits, injured goodwill, and other compensatory damages, the exact amount of which will be established at the trial of this cause, and, if the acts and conduct of HANAW in violation of the sued-upon Agreement are permitted to continue, AMERICAN REGISTRY inevitably will suffer substantial and future damages.

53.     Although certain elements of the damage that AMERICAN REGISTRY has suffered and will suffer by reason of the wrongful conduct of HANAW are

13

ascertainable, if the actions and conduct of HANAW in violation of the sued-upon Agreement are not permanently enjoined, AMERICAN REGISTRY will be irreparably injured and will have no adequate remedy at law, in that the long-term effect of HANAW's improper use or disclosure of confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY, is extremely difficult or impossible to ascertain, and, therefore, such damages are of a character that cannot be readily, adequately, and completely estimated or repaired in dollars and cents.

54.     HANAW's breaches of the sued-upon Agreement have caused and will continue to cause irreparable harm to AMERICAN REGISTRY unless and until enjoined by this Court.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against HANAW as follows:

A.     That judgment be entered for damages and interest thereon;

B.     That HANAW and those in active concert or participation with him, directly or indirectly, be enjoined from further breaches of the sued-upon Agreement; and

C.     That this Court award AMERICAN REGSITRY its costs and expenses; and

D.     That this Court grant such other and further legal and equitable relief against HANAW to which AMERICAN REGISTRY may be entitled.

## COUNT II

### VIOLATION OF UNIFORM TRADE
### SECRETS ACT AGAINST DEFENDANTS

14

55.     AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 49, as if fully set forth herein.


56.     AMERICAN REGISTRY's Proprietary Information constitutes trade secrets in that:   a) said items were a secret; b) the items were not generally known to the public and not readily ascertainable by those who could benefit from the disclosure or use of the trade secret; c) the items were valuable to AMERICAN REGISTRY's business and would be valuable to competitors who obtained them; d) AMERICAN REGISTRY expended considerable time, knowledge and expense in developing these items; and e) the items could not be easily duplicated or properly acquired by others.

57.     AMERICAN REGISTRY takes reasonable efforts to safeguard the Proprietary Information.

58.     HANAW misappropriated the AMERICAN REGISTRY trade secrets in that he knew or had reason to know that they were trade secrets, used improper means to acquire said trade secrets, and disclosed said trade secrets to third parties, including, without limitation, LEVY and SHOWMARK MEDIA, without AMERICAN REGISTRY's consent.

59.     HANAW's specific acts of misappropriation included acquiring the Proprietary Information without AMERICAN REGISTRY's consent; wrongfully taking the Proprietary Information; actively soliciting AMERICAN REGISTRY's customers for business; and disclosing trade secrets to LEVY and SHOWMARK MEDIA.

15

60.     LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA, subsequent to HANAW's disclosure of the trade secrets to them, have likewise misappropriated the trade secrets and conspired with HANAW to appropriate to their own use trade secrets and Proprietary Information acquired by HANAW during the course of his sales agency relationship with AMERICAN REGISTRY.  Defendants used the trade secrets and Proprietary Information for their own purposes in the formation and operation of SHOWMARK MEDIA to the prejudice of AMERICAN REGISTRY and its business of offering for sale and selling personalized, customized achievement recognition items, such as plaques, marquees, crystals, counter displays and banners.

61.     HANAW, LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA knew, or had reason to know, that HANAW had a duty to maintain the secrecy of AMERICAN REGISTRY's trade secrets.

62.     Defendants' misappropriation of AMERICAN REGISTRY's trade secrets was willful and malicious in that Defendants did so with the intent to financially injure AMERICAN REGISTRY and for their own benefit.

63.     Defendants' acts have resulted, and will continue to result, in Defendants' unjust enrichment.   The Defendants' use of such trade secrets and Proprietary Information has caused damage to AMERICAN REGISTRY, the exact amount of which will be established at the trial of this cause and, if the acts and conduct of Defendants in the utilization or misappropriation of such trade secrets are permitted to continue, AMERICAN REGISTRY inevitably will suffer substantial and future damages.

16

64.     Although certain elements of the damage that AMERICAN REGISTRY has suffered and will suffer by reason of the wrongful conduct of Defendants are ascertainable, if the actions and conduct of Defendants in the utilization or misappropriation of such trade secrets are not permanently enjoined, AMERICAN REGISTRY will be irreparably injured and will have no adequate remedy at law, in that the long-term effect of Defendants' utilization or misappropriation of such trade secrets relating to the business or plans of AMERICAN REGISTRY, is extremely difficult or impossible to ascertain, and, therefore, such damages are of a character that cannot be readily, adequately, and completely estimated or repaired in dollars and cents.

65.     Defendants' utilization or misappropriation of such trade secrets relating to the business or plans of AMERICAN REGISTRY have caused and will continue to cause irreparable harm to AMERICAN REGISTRY unless and until enjoined by this Court.

66.     Pursuant to Section 688.005, Florida Statutes, AMERICAN REGISTRY is entitled to recover its attorney's fees from Defendants.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against the Defendants as follows:

A.     That judgment be entered for damages in an amount equal to the actual losses sustained by AMERICAN REGISTRY as a result of Defendants' use of  AMERICAN REGISTRY's trade secrets;

B.     That Defendants and those in active concert or participation with them, directly or indirectly, be enjoined from further utilization or

17

misappropriation of such trade secrets; and

C.      That this Court award AMERICAN REGISTRY its reasonable attorney's fees and other costs and expenses under Section 688.003, Florida Statutes; and

D.      That this Court grant such other and further legal and equitable relief against the Defendants, to which AMERICAN REGISTRY may be entitled.

