# EXHIBIT E

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

LIGHTHOUSE LIST COMPANY, LLC
a Florida Limited Liability Company,
                Plaintiff,

v.

CROSS HATCH VENTURES CORP.,
a Florida Corporation; STEVE MCFADDEN,
an individual; and BETSY RESNICK, an individual,

                Defendants.

_____/

### VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Lighthouse Company, LLC ("Lighthouse") files this Verified Complaint through undersigned counsel and respectfully alleges:

### NATURE OF ACTION

1.      This is an action by Lighthouse, against Defendant, Cross Hatch Ventures Corp. ("**Cross Hatch**"), Defendant, Steve McFadden ("**McFadden**"), in his individual capacity and as agent of Cross Hatch, and Defendant, Betsy Resnick ("**Resnick**"), in her individual capacity (collectively, "**Defendants**"), for unauthorized access, misuse, and permanent deletion of files from Lighthouse's computers in violation of the federal Computer Fraud and Abuse Act ("**CFAA**"), 18 U.S.C. § 1030 *et seq.*, misappropriation of trade secrets in violation of Florida's Uniform Trade Secrets Act ("**FUTSA**"), Fla. Stat. Ch. 688, unfair trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**"), Fla. Stat.. §501.201 *et seq.*, tortious interference with business relations, conversion, conspiracy, unjust enrichment, and violation of the employee duty of loyalty.

2.      This action, along with the corresponding requests for both preliminary and permanent injunctive relief, is necessary to protect Lighthouse, and its clients and employees, from the potential use or disclosure of information, including confidential, proprietary and personal information, that Defendants, McFadden and Resnick, wrongfully obtained from Lighthouse's protected computer systems and that concern Lighthouse, its clients and potential clients, its business and its employees.

3.      Despite having been educated about Lighthouse's policies protecting such information and having agreed to honor those policies, Defendants, McFadden and Resnick, illegally accessed and/or downloaded and otherwise copied, transferred and deleted, information of value from Lighthouse's computer systems in the months, weeks and days before they resigned their employment, and they are now in a position to wrongfully use or disclose that information unless they are enjoined from doing so.

4.      Defendant, Cross Hatch, has knowingly and intentionally through its agents and employees, including Defendant, McFadden, and other former Lighthouse employees, including Defendant, Resnick, obtained, used and/or disclosed information of value from Lighthouse unlawfully and in violation of the CFAA and/or legal obligations to Lighthouse.  Cross Hatch also is in a position to wrongfully use, disclose or otherwise benefit from that information and from violation of its legal obligations to Lighthouse unless it is enjoined from doing so as well.

## **PARTIES**

5.      Plaintiff, Lighthouse, is a Florida limited liability company that provides targeted list marketing (i.e., process of renting and selling opt-in marketing databases from third-party list brokers) and direct response marketing services (i.e., marketing designed to evoke an immediate response and compel prospects to take immediate action where each response and purchase can

be measured and attributed to individual advertisements) across the State of Florida and Nationwide. Direct response marketing is delivered through a wide variety of media, including Direct Response TV Media (DRTV), radio, mail, print advertising, digital media, telemarketing, catalogues, and the internet.

6.     Lighthouse's services include, but are not limited to: direct marketing on the internet, postal, telemarketing, email marketing, supplying telemarketing data, and list management services. Lighthouse maintains its principal place of business at 27 SE 24th Avenue, Suite 6, Pompano Beach, FL 33062.

7.     Defendant, Steve McFadden, is a resident of Palm Beach County, Florida, over the age of eighteen, and otherwise *sui juris*. McFadden's last known residential address is 3840 St James Court, Boca Raton Florida  33434.

8.     Defendant, McFadden, is a former employee of Lighthouse. At the time of his resignation on February 5, 2013, McFadden was employed as President of Ameribase, a division of Lighthouse, based out of Lighthouse's corporate headquarters in Pompano Beach, Florida.

9.     Defendant, Cross Hatch Ventures Corp., is a Florida corporation with its corporate headquarters located at 3840 Saint James Court, Boca Raton FL 33434. Cross Hatch is a competitor of Lighthouse and provides targeted list and direct response services across the State of Florida and Nationwide.

10.     Defendant, McFadden, is the owner and operator of Cross Hatch. Cross Hatch's business address is the same as McFadden's last known residential address; to wit: 3840 St. James Court, Boca Raton, Florida 33434.

11.     Defendant, Betsy Resnick, is a resident of Palm Beach County, Florida, over the age of eighteen, and otherwise *sui juris*. Resnick's last known residential address is 7805 Sierra Drive East, Boca Raton, Florida 22433.

12.     Defendant, Resnick, is a former employee of Lighthouse. At the time of her resignation on February 4, 2013, Resnick was employed as a National Sales Representative for Lighthouse based out of Lighthouse's corporate headquarters in Pompano Beach, Florida. Resnick is currently employed by Hypertext Group, Inc. d/b/a Alleadia ("Alleadia"), a direct competitor of Lighthouse.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this lawsuit under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), which gives Lighthouse civil remedies for Defendants' violations of the CFAA. Thus, this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331.

14.     This Court may exercise supplemental jurisdiction over all related state law claims under 28 U.S.C. § 1367. Declaratory and other relief is authorized by the Federal Declaratory Judgment Act, as amended, 28 U.S.C. §§ 2201 and 2202.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district, or a substantial part of the property that is the subject of the action is situated in this judicial district. Venue also lies in this district pursuant to 28 U.S.C. § 1391(b)(3) because the Defendants reside in this district.

## GENERAL ALLEGATIONS

### Lighthouse List Company

16.     Since 1994, Lighthouse has been engaged in the business of providing targeted list and direct response marketing services across the State of Florida and Nationwide. Lighthouse's services include but are not limited to: direct marketing on the internet, postal, telemarketing, email marketing, supplying telemarketing data, and list management services.

17.     Lighthouse has expended considerable money and time developing and maintaining proprietary and valuable information, including, but not limited to, business and corporate strategies, business plans, product strategies, product cost and pricing information, customer lists and information, rate and data cards, vendor lists, lead lists, lead conversion, lead formation sales reports, operating plans, marketing strategies and plans, methods, financial information, contracts, agreements, computer programs, technical processes, manuals, and other information pertaining to the financial condition, business affairs or business prospects of Lighthouse (hereinafter **"Trade Secrets"**).

18.     These Trade Secrets and other valuable computer information and data is the life blood of Lighthouse's business. Dissemination and use of Lighthouse's Trade Secrets to and by competitors would allow them to compete better with Lighthouse and significantly impact Lighthouse's business operations.   As a result of its high-quality targeted list and direct marketing services delivered by utilization of these resources, Lighthouse enjoys substantial client goodwill associated with its ongoing business practices.

