UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA,

    Plaintiff/Counter-Defendant

v.

CE RESOURCE, INC. d/b/a CME RESOURCE

and NetCE,

    Defendant/Counter-Plaintiff/Third-Party Plaintiff

v.

ELITE CONTINUING EDUCATION, INC.,

    Third-Party Defendant.

_____/

## ORDER GRANTING IN PART MOTION TO DISMISS

THIS CAUSE is before the Court upon Elite Continuing Education's Motion to Dismiss [DE 43]. The Court has carefully considered the Motion [DE 43], Response [DE 66], and Reply [DE 80], and is otherwise fully advised in the premises.

**I.  Background**

This action was filed on June 2, 2015. [DE 1].  Plaintiff Dr. Jassin Jouria ("Jouria") filed the Complaint against CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE"), seeking a declaration that Plaintiff did not violate NetCE's copyrights and did not breach contracts entered into with NetCE. *See* [DE 1]. NetCE filed its original Answer and Counterclaims on October 6, 2015. [DE 33]. A seven-month-long bankruptcy stay followed, and NetCE sought leave to

amend its Answer on September 23, 2016, [DE 33], which the Court granted. *See* [DE 35].[1] On October 21, 2016, NetCE filed the Amended Answer, Affirmative Defenses, Amended Counterclaim, and Third-Party Complaint, (the "FAA"). [DE 36]. The FAA asserted three claims against third-party defendant Elite Continuing Education for: (Count 1) Copyright Infringement;[2] (Count 4) Tortious Interference with Contractual Relations; and (Count 6) Misappropriation of Trade Secrets Under Florida's' Uniform Trade Secrets Acts (Civil Code §§ 688.01 *et. seq.*). *Id.* NetCE also asserted claims against third-party defendant Alpine Management Services III, LLC ("Alpine"), but Alpine has been dismissed from this action. *See* [DE 65].

NetCE is a California-based company that specializes in developing Continuing Medical Education ("CME") courses and materials. [DE 36 at 15]. To develop CME materials, NetCE contracts with independent authors, usually licensed medical professionals and/or credentialed medical scholars, ("Authors"). *Id.* The Authors work under standard template agreements, ("Freelance Writer Agreements"), which are identical for all Authors except for the name, deadlines, and subject matter areas. *Id.* at 15–16. Under the Freelance Writer Agreements, Authors agree to draft and submit articles to CME on a specific subject, in a specific format, and by a specific deadline. *Id.* Authors agree that the articles they submit to NetCE are "works for hire" and all copyrights associated with these materials belong to NetCE unless and until NetCE rejects the materials. *See id.*; *see also* Freelance Writer Agreements attached as Ex. B to FAA [DE 36-2].[3]

---

[1] In its Response brief, NetCE describes the multiple procedural delays that have occurred in this action, including two bankruptcy stays [DEs 18, 60], and issues arising from NetCE's second-filed action in California. These issues do not impact the analysis of this Motion.

[2] NetCE concedes in its Response brief that statutory damages and attorney's fees are not available to it under the Copyright Act. [DE 66 at 2, 20–21]. Elite asks the Court to take judicial notice of NetCE's repeated claims for statutory damages despite Elite providing case law indicating that such relief is unavailable; the Court declines the request to take judicial notice because this fact is irrelevant to determination of the issues before the Court.

[3] NetCE has registered copyrights for the seven courses at issue in this case, effective May 15, 2015. *See* [DE 36-1].

Third-party Defendant Elite ("Elite") also produces CME courses and materials and is a direct competitor of NetCE. [DE 36 at 17].

In 2012 and 2013, NetCE and Jouria executed ten Freelance Writer Agreements. [DE 36 at 18]. NetCE published three of the ten courses written by Jouria; the remaining seven courses that were not published by NetCE are at issue in this case (the "Seven Courses"). *Id.* at 19. In 2012, Alpine, an investment firm, approached NetCE to discuss the possibility of purchasing it. *Id.* Alpine and NetCE executed a Non-Disclosure Agreement ("NDA") to facilitate the exchange of confidential, proprietary, and sensitive information. *Id.* at 20. NetCE shared its plans to develop and commission courses (including the Seven Courses written by Jouria that are at issue in this action). *Id.* NetCE shared details about the Seven Courses, including Jouria's involvement and the timing of planned rollouts. *Id.* In late 2012, NetCE terminated discussions with Alpine. *Id.* Shortly thereafter, Alpine purchased an interest in NetCE's competitor, Elite. *Id.* After Alpine's investment in Elite, Elite hired Jouria. *Id.* at 36. In February 2015, NetCE discovered that Jouria had submitted the Seven Courses to Elite, and Elite published them, all without NetCE's permission. *Id.* at 25.

