## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

       Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

       Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant/Third Party Plaintiff,

v.

Elite Continuing Education, Inc. and Alpine
Management Services III, LLC,

       Third Party Defendants.

_____

### **NETCE'S SUPPLEMENTAL BRIEFING**

Counsel for Dr. Jouria objects to the manner in which NetCE produced documents in response to Dr. Jouria's document requests.  Specifically, he demands that NetCE correlate, by Bates number, each and every produced document to his eighteen (18) numbered requests because he alleges documents were not produced in the "usual course of business."  On a hearing on August 24, 2017, this Court requested supplemental briefing regarding the issue of what constitutes usual course of business under Fed. R. Civ. Proc. 34.[1]

## A.     Introduction

The present dispute, as this Court correctly noted at the hearing, reveals the delicate balance the discovery rules seek, *i.e.*, to ease the burden of production on producing parties, while also ensuring "that a literal application of the rule[s] does not prevent the requesting party from obtaining discoverable documents in a meaningful manner."  *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004, 2009 WL 152495, at *1 (M.D. Ga. Jan. 22, 2009).  In a similar dispute, this Court (Hon. Snow) affirmed the Rules' intent: "the undersigned is mindful that Rule 34 is generally designed to facilitate discovery of relevant information, and the practice of producing documents *en masse*, mingling relevant and non-relevant documents in an attempt to 'hide a needle in a haystack,' is disfavored in this district." *Al-Ghena Int'l Corp. v. Radwan*, No. 13-61557-CIV, 2014 WL 12657644, at *2 (S.D. Fla. Nov. 4, 2014) (italics original).

---

[1]     Judge Snow's written Order dated August 29, 2017, also dealt with a number of other issues.  ECF No. 97. Those issues are not the subject of this brief.  For the record, NetCE reports that as of August 31, 2017, it already has complied with the Court's Order to serve amended responses both to Plaintiff's First Set of Interrogatories and his Requests for Production of Documents; it is arranging a discovery conference with counsel for Dr. Jouria to discuss the handling of attorney-client privileged documents (and will, if necessary, produce a log by September 25, 2017); and it has offered to pay $1500 for the costs of Plaintiff's original motion as requested in that motion. Those efforts, in combination with the submission of this legal briefing, makes NetCE's compliance with the Order substantially complete.

Rule 34(b)(2)(E)(i) permits the producing party to either produce documents as they are kept in the usual course of business <u>or</u> to organize and label documents to correspond to the categories in the document request.  Here, NetCE has responded to Dr. Jouria's requests by producing documents "as they are kept in the usual course of business."  Dr. Jouria argues that NetCE is nevertheless not in compliance with Rule 34, because NetCE provided no reasonable means for him to find the specific documents he requested.  Rule 34(b)(2)(E)(i) provides:

> (E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or [ESI]:

> (i) A party must produce documents as they are kept in the usual course of business **or** must organize and label them to correspond to the categories in the request[.] (bolding added).

NetCE has not deviated from the requirements of Rule 34.  It has neither co-mingled nor hidden responsive documents.  NetCE has not produced unresponsive documents in order to increase Plaintiff's counsel's burden of review.  Simply put, it has not engaged in the deceptive production practices that this district and the Rules forbade.

## B.      NetCE's Document Production Is Legally Sufficient

This Court is not the first to adjudicate the issue.  As articulated in *F.D.I.C. v. Bowden*, No. CV413-245, 2014 WL 2548137, at *4 (S.D. Ga. June 6, 2014), "Clearly, Rule 34 contemplates that upon a part[y's] request to produce ESI, the responding party must produce it organized and labeled to correspond to the categories in the request *unless* the responding party can produce it as it is maintained in the ordinary course of its business." (quoting *F.D.I.C. v. Baldini*, 2014 WL 1302479 at * 8 (S.D. W.Va. Mar. 28, 2014) (italics in original); *Vitality Sys., Inc. v. Sogeval Labs., Inc*., No. 8:09-CV-0200-T-24EAJ, 2010 WL 11507313, at *4 (M.D. Fla.

