**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(Fort Lauderdale Division)**

**CASE NO.:15-61165-CIV-DIMITROULEAS/SNOW**

DR. JASSIN JOURIA,

      Plaintiff/Counter-Defendant,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

      Defendant/Counter-Plaintiff/Third-Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC.,

      Third Party Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW REGARDING WHAT CONSTITUTES "THE**
**USUAL COURSE OF BUSINESS" FOR PURPOSES OF FED.R.CIV.P. 34**

      COMES NOW, the Plaintiff, Dr. Jassin Jouria ("Plaintiff"), who respectfully files this

memorandum of law in furtherance of Magistrate Lurana Snow's order, DE 97, briefing the court

on what constitutes "the usual course of business" for purposes of Fed.R.Civ.P. 34(b)(2)(E)(i).

Specifically, Magistrate Snow provided the parties seven (7) days to submit their respective positions

regarding whether the  Defendant, CE Resource, Inc.'s d/b/a CME Resource and NetCE

("Defendant"), is obligated to comply with Federal Rule of Civil Procedure 34(b)(2)(E)(i) and

organize and label the nearly 32,000[1] documents it produced as set forth in its response to Plaintiff's

eighteen document requests.  Exhibit 1, attached.

---

[1]31,824 documents to be exact.

Plaintiff had sought, as part of his discovery motion, DE 89, to compel Defendant to correct a myriad of its violations of this court's standing discovery order, DE 77, and the rules of procedure.  One such rule violation was the Defendant's refusal to organize and label its nearly 32,000 page document dump on Plaintiff.  At the hearing held on August 24, 2017 on Plaintiff's motion to compel, Defendant took the position that it is not required to organize and label the documents produced because they were produced as they were kept in the usual course of business.  However, the record is devoid of any evidence establishing that the 32,000 documents were produced as they were so  in the usual course of business.  Additionally, Defendant contended that there is no prejudice to Plaintiff to review 32,000 individual imaged documents without having any organization or labeling corresponding to the categories of Plaintiff's document requests.  As set forth below, documents produced by Defendant were largely or entirely **not** produced as they were kept in the ordinary course of business.  Furthermore, forcing Plaintiff to fish through 32,000 pages of documents will cause him extreme prejudice in terms of the substantial, additional time and expense that it will take to match each document to each of his pending requests.

## FACTUAL BACKGROUND

Plaintiff propounded a first set of requests for production of documents and things to Defendant by service dated June 2, 2017.  Plaintiff made only eighteen category requests, and targeted them specifically to the subject matter of this action including Defendant's amended counter claim.  On July 3, 2017, Defendant served its response, and supplemented that response on August 30, 2017 in accordance with the court's discovery order, DE 97.

From July 3, 2017 through and including August 23, 2017, Defendant produced the 32,000 documents in .PDF format.  The parties communicated regarding the format in which

Defendant was to produce the ESI, and stipulated that it would be produced in .PDF image format. Exhibit 2.  Importantly, Plaintiff never requested that documents be produced in their native[2] or near-native[3] format, and Defendant never objected to producing the documents in .PDF format.  *See* Fed.R.Civ.P. 34(b)(2)(D).

Subsequent to the initial production, on July 17, 2017, Plaintiff learned from Defendant that the first two productions in .PDF format, totaling 11,219 pages of documents, were not ESI, but rather were documents of "scans of physical paper documents maintained by NetCE in the course development process.  These paper documents constitute the contents of ten (10) binders - one binder corresponding to each course [Plaintiff] submitted to NetCE pursuant to the Freelance Writer Agreements."  Exhibit 3, Ltr dated July 17, 2017.  None of these 11,219 pages of documents was organized and labeled to correspond to any of Plaintiff's requested categories.  The next six productions from Defendant, totaling more than 20,000 pages of documents, purportedly ESI documents, were all produced in the agreed upon .PDF format, though the record is devoid of any evidence that any were usually kept in Defendant's business as .PDF formatted documents.

---

[2] A native production consists of responsive ESI in the form that it is ordinarily maintained on the producing party's systems, and it usually includes the metadata associated with the documents.

[3] Some files, including most email and large databases, cannot be reviewed for production or produced without some form of conversion. Emails often are saved in a single text file or database rather than in separate files for each email. Databases and data compilations can consist of massive amounts of undifferentiated tables of data, with hundreds of tables and thousands of data fields in some enterprise systems, and may require proprietary software to review in their original form. Consequently, email and large databases and data compilations are generally not produced in true native format.  In near-native format, files are extracted or converted into another searchable format.  For example, emails may be converted to .htm, .msg, or .rtf files. Databases may be converted to .txt or .csv files, or exported to MS Excel or MS Access for production. As a result, the original format is altered and the ESI is no longer in native format.

