# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# CASE NO. 0:15-61165-WPD

| | |
|---|---|
| DR. JASSIN JOURIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant/Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DR. JASSIN JOURIA, | ) |
| | ) |
| Plaintiff/Counter-Defendant. | ) |
| | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Elite Continuing Education, Inc. and Alpine Management Services III, LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |

**ELITE'S MOTION FOR JUDGMENT ON THE PLEADINGS ON ELITE'S FIRST
COUNTERCLAIM AND INCORPORATED MEMORANDUM OF LAW**

42899293;2

**MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Federal Rule of Civil Procedure 12(c), Third-Party Defendant Elite Professional Education, LLC ("Elite")[1] respectfully moves for judgment on the pleadings on the First Counterclaim for Declaratory Judgment of Noninfringement of "Cardiovascular Pharmacology" Article in Elite's Answer to Third Party Complaint and Counterclaims (DE 93), for the reasons as set forth in the supporting memorandum of law which follows.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**

**I.     INTRODUCTION**

Elite is caught in the crossfire of a contentious dispute between CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") and Dr. Jassin Jouria ("Dr. Jouria"). This dispute has spawned numerous, salacious allegations by both of those parties against each other and their respective attorneys, and at least one fee award against NetCE. Through it all, it appears that this dispute can be summarized as follows: NetCE believes Dr. Jouria sold continuing education courses both to NetCE and Elite, in violation of NetCE's alleged rights. With its kitchen-sink allegations against Elite, NetCE has overreached. NetCE has accused Elite of infringing NetCE's alleged copyright rights in an article entitled "Cardiovascular Pharmacology" (the "Pharmacology Article") by publishing an article entitled "Cardiovascular Diseases: The Leading Cause of Death in Women" (the "Women's Heart Disease Article"). A comparison of the texts of these two articles shows that there is not one single sentence that is the same. Indeed, there are only a few instances of any shared words at all, and those are merely non-copyrightable common phrases and

---

[1] In its pleading, Defendant/Third Party Plaintiff CE Resources, Inc. d/b/a CME Resource and NetCE named "Elite Continuing Education, Inc." as a Third-Party Defendant in this matter. The proper entity name is Elite Professional Education, LLC (*see* DE 93).

terminology that are not owned by NetCE or anyone else. The dissimilarities in the articles cannot reasonably be disputed and will not change with discovery or continued litigation. The Court can and should rule now to remove this obvious noninfringement from this case. Elite respectfully submits that it is entitled to judgment on the pleadings on its first counterclaim for declaratory judgment of noninfringement of NetCE's Pharmacology Article.

## II.   FACTUAL BACKGROUND

NetCE is a publisher of continuing medical education articles, content, and course materials. (DE 36, ¶ 19). Dr. Jouria, a medical doctor, medical researcher, and writer, renders medical research and writing services to continuing education services providers, such as NetCE, by preparing and authoring continuing medical education articles, content, and courses. (DE 93, ¶¶ 11-12). In early 2013, Dr. Jouria approached NetCE with a proposal to write articles for continuing medical education courses in the areas of general medical, internal medicine, and pharmacology. (DE 36, ¶ 31). NetCE entered into ten separate Freelance Writer Agreements with Dr. Jouria, under which Dr. Jouria would prepare draft CME articles in agreed upon areas. (DE 36, ¶ 34).

Elite is an education company that offers continuing education through live classroom training and online and home study correspondence. (DE 93, ¶ 10). On January 24, 2013, Elite posted an online job listing for course writers in the field of nursing. (DE 93, ¶ 15). Shortly thereafter on January 26, 2013, Dr. Jouria approached Elite, as he did with NetCE, offering to provide his writing services. (DE 93, ¶ 16). In response to a request from Elite's representative asking for Dr. Jouria to suggest some course subjects he was willing to write for Elite, Dr. Jouria responded, "A few topics I am interested in writing are the following: Women and Heart Disease, Diabetes Pharmacotherapy, Tuberculosis, Pathophysiology Basics: A review, Multiple Sclerosis,

3

Cancer, Clinical Cardiovascular Pharmacology, The Lymphatic System, Anatomy and Physiology: Review Series, Antimicrobial Pharmacology, Decubitus Ulcers, COPD, Preventable Advese Events." (DE 93, ¶ 17). On November 8, 2013, Dr. Jouria entered into an Independent Contractor Agreement ("ICA") with Elite to render his research and writing services in order to prepare the curriculum for certain of Elite's continuing education courses. (DE 93, ¶ 18).

