UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:15-CV-61165-WPD

DR. JASSIN JOURIA,

                    Plaintiff,
v.
CE RESOURCE, INC. d/b/a
CME RESOURCE and NetCE,
                    Defendant.
_____/
CE RESOURCE, INC. d/b/a
CME RESOURCE and NetCE,

     Defendant/Counter-Plaintiff,
v.
DR. JASSIN JOURIA,
     Plaintiff/Counter-Defendant.
_____/
CE RESOURCE, INC. d/b/a
CME RESOURCE and NetCE,

     Defendant/Third Party Plaintiff,
v.
Elite Continuing Education, Inc.
and Alpine Management Services, III,
LLC,

          Third Party Defendants.
_____/

VIDEOTAPE DEPOSITION OF
DR. JASSIN JOURIA
Pages 1 through 297
Confidential, Attorneys' Eyes Only

Thursday, September 28, 2017
9:49 a.m.
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, Florida
Stenographically Reported By:
Debra L. Stark, Notary Public State of Florida

```
 1    APPEARANCES:

 2     ON BEHALF OF THE PLAINTIFF: DR. JASSIN JOURIA

 3         RICHARD S. ROSS, ESQ.
           4801 S. University Drive
 4         Suite 237
           Ft. Lauderdale, Florida  33328
 5         PRODP@IX.NETCOM.COM

 6     ON BEHALF OF THE DEFENDANT/
       COUNTER-PLAINTIFF/THIRD PARTY DEFENDANT CE
 7     RESOURCE, INC. d/b/a CEM RESOURCE and NetCE:

 8         HOLLAND & KNIGHT, LLP
           50 California Street
 9         Suite 2800
           San Francisco, CA  94111
10         415-743-6918
           JOHN.KERN@HKLAW.COM
11         BY: JOHN P. KERN, ESQ.
                    and
12             JESSICA E. LANIER, ESQ.

13     ON BEHALF OF THE THIRD PARTY DEFENDANT:
       ELITE CONTINUING EDUCATION, INC.
14
           MOORE & VAN ALLEN, PLLC
15         100 North Tyron Street
           Suite 4700
16         Charlotte, NC  28202
           MARKWILSON@MVALAW.COM
17         BY: J. MARK WILSON, ESQ.
                    and
18             KATHRYN G. COLE, ESQ.

19
     ALSO PRESENT:
20
           Jason Cooper, Videographer
21

22

23

24

25
```

```
1              I N D E X

2    DR. JASSIN JOURIA

3    DIRECT EXAMINATION BY MR. KERN          10
     CROSS EXAMINATION BY MS. COLE          204
4    REDIRECT EXAMINATION BY MR. KERN       281
     RECROSS-EXAMINATION BY MS. COLE        288
5    REDIRECT EXAMINATION BY MR. KERN       290

6              E X H I B I T S

7    No.       Description                  Page

8    1    Notice of Taking Deposition        9

9    2    Certificate from Ross University   28

10   3    State of Florida, Department of    35
          Health, Division of Medical Quality
11        Assurance Document

12   4    Jackson Memorial Hospital, University  35
          of Miami, resident in General Surgery
13        Certificate

14   5    Educational Commission for Foreign  35
          Medical Graduates Certificate
15
     6    Curriculum Vitae                   35
16
     7    Complaint                          42
17
     8    NetCE's Request for Production of  47
18        Documents

19   9    Response to Request for Documents  53

20   10   Plaintiff's Resonse to NetCE's     58
          Interrogatories
21
     11   Freelance Writer Agreement         73
22
     12   Cancer and Chemotherapy:   A       84
23        Comprehensive Review Article

24   13   Contract for Article on            94
          Gastroesophageal Reflux Disease
25
```

