UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

    Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant.
_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

    Plaintiff/Counter-Defendant.
_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC.,

    Third Party Defendants.
_____/

**CE RESOURCE, INC. d/b/a CME RESOURCE and NETCE's
MOTION FOR TERMINATING SANCTIONS**

1

Pursuant to the Court's inherent authority to impose terminating sanctions, and for the reasons set forth in this Motion and the accompanying Declaration of John Kern and attached exhibits, Defendant/Counter-Plaintiff CE Resource, Inc. d/b/a/ CME Resource and NetCE ("NetCE"), hereby respectfully moves this Court to dismiss Plaintiff/Counter-Defendant Dr. Jassin Jouria's complaint with prejudice, plus striking his pleadings, terminating his defenses, and granting judgment against him on NetCE's claims.

In the alternative, this Court should grant issue, evidentiary, and instructional sanctions against Jouria, including (i) issuing an order that Dr. Jouria infringed NetCE's copyrights and breached the ten Freelance Writer Agreements; (ii) precluding Jouria from arguing or introducing any evidence at trial regarding his defenses to charges of infringement and breach of contract; (iii) instructing the jury that Jouria willfully destroyed evidence; (iv) advising the jury that it may consider his actions in drawing inferences at trial to assess his credibility; (v) awarding NetCE the entirety of its attorneys' fees and costs attributable to Jouria's evidence destruction, including without limitation all fees and costs associated in bringing this motion; or (vi) granting any other appropriate relief this Court deems appropriate.

## I.  INTRODUCTION

In his first responses to NetCE's Requests for Production and in his first responses to NetCE's Interrogatories, Dr. Jouria indicated that "a computer crash" prevented him from accessing and producing all responsive documents and all responsive information. In reality, many months prior, Dr. Jouria had purposely destroyed his computer.

At his deposition, Dr. Jouria testified that he had deliberately thrown out the "crashing" computer by early June of 2017—over two years after he became aware of the need to preserve evidence related to this conflict. Dr. Jouria's destruction of the computer upon which responsive documents existed, of course, deprived NetCE of any and all opportunity to examine the computer's hard drive and attempt to harvest responsive materials. The appropriate remedy for this flagrant abuse is the imposition of terminating sanctions, or, at minimum, severe sanctions including without limitation an adverse inference instruction against Dr. Jouria.

NetCE's awareness of the destruction of evidence is but the latest in a series of discovery malfeasance at the hands of Dr. Jouria. From the outset of the conflict between Dr. Jouria and NetCE, Dr. Jouria has taken steps to obfuscate and delay. He filed for bankruptcy twice in order to prevent this litigation from going forward. To date, he has not produced documents in the format and with the specifications NetCE painstakingly laid out in its written requests for production. Manifest gaps in his document production, refusal to produce certain responsive documents, and evasive, incomplete answers at his deposition (including refusing to answer a question based on an objection as to "relevance") have inappropriately impaired NetCE's ability to prosecute its claims. Dr. Jouria was not forthcoming regarding the destruction of this computer. Rather, he embarked on a concerted effort to hide his conduct.

Dr. Jouria's subsequent discovery responses referenced computer crashes, but left open the possibility that additional records were forthcoming from the troubled computer. This intimation was disingenuous, at best—Dr. Jouria knew, at the time he served the discovery responses (including verified Interrogatory responses) on NetCE, that he had already destroyed the computer in question. At worst, the destruction of a computer from which responsive documents may be harvested, despite computer "crashes," indicates a purposeful destruction of evidence. At best, the destruction of this

computer is a grossly negligent act in defiance of the litigation hold warning contained in the first cease and desist letter NetCE sent to Dr. Jouria in 2015.  Under either interpretation, Dr. Jouria's actions forever preclude NetCE's opportunity to have the computer's hard drive forensically examined for any salvageable material.  Evidence NetCE could only obtain from Dr. Jouria is lost forever, and NetCE has been unfairly prejudiced.

The law is clear.  A party that anticipates litigation (much less one already embroiled in ongoing litigation) must preserve evidence that may be relevant to that litigation. The law is also clear that, where a party instead destroys relevant evidence, and does so willfully, the Court has *unquestionable* authority to protect the innocent party, the judicial process, and impose meaningful punitive measures and/or sanctions, both as a corrective measure and as a deterrent to future bad actors.  This Court should exercise its authority and impose all available punitive measures and sanctions on Dr. Jouria.

