# Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:15-CV-61165-WPD

DR. JASSIN JOURIA,

                    Plaintiff,
v.
CE RESOURCE, INC. d/b/a
CME RESOURCE and NetCE,

                    Defendant.
_____/
CE RESOURCE, INC. d/b/a
CME RESOURCE and NetCE,

     Defendant/Counter-Plaintiff,
v.

DR. JASSIN JOURIA,

     Plaintiff/Counter-Defendant.
_____/
CE RESOURCE, INC. d/b/a
CME RESOURCE and NetCE,

     Defendant/Third Party Plaintiff,
v.
Elite Continuing Education, Inc.
and Alpine Management Services, III,
LLC,

          Third Party Defendants.
_____/

VIDEOTAPE DEPOSITION OF
DR. JASSIN JOURIA
Pages 1 through 297
Confidential, Attorneys' Eyes Only

Thursday, September 28, 2017
9:49 a.m.
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, Florida

Stenographically Reported By:
Debra L. Stark, Notary Public State of Florida

Page 190

1   A.   No.
2   Q.   Do you recall receiving any kind of
3   notice, e-mail or letter from them, that was a
4   demand for indemnification?
5   A.   No.
6   Q.   Did you ever enter into a joint defense
7   agreement with Elite?
8        MS. COLE:  Objection to form.
9        MR. ROSS:  Objection, foundation.
10       THE WITNESS:  I don't know.
11  BY MR. KERN:
12  Q.   You don't know?
13  A.   No.  What does that mean, what is a
14  joint defendant?
15  Q.   Well, I am asking, are you aware of you
16  having entered into a joint defense agreement
17  with a company?
18       MS. COLE:  Same objection.
19       MR. ROSS:  Objection, no foundation that
20   the witness knows what you are talking about.
21   So if you want you to create a foundation for
22   a joint defense agreement --
23       MR. KERN:  No, I want to ask a human if
24   he knows whether he signed an agreement
25   called a joint defense agreement with a

Page 191

1   company.
2        THE WITNESS:  Not that I know of.
3        MR. KERN:  Okay.
4   BY MR. KERN:
5   Q.   So, no?
6        MS. COLE:  Object to the form.
7        THE WITNESS:  I don't know.
8   BY MR. KERN:
9   Q.   Are you worried, sitting here today, that
10  Elite might sue you?
11  A.   No.
12  Q.   Has Elite threatened to sue you?
13  A.   Not that I know of.
14  Q.   Have you destroyed any documents since
15  receiving the cease and desist letter from NetCE
16  that might be relevant to this case?
17  A.   No.
18  Q.   Thank you.  I have some questions about
19  the -- I need the exhibit number so I don't want
20  to the screw this up.
21       MR. KERN:  Can I look at Exhibit 8 or 9.
22   Sorry to trouble you.
23       Sorry, to ask you these questions I need
24   to flag something for you.
25       This is it.  Thank you.  Take a look at

Page 192

1   Exhibit -- well, let me try it again.
2        Is that the right document.  I wanted to
3   zero in on this so as not to have us go on a
4   fishing expedition.
5   BY MR. KERN:
6   Q.   This is Exhibit 9 we previously discussed.
7   It is Dr. Jouria's response to NetCE's request for
8   production of documents.
9        Can you look at Page 2, please, and read
10  what it says in paragraph seven?
11  A.   Yes, sir.
12  Q.   Read it out loud, please, for the record.
13  A.   Yes, sir.  "Plaintiff's records
14  contained on its computer have been compromised
15  in that his computer crashed, quote-unquote, and
16  documents might have been lost.  Plaintiff is
17  producing what he has been able to recover."
18  Q.   Okay.  Is that reference to a computer
19  crash the same -- is that a reference to the same
20  computer that you were discussing earlier?
21  A.   Yes.  That's the only laptop I was
22  working on at the time.
23  Q.   Okay.  So this is not a desktop, this is
24  a laptop?
25  A.   Yes.

