# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

    Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCES
and NetCE,

    Defendant.
_____/
CE RESOURCE, INC. d/b/a CME RESOURCES
and NetCE,

    Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

    Plaintiff/Counter-Defendant.
_____/
CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Third Party Plaintiff,

v.

Elite Continuing Education, Inc. and Alpine
Management Services III, LLC,

    Third Party Defendants.
_____/

### ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS ON COUNT V OF DEFENDANT'S AMENDED COUNTERCLAIM

    THIS CAUSE is before the Court upon Plaintiff's Motion for Final Partial Judgment on

the Pleadings as to Claim Five of CE Resource, Inc.'s Amended Counterclaim for Unfair

Business Practices Under California Business & Professional Code § 17200 *et. seq.* [DE 102] (the "Motion"). The Court has considered the Motion [DE 102], Defendant's Response [DE 109], Plaintiff's Reply [DE 113], and is otherwise fully advised in the premises.

## I.   BACKGROUND

This action was filed on June 2, 2015. [DE 1]. Plaintiff Dr. Jassin Jouria ("Jouria") filed the Complaint against CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE"), seeking a declaration that Plaintiff did not violate NetCE's copyrights and did not breach contracts entered into with NetCE. *See* [DE 1]. NetCE filed its original Answer and Counterclaims on October 6, 2015. [DE 33]. A seven-month-long bankruptcy stay followed, and NetCE sought leave to amend its Answer on September 23, 2016, [DE 33], which the Court granted. *See* [DE 35]. On October 21, 2016, NetCE filed the Amended Answer, Affirmative Defenses, Amended Counterclaim, and Third-Party Complaint, (the "FAA"). [DE 36]. The FAA asserted a claim against Jouria for Unfair Business Practices under California Business & Professional Code (Cal. Bus. & Prof. Code § 17200 *et. seq.*). *Id*

NetCE is a California-based company that specializes in developing Continuing Medical Education ("CME") courses and materials. [DE 36 at 15]. To develop CME materials, NetCE contracts with independent authors, usually licensed medical professionals and/or credentialed medical scholars, ("Authors"). *Id.* The Authors work under standard template agreements, ("Freelance Writer Agreements"), which are identical for all Authors except for the name, deadlines, and subject matter areas. *Id.* at 15–16. Under the Freelance Writer Agreements, Authors agree to draft and submit articles to CME on a specific subject, in a specific format, and by a specific deadline. *Id.* Authors agree that the articles they submit to NetCE are "works for hire" and all copyrights associated with these materials belong to NetCE unless and until NetCE

rejects the materials. *See id.*; *see also* Freelance Writer Agreements attached as Ex. B to FAA [DE 36-2].[1]

Third-party Defendant Elite ("Elite") also produces CME courses and materials and is a direct competitor of NetCE. [DE 36 at 17].

In 2012 and 2013, NetCE and Jouria executed ten Freelance Writer Agreements. [DE 36 at 18]. NetCE published three of the ten courses written by Jouria; the remaining seven courses that were not published by NetCE are at issue in this case (the "Seven Courses"). *Id.* at 19. In 2012, Alpine, an investment firm, approached NetCE to discuss the possibility of purchasing it. *Id.* Alpine and NetCE executed a Non-Disclosure Agreement ("NDA") to facilitate the exchange of confidential, proprietary, and sensitive information. *Id.* at 20. NetCE shared its plans to develop and commission courses (including the Seven Courses written by Jouria that are at issue in this action). *Id.* NetCE shared details about the Seven Courses, including Jouria's involvement and the timing of planned rollouts. *Id.* In late 2012, NetCE terminated discussions with Alpine. *Id.* Shortly thereafter, Alpine purchased an interest in NetCE's competitor, Elite. *Id.* After Alpine's investment in Elite, Elite hired Jouria. *Id.* at 36. In February 2015, NetCE discovered that Jouria had submitted the Seven Courses to Elite, and Elite published them, all without NetCE's permission. *Id.* at 25.

