## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### (Fort Lauderdale Division)

### CASE NO.:15-61165-CIV-DIMITROULEAS

DR. JASSIN JOURIA

       Plaintiff/Counter-Defendant,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant/Counter-Plaintiff/Third-Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC.,

       Third Party Defendant.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NETCE'S MOTION FOR TERMINATING SANCTIONS

       COMES NOW, the Plaintiff, Dr. Jassin Jouria ("Plaintiff"), who respectfully responds in opposition to Defendant's, CE Resource, Inc.'s d/b/a CME Resource and NetCE ("Defendant"), motion for terminating sanctions. Defendant's motion fails to establish that Defendant has met its burden of proof, by a preponderance of the evidence, that Plaintiff spoliated crucial evidence in bad faith. Defendant has also failed to show, by the same burden, prejudice to any degree based upon its claims against Plaintiff for copyright infringement and breach of contract.[1] For these reasons, Defendant is not entitled to terminating sanctions, or any adverse inference jury instructions. Accordingly, Defendant's motion should be denied.

---

[1] The Court granted Plaintiff's motion for judgment on the pleadings on Defendant's Claim 5 for unfair business practices under California state law. DE 162.

## FACTUAL BACKGROUND

Relative to Plaintiff's crashed, non-functioning computer asserted in the motion, Plaintiff declares that the computer at issue was purchased in 2007.  Exhibit 1, ¶1.  It was a Dell Inspiron Model 1520 laptop computer.  *Id*.  The computer was used since 2007 for both Plaintiff's personal and business uses.  *Id*. at ¶2.  The initial hard drive crash on the computer first occurred late in January, 2017.  *Id*. at ¶3.  Within the next week, in February, 2017, Plaintiff sought to preserve as many files as he could from the laptop's hard drive.  In this regard, he attempted on at least twenty (20) different occasions to recover files and upload them to Google Cloud.  *Id*.  These attempts lasted from February, 2017 through April, 2017.  *Id*.  In all, Plaintiff estimates that he was able to recover approximately seventy to eighty (70-80%) percent of his files.  *Id*. at ¶4.  Plaintiff also declares that the files he recovered were in part related to his business of authoring medical subject matters including files related to this case.  Plaintiff produced the relevant recovered  files that Defendant requested.  *Id*. at ¶5.  Other files recovered were strictly personal in nature or had nothing to do with this action.  *Id*.  By April, 2017, Plaintiff could no longer access any files on his laptop, owing to his inability to access the files, to upload files that he could access, and, ultimately, because he could not get the computer operational.  *Id*. at ¶6.  Plaintiff is unaware of the contents of the files he could not recover, but believes some were personal, and some were business related but is uncertain if any were related to this action.  *Id*. ¶7,

On June 9, 2017, Plaintiff moved from Florida to Indiana.  Just prior to moving, Plaintiff discarded a number of personal household items, including the crashed computer.  *Id*. at ¶8.  As Plaintiff was living in an apartment complex while in Florida, he discarded his possessions in the community's dumpster.  *Id*.

Plaintiff first informed Defendant of his crashed computer on August 9, 2017, in response to Defendant's written discovery. *Id*. at ¶9. Prior to Plaintiff's deposition on September 28, 2017, and as a result of one of the parties' counsels' meet and confer, Plaintiff attempted to locate the discarded computer by asking his apartment property management company to contact the waste disposal company. *Id*. at ¶10. Subsequent to Plaintiff's deposition in which Plaintiff provided full details of the demise and ultimate discarding of the computer, Plaintiff followed up with the management company on two separate occasions to locate the computer, but to no avail. *Id*.

## LEGAL ARGUMENT

Spoliation is "the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (internal quotation marks omitted). Because spoliation sanctions constitute an evidentiary matter, federal law governs their imposition. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).

In this circuit, sanctions for spoliation of evidence may include "(1) dismissal of the case [or default judgment against the defendant]; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation which raises a presumption against the spoliator." *Flury v. Daimler Chrysler Corp.*, 427 F.3d at 945 (11th Cir. 2005); *see also Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010). Defendant seeks judgment or dismissal against Plaintiff, or alternatively, adverse inference jury instructions.

