**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

CASE NO.:15-61165-CIV-DIMITROULEAS

DR. JASSIN JOURIA

    Plaintiff/Counter-Defendant,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Counter-Plaintiff/Third-Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC.,

    Third Party Defendant.

## DECLARATION OF DR. JASSIN JOURIA IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NETCE'S MOTION FOR TERMINATING SANCTIONS

I, DR. JASSIN JOURIA, declare as follows:

1. Relative to my crashed, non-functioning computer asserted in the Defendant's CE Resource, Inc. d/b/a CME Resource and NetCE ("Defendant") motion for terminating sanctions, I declare that the computer at issue was purchased in 2007. It was a Dell Inspiron Model 1520 laptop computer.

2. I used the computer from 2007 for both my personal and business needs.

3. The initial hard drive crash on the computer first occurred late in January, 2017. Within the next week, in February, 2017, I sought to preserve as many files as I could from the laptop's hard drive. In this regard, I attempted on at least twenty (20) different occasions to recover

files and upload them to Google Cloud. These attempts lasted from February, 2017 through April, 2017.

4. In all, I estimate that I was able to recover approximately seventy to eighty (70-80%) percent of my files.

5. I further declare that the files I recovered were in part related to my business of authoring medical subject matters including files related to this case. Of these, I produced relevant recovered files that Defendant requested. Other files recovered were strictly personal in nature or had nothing to do with this action.

6. By April, 2017, I could no longer access any files on my laptop, owing to my inability to access the files, to upload files that I could access, and, ultimately, because I could not get the computer operational.

7. I am unaware of the contents of the files I could not recover, but I believe some were personal, and some were for business, but I am not uncertain if any are related to this action.

8. On June 9, 2017, I moved from Florida to Indiana. Just prior to moving, I discarded a number of personal household items, including the crashed computer. As I was living in an apartment complex while in Florida, I discarded my possessions in the community's dumpster.

9. I first informed Defendant of my crashed computer on August 9, 2017, in response to Defendant's written discovery.

10. My deposition in this matter was held on September 28, 2017. Prior to my deposition, and as a result of one of the parties' counsels' meet and confer, I attempted to locate the discarded computer by asking my apartment property management company to contact the

waste disposal company. I did not receive any response. Accordingly, subsequent to my deposition, in which I provided full details of the demise and ultimate discarding of my computer, I followed up with the management company on two separate occasions to locate the computer, but to no avail.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 4, 2017.

_____
Dr. Jassin Jouria

**EXHIBIT 2**

Case 0:15-cv-61165-WPD   Document 163-1   Entered on FLSD Docket 12/04/2017   Page 6 of 11

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017

30(b)(6)

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                         ---oOo---

 3    DR. JASSIN JOURIA              )
                                     )
 4         Plaintiff,                )
      vs.                            )
 5                                   ) CASE NO:
      CE RESOURCE, INC., d/b/a       ) 0:15-61165-WPD
 6    CME RESOURCE and NetCE,        )
                                     )
 7         Defendant.                )
      _____)
 8    CE RESOURCE, INC., d/b/a       )
      CME RESOURCE and NetCE,        )
 9                                   )
           Defendant/                )
10         Counter-Plaintiff,        )
      vs.                            )
11                                   )
      DR. JASSIN JOURIA,             )
12                                   )
           Plaintiff/                )
13         Counter-Defendant.        )
                                     )
14    CE RESOURCE, INC., d/b/a       )
      CME RESOURCE and NetCE,        )
15                                   )
           Defendant/Third-Party     )
16         Plaintiff,                )
      vs.                            )
17                                   )
      Elite Continuing Education,    )
18    Inc. and Alpine Management     )
      Services III, LLC,             )
19                                   )
           Third-Party               )
20         Defendants.               )

21                  DEPOSITION OF SARAH CAMPBELL
                            30(B)(6)
22
                         November 14, 2017
23

