UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

        Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

        Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Third Party Plaintiff,

v.

Elite Continuing Education, Inc. and Alpine
Management Services III, LLC,

        Third Party Defendant.

_____

**DECLARATION OF JOHN KERN IN SUPPORT OF
CE RESOURCE, INC. D/B/A CME RESOURCE AND NETCE'S OPPOSITION TO
ELITE CONTINUING EDUCATION, INC.'S MOTION FOR PROTECTIVE ORDER**

I, John Kern, declare as follows:

1.  1.  I am a partner with the law firm of Holland & Knight LLP, and I am duly licensed to practice law in the state of California. I am also admitted *pro hac vice* in the United States District Court for the Southern District of Florida, in the above-captioned case. I am one of the attorneys representing defendant CE Resource, Inc. d/b/a CME Resource and NetCE (hereafter, "NetCE").

2.  I have personal knowledge of the circumstances described below and, if so called, can testify under oath regarding these events.

3.  Counsel for Elite (Kate Cole and Mark Wilson) and counsel for NetCE (Jessica Lanier and me) met-and-conferred by telephone regarding Elite's written discovery responses on November 3, 2017.

4.  During that meet-and-confer NetCE's counsel explained to Elite's counsel why (among other issues), Elite's accreditation materials (the subject of several Requests for Production) were relevant and should be produced. Elite's counsel disagreed and suggested that NetCE wait until Elite completed its production of documents and NetCE had opportunity to review those documents. At that point, Elite's counsel maintained, based on the contents of the other components of Elite's production, NetCE may decide that it did not need to move to compel the production of all accreditation-related documents. In the spirit of avoiding unnecessary motion practice, NetCE agreed.

5.  Elite issued its first production on October 5, 2017, and its final production (which included six documents related to Elite's ANCC application) on November 14, 2017.

6. Until November 15, 2017 (fact discovery cut-off), when NetCE was able to load the new documents into its review database, NetCE lacked sufficient information to vet the completeness of the body of Elite-produced documents. In other words, NetCE was unable, until this point, to determine whether a subpoena to ANCC *was necessary*. On November 15, Ms. Lanier completed review of Elite's most recent production of documents. She and I conferred regarding the contents of Elite's last production and determined that, based on NetCE's knowledge regarding the size and volume of ANCC accreditation applications, that the documents Elite produced likely did not constitute a full ANCC accreditation application.

7. We initiated the process of serving a subpoena upon ANCC on November 15, 2017, and we alerted Elite (and counsel for Dr. Jouria) that we planned to do so. Elite asked that we meet-and-confer with them prior to serving the subpoena. We did so, by telephone, on November 20, 2017.

8. At the meet-and-confer, we were not satisfactorily convinced either that (i) documents related to ANCC accreditation were irrelevant to our case against Elite or (ii) that a subpoena to ANCC (to obtain documents Elite was unable to produce) would be cumulative or duplicative. Shortly after the meet-and-confer, we authorized service of the subpoena on ANCC.

I declare under penalty of perjury and the laws of the United States and of Florida that the foregoing is true and correct.

Dated 12/04/17

By: _____
John Kern