# EXHIBIT "A"

```
 1              IN THE UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA.
 2
                     FORT LAUDERDALE DIVISION
 3
                  CASE NO.:  15-cv-61165-WPD
 4


 5
    DR. JASSIN JOURIA,
 6          Plaintiff,
    v.
 7  CE RESOURCE, INC. d/b/a CME RESOURCE        November 9, 2017
    And NetCE,
 8          Defendant.
    _____/    Pages 1 - 47
 9  CE RESOURCE, INC. d/b/a CME RESOURCE
    And NetCE,
10          Defendant/Counter-Plaintiff,
    v.
11  DR. JASSIN JOURIA,

12  Plaintiff/Counter-Defendant.
    _____/
13  CE RESOURCE, INC. d/b/a CME RESOURCE
    and NetCE,
14          Defendant/Third Party Plaintiff,
    v.
15  ELITE CONTINUING EDUCATION, INC.,
            Third Party Defendants.
16  _____/

17

18                    HEARING PROCEEDINGS

19            BEFORE THE HONORABLE LURANA S. SNOW
                  UNITED STATES MAGISTRATE JUDGE
20

21
    APPEARANCES:
22
    On behalf of the Plaintiff:
23
                         HOLLAND & KNIGHT, LLP
24                       50 California Street
                         Suite 2800,
25                       San Francisco, CA 94111
                         BY:  JESSICA LANIER, ESQ.
```

APPEARANCES CONTINUED:


On behalf of the Defendant:

                          LAW OFFICES OF RICHARD S. ROSS
                          915 SE 2 Court
                          Fort Lauderdale, FL 33301
                          BY:  RICHARD ROSS, ESQ.




Transcribed By:

                          BONNIE JOY LEWIS, R.P.R.
                          7001 SW 13 Street
                          Pembroke Pines, FL  33023
                          954-985-8875
                          caselawrptg@gmail.com

```
 1              (Thereupon, the following proceeding was held:)

 2              THE COURTROOM DEPUTY:  Calling Case Number 15-61165;

 3    Jassin Jouria versus CE Resource Incorporated.

 4              MS. LANIER:  Good afternoon, Your Honor.

 5              My name is Jessica Lanier and I am counsel for NetCE,

 6    the Defendant and Counter Plaintiff in this matter.  Attending

 7    the hearing today, with me, also on behalf of NetCE is Phil

 8    Rothchild also with Holland and Knight.

 9              Before I begin are there any --

10              THE COURT:  Well, can I hear from -- let's not jump

11    the gun here.  Let me have your opposing counsel's appearance.

12              MR. ROSS:  Thank you, Your Honor.

13              Richard Ross on behalf of the Plaintiff, Dr. Jassin

14    Jouria.  Good afternoon.

15              THE COURT:  All right.  We're here on the Defendant

16    Counter Plaintiff's motion to compel responses for request for

17    production, motion to compel responsive answers to

18    interrogatories, and motion to compel deposition testimony.

19              What I may end up doing, Counsel, is stopping you at

20    various points and taking the response.  Otherwise, it becomes

21    unmanageable.  So don't be offended if I ask Mr. Ross to

22    respond to particular items as we go along.

23              MS. LANIER:  Certainly.

24              THE COURT:  All right.  Go ahead.

25              MS. LANIER:  So, Your Honor, the array of issues
```

1   before you today kind of fall into two buckets.  They are sort

2   of subject matter issues and they are sort of basic compliance

3   with the discovery issues.  If you will permit me, I would like

4   to begin with the substantive issues.

5           THE COURT:  Okay.

6           MS. LANIER:  Those two issues are compliance with the

7   discovery request regarding Dr. Jouria's financial documents

8   and Dr. Jouria's conflict with the Education Commission For

9   Foreign Medical Graduates.

10          THE COURT:  Okay.

11          MS. LANIER:  I will start with the financial

12  documents.

13           In his written responses to NetCE's request for

14  production, Dr. Jouria refused to produce responsive documents

15  to requests seeking financial documents and banking records.

16          THE COURT:  For the record, do you mind telling me

17  which ones you are talking about since I didn't organize my

18  notes in that fashion.

19          MS. LANIER:  Certainly, Your Honor.

20           The requests for production dealing with financial

21  information are 26, 27, and 37.

22          THE COURT:  Okay.

23          MS. LANIER:  And by way of illustration, Dr. Jouria's

24  response to these requests was irrelevant and not calculated to

25  lead to the discovery of admissible evidence because Defendant

1  does not have any judgment against Plaintiff.

2       Documents requested have no bearing on liability

3  alleged or damages sought by Defendant against Plaintiff.  Dr.

4  Jouria's argument that these documents do not need to be

5  produced is premised on the notion that NetCE has not requested

6  punitive damages.

7       That is incorrect.  NetCE requested punitive damages

8  in its operative answer.  These documents are relevant to

9  NetCE's case for several reasons.  One of which is it is

10 important for us for the purposes of engaging in productive

11 settlement discussions and any alternative dispute resolutions

12 that may occur prejudgment to have an accurate picture of Dr.

13 Jouria's financial position and ability to pay.

14      We don't know how much Dr. Jouria was paid by Elite

15 for submission of the infringing courses at issue, the courses

16 at issue in this case.  And we also don't know if Dr. Jouria

17 received payment for submission of the courses of issue in this

18 case to another yet unknown NetCE provider.  Bank records and

19 financial documents would presumably reflect these

20 transactions.

21      Finally, I will note for the Court that at his

22 deposition, which occurred on September 28th, Dr. Jouria

23 testified that he was not good at recordkeeping.  And he

24 couldn't remember the date, timing, and amount of certain

25 transactions and he would need to refer to bank documents to

1  reinforce his memory of the events.  Plainly those are the type

2  of documents that NetCE is seeking.

3            Next I would like to speak a little bit about the

4  conflict with Education Commission For Foreign Medical

5  Graduates, which for the sake of brevity, I will refer to as

6  ECFMG.

7            ECFMG, based upon NetCE's knowledge, is a

8  credentialing body that vets graduates of foreign medical

9  schools and gives them credentials to practice in the United

10 States.  Upon review of those materials ECFMG issues a

11 certificate.

12           Dr. Jouria presented such a certificate to NetCE prior

13 to NetCE's engagement of him commissioning him to draft the

14 courses at issue in this lawsuit.  After NetCE had engaged with

15 Dr. Jouria and commissioned these courses, NetCE discovered

16 that Dr. Jouria had had a conflict with ECFMG regarding his

17 credentials.

18           The nature of that conflict was that Dr. Jouria

19 accused of submitting false letters of recommendation to the

20 credentialing board.  NetCE does not know when this litigation

21 occurred.  NetCE does not know how it was resolved.  The

22 certificate NetCE was presented --

23           THE COURT:  I thought the record reflected that it was

24 resolved in his favor.

25           MS. LANIER:  That could mean any number of things,

1  Your Honor.  That could mean that ECFMG asked him to submit

2  additional letters of recommendation.  It certainly is not

3  debunking, or resolving the issue of whether or not he

4  submitted false letters of recommendation in the first place.

