30(b)(6)

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017

```
 1           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                        ---oOo---

 3    DR. JASSIN JOURIA                  )
                                         )
 4         Plaintiff,                    )
      vs.                                )
 5                                       ) CASE NO:
      CE RESOURCE, INC., d/b/a           ) 0:15-61165-WPD
 6    CME RESOURCE and NetCE,            )
                                         )
 7         Defendant.                    )
                                         )
 8    CE RESOURCE, INC., d/b/a           )
      CME RESOURCE and NetCE,            )
 9                                       )
           Defendant/                    )
10         Counter-Plaintiff,            )
      vs.                                )
11                                       )
      DR. JASSIN JOURIA,                 )
12                                       )
           Plaintiff/                    )
13         Counter-Defendant.            )
                                         )
14    CE RESOURCE, INC., d/b/a           )
      CME RESOURCE and NetCE,            )
15                                       )
           Defendant/Third-Party         )
16         Plaintiff,                    )
      vs.                                )
17                                       )
      Elite Continuing Education,        )
18    Inc. and Alpine Management         )
      Services III, LLC,                 )
19                                       )
           Third-Party                   )
20         Defendants.                   )

21            DEPOSITION OF SARAH CAMPBELL
                      30(B)(6)
22
                  November 14, 2017
23
                    EXHIBIT 2
24

25    DEPOSITION REPORTER:  KAYLA KNOWLES, CSR
```

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 2 of 11

30(b)(6)

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017

Page 237

```
 1    Q.  Any other reason why it states "text"?
 2    A.  No.
 3    Q.  Down one more, it states "a work made for hire."
 4  It says "yes."
 5        Do you know what that means?
 6    A.  I have a general understanding of that phrase as
 7  it's used in our freelance author agreements, and that's
 8  the context --
 9    Q.  What -- what is that understanding?
10    A.  That these were works made by an author with the
11  intent of them being the property of CE Resource or
12  NetCE.
13    Q.  Now, you stated that the works that were
14  copyrighted were the unedited drafts that Dr. Jouria
15  offered for NetCE.
16        What does NetCE contend are the works that
17  infringe those copyrights?
18    A.  The courses published by Elite with substantial
19  similarity to the courses that were copyrighted violated
20  the rights conferred as copyright holders.
21    Q.  So the courses published by Elite, is it NetCE's
22  contention that the revised articles that Dr. Jouria
23  submitted to Elite are not those works which NetCE
24  contends are infringing of the copyrighted works?
25    A.  I'm sorry.  Could you repeat that?
```

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 3 of 11

30(b)(6)   DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017   Page 238

1   Q.   Yes.  We have works that Dr. Jouria submitted to
2   Elite, and then we have Elite publications.
3        Do you understand those to be two different
4   works, or do you understand those to be the same work?
5   A.   I don't have substantial knowledge of Elite's
6   processes for making changes; so I can't answer that.
7   Q.   Okay.  Does NetCE typically revise -- strike
8   that.
9        Did NetCE revise, in any manner, the three
10  published articles that Dr. Jouria wrote for it?
11  A.   Yes.
12            MR. KERN:  I am going to interpose an
13  objection that Dr. Jouria has not yet in this case
14  produced for NetCE the documents that he submitted to
15  Elite; so this line of questioning is curious and
16  confounding because the witness has not had a chance
17  to -- or Counsel to review those, let alone to compare
18  them to the published versions.
19            MR. ROSS:  Aside from that not being a valid
20  objection, it's just not correct on the facts, but your
21  objection is noted.
22            MR. KERN:  They -- they -- they have not
23  been produced in the -- they have not been produced in
24  the proper format so that we can use them as evidence.
25            MR. ROSS:  Okay.

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 4 of 11

30(b)(6)                DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
                            Sarah Campbell on 11/14/2017                    Page 239

1   BY MR. ROSS:

2       Q.  As part of your interrogatory responses, you

3   identified a David Sains as an attorney.

4           Do you know that name?

5       A.  David Sains, yes.

6       Q.  And who is that?

7       A.  He is a lawyer who has advised and worked for

8   NetCE in the past.

9       Q.  Is he the individual who drafted the freelance

10  writer agreement at issue in this case?

11      A.  Yes.

12      Q.  Did Dr. Jouria have any input in drafting any of

13  the freelance writer agreements in this action?

