# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

                Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

                Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC.,

                Third Party Defendants.

_____/

**CE RESOURCE, INC. d/b/a CME RESOURCE and NETCE'S OPPOSITION TO JASSIN JOURIA'S MOTION FOR SUMMARY JUDGMENT DECLARING NO COPYRIGHT INFRINGEMENT AND NO BREACH OF CONTRACTS**

## INTRODUCTION

Defendant CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") hereby submits its Opposition to Plaintiff Dr. Jassin Jouria's ("Dr. Jouria" or "Plaintiff") Motion for Summary Judgment (Dkt. 183) (hereinafter, "Motion").  NetCE has adduced sufficient evidence to defeat Dr. Jouria's motion. Contrary to his suggestion, there is overwhelming evidence that Dr. Jouria breached his contracts and infringed NetCE's copyrights when he sold and distributed NetCE's articles to Elite.

Since this case began, Dr. Jouria has made every effort to deflect the overwhelming evidence of copyright infringement and willful contractual breaches.  He has resorted to multiple bankruptcy filings, unnecessary discovery-related motion practice, interim delay tactics, and evidence destruction.  Now, finally, NetCE has an opportunity to relay the strengths of its case against Dr. Jouria.

Despite these dilatory tactics, Dr. Jouria's summary judgment motion is grounded in neither fact nor law.  What is undisputed—and undisputable—is that each of the articles Dr. Jouria submitted to NetCE is registered with the United States Copyright Office.  Likewise, pursuant to the explicit terms of the parties' "Freelance Writer Agreements" ("FWAs"), the work for hire doctrine, and the registrations issued by the United States Copyright Office, NetCE is the sole author and lawful owner of the copyrights for the Seven Courses[1]—not Dr. Jouria.  As such NetCE has the exclusive right to copy, reproduce, and distribute copies of the Seven Courses or derivative works thereof.

It is also undisputed—and undisputable—that Dr. Jouria never obtained permission from NetCE to republish, reissue, resubmit, license or sell the Seven Courses covered by the Agreements.  As such, Dr. Jouria both infringed NetCE's copyrights by submitting and selling them to Elite for further publication without NetCE's permission, *and* breached the FWAs by re-selling the Seven Courses to Elite and denying NetCE the right of first refusal.

---

[1] Pursuant to the FWAs, Dr. Jouria submitted to NetCE the following courses: "COPD," "Decubitus Ulcers," "Multiple Sclerosis,"[1] "The Lymphatic and Immune Systems: A Comprehensive Review," "Traumatic Brain Injury," "Non-antibiotic Antimicrobial Pharmacology: A Review," "Clinical Cardiovascular Pharmacology," "Gastroesophageal Reflux Disease," "Cancer and Chemotherapy," and "Depression and Dementia in the Elderly." NetCE accepted manuscripts from and remitted payment to Dr. Jouria for each course—all ten courses were "approved for publication," as the term is used in the FWAs.  NetCE completed editing "COPD," "Decubitus Ulcers," and "Multiple Sclerosis," and made these three courses available to the public for sale.  Following the discovery of the infringement, NetCE ceased developing the remaining seven courses (hereinafter "Seven Courses").

## BACKGROUND FACTS

NetCE is a California-based company specializing in commissioning and publishing continuing education ("CE") courses for a variety of medical professionals in multiple subjects. Dkt. 164-1, ¶ 2-3.  To develop CE courses, NetCE contracts with independent writers, almost all of whom are licensed medical professionals, credentialed medical scholars and academics, or both.  NetCE's Statement of Facts in Opposition to Dr. Jouria's Motion for Summary Judgment (hereinafter, "J-SMFO"), ¶ 6.  The writers do so under standard, template contracts (the FWAs), identical—except for the name of the author, deadlines, course topics, author signature, and date of execution.  *Id.*

In 2012 and 2013, NetCE and Dr. Jouria executed ten FWAs, commissioning Dr. Jouria to write courses in the area of general medicine, internal medicine, and pharmacology.  J-SMF ¶¶ 8-9.  Seven of those courses and contracts are at issue in this lawsuit.[2]  *Id.*  Each FWA explicitly states that articles were "approved for publication" once payment was remitted to the author; that NetCE is the author of materials "approved for publication" under the work for hire doctrine (or, if submissions to NetCE were not considered works made for hire, then NetCE owned all copyright rights and all economic rights to materials submitted to it under the FWA); that NetCE had full leeway to edit and revise submissions; and that Dr. Jouria may not re-sell Articles submitted to NetCE under the FWA unless NetCE "explicitly rejects" the submission.  J-SMFO ¶¶ 8-9, 16, 18, 22, 45, 53.

Each FWA contains the following passages:

- Paragraph 5: "**Representations and Warranties of Writer:** …Writer will not submit the Article to any other party for publication unless and until NetCE expressly rejects the article…"  J-SMFO ¶ 45. (emphasis in original)

- Paragraph 7: "**Compensation**: …Writer acknowledges and agrees that [NetCE] will only pay writer for Articles that are approved for publication by [NetCE], and that [NetCE] has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer…."  J-SMFO ¶ 45. (emphasis in original).

---

[2] As defined in footnote 1, these Seven Courses are: "The Lymphatic and Immune System: A Comprehensive Review," "Traumatic Brain Injury," "Clinical Cardiovascular Pharmacology," "Non-Antibiotic Antimicrobial Pharmacology: A Review," "Gastroesophageal Reflux Disease," "Cancer and Chemotherapy," and "Depression and Dementia in the Elderly".

