## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

       Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

       Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC. and ALPINE
MANAGEMENT SERVICES III, LLC,

       Third Party Defendants.

_____

**CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE's STATEMENT OF FACTS
IN OPPOSITION TO DR. JOURIA'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Counter-Plaintiff, and Third Party Plaintiff CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") submits its Response Statement of Facts ("RSF").  The evidence cited herein has been filed either as exhibits to NetCE's Response Statement of Facts or as separately filed Declarations with exhibits to the Declarations.

### A.     Responsive paragraphs to Dr. Jouria's "Statement of Material Facts"[1]

6.     To develop CE materials NetCE also undertakes extensive editing, curating, fact-checking, and permission seeking before publishing any course.  The FWAs also differ from each other by the author's signature, date of said signature, and date of NetCE's execution of the FWA.  Declaration of Sarah Campbell ("Campbell Decl.") at ¶¶ 5, 10, 13, 14; Deposition of Sarah Campbell ("Campbell Dep."), attached as Ex. I to Campbell Decl., at 79:1–4, 125:12–128:23, 186:1–12, 239:23–240:3; 239:07-240:16; Dkt. 36-2.

7.     To NetCE's knowledge Dr. Jouria is not a publisher in the sense that he distributes and sells CMEs in final form to the public. Under copyright law, Dr. Jouria certainly published NetCE's work by the distribution and sale of the Seven Courses to Elite, which published the works (made them available for sale to the public) under his name.[2]  Dkt. 188-5 at p. 7–9.

8.     The Freelance Writer Agreements ("FWA") speak for themselves. *See* Dkt. 36-2 (Freelance Writer Agreements for Seven Courses), *e.g.*, at p. 7.

9.     Dr. Jouria and NetCE entered into seven (7) FWAs at issue in this case.[3]  Each FWA governs an individual course.  Under the terms of those FWAs NetCE owned all copyright rights to each course Dr. Jouria submitted to NetCE (including without limitation the rights to any derivative works).  Only five of the FWAs—those governing courses called "Gastroesophageal Reflux Disease" ("GERD"), "Non-Antibiotic Antimicrobial Pharmacology: A Review" ("NAAP"), "Traumatic Brain Injury" ("TBI"), "Depression and Dementia in the Elderly" ("Depression") and "Cancer and Chemotherapy" ("Cancer") (the "Five Courses") remain at issue

---

[1] Pursuant to Local Rule 56.1(a), these numbers correspond with the order and paragraph numbering scheme used by Dr. Jouria in its Statement.

[2] Additional documents disproving Dr. Jouria's Statements, including, but not limited to, documents or communications that address Dr. Jouria's breach of contract and copyright, may exist, but at this time cannot be identified because Dr. Jouria has refused to produce documents relating to his relationship with the third-parties, and because he destroyed his computer. Because Dr. Jouria has failed to produce all relevant evidence he should be precluded from asserting any fact is undisputed at the summary judgment stage.

[3] Ten FWAs were executed in total.

1

against Elite. *See* Dkt. 36-2, *e.g.*, at p. 7; Deposition of Jassin Jouria ("Jouria Dep."), Exhibit E to Declaration of John Kern ("Kern Decl.") at 75:22–77:20, 101:20–106:15; Campbell Dep. at 50:12–19; 53:5–10; 256:11–12; Dkt. 121 at p. 2.

10. *See* Paragraphs 8 and 9, above.

11. *See* Paragraphs 8 and 9, above.

12. NetCE does not dispute that California law governs the FWAs; Otherwise, NetCE incorporates Paragraphs 8 and 9, above.

13. See Paragraphs 8 and 9, above; Dr. Jouria submitted the courses electronically, he did not submit them in Roseville, California. Ex. D Kern Decl. (email excerpts between Dr. Jouria and NetCE introduced as exhibit 78 to deposition of Sarah Campbell) at p. 1.

15. Pursuant to the FWAs, Dr. Jouria submitted to NetCE the following courses: "COPD," "Decubitus Ulcers," "Multiple Sclerosis,"[4] "The Lymphatic and Immune Systems: A Comprehensive Review," "Traumatic Brain Injury," "Non-antibiotic Antimicrobial Pharmacology: A Review," "Clinical Cardiovascular Pharmacology," "Gastroesophageal Reflux Disease," "Cancer and Chemotherapy," and "Depression and Dementia in the Elderly." NetCE accepted manuscripts from and remitted payment to Dr. Jouria for each course—all courses were "approved for publication," as the term is used in the FWA. NetCE completed editing "COPD," "Decubitus Ulcers," and "Multiple Sclerosis" and made these courses available to the public for sale. Following the discovery of the infringement, NetCE ceased developing the remaining seven courses ("Seven Courses"). Dkts. 36-2, 188-9 at p. 8–11; Ex. J to Campbell Decl. (NetCE's Responses to Elite's Second Set of Interrogatories) at p. 4–5; Ex. K to Campbell Decl. (NetCE's First Supplemental Responses to Dr. Jouria's First Set of Interrogatories) at p. 3–12; NetCEB0020682, NetCEB0022138, NetCEB0022150, NetCEB0023711, NetCEB0024158, NetCEB0024581, NetCEB0020621[5], attached as Exhs. A-G to Campbell Decl.; Campbell Dep. at 76:4–9, 78:3–79:11, 80:7–81:19, 129:8–21, 239:23–243:22; Jouria Dep. at 75:22–77:20, 101:20–106:15.

