# EXHIBIT J

Case 0:15-cv-61165-WPD   Document 199-10   Entered on FLSD Docket 12/29/2017   Page 1 of 12

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:15-cv-61165-WPD**

DR. JASSIN JOURIA

        Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant.
_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

        Plaintiff/Counter-Defendant.
_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Third Party Plaintiff,

v.

Elite Continuing Education, Inc. and Alpine
Management Services III, LLC,

        Third Party Defendants.

_____

**CE RESOURCE, INC.'s d/b/a CME RESOURCE and NETCE RESPONSES TO ELITE
CONTINUING EDUCATION, INC.'S SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and to Magistrate Snow's Standing Order (DE77), Defendant/Counter-Plaintiff/Third Party Plaintiff CE Resource, Inc. ("NetCE"), submits the following Responses and Objections to Third Party Defendant and Counter-Plaintiff Elite Continuing Education, Inc.'s ("Elite") Second Set of Interrogatories.

**PRELIMINARY STATEMENT**

NetCE's discovery, internal investigation, and preparation for trial is ongoing and has not been completed at the time of this response. NetCE bases its responses below solely on information it presently knows. Further discovery and investigation may reveal additional facts and evidence not presently known to NetCE. Further discovery and investigation may reveal additional facts and evidence not presently known to NetCE and upon which NetCE may rely at the time of trial. NetCE specifically reserves the right at the time of trial to introduce evidence from any source which it may hereafter discover—and testimony from any witness whose identity it may hereafter discover. If NetCE has unintentionally omitted information from these responses, NetCE reserves the right to rely upon and to present as evidence at trial such additional information as it may discover and/or develop during the course of this litigation. NetCE expressly reserves the right to object to the use of these responses or the subject matter contained herein during any subsequent proceeding, including the trial of this or any other action.

NetCE also reserves the right to amend the responses below: discovery is ongoing and NetCE will be able to provide more fulsome answers to some of the Interrogatories once it has received discovery responses and documents from Dr. Jouria and from Elite.

## INTERROGATORY RESPONSES

**INTERROGATORY NO. 11:**

Please explain the basis for your contention that "Dr. Jouria's publication with Elite prevented NetCE from featuring Dr. Jouria's courses in NetCE's direct mailings," as alleged in Paragraph 64 of the Third Party Complaint.

**RESPONSE TO INTERROGATORY NO. 11:**

Please see NetCE's responses to Interrogatory Nos. 4 and 5.

**INTERROGATORY NO. 12:**

Please explain the basis for your contention that "NetCE is unable to use the content Dr. Jouria submitted," as alleged in Paragraph 65 of the Third Party Complaint.

**RESPONSE TO INTERROGATORY NO. 12:**

Please see NetCE's responses to Interrogatory Nos. 4 and 5.

**INTERROGATORY NO. 13:**

Please explain the basis for your contention that "sales of Dr. Jouria's prior courses with NetCE may be depressed due to the high profile character of his relationship with Elite," as alleged in Paragraph 66 of the Third Party Complaint.

**RESPONSE TO INTERROGATORY NO. 13:**

NetCE commissions courses from multiple authors, some of whom propose and sell courses to other competing CME providers (including, in fact, Elite). NetCE, however, does not commission courses from authors on topics that other CME providers are curating or have

published and would strenuously object to any of its authors selling courses to competitors regarding the same subject matter as an active NetCE course.  Please also see NetCE's responses to Interrogatory Nos. 4, 5, 7, and 8.

**INTERROGATORY NO. 14**

Please explain the basis for your contention that "[a]s a result of Elite's publication, NetCE was unable to publish any of the seven (7) at issue articles," as alleged in Paragraph 69 of the Third Party Complaint.

**RESPONSE TO INTERROGATORY NO. 14:**

Due to a stipulation between NetCE and Elite, NetCE's case against Elite now only concerns five courses.  Please see NetCE's responses to Interrogatory Nos. 4 and 5.

**INTERROGATORY NO. 15:**

Please state whether the NetCE Courses were approved for publication by NetCE, and if so, when they were approved for publication, how they were approved for publication, and who at NetCE approved them for publication.

