# EXHIBIT K

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

      Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

      Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

      Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

      Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

      Defendant/Third Party Plaintiff,

v.

Elite Continuing Education, Inc. and Alpine
Management Services III, LLC,

      Third Party Defendants.

_____/

## DEFENDANT, COUNTER-PLAINTIFF, AND THIRD PARTY PLAINTIFF NETCE's FIRST SUPPLEMENTAL RESPONSES TO JOURIA'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 26 and 33, and as directed by Magistrate Judge Snow's Order (hearing on August 24, 2017, written order issued August 29, 2017), Defendant/Counter- Plaintiff/Third Party Plaintiff CE Resources, Inc. ("NetCE") supplements its responses to Plaintiff and Counter-Defendant Dr. Jassin Jouria's First Set and Objections to Plaintiff and Counter-Defendant Dr. Jassin Jouria's ("Jouria") First Set of Interrogatories.

## PRELIMINARY STATEMENT

NetCE's discovery, internal investigation, and preparation for trial is ongoing, and NetCE has not completed its investigation at the time of this response. NetCE bases its responses below solely on information it presently knows. Further discovery and investigation may reveal additional facts and evidence not presently known to NetCE and upon which NetCE may rely at the time of trial. NetCE specifically reserves the right at the time of trial to introduce evidence from any source which it may hereafter discover and testimony from any witness whose identity it may hereafter discover. If NetCE has unintentionally omitted information from these responses, NetCE reserves the right to rely upon and to present as evidence at trial such additional information as it may discover and/or develop during the course of this litigation. NetCE expressly reserves the right to object to the use of these responses or the subject matter contained herein during any subsequent proceeding, including the trial of this or any other action.

#53494987_v2

## SPECIFIC OBJECTIONS AND RESPONSES

Defendant reserves the right to amend the responses below.

**Interrogatory No. 1:**

State the full name, address and position relative to the Defendant of the person(s) answering these Interrogatories and for each such person state what that person contributed.

**First Supplemental Response to Interrogatory No. 1:**

Sarah Campbell, Director of Development, NetCE; available through Holland & Knight

**Interrogatory No. 2:**

Identify every Freelance Writer Agreement ("FWA"), as that term is used in Para. 22, 34-35 of the Amended Counterclaim ("ACC"), between Plaintiff and Defendant, including those not at issue in this matter, if any, and for each, (a) identify the subject matter of the works, (b) whether Plaintiff submitted works to Defendant, (c) if Plaintiff submitted the works, which works were approved for publication, if any, (d) which works were published, if any, (e) identify who was the drafter of each of the FWA's, and (f) state the amounts paid by Defendant to Plaintiff for each work submitted.

**First Supplemental Response to Interrogatory No. 2:**

Dr. Jouria and NetCE entered into ten (10) FWAs, each of which governed a course or single topic. Pursuant to these ten (10) FWAs, Dr. Jouria submitted ten (10) courses to NetCE. (Dr. Jouria proposed an additional course, called "Heart Disease in Women." NetCE did not approve this course or execute a FWA regarding this topic because it already offered a similar course.)

In almost every respect, save the course title, author, and subject matter for each course, the FWAs are identical to each other. The FWAs are form template agreements, used by NetCE to

3

commission courses drafted by authors. Attorney David Saenz drafted the FWA body. Ms. Campbell drafted the information specific to each course (the "blanks" for title, author, and subject matter).

NetCE published three of the courses developed pursuant to FWAs.

(1) "Multiple Sclerosis: A Comprehensive Review" FWA

This course provided an overview of multiple sclerosis—its pathology, variations, symptoms, and common treatments. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. After extensive editing and fact-checking by NetCE, NetCE published the complete course. NetCE paid Dr. Jouria $6,000.[1]

(2)   "Decubitus Ulcers" FWA (final course name: "Pressure Ulcers: Pathogenesis and Management")

This course provided information about pressure sores (also known as bed sores), including treatment, harmful side effects, and preventative measures. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. After extensive editing and fact-checking by NetCE, NetCE published the complete course. NetCE paid Dr. Jouria $4,000 for this course.

