**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:15-cv-61165-WPD**

DR. JASSIN JOURIA

                Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

                Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC. and ALPINE
MANAGEMENT SERVICES III, LLC,

                Third Party Defendants.

_____/

**DECLARATION OF JOHN KERN IN SUPPORT OF**
**NETCE'S OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT BY ELITE**
**CONTINUING EDUCATION, INC. AND DR. JASSIN JOURIA**

I, John Kern, declare as follows:

1.      I am a partner with the law firm of Holland & Knight LLP, and I am duly licensed to practice law in the state of California.  I am also admitted *pro hac vice* in the United States District Court for the Southern District of Florida, in the above-captioned case.  I am one of the attorneys representing defendant CE Resource, Inc. d/b/a CME Resource and NetCE (hereafter, "NetCE").

2.      I have personal knowledge of the circumstances described below and, if so called, can testify under oath regarding these events.

3.      Elite and Dr. Jouria both have obstructed fulsome, timely discovery in this case.

**Dr. Jouria's Desctruction of Evidence; Refusal to Answer Deposition Questions; Refusal to Produce Records**

4.      Dr. Jouria destroyed his laptop computer—the only computer he used to work on the courses at issue in this lawsuit—just after this Court lifted its automatic stay in place due to his bad faith bankruptcy filing.  Deposition of Jassin Jouria at 192-195, excerpts attached as Exhibit E.  Following Dr. Jouria's destruction of evidence, Dr. Jouria and his counsel misled NetCE about the status of the computer, implying that additional documents were recoverable.

5.      Based on Dr. Jouria's testimony that this was the only laptop he used for his work for NetCE and Elite, this laptop contained multiple responsive documents that only Dr. Jouria would have (for example, his drafts and edits of the Seven Courses, including derivative works/versions of which he submitted to Elite and may have submitted to other continuing

1

education providers and competitors of NetCE), which are documents that would have further supported NetCE's claims in this case.

6.       Those records Dr. Jouria did not intentionally destroy, he failed to timely produce to NetCE, and failed to produce in an usable evidentiary manner.   NetCE was forced to move to compel Dr. Jouria's production of usable records (NetCE's motion was granted), and even after the Magistrate's Order compelling production, it took Dr. Jouria more than a month (and three failed additional attempts) to produce the proper records.  By the time he finally did, his deposition had long since passed.

7.       At his deposition, Dr. Jouria (a) could not adequately answer my questions about his finances (he said he would need to search for bank records, and would, but he later recanted on that promise and refused to produce documents he testified would be necessary to refresh his collection about the nature and timing of certain payments remitted to him), and (b) flat-out refused to answer my questions about certain unflattering details surrounding his medical credentials (although he was happy to boast about the positive aspects of is credentials when cross-examined by counsel for Elite).

### Elite's Refusal to Produce Records; Failure to Produce 30(b)(6) Deponent

8.       Elite has also contributed to the state of the record.  Elite has refused to produce documents regarding its accreditation by a credentialing organization called the American Nursing Credentialing Center ("ANCC").  Such documents are plainly relevant to NetCE's trade secret claims and its damages analysis: NetCE believes, due to the timing of Elite's accreditation by this body and the nature of NetCE's own experience with ANCC auditing procedures, that Elite used NetCE's copyrighted material, in some fashion, to secure its accreditation.

9.      Because of NetCE's refusal, NetCE subpoenaed records from the ANCC via a Rule 45 subpoena and is currently working with ANCC regarding the production of such records.  This Court granted an extension of the discovery period in order to encompass the return of documents responsive to this subpoena.  NetCE, upon request by Elite's counsel, froze service of the subpoena until the parties could meet-and-confer.  The subpoena was finally served on December 7, 2017 by formal service of process.  Elite's refusal to turn over relevant documents is the subject of a Motion to Compel pending before this court.  The hearing is scheduled to take place on January 9, 2017.

10.     Finally, Elite breached an attorney agreement to allow NetCE to take Elite's 30(b)(6) witness deposition outside the discovery period.

11.     Throughout the Fall, I worked cooperatively with counsel for Elite regarding the scheduling of depositions.   We initially noticed Elite's 30(b)(6) for November 15, 2017[1] (the day of the discovery cut-off), to take place in Fort Lauderdale.  Elite, simultaneously, had served NetCE with a 30(b)(6) notice, set for November 14th, in Sacramento, California.

12.     As it was not practical for counsel to conclude a deposition in Sacramento late on the 14th, and begin the next one across the country early the next day, counsel for Elite and I met conferred and agreed to a new schedule, pending our confirmation of counsel for Mr. Ross's availability.

---

[1] NetCE's initial 30(B)(6) deposition notice did inadvertently state "November 5th" (a Sunday), but this was merely a typographical error.   NetCE explained the error and quickly re-issued the Notice for November 15th.

13.     Under the new schedule, we agreed to take the following three depositions, on the following dates:

a)      November 14, 2017: Elite's Deposition of NetCE's 30(b)(6) witness, in Sacramento (location per agreement of counsel from last year, in exchange for NetCE dismissing a parallel copyright case against Elite pending in the E.D. of California);

b)      November 17, 2017: NetCE's Deposition of Elite's 30(b)(6) witness in Charlotte, North Carolina (for the convenience of Elite's witness and its counsel, both which are located there); and

c)      Elite's Deposition of NetCE's founder and President, Erin Meinyer, in San Francisco, on December 5, 2017 (location per agreement of counsel from last year, in exchange for NetCE dismissing a parallel copyright case against Elite pending in the E.D. of California).

