# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# CASE NO. 0:15-61165-WPD

| | |
|---|---|
| DR. JASSIN JOURIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant. | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant/Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DR. JASSIN JOURIA, | ) |
| | ) |
| Plaintiff/Counter-Defendant. | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Elite Continuing Education, Inc. and Alpine Management Services III, LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |

**THIRD-PARTY DEFENDANT ELITE PROFESSIONAL EDUCATION, LLC'S
<u>REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

I.     **INTRODUCTION**

In its Opposition to Elite's Motion for Summary Judgment, NetCE attempts to manufacture disputes of material fact where none exist. NetCE's arguments regarding a dispute as to the trade secrets supposedly provided to Alpine are immaterial; there remains no probative evidence that Elite ever acquired, disclosed, or used any NetCE trade secrets. NetCE's attempt to salvage its copyright claim by contradicting the record with new testimony about whether the Jouria Articles were "approved for publication" is improper at summary judgment and should be disregarded. Finally, NetCE seeks to avoid summary judgment on its lost profits claim by contending that Elite challenges NetCE's calculation of damages. While that calculation is unreliable, Elite's summary judgment argument is directed to the lack of evidence that NetCE suffered any lost sales attributable to Elite. In the absence of such evidence of actual harm, NetCE's claim for damages in the form of lost profits must be dismissed.

Nor do NetCE's arguments regarding the "state of the record" (DE 201, p. 4) show the existence of any genuine dispute of material fact. If NetCE believed it could not present facts essential to justify its Opposition, NetCE could have submitted a Rule 56(d) affidavit seeking deferral of Elite's Motion or additional time to take further discovery. NetCE has submitted no such affidavit, and its contentions regarding the purported need for further information from Dr. Jouria and Elite are immaterial to Elite's Motion.[1]

II.     **ARGUMENT**

    A.     **NetCE's Opposition Filings Violate this Court's Local Rules.**

In its Opposition (DE 201) and supporting Statement of Facts (DE 202 ("NSOF")), NetCE failed to comply with the local rules, which have "the force of law." *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1158 (S.D. Fla. 2015). NetCE uses font that is less than twelve (12) point for its footnotes, in violation of L.R. 5.1(a)(4), and in a manner that

---

[1] NetCE's only remaining discovery issue before this Court relates to its request for overly broad and irrelevant information on Elite's accreditations across its entire company for all professions and time periods. (*See* DE 154). Elite has provided a sworn declaration that none of the Accused Courses were submitted to gain accreditation from any accrediting body, including the ANCC. (DE 154-3). NetCE also complains about its failure to depose any Elite witnesses. This is hardly Elite's fault. (*See* Elite's Response to Additional Facts ("RAF") ¶ 83; *see also* L.R. 26.1(d) ("[D]epositions must be scheduled to occur…on or before the discovery cutoff date. Failure by the party seeking discovery to comply with this paragraph obviates the need to…appear at the deposition.")).

is an end-run around the page limitations of L.R. 7.1(c)(2). Elite respectfully submits that the argument contained in these noncompliant footnotes should be stricken. Additionally, NetCE's NSOF does not comply with L.R. 56.1. "When a party properly complies with Local Rule 56.1, it is relatively easy for a court to determine whether there is a genuine disputed issues of fact." *Katchmore Luhrs, LLC v. Allianz Global Corp. & Spec.*, 2017 U.S. Dist. LEXIS 6796, at *3-4 (S.D. Fla. Jan. 18, 2017). "[A]ll a court needs to do is look at the opposing statement of material facts on a paragraph-by-paragraph basis and quickly see whether any paragraphs are designated as disputed." *Id.* NetCE's NSOF "intermingles legal arguments with…purported facts, making it difficult to determine which parts represent undisputed facts, and which parts represent legal arguments." *Gomez v. Target Corp.*, 2017 U.S. Dist. LEXIS 184438, at *1-2 (S.D. Fla. Aug. 2, 2017). NetCE's NSOF makes it "exceedingly difficult … to discern if there is a factual dispute concerning a specific paragraph," and requires "review [of] the entire opposing statement of facts [to] determine whether any particular sentence or paragraph is, in fact, a vague reference to some type of actual rebuttal evidence which might generate a disputed issue of material fact." *Katchmore*, 2017 U.S. Dist. LEXIS 6796, at *4. L.R. 56.1 also requires additional facts be "placed at the **end** **of** **the** **opposing** **party's** **statement** of material facts," not interspersed in the response without "express[ ] indicat[ion]" that it is an additional fact. *Id.* at *2. The NSOF is "fundamentally flawed" and should be stricken. *Gomez*, 2017 U.S. Dist. LEXIS 184438, at *1.

