UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

    Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

    Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC. and ALPINE
MANAGEMENT SERVICES III, LLC,

    Third Party Defendants.

_____/

## DECLARATION OF JOHN KERN

I, John Kern, declare as follows:

1

#54813709_v5

1. I am a partner with the law firm of Holland & Knight LLP, counsel for CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE").

2. I have personal knowledge of the circumstances described below and, if so called, can testify under oath regarding these events without waiver of any applicable privilege.

3. Elite and Dr. Jouria both have obstructed fulsome, timely discovery in this case.

### Dr. Jouria's Destruction of Evidence; Refusal to Answer Deposition Questions; Refusal to Produce Records

4. Dr. Jouria destroyed his laptop computer—the only computer he used to work on the courses at issue in this lawsuit—just after this Court lifted its automatic stay in place due to his bad faith bankruptcy filing. Following Dr. Jouria's destruction of evidence, Dr. Jouria and his counsel misled NetCE about the status of the computer, implying that additional documents were recoverable.

5. Based on Dr. Jouria's testimony that this was the only laptop he used for his work for NetCE and Elite, this laptop contained multiple responsive documents that only Dr. Jouria would have (for example, his drafts and edits of the Seven Courses, including derivative works/versions of which he submitted to Elite and may have submitted to other continuing education providers and competitors of NetCE), which are documents that would have further supported NetCE's claims in this case.

6. Those records Dr. Jouria did not intentionally destroy, he failed to timely produce to NetCE, and failed to produce in an usable evidentiary manner. NetCE was forced to move to compel Dr. Jouria's production of usable records (NetCE's motion was granted), and even after the Magistrate's Order compelling production, it took Dr. Jouria more than a month (and three failed additional attempts) to produce the proper records. By the time he finally did, his deposition had long since concluded.

#54813709_v5

7. At his deposition, Dr. Jouria (a) could not adequately answer my questions about his finances (he said he would need to search for bank records, and would, but he later recanted on that promise and refused to produce documents he testified would be necessary to refresh his collection about the nature and timing of certain payments remitted to him), and (b) flat-out refused to answer my questions about certain unflattering details surrounding his medical credentials (although he was happy to boast about the positive aspects of is credentials when cross-examined by counsel for Elite).

8. On March 22, 2018, Magistrate Snow heard oral argument on NetCE's Motion for Terminating Sanctions. Magistrate Snow did not grant NetCE a reward of terminating sanctions, but rather sanctioned Dr. Jouria in the form of an adverse inference jury instruction for his bad faith destruction of evidence.

**Elite's Refusal to Produce Records**

9. Elite also contributed to the state of the record.

10. On August 25, 2017, NetCE sent its First Set of Interrogatories to Elite. The Request provided that all responses shall be provided within (30) thirty days. Elite did not respond in time, but rather provided NetCE its Interrogatory Responses on October 12, 2017.

11. On August 25, 2017, NetCE sent its First Set of Requests For Production of Documents and Things to Elite. The Request provided that all documents shall be produced within (30) thirty days. Elite did not respond in time.

12. In fact, despite Elite's representations that it had provided fulsome responses and that it believed it had produced all responsive documents—Elite produced documents on November 14, 2017, just prior to the November 15, 2017, discovery cut-off.

13. Worse yet, Elite produced document *after* the discovery cut-off. Elite produced records on November 21, 2017, December 5, 2017, and finally on December 15, 2017.

3

#54813709_v5

14. The documents Elite produced on the eve of the close of discovery and after the close of discovery absolutely pertained to damages. Namely, these productions contained Elite's Financial Statements—the very Financial Statements NetCE had been requesting for months and which were necessary to understand and assess Elite's use and sales of the infringed courses. There was no way for Mr. Pampinella to consider the late-produced records and data in his November 15, 2017 original report—which NetCE felt compelled to serve by the close of discovery, because of Dr. Jouria's counsel's repeated insistence that the cut-off for fact discovery also controlled for experts, and that he would seek to disqualify any report served thereafter as untimely.[1]

**Elite's Failure to Produce a 30(b)(6) Deponent**

15. Elite also breached a counsel agreement to allow NetCE to take Elite's 30(b)(6) witness deposition outside the discovery period.