## COUNT III

### VIOLATION OF FLORIDA UNFAIR
### AND DECEPTIVE TRADE PRACTICES ACT

67.     AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 49, as if fully set forth herein.

68.     Defendants utilized unfair methods of competition, unconscionable acts or practices and unfair or deceptive practices in the conduct of trade or commerce within the meaning of Section 501.204, Florida Statutes.

69.     Defendants' deceptive and unfair trade practice was their collective utilization of trade secrets and Proprietary Information that HANAW wrongfully misappropriated from AMERICAN REGISTRY for SHOWMARK MEDIA and its benefit and to the detriment of AMERICAN REGISTRY.

70.     Defendants' acts have resulted, and will continue to result, in Defendants' unjust enrichment.  The Defendants unfair methods of competition, unconscionable acts or practices and unfair or deceptive practices in the conduct of trade or commerce has

caused damage to AMERICAN REGISTRY, the exact amount of which will be established at the trial of this cause.

71.     Pursuant to Section 501.2105, Florida Statutes, AMERICAN REGISTRY is entitled to recover its attorney's fees from Defendants.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against the Defendants as follows:

A.      That judgment be entered for damages;

B.      That this Court award AMERICAN REGISTRY its reasonable attorney's fees and other costs and expenses under Section 501.2105, Florida Statutes; and

C.      That this Court grant such other and further legal and equitable relief against the Defendants, to which AMERICAN REGISTRY may be entitled.

## COUNT IV

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

72.     AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 49, as if fully set forth herein.

73.     AMERICAN REGISTRY has business relationships with its customers, which are protected from tortious interference through confidentiality agreements, and pursuant to which AMERICAN REGISTRY has legal rights (hereinafter referred to as the

19

"Customer Relationships").

74. HANAW executed his confidentiality agreement ("Second Agreement").

75. The Second Agreement provides that HANAW would be acquiring knowledge of confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY, including, but not limited to, customer lists, customer identity, purchase and credit information, sales and operation procedures of AMERICAN REGISTRY, software of AMERICAN REGISTRY, system architecture of AMERICAN REGISTRY, financial data of AMERICAN REGISTRY, sales and marketing strategies and data of AMERICAN REGISTRY, lists compiled by AMERICAN REGISTRY, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by AMERICAN REGISTRY.

76. Pursuant to the Second Agreement, HANAW agreed to treat all such confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY as confidential and proprietary to confidential business information or trade secrets relating to the business or plans of AMERICAN REGISTRY and further agreed not to publish, communicate, divulge, use or disclose, directly or indirectly, for his own benefit or for the benefit of another, such information.

77. Pursuant to the Second Agreement, HANAW agreed that upon separation from AMERICAN REGISTRY, he would deliver all records, data, information, and other

documents produced or acquired and all copies thereof in each case to AMERICAN REGISTRY.

78.     The Defendants had knowledge of the Customer Relationships and AMERICAN REGISTRY's legal rights in connection with these relationships.

79.     The Defendants intentionally and unjustifiably interfered with the Customer Relationships by wrongfully converting the Proprietary Information, converting customers and soliciting AMERICAN REGISTRY's customers.   The Defendants intentionally and unjustifiably continue to interfere with the Customer Relationships.

80.     As a direct and proximate result of Defendants' tortious interference, AMERICAN REGISTRY has suffered damages including, but not limited to, loss of business and customers, damage to reputation and goodwill, and other expenses incurred as the result of Defendants' wrongful interference.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against Defendants for damages and interest thereon, costs and expenses, and such other and further legal and equitable relief against HANAW to which AMERICAN REGISTRY may be entitled.

## COUNT V

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

81.     AMERICAN REGISTRY realleges and incorporates by reference herein the allegations of Paragraphs 1 through 49, as if fully set forth herein.

82.     AMERICAN REGISTRY has business and contractual relationships, which include confidentiality agreements, including, but not limited to, the Second Agreement, under which AMERICAN REGISTRY has legal rights.

83.     LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA had knowledge of the business and contractual relationship, including the Second Agreement, between AMERICAN REGISTRY and HANAW.

84.     LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA intentionally and unjustifiably interfered with the relationship between AMERICAN REGISTRY and HANAW by inducing and/or assisting HANAW to breach the Second Agreement.   LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA intentionally and unjustifiably continue to interfere with the Second Agreement and AMERICAN REGISTRY's legal rights thereunder.

85.     As a direct and proximate result of LEVY's, SHOWMARK HOLDINGS' and SHOWMARK MEDIA's tortious interference, AMERICAN REGISTRY has suffered damages including, but not limited to, loss of business and customers, damage to reputation and goodwill, and other expenses incurred as the result of LEVY's, SHOWMARK HOLDINGS' and SHOWMARK MEDIA's wrongful interference.

WHEREFORE, AMERICAN REGISTRY demands relief in its favor and against LEVY, SHOWMARK HOLDINGS and SHOWMARK MEDIA for damages and interest thereon, costs and expenses, and such other and further legal and equitable relief against HANAW to which AMERICAN REGISTRY may be entitled.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

AMERICAN REGISTRY demands a trial by jury for all issues triable of right by jury.

DATED:    May 22, 2013

      /s/ C. Berk Edwards
C. Berk Edwards
Trial Counsel
Florida Bar No.0018953
Geraghty, Dougherty & Edwards, P.A.
Post Office Box 1605
Fort Myers, Florida 33902
239/334-9500 Telephone
239/334-8930 Facsimile
berk@7-litagators.com