19.     One of Lighthouse's most important assets is its customer list and customer information. If this list and information became public or be utilized by Lighthouse's

competitors, Lighthouse would lose both the trust of its customers and the ability to fairly and effectively compete in the marketplace.

20.     Lighthouse's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means, by other persons outside of Lighthouse who can obtain economic value from its disclosure or use; and are subject to efforts that are reasonable under the circumstances to maintain the secrecy of the information.

21.     Further, in 2008, Lighthouse had their sales team set up Linked-In accounts for its sales team and maintained the passwords to the accounts. Each team member was instructed on what to promote and what groups to join, and updated the information based on leads obtained during each Trade Show. Upon joining Lighthouse, Lighthouse set up Linked-In accounts for McFadden and Resnick, which contained some of Lighthouse's contact information.

22.     Lighthouse's customer lists, detailed customer profiles, broker/vendor lists, pricing information sales and marketing strategies constitute trade secrets under FUTSA.  *See* Fla. Stat. §§ 688.001 *et seq*.

23.     Lighthouse sales employees receive highly specialized training and have access to Lighthouse's trade secrets and other confidential and proprietary information.  For this reason, Lighthouse employees are subject to strict confidentiality requirements.

24.      Lighthouse took precautionary measures to protect Lighthouse's Trade Secrets, including, but not limited to, instituting a data protection policy, which governed employees' access to Lighthouse's Trade Secrets, required the use and updating of passwords, and set forth requirements for storage and physical security (desks, doors, visitors, laptops and storage devices) of such information and data.

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

25.     In addition, because of customer privacy issues and business practices (i.e. to ensure that Lighthouse does not sell client's duplicate names or over sell the same records), salespersons are not allowed to receive or send electronic data. All electronic data and information must come in and out from the Information Technology Department ("**IT**"), so that such data can be protected and Purchase Order numbers can be placed on every test order and logged for future reference.

### McFadden/Cross Hatch

26.     McFadden was employed on May 6, 2008 by Lighthouse to help market and promote Ameribase, Lighthouse's new digital division until his resignation on February 5, 2013. At the time of his resignation, McFadden absconded with a laptop computer used to conduct Lighthouse business, containing various confidential and proprietary data and Trade Secrets of Lighthouse.

27.     Prior to working for Lighthouse, McFadden was unemployed for nearly a year, having been fired from his prior employer, Thru Channel of World Avenue, because he was unable to perform as a salesperson. Upon the request of one of Lighthouse's client, Lighthouse agreed to hire McFadden and attempt to train him in its business.

28.     In addition, to helping promote Ameribase, his responsibilities also included sales and marketing and managing the telemarketing data for magazines at Lighthouse. During the time he was employed with Lighthouse, McFadden failed to bring any new business partners that sustained a digital presence at Lighthouse.

29.     Also as part of his job responsibilities with Lighthouse, McFadden attended industry trade shows paid for by Lighthouse to obtain new leads for Lighthouse to bring in new business. During the time McFadden was operating his competing business, Cross Hatch, he

attended five (5) trades shows purportedly on behalf of Lighthouse – Adtech Technology show in California in April 2012 ($15,000), Daily Deal Summit in New York from April 17, 2012-April 18, 2012 (($6,000) Leadscon summer show in New York in August 2012 ($12,000), Adtech Technology marketing show in in New York in November 2012 ($20,000) and Affiliate Summit in Las Vegas in January 2013 ($4,000) -- costing Lighthouse nearly ($60,000). Lighthouse did not receive one lead from the last trade show in 2013. Instead, it has now become evident that McFadden diverted all of those leads to build his new business venture, Cross Hatch.

30.     During his more than five year tenure working for Lighthouse, McFadden gained extensive knowledge of, and was thoroughly familiar with the business affairs, finances, management, marketing programs business plans and strategies, customers, business partners, methods of operation and other confidential information and Trade Secrets of Lighthouse.

31.     As such, McFadden came to know and was entrusted with Lighthouse's Trade Secrets. Prior to and during his employment, McFadden was advised and aware of Lighthouse's data protection policy, that Lighthouse's Trade Secrets were to be kept confidential to ensure that such information and data is to be used and retained within the company, and that Lighthouse's Trade Secrets were sole and exclusive property of Lighthouse.

32.     In addition, he was also aware of Lighthouse's policy that due to customer privacy concerns and business practices (i.e., to ensure that Lighthouse did not duplicate names or sell the same records to client), salespersons are not allowed to receive or send electronic data; and that, all electronic data and information must come in and out from IT so that such data can be protected and Purchase Order numbers can be placed on every test order and logged for future reference.

33.     Unbeknownst to Lighthouse, on or about August 16, 2012, during his employment with Plaintiff, and while being compensated by Lighthouse, McFadden started a competing business under the name of Cross Hatch Ventures Corp., providing the same or similar services as Lighthouse. During the same time period that he started Cross Hatch, McFadden established a competing website under such name, and is contacting and soliciting Lighthouse customer and business partners, using Lighthouse's confidential and proprietary information, including customer lists and pricing information, for the purposes of obtaining business for his competing business, Cross Hatch. Cross Hatch's website advertises that is provides the exact same services as Lighthouse.

### Resnick/Alleadia

34.     Resnick was employed by Lighthouse on January 6, 2009 as a National Sales Representative of Lighthouse until her resignation on February 4, 2013. Prior to being employed by Lighthouse, Resnick had previously been in the mortgage industry and had no experience in targeted list service or direct marketing business. Resnick obtained all of her training and experience in the direct marketing business from Lighthouse.

35.     As a National Sales Representative, Resnick's responsibilities included to sell all channels of data direct mail, telemarketing and email. Resnick is currently employed as Vice President of List Services by Alleadia, which is also a direct competitor of Lighthouse and provides the exact same services as Lighthouse.

36.     In the position as National Sales Representative, Resnick gained extensive knowledge of, and was thoroughly familiar with the business affairs, finances, management, marketing programs business plans and strategies, customers, business partners, methods of operation and other confidential information and Trade Secrets of Lighthouse.

37.     During her more than four-year tenure with Lighthouse, Resnick came to know and was entrusted with Lighthouse's Trade Secrets. Prior to and during her employment, Resnick was advised and aware of Lighthouse's data protection policy, that Lighthouse's Trade Secrets were to be kept confidential to ensure that such information and data is to be used and retained within the company, and that Lighthouse's Trade Secrets were sole and exclusive property of Lighthouse.