NetCE alleges that by publishing the Seven Courses, Elite infringed NetCE's copyrights, tortuously interfered with its contractual relationship with Jouria, and misappropriated trade secrets it obtained through Alpine and Jouria. Elite moves to dismiss the state law claims for tortious interference and for misappropriation of trade secrets (Counts 4 and 6).

## II. Discussion

Elite has moved to dismiss Counts 4 (Tortious Interference with Contractual Relations) and 6 (Misappropriation of Trade Secrets) of the FAA on the following grounds: (1) the tortious interference claim is preempted by the Copyright Act; (2) the tortious interference claim is

preempted by the Florida Uniform Trade Secrets Act ("FUTSA"); and (3) the misappropriation of trade secrets claim relies on conclusory allegations and threadbare recitations of claim elements, so it fails to state a claim upon which relief can be granted. The Court addresses each of these issues below.

1. **Preemption Analysis**

   1) *Tortious Interference Claim is not Preempted by the Copyright Act*

First, Elite alleges that NetCE's tortious interference claim related to the Freelance Writer Agreement with Jouria is preempted by the Copyright Act. Federal copyright law preempts state law claims "that are equivalent to any of the exclusive rights within the general scope of [the Copyright Act]" *Jaggon v. Rebel Rock Entm't, Inc.*, No. 09-61144-CIV, 2010 WL 3468101, at *2 (S.D. Fla. Sept. 1, 2010) (citing 17 U.S.C. 301(a)).

In the Eleventh Circuit, Courts apply a two-part test in copyright preemption cases. *See Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir.1983). Preemption occurs if the rights at issue (1) "fall within the 'subject matter of copyright'" and (2) "are 'equivalent to' the exclusive rights of section 106." *Id.*(referring to the Copyright Act). It is undisputed that the "Seven Courses" fall within the subject matter of copyright; the first prong is satisfied, so the Court turns to the second prong of the preemption test to determine if NetCE's claim for intentional interference encompasses rights that are equivalent to the exclusive rights of § 106 of the Copyright Act. *See Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001).

The Copyright Act "preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir.2001) (internal citations omitted). The exclusive rights under the Copyright Act include the right to reproduce the copyrighted work, to

prepare derivative works, and to distribute copies to the public. *See* 17 U.S.C. § 106. The Court applies the "extra element" test to determine "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created [cause] of action, then the right does not lie within the general scope of copyright and there is no preemption." *Lipscher*, 266 F. 3d at 1311–12 (quoting *Foley*, 249 F.3d at 1285).

However, the "extra element test," is not a rote comparison of the elements of the two claims. The "extra element" of the state-law-claim must change the nature of the claim, so that it is "*qualitatively* different from a copyright infringement claim." *Foley*, 249 F.3d at 1285 (citation omitted) (emphasis added). "For example, awareness and intent are not considered to be qualitatively different elements substantial enough to serve as an 'extra element.'" *Id.*

In order to plead a claim for tortious interference with a contractual relationship under Florida law, NetCE must assert the following elements: (1) the existence of contract; (2) Elite's knowledge of the contract; (3) an intentional and unjustified interference with Jouria's compliance with the contract; and (4) damage to NetCE as a result of the interference. *See Howard v. Murray,* 184 So. 3d 1155, 1166 (Fla. Dist. Ct. App. 2015), *reh'g denied* (Feb. 26, 2016); *see also Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001) (internal citations omitted).

The case law reveals that the preemption issue requires a fact-intensive inquiry, and it is a close question whether the claim for intentional interference is preempted by the Copyright Act. The question for the Court remains: does NetCE's intentional interference claim present an "extra element" outside the exclusive rights protected by the Copyright Act? If the answer is yes, then there is no preemption, and if the answer is no, the claim is preempted.

In *Chen v. Cayman Arts, Inc.*, the Court found that a breach of contract claim was not preempted by copyright law. *See* No. 10-80236-CIV, 2011 WL 3903158, at *6 (S.D. Fla. Sept. 6, 2011) (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir.2001)). The Court cited Sixth Circuit precedent finding that claims concerning contracts that amount "only to a promise to refrain from reproducing, performing, distributing or displaying the work" are preempted because such claims amount to exclusive rights protected by the Copyright Act. *Id.* However, the parties dispute concerned the validity of a license agreement, which amounted to an "extra element," so there was no preemption. *Id.*

Similarly, in *Telecom Tech. Servs. Inc. v. Rolm Co.*, the Eleventh Circuit found that where a tortious interference claim required the copyright holder to prove that the infringer violated the terms of its software licenses with customers, there was an "extra element" beyond copyright law prohibiting unauthorized copying, and thus there was no preemption. 388 F.3d 820, 833 (11th Cir. 2004)(internal citations omitted).