Feb. 10, 2010) (because documents were produced "under the first prong of Rule 34(b)(2)(E), it need not organize or label the documents pursuant to the Rule's second prong."); *Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 700 (S.D. Fla. 2010) ("[A] responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business.") (internal citations omitted); *Selectica, Inc. v. Novatus, Inc.*, No. 6:13-cv-1708 ORL-40TBS 2015 WL 12852957 at *4 (M.D. Fla. Mar. 26, 2015) (producing party "cannot be required to identify by Bates Label, the documents it has already produced in the usual course of its business, in response to virtually identical requests for production.").

The policy widely adopted in this Circuit, and the reasons for that policy, are properly articulated by the *Sogeval* court,

> "Moreover, requiring [producing party] to do so in the manner contemplated by [requesting party] would be inappropriate as such measures impose a difficult and usually unnecessary additional burden on the producing party. The categories are devised by the propounding party and often overlap or are elastic, so that the producing party might be compelled to decide which best suits each item in order to consign it to the proper batch. Such an undertaking would usually not serve any substantial purpose, and it could become quite burdensome if considerable numbers of documents were involved."

Courts in other circuits reach the same conclusion. *MGP Ingredients, Inc. v. Mars, Inc.*, Civil Action No. 06–2318–JWL–DJW, 2007 WL 3010343, at *4 (D. Kan. Oct. 15, 2007) ("If the producing party produces documents in the order in which they are kept in the usual course of business, [Rule 34(b)] imposes no duty to organize and label the documents, provide an index of the documents produced, or correlate the documents to the particular request to which they are responsive."); *Menard v. Chrysler Grp. LLC*, No. 14-cv-6325 VB, 2015 WL 5472724, at *2 (S.D. N.Y. July 2, 2015) (motion to compel "to produce documents corresponding to plaintiff's

requests is denied.").  To order otherwise would render the first clause of Rule 34(b)(2)(E)(i)

entirely superfluous.

     Dr. Jouria bases his argument on the following sentence in his document request:

> The word "produce" means to make available the documents requested herein for
> inspection and copying and to separate such documents into categories set forth in
> this request if Defendant declines to produce any document requested hereinafter
> on the basis of any asserted privilege… (Exhibit 1 at 3, ¶ 7).

Thus, he argues that NetCE must organize and label documents to correspond to the categories in

the request.  Again, his reading ignores the first clause of Rule 34(b)(2)(E)(i), which allows the

producing party to produce records as "kept in the usual course of business."  There is scant case

law in this Circuit to support his rationale.  The closest this district has come to supporting his

argument is the decision in a *Henderson v. Holiday CVS, L.L.C*., No. 09-80909-CIV, 2010 WL

11505168, at *4 (S.D. Fla. Aug. 11, 2010).  This case, decided as ESI discovery was still

burgeoning, acknowledges that the "operative facts" of a case may require a party to undertake

additional efforts even if it chooses to produce documents in the ordinary course of business.  *Id.*

     In *Henderson*, the producing party did not segregate its entire cache of documents in

response to four different discovery requests.  It also failed to distinguish documents and instead

choose to loosely organize the documents in a manner of its own choosing.  But even despite the

deficiencies of its production, the *Henderson* court did not require the producing party to "match

specific documents with specific document requests" as Dr. Jouria now demands.  *Id*. at 5.

     The only cases in which courts reject the producing parties' claim that the documents

were produced as kept in the normal course of business involve classic "document dumps."

These courts ordered an index of some sort because the productions did not involve ESI, but

rather were hardcopy productions.  *See Michael K. Sheils Tr. v. Kuhn*, No. 6:08-CV-1704-ORL-

DAB, 2009 WL 10670734, at *2 (M.D. Fla. July 10, 2009) ("Court does not believe that storage

of hundreds (if not thousands) of documents in poorly labeled, randomly scattered boxes in an

unlit, unfinished storage space is the normal course of business for Defendants."); *Quail Cruises*

*Ship Mgmt. Ltd. v. Agencia De Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2012 WL

12949753, at *2 (S.D. Fla. Feb. 14, 2012) ("[producing party's] offer to produce approximately

8000 bankers boxes filled with responsive or non-responsive documents located [] in Sao Paulo,

Brazil" does not satisfy "the business records option in Rule 34(b)(2)(E)(i).");  Here, NetCE did

nothing of the sort and maintains its business records in a sophisticated electronic database.

 NetCE's produced documents generally constitute electronically stored information ("ESI").

Dr. Jouria's requests for production did not specify any particular form of production of ESI.