3

## LEGAL ARGUMENT

### A. **Defendant's documents were not produced as usually kept.**

Defendant's production does not comply with the requirements set forth in Fed. R. Civ. P. 34(b)(2)(E)(i), which provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request...." To show that it produced documents as they were kept in the usual course of business, a producing party cannot simply assert that the format of its production comports with its usual business practices. A producing party must also show the way in which the documents were produced did not change from how they were kept in the usual course of business. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363 (N.D. Ill. 2005); *see also Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005).

In responding to Plaintiff's motion to compel, NetCE had the opportunity to present evidence that it produced the 32,000 pages as they were kept in the usual course of its business. However, it filed no affidavit or declaration by its record's custodian[s] under oath stating that the documents produced were done so as Defendant kept them in the usual course of business. It is not as if the Defendant were unaware of this issue of organization and labeling. It was one of the matters of discussion at the prefiling discovery conference, and the Defendant addressed the issue in its response to Plaintiff's motion to compel. *See* DE 91, ¶D. However, that response was anemic, and groundlessly asserted the documents were produced as Defendant usually kept them. It would be prejudicial to Plaintiff to give the Defendant a <u>third</u> bite of the apple to establish on the record its usual course of document retention when it failed to establish such first, in its response to the motion, and second, at the hearing on the motion.

4

Even if the court chooses to grant the Defendant that third bite now, it still cannot meet the "usual court of business" prong of Rule 34(b)(2)(E)(i).  For the first two document productions, Defendant concedes the 11,219 pages of documents were kept as "physical paper," *see* Ex. 3, though they were produced in .PDF format and not as paper. Aside from this fact, Defendant states these documents comprise ten binders, *id*., yet there is no such organization in the electronic .PDF format production.  Rather, Defendant produced the 11,219 pages documents in 396 different files, Comp. Exhibit 4,[4]  not the ten paper binders associated with each of the ten articles Plaintiff wrote for Defendant.  Defendant should organize these 11,219 pages of produced .PDF images into the ten original binders, and identify to which categories in the request they correspond, since they were not produced in paper as they were kept in the usual course of business.

Of the remaining six productions comprising 20,000 plus ESI .PDF images, many, if not most, are e mails.  Emails are not usually kept in a .PDF format, *supra* n.3, and need to be converted, and were converted in this case, to Plaintiff's requested .PDF file format.

Federal Rule of Civil Procedure 34 allows a party to request a particular format for the production of ESI.  *See In re Porsche Cars North America, Inc. Plastic Coolant Tubes Products Liability Litigation*, 279 F.R.D. 447, 449 (S.D. Ohio 2012) ("Pursuant to Rule 34(b)(1)(C), a requesting party is entitled to specify the form or forms in which electronically stored information is to be produced.").  Defendant did not object to Plaintiff's form of ESI production, *see* Fed.R.Civ.P. 34(b)(2)(D), but rather agreed.  However, that agreement does not obviate the Defendant's obligation to comply with the organizing and labeling requirements of Rule

---

[4]239 files in Defendant's first production, plus 157 files in Defendant's second production.

34(b)(2)(E)(i) for documents and ESI.

In the ESI production comprising over 20,000 pages of documents, Defendant has produced them with Bates stamp numbers, but with no organization and no labeling. Further, and inexplicably, the documents are located in 1862 different files, and 19 folders purportedly in native format (despite the parties' agreement to produce documents exclusively in .PDF format). *See* Comp. Exhibit 5. Even if the court accept a belated affidavit or declaration from Defendant's record's custodian(s) regarding NetCE's "usual course of business," there is a lot of explanation that would be required to understand how the 20,000 ESI documents are usually kept in 1862 .PDF files, plus 19 folders.

To show how its documents were usually kept, Defendant would have to, at a minimum, provide information about each document which ideally would include, in some fashion, the identity of the custodian or person from whom the documents were obtained, an indication of whether they are retained in hard copy or digital format, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered. *Venture Corp. Ltd. v. Barrett, No. 5:13-CV-03384-PSG*, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014) (internal quotations and citations omitted). *See Etkin & Co. v. SBD*, LLC Case No. 11-CV-21321-JAL(S.D. Fla. Dec. 8, 2011)(Mag. O'Sullivan)("The Defendant shall categorize the "hard copy paper" portion of its document production to correspond to the Plaintiff's Requests for Production, unless it is able to provide affidavit(s) from the custodian(s) of the records produced adequately demonstrating that such production (or applicable portions thereof) was made as such records were kept in the usual course of business and, if so, that portion of the document production shall be excused from the categorization requirement pursuant

to Rule 34(b)(2)(E)(i) of the Federal Rules of Civil."). Here, it is facially impossible for Defendant

to provide evidence of a "usual course of business" document retention policy when it produces 396

electronic files from 10 paper files.