Pursuant to the ICA, Dr. Jouria prepared and authored the curriculum for the following continuing education courses published by Elite: Cardiovascular Diseases: The Leading Cause of Death in Women, The Basics of Pathophysiology, Traumatic Brain Injury, Depression vs. Dementia in the Elderly Part I, Depression vs. Dementia in the Elderly Part II, Cancer and Chemotherapy: A Comprehensive Review Part I, Cancer and Chemotherapy: A Comprehensive Review Part II, Non-Antibiotic Antimicrobial Pharmacology: A Comprehensive Review Part I, Non-Antibiotic Antimicrobial Pharmacology: A Review—Part II, and Gastroesophageal Reflux Disease (GERD): A Comprehensive Review (collectively, the "Curricula"). (DE 93, ¶ 19). Dr. Jouria represented and warranted to Elite in the ICA that "[a]ll materials created by [Dr. Jouria] during the course of engagement by [Elite], do not, and will not infringe the trademark, copyright, patent or other rights of any third-party; and [Dr. Jouria] is the sole and exclusive author and owner of each Curriculum." (DE 93, ¶ 21).

In February 2015, NetCE allegedly discovered that Elite had published the seven articles that are at issue in this case, which publications NetCE alleges were a violation of its purported copyright rights and the Freelance Writer Agreements. (DE 36, ¶¶ 67, 86). NetCE sent Elite a cease and desist letter on April 13, 2015, alleging that Elite's conduct constituted indirect copyright infringement, tortious interference with the Freelance Writer Agreements, and a violation of California's Unfair Business Practice statute. (DE 93, ¶¶ 22-23; DE 93-5). NetCE also sent Dr.

Jouria a cease and desist letter on April 15, 2015, asserting allegations of copyright infringement and breach of contract. (DE 36, ¶ 15). NetCE's threat of litigation prompted Dr. Jouria to commence this action on June 2, 2015, seeking a declaratory judgment of noninfringement of NetCE's copyright rights and no breach of the Freelance Writer Agreements. (DE 1).

NetCE filed a Third-Party Complaint (DE 36) on October 21, 2016, asserting a host of claims against Elite, including claims for copyright infringement, tortious interference with contractual relations, and misappropriation of trade secrets. Elite filed its Answer to Third Party Complaint and Counterclaims (DE 93) on July 31, 2017, asserting declaratory judgment counterclaims of noninfringement against NetCE for each of the seven articles at issue. NetCE's Pharmacology Article is included with Elite's counterclaims at DE 93-7, and Elite's Women's Heart Disease Article is included at DE 93-6. In its Answer to Elite's counterclaims, NetCE stated that "NetCE admits that a document purporting to be NetCE's copyrighted courses [sic] 'Cardiovascular Pharmacology' is attached to the Counterclaims as Exhibit F" (DE 95, ¶ 33) and "NetCE admits that a document purporting to be the course Elite published <u>which infringes NetCE's copyright</u> in 'Cardiovascular Pharmacology' is attached to the Counterclaims as Exhibit G" (DE 95, ¶ 34 (emphasis added)).

The deadline to amend the pleadings passed on August 17, 2017 without further filings. (DE 76). Thus, the pleadings are closed.

The present motion for judgment on the pleadings seeks a judgment as a matter of law on Elite's First Counterclaim for Declaratory Judgment of Noninfringement of "Cardiovascular Pharmacology" Article. In sum, Elite's Women's Heart Disease Article at DE 93-7 is not substantially similar to, and therefore cannot infringe any purported copyright rights owned by NetCE in the Pharmacology Article at DE 93-6.