4

| No. | Description | Page |
|---|---|---|
| 14 | Article on Gastroesophageal Reflux Disease | 95 |
| 15 | Contract for Article on Traumatic Brain Injury | 99 |
| 16 | Article on Traumatic Brain Injury | 99 |
| 17 | Contract for Clinical Cardiovascular Pharmacology | 99 |
| 18 | Article on Clinical Cardiovascular Pharmacology | 100 |
| 19 | Contract for Article on Lymphatic and Immune System | 100 |
| 20 | Article on Lymphatic and Immune System | 100 |
| 21 | Contract for Article on Non-Antibiotic Antimicrobial Pharmacology | 100 |
| 22 | Article on Non-Antibiotic Antimicrobial Pharmacology | 101 |
| 23 | Contract for Article on Depression and Dementia in the Elderly | 101 |
| 24 | Article on Depression and Dementia in the Elderly | 101 |
| 25 | Checks and Wire Transfers from NetCE | 108 |
| 26 | E-Mail Chain | 110 |
| 27 | Signed Independent Contractor Agreement with Elite | 130 |
| 28 | Unsigned Independent Contractor Agreement with Elite | 131 |
| 29-A and 29-B | Article titled "Non-Antibiotic Antimicrobial Pharmacology" | 147 |

| No. | Description | Page |
|-----|-------------|------|
| 30-A and 30-B | Article titled "Depression versus Dementia in the Elderly" | 148 |
| 31-A and 31-B | Article titled "Cancer and Chemotherapy" | 148 |
| 32 | Article titled "Traumatic Brain Injury" | 149 |
| 33 | Article titled "Gastroesophageal Reflux Disease" | 149 |
| 34 | Article titled, "The Basics of Pathophysiology" | 135 |
| 35 | Writing for Nursing Continuing Education Courses Job Posting | 182 |
| 36 | Proposal from MedCreds, | 183 |
| 37 | E-Mail Chain | 184 |
| 38 | Correspondence with Sarah Campbell Regarding Immune Lymphatic System | 195 |
| 39 | E-Mail Chain with Sarah Campbell | 196 |
| 40 | E-Mail Chain, Jouria to Campbell | 198 |
| 41 | April 6, 2012 E-Mail, Campbell to Jouria | 199 |
| 42 | Defendant's Amended Answer to Complaint | 208 |
| 43 | E-Mail Chain | 212 |
| 44 | January 30, 2013 Independent Contractor's Agreement | 216 |
| 45 | E-Mail Correspondence with Tracey Foster | 219 |
| 46 | E-Mail Chain with Elite | 224 |

No.          Description                                Page

47     E-Mail Correspondence with Tracey          237
       Foster

48-    Initial Set of Articles Submitted to       245
57     Elite

58     Clinical Cardiovascular Pharmacology       253
       Article

59     Article titled, "Cardiovascular            255
       Disease is the Leading Cause of Death
       in Women"

60     Plagiarism Checker X Originality           258
       Report

61     Plagiarism Checker X Report                263

62-    New Articles Submitted to Elite            --
70                                                269


     Reporter's Note:   (Exhibits retained by attorney)

1      Deposition taken before DEBRA L. STARK,

2  Florida Professional Reporter, Notary Public

3  in and for the State of Florida at Large.

4      THE TECHNICIAN:  Good morning.  We are

5  now on the video record.  Today is Thursday,

6  September 28, 2017.  The time is 9:49 A.M.

7      We are here at 515 East Las Olas

8  Boulevard, Suite 1200, Ft. Lauderdale,

9  Florida, for the purpose of taking the video

10  deposition of Dr. Jassin Jouria, Case No.

11  0:15-CV-61165-WPD, Dr. Jassin Jouria versus

12  CE Resource, Inc., et al.  This is filed in

13  the U.S.  District Court, Southern District

14  of Florida.

15      The court reporter is Debbi Stark.  The

16  videographer is Jason Cooper.

17      Would all counsel present please state

18  their appearance for the record.

19      MR. ROSS:  Richard Ross on behalf of

20  plaintiff, Dr. Jouria.

21      MR. WILSON:  Mark Wilson from Moore &

22  Van Allen here of behalf of Elite Professional

23  Education.

24      MS. COLE:  Kate Cole from Moore & Van

25  Allen, also here on behalf of Elite.

1        MR. KERN:  John Kern, and I am joined

2    today by my colleague Jessie Lanier with

3    Holland & Knight.  We represent the defendant

4    and counter-plaintiff, CE Resource now doing

5    business as NetCE.