## II.     BACKGROUND

The procedural history of the conflict between Dr. Jouria and NetCE shows a concerted effort by Dr. Jouria to obstruct NetCE's ability to gather information to which it has every right.  Dr. Jouria's dilatory tactics—included serial (bad faith) filings for bankruptcy *after he initiated a declaratory judgment action*—were designed to exasperate NetCE, churn the file, and rack up costs. Willful destruction of evidence is a bridge too far, and this Court should use all of its power to punish such behavior.

### A.     NetCE's Cease and Desist and Litigation Hold Notice

On April 9, 2015, almost immediately after discovery of Dr. Jouria's infringement, NetCE sent Dr. Jouria a cease-and-desist letter.  This letter demanded Dr. Jouria "***take all necessary steps to ensure that you preserve and not destroy—even inadvertently—any records (electronic or***

*otherwise) potentially relevant to the issues set forth in this letter*." (bolding and italics in original). (Attached to the Declaration of John Kern ("Kern Decl.") as Exhibit 1). In light of the cease-and-desist letter, and subsequent litigation, Jouria unquestionably had, and was aware of, a duty to preserve NetCE-related documents, no later than April 9, 2015. *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 127 (S.D.Fla.1987).

      B.      The Florida Lawsuit and Bankruptcy Filings

Dr. Jouria, during negotiations with NetCE documented at length in prior filings with this court, filed the above-captioned lawsuit for Declaratory Judgment on June 2, 2015. Shortly thereafter, after NetCE had filed a motion to dismiss or stay on October 6, Dr. Jouria filed for Chapter 13 bankruptcy on October 23, 2015, and this Court stayed this lawsuit.

During the stay, to be in compliance with federal law, NetCE was precluded from conducting discovery. On May 10, 2016, Dr. Jouria's first bankruptcy case was dismissed with prejudice for 180 days and, shortly after this period expired, on December 30, 2016, Dr. Jouria re-filed. After NetCE presented evidence that Dr. Jouria was using bankruptcy law impermissibly as a tool to stave off this litigation, the Bankruptcy Court found he had filed in bad faith and dismissed his second filing with prejudice for 180 days on April 12, 2017.[1] Accordingly, on May 8, 2017, this Court lifted its stay.

NetCE issued its first written discovery requests to Dr. Jouria, and on August 9, 2017, and September 5, 2017, Jouria responded to NetCE's Request for Production of Documents. On August 14, 2017, Jouria responded to NetCE's Interrogatories. Notably, both of Dr. Jouria's discovery

---

[1] The procedural conclusion of this second bankruptcy matter is complicated somewhat by the actions of Dr. Jouria's bankruptcy attorney following an evidentiary hearing on April 6, 2017. Following the hearing, Dr. Jouria submitted a notice of voluntary dismissal on April 11, 2017, which the court granted the next day. The court also issued an order, dated April 13, 2017, granting NetCE's motion to vacate, which was premised on Dr. Jouria using the bankruptcy court in bad faith. This bankruptcy case was officially closed on July 26, 2017.

5

responses referenced a computer "crash."  In his Preliminary Statements to his responses to NetCE's Requests for Production and Interrogatories, he wrote: "Plaintiff's records contained on his computer have been compromised in that his computer 'crashed' and documents might have been lost.  Plaintiff is producing what he has been able to recover."  Kern Decl. Exhibit 2 at ¶ 7.  In response to Interrogatory 12, Dr. Jouria wrote, "As Plaintiff's computer has crashed, he might supplement this response with the version of the Seven Courses he submitted to Elite, if the versions are ultimately recovered."  Kern Decl. Exhibits 3-5.

Unbeknownst to NetCE, but known to Dr. Jouria, at the time Dr. Jouria tendered his written responses, this computer was already buried at the Broward County Landfill.  Dr. Jouria's written discovery responses conveniently omit this fact.