Page 193

1   Q.   And it's the same laptop you earlier
2   indicated that because you were experiencing
3   difficulties with, you had decided to download
4   documents to Google Share?
5   A.   Yes.
6   Q.   What type of device is that, that laptop?
7   A.   You mean the brand?
8   Q.   Yes.
9   A.   I want to say it's a Dell Inspiron 1520.
10  Q.   Do you still have the hard drive for that
11  device?
12  A.   No, when we moved, we basically threw out
13  all our old stuff.
14  Q.   When you moved to Indiana?
15  A.   Yes.
16  Q.   Prior to experiencing problems with that
17  device --
18  A.   Sure.
19  Q.   -- were you using any other means of
20  backup for that laptop?  For instance, an
21  external hard drive, a flash drive, cloud storage?
22  A.   The Google Drive.
23  Q.   I understand the Google Drive testimony
24  provided earlier is that --
25  A.   That's the only other.

Page 194

1    Q.   -- when it began crashing you started to,
2  in anticipation of this litigation, you started
3  to download documents to Google Share, but prior
4  to that, just as a normal course?
5    A.   No.
6    Q.   When exactly did you move from Florida to
7  Indiana?
8    A.   June 9th.
9    Q.   Is there any way for us to access that
10 hard drive now?  You said you threw it way, is
11 there a chance that you sold it on Craigslist or
12 donated it?
13   A.   No, no.  What we have is an apartment
14 complex dumpster.  We tried literally actually
15 asking our property management company to see if
16 they can trace the dump site for it.  We are
17 waiting on that.
18       I don't -- you know, I'm not sure know
19 how to call to get that information --
20   Q.   You asked them this?
21   A.   Yes.
22   Q.   Why?
23   A.   Because in the request you asked for the
24 hard drive.
25   Q.   Well, any record you have of that

Page 195

1  request, or efforts you've made besides that or
2  any follow up to it, we would appreciate getting
3  the details on since the issue of spoliation is
4  now paramount.
5       I will get to that in a second.
6       (Thereupon, Deposition Exhibit No. 38,
7       correspondence with Sarah Campbell regarding
8       Immune Lymphatic System, was marked for ID.)
9  BY MR. KERN:
10   Q.   Dr. Jouria, let's take a look at this for
11 a second if you would, please.
12   A.   Yes.
13   Q.   What are we looking at here in 38?
14   A.   It looks like correspondence between
15 myself and Ms. Sara Campbell.
16   Q.   And what is it in reference to, which
17 course or subject matters?
18   A.   Subject, an e-mail, it looks like
19 lymphatic -- Immune Lymphatic System.  Immune
20 Lymphatic System, and then it mentions COPD and
21 TBI over here.  It also mentions antibiotics.  I
22 think that's all of them.  And then payment, I
23 guess.
24   Q.   Okay.
25   A.   Honorarium.

Page 196

1    Q.   In looking at these now, does that
2  refresh your recollection as to whether you had
3  communications with NetCE about the at issue
4  courses?
5    A.   That was never a question.
6    Q.   Okay.
7    A.   I don't what you mean by that.
8    Q.   I think earlier your testimony was that
9  after submitting the certain courses you never
10 heard from them, you couldn't recall whether you
11 had followup communications.
12   A.   Right.
13   Q.   Okay.
14   A.   These are all very early.
15   Q.   Okay.  No further questions on that.
16       39.
17       (Thereupon, Deposition Exhibit No. 39,
18       e-mail chain with Sara Campbell, was marked
19       for identification.)
20 BY MR. KERN:
21   Q.   You had a chance to look at 39?
22   A.   Yes.
23   Q.   What's the date on the earliest e-mail in
24 this chain from you to Ms. Campbell at NetCE?
25   A.   The earliest date?

Page 197

1       Well, there is one to the director of
2  development, who I assume is Mrs. Sarah Campbell.
3  But I think it was -- at that time I didn't know
4  it was her.  I mentioned in here to give my best
5  because I hadn't heard from her.
6    Q.   Okay.  What is --
7    A.   That date is October 7, 2014.  I don't
8  know if that's what you're referring to.
9    Q.   And what do you say -- please read for
10 the record what you say to Ms. Campbell in the
11 e-mail at the bottom.
12   A.   "Dear Director of Development.  I have
13 been trying to contact Ms. Sarah Campbell
14 regarding some courses I have authored for
15 NetCE.
16       I believe some courses are still pending
17 publication.  I want to get a status update on
18 them, if possible.  I may have an outdated e-mail
19 address.
20       "Also, I'm inquiring if there is any need
21 for additional courses."
22   Q.   Okay, that's plenty, thank you.  And then
23 you see at the top Ms. Campbell responds to you.
24 What's that date?
25   A.   October 24th, 2014.