In its counterclaim against Jouria for Unfair Business Practices under California Law(Count V), NetCE argues that Jouria engaged in "unlawful, unfair, and fraudulent business acts" by submitting "identical or substantially similar articles to one of NetCE's primary competitors[]" depriving NetCE of the "fruits of [their] efforts."[DE 36 at 35]. NetCE alleges that as a result of Jouria's actions "consumers were erroneously led to believe that material Elite

---

[1] NetCE has registered copyrights for the seven courses at issue in this case, effective May 15, 2015. *See* [DE 36-1].

and [Jouria] published together was a product the Defendants had crafted together and that Elite had vetted." *Id.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In such a motion, the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the nonmoving party. *Hart v. Hodges*, 587 F.3d 1288, 1290 (11th Cir. 2009). The Court may consider all of the pleadings, including the complaint, answer, counterclaim, and answer to the counterclaim. *Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co.*, 165 F. Supp. 2d 1345, 1350 (S.D. Fla. 2001). The Court may also consider documents attached to the complaint as part of the pleading itself, *see* Fed. R. Civ. P. 10(c), and may consider documents attached to the answer if they are central to the plaintiff's claim and undisputed, *Horsley v. Feldt*, 304 F.3d 1125, 1133-34 (11th Cir. 2002). If there are no issues of material fact and the moving party is entitled to judgment as a matter of law, then judgment on the pleadings should be granted. *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).

## III. DISCUSSION

Plaintiff has moved for partial judgment on the pleadings on count V of the FAA for Unfair Business Practices under California Business & Professional Code § 17200 *et. seq.* ("UCL"), alleging that the Unfair Business Practices claim is preempted by the Copyright Act. The Court agrees.

Federal copyright law preempts state law claims "that are equivalent to any of the exclusive rights within the general scope of [the Copyright Act]" *Jaggon v. Rebel Rock Entm't,*

*Inc.*, No. 09-61144-CIV, 2010 WL 3468101, at *2 (S.D. Fla. Sept. 1, 2010) (citing 17 U.S.C. 301(a)).

In the Eleventh Circuit, Courts apply a two-part test in copyright preemption cases. *See Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir.1983). Preemption occurs if the rights at issue (1) "fall within the 'subject matter of copyright'" and (2) "are 'equivalent to' the exclusive rights of section 106." *Id.*(referring to the Copyright Act). It is undisputed that the "Seven Courses" fall within the subject matter of copyright; the first prong is satisfied, so the Court turns to the second prong of the preemption test to determine if Count V encompasses rights that are equivalent to the exclusive rights of § 106 of the Copyright Act. *See Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001).

The Copyright Act "preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir.2001) (internal citations omitted). The exclusive rights under the Copyright Act include the right to reproduce the copyrighted work, to prepare derivative works, and to distribute copies to the public. *See* 17 U.S.C. § 106. The Court applies the "extra element" test to determine "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created [cause] of action, then the right does not lie within the general scope of copyright and there is no preemption." *Lipscher*, 266 F. 3d at 1311–12 (quoting *Foley*, 249 F.3d at 1285).

However, the "extra element test," is not a rote comparison of the elements of the two claims. The "extra element" of the state-law-claim must change the nature of the claim, so that it is "*qualitatively* different from a copyright infringement claim." *Foley*, 249 F.3d at 1285

5

(citation omitted) (emphasis added). "For example, awareness and intent are not considered to be qualitatively different elements substantial enough to serve as an 'extra element.'" *Id.*

The UCL "prohibits any unfair competition, which means any unlawful, unfair or fraudulent business act or practice." *In re Pomona Valley Med. Group*, 476 F.3d 665, 674 (9th Cir. 2007)(internal citations omitted).

NetCE alleges that Jouria committed unfair competition by publishing or selling the same or substantially similar articles to Elite that he had written and sold to NetCE. Standing alone, these allegations are equivalent to the exclusive rights in § 106, including the right to reproduce/make copies, to prepare derivative works, and to distribute copies to the public by sale. *See* 17 U.S.C. § 106 (1-3).