As the party seeking spoliation sanctions, Defendant has the burden of proof. "[T]he party seeking [spoliation] sanctions must prove . . . first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the

3

evidence was **crucial to the movant being able to prove its prima facie case or defense**." *Walter*, 2010 WL 2927962, at *2 (citing *Floeter v. City of Orlando*, No. 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007)(Emphasis Added); *see also Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010) (O'Sullivan, J.).  In meeting the requirement to demonstrate that the spoliated evidence was crucial to the movant's ability to prove its prima facie case or defense, it is not enough that the spoliated evidence would have been relevant to a claim or defense.  *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d at 1327-28 (S.D. Fla. 2010)(finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere); *see also Floeter v. City of Orlando*, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) (finding that although missing emails were relevant to the plaintiff's case, they were not critical and would have been cumulative).

Sanctions for spoliation are appropriate only when there is evidence of bad faith. *Flury v. Daimler Chrysler Corp.*, 427 at 944;  *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995).  In this circuit, "[a] party's failure to preserve evidence" rises to the level of sanctionable spoliation "only where the absence of that evidence is predicated on bad faith," such as where a party purposely "tamper[s] with the evidence." *Bashir v. Amtrak*, 119 F.3d at 931; *see also Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) (holding no adverse inference from missing label because there was no indication of bad faith).

Additionally, the Eleventh Circuit cited *Flury* for the rule that a dismissal sanction for spoliation "should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, 661 F. App'x 646, 653

4

(11th Cir. 2016)(citing *Flury*, 427 F. 3d at 944). The *Oil Equipment decision* went on to explain: "With regard to the spoliator's culpability, this circuit does not require a showing of malice in order to find bad faith, **but we do require something more than mere negligence**. Generally, bad faith may be found where the plaintiff's actions are responsible for the spoliation of evidence and the plaintiff fully appreciated the significance of the evidence to the anticipated litigation." *Id.* (internal citations and quotations omitted)(Emphasis Added). *McDonald v. Cooper Tire & Rubber Co.*, 186 Fed. Appx. 930, 931 (11th Cir. 2006)(bad faith must first be found to sanction party under court's inherent authority).

Mere negligence in losing or destroying records is not enough for an adverse inference instruction. *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). *See also Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009) (holding that "a jury instruction on spoliation of evidence is required only" when bad faith is responsible for the absence of the evidence). Given the Eleventh Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith, **even grossly negligent discovery conduct does not justify that type of jury instruction**. *Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08-20424-CIV, 2009 WL 982460, at *7 (S.D. Fla. Apr. 9, 2009) (Simonton, J.)(declining to order adverse inference even though party's performance in fulfilling discovery obligations was "clearly egregious" and even though the party's discovery failings "resulted from the grossly negligent oversights of counsel")(Emphasis Added). For this reason, courts deny the requested instruction when no bad faith is shown. *Slattery v. Precision Response Corp.,* 167 F. App'x 139, 141 (11th Cir. 2006)(holding that employer's failure to produce documents did not justify an adverse inference because plaintiff had demonstrated "no evidence [of withholding] or tampering with any of the documents in bad faith"); *see also Penalty*

5

*Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003)(no evidence of bad faith in losing label at issue in lawsuit alleging improper disclosure of trade secrets).