24

25    DEPOSITION REPORTER:  KAYLA KNOWLES, CSR
```

Case 0:15-cv-61165-WPD   Document 163-1   Entered on FLSD Docket 12/04/2017   Page 7 of 11

30(b)(6)                    DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
                             Sarah Campbell on 11/14/2017                       Page 244

1    A.   That's correct.

2    Q.   Okay.  When was Dr. Jouria paid relative to the

3    overview of course development?  What number was he paid

4    at?

5    A.   Dr. Jouria, in the cases of his drafts, was paid

6    between steps 4 and 5.

7    Q.   Okay.  And this is NETCEB Bates number 34857 and

8    -8; correct?

9    A.   That's correct.

10   Q.   You understand, do you not, that NetCE has sued

11   Dr. Jouria in part for breach of contracts?

12   A.   I understand that.

13   Q.   Okay.  What are the factual bases or factual

14   basis upon which NetCE claims that Dr. Jouria has

15   breached any of his seven contracts?

16   A.   When Dr. Jouria signed this freelance author

17   agreements with NetCE, he agreed that the works he was

18   creating were to be the property of NetCE.  But he also

19   provided the same or similar -- substantially similar

20   content to another company.

21   Q.   Any other basis?

22   A.   Not off the top of my head, no.

23   Q.   Well, this is your chance to speak.  You're

24   speaking for NetCE.  Top of the head, you know, works

25   for today, but I don't know what the top of your head

Case 0:15-cv-61165-WPD   Document 163-1   Entered on FLSD Docket 12/04/2017   Page 8 of 11

30(b)(6)　　　　　　DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
　　　　　　　　　　Sarah Campbell on 11/14/2017　　　　　　　Page 245

1　will be tomorrow.
2　　　　So as you sit here today, is there any other
3　basis upon which you contend that Dr. Jouria breached
4　any of the other seven freelance writer agreements at
5　issue in this case?
6　　　　I'm sorry.  Are you thinking?
7　　A.  I am reviewing the document.
8　　Q.  Okay.  Thank you.
9　　A.  I don't have reason to believe, based on the
10　evidence that I have, that he breached the content --
11　I'm sorry -- breached the contract in ways other than
12　those that I described.
13　　Q.  You've only described one way.  You said that he
14　provided the same or substantially similar content to
15　another company.  Was there another way?  You just said
16　"those," and I just thought it was one way.  Did I
17　misunderstand?
18　　A.  It's only that one way.
19　　Q.  Okay.  Do you understand from the contracts that
20　Dr. Jouria was free to write similar topics for other
21　companies with different content?
22　　A.  I understand from the agreement that Jouria could
23　write on similar topics that did not infringe upon
24　NetCE's copyright.
25　　Q.  And what does NetCE believe the copyright covers?

Case 0:15-cv-61165-WPD   Document 163-1   Entered on FLSD Docket 12/04/2017   Page 9 of 11

30(b)(6)                DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
                           Sarah Campbell on 11/14/2017                    Page 248

 1      Q.   But there was a point in time where you decided
 2   not to develop the courses that you had; correct?
 3      A.   That's correct.
 4      Q.   And when you say "licensing," what do you mean by
 5   that?
 6      A.   We had knowledge of the legal issues that
 7   Dr. Jouria had with the governing body for
 8   foreign-educated physicians and his continued seeking of
 9   or -- I don't want to speculate that he continued to
10   seek it, but he had not yet been licensed at that time
11   to practice in the United States.
12      Q.   NetCE dismissed two of the courses against Elite,
13   cardiovascular pharmacology and lymphatic immune system
14   articles; correct?
15      A.   That is correct.
16      Q.   Did NetCE dismiss those against Elite because
17   there was a determination made by NetCE that the
18   articles were not substantially similar to the articles
19   that Dr. Jouria wrote for NetCE?
20      A.   When we were able to evaluate the courses more
21   fully, we determined that the similarities, if there
22   were any, were not to the extent that they violated a
23   copyright.
24      Q.   Why haven't you dismissed those two articles
25   against Dr. Jouria?

Case 0:15-cv-61165-WPD   Document 163-1   Entered on FLSD Docket 12/04/2017   Page 10 of 11

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017

30(b)(6)                                                                Page 249

```
 1     A.   I don't know.
 2     Q.   Well, if you determine that they're not
 3   substantially similar enough to support a claim for
 4   copyright infringement, are you going to dismiss those
 5   claims against Dr. Jouria --
 6              MR. KERN:  Objection --
 7   BY MR. ROSS:
 8     Q.   Please.
 9          Are you going to continue to prosecute those
10   against Mr. Jouria?
11              MR. ROSS:  Go ahead and state your
12   objection.
13              MR. KERN:  Sorry.  Objection.  Misstates
14   testimony, and vague as to you keep referring to the
15   course and not defining whether you're talking about
16   Elite's published course or the ones that Dr. Jouria
17   submitted.
18              If you --
19              MR. ROSS:  I am talking about --
20              MR. KERN:  If you understand the question.
21   BY MR. ROSS:
22     Q.   Do you understand the question, Ms. Campbell?
23     A.   Could you repeat it?  I'm sorry.
24     Q.   Sure.  I want to know if you're going to continue
25   to prosecute your claims of copyright infringement
```

Case 0:15-cv-61165-WPD   Document 163-1   Entered on FLSD Docket 12/04/2017   Page 11 of 11

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017

30(b)(6)                                                                Page 250

```
 1   against Dr. Jouria for the cardiovascular pharmacology
 2   and the lymphatic immune systems course published by
 3   Elite.  Having said that, you don't find there is a
 4   substantial similarity in the content of the Elite
 5   publication -- those two Elite publications?
 6        A.  I believe that the titles that you mentioned were
 7   actually of the drafts that he had submitted to us, not
 8   to the courses that Elite had published.  And I don't
 9   know if we'll continue or not.  I don't know.
10        Q.  Well, you're NetCE today; so it's your position
11   that NetCE hasn't determined, as of today, if it's going
12   to continue to prosecute those claims?
13        A.  As of today, NetCE had not determined.
14        Q.  But NetCE, as of today, is continuing to
15   prosecute those claims.
16            You do understand that; correct?
17        A.  I understand.
18        Q.  Okay.  You testified a bit about a plagiarized
19   content.  Do you recall that with Mr. Wilson?
20        A.  Generally, yes.
21        Q.  What do you understand "plagiarized content" to
22   be?
23        A.  My --
24            MR. KERN:  Vague.
25            THE WITNESS:  My definition of plagiarism is
```