5       This, of course, has direct bearing on Dr. Jouria's

6  truthfulness both as a witness and a party.

7       THE COURT:  Why would that ever come in under the

8  Rules of Evidence?

9       MS. LANIER:  Well, the standard at this juncture, Your

10  Honor, is not admissibility at trial, but whether it is

11  discoverable.

12       And counsel is free -- and we have spoken to him on

13  this score before to object to admissibility if and when this

14  matter goes to trial, but his client cannot object to relevance

15  based on this issue, which appears in our pleadings.  And Dr.

16  Jouria did not move to strike it as being superfluous and

17  completely irrelevant.

18       THE COURT:  What do you mean it appears in your

19  pleading?

20       MS. LANIER:  The discovery of Dr. Jouria's conflict

21  with ECFMG is in our operative answer as a red flag that NetCE

22  encountered when it was working with Dr. Jouria.  Discovery of

23  this conflict is incentivized and indeed caused NetCE to vet

24  the courses Dr. Jouria already contracted for and had submitted

25  with greater scrutiny and helped NetCE determine that it no

1  longer wanted to contract with Dr. Jouria in the future.

2          If the Court would like to hear my opponent's views on

3  those subjects after this, I plan to discuss the sort of

4  compliance with discovery issues that second bucket that I

5  alluded to earlier.

6          THE COURT:  Okay.  All right.  Let's hear from Mr.

7  Ross.

8          MS. LANIER:  Thank you.

9          MR. ROSS:  Thank you, Your Honor.  Good afternoon

10  again.

11          The issue with these two subjects financial documents

12  and the ECFMG matter all both relate to Rule 26.  And the

13  standard to which Defendant has not even addressed is whether

14  or not discovery is relevant to claims and defenses by any

15  party in this action.

16          So the Court needs to go to claims and defenses.

17  Claims are copyright infringements, breach of contract, unfair

18  trade practices under California law, and misappropriation of

19  trade secrets by co-Defendant Elite with a now dismissed party

20  Alpine.

21          The financial documents -- and we have presented case

22  law to Your Honor.  The general proposition is you don't get

23  financial documents prejudgment.  And you don't get them

24  because as stated in Florida, they're not appropriate because

25  they don't go to claims and defenses.

1        And I have cited on Page number 4 of our response in

2   opposition and also for the interrogatory answers.  And also a

3   footnote in the request for production because they are similar

4   same cases.

5        We cited a number of cases, as well as one from the

6   Middle District of Florida in 2011.  That as a standard because

7   NetCE has alleged punitive damages, it doesn't give them the

8   right to seek these documents.  There is no statutory basis for

9   copyright infringement, for an award of punitive damages.

10       There is no basis for an award of punitive damages

11   against Dr. Jouria for breach of contract.  There is no

12   statutory basis for any damages, any monetary damages, other

13   than injunctive relief for the California state claim.  There

14   is no relevance to claims or defenses.

15       And for that reason, the general recognized rule is

16   you don't produce blanket financial documents absent a

17   judgment.  Now, furthermore, the requests are incredibly broad.

18   Any bank accounts, routing numbers, co-owned, owned, it is just

19   so broad, it has nothing to do with this case.

20       Miss Lanier's argument that it might go to settlement

21   discussions , whether it does or it does not, that is not the

22   standard.  The standard is claims and defenses.

23       THE COURT:  That applies in every single case.  So

24   that is of no moment.

25       MR. ROSS:  Of course.

1          So with regard to the ECFMG the same principle

2    applies.  The discovery must be directed to claims and

3    defenses.  Relevant to claims and defenses.  The ECFMG matter

4    is a medical certification of foreign graduates.  That's all

5    they do.  The ECFMG matter certified Dr. Jouria.

6          There was an allegation of a false letter of

7    recommendation, as the Court noted.  It was fully resolved in

8    his favor.  He produced, as Miss Lanier says, the actual

9    certificate.  It is valid.

10          Again, whether he was medically certified as a foreign

11    graduate has nothing to do with copyright infringement.  This

12    was 2007.  It has nothing to do with the claims of the contract

13    at issue.  Nothing to do with California state actions and

14    nothing to do with misappropriation of trade secrets with

15    Elite.

16          That is the standard Rule 26.  Discovery is not

17    limitless.  And we've produced, we've supplemented, and we have

18    double supplemented.  We hired ESI experts to get documents the

19    way they want them.  We have really bent over backwards and

20    we're only taking a position under Rule 26.  It has to go to

21    claims and defenses.

22          So with regard to the financial information.  We have

23    presented case law in addition to Rule 26 that they're not

24    entitled to that now.  And with regard to the ECFMG matter,

25    they don't even argue that it is relevant to claims or

1  defenses.  It has nothing to do with this case.

2       THE COURT:  Well, they argue they made some reference

3  to it in their answer.

4       MR. ROSS:  What they did was, they alleged it in the

5  answer, but that has nothing to do -- that doesn't prove

6  copyright infringement.  It has no bearing on copyright

7  infringement.  It has no bearing on breach of contract.

8       What they want to do is under Federal Rules of

9  Evidence, as the Court noted Rule 608, they want to show

10 conduct to attack the veracity.  Well, if you can attack the

11 veracity of a witness on a matter that is completely

12 irrelevant, then, discovery is not limitless.  You can ask a

13 witness anything about anything under the guise we're checking

14 out your veracity.  This is a conduct.

15      They didn't ask him did you lie about your letter of

16 false recommendation.  That was not the question.  The question

17 was why did it happen.  Tell us the facts.  And we admitted in

18 our answer it was based upon an alleged false letter of

19 recommendation.  We owned that, but just because we owned it

20 means it has anything to do with this case.  It has nothing to

21 do with claims or defenses.  It's really that simple.