14      A.  He had input insofar as the contract was

15  editable; so his name, how his name appeared, the topics

16  that were contracted, and the estimated deadlines were

17  all open to Dr. Jouria's input.

18      Q.  What about in paragraph 1 through 9 of the

19  freelance writer agreements?  Were those -- strike that.

20          1 through 10.  Were those written exclusively by

21  NetCE's attorney?

22      A.  Yes.

23      Q.  If you go to paragraph 9 in the freelance writer

24  agreements -- we will agree, will we not, Ms. Campbell,

25  that these freelance writer agreements are all the same

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 5 of 11

30(b)(6)        DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
                Sarah Campbell on 11/14/2017                    Page 245

```
 1   will be tomorrow.
 2          So as you sit here today, is there any other
 3   basis upon which you contend that Dr. Jouria breached
 4   any of the other seven freelance writer agreements at
 5   issue in this case?
 6          I'm sorry.  Are you thinking?
 7      A.  I am reviewing the document.
 8      Q.  Okay.  Thank you.
 9      A.  I don't have reason to believe, based on the
10   evidence that I have, that he breached the content --
11   I'm sorry -- breached the contract in ways other than
12   those that I described.
13      Q.  You've only described one way.  You said that he
14   provided the same or substantially similar content to
15   another company.  Was there another way?  You just said
16   "those," and I just thought it was one way.  Did I
17   misunderstand?
18      A.  It's only that one way.
19      Q.  Okay.  Do you understand from the contracts that
20   Dr. Jouria was free to write similar topics for other
21   companies with different content?
22      A.  I understand from the agreement that Jouria could
23   write on similar topics that did not infringe upon
24   NetCE's copyright.
25      Q.  And what does NetCE believe the copyright covers?
```

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 6 of 11

30(b)(6) | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017 | Page 247

1    Q.  Did you ask Dr. Jouria to do that for any of the
2    seven articles at issue in this case?
3    A.  None of the seven courses in question had gotten
4    to the point that they were imminently being released;
5    so they had not been provided to Jouria for his final
6    review and approval.
7    Q.  Dr. Jouria asked you in e-mails, did he not, why
8    haven't you sent the edited versions to him so that he
9    could approve them finally?
10   A.  I don't recall that question specifically.
11   Q.  Did you ever tell Dr. Jouria that -- you or NetCE
12   of any of the qualms or questions that you had regarding
13   his medical certification or alleged plagiarism?
14   A.  No, I did not.
15   Q.  Why not?
16   A.  I chose not to discuss that with Dr. Jouria
17   because we had already made the decision that we would
18   move forward with the seven courses and, in fact, ten
19   courses in total, and I did not feel that that
20   information would improve the relationship or the
21   products as --
22   Q.  What do you mean "move forward"?
23   A.  I mean, even after our discovery of his issues
24   with the licensing, we had decided we would continue to
25   develop all of the courses we currently had.

Case 0:15-cv-61165-WPD Document 183-2 Entered on FLSD Docket 12/15/2017 Page 7 of 11

30(b)(6)     DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017     Page 248

```
 1      Q.   But there was a point in time where you decided
 2   not to develop the courses that you had; correct?
 3      A.   That's correct.
 4      Q.   And when you say "licensing," what do you mean by
 5   that?
 6      A.   We had knowledge of the legal issues that
 7   Dr. Jouria had with the governing body for
 8   foreign-educated physicians and his continued seeking of
 9   or -- I don't want to speculate that he continued to
10   seek it, but he had not yet been licensed at that time
11   to practice in the United States.
12      Q.   NetCE dismissed two of the courses against Elite,
13   cardiovascular pharmacology and lymphatic immune system
14   articles; correct?
15      A.   That is correct.
16      Q.   Did NetCE dismiss those against Elite because
17   there was a determination made by NetCE that the
18   articles were not substantially similar to the articles
19   that Dr. Jouria wrote for NetCE?
20      A.   When we were able to evaluate the courses more
21   fully, we determined that the similarities, if there
22   were any, were not to the extent that they violated a
23   copyright.
24      Q.   Why haven't you dismissed those two articles
25   against Dr. Jouria?
```