#54727635_v15

- Paragraph 9: "**Ownership and Assignment of Intellectual Property**: Writer hereby understands and agrees that all Articles approved for publication by [NetCE] under this Agreement shall belong exclusively to [NetCE].  Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and [NetCE] shall be deemd to be the author thereof.  If and to the extent any Article is determined not to constitute "works made for hire," writer hereby irrevocably assigns and transfers to [NetCE] and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article. … Without limiting the foregoing, [NetCE] has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with [NetCE] in editing, fact checking, and otherwise reviewing the Articles prior to publication…." J-SMFO ¶ 45. (emphasis in original).

Nevertheless, in early 2015, NetCE discovered that, without its permission, Dr. Jouria had sold the Seven Courses—the same courses covered by the FWAs—to Elite, one of NetCE's online and print publishing competitors, and that Elite had made five of those courses available for sale to the public. J-SMFO ¶¶ 7, 59-60;  By contract and by United States Copyright law, each of these Seven Courses was and is the property of NetCE.

Upon discovering these bad acts, NetCE sent a cease and desist letter to Dr. Jouria dated April 9, 2015.  J-SMFO ¶ 73. The letter summarized the contracts and provisions and asked that Dr. Jouria provide an accounting of his profits from his infringing activity. *Id*.  It also demanded that Dr. Jouria take all necessary steps to preserve evidence.  *Id*.

Instead of taking corrective action, and after leading NetCE to believe that he was still interested in working out a pre-litigation resolution, Dr. Jouria filed the above-captioned lawsuit for Declaratory Judgment on June 2, 2015, depriving NetCE of its role as the natural plaintiff.[3] Dkt. 1.  Despite having filed this lawsuit himself, shortly after NetCE filed a motion to dismiss or transfer this lawsuit to the United States District Court for the Eastern District of California, where it had filed a coercive action, Dr. Jouria then filed for Chapter 13 bankruptcy on October

---

[3] NetCE contends this action was filed purely as an anticipatory lawsuit for strategic venue purposes, filed while Dr. Jouria's counsel led NetCE to believe that settlement talks were ongoing and would result in a resolution between the parties.

#54727635_v15

23, 2015.  Dkt. 17.  Dr. Jouria's bankruptcy resulted in this Court's imposing an automatic stay of this lawsuit.  *Id.*

On May 10, 2016, Dr. Jouria's first bankruptcy case was dismissed with prejudice for 180 days and, shortly after this period expired, on December 30, 2016, Dr. Jouria re-filed.  *See* Dkt. 6 in Bankruptcy Case No. 16-27150-RBR (S.D. Fla.).  After NetCE presented evidence that Dr. Jouria was impermissibly using bankruptcy law to stave off this litigation, the Bankruptcy Court found he had filed in bad faith and dismissed his second filing *with prejudice* for 180 days on April 11, 2017.[4]  Dkt. 62-1. Accordingly, on April 21, 2017, this Court lifted its stay and, after being frozen for almost a full two years due to Dr. Jouria's antics, this case was at last allowed to proceed.  Dkt. 63.

Shortly thereafter, discovery commenced.  In Dr. Jouria's Preliminary Statements to NetCE's Requests for Production and Interrogatories, he wrote: "Plaintiff's records contained on his computer have been compromised in that his computer "crashed" and documents might have been lost. Plaintiff is producing what he has been able to recover."  J-SMFO ¶¶ 68-69.  This was not true.  In violation of the Federal Rules of Civil Procedure, Dr. Jouria had, in fact, already destroyed his computer, a truth his written, verified discovery responses conveniently omit.[5] *Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1990) (a court errs in deciding summary judgment if the record is incomplete: "summary judgment may only be decided upon an adequate record.").

Based on this behavior alone, this Court should deny Dr. Jouria's Motion.  Irrespective of Dr. Jouria's misrepresentations and his destruction of evidence, NetCE has within this

---

[4] The procedural conclusion of this second bankruptcy matter is complicated somewhat by the actions of Dr. Jouria's bankruptcy attorney following an evidentiary hearing on April 6, 2017.  Following the hearing, at which the bankruptcy judge announced his intention on how he was set to rule, Dr. Jouria submitted a notice of voluntary dismissal on April 11, 2017, which the court granted the next day.  The court nonetheless also issued an order dated April 13, 2017, following up on his oral ruling at the hearing, which granted NetCE's motion to vacate premised on Dr. Jouria using the bankruptcy court in bad faith.  This second bankruptcy case was officially closed on July 26, 2017.

[5] Dr. Jouria now seeks summary judgment with the following outstanding evidentiary issues hanging over the proceedings: (i) evidence that should have been disclosed and produced during fact discovery, but was not; (ii) discovery that Plaintiff refused to provide and testify to during depositions, and (iii) evidence forever lost because he destroyed his computer, despite a duty to preserve all evidence. The Court should deny his motion on these grounds alone.  A motion for terminating sanctions regarding Dr. Jouria's destruction of evidence is currently before Magistrate Judge Snow, and is set for hearing on January 11, 2018.

4

Opposition, the accompanying Statement of Facts in Opposition, and supporting materials put forth sufficient evidence to defeat this Motion.

## LEGAL STANDARD

A motion for summary judgment provides a procedure for terminating, without trial, actions in which "there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination the court's "function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

As the moving party, Dr. Jouria bears the burden of showing that there is an absence of genuine fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If he fails to make the requisite showing, "summary judgment must be denied even if no opposing evidentiary matter is presented." Adv. Comm. Notes to Fed. R. Civ. P. 56(e) (1963 Amendment). Even if Dr. Jouria meets this threshold, his motion still fails if NetCE "set[s] forth specific facts showing that there is a genuine issue for trial" or shows that "a reasonable jury could return a verdict" in his favor, *Anderson*, 477 U.S. at 248-249. All facts must be viewed in favor of non-movant NetCE—and this Court must draw all justifiable inferences in NetCE's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version."). Under these standards, Dr. Jouria's Motion must fail.