---

[4] The final course titles as made available for sale to the public were: "COPD: An Overview of Pathophysiology and Treatment," "Multiple Sclerosis: A Comprehensive Review," and "Pressure Ulcers: Pathogenesis and Management."

[5] These documents were produced to Dr. Jouria as Bates numbered NetCE0000360, NetCE0002710, NetCE0002722, NetCE0005109, NetCE0005556, NetCE0006402, NetCE0000299. The Elite productions were produced to Dr. Jouria in PDF.

16. NetCE accepted manuscripts from Dr. Jouria for each course and remitted payment to Dr. Jouria for each course once "approved for publication," as the term is used in the FWA. NetCE did not pay Dr. Jouria for courses it did not approve for publication. Paragraph 7 of the FWAs, which states, "Writer acknowledges and agrees that CME **will only pay writer for Articles that are approved for publication** by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer." Campbell Dep. at 76:4–9, 78:3–79:11, 80:7–81:19, 129:8–21, 239:23–243:18; Jouria Dep. at 75:22–77:20, 101:20–106:15, 80:7–82:20, 122:10–127:10; NetCE's Responses to Elite's Second Set of Interrogatories, attached as Ex. J to Campbell Decl. at p. 4-5; NetCE's First Supplemental Responses to Dr. Jouria's First Set of Interrogatories, attached as Ex. K to Campbell Decl., at p. 3-12; *see* Dkts. 36-2, *e.g.*, at p. 3, 188-9 at p. 8–11; NetCEB0020682, NetCEB0022138, NetCEB0022150, NetCEB0023711, NetCEB0024158, NetCEB0024581, NetCEB0020621, attached as Exhs. A-G to Campbell Decl.

18. NetCE "approved for publication" (as the term is used in the FWAs) all courses Dr. Jouria submitted to NetCE under the FWAs, including the Seven Courses. Dr. Jouria mischaracterizes NetCE's response to Elite's Request for Production No. 32, which states:

> NetCE objects as this Request is ambiguous as to the phrase "approved for publication." NetCE never had the opportunity to approve the publication of the Seven Courses originally at issue in this lawsuit—NetCE discovered Elite's infringing publications before NetCE was able to approve and publish these courses. To the extent Elite requests documents discussing the decision whether to publish NetCE Courses, NetCE shall produce non-privileged documents responsive to this Request that are in its possession, custody, and control and to the extent it has not already produced such documents.

NetCE specifically objected to Elite's document request regarding its use of the phrase "approved for publication" as different than NetCE's use in Paragraph 7 of the FWAs, which states, "Writer acknowledges and agrees that CME **will only pay writer for Articles that are approved for publication** by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer." Campbell Dep. at 76:4–9; Jouria Dep. at 75:22–77:20, 101:20–106:15; Dkts. 36-2, *e.g.*, at p. 3, 188-9 at p. 8–11; NetCE's Responses to Elite's Second Set of Interrogatories, attached as Ex. J to Campbell Decl. at p. 4–5; NetCE's First Supplemental Responses to Dr. Jouria's First Set of Interrogatories, attached as Ex. K to Campbell Decl., at p. 3–12; NetCEB0020682,

NetCEB0022138, NetCEB0022150, NetCEB0023711, NetCEB0024158, NetCEB0024581, NetCEB0020621, attached as Exhs. A-G to Campbell Decl  As previously stated, once NetCE receives the course, it ascertains whether all the required components are present and then, if the manuscript is complete, NetCE remits payment to the author and considers the course "approved for publication" under the FWA. Campbell Dep. at 80:7–82:20; 122:10–127:10.  NetCE makes the course available for sale to the public only after it has been approved for publication.  NetCE's response thus draws a distinction between its use of the phrase "approved for publication" and Elite's use of the phrase.

Moreover, NetCE's response is not verified and is therefore not usable as evidence at the summary judgment stage. A written response to a Request for Production is not verified and therefore is not "evidence." *McCaskill v. Ray*, 279 Fed. Appx. 913, 914–15 (11th Cir. 2008) ("Unsworn statements . . . should not be 'consider[ed] in determining the proprietary of summary judgment.' Federal law . . . requires the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury.") (internal citations omitted); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements 'do[ ] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion.") (internal citations omitted) (present Rule 56(c)(1)(A) clearly omits responses to requests for production as allowable summary judgment evidence).