**RESPONSE TO INTERROGATORY NO. 15:**

Dr. Jouria and NetCE entered into ten (10) Freelance Writer Agreements ("FWAs"), each of which governed a course or single topic.  Pursuant to these ten (10) FWAs, Dr. Jouria submitted ten (10) courses to NetCE, and NetCE remitted payment to Dr. Jouria for each of the ten (10) courses.  (Dr. Jouria proposed an additional course, called "Heart Disease in Women." NetCE did not approve this course topic or execute a FWA regarding this topic because it already offered a similar course.)

4

NetCE finalized and published three of the courses developed pursuant to FWAs ("Multiple Sclerosis: A Comprehensive Review," "Pressure Ulcers: Pathogenesis and Management," and "COPD: An Overview of Pathophysiology and Treatment").

NetCE approved subject matter proposals for the Seven Courses (now five) at issue in this lawsuit with respect to NetCE's case against Elite, accepted manuscripts from Dr. Jouria on each topic, and remitted payment to Dr. Jouria for each manuscript on each topic.  Dr. Jouria accepted each payment and never returned the payments or monies in the amount of such payments to NetCE (and he testified as much at his deposition).  NetCE was in the process of editing, fact-checking, and curating these Seven Courses when it discovered Elite had infringed its copyrights and had published these courses without NetCE's permission.  NetCE never explicitly rejected these courses or told Dr. Jouria it was not going to publish them.  In fact, NetCE assured Dr. Jouria it was still editing and reviewing the courses he submitted to NetCE.

**INTERROGATORY NO. 16:**

Please explain how Your alleged copyright rights were "infringed through publication with NurseCE4Less," as alleged in Your Complaint filed on September 4, 2015 in the California Litigation. As part of your response, please identify the allegedly infringing courses published by NurseCE4Less, and the titles of the works that those courses allegedly infringed.

**RESPONSE TO INTERROGATORY NO. 16:**

Dr. Jouria evidently submitted courses substantially similar to (or identical to) the courses he had submitted to NetCE pursuant to valid and enforceable Freelance Writer Agreements. NetCE did not give NurseCE4Less (or, of course, Dr. Jouria) permission to publish, re-publish, or create derivative works of these courses.  In publishing works for which NetCE owned the copyright, NurseCE4Less, like Elite and Dr. Jouria, infringed NetCE's copyrights.

5

The infringing courses NurseCE4Less published include: (i) "The Lymph Nodes & Cancer" (parts I and II) (infringing "The Lymphatic and Immune Systems," a NetCE course), (ii) Trauma Series: Head Trauma (infringing "Traumatic Brain Injury," a NetCE course); (iii) Antibiotic Pharmacology (parts I, II, III, and IV), and (iv) Cardiovascular Pharmacology (parts I, II, and III).

**INTERROGATORY NO. 17:**

Please state the date(s) and means by which You provided Alpine with the information identified in Your response to Elite's Interrogatory No. 3.

**RESPONSE TO INTERROGATORY NO. 17:**

NetCE provided what it believed was Alpine with information orally, in writing (through "snail" mail), in-person, and electronically on several occasions in 2012, including without limitation an email dated November 6, 2012 (produced to Elite).

**INTERROGATORY NO. 18:**

Please identify all "literal and nonliteral similarity" allegedly exhibited between the course published by Elite under the title "Cardiovascular Diseases: The Leading Cause of Death in Women" and any of the NetCE Courses, as stated in Your response to Elite's Interrogatory No. 6.

**RESPONSE TO INTERROGATORY NO. 18:**

"Cardiovascular Diseases: The Leading Cause of Death in Women" is no longer at issue in the matter as between Elite and NetCE.

**INTERROGATORY NO. 19:**

6

Please identify all "literal and nonliteral similarity" allegedly exhibited between the course published by Elite under the title "The Lymphatic and Immune Systems" and any of the NetCE Courses, as stated in Your response to Elite's Interrogatory No. 6.

**RESPONSE TO INTERROGATORY NO. 19:**

"The Lymphatic and Immune Systems" is no longer at issue in this matter as between NetCE and Elite .