(3)   "COPD" FWA (final course name: "COPD: An Overview of Pathophysiology and Treatment")

This course provided information about chronic obstructive pulmonary disease, an umbrella term used to describe lung diseases that obstruct normal breathing. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course

---

[1] For any of the payment amounts listed in response to this Interrogatory, Dr. Jouria had the option of receiving a wire transfer or a check. If Dr. Jouria opted for a wire transfer, NetCE deducted a transfer fee of $25 from the total amount remitted to him. NetCE notified Dr. Jouria of this transfer fee prior to selecting wire transfer for his method of payment.

objectives) to NetCE pursuant to this FWA. After extensive editing and fact-checking by NetCE, NetCE published the complete course. NetCE paid Dr. Jouria $6,000 for this course.

<u>NetCE did not publish seven of the courses developed pursuant to FWAs because NetCE discovered Elite had infringed its copyrights and had published these courses without NetCE's permission</u>.

(4)     "The Lymphatic and Immune System: A Comprehensive Review" FWA

This course provided information about the lymphatic and immune systems. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. NetCE did not publish material submitted pursuant to this FWA; Elite, without NetCE's authorization, published material submitted to NetCE pursuant to this FWA. NetCE paid Dr. Jouria $12,000 for this course.

(5)     "Traumatic Brain Injury" FWA

This course provided information about the manifestations, causes, treatment, symptoms, and pathology of severe injuries to the brain. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. NetCE did not publish material submitted pursuant to this FWA; Elite, without NetCE's authorization, published material submitted to NetCE pursuant to this FWA. NetCE paid Dr. Jouria $4,000 for this course.

(6)     "Clinical Cardiovascular Pharmacology" FWA

This course provided information about drugs used to treat cardiovascular diseases and conditions. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. NetCE did not publish material submitted pursuant to this FWA; Elite, without NetCE's authorization, published material submitted to NetCE pursuant to this FWA. NetCE paid Dr. Jouria $10,000 for this course.

5

(7)     "Non-Antibiotic Antimicrobial Pharmacology: A Review" FWA

This course provided information about antimicrobial drugs—drugs that are synthetic, semisynthetic, or natural that kill microorganisms without damaging the host organism (here, humans). Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. NetCE did not publish material submitted pursuant to this FWA; Elite, without NetCE's authorization, published material submitted to NetCE pursuant to this FWA. NetCE paid Dr. Jouria $12,000 for this course.

(8)     "Gastroesophageal Reflux Disease" FWA

This course provided information about gastroesophageal reflux disease, including treatments, symptoms, pathologies, and causes. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. NetCE did not publish material submitted pursuant to this FWA; Elite, without NetCE's authorization, published material submitted to NetCE pursuant to this FWA. NetCE paid Dr. Jouria $4,000 for this course.

(9)     "Cancer and Chemotherapy" FWA

This course provided information about cancer and treatment of cancer specifically using chemotherapy. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. NetCE did not publish material submitted pursuant to this FWA; Elite, without NetCE's authorization, published material submitted to NetCE pursuant to this FWA. NetCE paid Dr. Jouria $12,000 for this course.

(10)    "Depression and Dementia in the Elderly" FWA

This course provided information about manifestations of depression and dementia in elderly patients, in particular ways to distinguish whether a patient was suffering from depression

or dementia. Dr. Jouria submitted a complete draft course (including an abstract, course objectives, and text related to said course objectives) to NetCE pursuant to this FWA. NetCE did not publish material submitted pursuant to this FWA; Elite, without NetCE's authorization, published material submitted to NetCE pursuant to this FWA. NetCE paid Dr. Jouria $12,000 for this course.

**Interrogatory No. 3:**

For those works identified in Int. 2 above, describe in detail the process that Defendant engaged in from the time when the works were submitted by Plaintiff to actual publication. In this regard, please explain who received the works from Plaintiff, how the Defendant embarked upon approving the works for publication and who did the approvals, whether approval to publish was conveyed to Plaintiff, and how the works were revised or modified, and by who, and put in a form for publication as continuing medical education text.