14.     Agreements between counsel to conclude some discovery reasonably outside the discovery cutoff are common and are even encouraged, so long as they do not prejudice pre-trial dates or parties.

15.     On November 14th, Elite took the deposition of NetCE's 30(b)(6) witness, as scheduled.  That same day, however, Elite made yet another production of records to NetCE (then more than 2 months past the date it was to produce records), and counsel could not confirm for us that there would not be even more responsive records forthcoming.  As it turned out, there were many more such responsive documents to be produced.  Just last week, more than 3 months past their deadline to produce documents, and more than month after the discovery cut-off, Elite finally produced Financial Statements NetCE had been seeking.

#54813843_v5

16.     Because I believed it would be prejudicial to conduct Elite's 30(B)(6) deposition on an incomplete record (missing among other things accreditation documents, meaningful financial records, and a full listing of Elite's courses), I told counsel for Elite at the conclusion of NetCE's deposition that it was prejudicial to proceed with Elite's deposition only two days later, with counsel in the air for nearly half that time.

17.     Counsel for Elite spoke with their client and offered December 12, 2017 as an alternate date for the 30(b)(6) deposition, again, in Charlotte.  We accepted this offer.

18.     The day before Ms. Meinyer's scheduled December 5th deposition in San Francisco, she was hospitalized due to a sudden and severe illness.  Additional details are set forth in Ms. Meinyer's Declaration, submitted herewith.

19.     NetCE  sought to reschedule Ms. Meinyer's deposition, and even offered to reimburse Elite's counsel for their travel and to make Ms. Meinyer available for deposition in Charlotte, North Carolina the same week as I would be taking Elite's 30(b)(6) witness.

20.     Elite, however, refused to reschedule Ms. Meinyer's deposition, and it abruptly cancelled the scheduled December 12th deposition of its 30(b)(6) witness (although that deposition was critical to NetCE's preparation for its own possible summary judgment motions, for trial, and for the parties to be realistically capable of conducting successful mediations).

21.     Had Elite followed through on its agreement, NetCE has no doubt the record would have additional evidence bolstering the disputes of material fact already evident.

#54813843_v5

**NetCE's Expert Damage Report**

22.     NetCE and Elite have exchanged expert damage analyses in this case.  NetCE's expert, James Pampinella from Navigant Consulting, outlines in detail in his report a formal methodology for calculating lost profits, and then supports that model with NetCE's historical and current financial performance data, and with NetCE's testimony in this case (which is replete with evidence to support the NetCE's claims for lost profits).  Attached hereto as __Exhibit A__ is a true and correct copy of the Expert Report of James Pampinella, from Navigant Consulting.

23.     NetCE's expert report explains that, in order to calculate the lost profits for the Five Courses, NetCE's expert James Pamipinella used two of the Dr. Jouria courses NetCE was able to publish and sell as the basis for a "Benchmark Jouria Course."

24.     The report also explains that the "Benchmark Jouria Course" was marketed to nurses, pharmacists, and physicians, much as the Five Courses would have been.

25.     The expert report explains that it calculated the revenue the "Benchmark Jouria Course" earned by multiplying the credit hour per catalog ratio by the revenue generated from each catalog, and the report and lays out its calculations for incremental profits and its reasoning for the calculation.

26.     The only "assumptions" the expert report made (which the report also lays out in detail) are the kind of assumptions made with any statistical, economic, or scientific analysis—the bedrock of any predictive model.  If Elite disagrees with NetCE's expert's approach to calculating damages, it is only appropriate to hash out such disagreements of fact before a jury, at trial.

6

27.     NetCE's has offered at least a half dozen times to make Mr. Pampinella available for deposition.  Neither Dr. Jouria or Elite have taken any steps which indicate an interest in doing so.

28.     Attached hereto as **<u>Exhibit B</u>** is a true and correct copy of Plaintiff's Response to NetCE's First Set of Interrogatories (Exhibit 10 at the deposition of Dr. Jassin Jouria).

29.     Attached hereto as **<u>Exhibit C</u>** are true and correct excerpted pages from Exhibit 76 from the deposition of Sarah Campbell.

30.     Attached hereto as **<u>Exhibit D</u>** are true and correct excerpted pages from Exhibit 78 from the deposition of Sarah Campbell.

31.     Attached hereto as **<u>Exhibit E</u>** are true and correct excerpted pages from the deposition of Dr. Jassin Jouria.

32.     Attached hereto as **<u>Exhibit F</u>** is a true and correct copy of an email chain between Dr. Jouria and NurseCE4less which was exhibit 47 to the Dr. Jassin Jouria deposition.

I declare under penalty of perjury and the laws of the United States and Florida that the foregoing is true and correct.

Dated this 29th day of December, 2017

By:  _/s/ John Kern_                                        
     John Kern

#54813843_v5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Philip E. Rothschild*
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

8