    **B.**  **There is No Evidence of Misappropriation of Trade Secrets by Elite.**

  Elite has shown there is no evidence it ever acquired any of NetCE's alleged trade secrets. NetCE's opposition is filled with the same unsupported suspicions set forth in its Complaint and cited to overcome Elite's motion to dismiss NetCE's trade secrets claim at the outset of this case. The time has come for NetCE to cite evidence rather than allegations. Contrary to the requirements of Rule 56, NetCE has come forward with nothing. Even more, there is direct evidence from Alpine that—contrary to NetCE's allegations—Alpine did not provide any of NetCE's information to Elite. And NetCE testified at deposition that it had no reason to dispute Alpine's testimony, and otherwise has no evidence that Alpine or McKissock provided any of NetCE's information to Elite.

  Recognizing this lack of evidence, NetCE attempts to manufacture a dispute through Ms. Meinyer's declaration. Ms. Meinyer goes to great lengths to describe the information she allegedly provided to Alpine, the means by which she provided it, her belief that it was protected by the Non-Disclosure Agreement, and the notion that this information was not publicly available. (DE

203 ¶¶ 9-24). NetCE then cites her declaration to argue that Alpine's testimony regarding trade secrets is "almost wholly inconsistent" with Ms. Meinyer's account, and that there are "multiple disputes of material fact with respect to NetCE's trade secret claim against Elite." (DE 201 pp. 10, 13). Importantly, none of these perceived inconsistencies creates a genuine dispute of <u>material</u> fact, as there still remains no evidence that Elite ever received any NetCE trade secrets. Ms. Meinyer cannot change NetCE's binding corporate testimony that it has no evidence that any information disclosed by NetCE was shared with Elite, that it has no reason to dispute Mr. Cremons's testimony that Alpine did not provide anything to Elite, and it has no evidence that either Alpine or McKissock shared any NetCE information with Elite. (ESUF ¶¶ 73-75, 77).[2] Even assuming Ms. Meinyer's testimony as to what NetCE provided Alpine is true, there still remains no evidence that Elite acquired, disclosed, or used any of NetCE's trade secrets.

NetCE points to Ms. Meinyer's declaration to argue that there is "circumstantial evidence that Alpine and/or McKissock passed NetCE's trade secrets on to Elite." (DE 201 p. 12). This purported evidence is that "very shortly after" an alleged meeting in which NetCE supposedly disclosed certain trade secrets, Elite "began addressing the same multiple deficiencies Ms. Meinyer painstakingly itemized for McKissock and began using the trade secret information NetCE passed to Alpine and McKissock to improve its competitive prospects…." (DE 201 p. 13).[3] This so-called circumstantial evidence does not save NetCE's claim. First, NetCE does not point to any