16. Throughout the Fall, I worked cooperatively with counsel for Elite regarding the scheduling of depositions. We initially noticed Elite's 30(b)(6) for November 15, 2017[2] (the day of the discovery cut-off), to take place in Fort Lauderdale. Elite, simultaneously, had served NetCE with a 30(b)(6) notice, set for November 14th, in Sacramento, California.

17. As it was not practical for counsel to conclude a deposition in Sacramento, late on the 14, 2017, and begin the next one across the country early the next day, counsel for Elite and I met conferred and agreed to a new schedule, pending our confirmation of counsel for Mr. Ross's availability.

18. Under the new schedule, we agreed to take the following three depositions, on the following dates:

---

[1] As it turns out, Dr. Jouria challenged Mr. Pampinella's report as untimely, anyway—a challenge Magistrate Snow recently rejected.
[2] NetCE's initial 30(B)(6) deposition notice did inadvertently state "November 5th" (a Sunday), but this was merely a typographical error. NetCE explained the error and quickly re-issued the Notice for November 15th.

4

#54813709_v5

      a)     November 14, 2017: Elite's Deposition of NetCE's 30(b)(6) witness, in Sacramento (location per agreement of counsel from last year, in exchange for NetCE dismissing a parallel copyright case against Elite pending in the E.D. of California);

      b)     November 17, 2017: NetCE's Deposition of Elite's 30(b)(6) witness in Charlotte, North Carolina (for the convenience of Elite's witness and its counsel, both which are located there); and

      c)     Elite's Deposition of NetCE's founder and President, Erin Meinyer, in San Francisco, on December 5, 2017 (location per agreement of counsel from last year, in exchange for NetCE dismissing a parallel copyright case against Elite pending in the E.D. of California).

19.    Agreements between counsel to conclude some discovery reasonably outside the discovery cutoff are common and are even encouraged, so long as they do not prejudice pre-trial dates or parties.

20.    On November 14, 2017, Elite took the deposition of NetCE's 30(b)(6) witness, as scheduled. That same day, however, Elite made yet another production of records to NetCE (then more than 2 months past the date it was to produce records), and counsel could not confirm for us that there would not be even more responsive records forthcoming. As it turned out, there were many more such responsive documents to be produced. On December 15, 2017, more than 3 months past its deadline to produce documents, and more than month after the discovery cut-off, Elite finally produced Financial Statements NetCE had been seeking.

21.    Because I believed it would be prejudicial to conduct Elite's 30(b)(6) deposition on an incomplete record (missing among other things accreditation documents, meaningful financial records, and a full listing of Elite's courses), I told counsel for Elite at the conclusion of NetCE's deposition that it was not practical or fair to proceed with Elite's deposition only two days later, with

5

#54813709_v5

counsel in the air for nearly half that time, especially when there were additional documents (of unknown content) still forthcoming from Elite.

22. Counsel for Elite spoke with their client and offered December 12, 2017, as an alternate date for the 30(b)(6) deposition, again, in Charlotte, North Carolina. NetCE accepted this offer and served an updated notice to all counsel listing the new date and location.

23. In early December, however, Elite abruptly cancelled the scheduled December 12, 2017 deposition of its 30(b)(6) witness—even that deposition was critical to NetCE's preparation for its own possible summary judgment motions, for trial, and for the parties to be realistically capable of conducting successful mediations.

24. I intend to elicit testimony regarding damages from Elite's 30(b)(6) witness. I suspect that one reason Elite cancelled the deposition was to prevent NetCE from obtaining damages testimony, because almost immediately thereafter Elite filed a Motion for Summary Judgment and the instant Motion to Exclude—both touting NetCE's lack of evidence regarding damages.

I declare under penalty of perjury and the laws of the United States, California, and Florida, that the foregoing is true and correct.

Dated this 26th day of March, 2018

By: _____
John Kern

#54813709_v5