38.     In addition, she was also aware of Lighthouse's policy that due to customer privacy concerns and business practices (i.e., to ensure no duplicate names or records were sold), salespersons are not allowed to receive or send electronic data; and that, all electronic data and information must come in and out from IT, so that such data can be protected and Purchase Order numbers can be placed on every test order and logged for future reference

39.     As part of her job responsibilities with Lighthouse, Resnick attended industry trade shows paid for by Lighthouse to obtain new leads for Lighthouse to bring in new business. Lighthouse did not receive any leads from these trade shows, including the Direct Mail Association, in Las Vegas from October 13, 2012 through October 18, 2012. All leads from her trade shows were copied to her personal email address, clearly in order for Resnick, to retain Lighthouse's proprietary and confidential data to benefit herself and her new employer, Alleadia, who is a direct competitor of Lighthouse providing the exact same services as Lighthouse.

**Defendant, Resnick Accesses, Transfers, Copies and Deletes Lighthouse's Valuable and Confidential Computerized Data in Excess of Her Authorization and Resigns Without Notice.**

40.     On February 4, 2013, at or about 10:00 a.m., Defendant, Resnick, without notice announced her decision to leave Lighthouse effectively immediately. At that time, she advised Lighthouse's Comptroller, Mary Ellen Gannon that she was leaving to do administrative work

and not doing sales. However, she purposefully deceived Lighthouse as to her intentions, as Resnick immediately went to work for Alleadia, a direct competitor of Lighthouse performing the exact same sales and marketing job that she did at Lighthouse.

41.   Immediately prior to her resignation, and without the knowledge of Lighthouse, Resnick accessed Lighthouse's computer network confidential, proprietary, trade secret and other valuable information belonging to Lighthouse and, downloaded and copied such information for herself and for the benefit and/or as agent for Alleadia.

42.   Resnick then purposefully sabotaged Lighthouse's business by intentionally deleting all of such data and work product that Lighthouse owned, for her own benefit.

43.   Specifically, Lighthouse's analysis of Resnick's work computer revealed that, Resnick deleted sixty-eight (68) days of the data in Lighthouse's computer (including lead, emails and customer information and contacts). To date, Lighthouse has still been unable to restore the remaining ten (10) days of data and Lighthouse cannot be assured that all of the deleted data from the other fifty-eight (58) days is complete.

44.   Information and data accessed, obtained and deleted by Defendant, Resnick, included financial pricing, customer lists and information identifying Lighthouse's existing clients and its targeted prospective clients.  Having access to Lighthouse's pricing and business planning analysis, and confidential non-public information concerning Lighthouse's clients and specified targeted prospective clients, would enable a competitor to selectively target clients, and set prices and distill information regarding Lighthouse's contract with certain clients to undercut Lighthouse and interfere with its business relationships.

45.     Upon information and belief, Resnick intentionally deleted all of Lighthouse's data and contacts so that she could bring them to her new position at Alleadia, to the grave detriment of Lighthouse.

46.     Lighthouse has and continues to analyze the information that Resnick accessed and likely copied, removed and deleted and has determined that they contain Lighthouse's Trade Secrets. Resnick never informed Lighthouse that she purposefully accessed, transferred and then deleted these files, and Resnick, despite requests for same, has not returned to Lighthouse any of its confidential information or trade secrets.

**Defendant, McFadden Opens a Competing Business (i.e., Cross Hatch) While Still Employed and Being Paid By Lighthouse, Accesses, Transfers, Copies and Deletes Lighthouse's Valuable and   Confidential Computerized Data in Excess of His Authorization, Subsequently Resigns and Absconds With His Work Laptop Computer Containing Lighthouse's Trade Secrets and Other Valuable Computerized Data.**

47.     In or about February, 2012, McFadden asked Lighthouse to authorize the purchase of a new laptop computer claiming that the old one did not function properly. Lighthouse reluctantly agreed despite its reservations since IT could not monitor the business related information and data on the laptop to ensure compliance with its confidentiality, privacy and data policies but McFadden promised that he would not steal anything from Lighthouse and would continue to follow Lighthouse confidentiality, privacy and computer policies.

48.     On or about August 16, 2012, while still employed with and being paid by Lighthouse, McFadden started a competing company called Cross Hatch Ventures Corp. and established a competing website at that same time. Cross Hatch provides the exact same services as Lighthouse. A copy of the Sunbiz.org corporate filing and GoDaddy website verification are attached as Exhibit "A".

49.      As far back as June 2012, in an attempt to start diverting business to his own company, Cross Hatch, McFadden began making false and disparaging statements to Lighthouse's vendors and business partners that Lighthouse was dishonest in its billing practices and to other employees that they were not paying their commissions properly.

50.      At about the time that Defendant, McFadden, started his competing business, until the time of his resignation in February 2013, McFadden, accessed Lighthouse's computer network confidential, proprietary and trade secret information belonging to Lighthouse and downloaded and copied such information, which once downloaded on to the laptop computer, there is no back up on the server, rendering these emails irretrievable.  Further, he diverted information to his personal email address scmcfadden@comcast.net, for the sole purpose of stealing such information. Copies of the diverted emails are attached as composite Exhibit "B".

51.      In further violation of Lighthouse's confidentiality, data and privacy policies, for example, on or about September 10, 2012, McFadden received an email from karen@ksginteactive.com, asking McFadden "did you get the file." However, Lighthouse has no record of this transaction. On or about October 10, 2012, McFadden sent and received emails from mattp0479@yahoo.com, wherein McFadden was advised that "steve there is still no data." Again, Lighthouse's fulfillment department has no record of any data being requested.  A copy of these emails are included in composite Exhibit "B".

52.      The investigation further revealed emails, on or about December 18-21, 2012, from McFadden's personal email (again, in violation of Lighthouse's confidentiality, privacy and data policies) to a potential client, mldgold807@aol.com, where McFadden is discussing lists information, without knowledge of Lighthouse. Based on the response from the "client" that "test did not work", it is clear that McFadden sent customer data to this potential client.

Case 0:15-cv-61165-WPD Document 80-5 Entered on FLSD Docket 06/06/2017 Page 15 of 40
Case 0:13-cv-60524-WPD Document 1 Entered on FLSD Docket 03/06/2013 Page 14 of 39

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

Lighthouse reviewed its shipping log and has no record of IT shipping any data to this email address. A copy of this email is included in composite Exhibit "B".

53.     On February 5, 2013, on or about 3:00 p.m., McFadden met with Mark Traverso, Vice President, Sales, New Business Development, E-Commerce and Mary Ellen Gannon, Comptroller, and resigned without notice. McFadden then absconded with the work laptop with the hard drive containing all of Lighthouse's electronic data and information, without authorization or in excess of his authorized access to Lighthouse's computer systems. McFadden also left Lighthouse's premises with a brief case with about an eight (8) inch stack of white papers sticking out.

54.     As McFadden was leaving Lighthouse's premises, Mr. Traverso stopped McFadden and requested that he return the company business data and Trade Secrets that were contained the laptop computer. McFadden with full knowledge of the sensitivity and confidentiality of the information on the laptop refused to return it and left the premises with Lighthouse's Trade Secrets.