Conversely, in *Pac. & S. Co. v. Satellite Broad. Networks, Inc.*, the Court found that tortious interference with contractual relations claim was preempted by the Copyright Act. 694 F. Supp. 1565, 1573 (N.D. Ga. 1988), *rev'd on other grounds*, 940 F.2d 1467 (11th Cir. 1991) (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 501 F.Supp. 848 (S.D.N.Y.1980), *aff'd*, 723 F.2d 195 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539 (1985)). The Court relied on a Second Circuit case, *Harper*, which stated that "[i]n both [the copyright infringement and the interference with contractual relations claims], *it is the act of unauthorized publication which causes the violation*. The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element." *Id.* (citing *Harper*, 723 F.2d at 201) (emphasis added). The fact that a plaintiff "pleaded additional elements

of awareness and intentional interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." *Id.* Relying on this language from the Second Circuit, the Georgia District Court found Plaintiff's intentional interference claim was preempted by the Copyright Act. *Id.*

NetCE alleges that Elite's inducement of Jouria to breach the Freelance Writer Agreements is the "extra element" that allows their claim to avoid preemption. NetCE argues that their allegations of tortious interference require inquiries into Elite's knowledge of the Freelance Writer Agreements and Elite's purposeful encouragement of Jouria to breach its terms, which are separate elements than the exclusive rights protected in the Copyright Act. If this were all that was alleged, NetCE's claim would likely be preempted based on a dearth of binding and persuasive authority; "awareness and intent are not considered to be qualitatively different elements." *Foley*, 249 F.3d at 1285; *see also Huckshold v. HSSL, L.L.C.*, 344 F. Supp. 2d 1203, 1208–09 (E.D. Mo. 2004) (finding Plaintiff's tortious interference claim preempted because "[t]o prevail on his tortious interference claim, in addition to [Defendant's] awareness of the contract, Plaintiff need prove only an unauthorized copying. This Court, like others before it faced with similar claims, finds this claim to be preempted."); *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("Awareness or intent ... are not extra elements that make a state law claim qualitatively different [from a copyright infringement claim]."); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F.Supp. 1236 (C.D.Cal.1987) (same); *Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 981 F.Supp. 65, 70 (D.Conn.1997) (finding that "a tortious interference claim requires the plaintiff to plead the additional elements of awareness and intentional interference, which are not elements of a copyright claim[,]" but those elements

go "merely to the scope of the right" and "does not establish qualitatively different conduct on the party of the infringing party, nor a fundamental nonequivalence between state and federal rights implicated."); *Stromback v. New Line Cinema*, 384 F.3d 283, 306(6th Cir. 2004) (internal citations omitted)("The fact that the tort, unlike copyright infringement, requires awareness of the conflicting contract and an intentional interference with it merely means that the state-created right is narrower than its copyright counterpart, not that it is qualitatively different so as to preclude pre-emption.").

NetCE claims that Elite's inducement of Jouria to breach the Freelance Writer Agreement is separately actionable outside of copyright, but the inducement was to violate one of the exclusive rights of the copyright holder, so it is hard to imagine how inducement qualitatively changes the nature of the claim. However, Elite claims that the Freelance Writer Agreements provide a Right of First Refusal ("ROFR"), a right not within the exclusive rights of the Copyright Act. Jouria agreed not to "submit the [Course] to any other party for publication unless [NetCE] expressly rejects the Article . . ." [DE 36-2]. NetCE claims that Elite interfered with its ROFR by soliciting and publishing the Seven Courses thus preventing Jouria from performing under the Freelance Writer Agreement and truncating NetCE's ROFR. At this stage, the ROFR allegations are sufficient to plead a cause of action that seeks to vindicate rights that may be qualitatively different from those protected by the Copyright Act. Therefore, the Court finds that the pleading satisfies the "extra element" test and is not preempted by copyright law.[4]

2.  *Tortious Interference Claim is Preempted by the FUTSA*

In addition to NetCE's allegations that Elite interfered with Jouria's performance of the Freelance Writer Agreements, NetCE alleges that Elite interfered with Alpine's compliance with

---

[4] Elite may renew its arguments later in the litigation if it becomes clear that the ROFR is equivalent to one of the exclusive rights protected by copyright law.

the NDA.  Elite argues that NetCE's intentional interference claim premised on the NDA is preempted by the FUTSA; the Court agrees.

"[T]he UTSA 'displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.'" *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (quoting Fla. Stat. § 688.008(1)). The FUTSA specifies that this preemption does not apply to "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008(2)(b). The "issue becomes whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Allegiance*, 232 F.Supp. 2d at 1335–36 (internal citations omitted).