Exhibit 1.  Moreover, his document request did not specifically request that NetCE produce or

retain any metadata in its production.  *Id*.  In fact, counsel for Dr. Jouria, and only when NetCE's

counsel asked, explicitly requested that NetCE *not* produce any metadata, and instead requested

all ESI in PDF form, which, without a load file, does not provide any metadata.  Declaration of

Jessica Lanier ¶¶ 10, 12, Exhibit 2 (herein after "Lanier Decl.").  Rule 34(b)(2)(E)(ii) provides:

"…If a request does not specify a form for producing electronically stored information, a party

must produce it *in a form or forms in which it is ordinarily maintained or in a reasonably usable*

*form or forms*[.]" (emphasis added).

Mr. Ross's claim that it is now "impossible" to search the documents (even if true) is a

problem of his own-making.[2]  Consistent with the generally accepted ESI production protocols,

---

[2] Counsel for Dr. Jouria also has repeatedly suggested that unless NetCE undertakes the burdensome label-correlating he seeks, he will not be able to "verify" that NetCE has complied with the demands of each Request.  We

and as detailed below, NetCE is able to organize the produced documents.  It will gladly provide load files with the produced documents so that counsel for Dr. Jouria can organize NetCE's production as he so chooses.

### D.    What Constitutes Usual Course of Business

NetCE consistently carried out its discovery obligations with diligence and good faith. As such, a brief recitation of NetCE's document retention and production protocol is warranted. *See Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 701 (S.D. Fla. 2010) (holding producing party bears burden of proving its records were produced and maintained in the usual course of business).

Since inception of this dispute, NetCE has diligently preserved business records to ensure that no document is destroyed or altered.  Lanier Decl., ¶¶ 3-4.  NetCE first collected potentially responsive hardcopy documents, maintained in files onsite at NetCE, offices in Roseville, California.  *Id*. at ¶¶ 4-5.  NetCE then collected ESI from local hard drives (in other words, documents saved on employees' individual computers) and network storage.  *Id*. at ¶¶ 5-6. These documents included documents saved to an employees' computer or to the NetCE system *and* NetCE emails.  *Id*.  NetCE's email storage system segregates emails by custodians (recipients).  *Id*. at 5. Accordingly, NetCE collected emails from inboxes and outboxes, including

---

do not understand this argument at all.  Consider for instance that NetCE label-correlates all 32,000 pages, and the result shows that 4,000 pages correlate to Request No. 1, while only 5 pages correlate to Request No. 2.  How would that fact impact counsel's ability to "verify" anything?  What would the volume/number of responsive documents show?  If counsel were inclined to abuse the discovery process and act in an unethical manner (which it manifestly is not), it could have withheld 3,995 additional responsive documents for Request No. 2, or just 1 smoking gun document!  The index-correlating adds no value to Mr. Ross's ability to "verify" NetCE's compliance, yet imposes a significant burden on NetCE.

emails NetCE employees sent to each other *and* emails NetCE sent and received to non-NetCE employees.  *Id.*

The vast majority of NetCE's records and therefore its production consisted of ESI. Holland & Knight's e-discovery team collected approximately 430 GB of data from NetCE.  *Id.* at 6.  Holland & Knight then, in keeping with industry practice, applied roughly 70 broad search terms designed to capture responsive documents to the data, and reviewed all records that "hit" on a search term to determine if they were (i) responsive to Dr. Jouria's document requests and (ii) if so, whether any privilege or protection applied to preclude their disclosure.  *Id.* at 7.

To date, Holland & Knight has reviewed over 29,000 documents (hundreds of thousands of pages) for responsiveness and for privilege, including both ESI and hardcopy records.  *Id.* at 8. The hardcopy records consist almost entirely of course binders that were scanned sequentially as stored by NetCE, where they are organized by course.  Holland & Knight produced the hardcopy records in its first production.  *Id.*

To date, on a rolling basis, NetCE has produced approximately 3,200 documents (more than 32,000 pages) to Dr. Jouria.[3]  NetCE's document production is now complete.