**B.    Prejudice to Plaintiff from Defendant's violation of Rule 34(b)(2)(E)(i).**

In terms of prejudice to Plaintiff, the Defendant dumping 32,000 non-organized,

unlabeled documents in 2258 electronic files, and 19 separate folders, smacks of intentional,

vexatious conduct. Defendant is aware that Plaintiff is of limited financial means, and has recently

undergone several bankruptcy proceedings. The manner of production by the Defendant is similar

to having to assemble a 32,000 piece puzzle together that has no image or picture on it, and with no

assurance that pieces are missing, or extraneous pieces are present.[5]

The prejudice caused by the Defendant's manner of production can readily be seen

in Defendant's responses, Exhibit 1. For example, Request No. 9 seeks the production of the deposit

specimens Defendant used to support its copyright applications at issue in this action. Defendant's

response is the documents were produced. The question is, where? Is the Plaintiff required to go

through 2258 separate electronic files searching for those deposit specimens, rather than being

directed to Bates numbers? The difference in time to get to those documents is tens to hundreds of

hours versus seconds. Similarly, Plaintiff asked the Defendant in Request No. 13 to produce any

iThenticate software comparisons of the works at issue in this case that he submitted to Defendant,

and the works that he submitted to Elite or to Elite's publications. The Defendant says the

documents have been produced. Again, Plaintiff says where are they - what are the Bates numbers?

---

[5]Perhaps the volume of documents is due to the search criteria the Defendant used to cull
those documents, which criteria were never discussed with the Plaintiff.

Defendant's document dump is like searching for a needle in a haystack, which is disfavored in this court. *Al-Ghena International Corp. v. Talat Radwan*, Case No. 13-61557-CIV-DIMITROULEAS *4 (S.D. Fla. Nov. 14, 2014)(Mag. Snow)(Attached as Exhibit 6).

      The Defendant's unorganized and unlabeled production will cause the Plaintiff's counsel to expend at least hundreds of additional hours of time, at a cost of tens of thousands of dollars in additional expenditures to the Plaintiff, if the court does not compel the Defendant to comply with Rule 34.

      Plaintiff had the right to choose the format of his production, and, here, he chose a non-native .PDF format.  The Defendant did not object, but, rather, stipulated to producing documents in that format, and did indeed so produce.  The Defendant was free to discuss such non-native production without including organization or an index, but that conversation was never had. *See* Fed.R.Civ.P. 34(b)(2)(E)("Unless otherwise stipulated....").  The stipulation made by the parties does not, however, absolve the Defendant of complying with the organization and labeling requirements of the subsection.  *Id*. at (i).  Since there is no record evidence that the documents Defendant produced were kept in .PDF format in the usual course of business, pursuant to Rule 34(b)(2)(E)(i), Defendant is obligated to organize and label its production.

      WHEREFORE, the Plaintiff respectfully moves the court to compel Defendant to organize and label  its documents and ESI production under Rule 34.  The prejudice to Plaintiff to go through Defendant's 32,000 page document dump is obvious - time and expense.  Defendant continues to litigate this proceeding vexatiously as it is well aware that its document production was not in the form kept in "the usual course of business."  The full sanction authority of the court, not just an award of attorney's fees to Plaintiff, *see* DE 97, should be brought to bear upon Defendant

which, Plaintiff submits, should be compelled to organize and label its production.

Respectfully submitted,

/s/ Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
Attorney for Plaintiff Dr. Jassin Jouria
Fla. Bar No. 436630
915 S.E. 2 Court
Ft. Lauderdale, Florida 33301
Tel 954/252-9110
Fax 954/252-9192
E mail: prodp@ix.netcom.com

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on August 31, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


        s/Richard S. Ross
        Richard S. Ross, Esq.

**SERVICE LIST**
**Dr. Jassin Jouria v. CE Resource, et al.**
**Case No.: 15-61165-CIV-DIMITROULEAS**
**United States District Court, Southern District of Florida**
**(Ft. Lauderdale Division)**

Philip E. Rothschild, Esq.
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Ft. Lauderdale, FL  33301
Method of Service: NEF
*(Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE)*

Jessica E. Lanier, Esq.
John P. Kern, Esq.
HOLLAND & KNIGHT, LLP
50 California Street, Suite 2800
San Francisco, CA  94111
Method of Service: NEF
*(Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE)*

Peter A. Chiabotti, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Method of Service: NEF
*(Attorneys for Elite Continuing Education, Inc.)*

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Method of Service: NEF
*(Attorneys for Elite Continuing Education, Inc.)*