5

### III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a court may enter judgment on the pleadings after the pleadings are closed "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).  On a Rule 12(c) motion, "[t]he Court may consider all of the pleadings, including the complaint, answer, counterclaim, and answer to the counterclaim," as well as "documents attached to the complaint … [and] the answer if they are central to the plaintiff's claim and undisputed." *Carbonell v. Weinstein Pinson & Riley, P.S.*, 2014 U.S. Dist. LEXIS 78250, at *5-6 (S.D. Fla. May 30, 2014).  All the facts alleged in the pleadings are accepted as true, and all inferences are made in the light most favorable to the nonmoving party. *Id.* at *5.  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005) (holding that judgment on the pleadings is warranted "if the non-movant can prove no set of facts which would allow it to prevail.").

### IV.     ARGUMENT

The Copyright Act, 17 U.S.C. § 106, provides to the owner of a copyright the following exclusive rights:

(1)     to reproduce the copyrighted work in copies or phonorecords;

(2)     to prepare derivative works based upon the copyrighted work;

(3)     to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.  In its Third-Party Complaint against Elite, NetCE alleged that "Dr. Jouria…publish[ed] seven (7) articles (which he previously had submitted to NetCE) through one of NetCE's competitors, Elite" (DE 36, ¶ 67).  NetCE further alleged that it has the "exclusive right to <u>copy, reproduce, and distribute</u> copies of the articles [Dr. Jouria submitted to NetCE] or derivative works thereof," and that "Elite infringed NetCE's copyrights by publishing the articles Dr. Jouria submitted to NetCE…." (DE 36, ¶¶ 84, 86) (emphasis added).  By its allegations, NetCE appears to take the position that Elite infringed its alleged exclusive rights to reproduce, distribute, and publicly display the NetCE articles at issue (including the Pharmacology Article), as provided by 17 U.S.C. § 106(1), (3), and (5).[2]

Pursuant to 17 U.S.C. § 501, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided in section[] 106…is an infringer of the copyright…."  "To establish copyright infringement, two elements must be proven: ownership of a valid copyright, and

---

[2] There can be no dispute that the exclusive rights set forth in 17 U.S.C. § 106(4) and (6) are inapplicable to this dispute, as those subsections provide the right to "perform the copyrighted work publicly."

7

copying[3] of constituent elements of the work that are original." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

Assuming NetCE can establish the first element of infringement, ownership of a valid copyright in the Pharmacology Article (an issue which Elite does not concede), NetCE nonetheless cannot establish the second element, "copying of constituent elements of the work that are original." *Id.* This element may be established either with direct proof of copying, or by showing that the defendant had access to the copyrighted work and that the works are substantially similar. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008); *see also Home Design Servs. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016). Direct proof of copying is established when the accused work is "a blatant copy" of the copyrighted work. *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1333 (M.D. Fla. 2001), *aff'd*, 287 F.3d 1325 (11th Cir. 2002). Absent direct proof of copying, substantial similarity exists if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Oravec*, 527 F.3d at 1224. This substantial similarity standard can be summarized into "a single inquiry: whether a reasonable jury could find the competing [works] substantially similar at the

---

[3] Proof of "copying," for purposes of establishing infringement of the specific exclusive rights of copyright, was explained by the court in *Dream Custom Homes, Inc. v. Modern Day Construction, Inc.*, as follows:

> "Copying" is regularly used as a shorthand to refer to the infringement of a copyright holder's exclusive rights under a copyright. The "right to reproduce a copyrighted work" means the right to produce a material object in which the copyrighted work is duplicated, transcribed, imitated, or simulated in a fixed form from which it can be perceived, reproduced or otherwise communicated either directly or with the aid of a machine or device. . . . Clause (3) of section 106 establishes the exclusive right of publication: The right to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending.

773 F. Supp. 2d 1288, 1299 (M.D. Fla. Feb. 22, 2011) (internal quotations and citations omitted).

level of protected expression." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012).