6        THE COURT REPORTER:  Please raise your

7    right hand.

8        Will you swear or affirm the testimony you

9    are about to give in this cause is the truth,

10   the whole truth and nothing but the truth, so

11   help you God?

12       THE WITNESS:  I do.

13       THE REPORTER:  Thank you.

14       MR. KERN:  Good morning.

15       MR. ROSS:  May I, first?

16       MR. KERN:  Please, go ahead.

17       MR. ROSS:  Thank you.  Dr. Jouria is here

18   pursuant to a notice of taking deposition

19   issued by NetCE, CE Resource.  The notice, and

20   I am going to have this marked as Plaintiff's

21   Exhibit 1, if I may out of turn, states that

22   the examination shall be before a court

23   reporter and further states, "NetCE reserve

24   the right to videotape this deposition."

25       It is Dr. Jouria's position that that

1        I noticed just now in the beginning as we

2    talk you are doing a lot of nodding and there is

3    some uh-huh and uh-uh, and I understand, and

4    that's all typical in a conversation between two

5    people?  However, I just would remind you that we

6    are on the record, it is being videotaped --

7        A.   Yes, sir.

8        Q.   -- and more importantly, the court

9    reporter is writing down everything we say.

10       A.   Yes, sir.  Understood.

11       Q.   Okay.  Hang on a second.  I'm not sure if

12   you do, because what is happening right now is we

13   are talking over each other, and although you are

14   doing it to ease the conversation and make it

15   clear that you understand, it is difficult for

16   her to create a record where it says Mr. Kern, he

17   says this, and Dr. Jouria, you responded.

18       So if we can make a really, really

19   conscious effort to wait for me to complete my

20   statement or my question, and then pause and then

21   you provide your answer, that will allow the

22   court reporter to make a clean record.  Do you

23   understand?

24       A.   Understood.  I will do my best.

25       Q.   Thank you.  And I will screw up also, so

1    don't worry.

2         Have you ever been involved in a lawsuit

3    prior to the instant case?

4         A.    Yes.

5         Q.    Can you describe, and if there are more

6    than one, can you tell me the first time you were

7    ever involved in a lawsuit?

8         A.    There was only one lawsuit and it was

9    with ECFMG.

10        Q.    Who is ECFMG?

11        A.    It's the Education Council For Foreign

12   Medical Graduates.

13        Q.    And what does the Education Council for

14   Foreign Medical Graduates do?

15             MR. ROSS:   Objection, relevance.

16             THE WITNESS:   They are an education

17   committee that I guess ensures foreign

18   medical graduates receive the same medical

19   education that United States graduates do.

20   BY MR. KERN:

21        Q.    And are they located in the United States,

22   if you know?

23        A.    I don't know.

24             MR. ROSS:   Continuing objection as to the

25   relevancy on the subject.

1   BY MR. KERN:

2       Q.   And what was the nature of that lawsuit?

3       A.   Is it relevant to this case?  I don't

4   feel like I need to answer that.

5       Q.   You are obligated to answer the question.

6       A.   I don't think it's relevant.

7       Q.   I understand.  Your attorney just make a

8   relevance objection, now you are obligated to

9   answer the question.

10           MR. ROSS:  Objection.  Answer the question

11   how you want to answer the question.

12           THE WITNESS:  What was the question?

13   BY MR. KERN:

14       Q.   What was the nature of that lawsuit?

15       A.   I'm not sure what nature --

16       Q.   That's fair.  And again, you flagged

17   something that is an important instructional

18   moment for both us of us.  If I ask you a

19   question, which is not clear or vague, you are

20   perfectly at liberty to ask me to rephrase it

21   as many times as necessary until it's clear to

22   you.  I don't, in any circumstance, want you to

23   answer a question where you are guessing what I

24   meant --

25       A.   Sure.

1    Q.    -- or speculating what I meant.

2    A.    Yes, sir.

3    Q.    So what I mean by that is, did you sue

4    ECFMG, did ECFMG sue you, did it not involve the

5    bringing of a lawsuit?  That's what I mean by what

6    is the nature.