After receiving Dr. Jouria's written discovery responses to both NetCE's Interrogatories and Requests for Production, NetCE sought clarification, and met-and-conferred with Dr. Jouria's counsel regarding these alleged computer crashes.  Dr. Jouria's attorney indicated that Dr. Jouria would only supply additional information regarding the computer if NetCE propounded additional interrogatories or asked questions regarding the purported crash at Dr. Jouria's deposition.  Kern Decl. Exhibit 6.  Dr. Jouria passed up this opportunity to reveal the truth and never alerted NetCE to the destroyed computer until his deposition four weeks later.

C.  Dr. Jouria's Deposition Testimony Regarding the Destroyed Computer

On September 28, 2017, NetCE asked Dr. Jouria for more information regarding the purported computer crash, and learned that, in flagrant disregard of his duty to preserve evidence, Dr. Jouria destroyed the computer on which responsive files were stored sometime on or before June 9, 2017:

*Q. Do you still have the hard drive for that device?*

>    *A. No, when we moved, we basically threw out all our old stuff.*
>
>    ….
>
>    *Q. Is there any way for us to access that hard drive now? You said you threw it way, is there a chance that you sold it on Craigslist or donated it?*
>
>    *A. No, no. What we have is an apartment complex dumpster. ...*
>
>    Kern Decl. Exhibit 7, at 193:10-13, 194:06-14.

Until this testimony, and despite NetCE's specific entreaties about the computer to Dr. Jouria's counsel, Jouria left NetCE completely ignorant as to the full extent of Jouria's sanctionable conduct.  Prior to his disclosure, counsel's oral representations and verified discovery responses led NetCE to believe that his computer had merely crashed and that the recovery of documents was possible.  After the deposition, NetCE requested a discovery conference to determine whether the computer was recoverable (from the garbage) and whether back-ups to the hard drive existed.  Kern Decl. Exhibit 8.

On October 27, 2017, Dr. Jouria's counsel confirmed NetCE's worst fears, and wrote, "on the laptop issue, Dr. Jouria did ask the management company where he lived if it could follow up with the waste disposal company soon after his deposition.  He received no substantive response, and we asked him to follow up again.  He is doing that and when we have more information, we will advise."  Kern Decl. Exhibit 9.  This development, given Dr. Jouria's behavior and subsequent misrepresentations, is hardly surprising: he deliberately delayed disclosure of the computer's destruction for *at least* four months after it occurred, despite ample opportunity to do so.  Now that NetCE finally had enough information to ask about the computer, the discovery cutoff loomed, and it is no wonder that Dr. Jouria cannot now recover his computer.  The timing of the computer's destruction is more than suspicious—it may have coincided with Dr. Jouria's move from Florida to Indiana, but it also presaged the advancement and onset of discovery in this case.

Unfortunately, due entirely to Dr. Jouria's malfeasance, NetCE will never know how many records are forever lost. Documents responsive to NetCE's requests include multiple documents NetCE can get from no other source, for example: (i) communications with CE providers regarding the infringing courses; (ii) Dr. Jouria's research and drafting notes (the timing and nature of which are fundamental to any infringement analysis) for the courses Dr. Jouria submitted to NetCE; (iii) drafts of the courses Dr. Jouria edited for Elite (which would show Dr. Jouria's efforts to make cosmetic efforts to NetCE's intellectual property before selling the materials to Elite); (iv) records of Dr. Jouria's financial transactions with other CE providers related to the infringing courses; and (v) evidence that Dr. Jouria knew that what he was doing with NetCE's intellectual property was impermissible under the terms of his contracts with NetCE (and, frankly, Elite) *and* a violation of United States Copyright law—and all metadata associated with these documents and communications which are also crucial to NetCE's analysis.

Proving a negative is impossible—NetCE expects Dr. Jouria to contend that some of these documents, at least, never existed. Unfortunately, due to Dr. Jouria's destruction of the computer he *admits* was the repository for such documents, NetCE will never know.

Dr. Jouria may also argue that he believed his computer contained no recoverable information. Dr. Jouria has proffered no evidence to support any such statement and, moreover, his duty to preserve evidence encompasses all items that may contain relevant evidence. *See Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, No. 10-62411, 2012 WL 12837287, at *14 (S.D. Fla. Nov. 2, 2012) ("when a party reasonably anticipates litigation it must suspend whatever document retention/destruction policy is in place and put in place a 'litigation hold' to ensure the preservation of relevant documents.").