In response, NetCE argues that the "extra element" alleged in Count V, and not present in the copyright infringement claims, is consumer confusion as to source. NetCE alleges that as a result of Jouria's actions "consumers were erroneously led to believe that material Elite and [Jouria] published together was a product [Elite and Jouria] had crafted together . . ." resulting in consumer confusion. [DE 36 at ¶ 23]. NetCE argues that consumer confusion, and competition over a common pool of customers, is not a required element of copyright infringement, so copyright law does not preempt NetCE's claim of unfair business practices under California law.

The determinative issue in the preemption analysis is whether the UCL claim contains an "extra element" sufficient to avoid copyright preemption. Is "consumer confusion and competition over a common pool of customer" an "extra element" that transforms NetCE's UCL claim into one that is qualitatively different from its copyright claims? The answer is no.

The Ninth Circuit addressed copyright preemption and the UCL in *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir.1998). In *Kodadek*, the plaintiff asserted a UCL claim

based on the defendant's allegedly unauthorized publication and sale of the plaintiff's copyrighted work. *Id.* at 1212–13. The Ninth Circuit held that the plaintiff "expressly base[d] his unfair competition claim on rights granted by the Copyright Act." *Id.* at 1213. Since publication and sale are within the exclusive rights protected by the Copyright Act, the Court found "it [was] clear that [the plaintiff's] state law unfair competition claim [was] based solely on rights equivalent to those protected by the federal copyright laws" and the Copyright Act preempted the UCL claim. *Id.*

In *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, a California District Court undergoing the preemption analysis of a UCL claim found that consumer confusion is qualitatively equivalent to alleging unauthorized copying and reproduction. 198 F.Supp.3d 1083 (N.D. Cal. 2016). The plaintiff in *Media.net* argued that "Defendant['s] unauthorized copying and use [Plaintiff's] material for the purpose of competing with [Plaintiff] and seeking business from [Plaintiff's] customers harmed [Plaintiff's] business, reputation, and competitive standing [.]" *Id.* at 1074–75. The Court found that the plaintiff failed to allege a violation of the UCL that "does not depend on copying in violation of the Copyright Act." *Id.*

NetCE cites *Salim v. Lee*, where the Court found that reverse passing off survives a preemption challenge if the complaint includes an allegation that the entire body of work was copied ("bodily appropriation"). 202 F. Supp. 2d 1122, 1127-28 (C.D. Cal. 2002). *Salim* is distinguishable from the instant action; NetCE does not allege reverse passing off. Reverse passing off occurs when a "producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n. 1 (2003). Here, NetCE does not allege that Jouria engaged in reverse passing off.

NetCE also cites *Third Party Verification, Inc. v. Signaturelink, Inc.* for the proposition that pleading consumer confusion and competition for a common pool of customers satisfies the "extra element" test. 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007). However, this case is not helpful to the analysis of the UCL because it applies the preemption analysis to Florida common law unfair competition claims, which *require* a likelihood of consumer confusion and. *Id.* (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir.1990)("To a state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion."). *See also Magical Mile, Inc. v. Benowitz*, 510 F. Supp. 2d 1085, 1090 (S.D. Fla. 2007)(citations omitted) ("Instead of simply focusing on the copying aspect, a Florida unfair competition claim goes to the question of marketing."). The UCL does not have such a requirement, so the "extra element" analysis is different than the analysis applied to Florida common law unfair competition.

Where, as here, the improper conduct complained of is based on the exclusive rights protected by copyright, a UCL claim is preempted. Plaintiff is entitled to judgment on the pleadings on this claim.

### IV.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion [DE 102] is **GRANTED**;
2. Plaintiff is entitled to judgment on the pleadings in his favor as to Defendant NetCE's counter-claim against him for Unfair Business Practices Under California Business & Professional Code (Count V) [DE 36];
3. Defendant NetCE shall take nothing from Plaintiff as to Defendant NetCE's claim against him for Negligence (Count V) [DE 36].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 1st day of December, 2016.

_William P. Dimitrouleas_
WILLIAM P. DIMITROULEAS
United States District Judge

cc: All Counsel of Record