In fact, district courts in this circuit regularly deny adverse inference requests even when there is an indisputable destruction of evidence. *Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336, 2010 WL 3894142 (S.D. Fla. Sept. 30, 2010) (denying motion to dismiss and for adverse inference jury instruction when doctor negligently failed to suspend her ordinary policy of purging inactive patient files after learning the information in those files was relevant to her disability claim); *Walter*, 2010 WL 2927962 (missing broken deck chair in lawsuit for injuries sustained when plaintiff's deck chair collapsed while he was a cruise ship passenger); *Atlantic Sea Co., S.A., v. Anais Worldwide Shipping, Inc.*, No. 08-23079-CIV, 2010 WL 2346665 (S.D. Fla. June 9, 2010) (Brown, J.)(failure to preserve spotlight and electrical wiring); *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 WL 3823390 (S.D. Fla. Nov. 16, 2009) (Rosenbaum, J.)(missing emails); see also *United States v. Barlow*, 576 F. Supp. 2d 1375, 1381 (S.D. Fla. 2008)(loss of PVC marker used to identify the location of a ship's grounding in a lawsuit brought by the government for damage to underwater sanctuary resources when defendant's boat ran aground).

Sanctions under Rule 37 of the Federal Rules of Civil Procedure similarly require a finding of bad faith.  Concerning the failure to preserve ESI permits harsh-type sanctions like an adverse inference "only upon finding that the party acted with the **intent to deprive** another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (Emphasis Added).  The advisory committee notes to the 2015 amendment to Rule 37 (which added the section for sanctions arising from failures to preserve ESI) explains that the "very severe measures" mentioned in subsection (e)(2) reject cases which "authorize the giving of adverse-inference instructions on a finding of

negligence or gross negligence." Fed. R. Civ. P. 37 (advisory committee notes). The notes provide a policy theory for its position: negligent or even grossly negligent behavior "does not logically support" the "inference" that the missing or destroyed evidence "was unfavorable to the party responsible for loss or destruction of the evidence." *Id.* In fact, the notes provide additional clarification for the provision requiring intent: "Information lost through negligence may have been favorable to either party, **including the party that lost it**, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have." *Id.* (Emphasis Added); *see, e.g., Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-CV-62216, 2016 WL 1105297, at *6 n.6 (S.D. Fla. Mar. 22, 2016) (declining to impose Rule 37(e)(2) sanctions because there was no evidence that the defendant intentionally deleted text messages in order to deprive the plaintiff of their use in the lawsuit, and observing that "intent to deprive" standard "may very well be harmonious with the 'bad faith' standard").

Once a party reasonably anticipates litigation, it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute. *Se. Mech. Servs., Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2009 WL 2242395, at *2 (M.D. Fla. Jul. 24, 2009). In the analysis of this factor, Plaintiff questions whether he had any duty to preserve his crashed, non-functioning personal computer. Defendant's "litigation hold" was directed not to the computer, but "**any records** (electronic or otherwise) potentially relevant to the issues set forth in the letter."(Emphasis Added). DE 150-1. This is exactly what Plaintiff did, even before the April 9, 2015 date of letter.

Plaintiff declares that the computer at issue was purchased in 2007. Exhibit 1, ¶1. It was a Dell Inspiron laptop computer. *Id.* The computer was used since 2007 for both Plaintiff's

personal and business uses. *Id*. at ¶2.  The initial hard drive crash on the computer first occurred in January, 2017.  *Id*. at ¶3.  In February, 2017, Plaintiff sought to preserve as much has he could from the laptop's hard drive.  In this regard, he attempted on at least twenty (20) occasions to recover files and upload them to Google Cloud.  *Id*.  These attempts lasted from February, 2017 to April, 2017. *Id*. In all, Plaintiff estimates that during this time period, he was able to recover approximately 70-80% of his files.  *Id*. at ¶4.  Plaintiff also declares that the files he recovered were in part related to his business of authoring medical subject matters including some files related to this case.  Some other files recovered were strictly personal in nature or had nothing to do with this action.  *Id*. at ¶5. By April, 2017, Plaintiff could not access any files on his laptop. *Id*. at ¶6, and was unaware of their contents.  *Id* at ¶7.

Plaintiff was completely candid with Defendant about his crashed computer, having advised Defendant at least as early as August 9, 2014 that "Plaintiff's records contained on his computer have been compromised in that his computer 'crashed' and documents might have been lost.  Plaintiff is producing what he has been able to recover."  *Id*. at ¶9; DE 150-2, p.2 at ¶7.  Upon being given this information, Defendant did not request production of Plaintiff's computer or hard drive, and, in fact, never did.  *See* motion, p.6.[2]  Had Defendant done so, it would have been informed at that time that the computer it was discarded.