22      If this was a proceeding about his medical

23 certification, absolutely it would be relevant because that

24 would be a claim or a defense.  This has nothing to do with

25 copyright infringement or breach of contract.

```
 1              THE COURT:  Which discovery request is that related
 2   to?
 3              MR. ROSS:  The discovery request for the ECFMG matter?
 4              THE COURT:  Yes.
 5              MR. ROSS:  It is part and parcel of the motion to
 6   compel the continued deposition.
 7              THE COURT:  Yes, I knew that.
 8              MR. ROSS:  So it is entirely that.  In terms of -- if
 9   I may get my notes.
10              THE COURT:  Yes, I remember it was there.  I am not
11   sure it is alleged anywhere else.
12              MR. ROSS:  It was, I know, a request for production --
13   let me get the number.  The ECFMG matter is request number 28
14   and let me see if I can quickly pull -- is there an
15   interrogatory on the issue?
16              No, Miss Lanier says there is no interrogatory.  So it
17   is only a request for production number 28.
18              THE COURT:  And the deposition.
19              MR. ROSS:  Motion to compel, correct, the deposition.
20              THE COURT:  Okay.
21              MR. ROSS:  Thank you.
22              THE COURT:  All right.  Let's hear the other matters.
23              MS. LANIER:  Your Honor, may I briefly address a
24   couple of points in rebuttal?
25              THE COURT:  Sure.
```

```
 1        MS. LANIER:  With respect to the financial documents
 2   we cited a case, Pantages, (phonetic) in our motion to compel
 3   and that case rejects argument that evidence with regard
 4   financial worth is not material until it becomes apparent that
 5   punitive damages can be awarded.
 6        More specifically, that case rejects the notion that
 7   Florida discovery rules, which is what I believe Mr. Ross is
 8   alluding to, trump Federal Rules of Civil Procedure.  With
 9   respect to also -- excuse me -- the financial documents,
10   assessing Dr. Jouria's financial position for settlement
11   discussions is not the only reason that --
12        THE COURT:  Oh, I know.  I'm just saying that's not
13   very persuasive.
14        MS. LANIER:  Okay.  Understood.  Thank you, Your
15   Honor.
16        With respect to the ECFMG, I disagree with Mr. Ross'
17   position that this is irrelevant to the breach of contract
18   matter because NetCE relied on the presentation of that
19   credential material to enter into contracts with Dr. Jouria.
20   That was presented as justification and proof of his ability to
21   practice.
22        With respect to the second bucket I alluded to in my
23   first statement, there are a lot of moving pieces before Your
24   Honor today but, in essence, NetCE is seeking compliance with
25   standard discovery requests.  NetCE seeks the production of
```

1  responsive documents in Dr. Jouria's possession, custody, and

2  control.

3          NetCE seeks clarity as to whether Dr. Jouria is

4  withholding documents subject to objections he made in his

5  written responses.  NetCE seeks production of documents

6  responsive to its request in the proper format, according to

7  specifications NetCE clearly laid out in its written request

8  for production.  NetCE seeks fulsome responsive answers to our

9  interrogatories and fulsome responsive answer to our questions

10 at deposition.

11         With respect to the first category of documents, I am

12 referring specifically to RFPs 1, 3, 5 through 7, 16, 19, 29,

13 and 30.  Dr. Jouria also posed a general objection saying that

14 he would not produce documents in the possession, custody, or

15 control of Defendant NetCE or publically available documents.

16         It is black letter law that a producing party may not

17 refuse to produce responsive documents because he believes the

18 documents are in the possession, custody, and control of the

19 requesting party, or because he believes the party may access

20 those documents through another means.

21         With respect to RFPs 30, 35, and 36, Dr. Jouria's

22 counsel agreed to supplement written responses to those

23 requests for production to clarify whether he was withholding

24 or declining to produce responsive documents pursuant to his

25 objections as to scope.  His supplemental responses do not so

1  clarify.

2        For example, the original response to RFP 35 says

3  objection to the scope, see attached.  And the attached was the

4  first production of documents in improper format.  Supplemental

5  35 says objection to the scope, see attached, which relate to

6  the scope of this litigation.  This response does nothing to

7  clarify whether Dr. Jouria is declining to produce documents

8  pursuant to his objections.

9        The production of documents in this case responsive to

10  NetCE's request has been quite the journey.  As it stands now

11  the production that NetCE has does not comply with the metadata

12  specifications that NetCE carefully, painstakingly laid out in

13  its written request for production.  The documents are not

14  unitized.

15        What do I mean by unitized?  They are produced in

16  groups of what Dr. Jouria's counsel believes are requests for

17  production that have similar themes.  So one PDF will contain

18  multiple distinct documents.

19        This, of course, unfairly places the burden on NetCE

20  to determine where one document ends and the other begins and

21  to unitize the documents itself to facilitate review.

22        The metadata that Dr. Jouria produced in his most

23  recent production does not include -- fails to include --

24  excuse me -- most of the metadata and ESI categories in our

25  written requests for production.

1    These metadata categories are not arbitrary.  They're

2  standard for Holland and Knight requests.  And they facilitate

3  our analysis of when a document was created, when it was

4  manipulated, who authored it all of which, as you can imagine

5  would be highly salient in the copyright infringement lawsuit.

6    With respect to Dr. Jouria's response to our

7  interrogatories the responses fall into three sort of broad

8  buckets;

9    One, riddled with passive voice so it is impossible to

10 determine who the actor is;

11    Two, legally conclusory with no supporting facts or

12 law;

13    And three, a paraphrase that the interrogatory no

14 substantive information.

15    By way of example, interrogatory number one seeks

16 describe all facts and legal theories to support your claim

17 that you did not breach the freelance writer agreements

18 relevant to and governing the seven courses.

19    The response, Plaintiff fully complied with the terms

20 of the freelance writer agreements including, but not limited

21 to, Paragraphs 4 and 5 above.  This is not a fulsome response

22 to NetCE's interrogatory.

23    And it is black letter law that an invasive or

24 incomplete answer or response must be treated as a failure to

25 answer or respond, period.

1          By way of illustration of the passive voice issue, one

2    response, the response to interrogatory number 9 states the

3    articles were written in sections of subtopics based on the

4    proposed outlines.

5          No mention of who wrote the articles, who the subject

6    is in that sentence making it difficult for NetCE to determine

7    if its investigation as to copyright infringement is, in fact,

8    complete.

9          And I should note for Your Honor that the

10   interrogatories at issue for what I just described are 1

11   through 4, 6, and 7 through 14.

12         Finally, Your Honor, I note that I would like to talk

13   about Dr. Jouria's deposition.  At his deposition, Dr. Jouria

14   was asked questions regarding the conflict with ECFMG.  Dr.

15   Jouria refused to answer and stated that this was not relevant.

16         Counsel made continuing objections as to relevance.

17   This is not an appropriate objection at a deposition.  To the

18   extent a counsel makes such an objection, the party is still

19   obligated to testify on that subject matter.  Dr. Jouria

20   refused to testify on the score.

21         A party, as Your Honor I have no doubt knows, can only

22   refuse to testify if he is protecting privileged information

23   and pursuant to a court order, or if he is being harassed.

24   Harassment completely does not apply here.

25         In fact, during a meet and confer on the day of the

1  deposition, my colleague John Kern, who you may remember from

2  prior hearings, had a meet and confer with Mr. Ross and offered

3  to have a conversation off the record to discuss the

4  circumstances surrounding the conflict with ECFMG to determine

5  if it was relevant enough to pursue.

6          Mr. Ross said he would speak to his client.  He made

7  no mention that his client was embarrassed about the line of

8  questioning and we received no further information that day.

9          Several weeks later, a meet and confer was held by

10 telephone between Mr. Kern and Mr. Ross.  And Mr. Kern, again,

11 said could would he have an off-the-record conversation and Mr.

12 Ross could or would only say that the issue had been taken care

13 of or resolved which, of course, is not sufficient information

14 to determine whether or not NetCE needed to pursue the matter

15 further.

16         For all of these reasons, NetCE respectfully requests

17 that the Court grant each of its motions to compel and award

18 reasonable fees incurred in the making of each motion including

19 attorney's fees.