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 8 of 11

30(b)(6)     DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017     Page 249

```
 1       A.   I don't know.
 2       Q.   Well, if you determine that they're not
 3   substantially similar enough to support a claim for
 4   copyright infringement, are you going to dismiss those
 5   claims against Dr. Jouria --
 6            MR. KERN:  Objection --
 7   BY MR. ROSS:
 8       Q.   Please.
 9            Are you going to continue to prosecute those
10   against Mr. Jouria?
11            MR. ROSS:  Go ahead and state your
12   objection.
13            MR. KERN:  Sorry.  Objection.  Misstates
14   testimony, and vague as to you keep referring to the
15   course and not defining whether you're talking about
16   Elite's published course or the ones that Dr. Jouria
17   submitted.
18            If you --
19            MR. ROSS:  I am talking about --
20            MR. KERN:  If you understand the question.
21   BY MR. ROSS:
22       Q.   Do you understand the question, Ms. Campbell?
23       A.   Could you repeat it?  I'm sorry.
24       Q.   Sure.  I want to know if you're going to continue
25   to prosecute your claims of copyright infringement
```

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 9 of 11

30(b)(6)                DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
                        Sarah Campbell on 11/14/2017                    Page 250

1   against Dr. Jouria for the cardiovascular pharmacology
2   and the lymphatic immune systems course published by
3   Elite.  Having said that, you don't find there is a
4   substantial similarity in the content of the Elite
5   publication -- those two Elite publications?
6        A.  I believe that the titles that you mentioned were
7   actually of the drafts that he had submitted to us, not
8   to the courses that Elite had published.  And I don't
9   know if we'll continue or not.  I don't know.
10       Q.  Well, you're NetCE today; so it's your position
11  that NetCE hasn't determined, as of today, if it's going
12  to continue to prosecute those claims?
13       A.  As of today, NetCE had not determined.
14       Q.  But NetCE, as of today, is continuing to
15  prosecute those claims.
16           You do understand that; correct?
17       A.  I understand.
18       Q.  Okay.  You testified a bit about a plagiarized
19  content.  Do you recall that with Mr. Wilson?
20       A.  Generally, yes.
21       Q.  What do you understand "plagiarized content" to
22  be?
23       A.  My --
24           MR. KERN:  Vague.
25           THE WITNESS:  My definition of plagiarism is

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 10 of 11

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017

30(b)(6)                                                                    Page 259

1  who purchased an Elite publication authored by
2  Dr. Jouria would otherwise have purchased a publication
3  from NetCE?
4     A.  I don't have evidence that they would or would
5  not have.
6     Q.  Can you point to any loss -- particular loss of
7  sale because a customer purchased a Jouria article from
8  Elite?
9     A.  I don't have any ability to gather that
10 information in terms of lost sales.
11    Q.  So you cannot point to any lost sale; is that
12 true?
13    A.  I don't know.
14    Q.  You don't know if you could point to a lost sale?
15    A.  The -- again, the customer confusion that we have
16 documented between customers who are confused between
17 Elite and NetCE, I don't know if that confusion was
18 triggered by a Jouria course or not; so I'm unable to
19 make the conclusion of whether that resulted in a lost
20 sale or not.
21    Q.  Well, I'm asking you today.
22        So you cannot -- it's true that you cannot today
23 point to a lost sale resulting from a Jouria article
24 that was published by Elite?
25    A.  I don't have evidence of a lost sale or a gained

Case 0:15-cv-61165-WPD   Document 183-2   Entered on FLSD Docket 12/15/2017   Page 11 of 11

30(b)(6) | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017 | Page 260

```
 1    sale due to Elite's publications.
 2        Q.   Is it NetCE's contention that it made
 3    $4.7 million in the publication of the multiple
 4    sclerosis Jouria article for it?
 5        A.   We calculated that special offer bundles that
 6    included the multiple sclerosis course were offered
 7    in -- starting in 2014 made a total revenue of
 8    $4.7 million.
 9        Q.   So is that how much money Dr. Jouria generated
10    for NetCE for that one course?  Is that what you're
11    stating?
12        A.   I'm stating that our publications that included
13    the multiple sclerosis course in special offer bundles
14    generated a revenue of $4.7 million between 2014 and the
15    two years that followed it.
16        Q.   And how much of that amount do you ascribe to
17    Dr. Jouria's article?
18        A.   I did not attempt to parse out the courses from
19    the special offer bundle.  But, also, I just -- I want
20    to make a note that those courses were Jouria's works,
21    and they were insomuch that he presented us with the
22    drafts.  But they were NetCE's courses, and we did make
23    changes in formatting to those courses to meet our style
24    requirements.
25        Q.   Well, I don't exactly know what that means, but
```