## ARGUMENT

### A.     Dr. Jouria Is Not Entitled to Summary Judgment on NetCE's Contract Claims

Dr. Jouria does not contest that he entered into the FWAs with NetCE. Motion at 3. Instead, he merely contends he did not breach the FWAs with NetCE. In essence, his position is: (i) he may sell any copyrighted materials owned by NetCE (those NetCE contracted him to write and paid him for writing), so long as he later edits or revises them; and, (ii) that because he subjectively, in the face of explicit assurance to the contrary, believed NetCE "expressly rejected" his articles (the articles for which Dr. Jouria received and accepted compensation) he was permitted to resell them. Both arguments lack merit.

**1.      Insufficient Evidence Supports Dr. Jouria's Interpretation of "Articles"**

Dr. Jouria attempts to inject ambiguity into the FWAs where there is none.  Dr. Jouria cites no evidence, case law, or testimony from Dr. Jouria, to support his contractual interpretation.  This Court should interpret the FWAs for their intended purpose—to protect NetCE's copyrights.

The "[i]nterpretation of a written instrument is generally a question of law." *Kitty-Anne Music Co. v. Swan*, 112 Cal. App. 4th 30, 37 (Cal. Ct. App. 2003) (citation omitted).[6]  The fundamental goal of contract interpretation is to effectuate "the mutual intention of the parties at the time the contract is formed...." Cal. Civ. Code § 1636. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638; *Bank of the W. v. Super. Ct.*, 2 Cal.4th 1254, 1264 (1992).  But contractual language must be interpreted in the context of the instrument as a whole, giving effect to each part, with each clause helping to interpret the other.  Cal. Civ. Code § 1641; *Bank Of The W.*, 2 Cal.4th at 1265.  The meaning of a contract may also be explained by reference to the circumstances under which it is made. *Id.*, Cal. Civ, Code § 1647.  But most importantly, "'[w]hen an instrument is susceptible to two interpretations, the court should give the construction that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity.'" (citations omitted.) *City of El Cajon v. El Cajon Police Officers' Ass'n.*, 49 Cal.App.4th 64, 71 (1996).

Here, only NetCE's reading of the FWAs is consistent with the rules for interpreting contracts.  NetCE's interpretation is also the only interpretation that harmonizes the FWAs with the protections of copyright law.  Despite the clear language of the Agreements, Dr. Jouria argues that the language is ambiguous because the term "Articles" is not specifically defined. Motion at 8.  But it is unclear why the omission of a definition of that term magically allows Dr. Jouria to sell slightly modified versions[7] of a copyrighted Article.  His argument is that he could

---

[6] Dr. Jouria concedes the Agreements are governed by California law.

[7] Dr. Jouria claims he sent modified versions of the Seven Courses to Elite.  Yet, because he destroyed his computer, the only computer he used for the Seven Courses, NetCE is unable to assess the extent of his editing, if any.  J-SMFO ¶¶ 67-73.  Whether Dr. Jouria slightly modified the Seven Courses before submitting them, at any rate, is irrelevant.  Under United States Copyright Law, of course, the owner of the copyright has the right to create derivative works and the right to works substantially similar to the copyrighted work. *Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 773 F. Supp. 2d 1288, 1309 (M.D. Fla. 2011) ("The copyright claimant of the derivative

not sell *the* "Article," (by which NetCE understands him to mean the exact document he submitted to NetCE under the FWA), but he *could* sell slightly revised "Articles" because, in his contorted view, the plural form of the word "Article*s*"—and the plural form alone—encompasses revisions and versions.   His argument simply does not present a reasonable interpretation of the plain language of the FWAs and is contrary to black letter copyright law. 17 U.S.C. § 106 ("[O]wner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; and (2) to prepare derivative works based upon the copyrighted work…); *Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999) (holder of copyright in an early version of program could bring action for copyright infringement based on alleged infringer's copying of later, unregistered version of program).

There is simply no language in the FWAs to suggest that "Articles" excludes "revisions or rewrites." Motion at 8.  In fact, the explicit language of the FWAs contemplate editing and revisions following receipt of the original Article manuscript and remittance of payment to the creator (in other words, editing and revisions following "approv[al] for publication").

Most importantly, however, Dr. Jouria concedes that the Articles were "works made for hire." Motion at 9, fn. 4. As such, NetCE is the author of the Article (or revised and edited Articles which constitute derivative works or substantially similar works) and the owner of the copyright to the Article.  *Sterpetti v. E-Brands Acquisition, LLC*, 2006 WL 1046949, at *4 (M.D. Fla. Apr. 20, 2006) ("when a work is made for hire, the employer, rather than the employee, is deemed the author…[t]he employer is the author of that work and thus the owner of the copyright."); 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.").

As the author and copyright holder, NetCE has the exclusive right to edit or revise the protected work and has all rights to any derivative works and/or works substantially similar. *Stewart v. Abend*, 495 U.S. 207, 211 (1990) ("The author of a pre-existing work may…use it in a derivative work."); *Cortner v. Israel*, 732 F.2d 267, 271–72 (2d Cir. 1984) ("The copyright

_____

work must have the consent of the holder of the copyright in the pre-existing work for the creation of the derivative work.").