19.    *See* Paragraphs 8 and 9, above.  NetCE has federal copyright registrations for each of the Seven Courses.  NetCE owns all copyright rights for the courses (including without limitation the rights to any derivative works) Dr. Jouria submitted to NetCE under the explicit terms of at least Paragraph 5, 7, and 9 of the FWAs, the work for hire doctrine (as articulated in the FWAs and conceptually), the uncontested federal copyright registrations for the courses, and United States Copyright law. Dkts. 36-1 (Federal Copyright Registrations for the Seven Courses); 36-2, *e.g.*, at p. 2–3.

20.    The text of Paragraph 9 of the FWA speaks for itself; Otherwise, NetCE does not dispute that Dr. Jouria agreed that the Seven Courses were deemed works for hire. *See* Dkt. 36-2, *e.g.*, at p. 3.

22.    *See* Paragraph 18, above.  NetCE "approved for publication" (as the term is used in the FWAs) all courses Dr. Jouria submitted to NetCE under the FWAs, including the Seven Courses.  NetCE's response to Request for Production No. 32 is not verified and is therefore not

4

usable as evidence at the summary judgment stage. Dr. Jouria conflates NetCE's editorial processes (which concern "approval for publication" as the term is used in the FWAs) with the process of division planner review (which entails an examination of courses already "approved for publication" as the term is used in the FWAs). NetCE's testimony explains this distinction. Campbell. Dep. at 79:1–4, 80:10–81:11, 123:17–124:17, 125:12–128:23, 186:1–12, 242:1–23. Per Paragraph 7 of the Agreements, Dr. Jouria knew the Seven Courses were approved for publication because he accepted payment for them: "Writer acknowledges and agrees that CME **will only pay writer for Articles that are approved for publication** by CME, and that CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer." (Emphasis added). Dr. Jouria even stated, "To be honest, I'm not certain if the courses are rejected." Kern Decl. at ¶¶ 4-7, 32. Additional documents disproving the statement also exist, including, but not limited to, internal documents and communications with Dr. Jouria. Campbell Decl. at ¶¶ 12-15, 17; *see* Dkt. 36-2, *e.g.*, at p. 3.

23. NetCE ceased editing, fact-checking, curating, and requesting permission to reprint copyrighted tables and images included in the manuscripts for the Seven Courses after discovering Elite's infringement. When NetCE discovered Dr. Jouria's infringement, the Seven Courses were at different stages of editing, fact-checking, curating, and permission-seeking. NetCE, in ceasing editing, fact-checking, curating, and requesting permission to reprint, did not have an opportunity to schedule the Seven Courses for catalog placement because the lengths of the courses (apart from GERD) had not been finalized. Campbell Dep. at 106:12–18, 129:8–21, 201:22–202:3; Exhibit K to Campbell Decl. at p. 13–15. Dr. Jouria's infringement deprived NetCE of the opportunity to publish the Seven Courses.

24. NetCE owns all copyright rights for the courses Dr. Jouria submitted to NetCE under the explicit terms of at least Paragraph 5, 7, and 9 of the FWAs, the work for hire doctrine (as articulated in the FWAs and conceptually), the uncontested federal copyright registrations of the courses and United States Copyright law. NetCE does not dispute that the Seven Courses Dr. Jouria submitted were "works for hire." Dkts. 36-1, 36-2, *e.g.*, at p. 2–3, and 188-9 ¶ 6; NetCE's Responses to Elite's Second Set of Interrogatories is attached hereto as Campbell Decl. at Ex. K, p. 10-12.

25. *See* Paragraphs 22 and 24, above.
26. *See* Paragraphs 22 and 24, above.

5

28. *See* Paragraphs 8, 9, 22 and 24, above. In communications with Elite in October of 2013, Dr. Jouria admitted that he sold courses on the same or similar topics to NetCE and that there were significant proportions of overlapping content. In October of 2013, Elite asked Dr. Jouria if he had relinquished rights to the content and asked to see the contract with NetCE. Elite also asked Dr. Jouria to estimate the amount of content overlap. Dr. Jouria estimated only 40-50% overlap and refused to share the NetCE contracts. Dkt. 188-5 at p. 7–9.

29. *See* Paragraphs 22 and 24, above. NetCE "approved for publication" (as the term is used in the FWAs) all courses Dr. Jouria submitted to NetCE under the FWAs, including the Seven Courses. Additional documents disproving Dr. Jouria's statement, including, but not limited to, documents or communications that address Dr. Jouria's submission of the Seven Courses to Elite or other third parties, may exist, but at this time cannot be stated because Dr. Jouria has refused to produce documents relating to its relationship with the third-parties, and because he destroyed his computer. Because Dr. Jouria has failed to produce all relevant evidence he should be precluded from making the statement or asserting that it is undisputed. Dkt. 149; Kern Decl. ¶¶ 3-7.

30. *See* paragraphs 28 and 29, above.