**INTERROGATORY NO. 20:**

Please explain the basis for your statement that "NetCE believes—and there is no available fact to contradict this belief—that each of the Seven Courses would have earned as much, if not more, in its lifetime of circulation. Multiplying $5 million by seven (7) yields $35 million dollars of lost revenue attributable entirely to Elite's infringement for the first year of circulation of each course alone," as referenced in Your response to Elite's Interrogatory No. 8.

**RESPONSE TO INTERROGATORY NO. 20:**

NetCE calculated this estimate based on the typical sales and revenue performances of courses of similar lengths.

**INTERROGATORY NO. 21:**

Please explain the basis for your statement that "[t]his latest instance of infringement is but the latest in a series of Elite's inappropriate and impermissible actions," as referenced in Your response to Elite's Interrogatory No. 10.

**RESPONSE TO INTERROGATORY NO. 21:**

NetCE (then CE Resource) began its business using the direct mail model, creating packaged continuing education booklets to meet all continuing education needs of the applicable

7

audience (at that time, nurses). When Elite entered the nursing continuing education market in 2006 or 2007, Elite copied this model to the extent that language and images in marketing materials, course booklets, and its online presence were strikingly similar to those of NetCE, and consumer confusion resulted.

In early 2012, NetCE noticed that Elite's cosmetology catalogs aped NetCE's formatting, coloring, layout, and font—in other words, Elite designed its materials to mimic NetCE's. In March 2012, CE Resource, Inc., sent a letter (through its attorney at the time, David Saenz) to Elite regarding Elite's willful infringement of its trade dress in its cosmetology continuing education catalogs (published as the DBA Paragon CET). Elite agreed to modify the format and color of its catalogs.

Elite redesigned its special offer booklets in 2012 or 2013, and the new design mimicked the look of NetCE booklets. (For example, the text had previously been three columns, but it changed to two; NetCE catalog text is in two columns. Further, Elite's customer evaluation forms and text layout within its catalogs mimicked NetCE's format.)

Moreover, specific language in Elite's special offer booklets is nearly identical to NetCE's language in its own offer booklets. This includes the company disclosure statement, evaluation instrument questions, and instructions for completion.

Troublingly, there is also evidence that Elite has attempted to profit from customer confusion that arose as a result of these similarities. For example, NetCE received a call from a customer who completed a NetCE course booklet, but mailed the completion forms to Elite. Submission of course forms is the point of payment for NetCE and, presumably, Elite. An Elite customer service representative reportedly told this customer that "NetCE is now Elite," and directed to complete the forms on Elite's website.

8

## VERIFICATION

I, Erin Meinyer, certify and declare that I have read the foregoing NETCE's RESPONSES TO ELITE CONTINUING EDUCATION INC.'S SECOND SET OF INTERROGATORIES and know its contents. Based on my personal knowledge and a reasonable and good faith inquiry, I believe the matters stated in the document described above re true.

I declare under penalty of perjury under the laws of the state of Florida under the United States of America that the foregoing is true and correct.

Executed on November 13, 2017 at Roseville, California.

_____
Erin Meinyer
Executive Director
CE Resource, Inc. d/b/a CME Resource and NetCE

#54308371_v1

Dated: November 15, 2017

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email: phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954)525-1000
Facsimile: (954)463-2030

*/s/ John P. Kern*
John P. Kern, Esq. (pro hac vice)
Email: john.kern@hklaw.com
Jessica E. Lanier, Esq. (pro hac vice)
Email: Jessica.Lanier@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415)743-6918
Facsimile: (415)743-6910
Attorneys for CE RESOURCE, INC. d/b/a
CME RESOURCE and NetCE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 15, 2017, I electronically served the foregoing document this day on all counsel of record or pro se parties identified on the attached Service List via email.

/s/ Philip E. Rothschild
Philip E. Rothschild

**SERVICE LIST**

Richard S. Ross, Esq.
915 S.E. 2nd Court
Fort Lauderdale, FL 33301
Email:  prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*
**[VIA E-MAIL]**

Peter A. Chiabotti, Esq.
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Email: peter.chiabotti@akerman.com
*Attorneys for Elite Continuing Education, Inc.*
**[VIA E-MAIL]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Email:  markwilson@mvalaw.com; katecole@mvalaw.com
*Attorneys for Elite Continuing Education, Inc.*
**[VIA E-MAIL]**