**First Supplemental Response to Interrogatory No. 3:**

Due to Jouria's unauthorized and infringing submissions to Elite and Elite's unauthorized and infringing publication of seven (7) courses, NetCE was only able to publish three (3) of the courses Dr. Jouria submitted. (See Response to Interrogatory No. 2.) NetCE received proposals for each of the ten (10) courses from Dr. Jouria NetCE then used internally developed forms to "check in" the proposal and format it in accordance with the guidelines in NetCE's internal policies (included in the "Faculty Guide to Activity Development").

While reviewing each of the proposals, NetCE conducted a "needs assessment," a review of available literature to determine whether a need existed for education on the topic for the target audience. Ms. Campbell or another member of NetCE staff conducted the needs assessment for each course. The process generally takes an hour.

#53494987_v2

Ms. Campbell then sent the proposals to Division Planners for the target audience (*e.g.*, if the course is intended for nurses, Ms. Campbell sends it to NetCE's Nurse Division Planner for review). Ms. Campbell and other members of the editorial staff compiled feedback from the Division Planners. Ms. Campbell then typically relays any Division Planner-suggested proposal edits to the author. NetCE does not believe that Dr. Jouria's proposals required such edits.

After each of the ten (10) courses Dr. Jouria submitted went through this process, NetCE issued the respective FWAs to commission the creation of each course. Dr. Jouria returned executed copies of each of the ten (10) FWAs. Ms. Campbell then counter-signed the FWAs and returned copies to Dr. Jouria for his records.

After executing the FWAs, Dr. Jouria submitted drafts of the proposed ten (10) courses, as he completed them, in Word documents to Ms. Campbell via email.

NetCE then began reviewing each draft using systemized internal checklists and processes. NetCE ran iThenticate on each of the ten (10) courses at this stage. NetCE recorded iThenticate's "similarity index" (the program's measure of potential plagiarism) on the planning and development checklist for each of the ten (10) courses.

There is no established "cut off" for acceptable "similarity index" scores, as the primary sources iThenticate identifies includes works cited and quotations. Rather, NetCE uses "similarity index" hits to resolve drafting issues: with respect to the ten (10) courses Dr. Jouria submitted, Ms. Campbell altered the offending content or eliminated it entirely. Ms. Campbell then completed first edits of four (4)[2] of the ten (10) courses. In rare cases, if a course requires extensive rewrites, Ms. Campbell assigns the first edit to an independent editorial contractor. "Cancer and

---

[2] "Pressure Ulcers: Pathogenesis and Management," "COPD: An Overview of Pathophysiology and Treatment," "Multiple Sclerosis: A Comprehensive Review" (each of which NetCE published), and "Gastroesophageal Reflux Disease" (never published by NetCE)

#53494987_v2

Chemotherapy" was one such course. NetCE assigned the first edit of this course to Independent Editorial Contractor Kate McPike of Tek-Ed, Inc.

The first edit for each of these five (5) courses Dr. Jouria submitted involved extensive rewriting, formatting, and ensuring the text appropriately supported statements with accurate citations. This process takes at least eight (8) hours—longer if the necessary changes are extensive. At this point, with each of the three (3) courses NetCE ultimately published, and with "Gastroesophageal Reflux Disease" and "Cancer and Chemotherapy," Ms. Campbell obtained permission[3] and paid for licenses from the appropriate copyright holders to reprint images and tables.

With respect to the three (3) courses NetCE published, Ms. Campbell, as is common NetCE practice, finalized her edits and submitted the revised course to Division Planners for their input and evaluation. NetCE sends courses in need of additional editorial work to Dr. John Leonard, one of NetCE's Division Planners and a NetCE consultant. NetCE sent each of the three (3) courses NetCE published (as well as "Gastroesophageal Reflux Disease," which NetCE was ultimately unable to publish) to Dr. Leonard. Each of these courses needed extra editorial attention (far more than typical for similarly structured courses worth equivalent credits) due to problems with citations, supporting citations, grammar, syntax, and fact-checking.

The three (3) courses that made it past this stage (the courses ultimately published) next arrived at NetCE's graphics department for layout design. Then, Ms. Campbell reviewed the courses for additional small edits and final read-throughs. Before NetCE published the remaining three (3) courses, Ms. Campbell sent Dr. Jouria copies for his final approval. He reviewed the

---

[3] Dr. Jouria's drafts included multiple tables and images without attribution to the original copyright holders.

manuscripts—which incorporated NetCE edits—and signed off on publication. Once NetCE published, NetCE mailed Dr. Jouria hard copies of each of the three (3) the published courses.