---

[2] NetCE claims that when Ms. Campbell admitted there is "no evidence" of misappropriation by Elite, she was "equating 'evidence' or 'hard evidence' with documents and not including witness accounts." (DE 201 p. 14 n. 11). NetCE cites Ms. Campbell's declaration for this improper spin on her testimony; in that declaration, she claims "[a]t no time did I say there was 'no evidence.'" (DE 199 ¶ 32). A review of relevant deposition excerpts shows this sworn statement to be false. (ESUF ¶ 73 (NetCE 30:20-23 ("Q. Isn't it true, as we sit here today, you have **no evidence** to support the allegations that any information disclosed by NetCE was shared with Elite? A. Not yet."); NetCE 45:2-9 ("Q. You're aware of the fact that [Mr. Cremons] testified that Alpine did not share that information with Elite; correct? A.·I'm aware of that. Q. Do you have any reason to dispute that? A.·I have **no evidence**, as we sit here today, that he shared that information -- that Dan Cremons specifically shared that information.· That's correct.")); ESUF ¶ 74 (NetCE 33:16-22 ("Q. And as we sit here today, you have no evidence to support any allegation -- and it hasn't been made, but any additional allegation that Mr. Duran or anyone from McKissock shared any information provided by NetCE with Elite; correct? A.·We have **no evidence** from McKissock or Mike Duran either way, as far as I know."))  (emphasis added)).

[3] Nowhere in its relevant interrogatory response did NetCE ever claim that Ms. Meinyer's opinion of Elite's "deficiencies" was a trade secret or was misappropriated by Elite. (*See* SUF ¶ 71).

3

actual evidence showing that Elite "addressed deficiencies" at any point in time, relying instead on unsupported allegations. For example, NetCE cites Paragraph 97 of its NSOF, which in turn cites Paragraph 25 of Ms. Meinyer's declaration: "After being purchased by McKissock, Elite began increasing their nursing CE offerings and focus in more advanced nursing disciplines." There is no admissible basis for this allegation; Ms. Meinyer has shown no personal knowledge of Elite's relative offering of nursing CE courses over time, nor does she cite any documents, testimony, or other support about Elite's business activities and the timing thereof.[4] Paragraph 97 of NetCE's NSOF also references certain portions of Ms. Campbell's deposition testimony; again, however, this testimony is that after certain NetCE/Alpine meetings in November 2012, Elite made "strides" and "changes" in unspecified aspects of its business. Like Ms. Meinyer, Ms. Campbell does not have personal knowledge of Elite's business activities, and NetCE has not identified any admissible evidence to show what Elite was or was not doing in its business at any points in time.

NetCE's alleged "circumstantial evidence" is a far cry from creating a triable issue of fact as to whether Elite acquired, disclosed, or used any of NetCE's trade secrets. It is well-established that "a finding of fact which may be inferred but not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1564 (11th Cir. 1989). Contrary to NetCE's argument that "[t]here is, at a minimum, circumstantial evidence that Alpine and/or McKissock passed NetCE's trade secrets onto Elite", (DE 201 p. 12), Elite has proffered direct evidence that

---

[4] NetCE also argues that Elite applying for accreditation through the ANCC is evidence of misappropriation. (DE 201, p. 12). NetCE's ANCC accreditation is a publicly-available fact, not a NetCE trade secret. (Suppl. Wilson ¶¶ 20-21). NetCE also "suspects" that Elite used the Elite Courses to apply for accreditation. NetCE has no evidence to support this suspicion. Elite has submitted sworn testimony that it did not submit any of the Accused Courses to gain accreditation from any accrediting body, including the ANCC. (DE 154-3, ¶ 6). In any event, a competing continuing education provider obtaining ANCC accreditation "is not surprising or inherently suspect." *HCC Ins. Holdings, Inc. v. Flowers*, 237 F. Supp. 3d 1341, 1355 (N.D. Ga. 2017); *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 22 F. Supp. 3d 1305, 1317-18 (N.D. Ga. 2014) (circumstantial evidence of trade secret use based on similarities alone insufficient in view of direct evidence of non-use). (ESUF ¶ 79; Wilson ¶ 3; Alpine 37:21-38:4 (ANCC accreditation for entry into the continuing education industry is "generally understood to be the case by participants in this industry….")). Regardless, while such hypothetical use of the Accused Courses might constitute copyright infringement (assuming NetCE could prove all elements of an infringement claim), that use could not constitute trade secret misappropriation. The Accused Courses provided to Elite by Dr. Jouria are not (nor has NetCE claimed them to be) trade secrets.