55.     Mr. Traverso immediately thereafter had Lighthouse's Director of IT, Jason Fuller, change McFadden's password to Lighthouse/Ameribase's computer system, including his business emails at Lighthouse/ Ameribase. However, when Mr. Traverso went to the company Linked-In account, McFadden had already changed his password without authorization of Lighthouse, locking Lighthouse out of its Linked-In account, intentionally pilfering Lighthouse valuable data and information.

56.     McFadden's refusal to return the laptop containing Lighthouse's Trade Secrets and valuable computerized data and information was clearly for his own use and benefit and probable use in competition against Lighthouse after he left the company.

57.    To date, despite numerous requests, via telephone, text and letter, for the return of the laptop and/or Lighthouse's Trade Secret and other valuable information on the laptop, McFadden has refused failed to return Lighthouse's property and confidential and proprietary information.

58.    Information and data accessed and obtained by Defendant, McFadden, included information regarding Lighthouse's employees, incentive plans, and training, customer lists, pricing, financial operations, marketing, or contract information, that are not made readily available to the public, which is confidential and proprietary to Lighthouse. Having access to Lighthouse's pricing and business planning analysis, and confidential nonpublic information identifying Lighthouse's clients and specific targeted prospective clients, would enable a competitor to selectively target clients, and set prices and distill information regarding Lighthouse's contract with certain clients, to undercut Lighthouse and interfere with its business relationships, to Lighthouse's detriment.

59.    Lighthouse has and continues to analyze the information that McFadden accessed and likely copied, and removed and has determined that they contain Lighthouse's Trade Secrets. McFadden, despite requests for same, has not returned to Lighthouse, the laptop computer and/or any of its confidential information or trade secrets contained therein.

60.    Defendant, McFadden, on behalf of himself and as an agent and employee of Cross Hatch, is using Lighthouse Trade Secrets and data to benefit Cross Hatch and harm Lighthouse, and have attempted to obtain a competitive edge through the wrongful use of information from Lighthouse's computer system and in tortious interference with the legal obligations of Lighthouse's former employees of Lighthouse.

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

**Lighthouse's Notice to Defendants and Subsequent Investigation into Defendants' Actions.**

61.    Lighthouse first discovered Resnick's and McFadden's wrongful acts on February 4, 2013 and February 5, 2013, after they resigned.

62.    Since Resnick and McFadden's resignations, Lighthouse has been engaged in an ongoing investigation to verify what data had been accessed, deleted, copied and/or transferred by Resnick and McFadden. That investigation is being conducted by Mr. Fuller and Mr. Traverso, along with its business providers, Liquid Web and Fire Walker Creative.

**Resnick**

63.    Upon Resnick's resignation, Mr. Traverso reviewed her computer to make sure all potential Lighthouse customers that she was dealing with could be distributed to other salespersons.  Mr. Traverso then asked Mr. Fuller to provide him with Resnick's password and, when they started to go through her work emails and data contained on her work computer, they noticed that all of her data and emails since November 2012 had been deleted, including data from a trade show that Resnick had just attended and that had cost Lighthouse over $75,000 to attend.

64.    As a result of said examination of the computer that Resnick used while employed by Lighthouse, it was determined that she intentionally deleted sixty-eight (68) days of electronic mail and other data belonging to Lighthouse, all to the significant detriment of Plaintiff.

65.    Lighthouse then went to work attempting to restore the emails. In order to do so, Mr. Fuller contacted their service providers, who were unable to assist. For several hours (instead of processing orders), Mr. Traverso and Mr. Fuller attempted to find the emails in other folders on her desk top, which was also not successful.

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

66.     However, the next day, after checking the server, Lighthouse discovered that Lighthouse had backed up the server seven (7) days earlier and they were able to restore fifty-eight (58) days of the sixty-eight (68) days of deleted data and emails. To date, they have still been unable to restore the remaining emails and Lighthouse cannot be assured that all of the deleted data from the other fifty-eight (58) days is complete.

67.     When Resnick resigned, Lighthouse was able to change the Linked-In account password associated with the account set up for Resnick, and initially recover its information. However, Resnick has now re-posted a new Linked-In account which contains all of the contacts she obtained from Lighthouse. A copy of the snapshot of the Linked-in account is attached as Exhibit "C".

68.     Upon further investigation, Lighthouse has learned that Resnick, in violation of Lighthouse confidentiality, privacy, and data policies, had been forwarding to her personal email address of besty.resnick@gmail.com company to client emails, resulting in her having access to all of Lighthouse's clients, proposals and contacts she learned of while working for Lighthouse. A copy of the email from Resnick's email account is attached as Exhibit "D".

69.     For example, on January 7, 2013, just one month before she resigned from Lighthouse, "coincidently" Resnick received a list of data from her now current employer, Alleadia. Lighthouse was never informed about this request for data from Alleadia, as it should have been had Resnick followed Lighthouse policy which required all data inquiries and fulfillment of orders to go in and out of IT.  A copy of this email is included in Exhibit "D".

70.     In addition, Resnick appeared to be gathering data using Lighthouse vendors to bring to her new employer, Alleadia. For example, on January 4, 2013, Resnick requested and received on January 17, 2013, from a new vendor, S. Melman at Target Audience

Online/Permission Direct, a highly sensitive list containing Diabetic Medicare consumer information. To date, Lighthouse cannot ascertain whether this data was sent to any prospective customer, again as it would have had she not failed to follow Lighthouse's data privacy policy which required all requests to go to IT.  A copy of the email from Resnick's email account is attached as Exhibit "E".

71.     Further, on February 6, 2013, just two days after Resnick resigned, one of Lighthouse's other salespersons customers, called to request to purchase a list based on samples he said he had received from Resnick.  Lighthouse could not find the source of the data Resnick had sent and thus, could not bill the data resulting in a loss of revenue to Lighthouse. It is reasonable to deduce that Resnick received the data sample from a vendor of Lighthouse (and that this information was part of the information she deleted) to benefit herself, and her new employer, Alleadia, to the serious detriment to Lighthouse.

72.     Among the sampling of files obtained to date by Plaintiff from Resnick and work computer are files, including Lighthouse customer and vendor emails and contacts,  that Resnick had no business purpose in accessing, copying, removing or deleting and which therefore Resnick was not authorized to access, copy and remove or delete.

**McFadden**

73.     As a result of the examination of Lighthouse's computer system, and as stated above, Lighthouse also determined that while employed by Lighthouse, and working for his own company Cross Hatch, McFadden, in violation of Lighthouse confidentiality, privacy and data policies, had also been copying his personal email address, of address scmcfadden@comcast.net, on all company to client emails resulting in him having access to all of Lighthouse's clients, proposals and contacts he learned of while working for Lighthouse emails and sent samples of

lists to Lighthouse's clients without Lighthouse's knowledge, using Lighthouse's Trade Secrets to obtain the business for the benefit of Cross Hatch. Copies of these emails are included in composite Exhibit "B".