The Court must consider whether NetCE's allegations of tortious interference related to the NDA between Alpine and NetCE are distinguishable from the allegations of trade secret misappropriation. After comparing the claims, the Court finds that NetCE's trade secret claim is based on Elite's use of "confidential and proprietary information" subject to the NDA, and that is indistinguishable from the intentional interference claim. [DE 26 at ¶ 130]. NetCE argues that the intentional interference claim is distinct because it requires allegations that Elite was aware of the NDA and intentionally induced its breach, but the underlying misconduct for both claims is the same —alleged misappropriation of confidential and proprietary information. NetCE fails to provide a distinction between the wrongdoing alleged in the trade secret claim under FUTSA and that alleged by the tortious interference claim. Therefore, the claim is preempted.

NetCE argues that a preemption determination would be premature given that the Court has not yet determined that a trade secret exists. *See Healthcare Appraisers, Inc. v. Healthcare FMV Advisors*, LLC, No. 10-80293-CIV, 2011 WL 4591960, at *10 (S.D. Fla. Sept. 30, 2011)

(finding a preemption argument premature because "[i]f it is determined at a later time that there are no trade secrets, th[e]n it would follow that the unjust enrichment claim would not be based on a misappropriation of trade secrets and should not be displaced. Therefore, this argument is more properly asserted at summary judgment."). NetCE argues preemption is premature because the intentional interference claim may provide them with a cause of action if the Court finds that the misappropriated information does not qualify as a statutorily-defined "trade secret" under FUTSA. In effect, NetCE is pleading the intentional interference claim in the alternative. This Court joins the majority of jurisdictions considering this issue and rejects NetCE's argument. *Am. Registry, LLC v. Hanaw,* No. 2:13-CV-352-FTM-29CM, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014) (collecting cases and stating the majority position that "the FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA."). For the foregoing reasons, NetCE's tortious interference claim related to the NDA is preempted by the FUTSA.

### B. <u>Failure to state a claim</u>

#### 1. *Standard of Review*

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

The court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

   2.   *FUTSA Claim is Adequately Plead*

Under Florida law, a claim for misappropriation of trade secrets requires a plaintiff to demonstrate that defendant misappropriated secret information from the plaintiff, of which the plaintiff made reasonable efforts to maintain the secrecy, resulting in damages. *Leedom Mgmt. Grp., Inc. v. Perlmutter*, 2012 WL 503904, at *3 (M.D. Fla. Feb. 15, 2012) (citing *Furmanite Am., Inc. v. T.D. Williamson, Inc. .*, 506 F.Supp.2d 1134, 1140–41 (M.D. Fla. 2007)).

   NetCE alleges:

> NetCE has enjoyed . . . an advantage over . . . competitors . . . because of the . . . confidential and proprietary information, including . . . strategies for the marketplace, industry reports regarding competitors, the competitive landscape, . . . . consumer needs, NetCE's process for curating courses, and NetCE's financial performance data.

[DE 36 at ¶ 127]. NetCE also alleges Elite's complicity in misappropriating secret and proprietary information, including NetCE's plans for future courses and NetCE's development of

courses. *Id.* at ¶ 132. The FAA adequately alleges that Elite was not planning to develop courses in the same field as the Seven Courses, that Elite obtained secret information from Alpine, which it knew it should not use because it was protected by the NDA; the FAA also adequately alleges that NetCE derived value from its secrets and took reasonable efforts to maintain those secrets, including requiring Alpine to sign the NDA. *See generally*, [DE 36 ¶¶ 126–138].

In the instant Motion, Elite argues that NetCE has failed to adequately allege protectable trade secrets, as the list set forth above fails to allege specific trade secrets at issue. Elite also argues that at least some of the alleged secrets are not protectable because the information is readily ascertainable by others, either through NetCE's registered copyrights in the Seven Articles or publicly available information about changes in continuing education requirements.

The Court finds that NetCE has sufficiently alleged facts that it derived economic value from its secret and proprietary information and that it took reasonable steps to protect its alleged trade secrets to withstand a motion to dismiss. Elite's arguments that some of the information is readily ascertainable by others involve factual determinations not appropriate at the motion to dismiss stage, but better suited for a motion for summary judgment or at trial. For the foregoing reasons, the FUTSA claim is adequately plead.

### III. Conclusion

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motion to Dismiss [DE 43] is **GRANTED IN PART AND DENIED IN PART** as described in this Order. The Claim for Intentional Interference with Contractual Relations related to the NDA is **DISMISSED** as preempted by the FUTSA.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 12th day of July, 2017.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of record