NetCE has *never* withheld metadata.  Pursuant to NetCE's discovery obligations it is willing and able to re-produce the documents with all metadata and appropriate load files.  In attempting to strongarm NetCE to label which documents are responsive to each request, counsel for Dr. Jouria misconstrues the requirements of the Federal Rules of Civil Procedure, the Local Rules of this Court, and Magistrate Snow's Standing Order.  NetCE already has indexed all the

---

[3] Counsel for Dr. Jouria has admitted that he filed his motion to compel before he even reviewed a single page of the 32,000 pages of responsive documents NetCE produced.

documents and processed their metadata.  Therefore, the information counsel seeks is already available and provides him a wealth of information to facilitate his review of NetCE's production.  Such metadata could, for example, aid counsel's sorting of documents by custodian, by date, by date range, by sender or recipient, by keyword or Boolean search, by email subject line, or by file format.  Counsel's demand impermissibly shifts the burden to NetCE to review and sort documents *for him* when a simple solution—and one contemplated by Rule 34—already exists.

Dr. Jouria's broad document requests also makes correlating each and every document to his individual document requests extraordinarily burdensome.  Among other things, he demanded that NetCE produce "a copy of all documents related to any damages Defendant alleges and will seek against Plaintiff."  Exhibit 1 at 5, Request No. 17.  This request, like every other request did not specify a time frame and was not limited to any particular subject matter.  By default, NetCE must produce any document that is even tangentially related to damages (NetCE attempted to narrow this request and others during meet-and-confers, but counsel for Dr. Jouria refused).  Furthermore, because NetCE's relationship with Dr. Jouria dates back to 2012, the volume of documents responsive to his eighteen requests was extraordinarily large.

Given the extremely broad document requests propounded by Dr. Jouria, NetCE offers to re-produce documents in a more reasonably usable format than PDF—like as TIFF images with a load file.  In the alternative, NetCE remains willing to chart documents, but not in the onerous fashion counsel for Dr. Jouria demands.  The searchable chart, a native Excel file, could provide the bates number, date, author, recipient, any cc's, and other descriptions of each and every document produced by NetCE in a format easily searchable by counsel.  Lanier Decl. ¶ 13.

#53479344_v6

## E.      Conclusion

Finally, at it is worth repeating, when counsel for Dr. Jouria complained about NetCE's production, NetCE could do nothing because it produced the documents exactly as demanded—as PDF files and on a thumb drive.  Generally productions contain metadata (as single-page TIFF files with multipage text and database load files), which would have obviated this disagreement and made the document production even more searchable and sortable than any index ever could. This was counsel for Dr. Jouria's choosing.

In light of (1) the broad scope of Dr. Jouria's document requests; (2) the fact that he did not request any particular form of production and did not request metadata in his document request; (3) NetCE's offer to provide a searchable and sortable Excel index to the production; and (4) Dr. Jouria's rejection of NetCE's offer to re-produce the documents, it is clear NetCE complied with its obligation to produce the documents.  Fed. R. Civ. P. 34(b)(2)(e)(i).

Because NetCE's production obligations are governed by the ESI provisions of Rule 34, NetCE was not required to label and match its documents to particular categories as counsel demands.


Dated: August 31, 2017                                    Respectfully submitted,

                                                                    HOLLAND & KNIGHT LLP

                                                                    /s/ *Philip E. Rothschild*
                                                                    Philip E. Rothschild
                                                                    Florida Bar No. 0088536
                                                                    Email: phil.rothschild@hklaw.com
                                                                    HOLLAND & KNIGHT LLP
                                                                    515 East Las Olas Blvd., 12th Floor
                                                                    Fort Lauderdale, FL 33301
                                                                    Telephone: (954)525-1000

Facsimile: (954)463-2030

/s/ *John P. Kern*
John P. Kern, Esq. (pro hac vice)
Email: john.kern@hklaw.com
Jessica E. Lanier, Esq. (pro hac vice)
Email: Jessica.Lanier@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415)743-6918
Facsimile: (415)743-6910
Attorneys for CE RESOURCE, INC.
d/b/a
CME RESOURCE and NetCE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 31, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Philip E. Rothschild*
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
4801 S. University Drive
Suite 237
Fort Lauderdale, FL 33328
Email:  prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*
*[VIA E-MAIL]*

Peter A. Chiabotti, Esq.
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Email: peter.chiabotti@akerman.com
*Attorneys for Elite Continuing Education, Inc.*
*[VIA E-MAIL]*

11

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Email:  markwilson@mvalaw.com; katecole@mvalaw.com
*Attorneys for Elite Continuing Education, Inc.*
*[VIA E-MAIL]*