## A. A Comparison of the Articles Shows Neither "Copying" nor "Substantial Similarity."

A cursory comparison of Elite's Women's Heart Disease Article and NetCE's Pharmacology Article reveals that Elite's article is not "a blatant copy" of NetCE's article. (*Compare* DE 93-6 *with* DE 93-7; *see also* Plagiarism Checker X Originality Report ("Originality Report"), attached hereto as Exhibit A). As such, in order for NetCE to prevail on its infringement claim, it must prove, *inter alia*, that Elite's Women's Heart Disease Article is "substantially similar" to NetCE's Pharmacology Article. *See Oravec*, 527 F.3d at 1223. As explained in further detail below, Elite is entitled to judgment as a matter of law because there is no similarity of protectable expression between the two articles, much less substantial similarity. This lack of substantial similarity is determinative of NetCE's claim. *See Beal*, 20 F.3d at 460 ("[F]inding similarity" is a "necessity" in order to prevail on a copyright infringement claim.).

In copyright infringement cases where "the crucial issue is substantial similarity," the Eleventh Circuit has held that "non-infringement may be determined as a matter of law" if the "similarity between two works concerns only non-copyrightable elements … or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Miller Ale's House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1378 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312. This is because "the 'substantial-similarity' test is more often correctly administered by a judge rather than a jury," as "the ability to separate protectable expression from non-protectable expression is, in reality, a question of law," and a judge will more readily understand that not all copying constitutes infringement. *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008) (finding that a judge is better

9

able to determine substantial similarity "particularly in the context of works that are compilations").

Accordingly, it is appropriate for this Court "to determine whether the works are substantially similar and, therefore, whether [NetCE] can plausibly demonstrate entitlement to relief" on a claim for copyright infringement. *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1350 (S.D. Fla. 2014); *cf. Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1263 (11th Cir. 1999) (affirming no substantial similarity as a matter of law); *Beal v. Paramount Pictures*, 806 F. Supp. 963, 967 (N.D. Ga. 1992), *aff'd*, 20 F.3d 454 (same); *accord Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123 (C.D. Cal. 2015) (granting judgment on the pleadings on copyright infringement claim because the two works lacked substantial similarity as a matter of law); *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538 (S.D.N.Y. 2013) (granting declaratory judgment on the pleadings of noninfringement because no substantial similarity as a matter of law).

Despite NetCE's conclusory allegations of substantial similarity, "the works themselves supersede and control any contrary allegations of the parties." *Sharpshooters, Inc. v. Retirement Living Publ'g Co.*, 932 F. Supp. 286, 288 (S.D. Fla. 1996); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2nd Cir. 2010) ("[T]he works themselves supersede and control contrary descriptions of them … including 'any contrary allegations conclusions or descriptions of the works contained in the pleadings.'") (quoting 3-12 Nimmer on Copyright § 12.10). This Court need not look beyond "its own comparison" of the two articles, and "the side-by-side comparisons" provided by Elite to determine that, as a matter of law, there is no substantial similarity between Elite's Women's Heart Disease Article and NetCE's Pharmacology Article. *Sieger*, 998 F. Supp. 2d at 1349 ("Eleventh Circuit opinions concerning substantial similarity …

have based their analysis upon a comparison of the works" and "no expert testimony or other evidence was relied upon."). A low percentage of similarity may be probative of the lack of substantial similarity, but "[t]he extent of copying must be assessed with respect to both the quantitative and qualitative significance of the amount copied to the copyright work as a whole." *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1307 (11th Cir. 2008).