7         And then the followup question I would

8    ask would be what were the underlying claims in

9    the case.

10         So starting with the first one, were you

11    the plaintiff or the defendant in the case?

12         MR. ROSS:  Objection, irrelevant to this

13    matter.

14         Do you have any relevancy to this case,

15    John.

16         THE WITNESS:  It's irrelevant, John.

17 BY MR. KERN:

18    Q.    I understand.  He has made the objection

19    and later he will be able to convince the judge

20    that it doesn't need to be brought before a trier

21    of fact.  My question to you is, what was the

22    nature of the lawsuit, you're obligated to

23    answer.

24         MR. ROSS:  Objection.  The witness was

25    asked and answered the question.  He thinks

1    it is irrelevant.  He is obviously not

2    choosing to answer your question.

3         MR. KERN:  Mr. Ross, as you know, he is

4    not entitled to not answer a question based on

5    relevance.  I would now ask him to answer the

6    question.

7         MR. ROSS:  Well, you're not the judge.  I

8    have interposed my objection.  You've asked

9    the question three times.  He's answered it

10   three times.  He considers the question

11   irrelevant.

12        Please feel free to continue.

13        MR. KERN:  Mr. Ross, you are Dr. Jouria's

14   counsel.  You have an obligation to explain

15   to him that relevance is not a proper

16   discovery objection.  It's not a grounds for

17   suppressing discovery testimony.  So I will

18   ask the question again.

19   BY MR. KERN:

20        Q.   Dr. Jouria, understanding your counsel

21   has reserved the right to suppress this from ever

22   being heard outside of this room with a

23   meritorious argument we can make to a judge

24   later, this is discovery, what was the nature of

25   the lawsuit with ECFMG?

1          MR. ROSS:   Same objection.   Irrelevance.

2     Asked and answered.

3          THE WITNESS:   It's still relevant.

4  BY MR. KERN:

5     Q.    And what's the answer to the question?

6     A.    That it's irrelevant to the case.

7          MR. KERN:   Please mark the record for

8     purposes of bringing a motion to compel a

9     response to the question.

10 BY MR. KERN:

11    Q.    Other than the lawsuit involving ECFMG,

12    have you ever been involved in any other

13    lawsuits?

14    A.    No.

15    Q.    The -- if I could ask you again to refer

16    to Exhibit 1, the deposition notice, I would just

17    represent to you that this is a, what is called a

18    personal testimony deposition, that's contrasted

19    with some type of corporate representative

20    deposition, that means that the testimony I'm

21    seeking today is asking you to provide testimony

22    only on things about which you have firsthand

23    knowledge.

24          Do you understand that?

25    A.    Yes.

1    Q.    So if I were to ask you a question where

2    you needed to speculate or guess what somebody

3    else was thinking or what motivated some other

4    party, that would not be the type of testimony I

5    am asking for.

6         Do you understand that?

7    A.    Yes, sir.

8    Q.    And there may be questions I ask you that

9    require you to estimate, for instance, a time

10   length or an amount of money or an amount of words

11   in a course that you drafted.  In those instances,

12   it's perfectly acceptable for you to provide me a

13   range; however, again, I don't want you to

14   speculate.

15        Do you, sitting here today, feel you know

16   the difference between an estimate and

17   speculation?

18   A.    Yes.

19   Q.    Terrific.  Is there any reason that you

20   feel you can't provide your best testimony today?

21   A.    No.

22   Q.    And are you currently taking any

23   medications, for instance, that might affect your

24   memory or ability to testify?

25   A.    No.

```
1          (A recess was had in the proceedings

2      after which the following proceedings were

3      had:)

4          THE TECHNICIAN:  We are back on the video

5      record.  The time is 3:52.

6                CROSS EXAMINATION

7  BY MS. COLE:

8      Q.    Good afternoon, Dr. Jouria.

9      A.    Good afternoon.

10      Q.    I introduced myself earlier.  My name is

11  Kate Cole.  I represent third party defendant,

12  Elite, in this matter.

13      A.    Okay.

14      Q.    I'm going to ask you a handful of

15  followup questions based on what Mr. Kern asked

16  today and some of the topics we've talked about.

17  As we get started, can you pull out Exhibit 7 from

18  your stack?

19      A.    Of course.

20            Okay.

21      Q.    Mr. Kern marked this exhibit earlier.  It

22  appears to be the Complaint for Declaratory

23  Judgment that was filed on your behalf in this

24  case; is that right?

25      A.    Yes.
```