Dr. Jouria is not a computer expert, and he has never claimed to be. NetCE and this Court cannot rely on his amateur opinion that files are unrecoverable from a crashing computer.

### III. **SPOLIATION OF EVIDENCE MERITS TERMINATING SANCTIONS OR OTHER SEVERE PUNITIVE ACTIONS**

#### A. Legal Standard

Federal courts have inherent authority to impose terminating sanctions when a party undermines the integrity of judicial proceedings. *Chambers v. NASCO, Inc*., 501 U.S. 32, 58 (1991); *Anheuser-Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir. 1993) (a court may impose terminating sanctions to remedy misconduct "utterly inconsistent with the orderly administration of justice"); *Leon v. IDX Systems Corp*., 464 F. 3d 951 (9th Cir. 2006) (affirming terminating sanctions because party deleted computer files); *Carlucci v. Piper Aircraft Corp*., 102 F.R.D. 472, 486 (S.D. Fla. 1984) ("Having determined that Piper intentionally destroyed documents to prevent their production, the entry of a default is the appropriate sanction. Deliberate, willful and contumacious disregard of the judicial process and the rights of opposing parties justifies the most severe sanction."); *Telectron, Inc. v. Overhead Door Corp*., 116 F.R.D. 107 (S.D. Fla. 1987) (ruling default judgment appropriate for "flagrant and willful destruction of records specifically called for in a production request served upon the Defendant"). In this Circuit, spoliation of evidence may result in "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Flury v. Daimler Chrysler Corp*., 427 F.3d 939, 945 (11th Cir. 2005). Likewise, this Court also has broad powers under the Federal Rules of Civil Procedure to issue sanctions. *Aztec Steel Co. v. Fla. Steel Corp*., 691 F.2d 480, 482 (11th Cir. 1982) ("Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process.").

Spoliation is a type of litigation misconduct that may warrant sanctions. *Oil Equip. Co. Inc. v. Modern Welding Co. Inc*., 661 F. App'x 646, 653 (11th Cir. 2016); *Southeastern Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1299-1300, 1302 (M.D. Fla. 2009) (ordering sanctions for deleting text messages). Spoliation is sanctionable because it thwarts "access to relevant facts" that "serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). Courts recognize, "[w]here one party wrongfully denies another the evidence necessary to establish a fact in dispute, the Court *must* draw the strongest allowable inferences in favor of the aggrieved party." *National Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) (emphasis added) (after three years of litigation, Defendant could not assert that it was not on notice of the issues involved in the lawsuit.). Moreover, the failure to issue terminating sanctions may be an abuse of discretion. *Flury,* 427 F.3d at 945-946 (court's adverse jury instruction was insufficient sanction for plaintiff's destruction of the vehicle, which allegedly gave rise to plaintiff's injuries at issue in the litigation.).

B.      Jouria's Bad Faith Conduct and Prejudice to NetCE Warrant Sanctions

Dr. Jouria knowingly destroyed evidence to keep relevant evidence from NetCE. *Oil Equip. Co. Inc. v. Modern Welding Co. Inc*., 661 F. App'x 646, 653 (11th Cir. 2016) ("Generally, bad faith may be found where the plaintiff's actions are responsible for the spoliation of evidence."). He did so in direct contravention of the Federal Rules of Civil Procedure, his duties as a litigant, and explicit instructions to "take all necessary steps to ensure that [he] preserve and … not destroy—even inadvertently—any records (electronic or otherwise) potentially relevant...." *U.S. ex rel. King v. DSE, Inc*., No. 8:08-CV-2416-T-23EAJ, 2013 WL 610531, at *3 (M.D. Fla. Jan. 17, 2013) (terminating sanctions granted for the destruction of electronic videos, despite party's claim that he made "attempts to retrieve the destroyed or corrupted files" and was unsuccessful.).

Dr. Jouria's actions have unfairly prejudiced NetCE: potentially recoverable documents and information are forever lost. The writings and documents stored on the very computer Dr. Jouria discarded are, by far, the clearest evidence of his misdeeds and intentions and the changes (and their timing) he made to the materials at issue in this lawsuit. NetCE is thus left with Dr. Jouria's suspect deposition testimony and any evidence it can cobble together from other sources. *Simon Property Group, Inc. v. Lauria*, No. 6:11-cv-1598, 2012 WL 6859404, at *8 (M.D. Fla. Dec. 13, 2012) (holding prejudice resulted from the destruction of objective evidence, which forced the innocent party to rely on less trustworthy deposition testimony).