Regardless, after the parties' meet and confer on August 30, 2017 in which the issue of the crashed computer was first raised by Defendant, *see* motion, p. 6, Plaintiff began to investigate if the computer could be recovered from the dump site.  *See* Exhibit 1, ¶10.  In this regard, Plaintiff asked the apartment property management company if that site could be located.  Plaintiff testified

---

[2]Plaintiff even invited Defendant to make the formal request!  DE 150-6, p. 3 ¶4.

to this attempt at his deposition on September 28, 2017. *See* DE 150-7, p. 194, lines 9-19. At that time, Plaintiff had not heard back from the management company. *See* Exhibit 1, ¶10. Subsequent to the deposition, Plaintiff followed up with the management company on two separate occasions, but to no avail, *id.* and that updated information was forwarded to Defendant. *See* DE150-9, p. 2.

Accordingly, to whatever extent Plaintiff had a duty to preserve the files in his crashed computer, he discharged that duty to the best of his ability. Recovered ESI documents relevant to Defendant's requests for production have been produced in accordance with Plaintiff's obligations, and subject to this court's discovery order. *See* DE 145. At no time did Plaintiff have a duty to preserve a crashed, non-functioning computer or hard drive that was used for personal and business reasons years before a relationship arose between Plaintiff and Defendant. *See Arthrex, Inc. v. Parcus Medical, LLC*, Case No: 2:10-cv-151-FtM-38DNF, at *4 (M.D. Fla. June 10, 2014)("The Court finds it is likely that the old computers...were likely discarded, crashed and damaged naturally due to the lifespan of old technology rather than in anticipation of litigation.").

Assuming that Plaintiff had a duty to preserve his computer, Defendant has neither met its burden to impose sanctions against Plaintiff nor come forward with any evidence that the unrecovered files in the discarded computer were relevant to the dispute. In order to meet its burden, Defendant would have to show that "evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case." *Walter v. Carnival Corp.*, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)(internal citations omitted). Defendant concedes that "[p]roving the negative is impossible," motion, p. 8, yet it is Defendant's burden to prove. From the motion, it is clear that Defendant has no idea what records, if any, were lost.[3] Just like Defendant,

---

[3]"NetCE will never know how many records are forever lost." Motion, p. 8.

Plaintiff too is uncertain what files, including their contents, were not recovered. Again, because Plaintiff purchased his computer in 2007, and the parties' relationship did not commence until 2012, it is just as likely that the lost files were personal or unrelated to the litigation as it is that they contained information relevant to this action.

Even assuming Defendant can meet its burden and prove that Plaintiff had a duty to preserve his crashed computer's hard drive, and that relevant, unrecoverable files were located on it, relevance of the files is **<u>not</u>** enough to warrant sanctions. Defendant would also have to prove that the files were "crucial" to proving its claims or defenses. "It is not enough that the spoliated evidence would have been relevant." *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp.2d at 1327 (S.D. Fla. 2010)(citation omitted), it would also have to be crucial. *Cerrato v. NutriBullet, LLC*, Case No. 8:16-cv-3077-T-24 JSS, at *5 (M.D. Fla. November 6, 2017). Additionally, "[e]vidence is not crucial if it is available from an alternate source." *U.S. ex rel. King v. DSE, Inc.*, 2013 WL 610531, at *8 (M.D. Fla. Jan. 17, 2013), adopted by 2013 WL 608541 (M.D. Fla. Feb. 19, 2013).