20         THE COURT:  Okay.  I didn't require the Counter

21 Plaintiff to do this -- Defendant Counter Plaintiff, but let's,

22 when I hear the response take these one at a time or in groups

23 that are related to one another.

24         And Mr. Ross, if you have all your stuff there, both

25 the lawyers can stay seated as long as you speak into the

1   microphone.  So it might be easier for both of you, as we go

2   through these, to stay where you are.

3           Let's talk about first the objections to requests 1,

4   3, 5 to 7, 16, 19, 29 and 30.  Let's hear what you respond to

5   on that.  I know you have said you provided the documents as to

6   1 and 3.

7           MR. ROSS:  We provided documents twice.  We have

8   produced them in PDF.  Then, we produced them in metadata.

9   Again, we hired an ESI vendor to assist in that process.

10          During our meet and confer, Defendant's counsel did

11  not even address the issue of a metadata issue.  Regardless,

12  we're happy to let the experts work it out if that helps.  And

13  we offered that and we offered that in our response.  So we can

14  do that.

15          With regard to requests numbers 1 and 3, because I

16  didn't see that number 2 was an issue, we produced responsive

17  documents.  We also referred the Defendant to the documents

18  that it filed, specifically, the contracts at issue.

19          So the question becomes whether or not a party has to

20  produce documents that are already of record and in the

21  possession of the requesting party.

22          THE COURT:  Were they specifically identified?

23          MR. ROSS:  Yes.

24          THE COURT:  Okay.

25          MR. ROSS:  They produced -- I believe it was Exhibit B

1   to their amended counterclaim, which I believe is Docket Entry

2   number 36 by numbering.  So they are in there.  All the

3   contracts are in there.  So it's just a churning of this

4   litigation that -- and they know Dr. Jouria filed bankruptcy

5   twice and we just don't have the means to, you know, produce

6   masses of documents that they already have.

7          And I asked at the meet and confer.  I said tell me

8   what documents you don't have and we are happy to check our

9   files and produce whatever we have that is responsive.  And the

10  answer from Defense counsel was we don't have to tell you that.

11  So now we're here today.

12         One of those documents, one set is those contracts

13  that are at issue.  They are in the record and they were

14  produced in the record by the Defendant.

15         With regard to -- and I don't have number 4 here.  I

16  am just going by their --

17         THE COURT:  4 isn't at issue.

18         MR. ROSS:  Okay.

19         THE COURT:  Neither is 2.  5 through 7.

20         MR. ROSS:  5 through 7.

21         We produced supplementary all ten articles already

22  that Dr. Jouria wrote for the Defendant.

23         And we produced five of the seven articles that he

24  revised for Defendant Elite because that's all that he had.  He

25  didn't have any more.

1           Part of this production of documents that were revised

2   articles for Elite contain all of the edits and all of the

3   revisions.  They're red lined.

4           So the Defendant has the means to go through them to

5   see what was changed.  How substantially similar the works are

6   or how substantially dissimilar they are.

7           So I don't know what the additional documents that

8   they are seeking for, for 5 through 7.

9           For request number 16, this again was a document

10  evidencing payment that NetCE made to my client.  Well, NetCE

11  has these documents.  The payments that they made to Dr. Jouria

12  they have them.

13          Again, under -- pardon me.  Not you know, but the

14  *Gahan* case -- I don't want to butcher the name in Judge

15  Ryskamp's decision.  Judge Ryskamp went into the facts of that

16  case to determine whether or not the requesting party had the

17  documents.

18          And analyzed it as such where if he didn't have access

19  to the producing party was required to reduce.  That's why we

20  took the position at our meet and confer what don't you have

21  and we're happy to produce that and again no response.

22          For request number 19 Plaintiff produced documents

23  identifying all persons in the initial production.  Defendant

24  Elite and a third party, nonparty NurseCE4Less.

25          The Defendant's complaint is how do we know that

1  that's all of them.  Well, you know that's all of them because

2  that's all that we have.

3       You know, we can't give names of companies that we

4  didn't write articles for of the subject seven articles.

5  That's it.  I don't know what else -- there's nothing else to

6  produce.

7       And to come here -- and we've told them there's only

8  one other company and they're aware of NurseCE4Less, the

9  nonparty.  They're aware of it.  We've told them a dozen times

10 and Elite has told them.  There is no reason for this.

11      Request number 29, the Defendant refused to state that

12 it does not have the documents in its possession.  Again, this

13 was part of the same issue.  If you don't have them we will

14 produce them.

15      THE COURT:  What's 29?

16      MR. ROSS:  29 is all documents received from NetCE

17 from 2012 to the present.  So all the documents that the

18 Plaintiff, Dr. Jouria, received from the requesting party they

19 want Dr. Jouria to now spit that back out to them.  Of course,

20 they have these documents.  They sent them to Dr. Jouria.

21      For request number 30, the documents, responsive

22 documents are the contracts.  Again, another question regarding

23 what documents are responsive.  And we respond that the

24 contracts at issue are responsive and those are in the record.

25 It's actually Docket Entry 36-2.

```
 1        THE COURT:  What was request 30?

 2        MR. ROSS:  30 was all documents supporting your

 3   allegations of Paragraph 12 in the complaint.  So Paragraph 12

 4   in the complaint, the responsive answer was the contracts at

 5   issue.  And those were -- and they have those so.

 6        THE COURT:  All right.  Let's stop there.

 7        MR. ROSS:  Okay.

 8        THE COURT:  Let's hear if there is any response as to

 9   those particular requests.

10        MS. LANIER:  Thank you, Your Honor.

11        It's interesting that counsel -- actually, let me back

12   up a little bit.  NetCE takes the allegations of file turn in

13   very seriously.

14        As Your Honor, is aware there is another party in this

15   litigation; Elite.  Elite is one of my client's most bitter

16   competitors.  And we have had as many, if not more, discovery

17   disputes with Elite as we have had with Dr. Jouria's counsel.

18        Curiously, none of those have needed to be brought

19   before you to referee.  There is one common variable there and

20   it is NetCE.

21        With respect to the issue of possession, custody, and

22   control --

23        THE COURT:  I don't want to do this.  I want to go

24   through them one by one because that is how I am going to rule

25   on them.
```

24

```
 1              MS. LANIER:  Certainly.

 2              THE COURT:  And you can certainly incorporate anything

 3    you want, but let's --

 4              MS. LANIER:  Sure.

 5              THE COURT:  So 1 and 3, he says he has given you those

 6    documents.

 7              MS. LANIER:  With respect to 1 and 3, he says he has

 8    produced the documents, but he has good as not produced them

 9    because he has not produced them according to the metadata

10    specifications that we laid out.  He did not object to those

11    specifications.

12              THE COURT:  Okay.  And he says that he is willing to

13    do that.  So let's go --

14              MS. LANIER:  Is he willing to -- may I please clarify?

15              Is he willing to comply with each of the

16    specifications we laid out?  Because they are crucial to our

17    analysis of when these documents were edited and by whom.

18              MR. ROSS:  Your Honor, we are happy to -- their

19    experts and our vendors talk.  And whatever they can produce to

20    make the Defendant happy, we're happy to do that.

21              THE COURT:  All right.

22              MS. LANIER:  Thank you.

23              THE COURT:  Okay.  5 and 7.

24              MS. LANIER:  With respect to 5, 6, and 7 --

25              THE COURT:  No.  Oh, yes, 5, 6, and 7.  Yes, he says
```

1  he has produced everything he's got.