#54727635_v15

owner possesses the rights to reproduce the copyrighted work and to prepare derivative works based on the copyrighted work, 17 U.S.C. § 106, and he may employ others to produce derivative works for hire, in which event, the owner, in the absence of a contrary agreement, acquires the copyright to the new material in the derivative work.") (internal citations omitted). Dr. Jouria's argument evidences a manifest misunderstanding of copyright law.  Dr. Jouria cannot sign a work for hire agreement, concede the Seven Courses are works made for hire, and somehow maintain he has the rights to edit and revise the work created pursuant to the FWAs.

Here, as the rightful copyright owner, NetCE *and NetCE only*, has the right to edit, revise, and modify the contracted Articles (the Seven Courses).  Any revisions, edits, and/or rewrites belong exclusively to NetCE, regardless of whether NetCE used "Article" or "Articles" in Paragraph 4 of the FWAs.  *On Davis v. The Gap, Inc*., 246 F.3d 152, 165 (2d Cir. 2001) ("[a] principal objective of the copyright law is to enable creators to earn a living either by selling or by licensing others to sell copies of the copyrighted work."). To suggest otherwise turns a blind eye to black letter copyright law and the broad rights afforded NetCE under the FWAs and principles of "works made for hire."

Even if, for some reason, this Court concludes the Articles (the Seven Courses) are not works for hire, under the plain language of the FWAs, Dr. Jouria also contracted away the rights to make revisions and edits of the Seven Courses.  Paragraph 9 of the Agreements at issue states, in relevant part:

> Writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation*, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article*…Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by the Writer herein, and that Writer will cooperate with CME in editing, fact checking and otherwise reviewing the Articles prior to publication. (emphasis added).  J-SMFO ¶ 45.

#54727635_v15

In addition to copyright law, the plain language of paragraph 9 of the FWAs precludes Dr. Jouria's argument that he can revise an "Article" as he deems fit.

Finally, Dr. Jouria's argument is also inconsistent with the purpose of the FWAs—to protect NetCE's copyrights.  It is nonsensical to assert that NetCE would pay writers to draft and submit an "Article," only to also allow writers the option to offer it (or slightly different versions of it) to other publishers.  J-SMFO ¶ 48.  Dr. Jouria's newly adopted interpretation was never communicated to NetCE during the negotiation of the FWAs.  Dkt. 184 at ¶¶ 9-10.  Such an interpretation results in NetCE holding only illusory rights, and is inconsistent with custom and practice in the publishing industry.

Here, the Seven Courses, and all copyright rights to them, belong to NetCE under both the work for hire doctrine of United States Copyright Law and the explicit terms of the FWAs. J-SMFO ¶¶ 8, 24, 45, 55, 60-63.  Dr. Jouria's sale of the Seven Courses ("Articles" under the FWA) to Elite breached the FWAs.  J-SMFO ¶¶ 8, 24, 59-61.  Dr. Jouria demands that this Court impose a restrictive definition of "Article" solely for purposes of retroactively rubber-stamping his conduct.  This Court should reject his invitation.[8]

## 2.    Dr. Jouria Proffers No Evidence NetCE Expressly Rejected the Articles

### (i) NetCE Approved Dr. Jouria's Articles for Publication

NetCE did not "expressly reject" the Seven Courses (the "Articles").  Dr. Jouria concedes he was paid for each of the Seven Courses. J-SMFO ¶¶ 22, 45, 60.  It is obvious that NetCE did not "expressly reject" Articles for which Dr. Jouria was paid.  Under Paragraph 7 of the FWAs, NetCE only pays for courses "approved for publication:

> Writer acknowledges and agrees that CME *will only pay writer for Articles that are approved for publication* by CME, and that CME has the sole and exclusive authority and discretion to determine

---

[8] NetCE believes that the FWAs are susceptible of only one reasonable interpretation—that advanced by NetCE.  If the Court determines that the term "Articles" is reasonably susceptible of Dr. Jouria's interpretation, and therefore that extrinsic evidence is admissible to support his interpretation, the resolution of the conflicting interpretations is one of fact, and is not appropriate for summary judgment.  *Nieder v. Ferreira*, 189 Cal.App.3d 1485, 1499 (1987) (interpretation of contract with consideration of extrinsic evidence is a question of fact not resolvable on summary judgment); *Horsemen's Benevolent & Protective Ass'n. v. Valley Racing Ass'n.* f 4 Cal.App.4th 1538, 1559 (1992) (same).

> whether or not to approve and/or publish any and all Articles
> submitted by Writer. (emphasis added).  J-SMFO ¶ 45.

Dr. Jouria conveniently omits this portion of the FWAs because it explicitly contradicts his wild interpretation of the FWAs and their effect.  His accepting of payment for the Articles (and not returning those payments) demonstrates unequivocally that NetCE accepted, and did not "expressly reject[]" the Articles. J-SMFO ¶¶ 22, 45, 60, 80.

NetCE's course development process functions in a systematic, linear fashion.  An author asks NetCE if NetCE is interested in a course on a particular topic.  J-SMFO ¶¶ 57-58.  NetCE then turns the author down or requests a full proposal.  *Id.*  The author creates and submits a proposal, including an abstract and outline of the prospective course.  *Id.*  After that, the Development Committee determines whether a course on such a topic would meet consumer need.  *Id.*  Once a proposal is approved or accepted, NetCE sends a FWA to the author for his or her execution.  *Id.*  After NetCE and the author execute the FWA, the author submits a full manuscript of the course.  *Id.*  Once NetCE receives the course, it ascertains whether all the required components are present and then, if the manuscript is complete, NetCE remits payment to the author and considers the course "approved for publication" under the FWA.  *Id.*  After the course is "approved for publication," NetCE begins curating, fact-checking, revising, and editing the course, and securing permissions for reprinted materials contained within it.  *Id.*  Finally, after this often lengthy process, NetCE sends a curated manuscript to the author for his or her final signoff.  *Id.*  Then, NetCE makes the course available for sale to the public *Id.*[9]

This editorial development process makes sense because NetCE would not claim copyright rights to any work for which it did not pay. The opposite also is logically consistent, that the author would not retain intellectual property rights for which NetCE did pay.  Here, Dr.