31. Elite's Independent Contractor Agreement required Dr. Jouria to assist and revise courses. Dr. Jouria claims he revised the materials at Elite's request—after he submitted the initial Seven Courses and received payment from Elite. Elite relies on authors to help them edit the Seven Courses. Dkts. 93-4, ¶ 4; 188-5 at pp. 7–9; Jouria Dep. at 56:17-22.

32. Elite compensated Dr. Jouria for selling NetCE's copyrighted courses, not revised courses. NetCE owns all copyright rights for the courses Dr. Jouria submitted to NetCE under the explicit terms of at least Paragraph 5, 7, and 9 of the FWAs, the work for hire doctrine (as articulated in the FWAs and conceptually), the uncontested federal copyright registrations for the courses, and United States Copyright law. *See also* Paragraph 22, above. Dkts. 36-1, 36-2, *e.g.*, at p. 2–3; 93-4, ¶¶ 2, 5–6; 188-5 at pp. 7–9.

33. *See* Paragraphs 22, and 28–31, above.

34. *See* Paragraphs 18 and 22, above regarding Dr. Jouria's mischaracterization of "approved for publication." NetCE further objects to the statement on the grounds that the Seven courses Elite published, in addition to sharing "topics," also featured the exact same titles, extreme

6

overlap in content, words and structure, and organization. Dr. Jouria confirmed as much in communications with Elite in October of 2013. Dkt. 188-5 p. 7–9.

35. NetCE testified that *both* Elite's published courses and the course drafts that Dr. Jouria submitted to Elite infringed NetCE's copyrights. NetCE did not testify that *only* Elite's published courses violated its copyrights. NetCE owns all copyright rights for the courses (including all derivative works, etc.). Dr. Jouria submitted to NetCE under the explicit terms of at least Paragraph 5, 7, and 9 of the FWAs, the work for hire doctrine (as articulated in the FWAs and conceptually), the uncontested federal copyright registrations for the courses, and United States Copyright law. NetCE asserts that the courses Dr. Jouria submitted to Elite are substantially similar to those he drafted for NetCE. Campbell Dep. at 106:12–107:15.

36. Dr. Jouria mischaracterizes NetCE's testimony. NetCE testified that Dr. Jouria could write on "similar" topics so long as he did not infringe its copyrights. Campbell Dep. 245:22–24.

37. Dr. Jouria mischaracterizes NetCE's Interrogatory Response No. 6. NetCE provided an in-depth (two paged) response detailing its efforts to assess the similarity between its copyrighted courses and the courses Elite published and received from Dr. Jouria. Ms. Campbell also testified that she spent a full day comparing the infringing courses with the Seven Courses, including using an iThenticate scan to determine if any of the content in the Seven Courses was copyrighted by a third party. She also testified that she performed internet searches to determine if passages in the Seven Courses were published elsewhere. NetCE was unable to access all of Elite's courses during its initial assessment, but was able to view the learning objections of the Seven Courses. Campbell Dep. at 87:23–90:8, 95:6–96:22. Dr. Jouria is disingenuous in suggesting NetCE did not conduct a substantial similarity contest. Neither Dr. Jouria nor Elite contest substantial similarity for the Five Courses. NetCE's 30(b)(6) witness testified that her side-by-side comparison and "spot check" unequivocally confirmed substantial similarity and, in fact, often word-for-word copying. *Id.* The additional analysis about which Ms. Campbell testified concern NetCE's preparation for trial. Dkt. 149.

38. *See* Paragraph 37, above.
39. *See* Paragraph 37, above.
40. *See* Paragraph 37, above.

41. NetCE does not dispute that it dismissed its copyright claims against Elite as to Elite's *published* courses "Cardiovascular Pharmacology" and "The Lymphatic and Immune System" (the "Dismissed Courses"). NetCE was unable to access the entire course content of the two Dismissed Courses during its initial assessment, but was able to view the learning objections of the Dismissed Courses (to use Elite's phrasing). Based on NetCE's discoveries that the other five courses were copied in part or entirely, NetCE believed that Elite had also infringed the Dismissed Courses. Additional documents supporting NetCE's contention that Dr. Jouria infringed the Dismissed Courses, including, but not limited to, documents or communications that address Dr. Jouria's submission of the Seven Courses to Elite, may exist, but at this time cannot be identified because Dr. Jouria has refused to produce documents relating to its relationship with the third-parties, and because he destroyed his laptop—the only laptop he used to work on these Courses. Because Dr. Jouria has failed to produce all relevant evidence he should be precluded from making the statement or asserting that it is undisputed. Dkt. 149; Kern Decl. ¶¶ 3–7.

42. *See* Paragraph 41, above.