During Ms. Campbell's first edit of "Gastroesophageal Reflux Disease," she discovered Elite's unauthorized and infringing publication of this course, as well as Elite's unauthorized and infringing publication of the remaining six (6) unpublished courses subject to valid and enforceable FWAs. By this time, Ms. Campbell had spent roughly forty (40) hours editing "Gastroesophageal Reflux Disease." Once the unauthorized infringing publications were discovered, Ms. Campbell ceased work on the remaining unpublished courses.[4] (See Response to Interrogatory No. 2.)

After NetCE published the three (3) courses, NetCE filed applications for copyright registration with the United States Copyright Office. NetCE filed applications to register the seven (7) unpublished courses for copyright in May of 2015.

**Interrogatory No. 4:**

Explain all factual bases for alleging the works created by Plaintiff pursuant to the FWA were "works for hire" as alleged in Para. 23 and 84 of the ACC, and state whether Defendant still considers the works as "works for hire."

**First Supplemental Response to Interrogatory No. 4:**

Dr. Jouria submitted each of the seven (7) courses at issue in this litigation to NetCE after Dr. Jouria and NetCE executed FWAs describing the course subject matter and NetCE commissioned the courses. Each of the FWAs Dr. Jouria signed contains this statement: "Writer hereby understands and agrees that all Articles approved for publication by [NetCE] under this Agreement shall belong exclusively to [NetCE]. Without limiting the foregoing, Writer agrees

---

[4] Once NetCE discovered the infringement, NetCE asked Ms. McPike to cease work on "Cancer and Chemotherapy." By this point, Ms. McPike had expended several of hours of work (billed to NetCE) on this course.

that, to the maximum extent allowed by law, all such Articles shall be deemed to be 'works made for hire' under all relevant copyright laws, and [NetCE] shall be deemed to be the author thereof. If and to the extent any Article is determined not to constitute 'works made for hire,' Writer hereby irrevocably assigns and transfers to [NetCE] and its successors and assigns all right, title, and interest in and to the Article, including all copyright rights (including but not limited to rights in audiovisual works and moral rights), patent rights, trade secret rights, trademark rights, rights of privacy and publicity, and any other intellectual property rights, and all economic rights, including, without limitation, the rights to reproduce, manufacture, use, adapt, modify, publish, distribute, sublicense, publicly perform and communicate, translate, lease, import, in each case, in any medium, and otherwise exploit the Article. … [NetCE] has the right to edit the Articles as it deems appropriate for publication or us in accordance with the rights granted by Writer herein, and that Writer will cooperate with [NetCE] in editing, fact checking and otherwise reviewing the Articles prior to publication. Writer will be credited as the original author of the Article in any and every republication. Writer acknowledges and understands that at no time shall Writer have any right to block publication of an Article provided that [NetCE] removes Writer's name from said Article." (Paragraph 9, p. 2)

The FWAs also state (Paragraph 7, p. 2): "…[NetCE] has the sole and exclusive authority and discretion to determine whether or not to approve and/or publish any and all Articles submitted by Writer."

Finally, the FWAs state (Paragraph 5, p. 1): "…Writer will not submit the Article to any other party for publication unless and until CME expressly rejects the Article…"

The Faculty Guide, issued to all individuals who submit content to NetCE for publication pursuant to FWAs, including Dr. Jouria, contain a number of statements regarding the intellectual

11

property rights in courses submitted to NetCE. Page 8 of the Faculty Guide states that "Upon the contributing faculty member's [writer's] receipt of payment, the submitted activity becomes the sole property of NetCE. This will be copyrighted material. There is no guarantee made to the faculty member as to whether, when, or where the activity will be published." and "Accepted manuscripts become the property of NetCE and may not be published elsewhere without the written permission of NetCE."

After Dr. Jouria executed each FWA and submitted a course draft pursuant to each particular FWA, NetCE paid Dr. Jouria the agreed-upon amount.