4

Alpine did not share with Elite any information disclosed by NetCE. (ESUF ¶ 76).[5] Elite has further provided testimony from NetCE admitting that it has no reason to dispute such evidence, and does not have any evidence of either Alpine or McKissock providing any NetCE information to Elite. (ESUF ¶¶ 73-75, 77). In view of Elite's "direct evidence of non-acquisition," NetCE's "circumstantial evidence of suspicious activities" does not demand the inference that Elite acquired or used NetCE's trade secrets. Neither Ms. Meinyer's testimony regarding the information provided to Alpine nor NetCE's speculative argument of "circumstantial evidence" creates any genuine dispute of material fact sufficient to survive summary judgment.

### C. There is No Genuine Issue of Material Fact as to Whether the Jouria Articles Were Ever "Approved for Publication."

Elite showed there is no evidence to support a finding that the Jouria Articles were ever "approved for publication" by NetCE, as required for NetCE to establish ownership of copyright rights in those articles. That the Jouria Articles were never "approved for publication" is supported by NetCE's verified interrogatory response, response to an Elite document request, Rule 30(b)(6) deposition testimony, and the absence of any evidence showing approval for publication. (DE 186 pp. 14-16). Despite the state of the record, NetCE has submitted a declaration from Ms. Campbell, contradicting not only her Rule 30(b)(6) testimony, but also NetCE's discovery responses and documents produced in this case. When Elite questioned Ms. Campbell regarding whether the Jouria Articles were "approved for publication," she stated under oath, "[t]hat's not terminology that we use as part of the development process" and "that's not terminology that we use in our development process." (Wilson ¶ 1, NetCE 78:24-79:11). This testimony was consistent with NetCE's discovery responses, including its response to Elite's Interrogatory No. 15, in which it stated that it only "approved subject matter proposals" for the Jouria Articles, and its subsequent

---

[5] NetCE mischaracterizes *DS Waters of America, Inc. v. Fontis Water, Inc.*, 2012 U.S. Dist. LEXIS 192614 (N.D. Ga. Sept. 12, 2012). In *DS Waters*, the parties presented conflicting <u>direct</u> evidence—testimony denying acquisition of plaintiff's customer list on one hand, and testimony indicating acquisition of the same customer list on the other hand. *Id.* at *110. In addition to direct evidence of acquisition, the plaintiff presented invoices and other customer records bearing customer ID numbers "from which a jury could reasonably infer" the defendant's use of the plaintiff's customer list. *Id.* at *111. There is no such conflicting evidence here. NetCE's suspicions alone, "without providing any factual basis" that Elite must have used its trade secrets, "amount to nothing more than rank speculation, and are the type of conjecture which is insufficient to withstand a motion for summary judgment." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1339 (M.D. Fla. 2006) (granting summary judgment on trade secrets claim).

5

response to Elite's Request for Production No. 32, in which it admitted that it "never had the opportunity to approve the publication" of the Jouria Articles. (ESUF ¶¶ 17-19; DE 199-10).

Attempting to refute this evidence, NetCE now takes a wholly different position. Notwithstanding Ms. Campbell's testimony that "approved for publication" is not terminology used in NetCE's development process, NetCE cites Ms. Campbell's declaration for the contradictory claim that **as part of the "course development process**," "[o]nce NetCE receives the course…if the manuscript is complete, NetCE remits payment to the author and considers the course 'approved for publication' under the FWA." (DE 201 pp. 14, 15). Citing this declaration, NetCE actually states in its NSOF that "**[t]he course development process** concerns…whether a course is 'approved for publication'…." (NSOF ¶ 118) (emphasis added). NetCE's belated attempt to claim that NetCE does, in fact, use this terminology as part of its "course development process" is an attempt to manufacture a question of fact and should be disregarded.