74.   Moreover, McFadden changed his Linked-In account password prior to leaving Lighthouse and to date, Lighthouse is unable to change the password and McFadden is in possession of customer information of Lighthouse. A copy of the snapshot of the Linked-in account is attached hereto as Exhibit "G".

75.   In addition, in the days before, McFadden resigned from Lighthouse, McFadden sent an invoice that belonged to a company, List Advantage and sent it to another company, Blue Whale Publications. These two companies are competitors of each other, and this information provided confidential pricing information of one client to the other and revealing Lighthouse's confidential pricing information, causing it to lose its competitive edge.

76.   After his employment with Lighthouse ended, Defendant, McFadden, on his own behalf and/or as an agent of Cross Hatch, has continued to contact Lighthouse's customers, using Lighthouse's customer lists and confidential information, in an effort to steal business opportunities from Lighthouse.

77.   For example, on or about February 14, 2013, he contacted Lighthouse client, T. Johnson at Media Communications Corp., and, on February 18, 2013, McFadden, using Lighthouse's confidential information, contacted one of Lighthouse's long-standing client's, R. Norgahauer at Jara Leads, to solicit his business for Defendant, Cross Hatch. A copy of the email from McFadden's email account is attached hereto as Exhibit "F".

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

**Unauthorized Access or Access In Excess of Authorization in violation of the CFAA**

78.     Upon information and belief, Resnick and McFadden are working in concert to market to Lighthouse customers using Lighthouse's confidential and proprietary information and data unlawfully obtained by Resnick and McFadden during their employment with Lighthouse.

79.     Cross Hatch and Alleadia both now market on its websites that provides the exact same services that Lighthouse provides. In addition, Alleadia advertises that it does e*mail marketing*, a service that Lighthouse has provided to its customers and, which McFadden never had any involvement while employed. Such email data is now being provided by Resnick to McFadden for the benefit of McFadden's new company, Defendant, Cross Hatch, and Alleadia.

80.     Based on the results of the forensic investigation, the evidence reasonably suggests that both Defendants, Resnick and McFadden, accessed, and likely copied or otherwise removed, valuable and confidential files, data and Trade Secrets from Lighthouse's computer system, without authorization or in excess of their authorized access to those files in protected Lighthouse computer databases, prior to their resignation from Lighthouse.

81.     Once McFadden began working for himself and began diverting Lighthouse computerized data and Trade Secrets to his own competing company, Cross Hatch, his authority to access Lighthouse's computer system ended, even though he was still employed with Lighthouse.  Resnick's access was "without authorization" at the point she resolved to destroy files that incriminated herself and other files that were also the property of Lighthouse.

82.     Resnick and McFadden had no justification or authorization for accessing and/or obtaining this data while at Lighthouse for personal or competitive purposes, or for retaining, using or disclosing this data after his employment with Lighthouse ended.

20

83.     Lighthouse's computer databases accessed by Resnick and McFadden, clearly involved interstate communication. The value of the information accessed by Defendants and the cost of the computer forensic investigation to determine the extent of the resulting damage and if the integrity of its computer systems and databases had been compromised by the actions of Defendants exceeds $5,000.

84.     Upon information and belief, Cross Hatch, through its employee and agent McFadden, and Resnick, on behalf of herself and her new employer, Alleadia, have used to their own benefit and/or for the benefit of a third-party (i.e., competitor and/or partners) valuable non-public and confidential and proprietary information, data, and materials obtained wrongfully from Lighthouse.

85.     Defendants, through their agents and employees, have accessed from Lighthouse's computer systems, and have utilized and disclosed, valuable confidential and trade secret information of Lighthouse in the conduct of business in competition with Lighthouse, in violation of law.

86.     Defendants have in their possession, custody and control valuable confidential and trade secret information of Lighthouse obtained from former Lighthouse employees who acquired such information from their employment with Lighthouse, and which has not been returned to Lighthouse, including a laptop computer containing Lighthouse's Trade Secrets.

87.     Due to the timing and circumstances surrounding the deletion and loss of information from these computers, the Defendants' actions were intentional, willful and malicious.

88.     Immediately following Defendant, Resnick and McFadden's resignations, by letters dated February 7, 2013, Lighthouse sent Resnick and McFadden letters reminding them of

their obligations regarding confidential and proprietary information and requesting that McFadden return the laptop computer containing valuable computer information and data and Trade Secrets of Lighthouse. Neither Resnick nor McFadden responded to the letters.

89.     All conditions precedent to the filing of this action have been met, satisfied, performed or occurred.

90.     Lighthouse has retained undersigned counsel to represent it and is obligated to pay counsel reasonable legal fees, including attorneys' fees, and costs incurred in this action.

## CAUSES OF ACTION

### Count I
### Violation of the Computer Fraud and Abuse Act
### 18 U.S.C. § 1030
### (Against all Defendants)

91.     Lighthouse repeats and realleges paragraphs 1 through 90 above as if fully set forth herein.

92.     On information and belief, Defendants, McFadden and Resnick, knowingly and/or with intent to defraud Lighthouse, accessed Lighthouse's computer systems and without authorization and/or exceeded authorized use to obtain information from a computer used in interstate commerce, in violation of the CFAA, 18 U.S.C. § 1030(a)(2)(C).

93.     Defendant, Cross Hatch, as alleged above, explicitly or implicitly took part in, encouraged, and/or benefitted from Defendants, McFadden and Resnick's unauthorized use of Lighthouse's computer systems.

94.     By reason of the above-alleged acts and conduct, Defendants further their intended wrongdoing by improperly obtaining, utilizing, and deleting information from Lighthouse's computer system. The information from the above-alleged acts and conduct

included valuable information relating to Lighthouse's pricing, customer lists, marketing strategies, and sales techniques.

95.     Defendants' acts and conduct have impaired the integrity and availability of Lighthouse's data, programs, systems and/or information.

96.     By reason of the above-alleged acts and conduct by Defendants, Lighthouse has been damaged, and it will suffer great and irreparable harm and damage far in excess of $5,000. Lighthouse's damages will include its continued diagnostic examination of its computer system to ascertain the full extent of compromised and impaired information, as well as losses for responding to the above-alleged acts and conduct by  Defendants, conducting a damage and lost revenue assessment, and other consequential damages incurred because of the impairment of Lighthouse's data, programs, systems, and/or information.

97.     Lighthouse lacks an adequate remedy at law and, unless enjoined by this Court, Defendants will continue to cause irreparable injury and damage Lighthouse as a result of the wrongful acts complained of herein.