To highlight the differences between the two articles quantitatively, Elite performed a computerized analysis comparing the two articles with Plagiarism Checker X's ("Checker X") "Side by Side Comparison" feature, using a match limit of 5, to generate the Originality Report (Ex. A).[4] The Originality Report shows that not only are there no copied sections, the two articles do not have even a single sentence in common. The percentage of overlap between the words used in NetCE's Pharmacology Article and Elite's Women's Heart Disease Article is incredibly low, to the point that only common, non-copyrightable words and phrases appear in both.[5] *See Lil' Joe Wein Music, Inc. v. Jackson*, 245 Fed. Appx. 873, 879-80 (11th Cir. 2007)

---

[4] Checker X is an award-winning plagiarism software used by academic institutions, such as Duke University and Ohio University, to detect plagiarism in research papers, assignments, and websites. (*See* Checker X's website, located at https://plagiarismcheckerx.com, for additional information on the Checker X software.).

Checker X's Side by Side Comparison feature detects plagiarism between two documents by comparing the two relative to each other, and cross-checking for duplication based on the set "match limit". The match limit is the number of consecutive words Checker X compares between the two documents—*i.e.*, with a match limit of 5, every five words in NetCE's Pharmacology Article is searched for in Elite's Women's Heart Disease Article, and any duplicated words are shown in highlight. (*See* Checker X's Side by Side Comparison Help page, located at https://plagiarismcheckerx.com/help/side-by-side-comparison, for additional information on the Side by Side Comparison feature.).

[5] For example, the Originality Report shows that the two articles have the following words/phrases in common: "signs and symptoms"; "increase in the risk of"; "is important to note that"; "leading cause of death"; "major risk factor for". (*See generally* Ex. A, words/phrases in highlight).

11

(affirming summary judgment of noninfringement where only "common, unoriginal, and noncopyrightable" phrases, such as "Go ___. its your birthday" and "Go, go, go, go", were shared); *see also BellSouth Adver. & Publ. Corp. v. Donnelley Info. Publ., Inc.*, 999 F.2d 1436, 1443-45 (11th Cir. 1993) (Obvious labels or headings resulting from industry standards "lack the requisite originality for copyright protection.").

  Qualitatively, the dissimilarities between the two articles are extreme. The Court need look no further than the stark difference in the subject matter of the articles to verify this point. NetCE's Pharmacology Article covers drug-specific concepts related to the clinical treatment of cardiovascular disorders, while Elite's Women's Heart Disease Article covers general concepts related to heart disease in women. The simple fact that both might deal generally with heart-related issues, without more, is not enough to show substantial similarity in protectable expression. It is a "fundamental axiom" of copyright law that "copyright protection does not extend to ideas but only to particular expressions of ideas." *Oravec*, 527 F.3d at 1224. Accordingly, even when two works discuss the same "underlying idea or concept," there is no substantial similarity if the "expression of [the] idea is not substantially similar." *Palmer*, 155 F. Supp. 2d at 1333. Conversely, given that a particular expression depends on the underlying idea it embodies and conveys, courts have found that there must also be substantial similarity "of the general ideas" underlying "the expressions of those ideas" for a finding of copyright infringement. *Sid & Marty Krofft TV Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (11th Cir. 1977); *see also Beal*, 20 F.3d at 461 (affirming noninfringement as a matter of law where there were "great differences in expression, as well as differences in ideas"); *cf. Parker v. Dufresne*, 781 F. Supp. 2d 379, 385 (W.D. La. 2011) (finding substantial similarity unlikely where manuscripts referred to same event

12

but conveyed different ideas); *Coston v. Product Movers*, 1990 U.S. Dist. LEXIS 5203, at *12 n.8 (E.D. Pa. May 1, 1990) (considering whether two works expressed similar ideas).

The distinct differences in the actual subject matters of the two articles is further shown by the fact that the references listed at the end of each are completely different. Indeed, out of the 614 references cited between the two articles—336 references in NetCE's Pharmacology Article and 278 references in Elite's Women's Heart Disease Article—there is not <u>one single reference in common</u>. (*Compare* DE 93-6, pp. 155-173 *with* DE 93-7, pp. 28-31; *compare* Ex. A, pp. 152-169 *with* Ex. A, pp. 226-239). Even the learning objectives at the beginning of both articles are unalike. (*Compare* DE 93-6, pp. 2-3 *with* DE 93-7, p. 2; *compare* Ex. A, pp. 2-3 *with* Ex. A, p. 170). Not only is the expression of the ideas covered by the two articles different, but even the ideas underlying the two articles are not the same, which further demonstrates that there is no substantial similarity between NetCE's Pharmacology Article and Elite's Women's Heart Disease Article.