1          MR. KERN:  Okay.  So let me just state

2    for the record that this is clearly something

3    that undoubtedly somebody from Holland &

4    Knight marked up.  It's not the file copy and

5    we will be happy to, prior to circulating to

6    the court reporter, if it's to everyone's

7    satisfaction, to replace this with the ECF

8    version.

9          MR. WILSON:  It's fine.

10         MR. KERN:  No, I mean, only because I --

11   just for future use I'd hate for someone to

12   accidentally then file it.

13         MS. COLE:  I mean, I think we can all

14   access the as-filed version, I just didn't

15   have a copy of that with me today, so I wanted

16   to understand what that  was.

17         MR. KERN:  Understood, and I do apologize.

18         MR. ROSS:  No apology is necessary.

19         MR. KERN:  That is similar to the type of

20   notes, unintelligent notes I take on things.

21   It's not actually my writing.

22   BY MS. COLE:

23        Q.   Dr. Jouria, one of the topics of

24   questioning earlier today was about your education

25   and credentials.

1          Do you remember that questioning?

2     A.   Yes, somewhat.

3     Q.   So to be clear on this, you attended

4 college?

5     A.   Yes.

6     Q.   You then attended medical school?

7     A.   Yes.

8     Q.   You passed your board exams?

9     A.   Yes, all of them.

10     Q.   You have an M.D.?

11     A.   Yes.

12     Q.   You completed an internship?

13     A.   Yes.

14     Q.   You completed a residency?

15     A.   Yes.

16     Q.   You are licensed to practice medicine in

17 Florida?

18     A.   Yes.

19     Q.   You are licensed to practice medicine in

20 Indiana?

21     A.   Yes.

22     Q.   And in fact, you are now an emergency

23 room physician; is that right?

24     A.   That's correct.

25          MS. COLE:  I would like to mark as an

1    Exhibit 42.

2         (Thereupon, Deposition Exhibit No. 42,

3    Defendant's Amended Answer to Complaint, was

4    marked for identification.)

5         MR. ROSS:  Thank you.

6         THE WITNESS:  Thank you.

7    BY MS. COLE:

8    Q.   Dr. Jouria, this is printed double-sided.

9    If you flip to the second page you see this is

10   Defendant's Amended Answer to the Complaint.  I

11   can represent to you that this is a pleading that

12   NetCE filed in this case.

13   A.   Okay.

14   Q.   Do you have any reason to disagree with

15   that?

16   A.   No.

17   Q.   If you can turn to page 17 of this

18   document?

19   A.   Okay.

20   Q.   Paragraph 30, I am going to read that.

21   It says, "On information and belief, because he

22   has not completed a residency, Dr. Jouria is not

23   a licensed, certified or practicing physician in

24   the United States."

25        Did I read that -- did I read that

1  correctly?

2      A.    You read it correctly.

3      Q.    **That's not true, is it?**

4      A.    That's not true.

5      Q.    **Earlier today you testified about your**

6  **first communications with Elite.**

7            **Do you remember that testimony?**

8      A.    Yes.

9      Q.    **How did Elite find out about you?**

10     A.    I think it was through Elance.  Elance

11  Odesk.

12     Q.    **Did Elite reach out to you directly?**

13     A.    No.  I think I responded to that

14  posting, I think that was the first form of

15  communication.

16     Q.    **So you reached out to Elite?**

17     A.    Yes.

18     Q.    **If we can pull out Exhibits 35 and 36.**

19     A.    35 and 36, yes.

20     Q.    **Exhibit 35 is Elite's job posting on**

21  **Elance for a Writer for Nursing Continuing**

22  **Education Courses; correct?**

23     A.    It doesn't state who it's from, but

24  I -- it is a job posting for continuing nursing

25  education, yes.  I don't think it says who it is

1    shared content of various courses.