Sanctions are warranted upon a showing of bad faith, particularly where, as here, the destruction of evidence is willful. *Austrum v. Fed. Cleaning Contractors, Inc*., 149 F. Supp. 3d 1343, 1351 (S.D. Fla. 2016) (a party's destruction was clearly in bad faith because there is no "excuse for having a practice of discarding applications that [one has] a legal obligation to preserve."). Likewise, Dr. Jouria was more than just negligent. The evidence supports only one conclusion—that Jouria willfully and in bad faith destroyed evidence—and hid that fact for many months. There is no innocuous explanation.

It is also well-established that sanctions are appropriate and conduct amounts to bad faith where there is a close nexus between the sanctionable misconduct and the matters in controversy. *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) (affirming terminating sanctions where the discovery abuse was "clearly relevant to [the] defense and counterclaim."). Jouria's destruction of his computer and every document contained on its hard drive goes directly to the merits of this infringement action, and thus, are relevant to the issues in dispute. This Court should award terminating sanctions because such egregious, willful behavior not only undermines the judicial process, but encourages deceit. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

916 (9th Cir. 1987) (court may exercise power to impose terminating sanctions for "abusive litigation practices" despite a spoilator's "belated candor" after false and misleading deposition testimony).

Alternatively, this court at minimum should issue an adverse inference instruction against Dr. Jouria. *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13-33, 2007 WL 1716365, at *3 (M.D. Fla. June 12, 2007) (granting adverse inference instruction for plaintiff's spoliation of evidence.); *Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1284 (M.D. Fla. 2009) (imposing adverse inference against police officer for destruction of his laptop computer and finding that officer offered "no cogent, benign explanation for the failure to exempt [the] computer from that routing purging of old computers in light of the preservation demand"); *In Matter of Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 523 (S.D. Fla. 2015) (awarding adverse inference instruction for the destruction of physical evidence at issue in the dispute). *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, No. 10-62411, 2012 WL 12837287, at *14 (S.D. Fla. Nov. 2, 2012) (providing adverse inference instruction for the destruction of historical documents that may have had bearing on the condition of properties prior to damage by a hurricane.).

## IV.    CONCLUSION

Based on the foregoing, NetCE respectfully requests that the Court grant this motion and (i) involuntarily dismiss all claims Jouria has brought against NetCE; (ii) strike Jouria's defenses and affirmative defenses to NetCE's claims against him; (iii) issue an order that Dr. Jouria infringed NetCE's copyrights and breached the ten Freelance Writer Agreements; (iv) instruct the jury that Jouria willfully destroyed evidence; (v) advise the jury that it may consider his actions in drawing inferences at trial to assess his credibility; (vi) award NetCE the entirety of its attorneys' fees and costs attributable to Jouria's evidence destruction, including without limitation all fees and costs

associated in bringing this motion; and (vii) grant any other appropriate relief this Court deems appropriate.

## Local Rule 7.1(a)(3) CERTIFICATION

NetCE hereby certifies pursuant to L.R. 7.1(a)(3) that it has conferred in good faith with counsel for Dr. Jouria regarding the circumstances surrounding the availability of recovering the "crashed" computer, as described above. As to the requested relief of involuntary dismissal, such motions are exempt from the conference requirement in L.R. 7.1(a)(3). Nonetheless, counsel for NetCE spoke to counsel for Dr. Jouria regarding the requested relief in this motion, and Dr. Jouria opposes the requested relief and will oppose this motion in its entirety.

Dated: November 20, 2017

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email: phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954)525-1000
Facsimile: (954)463-2030

*/s/ John P. Kern*
John P. Kern, Esq. (pro hac vice)
Email: john.kern@hklaw.com
Jessica E. Lanier, Esq. (pro hac vice)
Email: Jessica.Lanier@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415)743-6918
Facsimile: (415)743-6910
Attorneys for CE RESOURCE, INC.
d/b/a CME RESOURCES and NetCE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 20, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Philip E. Rothschild*
Philip E. Rothschild

**SERVICE LIST**

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**