Here, the court must analyze Defendants claims against Plaintiff to determine what is or is not crucial. Defendant asserts claims for copyright infringement and breach of contract. All of the claims ride on the same factual predicate - that Plaintiff authored the same or substantially similar articles for Defendant Elite Continuing Education, Inc. ("Elite") as he previously authored for Defendant. *See generally* DE 36.[4]   The Defendant is already in possession of evidence on

---

[4]Copyright infringement requires that "a plaintiff must show that there is substantial similarity between the defendant's work and the original, protected elements of the copyrighted work." *Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1301 (11th Cir. 2008)(Claim One). *See* Exhibit 2, p. 24, line 10 - p. 245, line 18 (Defendants's deposition [through Ms. Sarah Campbell as the Rule 30(b)(6) designee] regarding Claim Two for

substantial similarity though - the articles he wrote for Defendant, and the articles that were published by Elite - evidence that it received from Plaintiff and from Elite.

Despite the simplicity of meeting, or failing to meet, the substantial similarity test from the materials that it has, Defendant complains specifically about certain information it cannot get from any other source, *see* motion, p. 8, and to which it contends it must have, presumably from the unrecoverable files.  However, an examination of Defendant's complaint reveals that it is not crucial to Defendant's case, or that it was produced by Plaintiff or Elite, to wit:

(i) communications with continuing education providers regarding the subject courses - Plaintiff has produced all documents in his possession that evidence these communications.  Plaintiff represented to Defendant and the court that the only continuing education providers connecting him with the subject courses are Elite and NurseCE4less.com.  *See generally* DE 145 (and, specifically, regarding Plaintiff's response to  Interrogatory No. 14 where Plaintiff is bound by the representation concerning NurseCE4less.com).  *Id*. p. 4;

(ii) Plaintiff's research and drafting notes - these are not crucial to the issue whether Elite's publications, which Defendant received from Elite, are the same as, or substantially similar to, Defendant's copyrighted articles;

(iii) drafts of courses Plaintiff edited for Elite - again, purported, crashed files of drafts that might have  existed are not crucial to Defendant's case.  Whether Plaintiff edited Elite's publications "to make cosmetic" changes does not bear on what Elite published and whether those publications are identical or substantially similar to Defendant's copyrighted works.  Additionally, even if the drafts are crucial, Plaintiff has produced all that he has, as well as has Elite, showing the tracked changes

breach of contact).

11

Plaintiff made to Elite's rewritten articles relative to the articles Plaintiff wrote for Defendant;

(iv) records of financial transactions with other continuing education providers regarding the subject courses - Defendant is well aware that the court prohibited it from discovering financial records. *See* DE 145. In addition, and again, the only other continuing education providers at issue are Elite and NurseCE4less.com; and,

(v) evidence that Plaintiff knew what he was doing - this is not only not crucial, but it is also not relevant. Plaintiff's intent is not an element that needs to be proved to establish copyright infringement or breach of contract.

Finally, even if the Defendant can show a duty to preserve, and evidence was on the computer, and that that evidence was crucial to Defendant's case that it could not get elsewhere, Defendant has failed to show by a preponderance of evidence that Plaintiff acted in bad faith. This is not a case where Plaintiff reviewed, and deleted, files in order to gain a litigation advantage over Defendant. This is not a case where Plaintiff intentionally damaged or destroyed his computer. Rather, this is a case where an old computer died. Plaintiff used every effort to recover all of the files on the hard drive before he could no longer access those files. When Plaintiff could not extract anymore files, he discarded his computer, as many others do when hard drives crash and computers become non-functioning. Plaintiff was completely forthcoming about his crashed computer immediately upon Defendant's propounding of written discovery, and further confirmed in greater detail at his deposition.

Moreover, Defendant cannot even show prejudice from any purported missing files. Defendant has all that it needs to prove its three claims against Plaintiff - its copyrighted articles and Elite's publications. Defendant has not shown that the hard drive contained any crucial files

unfavorable to Plaintiff.  *See Bashir*, 119 F.3d at 931 (stating that the court "will not infer that the missing speed tape contained evidence unfavorable to appellees unless circumstances surrounding the tape's absence indicate bad faith, e.g., that appellees tampered with the evidence.").