2        MS. LANIER:  Again, this is an issue of complying with

3  the specifications.  We are also entitled to -- he may believe

4  we have these documents in our possession, custody, and

5  control, versions of these documents, but we are entitled to

6  know --

7        THE COURT:  Well, we're not there yet.

8        MS. LANIER:  Okay.

9        THE COURT:  He says as to 5, 6, and 7 he has given you

10 everything he has.

11       MS. LANIER:  Okay.  So it's a metadata issue and I

12 look forward to his compliance.

13       With respect to 16, I believe that is the next one on

14 the list.

15       THE COURT:  Yes.

16       MS. LANIER:  Documents reflecting or evidencing

17 payment.

18       MS. LANIER:  I just want to make sure we're all

19 looking at the same one.

20       THE COURT:  Right.

21       MS. LANIER:  NetCE may have some of these documents in

22 their possession, custody, or control, but we are entitled to

23 know what versions and what information Dr. Jouria has that may

24 conflict or corroborate what NetCE has.  That goes for the

25 versions of the documents we will discuss responsive to later

1  requests as well.

2        THE COURT:  Well, how is that request phrased?

3        MS. LANIER:  All documents reflecting or evidencing

4  any payments received by you from NetCE from 2012 to present.

5        THE COURT:  Okay.  So it is received.  Okay.

6        MS. LANIER:  With respect to request number 19, which

7  is for documents sufficient to identify all persons to whom or

8  to which you have submitted written material, or proposals to

9  create written material related to the subject matter of the

10 seven courses.

11        It is not clear from the way this response is worded

12 whether or not he has produced everything to us that he has.

13 If he says here today that he has, in fact, done so then, it is

14 again a metadata issue, but I can't recall off the top of my

15 head whether that was one of the requests that counsel stated

16 he had produced all responsive documents for.

17        THE COURT:  I believe it was.

18        MS. LANIER:  Okay.  And next on the list is request

19 for production number 29.

20        THE COURT:  Okay.

21        MS. LANIER:  All documents received from NetCE from

22 2012 to present.  It is not clear to me from that written

23 response whether counsel has produced everything he has or

24 whether he is withholding documents because he believes they're

25 in NetCE's possession, custody, or control.

1      I can see this being a version control issue as well

2   making sure that Dr. Jouria is relying upon and referencing,

3   for example, the same versions of the freelance writer

4   agreements that NetCE references.

5          MR. ROSS:  Your Honor, if I may, she knows that there

6   is only one version of the contracts.  There's no multiple

7   versions.  It's ridiculous.

8          THE COURT:  Well, number 29 deals with documents

9   received -- are we on 29 or 30?

10         MS. LANIER:  29, I was just using the freelance writer

11   agreements by way of illustration.

12         THE COURT:  Okay.

13         MS. LANIER:  Because there are certainly other

14   documents that would be responsive to that request.

15         THE COURT:  Okay.  And number 30, that's the one that

16   he says he has given you all the contracts.

17         MS. LANIER:  Are those the only documents he contends

18   that he has that are responsive to that request?

19         THE COURT:  To number 30?

20         MS. LANIER:  Yes.

21         THE COURT:  What does number 30 say?

22         MS. LANIER:  All documents -- sorry.

23         THE COURT:  Go ahead.

24         MS. LANIER:  Sorry, Your Honor.  All documents

25   supporting your allegations in Paragraph 12 of the complaint.

```
 1          THE COURT:  All right.  What he said earlier, what
 2   counsel said is those documents are the contracts.  Are there
 3   any other documents or are you saying that's it?
 4          MR. ROSS:  Your Honor, the answer is that's it.
 5   Responsive documents include the freelance writer agreements
 6   that are in the possession, custody, or control of Defendant.
 7   That's it.
 8          MS. LANIER:  And again, he can't refuse to produce
 9   because he believes something is in our possession, custody, or
10   control.  We want to make sure that Dr. Jouria is relying on
11   the same versions of these documents that NetCE is.
12          MR. ROSS:  Your Honor, we referred to the record that
13   these are the contracts that they filed in the court.  There is
14   only one version of these records.  For Miss Lanier to say --
15          THE COURT:  Well, you're stuck with the one in the
16   record, then.
17          MR. ROSS:  That's all that there is.  There is no
18   more.
19          THE COURT:  Okay.
20          MR. ROSS:  There is no second version.  There's no
21   draft.  There was a document drafted exclusively by NetCE and
22   Dr. Jouria had to sign it if he wanted to earn his honorary in
23   writing the articles.  That's it.
24          THE COURT:  All right.  So we have now concluded this
25   particular group.  As to request for production numbers 1, 3, 5
```

1   to 7 and 19, the only issue here, since counsel has stated he

2   has produced everything he has is that they be produced with

3   the requested metadata and all specifications required.

4           So if that entails communication with experts, so be

5   it, but they shall be produced in the requested format, but

6   counsel has stated that the production is complete except for

7   the format.

8           As to 16 and 29, I understand financial difficulties

9   here, but I think there is a difference between payments made

10  and payments received, documents sent and documents received.

11          And I believe that Dr. Jouria does have to produce

12  what he received.  So I will order compliance with 16 and 29.

13          Okay.  Let's go to 21, 26, 30 and 35.

14          MS. LANIER:  May I ask for a brief point of

15  clarification?

16          THE COURT:  Right.

17          MS. LANIER:  When you say produce with all requisite

18  specifications, are you including unitizing the documents so

19  they aren't in bulk PDFs and produced in their native format?

20          THE COURT:  Whatever you requested.

21          MS. LANIER:  Thank you, Your Honor.

22          THE COURT:  And I am sure that can be done without too

23  much trouble.

24          MS. LANIER:  And with respect to RFP number 30.

25          THE COURT:  Where's 30?  30 he is stuck with -- he has

1  identified documents in the record and that's the answer.

2          MS. LANIER:  Thank you, Your Honor.

3          THE COURT:  Okay.  As to -- is there some overlap

4  here?  No, except for 30.

5          21, 26, 30 and 35 are these simply format issues?

6  You referred to 36, but it is actually not part of your motion.

7  So we're not going to deal with 36.

8          MS. LANIER:  Fair enough, Your Honor.

9          30 and 35 it was not clear to me from his supplemental

10  response whether he had produced all responsive documents.  I

11  understand, based on counsel's statements today, that he has.

12  So as long as he produces with all requisite metadata, et

13  cetera.