---

[9]     At the deposition of NetCE's 30(b)(6) witness, Elite confused the processes for course development and course marketing (or division planning).  J-SMFO ¶¶ 16, 18, 22, 24, 46.  The course development process concerns editorial decisions, including whether a course is "approved for publication" and the ensuing curation and editing of that course.  *Id.*  The course marketing (or division planning) process entails evaluating a course that has already been approved for publication, and determining whether to tailor the course for different customer markets.  J-SMFO ¶ 58.

For example, a division planner might review a course initially proposed and "approved for publication" under the FWA for nurses and determine that this course would be suitable to tailor and then make available for physicians.  *Id.*  The division planner review of a course is wholly separate from the mechanics of the FWA and has nothing to do with a course's being "approved for publication" under the FWA.

Jouria received payment for each of the Seven Courses and relinquished any right to them.  J-SMFO ¶¶ 15, 16, 18, 22, 47-48, 53, 56.

In order to support his "no breach" argument, Dr. Jouria conflates "approved for publication" as used in the FWAs with making a work *publicly* available for sale.  J-SMFO ¶¶ 16, 18, 22, 24, 46.  Unsurprisingly, he cites no authority in support. That is because there is none.

"Approval for publication" is a self-contained mechanism of the FWAs.  Under the explicit terms of the FWAs, "approval for publication" means that a manuscript for the Article that is the subject of the FWA has been submitted to NetCE and NetCE has remitted payment. *Id.*  "Publishing" in the parlance of the FWA clearly signifies making a work publicly available for sale.[10]  J-SMFO ¶¶ 8, 57-58.  Whether any of the Seven Courses was made "publicly available for sale" is irrelevant to whether Dr. Jouria breached the FWAs and infringed NetCE's copyrights: NetCE "approved" each of the Seven Courses "for publication" and therefore owned all copyrights to the Seven Courses.  J-SMFO ¶¶ 59-64.

No conduct, communication, paperwork, or deductive reasoning supports Dr. Jouria's conclusion that NetCE expressly rejected the Seven Courses (the "Articles").  In fact, all evidence points to the opposite conclusion.

### (ii)      No Evidence Supports that NetCE Expressly Rejected the Articles

Contrary to Dr. Jouria's argument, after NetCE "approved" the Articles "for publication" and after Dr. Jouria accepted the payments, NetCE continued to communicate with him that it was working to edit, revise, and prepare the Seven Courses for publication.  J-SMFO ¶ 51.

In fact, Dr. Jouria wrote to NetCE on October 7, 2014, requesting an update on the pending publication of the Articles.  He wrote, "I have been trying to contact Ms. Sarah Campbell regarding some courses I have authored for NetCE. *I believe that some courses are still pending publication*, and I wanted to get a status update on them, if possible. …." (emphasis added). *Id*.

NetCE responded "[t]hank you for checking in. We are working diligently on your additional courses (still in development) and hope to have several more published in the coming

---

[10] Paragraph 7: "…[NetCE] has the sole and exclusive authority and discretion to determine whether or not to approve *and/or publish* any and all Articles submitted by Writer."  Paragraph 9: "…Without limiting the foregoing, [NetCE] has the right to edit the Articles as it deems appropriation *for publication or use*…. And that Writer will cooperate with [NetCE] in editing, fact-checking, and otherwise reviewing the Articles *prior to publication*." (emphasis added).  J-SMFO ¶ 45.

weeks and months. Now, our focus is on the GERD course, which may be featured in an upcoming mailing." *Id.* Dr. Jouria responded, "Sounds great." *Id.* Unbeknownst to NetCE, Dr. Jouria would contract and sell the same Seven Courses ("Articles" in the FWAs) several months later to Elite. J-SMFO ¶¶ 31-32, 52-53, 59-60. Even subjectively, there is no basis for Dr. Jouria to believe NetCE "expressly rejected" his Articles after receiving correspondence communicating the exact opposite.

Dr. Jouria knew that once approved for publication the Articles required edits and revisions before being published to the public for sale. J-SMFO ¶¶ 6, 13[11], 22-24, 28. This was true of the Dr. Jouria Articles NetCE did publish publicly and the ones NetCE slated for public publishing. *Id.* His argument that a slight delay in publicly publishing the Articles amounts to an "express rejection," particularly in the face of Ms. Campbell's reassurances to him that NetCE was continuing to work on the Articles is not logical. It also simply makes no sense that NetCE would pay course authors, like Dr. Jouria, for content it had no intention of ever publishing.[12]

Dr. Jouria himself did not subjectively believe that NetCE had "rejected" the courses. In a communication to another CE competitor (NurseCE4Less) regarding NetCE's allegations of infringement against it, Dr. Jouria admitted that he could understand NetCE's grievances regarding his impermissible re-selling of the courses to other providers and that he was not sure that the courses were, in fact, "rejected." J-SMFO ¶ 80.