43. NetCE's 30(b)(6) witness testified multiple times that she was not the expert witness on damages and that she was not an accountant. Campbell Dep., 160:10, 24–25, 162:15–19. Nevertheless, NetCE provided qualitative testimony regarding the damage caused by Dr. Jouria's copyright infringement, including without limitation why "Multiple Sclerosis" was chosen as a benchmark course for calculating actual damages of lost sales, the typical financial performance for such a course, special offer versus standalone course revenue, catalog performance, NetCE's revenue from 2013 to 2017, and course lifespan and relative performance. NetCE published its catalogs on schedule (i) because it was a business imperative and (ii) in order to mitigate the damage from Elite's infringement. *Id.* at 134:3–170:16; Ex. K to Campbell Decl. (NetCE's First Supplemental Responses to Dr. Jouria's Interrogatories) at p. 20; Dkt. 188-9 at p. 6–8, 11–14.

**B.     Additional Uncontested Material Facts Related to Breach of Contract**

44. The Contributing Faculty Members who draft the CE course materials NetCE edits, markets, and publishes, do so under FWAs that contain identical terms, except for the course name and deadlines. Campbell Decl. ¶. 4; Dkt. 36-2.

45. Each FWA contains the following passages:

8

- Paragraph 5: "**Representations and Warranties of Writer:** …Writer will not submit the Article to any other party for publication *unless and until* [NetCE] expressly rejects the article…." (emphasis in original).

- Paragraph 7: "**Compensation**: …Writer acknowledges and agrees that CME will only pay writer for Articles that are *approved for publication by CME*, and that *CME has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles* submitted by Writer…." (emphasis in original).

- Paragraph 9: "**Ownership and Assignment of Intellectual Property**: Writer hereby understands and agrees that all Articles approved for publication by CME under this Agreement shall belong exclusively to CME. Without limiting the foregoing, Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and CME shall be deemed to be the author thereof. If and to the extent any Article is determined not to constitute "works made for hire," writer hereby irrevocably assigns and transfers to CME and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article. … Without limiting the foregoing, CME has the right to edit the Articles as it deems appropriate for publication or use in accordance with the rights granted by Writer herein, and that Writer will cooperate with [NetCE] CME in editing, fact checking, and otherwise reviewing the Articles prior to publication…."

Dkt. 36-2, *e.g.*, at p. 2–4 (emphasis in original).

46. Because Dr. Jouria executed the FWA, submitted a manuscript draft to NetCE, and NetCE remitted payment to Dr. Jouria, NetCE "approved for publication" as that term is used in the FWA each of the Seven Courses. Dkt. 36-2; Campbell Dep. at 75:22–76:19, 77:9–82:20, 118:15–126:28, 239:23–243:25; Jouria Dep. at 201:01-201:06.

47. Below is a table of the Seven Courses' FWAs, date of execution, and the amount NetCE paid Dr. Jouria for each course:

| Course Name (in FWA) | Date FWA Signed | Date of Payment | Amount of Payment |
|---|---|---|---|
| Traumatic Brain Injury | August 24, 2012 | December 6, 2012 | $3,975 ($25 deducted because wire transfer) |
| Cancer and Chemotherapy | January 15, 2013 | March 21, 2013 | $12,000 |
| Gastroesophageal Reflux Disease | January 15, 2013 | May 16, 2013 | $4,000 |
| Depression and Dementia in the Elderly | April 5, 2013 | April 18, 2013 | $12,000 |
| Non-Antibiotic Antimicrobial Pharmacology | October 12, 2012 | January 1, 2013 | $11,975 ($25 deducted because wire transfer) |

9

#54809806_v4

| Clinical Cardiovascular Pharmacology | October 12, 2012 | December 6, 2012 | $10,000 |
| Lymphatic and Immune System | May 10, 2012 | September 6, 2012 | $12,000 |

Dkt. 36-2, 188-9 at p. 13–14; NetCEB0020682, NetCEB0022138, NetCEB0022150, NetCEB0023711, NetCEB0024158, NetCEB0024581, NetCEB0020621, attached as Exhs. A-G to Campbell Decl.

48. NetCE does not pay authors for courses it has not "approved for publication." Campbell Decl. at ¶ 12; Campbell Dep. at 79:1–4, 81:15–19.

49. As Dr. Jouria began to submit his draft work for NetCE's evaluation and revision, NetCE discovered the work had significant deficits in three major areas: medical/scientific accuracy, grammatical and stylistic errors, and plagiarism. While NetCE budgets time for significant editing of grammar, style, spelling, and structure, Dr. Jouria's submissions required more editing than was typical for these types of courses. NetCE came to believe that Dr. Jouria copied sections of his submissions from a variety of different sources. Ex. C to Kern Decl. (email excerpts of Ex. 76 to deposition of Sarah Campbell), at p. 2; Campbell Dep. at 161:05-170:14.

50. NetCE utilized a plagiarism detection program called "iThenticate" to identify areas that were copied (in essence or exactly) and then removed offending passages, and in some cases obtained the original author's permission to reprint them, prior to getting the works ready for publication. iThenticate revealed that the tables of information Dr. Jouria included with his submissions were almost always copied from original sources with no indication as to their author or source and never with permission to reprint. Campbell Dep. at 106:12–107:15; Campbell Decl. ¶¶28-29; Dkt. 188-9 at Responses 1, 8–9.