The seven (7) courses at issue in the above-captioned litigation (and, indeed, the three (3) courses not at-issue in the above-captioned litigation) belong to NetCE under both the work for hire doctrine of United States Copyright Law *and* the explicit terms of the FWAs.


**Interrogatory No. 5:**

State whether the person or persons who filed the U.S. copyright applications referenced in Para. 25 of the ACC had authority to so file on behalf of Defendant, whether the statements contained in the applications and registrations resulting therefrom are true and correct (Ex. A to the ACC), and identify the entire deposit specimen that Defendant submitted to the U.S. Copyright Office in support of each of the said copyright applications referenced in Para. 25 of the ACC.

**First Supplemental Response to Interrogatory No. 5:**

Implementation Coordinator Corrie Camp filed the copyright applications for each of the seven (7) courses at issue in this Litigation, and she had authority to do so on behalf of NetCE. To the best of NetCE's current knowledge, the statements contained in the applications and issuing

12

registrations are true and correct. NetCE filed for copyright electronically, but mailed in specimens (two copies of each course) as required.

**Interrogatory No. 6:**

Explain in detail the due diligence Defendant undertook prior to filing suit to determine that the works submitted to it by Plaintiff, were identical or substantially similar to the works Plaintiff allegedly submitted to Elite Continuing Education, Inc. ("Elite").

**First Supplemental Response to Interrogatory No. 6:**

In February of 2015, the seven (7) courses at issue in this Litigation were in various stages of development (editing, fact-checking, re-writing and wordsmithing, locating sources for cites to illustrations and certain factual assertions, etc.). Ms. Campbell was working on "Gastroesophageal Reflux Disease." As part of the editorial review of this course, Ms. Campbell was searching for references for statements and statistics in the draft Dr. Jouria submitted that lacked supporting references. In the course of searching the internet for citations for statements in this particular course, Ms. Campbell found that a sentence from the operative NetCE draft of the course appeared verbatim in a course (of the same title) published at https://nursing.elitecme.com/CA/course/NCA06GEI15 on Elite's website.

Upon further manual review of the published course, Ms. Campbell determined that the entire course featured on Elite's website (i) was nearly identical to the draft of the course Dr. Jouria submitted to NetCE in early 2013 and (ii) appeared to have been published after NetCE and Dr. Jouria executed the Gastroesophageal Reflux Disease FWA and paid Dr. Jouria for the content.

Further review of the Elite website (the same day) revealed that Elite had published on its website, without NetCE's permission, *all seven (7) courses at issue in this litigation*.

13

#53494987_v2

When Dr. Jouria originally submitted drafts of the seven (7) courses to NetCE in 2012 and 2013, Ms. Campbell conducted internet searches to ensure that the courses Dr. Jouria submitted were not available or published elsewhere. None of the seven (7) courses were available on Elite's website at that time. Ms. Campbell also ran the seven (7) courses' drafts through iThenticate plagiarism detection software, and, at that time, the software did not detect matches to any Elite courses.

Once NetCE noticed irregularities in Dr. Jouria's application for a medical license and academic credentials in late 2013, Ms. Campbell again conducted searches to ensure the draft courses NetCE was vetting and editing were not published elsewhere. The seven (7) courses were not published by Elite at the time Ms. Campbell conducted this search. (At this point, after conferring regarding Dr. Jouria's misrepresentations about his bona fides, NetCE determined it would accept no additional course proposals from Dr. Jouria. NetCE also determined it would finish editing and finalizing the ten (10) courses Dr. Jouria had already agreed to draft.)

When the infringement was discovered, Ms. Campbell conducted a visual side-by-side comparison of the NetCE drafts and the impermissibly published Elite courses. Five (5) rough drafts ("Traumatic Brain Injury," "Non-Antibiotic Antimicrobial Pharmacology: A Review," "Gastroesophageal Reflux Disease," "Cancer and Chemotherapy," and "Depression and Dementia in the Elderly") of the seven (7) courses Dr. Jouria submitted to NetCE had been published *almost exactly* as the rough drafts submitted to NetCE. The remaining two (2) courses ("The Lymphatic and Immune Systems" and "Cardiovascular Pharmacology") were not reprinted verbatim, but significant sections of these courses were featured in what Elite published. Ms. Campbell attempted to run an iThenticate scan comparing the NetCE draft to the courses Elite impermissibly published, but iThenticate had difficulty accessing Elite's content (presented as an online PDF).