Pursuant to Rule 37(c), NetCE is not permitted to submit purported evidence it did not provide in discovery, including in its response to Elite's Interrogatory No. 15 (in which it failed to state that the Jouria Articles were "approved for publication"), or by its refusal to produce documents in response to Elite's Request for Production No. 32 (in which it stated that it "never had the opportunity to approve the publication" of the Jouria Courses). (ESUF ¶¶ 17-19; DE 199-10). Rule 26(e) provides that a party "who has responded to an interrogatory [or] request for production . . ., must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 37(c)(1) provides that if a party fails to provide information as required by Rule 26(e), the party is not allowed to use that information . . . to supply evidence on a motion . . ., unless the failure was substantially justified or is harmless." NetCE never amended its responses to Elite's discovery requests, and has not shown that its failure to provide information to support its concocted argument that the Jouria Articles were allegedly approved for publication—despite NetCE's statements in response to those very same discovery requests that NetCE never approved them for publication—was substantially justified or harmless.

In view of the fact that Ms. Campbell's declaration regarding "approval for publication" directly contradicts both her sworn deposition testimony and NetCE's verified interrogatory response and request for production responses, at least Paragraphs 5-7 and 11-14 of her declaration

6

should be disregarded. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction….")). As noted in *Sabino v. Kerzner Int'l Bah. Ltd.*, "a party cannot give clear answers to unambiguous questions under oath, and then create a material issue of fact to avoid summary judgment by filing a contradictory affidavit that fails to explain the contradiction." 2014 U.S. Dist. LEXIS 180090, at *4-5 (S.D. Fla. Jan. 10, 2014) (citing *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987)); *see also Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

NetCE alternatively argues that even if the Jouria Articles were not approved for publication, it must nonetheless own the copyright rights in those articles through the so-called "catchall portion" in the third sentence of Paragraph 9 of the FWAs. (DE 201 pp. 16-17). This argument does not make sense under NetCE's own position. NetCE contends that the Jouria Articles were allegedly works made for hire, so the third sentence does not apply by its very terms given that it begins with "If and to the extent any Article is determined <u>not</u> to constitute 'works made for hire' . . ." (emphasis added). NetCE cannot argue out of one side of its mouth that the articles are works made for hire while, at the same time, arguing out of the other side of its mouth that it owns the articles under a provision that expressly does not apply to works made for hire.

NetCE's argument also ignores the first sentence of Paragraph 9, which states that "[a]ll Articles <u>approved for publication</u> by [NetCE] under this Agreement shall belong exclusively to NetCE" (emphasis added). The plain language of Paragraph 9 shows that this sentence establishes the Articles in which NetCE may claim ownership rights, and the second and third sentences set forth the mechanics of how ownership of articles approved for publication will be transferred to NetCE (either by the work-made-for-hire doctrine or by an assignment). This makes sense, given the requirements of the Copyright Act pertaining to transfer of ownership of copyright rights.

Under the Copyright Act, the parties could not simply agree that certain articles "belong" to NetCE (i.e. sentence one) without setting forth a permissible written mechanism under the Copyright Act by which ownership could be transferred to NetCE (sentences two and three).  *See* 17 U.S.C. §§ 201, 204(a).  At the same time, NetCE's argument that the third sentence of Paragraph 9 "transfers copyright rights to NetCE for 'any Article' submitted to it pursuant to the FWA" (DE 201 p. 18) would render meaningless the first sentence.  If that third sentence truly operated to transfer ownership rights in <u>all articles</u> to NetCE, there would be no need for the first sentence of Paragraph 9.  As explained in *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156 (S.D. Cal. 2015), courts must interpret contracts as a whole and in a manner that does not render any clause or provision superfluous."  *Id.* at 1164 (applying California law).