98.     In addition to the damages Lighthouse has suffered, Defendants McFadden and Resnick's accessing and ongoing possession of Lighthouse's valuable business information, including its confidential, proprietary, and trade secret information, obtained in violation of the CFAA, and use and disclosure of such information while employed or engaged by Lighthouse's direct competitors, Cross Hatch and Alleadia, poses a real, present and significant threat of unauthorized disclosure and use of this information, and the diversion of clients and prospective clients with which Lighthouse has been in negotiations or with whom Lighthouse enjoys substantial business relationships, to its competitor Defendant, Cross Hatch, and Alleadia.

99.     By reason of Defendants' acts and conduct, Lighthouse is suffering and will continue to suffer immediate and irreparable harm.

Wherefore, Lighthouse demands that the Court enter judgment against Defendants:

a.      enjoining Defendants as set forth in 18 U.S.C. § 1030(g) from using or disclosing information and/or data obtained from Lighthouse through unauthorized access to Lighthouse's computer systems in violation of the Computer Fraud and Abuse Act;

b.      restraining Defendants, their agents, and employees from soliciting any business from any of Lighthouse's clients, customers, or business partners;

c.      requiring, Defendants, their agents, and employees to return information and/or data obtained from Lighthouse through unauthorized access to Lighthouse's computer systems, and other Lighthouse property to Lighthouse, including any information copied and/or retained by Defendants during their  employment with Lighthouse to Lighthouse, c/o Lori Adelson, Esq., Arnstein & Lehr LLP, 200 East Las Olas Blvd., Suite 1700, Fort Lauderdale Florida 33301;

d.      requiring, Defendants, McFadden and Resnick, to deliver their personal and home computers and personal devices, such as handheld personal assistants, smart phones, media devices and storage drives to Lighthouse, c/o Lori Adelson, Esq., Arnstein & Lehr LLP, 200 East Las Olas Blvd., Suite 1700, Fort Lauderdale Florida 33301, for forensic image on or before a date certain;

e.      restraining Defendants, their agents, and employees from destroying (or causing to be destroyed) any and all information and documents which are potentially relevant to Lighthouse's claims;

f.      awarding Lighthouse damages as set forth in 18 U.S.C. § 1030(g); and

g.      awarding such other and further relief as the Court deems just and proper.

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

### Count II
### Tortious Interference With Business Relationships
### (against all Defendants)

100.    Lighthouse repeats and realleges paragraphs 1 through 90 above as if fully stated herein.

101.    During and/or immediately after Defendants McFadden and Resnick's employment at Lighthouse, they solicited Lighthouse's customers and business partners and deleted customer contact information, thereby tortiously interfering with Lighthouse's business relationships with those individuals and/or companies. When Defendants McFadden and Resnick solicited Lighthouse's customers, they knew those customers had an existing business relationship and/or contracts with Lighthouse. Defendants' intentional interference with the existing business relationships and contracts between Lighthouse and those customers was unjustified.

102.    Defendant, Cross Hatch, as alleged above, explicitly or implicitly took part in, encouraged, and/or benefited from Defendants McFadden and Resnick's tortious interference with Lighthouse's business relationships.

103.    Based on the foregoing, Lighthouse reserves the right to seek punitive damages for this Count, pursuant to Fla. Stat. § 768.72.

104.    Lighthouse has suffered and will continue to suffer immediate and irreparable damage as a result of Defendants' conduct.

105.    Lighthouse has a substantial likelihood of success on the merits of this claim. Injunctive relief would serve, and would not be adverse to, the public interest.

Wherefore, Lighthouse prays that this Court enter judgment against Defendants:

a.      enjoining Defendants temporarily and permanently from tortiously interfering with Lighthouse's relationships and contracts with its customers and employees;

b.      requiring Defendants to provide Lighthouse with a full accounting of the profits they obtained due to their wrongful conduct;

c.       requiring Defendants to pay damages to Lighthouse in an amount to be fixed at trial, together with interest;

d.      awarding Lighthouse its costs incurred in connection with this action; and

e.      awarding Lighthouse such other and further relief as it deems just and proper.

**Count III
Misappropriation of Trade Secrets in
Violation of Florida's Uniform Trade Secrets Act
FS, Chapter 688
(Against all Defendants)**

106.    Lighthouse repeats and realleges paragraphs 1 through 90 above as if fully set forth herein.

107.    As a result of their employment and positions of trust within Lighthouse, Defendants,  McFadden and Resnick, were given access to Lighthouse's trade secrets including confidential customer lists, retail and cost price lists, profit margin analysis, and sales and marketing plans for Lighthouse's customers. All of these materials are unique to Lighthouse and not commonly known or available to the public.

108.    Lighthouse's compilations of marketing and pricing information, plans, costs, customer lists, rate and data cards, and other trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

Lighthouse takes steps that are reasonable under the circumstances to maintain the secrecy of its trade secret information.

109.    Defendants, McFadden and Resnick's misappropriation of Lighthouse's trade secrets for themselves and Defendant, Cross Hatch, give Defendants an unearned, unfair and unjust advantage in operating a competing business

110.    Defendant, Cross Hatch, as alleged above, explicitly or implicitly took part in, encouraged, had knowledge of, and/or benefited from Defendants McFadden and Resnick's misappropriation of Lighthouse's trade secrets.

111.    Lighthouse's above-described information/compilations constitute trade secrets that are protected by Florida's Uniform Trade Secrets Act, §§ 688.001-688.009 ("FUTSA"). The FUTSA expressly authorizes this Court to enjoin actual or threatened misappropriation of trade secret information.

112.    Defendants have an affirmative duty not to misuse or otherwise misappropriate Lighthouse's trade secret information where, as here, they know or have reason to know that such information is a trade secret.

113.    Defendants acquired Lighthouse's trade secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use.

114.    Upon information and belief, Defendants have misappropriated and have used, disclosed, and/ or threatened to use or disclose Lighthouse's trade secrets for the benefit of Cross Hatch, McFadden and Resnick and to the substantial and irreparable detriment of Lighthouse.

115.    Defendant, Cross Hatch knows or has reason to know that Lighthouse's trade secrets were acquired by Defendants, McFadden and Resnick,, who provided information to

Case 0:15-cv-61165-WPD Document 80-5 Entered on FLSD Docket 06/06/2017 Page 29 of 40
Case 0:13-cv-60524-WPD Document 1 Entered on FLSD Docket 03/06/2013 Page 28 of 39

Lighthouse v. Cross Hatch, *et al.*
Verified Complaint

Cross Hatch, that they otherwise would not have had without McFadden and Resnick, under circumstances giving rise to a duty to Lighthouse to maintain their secrecy.

116.    Defendant, Cross Hatch, knows or has reason to know that Lighthouse's trade secrets have been used, have been disclosed, and/or will be used or disclosed by Defendants, McFadden and Resnick, in Cross Hatch's efforts to compete directly with Lighthouse's business.