In *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538, a similar action for a declaratory judgment of noninfringement involving two screenplays, the plaintiff moved for a judgment of noninfringement on the pleadings. The court in *Effie* conducted a substantial similarity analysis by first reading the two screenplays at issue, and then comparing the two works using its "good eyes and common sense." *Id*. at 554 (citing *Gaito*, 602 F.3d at 66). Upon reading both works, the *Effie* court made the following "three most obvious [and most important] observations" between the two works:

> The two works have no dialogue in common, no characters in common that are not historical figures, and though they contain the same settings (a similarity attributable to their shared historical background) the two screenplays give these episodes vastly differing levels of attention. The result is two works narrating the same basic events but with greatly differing internal structures.

13

*Id*. at 556. Based on this comparison, the *Effie* court granted the plaintiff's motion for judgment on the pleadings finding that the two works were "not substantially similar," and as such, the plaintiff's screenplay "does not infringe [the defendant's] copyright…." *Id*. at 560.

Similarly, in *Segal v. Rogue Pictures*, 2011 U.S. Dist. LEXIS 157933 (C.D. Cal. 2011), *aff'd*, 544 Fed. Appx. 769 (9th Cir. 2013), a copyright infringement case involving a screenplay and a movie, the court determined the lack of substantial similarity on the pleadings by reviewing the two works at issue, and comparing their respective plots, sequence of events, theme, mood and pace, and dialogue. *Id.* at *7-20. The *Segal* court found that the defendants were entitled to judgment on the pleadings on the copyright claim because the only similarities between the two works were "generic and common" elements—for example, both works had a female protagonist with a supportive boyfriend—"not entitled to copyright protection," and without similarity at the level of protected expression, there is no substantial similarity as a matter of law. *Id.* The Ninth Circuit affirmed the judgment on the pleadings finding that "[a]n objective comparison of the [two works] reveals that these works are not substantially similar under any standard." *Segal*, 544 Fed. Appx. at 770.

Finally, in *Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123 (C.D. Cal. 2015), the court likewise determined the issue of substantial similarity on the pleadings by examining "the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" of the two screenplays at issue, and "identify[ing] articulable similarities between them." *Id*. at 1151. The *Shame on You* court found that the only similarities between the two works were either elements not entitled to protection, such as scènes-à-faire, or *de minimis*, where only limited exchanges of dialogue were the same. *Id*. at 1152, 1156 (finding quantitatively low amount of overlap in dialogue insufficient because there must be "extended similarity of dialogue" to establish substantial similarity)

14

(internal quotations omitted).  Accordingly, the *Shame on You* court found that the defendants were "entitled to judgment on the pleadings" because "the two works lack[ed] substantial similarity in protectable expression as a matter of law." *Id*. at 1172.

An examination here of the pleadings and documents attached thereto, using "good eyes and common sense," shows that Elite's Women's Heart Disease Article is neither a blatant copy of nor substantially similar to NetCE's Pharmacology Article, and Elite respectfully requests that the Court grant judgment on the pleadings on Elite's First Counterclaim for Declaratory Judgment of Noninfringement of "Cardiovascular Pharmacology" Article.[6]

### B.   Neither Discovery nor Continued Litigation is Necessary to Render Judgment of Noninfringement of the Pharmacology Article.