2        A.   Uh-huh.

3        Q.   Just to be clear for the record, that is

4    not based on any kind of technical comparison,

5    that would be where a software was employed; this

6    was essentially you doing a very close -- close

7    analysis yourself?

8        A.   This was a self-analysis.

9        MR. KERN:   Okay.  Thanks very much.

10   That's my final question.  Thank you.

11       MS. COLE:   Nothing else from me, either.

12       THE TECHNICIAN:   We are going off the

13   record.  The time is -- excuse me.

14       MR. ROSS:   We will read.

15       THE TECHNICIAN:   Going off the record, the

16   time 6:02.  Excuse me.

17       MR. ROSS:   Thank you.

18       MR. KERN:   This is the key, I am in charge

19   of the official ones, right?  I am going to

20   redact -- we are done.

21       MS. COLE:   We want an e-tran.

22

23       (Thereupon, a discussion was had off the

24   record after which the following proceedings

25   were had:)

1

2          (Reading and signing of the deposition

3     was not waived by the witness and all of the

4     parties.)

5

6          (Thereupon, the above proceedings were

7     concluded at 6:08 p.m.)

8

9                    ----------

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    October 1, 2017

2

3

4    DR. JASSIN JOURIA
     c/o RICHARD ROSS
5    4801 S. University Drive
     Suite 237
6    Ft. Lauderdale, Florida  33328

7    In Re: DR. JASSIN JOURIA

8    Deposition/Statement, taken on
     September 28, 2017

9

10

11   The transcript of the above-referenced
     proceeding has been prepared and is ready to
12   be reviewed at the below office of US Legal
     Support.

13

14   we respectfully request that the witness
     complete their review within 30 days or date
15   of contact.

16

17   Sincerely,

18

19   Debra L. Stark, Court Reporter
     U.S. Legal Support, Inc.
20   100 Northeast Third Avenue
     Fort Lauderdale, Florida  33301
21   (954) 463-2933

22

23

24

25

```
1                        ERRATA SHEET
                 DO NOT WRITE ON THE TRANSCRIPT
2                 ENTER CHANGES ON THIS PAGE
                    IN RE: DR. JASSIN JOURIA
3
                       DR. JASSIN JOURIA
4

5

6
       |Page  |Line  |Change                    |Reason
7

8     _____

9     _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18

19
              Under penalties of perjury, I
20    declare that I have read the foregoing
      document and that the facts stated in it are
21    true.

22

23

24    _____

25    DR. JASSIN JOURIA
```

295

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                        CERTIFICATE OF OATH

2

3    STATE OF  FLORIDA:

4    COUNTY OF BROWARD:

5

6            I, DEBRA L. STARK, Court Reporter and

7    Notary Public, in and for the State of Florida

8    at  Large, do hereby certify that DR. JASSIN JOURIA

9    personally appeared before me on

10   September 28, 2017, and was duly sworn.

11            Signed and sealed heretofore on this

12   day of October 1, 2017.

13

14

15

16

17

18

19

20                           _____
                             DEBRA L. STARK, Court Reporter
21                           and Notary Public, State of
                             Florida at Large
22

23

24   MY COMMISSION EXPIRES:
     March 28, 2017
25

1                    CERTIFICATE

2   STATE OF  FLORIDA:

3   COUNTY OF  BROWARD:

4          I, DEBRA L. STARK, Registered

5   Professional Reporter, certify that I was

6   authorized to and did stenographically report

7   the deposition of DR. JASSIN JOURIA; duly

8   sworn by me; pages 1 through 297; and that

9   the transcript      is a true record of my

10  stenographic notes.

11         I further certify that I not a relative,

12  employee, attorney, or counsel of any of the

13  parties, nor am I a relative or employee of

14  any of the parties' attorneys or counsel connected

15  with the action, nor am I financially interested

16  in the action.

17         Signed and sealed on this date of,

18  October 1, 2017.

19

20

21         _____

           DEBRA L. STARK, Court Reporter
22         and NOTARY PUBLIC, State of Florida
           at Large
23

24  MY COMMISSION EXPIRES:
    MARCH 28, 2021
25