For all of these reasons, terminating sanctions under the court's inherent authority, or Rule 37, are not warranted.  Plaintiff did not intentionally destroy his computer - it succumbed to its age.  Plaintiff did everything he could to recover the files.  There is no proof by Defendant that crucial evidence was on the unrecovered filed in the hard drive.  Finally, Plaintiff did not engage in bad faith as evidenced by his multiple attempts to recover files, and his forthrightness in advising Defendant early in the litigation of the nature of the computer crash.  Even adverse instructions to the jury are legally inappropriate given Defendant's failure to establish bad faith on the part of Plaintiff.

## DEFENDANT'S MERITLESS AND VEXATIOUS LITIGATION CONDUCT

What Defendant's motion establishes is its unrelenting attempt to cause Plaintiff to expend monies he is does not have for legal fees defending meritless, vexatious litigation motion practice, including the present sanction's motion.  This is not the first time Defendant has sought sanctions against Plaintiff, which initial attempt was denied by the court.  DE 87.  It is Defendant who has been sanctioned by the court for discovery abuses, DE 97, not the Plaintiff.  It is the Defendant who violated a discovery order of this court when it sought to obtain court-ruled irrelevant documents from a non-party "ECFMG" through Rule 45 even though the court rejected Defendant's attempt to obtain the same documents directly from Plaintiff.  *See* DE 145.  It is the Defendant who

continues to assert that Plaintiff acted in bad faith before the bankruptcy court,[5] without any evidence or proof that that court found or even considered Plaintiff to be acting in bad faith. *See* DE 72-1, 2. It is the Defendant who belatedly recognized that at least two of Elite's courses are not substantially similar to Defendant's corresponding courses, so much so that it dismissed those courses against Elite from the case, but it continues to prosecute the same course them against Plaintiff. *See* Exhibit 2, p. 248, line 12 - p. 250, line 17. It is the Defendant who was fully aware of the alleged "purported deficiency concerning the production of discovery materials," *see* L.R. 26.1(g)(1), since at least as early as August 9, 2014, *see* 150-2, and in full detail no later than September 28, 2017, DE 150-7, and yet delayed bringing the matter to the court's attention until November 20, 2017. The delay alone may warrant a denial of this motion since Defendant has proffered no good cause for the delay in bringing its motion. *See* L.R. 26.1(g)(1). For all of its vexatious and ill-founded litigation conduct, Defendant is not entitled to the equitable relief that it seeks by its motion.

## CONCLUSION

Defendant has failed to meet its burden of proof. It has not established by a preponderance of the evidence that Plaintiff spoliated crucial evidence in bad faith. Defendant has also failed to show, by the same burden, any prejudice. Accordingly, and based upon the foregoing facts and legal argument, Plaintiff respectfully opposes the pending motion, and requests that the court enter an order denying it in its entirety.

---

[5]Defendant falsely asserts that Plaintiff engaged in "dilatory tactics - including serial (bad faith) filings for bankruptcy." Motion, p. 4.

Respectfully submitted,


/s/ Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
Attorney for Plaintiff Dr. Jassin Jouria
Fla. Bar No. 436630
915 S.E. 2 Court
Ft. Lauderdale, Florida 33301
Tel 954/252-9110
Fax 954/252-9192
E mail: prodp@ix.netcom.com

15

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on December 4, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/Richard S. Ross</u>
Richard S. Ross, Esq.

**SERVICE LIST**
**Dr. Jassin Jouria v. CE Resource, et al.**
**Case No.: 15-61165-CIV-DIMITROULEAS**
**United States District Court, Southern District of Florida**
**(Ft. Lauderdale Division)**

Philip E. Rothschild, Esq.
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Ft. Lauderdale, FL  33301
Method of Service: NEF
*(Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE)*

Jessica E. Lanier, Esq.
John P. Kern, Esq.
HOLLAND & KNIGHT, LLP
50 California Street, Suite 2800
San Francisco, CA  94111
Method of Service: NEF
*(Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE)*

Peter A. Chiabotti, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Method of Service: NEF
*(Attorneys for Elite Continuing Education, Inc.)*

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Method of Service: NEF
*(Attorneys for Elite Continuing Education, Inc.)*