14          THE COURT:  Okay.  What about 21 and 26?  Oh, he said

15  there were no documents that were withheld.

16          MS. LANIER:  Okay.  Fair enough.

17          THE COURT:  And he is bound by that.

18          Okay.  So 21 and 26 no documents.  30 and 35 are

19  subject to the prior ruling.  They have to be in the correct

20  format and I think that's it on the requests for production.

21          MR. ROSS:  There are also -- Your Honor, if I may, the

22  request for financial --

23          THE COURT:  Yes, 26, 27, 28 and 37 I am not going to

24  require further production.  I think that right now there has

25  been no -- I am not satisfied that there is any relevance to

1  financial documents.

2          And to the extent there is, the requests as formulated

3  are too broad.  If you want specific things that he says he

4  can't answer because he needs the document, they can be

5  reframed, but these are as stated not relevant.

6          And as far as the deposition, I do not believe that

7  the ECFMG matter is related to any of the claims or defenses in

8  this case.  It is completely collaterable.  It might be

9  interesting to the Defendants to -- Counter Plaintiffs to look

10  at, but it is so peripheral that I am not going to require it.

11          I will state for the record the obvious.  He did not

12  have the right to refuse to answer those questions, but there

13  is no point in continuing a deposition on something that I've

14  ruled is too tangential to be required, but please make sure he

15  understands that if there is any further deposition down the

16  line, he can't unilaterally refuse.  I'm sure you told him

17  that.

18          MR. ROSS:  I did tell him that, Your Honor.

19          THE COURT:  All right.  Let's look at responses to

20  interrogatories -- I'm not really that concerned about lateness

21  at this point because we're still here to determine whether

22  they're responsive.

23          1, 2, 3, 4, 5, I guess they all have to do with what

24  the Defendant -- Defendant Counter Plaintiff believes are

25  conclusory answers to these questions.

32

1        So let's hear, Mr. Ross, why you think these answers

2   are sufficient.

3        MR. ROSS:  Thank you, Your Honor.

4        The answers are sufficient because we answered

5   separately and fully as required by Rule 26.  The problem, we

6   submit, respectfully is not the answer, but in the breadth of

7   the interrogatory.

8        For example, interrogatory number one, describe all

9   facts and legal theories to support your claim that you did not

10  breach the freelance writer agreements related to governing the

11  seven courses.

12        So the answer was we did not breach.  We directly

13  responded to the question.  We did not breach because the

14  Plaintiff, Dr. Jouria, fully complied with the terms of the

15  agreements.  Including, but we went a little bit more specific

16  because I was trying to guess as to what they were going after.

17        And I said including, but not limited, Paragraphs 4

18  and 5.  So we were fully responsive.  If they wanted to know,

19  you know, why do you think you didn't breach the agreement

20  regarding submission of the article, we could have answered

21  that specifically, or why do you think you did not breach the

22  agreement with regard to copyright ownership, Paragraph 9, we

23  would have gone into that and we did go into that in detail and

24  other interrogatories.  They know our position.

25        At the meet and confer, we offered, you know, Miss

1  Lanier said, well, if you don't have facts or legal theories to

2  support that you did not breach, prove a negative, just tell us

3  so.

4          Well, we said we don't have any facts or legal

5  theories to support a breach, would that be good enough for

6  you?  We will state that in an amended answer.  Miss Lanier

7  said, no, it is not good enough.

8          So we answered fully the breadth of the question and

9  there was -- to do more would have asked us to get into the

10  minds of the questioner to find out what specific element of

11  the contract they are talking about, but regardless we did.

12          We told them our case, we said in further answers, you

13  don't own the copyright because you did not approve the works

14  for publication as set forth in your contract, Paragraph 9.

15  They know our position.

16          And you know, I wasn't trying to hide anything from

17  them.  I was trying to kind of help them out.  Nice guys finish

18  last and we're here now.

19          For example, question number 2, describe all facts and

20  legal theories to support your claim that you did not infringe

21  NetCE's copyright to the seven courses.  And our answer was --

22          THE COURT:  I've got your answer:

23          Plaintiff disputes that Defendant owns any copyrights

24  to the seven courses so Plaintiff could not have infringed

25  them.

34

1          MR. ROSS:  Right.

2          THE COURT:  Even if Defendant owned the copyrights to

3    the seven courses, Plaintiff did not violate any exclusive

4    rights of the copyright.

5          MR. ROSS:  So we've given them now two reasons why

6    there is no infringement.

7          There is no infringement because they lacked ownership

8    and there is no infringement because of the six exclusive

9    rights in copyright under Section USC 106.  The Plaintiff, Dr.

10   Jouria, did not violate any of those.

11         And then, we go on further to say why he did not

12   violate those because he substantially revised the works.  They

13   are not substantially similar.  That's the gravamen.  Are they

14   identical or do you have access in substantial similarity?  And

15   we say, no, they were substantially revised.  They are not the

16   same articles and we gave all of that information.

17         Interrogatory number three, describe all facts and

18   theories to support your claim in the answer that unfair

19   business practices under the California code is preemptive.

20         And as understood because the allegations were not

21   really clear, an additional element of confusion is alleged,

22   but we say that -- and we've submitted a motion for judgment on

23   the pleadings as to that count pending before Judge

24   Dimitrouleas.

25         But we state that the two bases, the two prongs in

1  establishing preemption that the work is covered by a subject

2  of copyright, which no party disputes.  They are written texts.

3  So they are covered.  And the right that they claim in their

4  California action is that we created identical or substantially

5  similar copies for Elite.  The same basis for copyright

6  infringement.  So we explained that to them.  So I don't know

7  what else we can give them.

8          Interrogatory number 4, as for the facts and legal

9  theories regarding permission for the Plaintiff to re-publish

10  and re-issue and re-submit, why didn't the Plaintiff seek

11  permission from NetCE, the Defendant?  Because permission was

12  not sought.  Dr. Jouria did not ask for permission, but it

13  wasn't required because why?

14          Again, we give the reason the Defendant doesn't own

15  the copyright and the works submitted for the seven issues --

16  for the seven courses, rather.

17          So, again, we are going more specific in our answer

18  than the breadth of the interrogatories.  And we did this

19  throughout all of these that asks for facts and legal theories.

20          And number 6 asks for facts and legal theories to

21  support why an alleging infringing works are not substantially

22  similar to which Plaintiff responded that the alleged works

23  were substantially similar because they were substantially

24  revised.

25          In addition to answering that interrogatory, again, we

1  produced those revised works.  So there is no question.

2       Moreover, if I may, Your Honor, they deposed Dr.

3  Jouria for well over seven hours on one day.  If they had any

4  question, if there was any confusion about breadth, or who did

5  what, or passive or active, which isn't a valid basis for

6  objection, they asked him that.  And we asked him that and he

7  answered everything for more than seven hours.  So there is

8  already a record of his position and they don't change from his

9  interrogatory answers.