Finally, Dr. Jouria's claim that NetCE's choice to not make the Seven Courses available for sale to the public, after it learned Dr. Jouria sold them to Elite, and after Elite illegally published them, amounts to "express rejection" is meritless. Motion at 7-9. It puts the cart before the horse. It is axiomatic that NetCE would not invest additional resources readying Articles "approved for publication" after a competitor had improperly usurped its first to market advantage. J-SMFO ¶¶ 43, 74, 76-78.

**B.      Summary Judgment is Improper on NetCE's Copyright Claims**

Dr. Jouria does not challenge NetCE's copyright claims based on lack of substantial similarity, but has shifted his argument to whether NetCE owns the copyrights to the Articles.

---

[11] In the email exchange, Dr. Jouria submitted the Decubitus Ulcer course to NetCE on June 1, 2012, and completed his review of NetCE's edits on April 10, 2013.

[12] At her deposition as NetCE's 30(b)(6) witness, Ms. Campbell testified that the Seven Courses were commissioned with the intent to publish. J-SMFO ¶ 76.

Motion at 10.  In addition to the contractual mechanisms that convey ownership of the Seven Courses' copyrights to NetCE, as discussed at length above, Dr. Jouria's argument conveniently omits the fact that NetCE has valid copyrights registered with the United States Copyright office, registration effective May 15, 2015, to the Seven Courses.  J-SMFO ¶ 19.  NetCE's copyrights, in this judicial proceeding, constitute prima facie evidence of ownership and preclude summary judgment that NetCE does not own the copyrights.  17 U.S.C. § 410(c) (a copyright registration made within five years after first publication is prima facie evidence of the copyright's validity).

### (i)     Substantial Similarity

Dr. Jouria's motion argues that two—and only two—of the Seven Courses are not substantially similar.[13]  Motion at 11-12. Unfortunately, because Dr. Jouria's computer is destroyed, NetCE cannot definitely determine to what extent the material Dr. Jouria submitted to Elite may have or did overlap with the courses NetCE owned pursuant to the FWA.  Of course, comparing these two courses to the works Elite eventually published is of no help (and that is why NetCE dismissed its copyright claim against Elite as to these two courses) because what Dr. Jouria sold Elite may have been meaningfully different from Elite's final product.  J-SMFO ¶ 67-73.

Despite Jouria's destruction of evidence, NetCE can still prove to a jury that the remaining courses are substantially similar or derivative works of NetCE's.  The Eleventh Circuit recognizes that summary judgment is disfavored on questions of substantial similarity in copyright cases.  *Leigh v. Warner Bros., Inc*., 212 F.3d 1210, 1216 (11th Cir. 2000) ("Substantial similarity' is a question of fact, and summary judgment is only appropriate if no reasonable jury could differ in weighing the evidence"); *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1247 (11th Cir. 1999) ("[s]ummary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works"); *McCaskill v. Ray*, 2008 WL 2222056 at *3 (May 30, 2008) (same); *Campbell v. Osmond*, 917 F. Supp. 1574, 1580 (M.D. Fla. 1996) ("Ordinarily, issues of substantial similarity are fact issues left for jury resolution"). As such, this Court should allow NetCE to make its case to the jury.

---

[13] The two courses referenced in this section of the Motion are two of *Elite's* courses: 1) Women and Heart Disease; and Cardiovascular Diseases: The Leading Cause of Death in Women; and 2) The Basics of Pathophysiology.  See Dkt. 121.  Of course, NetCE's copyright case against Dr. Jouria is based upon what Dr. Jouria *submitted to Elite*, not what Elite published (NetCE's claims against Elite are based upon what Elite published).

Nor should NetCE be prejudiced by the indisputable fact that: (i) in June 2017, Dr. Jouria destroyed the only computer he owned that contained relevant evidence; (ii) that he then concealed his destruction of evidence in his responses to NetCE's discovery requests; (iii) that he then concealed his destruction of evidence in his supplemental responses to NetCE's discovery requests; (iv) that his legal counsel (Mr. Ross) then concealed Dr. Jouria's destruction of evidence during a telephonic discovery conference dedicated to the very subject; (v) that his computer contained potentially responsive evidence; (vi) that he destroyed his computer immediately after this Court lifted the bankruptcy stay; and that (vii) two years prior to his destruction of evidence, he received NetCE's written instructions to: "take all necessary steps to ensure that you preserve and not destroy---even inadvertently---any records (electronic or otherwise) potentially relevant [to this dispute]." J-SMFO ¶¶ 67-73. Dr. Jouria should not benefit from the absence of evidence—when that absence was of his own willful making.

With respect to the remaining Five Courses, Dr. Jouria concedes that the materials he submitted to Elite are substantially similar to those to which NetCE owns copyright rights. J-SMFO ¶ 64A. Even if Dr. Jouria did not so concede, the record attests to the substantial similarity of the remaining Five Courses. J-SMFO ¶¶ 37, 65.

### (ii) Direct Copyright Infringement of Seven Courses

To prevail on its claim for direct copyright infringement, NetCE must prove (i) ownership of the copyrights at issue and (ii) that Dr. Jouria, without authorization, reproduced, distributed, or otherwise used the copyrighted works in violation of NetCE's exclusive rights under 17 U.S.C. § 106. [14] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). This is easily accomplished. NetCE owns copyrights to the Seven Courses. J-SMFO ¶ 19. Dr. Jouria admits he executed the FWAs for the Seven Courses and that he was paid. J-SMFO ¶ 47. He also admits that he sold the Seven Courses or versions thereof to Elite. Nothing more is needed to prove direct infringement, precluding summary judgment in favor of Dr. Jouria. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 823 (11th Cir. 1982) ("an

---

[14] To establish a claim of copyright infringement, a copyright holder must show two things, first, that it owns a valid copyright in the allegedly infringed work and second that the infringer copied original elements of the protected work. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). A copyright holder may prove copying either directly or indirectly by establishing that the infringer had access to the copyrighted work and produced something "substantially similar" to the copyrighted work. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999)).