51. Dr. Jouria reached out to NetCE after submitting manuscripts and receiving payment for courses under the Seven Courses' FWAs. In these emails, Dr. Jouria asked NetCE if it was still working on the courses. NetCE assured Dr. Jouria that it was still editing the courses and planning to publish and make them for sale to the public. Campbell Decl. ¶ 16; Exhibit H to Campbell Decl. (emails between NetCE and Dr. Jouria from October 2014).

52. At the time NetCE discovered Dr. Jouria's relationship with Elite, two of the NetCE courses—"Gastroesophageal Reflux Disease" and "Cancer and Chemotherapy"—were close to publication, with an estimated release date of March 1, 2015. The remaining five courses were tentatively scheduled to be completed and released sometime in 2015. Ex. K to Campbell Decl. (NetCE's First Supplemental Responses to Dr. Jouria's First Set of Interrogatories), at p. 3-10;

10

Campbell Dep. at 129:8–21, 201:22–202:3.

    53.    NetCE's response to Interrogatory No. 15 reads:

NetCE approved subject matter proposal for the Seven Courses (now five) at issue in this lawsuit with respect to NetCE's case against Elite, accepted manuscripts from Dr. Jouria on each topic, and remitted payment to Dr. Jouria for each manuscript on each topic. Dr. Jouria accepted each payment and never returned the payments or monies in the amount of such payments to NetCE (and he testified as much at his deposition). NetCE was in the process of editing, fact-checking, and curating these Seven Courses when it discovered Elite had infringed its copyrights and had published these courses without NetCE's permission. NetCE never explicitly rejected these courses or told Dr. Jouria it was not going to publish them. In fact, NetCE assured Dr. Jouria it was still editing and reviewing the courses he submitted to NetCE.

Ex. J to Campbell Decl. (NetCE's Responses to Elite's Second Set of Interrogatories) at p. 4–5.[6]

    54.    NetCE's first supplemental response to Dr. Jouria's Fourth Interrogatory states that the Seven Courses were NetCE's under the work for hire doctrine because Dr. Jouria submitted manuscripts to NetCE pursuant to the executed FWAs, and NetCE paid Dr. Jouria. Ex K to Campbell Decl. (NetCE's First Supplemental Responses to Dr. Jouria's Interrogatories) at p. 10–12.

    55.    NetCE's response to Interrogatory No. 6 reads, in part:

After Dr. Jouria executed each FWA and submitted a course draft pursuant to each particular FWA, NetCE paid Dr. Jouria the agreed-upon amount. The seven (7) courses at issue in the above-captioned litigation (and, indeed, the three (3) courses not at-issue in the above-captioned litigation) belong to NetCE under both the work for hire doctrine of United States Copyright Law and the explicit terms of the FWAs. Dkt. 188-9 at p. 10.

    56.    NetCE's First Supplemental Response to Dr. Jouria's Second Interrogatory states that Dr. Jouria received payment for each of the Seven Courses *after* he submitted a complete manuscript. Ex. K to Campbell Decl. at p. 4–7.

    57.    An author asks NetCE if NetCE is interested in a course on a topic. If NetCE is interested and requests a full proposal, the author submits the proposal, including an abstract and outline. If the Development Committee then determines the course topic would meet consumer need, the Committee approves the proposal. Then NetCE sends a FWA to the author for his execution. After NetCE and the author execute the FWA, the author submits a full manuscript.

---

[6] Mr. Wilson mistakenly attached NetCE's responses to Elite's first set of Interrogatories as Exhibit 9 to his declaration. This includes only NetCE's responses to Elite's Interrogatories Nos. 1-10.

#54809806_v4

Once NetCE receives the manuscript, it ascertains whether the manuscript contains all required components and, if so, NetCE remits payment to the author and considers the course "approved for publication" under the FWA. Then, NetCE begins curating and editing the course, and securing permissions for reprinted materials contained within it. After this lengthy process, NetCE sends a curated manuscript to the author for his final signoff. Then, NetCE makes the course available for sale to the public. Campbell Decl. at ¶ 5.

58. The course development process concerns editorial decisions, including whether a course is "approved for publication" and the ensuing curation. The course *marketing (or division planning) process* entails evaluating a course already approved for publication, and determining whether to tailor the course for different markets of consumers (for example, a course originally written for nurses might be adapted for physicians). *Division planner review of a course* has nothing to do with a course's being "approved for publication." Campbell Decl. at ¶¶ 5-7; Campbell. Dep. 79:1–4, 80:10–81:11, 123:17–124:17, 125:12–128:23, 186:1–12, 242:1–23.