The similarities between the two sets of courses, visible through a side-by-side comparison, were and are apparent, remarkable, and extensive.

NetCE has been unable to compare the works Dr. Jouria submitted to Elite to the works Dr. Jouria submitted to NetCE because NetCE does not have the documents Dr. Jouria submitted to Elite in its possession, custody, or control.  This Court has directed NetCE to "make clear that it did not undertake a pre-suit comparison of works submitted by Plaintiff to it and works submitted by Plaintiff to Elite."  NetCE continues to assert that because such a comparison requires access to Elite's documents, such a pre-suit comparison was not possible.  NetCE has yet to have access to the "works submitted by Plaintiff to Elite."  NetCE has served discovery upon Elite seeking those very documents, but has not yet received them.

**Interrogatory No. 7:**

Identify all communications that Defendant received from, and sent to, Plaintiff, related to approving his works for publication and publishing his works for all works submitted by Plaintiff to Defendant.

**First Supplemental Response to Interrogatory No. 7:**

Dr. Jouria submitted proposals for course topics by email to Ms. Campbell. Ms. Campbell responded approving or disproving the topic. Ms. Campbell sent Dr. Jouria FWAs to execute. Following the execution of the FWAs, Dr. Jouria submitted drafts of the proposed courses to Ms. Campbell, again via email. Once the courses were submitted, Ms. Campbell and Dr. Jouria (and, therefore, NetCE and Dr. Jouria) interacted only minimally: communication occurred only to acknowledge receipt of drafts and to arrange payment. Once NetCE finalized a course (see Response to Interrogatory No. 3), Ms. Campbell emailed the course to Dr. Jouria for his final sign-

15

off. Once NetCE published the courses, NetCE sent Dr. Jouria hard copies of published courses by mail. NetCE, of course, only had occasion to mail Dr. Jouria a finalized published course three times.

NetCE did not finalize the Seven Courses at issue in this litigation because Dr. Jouria impermissibly submitted these courses to Elite. NetCE did not communicate with Dr. Jouria regarding the Seven Courses after acknowledging receipt and sending payment, which Dr. Jouria accepted and did not return. NetCE did not communicate (in *any* medium) an explicit or implicit rejection of the Seven Courses to Dr. Jouria. Rather, as was its past practice with the courses Dr. Jouria submitted that NetCE finalized and published, NetCE did not communicate with Dr. Jouria during the editing process. NetCE did not communicate to Dr. Jouria that the Seven Courses were ready for publication because Dr. Jouria's impermissible actions made it fruitless for NetCE to edit, fact-check, and curate them to *make* them ready for publication.

**Interrogatory No. 8:**

Identify which of the Plaintiff's works alleged in Para. 55 of the ACC the Defendant subjected to the iThenticate, program search and describe in detail the analytics, metrics or results of that program search. In this regard, identify all documents that relate the iThenticate program search or searches performed.

**First Supplemental Response to Interrogatory No. 8:**

Before beginning editing, revisions, and cite checking, NetCE subjected each of the ten (10) draft courses Dr. Jouria submitted to the iThenticate program.

iThenticate produces a report in a PDF format. The PDF document contains highlighted word patterns located from other primary sources, and lists the primary source in question in

16

endnotes at the back of the PDF alongside a tally of the words in the document pulled from the original source. The endnotes contain the similarity index figure which indicates the percentage of the document that is not original to the document (in other words, pulled from another source). An online version of this report, available on the iThenticate website, is interactive and provides links to the matched content.

Discovery is just beginning in this matter. Accordingly, NetCE is in the process of reviewing its documents to identify the communications described in this Interrogatory. NetCE will supplement its response to this Interrogatory with additional detail once it has located these communications.

**Interrogatory No. 9:**

State whether Defendant has ever run an iThenticate program search between the works Plaintiff submitted to Defendant, and the works Defendant alleges Plaintiff submitted to Elite or comparing Plaintiff's works submitted to Defendant with any of Elite's publications, and if so, identify the dates of such search or searches, and identify all documents, details and results of such search or searches.