In a final effort to avoid summary judgment on its copyright claims, NetCE contends that if "none of the provisions [of Paragraph 9] apply to transfer the copyright rights of the [Jouria Articles] to NetCE, at most this Court must hold the FWA ambiguous." (DE 201 p. 17).  NetCE cites no authority for the conclusory argument that the FWAs "must" be ambiguous simply because the FWAs did not transfer copyright rights in certain articles.  A party is not entitled to a finding of ambiguity simply because its contract interpretation is rejected.  *See Lennar Mare Island v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 963 (E.D. Cal. 2016) ("An agreement is not ambiguous merely because the parties … disagree about its meaning.").  Rather, ambiguity—which is a question of law—will be found only where the contract language is "reasonably susceptible" to more than one interpretation.  *Id*. at 963-64; *see also Tri-Union*, 88 F. Supp. 3d at 1161 (Where the "contractual language is clear and explicit, it governs.").  There is no other reasonable interpretation here.  Moreover, it is disingenuous for NetCE, the admitted drafter of the FWAs (DE 184, 198 ¶ 9), to argue ambiguity in its own contracts, particularly given that "contract ambiguities are construed against the drafter."  *Dr. Leevil, LLC v. Westlake Health Care Center*, 9 Cal. App. 5th 450, 455 (2017).  Regardless, NetCE has not shown that any portion of Paragraph 9 of the FWAs drafted by NetCE is ambiguous.  Elite requests that the Court grant summary judgment on NetCE's claim of copyright infringement.[6]

---

[6] Contrary to NetCE's misrepresentation (DE 201 p. 2), Elite has never "accepted," nor does it concede, the alleged substantial similarity of the Jouria Articles and the Accused Courses.  Elite's motion for summary judgment is based on the straightforward contract issue showing that NetCE does not own copyright rights in the Jouria Articles as a matter of law, which obviates the need to consider any other issues to rule in favor of Elite.

D.  **NetCE Has Failed to Present Evidence of Lost Profits.**

NetCE opposes Elite's request for summary judgment on lost profits by contending that Elite challenges NetCE's calculation of lost profits, rather than causation for lost profits. Seeking to create the appearance of a factual dispute, NetCE goes to great lengths defending the methodology and calculation used by its damages expert. (DE 201 pp. 18-19). NetCE's purported expert admittedly assumes, based on NetCE's allegations, that NetCE would have realized additional revenues but for Elite's publication of the Accused Courses. (DE 200-1 ¶ 34). Contrary to NetCE's argument, Elite seeks summary judgment because of the lack of evidence to support the assumption that NetCE suffered any actual damages attributable to Elite's alleged conduct. (*See* DE 186 p. 17). While Elite does not agree with the methodology and calculation used by NetCE's damages expert, those arguments are properly the subject of a *Daubert* motion and have no bearing on summary judgment. Here, Elite has shown that NetCE failed to present evidence showing that it suffered actual damages in the form of lost sales as a result of Elite's alleged conduct. This is a threshold requirement that NetCE has the burden of proving to receive any lost profits. *See* 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement…."). Elite's Motion is directed to the absence of evidence supporting the required causal link of any actual damages suffered by NetCE, not NetCE's (or its purported expert's) ultimate calculation of what its losses might be after assuming harm. NetCE cannot avoid summary judgment by pointing to an expert report (which is not even evidence) that merely assumed that NetCE lost sales. *See, e.g., 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 973 (D. Minn. 2005) ("[plaintiff's] expert report…simply calculates damages after assuming that the false advertising caused [plaintiff's] lost profits; **it does not provide any insight into or evidence on causation**") (emphasis added). In the absence of evidence of any causal connection, summary judgment is appropriate. *Pronman v. Styles*, 645 Fed. Appx. 870, 873 (11th Cir. 2016).[7]