117.    Defendants did not have Lighthouse's consent, express or implied, to appropriate or disclose Lighthouse's trade secrets for their own use or benefit or for the use or benefit of any other entity.

118.    The use or disclosure of threatened use or disclosure of Lighthouse's trade secrets by Defendants entitles Lighthouse to relief under FUTSA.

119.    At all material times, Defendants have acted willfully and maliciously.

120.    The acts and threatened acts of misappropriation or misuse by Defendants have caused and will continue to cause substantial damage to Lighthouse.

121.    Disclosure or use of Lighthouse's trade secrets will result in immediate and irreparable harm to Lighthouse for which there is no adequate remedy at law

122.    Lighthouse is likely to succeed on the merits of its claims against Defendants, and any prejudice that might accrue to Defendants by virtue of an injunction is greatly outweighed by the substantial harm and detriment to Lighthouse that will result from the use of its trade secrets by a competing company.

Wherefore, Lighthouse demands that the Court enter judgment against Defendants:

a.    enjoining Defendants, their agents, and employees, pursuant to Fla. Stat. § 688.003, from using, printing, copying, distributing, disclosing or examining any data or information taken from or belonging to Lighthouse, whether or not in original form, including

without limitation, Lighthouse's Trade Secrets, including customer lists, customer information, rate and data cards, employee lists, employee information, sales techniques, and pricing systems and structures using or disclosing Lighthouse's Trade Secrets for the benefit of their competing businesses or otherwise;

      b.    requiring Defendants to remove their Linked-In accounts containing Lighthouse's protected trade secret information;

      c.    restraining Defendants, their agents, and employees from soliciting any business from any of Lighthouse's clients, customers, or business partners using Lighthouse's Trade Secrets;

      d.    restraining Defendants, their agents, and employees from soliciting for employment or any other business or competitive purpose any employees of Lighthouse or from hiring any Lighthouse employee solicited in the last six months;

      e.    requiring, Defendants, their agents, and employees to return all information, plans, costs, customer lists, and other Lighthouse property to Lighthouse, including any information copied and/or retained by Defendants during their employment with Lighthouse to Lighthouse, c/o Lori Adelson, Esq., Arnstein & Lehr LLP, 200 East Las Olas Blvd., Suite 1700, Fort Lauderdale Florida 33301;

      f.    requiring, Defendants, McFadden and Resnick, are ordered to deliver their personal and home computers and personal devices, such as handheld personal assistants, smart phones, media devices and storage drives to Lighthouse, c/o Lori Adelson, Esq., Arnstein & Lehr LLP, 200 East Las Olas Blvd., Suite 1700, Fort Lauderdale Florida 33301, for forensic image on or before a date certain;

g. restraining Defendants, their agents, and employees from destroying (or causing to be destroyed) any and all information and documents which are potentially relevant to Lighthouse's claims;

h. awarding Lighthouse damages as set forth in Fla. Stat. § 688.004(1);

i. awarding Lighthouse damages as set forth in Fla. Stat. § 688.004(2);

j. awarding Lighthouse its reasonable attorney's fees and costs incurred in this action as set forth in Fla. Stat. § 688.005; and

k. awarding such other and further relief as the Court deems just and proper.

## Count IV
## Breach of Employee Duty of Loyalty
## (Against McFadden and Resnick)

123. Lighthouse repeats and realleges paragraphs 1 through 90 above as if fully stated herein.

124. When Defendants, McFadden and Resnick, were Lighthouse employees, they owed Lighthouse a duty of loyalty, good faith, and trust, which included, but was not limited to, a duty not to engage in disloyal acts in anticipation of future competition, such as misusing confidential information acquired during the course of their employment or soliciting customers and other employees prior to the end of their employment with Lighthouse.

125. Defendants, McFadden and Resnick, breached their duties of loyalty to Lighthouse by, among other things, engaging in the following activities while still employed with Lighthouse:

A. Performing work or engaging in other activities to benefit themselves, Cross Hatch and/or Alleadia;

B. Using, disclosing, and/or misappropriating Lighthouse's protected Trade Secrets for their own benefit and for the benefit of Defendant, Cross Hatch, and Alleadia;

C. Accessed Lighthouse's computer network confidential, proprietary, trade secret and other valuable information belonging to Lighthouse and, downloaded and copied such information for themselves and/or for the benefit and/or as agent for Cross Hatch; and deleted the data in it, rendering the majority of the deleted material irretrievable.

D. Soliciting Lighthouse's customers and business partners, either directly or indirectly, for their own benefit and for the benefit of Cross Hatch.

126. As a result of Defendants, McFadden and Resnick's willful breaches of their duty of loyalty, Lighthouse has suffered and will continue to suffer damages in the forms of wages and benefits paid to, but not earned by, Defendants; lost business; lost revenue; lost goodwill; lost employees; lost customers; compensatory damages; and/or other immeasurable, unquantifiable and irreparable injuries.

127. Based on the foregoing, Lighthouse reserves the right to seek punitive damages for this Count, pursuant to Fla. Stat. § 768.72.

Wherefore, Lighthouse demands that judgment be entered against Defendants, McFadden and Resnick:

a. awarding Lighthouse damages in an amount to be fixed at trial, together with interest;

b. awarding Lighthouse its costs incurred in connection with this action; and

c. awarding Lighthouse such other and further relief as the Court deems just and proper.

**Count V**
**Conversion**
**(Against all Defendants)**

128.    Lighthouse repeats and realleges paragraphs 1 through 90 as if fully stated herein.

129.    Upon information and belief, Defendants, McFadden and Resnick, intentionally accessed and removed data from Lighthouse's computers and hard copies Lighthouse's customer lists and pricing lists.

130.    Defendant, Cross Hatch, as alleged above, explicitly or implicitly took part in, encouraged, had knowledge of, and/or benefited from Defendants, McFadden and Resnick's intentional removal of data from Lighthouse's computer and hard copies of Lighthouse's customer lists and pricing lists

131.    Lighthouse demanded that Defendants return the data, documents and property Defendants removed from Lighthouse.

132.    Defendants have failed to return Lighthouse's property

133.    Defendants' refusal to return the Lighthouse property in their possession is an exercise of wrongful dominion and control over Lighthouse's property and is detrimental to Lighthouse's rights as the owner of said property.

134.    As a direct and proximate result of Defendants' conversion, Lighthouse has suffered damages in an amount to be determined at trial.

135.    Based on the foregoing, Lighthouse reserves the right to seek punitive damages for this Count, pursuant to Fla. Stat. § 768.72.

Wherefore, Lighthouse demands that the Court enter judgment against Defendants:

a.    awarding Lighthouse damages in an amount to be fixed at trial, together with interest;

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

b.      awarding Lighthouse its costs incurred in connection with this action; and

c.      awarding Lighthouse such other and further relief as the Court deems just and proper.