Courts are not required to look beyond the pleadings and any documents referenced therein "in order to apply the legal standard of copyright infringement" and, as this Court has found, the question of substantial similarity can be determined "upon a comparison of the works in question," even on a Rule 12 motion.  *Sieger*, 998 F. Supp. 2d at 1349 (finding it appropriate to determine substantial similarity as a matter of law on a Rule 12 motion because "courts evaluating substantial similarity need only consider a comparison of the works in question") (citing *Gaito*, 602 F.3d at

---

[6] This lack of similarity is also dispositive of any potential claim by NetCE that the Women's Heart Disease Article is a "derivative work" of the Pharmacology Article.  While the right "to prepare derivative works based upon the copyrighted work" is one of the exclusive rights granted to a copyright owner, *see* 17 U.S.C.§ 106(2), "a derivative work must **incorporate a substantial element** of a preexisting work of authorship and recast, transform, or adapt those elements." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (citation omitted) (emphasis added); *accord Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) ("The district court was correct in determining that Kohus cannot succeed on his derivative claim if the Defendants' drawings are not substantially similar to his."); *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("[Plaintiff] apparently believes that she does not have to show substantial similarity to show that [the accused work] is a derivative work.  [Plaintiff] cites no authority to support this novel proposition.  The little available authority suggests that a work is not derivative unless it has been substantially copied from the prior work.").

15

64); *see also Effie*, 932 F. Supp. 2d at 554 ("[S]o long as it has all the necessary facts before it, it is appropriate for the court to reach a decision on substantial similarity as a matter of law at the pleadings stage.").

While "[c]onsidering the question at this stage may result in keeping the issue of substantial similarity from a jury," this Court has held that "[s]uch a practice is permissible" when the works in question are attached to the pleadings "because the court has before it all that is necessary in order to make such a determination." *Id.* at 1350 (citing *Gaito*, 602 F.3d at 63-65); *see also Heritage Homes*, 825 F.3d at 1322 (Substantial similarity "is, in reality, a question of law" better suited for a judge.); *accord Effie*, 932 F. Supp. 2d at 554 ("Substantial similarity is a legal concept … [and] it is appropriate for the court to reach a decision on substantial similarity as a matter of law at the pleadings stage."). This Court has before it all that is needed—namely, the Pharmacology Article and the Women's Heart Disease Article—to make a comparison between the two articles and determine "the crucial issue [of] substantial similarity," or lack thereof. *Id.* The Court need not rely on "expert testimony or other evidence" to evaluate or compare the two articles, and no additional litigation or discovered facts will change either the content of the articles or the objective comparison between them showing that there is no substantial similarity. *Id.* at 1349. Thus, a declaratory judgment of noninfringement on the pleadings is warranted here, where "no amount of proof … will suffice to show copy[right infringement]" in view of the lack of substantial similarity. *Segal*, 544 Fed. Appx. at 770 (affirming judgment on the pleadings of noninfringement because none of the remaining factual disputes can establish "copying if there are no similarities").

## **CONCLUSION**

In view of the foregoing, Elite respectfully requests that the Court grant judgment on the pleadings on Elite's First Counterclaim for Declaratory Judgment of Noninfringement of "Cardiovascular Pharmacology" Article.

Dated: September 25, 2017

Respectfully submitted,

/s/ Peter A. Chiabotti
Peter A. Chiabotti
Florida Bar No. 0602671
AKERMAN LLP
peter.chiabotti@akerman.com
777 South Flagler Driver
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
MOORE & VAN ALLEN PLLCS
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159

*Attorneys for Third Party Defendant Elite Continuing Education, Inc.*

**Certificate of Service**

      I hereby certify that on September 25, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                              /s/ Peter A. Chiabotti
                                                             Peter A. Chiabotti

**Service List**

Richard S. Ross, Esq.
Atrium Centre
4801 S. University Drive
Suite 237
Fort Lauderdale, FL 33328
Email: prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*

Philip E. Rothchild, Esq.
Holland & Knight LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Email: phil.rothschild@hklaw.com
*Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE*

John P. Kern, Esq.
Jessica E. Lanier, Esq.
Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Email: john.kern@hklaw.com
       jessica.lanier@hklaw.com
*Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE*

Peter A. Chiabotti
Florida Bar No. 0602671
Akerman LLP
peter.chiabotti@akerman.com
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
*Attorney for Third Party Defendant Elite Continuing Education, Inc.*

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
*Attorneys for Third Party Defendant Elite Continuing Education, Inc.*

42899293;2