10       Going to number 8 --

11       THE COURT:  I don't think we did 7.

12       MR. ROSS:  We did 7?

13       THE COURT:  I don't think we did.

14       MR. ROSS:  Oh, we didn't do 7.  That is correct, Your

15  Honor.  Thank you.

16       Describe all the facts or legal theories to support

17  your claim that you may have later developed that NetCE

18  expressly rejected.

19       And our answer is the Defendant has admitted in this

20  proceeding that it expressly rejected the related works because

21  NetCE discovered that Elite had infringed its copyrights and

22  had published these courses without permission.

23       It goes on to say that NetCE for that reason it

24  refused to publish the works.  So that is our permission why

25  there was an express rejection of the works that Dr. Jouria

1  produced and submitted to NetCE.

2        Now, they may take issue with that and they may say

3  well, that's not an expressed -- that's a legal argument and

4  we've given them the factual basis for our contention that

5  NetCE did expressly reject the seven courses.

6        For number 8, describe all facts and legal theories to

7  support any claim you may have that NetCE did not own all

8  rights to the seven courses.  And then, again, this is what I

9  alluded to earlier.

10        We refer specifically to Paragraph 9 of the freelance

11  writer agreements and it says that that provides that

12  Plaintiff's works shall belong exclusively to NetCE if they

13  were approved for publication it's conditional.

14        Only on the copyrights if NetCE approved for

15  publication.  NetCE has conceded in this action that it did not

16  approve the works for publication.  And I even cite to their

17  interrogatory responses that says that.

18        So we answer expressly why don't they own the rights?

19  They don't own the rights because the contract says you have to

20  approve the works for publication in order to own them and

21  NetCE did not do that.  I don't know what else we can answer.

22  I don't know why those are not fulsome responses.

23        Number 9 --

24        THE COURT:  The objection to 9 is that it is in a

25  passive voice.

1         MR. ROSS:  Okay.  Describe your process of research

2    and writing materials.

3         So I don't specifically recall that it's in the

4    passive voice.  If it is in the passive voice, one, the rules

5    do not require that you answer in the active voice.  Two --

6         THE COURT:  Well, it says describe your process rather

7    than the process.

8         MR. ROSS:  Then our answer is that is Dr. Jouria's

9    response.  That was Dr. Jouria's response.  We even

10   supplemented this because we only answered admittedly issues on

11   researching.

12        Dr. Jouria did not answer regarding facts on writings.

13   So we supplemented this response and we told the Defendant what

14   Dr. Jouria did in connection with the writing of the courses.

15        If it helps the Court, I will represent to the Court

16   that it was active.  That was Dr. Jouria who did it.  It wasn't

17   anybody else.

18        THE COURT:  Well, that was what I was going to ask.

19        MR. ROSS:  All right.

20        THE COURT:  Number 10.

21        MR. ROSS:  Number 10.  Okay.  Let's see, Defendant

22   number 10, 11, and 12 I have lumped together.  For the process

23   the Plaintiff employed in changing the articles to which he

24   responded that the portions of articles were, in essence,

25   substantially revised.

1          Again, we produced those articles that were revised.

2     We gave them red line versions.  They know exactly what was

3     changed.

4          For us to go word by word what did we do?  Well, we

5     changed the word from pharmacology to antimicrobial

6     pharmacology.  The Plaintiff, under the rules, has the means to

7     determine what changes were made because we gave them the

8     articles.

9          They have the articles that Dr. Jouria wrote for

10    NetCE.  And now the Defendant has the articles that the

11    Defendant wrote for -- that the Plaintiff wrote for Defendant

12    Elite with revisions.

13         So there is no more that we can give them other than

14    if NetCE want us to do the works.  Well, the rules don't

15    require that.  The rules say --

16         THE COURT:  Well, if your answer to 10, 11, and 12 is

17    the revisions that were done are reflected in the red line

18    versions that were produced?

19         MR. ROSS:  Yes.  Yes, absolutely.

20         And that's why we produced supplementally because we

21    could not find them initially and we produced those red line

22    versions.

23         THE COURT:  And did Dr. Jouria make the red lines?

24         MR. ROSS:  Did he make the red lines?  I can't -- I

25    don't know.  I don't know if he made the red lines or Elite

```
 1  made the red line changes.
 2          THE COURT:  Okay.
 3          MR. ROSS:  So I can't --
 4          THE COURT:  But one of the two.
 5          MR. ROSS:  One of the two made those.
 6          My belief is Dr. Jouria, but I don't want to represent
 7  that to the Court.  So that was 10, 11, 12 itemize all
 8  differences.
 9          Going to number 13; describe the length of time
10  between your last communication with NetCE related to the seven
11  courses and your first communication with Elite related to the
12  subject matter of the seven courses.
13          And we respond, specifically, approximate first
14  contact with Elite was April of 2013.  Approximate last contact
15  with Defendant NetCE was May 2013.  Well, NetCE doesn't like
16  that answer because we don't give precise dates in April.
17          Yet, they depose Dr. Jouria and they asked him these
18  questions.  So he gave the best answer that he could give with
19  the records that he has.
20          THE COURT:  All right.  So is it your statement that
21  you don't have exact dates?
22          MR. ROSS:  That was the statement from Dr. Jouria to
23  me, yes.  These were his answers.  I didn't truncate a day.  I
24  didn't truncate a day, or a month, or a year.  This is what he
25  said so.
```

1          Now, I could ask him, if the Court prefers, to ask him

2    to go through his records again, but this was gone over at his

3    deposition at length.

4          THE COURT:  Okay.  14.

5          MR. ROSS:  Number 14, seeks the names of certain third

6    parties.  Plaintiff, again, with whom you've exchanged

7    communication regarding the subject matter of the seven

8    courses.  So we've produced the only name with the only third

9    party.

10         And again, this is NurseCE4Less.  We produced it and I

11   think the Defendant objects to it because we didn't say only

12   NurseCE4Less, but that was the only other company that --

13         THE COURT:  All right.  You are making that

14   representation?

15         MR. ROSS:  Yes.  17 and 18 those, I think the Court

16   has resolved on the issues of financial information.  And I

17   believe that is it.

18         THE COURT:  Are 17 and 18 any narrower than the

19   request to produce?

20         MR. ROSS:  They -- Miss Lanier can confirm, but they

21   are not.  Again, identify all assets in which you have any

22   ownership interest, including tangible and intangible assets.

23         So that is at least as broad as the request for

24   production to my memory.  Number 18 identify by institution,

25   name, routing number, account number all bank accounts that you

1 own in whole or in part in which you deposit or withdraw

2 monies.

3          So I believe that those interrogatories are as broad

4 as the request for production.  Yes, Your Honor.

5          THE COURT:  Okay.  All right.  Let me hear from

6 Defendant Counter Plaintiff on these specific interrogatories

7 or you can address them generally, if you wish.

8          MS. LANIER:  Thank you, Your Honor.

9          And I apologize for my hoarseness.  I seemed to have

10 acquired some cold on the plane.  So I apologize.