14

author has a valid copyright in an original work at the moment it is created-or, more specifically, fixed in any tangible medium of expression.");  *Pac. & S. Co. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir. 1984) (sale of copyrighted newscasts without authorization amounted to direct infringement).

In fact, Dr. Jouria admitted to direct infringement in correspondence with Elite. J-SMFO ¶ 28.  In an October 2013 exchange, Elite wrote, "I now understand that you used some of the materials in the course developed for us in courses that you sold to other companies…you have indicated that as much as 40% of the content of our courses was used in subsequent courses sold to our competitors."  Dr. Jouria responded, "[t]o be completely frank, I was under the impression that Elite (and all other organization [sic] I wrote for) used my content to develop their courses uniquely, as this was the case with NetCE."  *Id*.

Even if Dr. Jouria made minor revisions (there is no evidence that he did, due in part to his destruction of his computer) to the Seven Courses before he sold them to Elite he still engaged in direct infringement because he distributed or otherwise used NetCE's copyrighted works—or distributed or used materials substantially similar to or derivative works of NetCE's copyrighted works—without NetCE's imprimatur.  *Pac. & S. Co. v. Duncan*, 744 F.2d 1490, 1494 (11th Cir. 1984) ("A copyright grants to the owner several exclusive rights, including the right to reproduce the copyrighted work and to distribute copies to the public.");  *Montgomery v. Noga*, 168 F.3d 1282, 1293 (11th Cir. 1999) (citing Nimmer § 7.16[B][2] and concluding that the owner of a registered underlying work that is part of an unregistered derivative work may maintain a copyright infringement suit against a defendant who reproduces the derivative work—and thus the underlying work contained therein—without authorization).

### (iii) Contributory Infringement for Five Courses

NetCE has established evidence that Dr. Jouria directly infringed its works by reselling them to Elite.  J-SMFO ¶ 28.  But NetCE can also prove Dr. Jouria is liable for contributory infringement for Elite's infringing activities. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 930-31 (2005) ("[T]he well-settled test for a contributory infringer [is] 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'"); *Cable/Home Communication Corp. v. Network Production, Inc*., 902 F.2d 829, 845 (11th Cir. 1990) (same).  Dr. Jouria materially "contributed" to Elite's infringement of the Five Courses by furnishing them to Elite.  J-SMFO ¶¶ 52, 59, 64.  Elite could

not have directly infringed without Dr. Jouria's participation.  Dr. Jouria knew that infringement was likely to result because he knew that Elite purchased the Seven Courses from him with the intent to publish them.  J-SMFO ¶¶ 7, 28, 31, 32, 35, 37.

Dr. Jouria may argue that he did not *actually* know that Elite's publication would constitute infringement.  But a party may be liable for contributory infringement where he knew, should have known, or was willfully blind to the fact that the direct infringer's activities were infringement.  *Coach, Inc. v. Swap Shop, Inc*., 916 F. Supp. 2d 1271, 1281 (S.D. Fla. 2012) (actual knowledge not required, sufficient if the defendant knew or should have known of the infringing activity).  Dr. Jouria read and executed the FWAs, which state plainly that he signed away any rights he had in the Seven Courses to NetCE, and gave him clear constructive notice that publication of the Seven Courses by any party other than NetCE would constitute infringement.  J-SMFO ¶ 8.  Dr. Jouria refused to provide the FWAs to Elite, suggesting he knew that Elite would understand the courses were not his to sell.  J-SMFO ¶ 28.  Dr. Jouria may disagree that his client had constructive knowledge of likely infringement by Elite—or that his client was not willfully blind to Elite's infringement—because Dr. Jouria did not think that Elite's publication would constitute infringement.  This argument is belied by the evidence: Dr. Jouria knew or should have known, based on the plain language of the FWAs, that publication of the courses by another party would constitute infringement.  J-SMFO ¶¶ 8, 45-46, 54.  Dr. Jouria's disagreement with NetCE's deduction based on the record in itself would be a dispute of material fact precluding summary judgment.

For all of these reasons, the Court should reject Dr. Jouria's argument for summary judgment.

## C.      NetCE's Damages are Not Speculative

When the holder of a copyright seeks to recover actual damages, the copyright holder is entitled to a jury trial. *See Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340, 346 (1998); *Video Views, Inc. v. Studio 21, Ltd*., 925 F.2d 1010, 1014 (7th Cir. 1997) ("little question that the right to a jury trial exists in a copyright infringement action when the copyright owner endeavors to prove and recover its actual damages.").  Here, ample evidence exists to prove both breach of contract and copyright infringement.  That evidence also proves NetCE suffered actual damages as a result of Dr. Jouria's conduct.  His claim that summary judgment is warranted

because NetCE's damages are too speculative should be rejected, and the damages question should be posed to the jury.