59. In February of 2015, NetCE discovered that Dr. Jouria had materially breached seven (7) of the Freelance Writer Agreements and infringed its copyrights by publishing the Seven Courses through Elite. Campbell Dep. at 106:12–18, 129:8–21, 201:22–202:3; Exhibit K to Campbell Decl. (NetCE's First Supplemental Responses to Dr. Jouria's Interrogatories) at p. 13–15; Jouria Dep. at 56:17-22.

60. By submitting the Seven Courses (or substantially similar versions or derivative versions) to Elite, Dr. Jouria materially breached the terms of the various Freelance Writer Agreements he signed with NetCE, including, without limitation, the following provisions: (1) §5(d) ("Writer will submit the Article to any other party for publication unless and until [NetCE] expressly rejects the Article....") and (2) §9 ("Writer hereby understands and agrees that all articles approved for publication by [NetCE] under this agreement shall belong exclusively to [NetCE] . . . ." and "Writer agrees that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and [NetCE] shall be deemed to be the author thereof...."). Dkt. 36-2, *e.g.*, at p. 2–3.

**C.  Additional Uncontested Material Facts Related to Copyright Infringement**

61. NetCE has federal registrations for copyright for each of the Seven Courses titled: "Gastroesophageal Reflux Disease" ("GERD"), "Non-Antibiotic Antimicrobial Pharmacology: A Review" ("NAAP"), "Traumatic Brain Injury" ("TBI"), "Depression and Dementia in the Elderly"

("Depression"), "Cancer and Chemotherapy" ("Cancer"), "The Lympathic and Immune Systems: A Comprehensive Review," and "Clinical Cardiovascular Pharmacology." Dkt. 36-1.

62.     Pursuant to the terms of the Contracts, the work for hire doctrine, and the registrations issued by the United States Copyright office, NetCE is the sole author and lawful owner of the copyright for the Seven Courses Dr. Jouria submitted to NetCE. Dkts. 36-1, 36-2, *e.g.*, at p. 3.

63.     NetCE has the exclusive right to copy, reproduce, and distribute copies of the Seven Courses or derivative works thereof. Dkts. 36-1, 36-2, *e.g.*, at p. 3.

64.     Dr. Jouria never obtained permission from NetCE to republish, reissue, resubmit, or otherwise license the Seven Courses, identical versions of the Seven Courses, or substantially similar versions of the Seven Courses, or derivative works. Ex. K to Campbell Decl. at p. 18.

64A.    Dr. Jouria's motion argues that two—and only two—of the Seven Courses Elite published are not substantially similar. Dkt. 183 at p. 11-13.

65.     Ms. Campbell conducted a "side-by-side" comparison of several pages and sections of the courses that she was able to access as well as "spot checks." These spot checks revealed substantial overlap between the Elite published courses. Dr. Jouria provides no evidence regarding the substantial similarity of any course. Campbell Dep. at 95:6–96:22; Campbell Decl. ¶ 28.

66.     That NetCE's copyrighted works contain with them passages, excerpts, charts, etc., originally written by someone else (which in all cases NetCE has sought and received from the author permission to use and re-print) in no way affects or diminishes NetCE's ownership of the copyrights to the *entire work, as a whole,* represented in the Seven Courses, including those portions originally written by someone else.

67.     In June 2017, Dr. Jouria destroyed the only computer he owned that contained relevant evidence. Dkt. 150-7 at 191:14–195:4; Kern Decl. ¶¶ 3–7.

68.     Dr. Jouria concealed his destruction of evidence in his responses to NetCE's discovery requests. Dkts. 150-2 at p. 3–4, 150-3 at p. 3, 8.

69.     Dr. Jouria concealed his destruction of evidence in his supplemental responses to NetCE's discovery requests. Dkts. 150-4 at p. 3, 150-5 at p. 3.

70.     Dr. Jouria's counsel concealed Dr. Jouria's destruction of evidence during a telephonic discovery conference dedicated to the very subject. Dkt. 150-6.

13

71. Dr. Jouria's computer contained potentially responsive evidence. Dkt. 150-2 at Preliminary Statement # 7; Dkt. 150-3 at p. 3, 8.

72. Dr. Jouria destroyed his computer immediately after this Court lifted the bankruptcy stay. Dkt. 150-7 at 194:6-17; Dkt. 63.

73. Two years prior to his destruction of evidence, Dr. Jouria received NetCE's written instructions to: "take all necessary steps to ensure that you preserve and not destroy—even inadvertently—any records (electronic or otherwise) potentially relevant [to this dispute]." Dr. Jouria admits he destroyed his computer during this lawsuit. Dkt. 150-1 at p. 5.

### D.  Additional Uncontested Material Facts Related to Damages

74. Dr. Jouria's publication with Elite prevented NetCE from featuring Dr. Jouria's courses in NetCE's direct mailings. Because NetCE is unable to use the content Dr. Jouria submitted, Dr. Jouria's actions and publication with Elite set NetCE behind its competitors in offering courses in the above-described topics. Moreover, sales of Dr. Jouria's prior courses with NetCE may be depressed due to the high profile character of his relationship with Elite and customer confusion as to source. Campbell Dep. at 128:24–134:2; *See* Ex. B to Kern Decl. (Pampinella Expert Report ) pp. 13–22; Kern Decl. ¶ 22.