**First Supplemental Response to Interrogatory No. 9:**

Ms. Campbell attempted to run an iThenticate scan comparing the courses Elite impermissibly published to the drafts in NetCE's possession, but iThenticate had difficulty accessing Elite's content (available as an online PDF). The similarities between the two sets of courses, visible through a side-by-side comparison, were apparent, remarkable, and extensive.

17

**Interrogatory No. 10:**

Identify what, if anything, in addition to using the iThenticate program referred to in Int. Nos. 8 and 9 above if at all, the Defendant has as evidence to support its contention that the works Plaintiff submitted to Elite, or that Elite's publications, are identical or substantially similar to the works Plaintiff submitted to Defendant, and state when Defendant acquired such evidence.

**First Supplemental Response to Interrogatory No. 10:**

At the time NetCE discovered the infringement (and ran a manual comparison between NetCE drafts and the impermissibly published Elite courses), NetCE saved copies of the impermissibly published Elite courses.

Discovery is just beginning in this matter and NetCE has not yet engaged expert witnesses to conduct substantial similarity analysis. NetCE will supplement its response to this Interrogatory with additional detail once it obtains additional evidence.

Please see First Supplemental Response to Interrogatory No. 6.

**Interrogatory No. 11:**

Explain in detail which of Plaintiff's works' "content" the Defendant was not able to use as alleged in Para. 65 of the ACC, and why Defendant was not able to use it.

**First Supplemental Response to Interrogatory No. 11:**

Dr. Jouria sent the seven (7) courses to Elite; Dr. Jouria did not have NetCE's permission to do so. Upon information and belief, Dr. Jouria sent Elite the same drafts he first sent to NetCE several months prior. On or before February 2015, Elite published the seven (7) courses at issue in the Litigation ("The Lymphatic and Immune System: A Comprehensive Review," "Traumatic

18

Brain Injury," "Clinical Cardiovascular Pharmacology," "Non-Antibiotic Antimicrobial Pharmacology: A Review," "Gastroesophageal Reflux Disease," "Cancer and Chemotherapy," and "Depression and Dementia in the Elderly") in their entirety or nearly in their entirety on its website. Elite did not have NetCE's permission to do so.

The CME market is a highly competitive one, and companies like NetCE derive advantage from being first-to-market with course offerings on innovative topics. Dr. Jouria's and Elite's unauthorized distribution, publication, and sales deprived NetCE of this crucial advantage and, as a consequence, the expense of the additional time and resources required to edit, fact-check, gain permission to reprint uncredited illustrations and tables, and otherwise format and finalize the seven (7) courses was unjustified.


**Interrogatory No. 12:**

Identify all communications between Plaintiff and Defendant regarding all works submitted by Plaintiff under the FWA's.

**First Supplemental Response to Interrogatory No. 12:**

Dr. Jouria submitted drafts of each of the ten (10) courses subject to a FWA to Ms. Campbell. Via email, Ms. Campbell acknowledged receipt, arranged for payment to Dr. Jouria, and sent finalized drafts of the three (3) courses ultimately published to Dr. Jouria for his final sign-off. Ms. Campbell did not otherwise communicate with Dr. Jouria during the editing process.

Discovery is just beginning in this matter. Accordingly, NetCE is in the process of reviewing its documents to identify the communications described in this Interrogatory. NetCE will supplement its response to this Interrogatory with additional detail once it has located these communications.

#53494987_v2

**Interrogatory No. 13:**

Identify any damages Defendant alleges and will seek against Plaintiff that are not attributable to the alleged copyright infringement.

**First Supplemental Response to Interrogatory No. 13:**

Apart from seeking to recover the money NetCE paid Dr. Jouria for seven (7) ultimately unusable courses, NetCE also seeks damages for breach of the seven (7) FWAs governing the seven (7) courses at issue in this litigation, in particular NetCE's loss of the right of first refusal, secured by the explicit terms of the FWAs, and damages for unfair competition under California law as described in NetCE's operative Counter-Complaint (Dkt. 36). NetCE seeks compensatory and actual damages, exemplary damages, punitive damages, and an award reflecting the amount by which Dr. Jouria (and Elite) were unjustly enriched.