---

[7] NetCE mischaracterizes the applicability of the case law cited by Elite. For example, NetCE suggests that the *Fey v. Panacea* case was limited to the exclusion of a damages report pursuant to *Daubert*. The portion of the *Fey* decision cited by Elite was the court's grant of summary judgment on actual damages and profits, where the plaintiff failed to "present evidence showing, that Defendants' use of the [copyright work] resulted in lost sales…." As in *Fey,* NetCE has not "present[ed] evidence showing [] that [Elite's] use of the [Elite Articles] resulted in lost sales." 2017 U.S. Dist. LEXIS 75637, at *24. The additional cases cited by Elite, *Pronman, Allergy &*

The speculative nature of NetCE's claim that it lost sales as a result of Elite's conduct is shown by the extensive testimony of its Rule 30(b)(6) witness. (DE 186 pp. 19-20). Ms. Campbell admitted that NetCE does not know whether publication of the Jouria Articles would have caused a decrease or increase in NetCE's revenue. (*Id.*). NetCE responds to this testimony by simply claiming, without any explanation or support, that "[i]t is utterly preposterous for Elite to suggest that NetCE benefitted from Elite's infringement." (DE 201 p. 20 n.17). Of course, it was Ms. Campbell—not Elite—who testified that NetCE may have seen an increase in profits by its decision not to publish the Jouria Articles. NetCE tries to further explain away its Rule 30(b)(6) testimony by arguing that Ms. Campbell "was not a damages expert or accountant." (DE 201 p. 20). Importantly, the testimony cited by Elite pertained to the fact of actual harm, not the calculation of monetary damages. Ms. Campbell was designated to testify regarding, *inter alia*, "[a]ll harm/damages NetCE believes it has sustained as a result of Elite's alleged conduct." (ESUF ¶ 4). While she may have been unable to competently testify regarding how NetCE would calculate any monetary damages, she was obligated to explain how NetCE was purportedly harmed by Elite. Her testimony makes clear that NetCE has no evidence of whether it lost any sales or saw any decrease in revenue that could be attributed to Elite. In light of NetCE's failure to present evidence that it lost any sales, NetCE's claim for damages in the form of lost profits cannot be maintained, and Elite is entitled to summary judgment.

### IV. CONCLUSION

For the reasons stated herein and in Elite's opening Memorandum, Elite respectfully requests that the Court enter summary judgment in Elite's favor on NetCE's Claim One: Copyright Infringement, Claim Six: Misappropriation of Trade Secrets, and NetCE's claim to lost profit damages, as set forth in NetCE's Third-Party Complaint against Elite.

---

*Asthma*, *Thorton*, and *Latimer*, likewise support the proposition that where the plaintiff fails to present evidence showing a causal link between the alleged infringement and the damage allegedly incurred, summary judgment must be granted. NetCE's attempt to distinguish these cases on the basis that NetCE has provided evidence to support its damages expert's calculation is immaterial to whether NetCE has provided evidence of causation for any lost sales.

Dated: January 5, 2018

Respectfully submitted,

/s/Peter A. Chiabotti
Peter A. Chiabotti
Florida Bar No. 0602671
AKERMAN LLP
peter.chiabotti@akerman.com
777 South Flagler Driver
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159

*Attorneys for Third Party Defendant
Elite Professional Education, LLC*

## Certificate of Service

      I hereby certify that on January 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                            /s/Peter A. Chiabotti
                                            Peter A. Chiabotti

## Service List

Richard S. Ross, Esq.
Atrium Centre
4801 S. University Drive
Suite 237
Fort Lauderdale, FL 33328
Email: prodp@ix.netcom.com
*Attorneys for Plaintiff Dr. Jassin Jouria*

Philip E. Rothchild, Esq.
Holland & Knight LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Email: phil.rothschild@hklaw.com
*Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE*

John P. Kern, Esq.
Jessica E. Lanier, Esq.
Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Email: john.kern@hklaw.com
          jessica.lanier@hklaw.com
*Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE*

Peter A. Chiabotti
Florida Bar No. 0602671
Akerman LLP
peter.chiabotti@akerman.com
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
*Attorney for Third Party Defendant Elite Professional Education, LLC*

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
*Attorneys for Third Party Defendant Elite Professional Education, LLC*