## Count VI
## Violation of Florida Deceptive
## and Unfair Trade Practices Act

136.    Lighthouse repeats and realleges paragraphs 1 through 90 above as if fully stated herein.

137.    Through its considerable expenditures and energies, Lighthouse has developed protected confidential and proprietary information and trade secrets, and have maintained and secured same.

138.    Defendants have engaged in a pattern of deceptive and unfair trade practices against Lighthouse in the following ways:

a.      Defendants, McFadden and Resnick, have contacted Lighthouse's customers and are attempting to induce a breach or termination of the relationship between Lighthouse and its customers for their own personal gain.

b.      Defendants, McFadden and Resnick, have contacted Lighthouse's current employees who possess Lighthouse's protected confidential and proprietary information and are attempting to induce a breach of termination of the relationship between Lighthouse and these employees for their own personal gain.

c.      Defendants, McFadden and Resnick, are improperly disseminating Lighthouse's trade secrets and other proprietary business information for their own personal gain.

d.      Defendant, Cross Hatch, as alleged above, explicitly or implicitly took part in, encouraged, had knowledge of, and/or benefited from Defendants, McFadden and Resnick's unfair and deceptive trade practices.

139.    The above-described acts by Defendants constitute unlawful and unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in violation of the FDUTPA, Florida Statutes 501.201, *et seq*.

140.    Defendants' unfair competition with Lighthouse has caused Lighthouse to suffer damages, including lost profits through loss of existing and anticipated welding projects, loss of goodwill, and reduced viability in the marketplace.

Wherefore, Lighthouse demands that the Court enter judgment against Defendants:

a.      awarding Lighthouse damages in an amount to be fixed at trial, together with interest;

b.      awarding Lighthouse its costs incurred in connection with this action; and

c.      awarding Lighthouse such other and further relief as the Court deems just and proper.

### Count VII
### Conspiracy
### (against all Defendants)

141.    Lighthouse repeats and realleges paragraphs 1 through 90 above as if fully stated herein.

142.    Defendants conspired to tortiously interfere with Lighthouse's prospective business relations, to misappropriate Lighthouse's trade secrets, and to utilize and obtain information through unauthorized access to Lighthouse's computer system.

143.     Defendants, McFadden and Resnick, conspired to steal Lighthouse's Trade
Secrets with the full knowledge of their intent to directly compete with Lighthouse using
Lighthouse's Trade Secrets and valuable computerized information and data.

144.     Defendants, McFadden and Resnick, used and disclosed Lighthouse's confidential
and proprietary information for their own benefit and/or the benefit of Defendant, Cross Hatch,
and Alleadia, and other third-parties in the procurement of business from clients and vendors
Defendants, McFadden and Resnick, learned about while employed with Lighthouse.

145.     Defendants' willful and malicious acts and conduct prevented or will prevent
prospective contracts between Lighthouse and its clients and vendors from occurring,
proximately causing damage to Lighthouse, not limited to a loss of revenue.

Wherefore, Lighthouse demands that the Court enter judgment against Defendants:

a.     awarding Lighthouse damages in an amount to be fixed at trial, together with
interest;

b.     awarding Lighthouse its costs incurred in connection with this action; and

c.     awarding Lighthouse such other and further relief as the Court deems just and
proper.

### Count VIII
### Unjust Enrichment
### (Against all Defendants)

146.     Lighthouse incorporates by reference paragraphs 1 through 90 above as if fully set
forth herein.

147.     Lighthouse has conferred a benefit upon Defendant, Cross Hatch, and Alleadia.
Defendants, McFadden and Resnick, through their intentional and willful misappropriation of

Lighthouse's confidential information and trade secrets, which they have used to directly or indirectly solicit Lighthouse's customers and marketing contacts to their own unjust enrichment.

148.    The reasonable value of the benefit conferred upon Cross Hatch, McFadden and Resnick for the services furnished for which Lighthouse has not been paid is indeterminate at this juncture.

149.    Cross Hatch, McFadden and Resnick would be unjustly enriched and it would be inequitable for them to retain the benefit of Lighthouse's trade secrets unless they are compelled to pay Lighthouse the reasonable value of the benefit conferred.

150.    Lighthouse has not received compensation from any party for the benefit conferred.

151.    As a result of the aforementioned actions of McFadden and Resnick, Defendants have unfairly benefited from and have been unjustly enriched by their aforesaid tortious, wrongful, and unlawful actions.

Wherefore, Lighthouse demands that the Court enter judgment against Defendants:

a.      awarding Lighthouse damages in an amount to be fixed at trial, together with interest;

b.      awarding Lighthouse its attorney fees and costs incurred in connection with this action; and

c.      awarding Lighthouse such other and further relief as the Court deems just and proper.

## PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Wherefore, Plaintiff, Lighthouse List Company, LLC prays:

A. That judgment be entered declaring that the actions of the Defendants are in violation of law.

B. That Defendants be preliminarily and permanently enjoined from the actions described herein consistent with the law.

C. That Plaintiff has such other and further relief as this Court may deem just and proper.

Plaintiff further prays that each of the Defendants herein be duly cited to appear and answer this Complaint, after having been served with a copy of same, and that after due proceedings had, there be judgment herein in favor of Lighthouse and against the Defendants granting a permanent injunction in the form and substance of the preliminary injunction prayed for by Plaintiff, and reserving Plaintiff's damages or other relief for such losses as may have been occasioned by the acts of Defendants.

Lighthouse v. Cross Hatch, *et al*.
Verified Complaint

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all issues so triable.

Dated this 6th day of March, 2013.

Respectfully submitted,

**ARNSTEIN & LEHR LLP**
200 East Las Olas Blvd., Suite 1700
Fort Lauderdale, Florida 33301
Telephone:     (954) 713-7600
Facsimile:      (954) 713-7700

By: /s/ Lori Adelson
Lori Adelson
Florida Bar No. 0196428
ladelson@arnstein.com
James C. Brady
Florida Bar No. 154804
jcbrady@arnstein.com

*Attorneys for Plaintiff Lighthouse
List Company, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

Lighthouse COMPANY, LLC
a Florida Limited Liability Company,
      Plaintiff,

v.

CROSS HATCH VENTURES CORP.,
a Florida Corporation; STEVE MCFADDEN,
an individual; BETSY RESNICK, an individual,

      Defendants.

_____/

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

    I, Mark Traverso, on behalf of Lighthouse List Company, LLC, hereby verify under

penalty of perjury pursuant to 28 U.S.C. §1746 that the facts alleged in the foregoing

COMPLAINT are true and correct to the best of my knowledge.

    This _6_ day of March, 2013.

                             _____

                             By: Mark J. Traverso

                           Title: _VP_____

                           Vice President, Sales, New Business
                           Development, E-Commerce, on behalf of
                           Lighthouse List Company, LLC

10770070.2