11          With respect to interrogatories 1 through -- I'll go

12 one by one just to be precise.  The responses to

13 interrogatories 1, 2, 4, 8, 10 and 13 mirror quite closely the

14 responses in the citing cases we've provided where the Court

15 found the responses were not fulsome and ordered the responding

16 party to supplement.  They are not fulsome.  They are

17 conclusory and they don't provide facts or legal theories to

18 support.

19          It is interesting that Mr. Ross objects now to breadth

20 of these interrogatories.  There is no specific objection to

21 breadth for any of the interrogatories at issue that I find in

22 his written responses.  And since he did not make that

23 objection at the time he wrote his responses, he has waived the

24 right to do so now.

25          With respect to the meet and confer issue of

 1  supplementing, I believe interrogatory number 9, the way Mr.

 2  Ross phrased the request to me was that he wanted me to

 3  instruct him to answer that he had no legal theories or facts

 4  other than what he had provided.

 5          I, of course, am not in a position to know whether

 6  that is the case for that interrogatory or indeed any of these

 7  interrogatories.  Only Mr. Ross is in the position to make that

 8  determination.  My issue with passive voice, I assure you, is

 9  not a ticky-tack matter.

10          THE COURT:  Well, he has addressed that now.

11          MS. LANIER:  Does that apply for each of the

12  interrogatories where passive voice is employed, I only used

13  interrogatory number 9 as an example.

14          MR. ROSS:  What are the other interrogatories?

15          THE COURT:  Well, if you didn't identify them for me,

16  then, I am not going to consider them at this point.

17          MS. LANIER:  They were identified in our motion, Your

18  Honor.  I used it 9 by way of illustration in my oral argument,

19  but I can identify them now.  Bear with me one second, please.

20          Interrogatory response number 4 permission was not

21  sought.

22          THE COURT:  All right.  4, 9.  What else?

23          MS. LANIER:  10.  And by virtue of reference 11, since

24  11 refers exclusively to the response to number 10.  Those are

25  the passive voice responses, Your Honor.

44

1          THE COURT:  Okay.

2          MR. ROSS:  If I may respond briefly.

3          The question is describe your process.  Describe your

4    statement.  Describe -- so when he answers the question he's

5    answering your.

6          It doesn't say describe one -- an alleged process.

7    The answer is responsive, but if you want it in the active

8    voice we can give it to you in the active voice.

9          MS. LANIER:  Yes, but his process could include other

10   individuals.  It is not clear in his response that it is not.

11          MR. ROSS:  Then it wouldn't be your.  It wouldn't be

12   your.  It would be somebody else.

13          THE COURT:  Okay.  All right.  Let's go on to the

14   next.

15          MS. LANIER:  And I would note just generally with

16   respect to Mr. Ross' assertion that we can determine factual

17   information from the documents themselves.  We can't yet do

18   that because we don't have the metadata.  Hopefully that issue

19   will be resolved in the future.

20          I would also note that while we were able to question

21   Dr. Jouria about these topics at his deposition, a key part of

22   taking any witness' deposition is comparing his interrogatory

23   responses to his testimony.  And these deficient responses

24   deprived us of the opportunity to do so.

25          THE COURT:  Okay.

1          MS. LANIER:  Thank you, Your Honor.

2          MR. ROSS:  Brief reply.

3          THE COURT:  Is that it?

4          MS. LANIER:  Yes.  That's it for me, Your Honor.

5    Thank you.

6          MR. ROSS:  NetCE certainly was free to postpone the

7    deposition and continue if there was plenty of time.  They

8    chose to proceed with the answers and the documents produced as

9    is.

10          No further statements, Your Honor.  Thank you.

11          MS. LANIER:  Your Honor, fact discovery ends November

12    15th.  We were trying to be judicious and to proceed forward

13    the best way we knew how.

14          MR. ROSS:  The deposition occurred September 28th.

15          THE COURT:  All right.  As to 1, 2, 3, 4, 6, 7, and 8,

16    given the manner in which these interrogatories were framed, as

17    a person reading the interrogatory and the answer, I believe

18    that Dr. Jouria has answered the question.

19          I don't think that they are simply reframing the

20    question.  I think he sufficiently provided the information as

21    to what he is relying on and I am not going to order any

22    further response as to those.

23          4, 9, 10 and 11 counsel is directed to consult with

24    Dr. Jouria and inform the Court and the Defendants or inform

25    the Defendant Counter Plaintiff as to whether he personally did

```
 1  these things as opposed to they were done by.  And if he
 2  didn't --
 3         MR. ROSS:  E-mails sufficient for that?
 4         THE COURT:  Pardon me?
 5         MR. ROSS:  Are e-mails sufficient for that or would
 6  you prefer a supplemental --
 7         THE COURT:  I think it is best to do a supplemental,
 8  but it doesn't need to be anything elaborate.
 9         MR. ROSS:  Thank you, Your Honor.
10         THE COURT:  That's all they talked about.
11         As to 13 check with Dr. Jouria and find out if he has
12  exact dates.
13         MR. ROSS:  We'll do.
14         THE COURT:  Or can narrow it down further than that
15  and supplement either we can't narrow it any further, or this
16  is either the exact date or a more narrow one.
17         As to 14, he has now made it clear that that's the
18  only one and he is bound by that.  And as to 17 and 18 that is,
19  in fact, covered by the prior ruling.
20         MS. LANIER:  Your Honor, forgive me.  Did you mention
21  number 12?
22         THE COURT:  Well, you didn't.
23         MS. LANIER:  Oh, my apologies.
24         THE COURT:  That's why I kept asking you if that was
25  it.  Do you want to tell me what your objection is to number
```

1  12?

2          MS. LANIER:  It is also a passive voice.

3          THE COURT:  Okay.

4          MS. LANIER:  I neglected it in my itemization.

5          THE COURT:  Okay.  All right.  So 12 is covered by the

6  prior ruling.  Just check and make sure that Dr. Jouria did

7  these things himself.  If not and other people were involved,

8  identify them.

9          MR. ROSS:  So that's 4, 9, 10, and 12 now?

10         THE COURT:  I think 10, 11, and 12.

11         MR. ROSS:  10, 11, 12.

12         MS. LANIER:  I have 4 and then 9 through 12.

13         THE COURT:  Okay.

14         MS. LANIER:  And 13 with respect to the dates.

15         THE COURT:  Yes.  Okay.  I think we're done.

16         MS. LANIER:  Thank you very much, Your Honor.

17         MR. ROSS:  Thank you, Your Honor.

18         THE COURT:  All right.  Thank you.

19          (Thereupon, the proceedings concluded.)

20

21

22

23

24

25

1

2                                    CERTIFICATE

3

4         I hereby certify that the foregoing transcript is an

5   accurate transcript of the audio-taped proceedings in the

6   above-entitled matter.

7

8

9

10
     11/22/17                        Bonnie Joy Lewis,
11                            Registered Professional Reporter
                                CASE LAW REPORTING, INC.
12                              7001 Southwest 13 Street,
                               Pembroke Pines, Florida 33023
13                                  954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25