The Copyright Act provides that a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).  Here, it is uncontested that Dr. Jouria was paid over $60,000 by NetCE.  J-SMFO ¶ 47.  It is also undisputed that NetCE spent additional time and money significantly editing and revising his courses.  J-SMFO ¶¶ 48-52.  Dr. Jouria also admits Elite paid him for the NetCE courses he surreptitiously sold them.  J-SMFO ¶¶ 28, 59.  These are actual damages.  *On Davis v. The Gap, Inc*., 246 F.3d 152, 159 (2d Cir. 2001) ([actual damages] undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act."); *Oceans of Images Photography, Inc. v. Foster & Smith, Inc*., 2012 WL 5878092, at *8 (M.D. Fla. Nov. 21, 2012) ("A low initial burden is placed on the copyright holder to make a showing of some causal connection between the infringement and the profits claimed.").

At minimum, Dr. Jouria admits he pocketed (and did not return) NetCE's payments for courses it was ultimately unable to use due to his infringement.  J-SMFO ¶ 59.  Dr. Jouria concedes, then, that NetCE has been damaged by his actions.  Motion at 9.  Dr. Jouria only disputes the amount and effect of such damage, which is a genuine dispute of material fact inappropriate for adjudicating at summary judgment.  *Id*.

Furthermore, NetCE has put forth admissible evidence in the form of declarations, deposition testimony, and an expert report that its course materials, catalogs, and web materials would have included the copyrighted works in order increase the sales and its marketing materials, and that NetCE has a demonstrated history of sales for these types of courses.  J-SMFO ¶¶ 43, 74-79.

NetCE's expert reports and declarations only reinforce NetCE's damages calculations. *Id*.  Under settled Eleventh Circuit precedent, summary judgment in favor of a movant on the question of damages is not appropriate where a non-movant submits expert affidavits that "present credible theories and measures of damages."  *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp*., 139 F.3d 1396, 1405 (11th Cir. 1998);  cf. *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 2015 WL 427817, at *11 (S.D. Fla. Feb. 2, 2015) (in a copyright case, the "presence of competing expert opinions sometimes causes courts to deny summary judgment

motions"). Dr. Jouria's motion, at best, raises triable issues of fact regarding damages. This precludes summary judgment. *See Home Design Servs., Inc. v. Hibiscus Homes of Florida, Inc*., 2005 WL 3445522, at *14 (M.D. Fla. Dec. 14, 2005)

Here, Dr. Jouria admits he has not deposed NetCE's expert (or even tried to), but he nevertheless challenges the expert report on prejudice grounds. Motion at 13. This is not grounds to grant summary judgment—but NetCE reiterates that Dr. Jouria's objection to the timeliness of its expert report lacks merit. Once again, the scheduling order in this case did not include an expert disclosure deadline, and therefore the applicable deadline under the Fed. R. Civ. P. 26(a)(2)(D)(i) is 90 days prior to the date the case is to be ready for trial, or December 12, 2017. Dkt. 170-171.

Even if the expert discovery disclosure deadline aligned with the fact discovery cut-off of November 15th, NetCE's 27-minute delay in formal service of the expert report was harmless and excusable. NetCE repeatedly has offered to make its expert available for deposition on a date convenient for Dr. Jouria. Elite has already served its own rebuttal expert report. Dr. Jouria's counsel has known since the case was filed that damages were a significant issue in the case and to argue at this stage that he is prejudiced by the timing of the expert report is disingenuous. *Id.*

Based on the record, there is clearly an issue of fact as to which damages NetCE may recover. NetCE is fully prepared to carry its burden and put forth sufficient evidence at trial to support its damages calculations, it should be given that opportunity.

<u>CONCLUSION</u>

Dr. Jouria has failed to meet its burden to show there are no genuine issues of material fact with respect to NetCE's claims for breach of contract, copyright, or actual damages. Dr. Jouria's interpretations of the FWAs—as discussed at length above—defy common sense and the plain language of the FWAs. Under the plain language of the FWAs, United States Copyright Law, and at least the work for hire doctrine, NetCE owns all copyright rights to the Seven Courses. His impermissible sale and distribution of the Seven Courses to Elite is direct copyright infringement. Dr. Jouria's knowledge that selling NetCE's copyrighted works to Elite for eventual publication constitutes contributory infringement. Finally, NetCE's damages are not even remotely speculative. There is evidence of actual damages and expert testimony to support all other claimed amounts, amounts which, it is suitable only for the jury to decide. Dr. Jouria

18

concedes that NetCE was damaged by his conduct, and only disagrees on the amount.  This is a dispute of fact precluding summary judgment.

      This Court should deny Dr. Jouria's Motion for Summary Judgment on all claims.


Dated: December 29, 2017                            Respectfully submitted,

                                                HOLLAND & KNIGHT LLP
                                                */s/ Philip E. Rothschild*
                                                Philip E. Rothschild
                                                Florida Bar No. 0088536
                                                Email: phil.rothschild@hklaw.com
                                                HOLLAND & KNIGHT LLP
                                                515 East Las Olas Blvd., 12th Floor
                                                Fort Lauderdale, FL 33301
                                                Telephone: (954)525-1000
                                                Facsimile: (954)463-2030


                                                */s/ John P. Kern*
                                                John P. Kern, Esq. (pro hac vice)
                                                Email: john.kern@hklaw.com
                                                Jessica E. Lanier, Esq. (pro hac vice)
                                                Email: Jessica.Lanier@hklaw.com
                                                HOLLAND & KNIGHT LLP
                                                50 California Street, Suite 2800
                                                San Francisco, CA 94111
                                                Telephone: (415)743-6918
                                                Facsimile: (415)743-6910
                                                Attorneys for CE RESOURCE, INC.
                                                d/b/a CME RESOURCES and
                                                NetCE


## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 29, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.


                                                  */s/ Philip E. Rothschild*
                                                Philip E. Rothschild

#54727635_v15

<u>**SERVICE LIST**</u>

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

20