75. NetCE testified: (i) "featured" courses have greater revenue; (ii) courses authored by medical practitioners (like Dr. Jouria) are commissioned with the expectation they will be featured; (iii) the model course (Multiple Sclerosis) was a conservative example of sales for the purposes of damages because it was a 10-hour course and was featured in fewer catalogs than one of the other courses by Dr. Jouria NetCE had actually been able to sell; (iv) two of the Five Courses were 10- or fewer hours and the remaining three were 30-hour courses (pre-editing); (v) the model course was featured in three special offers; (vi) one could make an educated prediction about how a course would sell; (vii) NetCE commissioned the Five Courses to address a market need and to meet pharmacology requirements; (viii) Elite's infringement prevented NetCE from being able to sell the Five Courses *and* directly caused NetCE's inability to offer the amount of pharmacology credit otherwise possible; (ix) timing, marketing, geography quality, competition, publisher accreditation, and author identity could influence course performance; (x) the lifespan of a course before it is updated is three years; (xi) a course can be updated, featured, and sold for an indefinite period of time; and (xii) NetCE has been unable to replace the Five Courses with standalone offerings. Campbell. Dep. at 133:23–147:3.

76. NetCE testified that it was in the process of curating the courses at the time it discovered Elite's infringement and that it had every intention of publishing the courses at issue. Campbell. Dep. at 125:12–128:23; *see also* Campbell Decl. ¶ 16.

77. NetCE also testified that development work (including placement of the courses in catalogs) stopped on the Seven Courses due *entirely* to NetCE's discovery of Elite's infringement and that the only reason GERD was not included in the special offer catalog was due again to Elite's infringement. Campbell Dep. at 128:24–134:2.

78. NetCE also testified: "Before they were considered, we found the infringement and stopped development on the courses. … [The GERD course was not included because] [w]e found the infringements and determined that we should stop development of the course before it was released which disqualified it from being included in the special offer catalog." Campbell Dep. at 129:11–21. Ms. Campbell testified that GERD was cut from the Ohio nurses catalog due to length, but also testified that there were other catalogs for which the course would have been suitable: "Whether or not it was scheduled for other catalogs as a five-hour course is not clear." *Id.* at 132: 7–9. Unfortunately, Elite's infringement was a direct catalyst of NetCE's withdrawal of the courses from consideration and deprived NetCE of the opportunity. For Elite to suggest otherwise is disingenuous, at best. With respect to GERD's placement in a catalog, NetCE testified, unequivocally, that Elite's infringement halted the placement of the courses in subsequent catalogs: "We do not have documentation that GERD was planned for any other catalogs before we discovered the infringements, but we also hadn't set the catalog schedule for 2016, which we would have done in the next few weeks." *Id.* at 133:23–134:2.

79. Ms. Campbell stated multiple times during her deposition as NetCE's 30(b)(6) witness that she was not a damages expert or an accountant. Campbell Dep., 160:10, 24–25, 162:15–19.

80. In early 2015, NetCE contacted another CE Provider, NurseCE4Less, because NurseCE4Less had also infringed NetCE's copyrights by publishing courses Dr. Jouria authored that NetCE had purchased. NurseCE4Less contacted Dr. Jouria regarding the infringing courses, and Dr. Jouria indicated to NurseCE4Less that he was not sure the courses were, in fact, "rejected." Ex. F to Kern Decl. (Ex. 47 to Jouria Dep.) at pp. 1–2, 4; Campbell Dep. 110:8–112:12, 213:14–215:23.

Dated: December 29, 2017                                                  Respectfully submitted,

15

                                HOLLAND & KNIGHT LLP

                                */s/ Philip E. Rothschild*
                                Philip E. Rothschild
                                Florida Bar No. 0088536
                                Email: phil.rothschild@hklaw.com
                                HOLLAND & KNIGHT LLP
                                515 East Las Olas Blvd., 12th Floor
                                Fort Lauderdale, FL 33301
                                Telephone: (954)525-1000
                                Facsimile: (954)463-2030

                                */s/ John P. Kern*
                                John P. Kern, Esq. (pro hac vice)
                                Email: john.kern@hklaw.com
                                Jessica E. Lanier, Esq. (pro hac vice)
                                Email: Jessica.Lanier@hklaw.com
                                HOLLAND & KNIGHT LLP
                                50 California Street, Suite 2800
                                San Francisco, CA 94111
                                Telephone: (415)743-6918
                                Facsimile: (415)743-6910
                                Attorneys for CE RESOURCE, INC.
                                d/b/a CME RESOURCES and
                                NetCE


## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on December 29, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                */s/ Philip E. Rothschild*
                                Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**