**Interrogatory No. 14:**

Identify all witnesses, other than Plaintiff, whom Defendant believes has knowledge or information of the facts alleged in the ACC, and identify the nature of that knowledge or information.

**First Supplemental Response to Interrogatory No. 14:**

Sarah Campbell: Information regarding course development, course planning, editing, NetCE finances, NetCE's relationship with Dr. Jassin Jouria, NetCE history with Elite Continuing Education, Inc. ("Elite"), iThenticate, discovery of infringement; Available through Holland & Knight

Erin Meinyer: Information regarding course development, course planning, NetCE finances, NetCE's relationship with Dr. Jassin Jouria, NetCE history with Elite, discovery of infringement; Available through Holland & Knight

Julie Goodwin: Information regarding NetCE processes and systems and NetCE marketing, NetCE history with Elite; Available through Holland & Knight

Lisa Patterson: Information regarding NetCE processes and systems and NetCE finances; Available through Holland & Knight

Bob Creutz, NetCE Account Manager of iThenticate: Information regarding functionality of iThenticate, NetCE's relationship with iThenticate, 1111 Broadway, 3rd Floor, Oakland, CA 94607, (510) 764-7615

Dr. John Leonard, NetCE Division Planner and Advisor: Information regarding editing of courses Dr. Jouria submitted to NetCE pursuant to the FWAs, typical editing process for NetCE courses, NetCE's awareness of problems with Dr. Jouria's bona fides; Available through Holland & Knight

Dr. John Jurica, NetCE Division Planner and Advisor: Information regarding editing of courses Dr. Jouria submitted to NetCE pursuant to the FWAs, typical editing process for NetCE courses, NetCE's awareness of problems with Dr. Jouria's bona fides; Available through Holland & Knight

Jane Norman, NetCE Division Planner: Information regarding editing of courses Dr. Jouria submitted to NetCE pursuant to the FWAs, typical editing process for NetCE courses, NetCE's awareness of problems with Dr. Jouria's bona fides; Available through Holland & Knight

Kate McPike, Tek-Ed, Inc., Editing of "Cancer and Chemotherapy" course, PO BOX 1521 Rancho Cordova, CA 95741, (916) 765-5492

21

John and Jane Does at Elite

John and Jane Does at Alpine Management Services III, LLC

Dated: August 30, 2017                          Respectfully submitted,

                                                 HOLLAND & KNIGHT LLP

                                                 /s/ Philip E. Rothschild
                                                 Philip E. Rothschild
                                                 Florida Bar No. 0088536
                                                 Email: phil.rothschild@hklaw.com
                                                 HOLLAND & KNIGHT LLP
                                                 515 East Las Olas Blvd., 12th Floor
                                                 Fort Lauderdale, FL 33301
                                                 Telephone: (954)525-1000
                                                 Facsimile: (954)463-2030

                                                 /s/ John P. Kern
                                                 John P. Kern, Esq. (pro hac vice)
                                                 Email: john.kern@hklaw.com
                                                 Jessica E. Lanier, Esq. (pro hac vice)
                                                 Email: Jessica.Lanier@hklaw.com
                                                 HOLLAND & KNIGHT LLP
                                                 50 California Street, Suite 2800
                                                 San Francisco, CA 94111
                                                 Telephone: (415)743-6918
                                                 Facsimile: (415)743-6910
                                                 Attorneys for CE RESOURCE, INC.
                                                 d/b/a
                                                 CME RESOURCE and NetCE

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2017, a copy of the foregoing document has been served via email or U.S. mail on the following:

Richard S. Ross, Esq.
4801 S. University Drive
Suite 237
Fort Lauderdale, FL 33328
Email:  prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*
**[VIA U.S. MAIL and E-MAIL]**

Peter A. Chiabotti, Esq.
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Email: peter.chiabotti@akerman.com
*Attorneys for Elite Continuing Education, Inc.*
**[VIA U.S. MAIL]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Email:  markwilson@mvalaw.com; katecole@mvalaw.com
*Attorneys for Elite Continuing Education, Inc.*
**[VIA U.S. MAIL]**

*/s/Philip E. Rothschild*
Philip E. Rothschild