UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-61165-CIV-DIMITROULEAS/Snow

DR. JASSIN JOURIA,

    Plaintiff/Counter-Defendant,

    v

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

    Defendant/Counter-Plaintiff/Third Party Plaintiff,

    v.

ELITE CONTINUING EDUCATION, INC.,

    Third Party Defendant.

_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on NetCE's Motion for Terminating Sanctions (ECF No. 149) which was referred to Lurana S. Snow, United States Magistrate Judge for a Report and Recommendation. The motion is fully briefed and a hearing was held before the undersigned on March 22, 2018.

**I. RELEVANT BACKGROUND**

On June 2, 2015, Plaintiff Jassin Jouria, filed this action for declaratory judgment of non-infringement of alleged copyrights against NetCE, a California corporation for which Dr. Jouria provided medical research and writing services pursuant to contract. NetCE threatened litigation when Dr. Jouria utilized the same research to prepare new articles which he sold to a third party. (ECF No. 1) On October 6, 2015, NetCE filed its counterclaim alleging copyright infringement, breach of contract, and unfair business practices under California law. (ECF No. 10) On the same date, NetCE moved to dismiss the complaint and transfer venue to the Eastern District of California. (ECF No. 11) On October 23, 2015, Dr. Jouria notified the Court that he had filed for bankruptcy protection, and on October 26, 2015, the Court stayed this action. (ECF Nos. 17, 18) The stay was

lifted on June 15, 2016, after Dr. Jouria notified the Court that his bankruptcy petition had been dismissed. (ECF Nos. 24, 25).

On October 21, 2016, NetCE, with leave of court, filed an amended answer, counterclaim and its third party complaint against Alpine Management Services and Elite Continuing Education. (ECF No. 36)  Both third party defendants moved to dismiss. (ECF Nos. 41, 43).  On January 11, 2017, the Court again stayed the case owing to Dr. Jouria's second bankruptcy filing. Ultimately, on April 21, 2017, the bankruptcy stay was lifted, and on the same date, NetCE voluntarily dismissed its third party complaint against Alpine Management Services. (ECF Nos. 63, 64)

NetCE's third party complaint against Elite Continuing Education for copyright infringement and misappropriation of trade secrets remains pending. On December 5, 2017, NetCE and Elite stipulated to the dismissal of NetCE's tortious interference with contractual relations claim against Elite. (ECF No. 168)  NetCE alleges that Dr. Jouria published articles with Elite, a competitor, that he was under contract to prepare for NetCE.  NetCE's also alleges that after it entered into Freelance Writer Agreements with Dr. Jouria, it discovered that Dr. Jouria was involved in a lawsuit with the Education Commission for Foreign Medical Graduates, which revealed that Dr. Jouria submitted false letters of recommendation with his application to them.  The counterclaim also points to other red flags concerning Dr. Jouria's credentials, including the representation on his resume that he attended medical school at Ross University in New Jersey, actually an off-shore medical school in the Dominican Republic, and that although he has a medical degree, he has not completed medical residency in the U.S.

According to NetCE. the following time line is relevant to its request for terminating sanctions for Dr. Jouria's alleged spoliation of evidence:

1. On April 25, 2015, NetCE sent Dr. Jouria a cease and desist letter demanding that he "take all necessary steps to ensure that he preserve and not destroy - even inadvertently - any records (electronic or otherwise) potentially relevant to the issues set forth in this letter."

      2.  On June 2, 2015, Dr. Jouria filed this lawsuit for declaratory judgment.

      3.  On October 6, 2015, NetCE filed a motion to dismiss or stay.

      4.  On October 23, 2015, Dr. Jouria filed for bankruptcy.

      5.  On May 10, 2016, Dr. Jouria's bankruptcy petition was dismissed with prejudice for 180 days.

      6.  On December 30, 2016, Dr. Jouria re-filed another bankruptcy petition, which petition was again dismissed with prejudice for 180 days on April 12, 2017.

      7.  In June of 2017, Dr. Jouria threw his laptop away.

      8.  NetCE propounded its first discovery requests to Dr. Jouria on August 9, 2017. Dr. Jouria responded on August 14, 207 to the interrogatories and on September 5, 2017 to the document requests.  Both responses referenced a computer crash.  In response to Interrogatory 12, Dr. Jouria stated that: "[a]s Plaintiff's computer has crashed, he might supplement this response with the version of the Seven Courses he submitted to Elite, if the versions are ultimately recovered."

      9.   NetCE sought clarification about the written discovery responses, but was told that Dr. Jouria would only supply additional information regarding the computer if NetCE propounded additional interrogatories or asked questions regarding the crash at Dr. Jouria's deposition.

      10.  On September 28, 2017, Dr. Jouria testified in deposition that he discarded the computer in his apartment complex dumpster sometime before June 9, 2017.

      11.  On October 27, 2017, Dr. Jouria's counsel confirmed that Dr. Jouria asked the management company if it could follow up with the waste disposal company, but had received no substantive response.

      Based upon the foregoing, NetCE contends that it will never know how many relevant records have been lost, including communications with CE providers regarding the infringing courses; 2) Dr. Jouria's research and drafting notes (the timing and nature of which would be fundamental to any infringement analysis) for the courses Dr. Jouria submitted to NetCE; 3) drafts

of the courses Dr. Jouria edited for Elite (which would show Dr. Jouria's efforts to make cosmetic changes to NetCE's intellectual property before selling the materials to Elites; 4) records of Dr. Jouria's financial transactions with other CE providers relating to the infringing courses; and 5) evidence that Dr. Jouria knew that what he was doing with NetCE's intellectual property was impermissible under the terms of his contract with NetCE and a violation of U.S. copyright law. According to NetCE, metadata associated with these documents is crucial to its analysis.

According to Plaintiff, the relevant facts are as follows:

1. Plaintiff purchased the computer at issue in 2007. It was a Dell Inspiron Model 1520 laptop.

2. Plaintiff used the computer for both business and personal matters.

3. The initial hard drive crash occurred in late January 2017.

4. In early February 2017, Plaintiff sought to preserve as many files as he could from the laptop's hard drive. He attempted on at least twenty occasions, between February and April 2017, to recover files and upload them to the Google Cloud.

5. Plaintiff estimates that he was able to recover approximately 70-80% of his files, some of which were related to his business, including files related to this case. Plaintiff produced the relevant files requested by NetCE.

6. By April 2017, Plaintiff could no longer access any files on his laptop because he could not get the computer operational.

7. Plaintiff is unaware of the contents of the files he could not recover, but believes some were personal, and some were business related. He is unsure whether any of the unrecovered files were related to this action.

8. On June 19, 2017, Plaintiff moved from Florida to Indiana. Just prior to moving, Plaintiff discarded a number of household items, including the crashed computer. He placed these items in his apartment complex dumpster.

9. Plaintiff first informed NetCE of the crashed computer on August 9, 2017, in response to written discovery.

10. Prior to Plaintiff's deposition, and as a result of one of the parties' counsels' meet and confer sessions, Plaintiff attempted to locate the discarded computer by asking his apartment property management company to contact the waste disposal company. Plaintiff followed up unsuccessfully with the management company on two separate occasions.

According to NetCE, terminating sanctions for spoliation of evidence are warranted here, where just after the Court lifted the last bankruptcy stay, Dr. Jouria destroyed the only computer he owned containing relevant information, concealed the fact that he did so in written discovery responses, all despite having been on notice for two years of his duty to preserve evidence. Alternatively, NetCE requests, among other things, an instruction to the jury that it may consider Dr. Jouria's actions in drawing inferences at trial to assess his credibility.

Dr. Jouria argues that he did not destroy the computer, rather he discarded it after it crashed. The evidence NetCE asserts might be missing is neither crucial nor relevant to this breach or contract/copyright infringement action. In any case, Dr. Jouria preserved the files on his crashed computer to the best of his ability and produced what evidence NetCE needs to compare whether the articles Dr. Jouria submitted to Elite were substantially similar to those he authored for NetCE. Finally, Dr. Jouria contends that NetCE has not provided evidence of bad faith by a preponderance of the evidence making terminating sanctions unwarranted.

## II.  RECOMMENDATIONS OF LAW

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baha Marine Corporation, 310 Fed.Appx. 298, 301 (11th Cir. 2009) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). "Federal law governs the imposition of sanctions for failure to preserve evidence in a diversity suit." Flury v. Daimler Chrysler Corp., 427 F.3d 939 (11th Cir. 2005). The Flury court noted that federal law in the Eleventh Circuit does not

set forth specific guidelines with regard to when to impose sanctions for spoliation, however.  In Flury, the court looked to Georgia law for guidance, finding that the standards found in Georgia law were wholly consistent with federal spoliation principles. Id.

Although the Eleventh Circuit has not expressly found Florida law to be wholly consistent with federal spoliation principles, lower federal courts have routinely looked to Florida law for guidance on when to impose spoliation sanctions.  Socas v. The Northwestern Mutual Life Insurance Company, 2010 WL 3894142 at *3 (S.D. Fla. 2010) (citations omitted).  "Under Florida law, to establish spoliation, the moving party has the burden of proving '(1) the missing evidence existed at one time; (2) the non-moving party had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its *prima facie* case or defense.'" Id. (citing Sharp v. City of Palatka, 2008 WL 89762 (M.D. Fla. 2008).

In addition, the Eleventh Circuit requires a finding of bad faith in order to impose the sanction of dismissal or the imposition of an adverse inference.  Id. (citations omitted).  Mere negligence is not sufficient to support a finding of bad faith because 'it does not sustain an inference of consciousness of a weak case.' Id. (citing Bashir v. Amtrak, 199 F.3d 929, 931 (11th Cir. 1997)).

A determination of bad faith may be based upon circumstantial evidence if direct evidence is absent. Id.  (citing Walter v. Carnival Corp., 2010 WL 2927962 , at *2 (S.D. Fla. 2010). The following factors must be present to make a finding of bad faith based upon circumstantial evidence:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

Id. "[C]ourts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows spoliators to profit from destruction." Mech. Servs., Inc. v. Brody, 657 F.Supp.2d 1293, 1300 (M.D. Fla., 2009).

Potential sanctions for spoliation of evidence include dismissal of the case, exclusion of expert testimony, or a jury instruction on spoliation of evidence which raises a presumption against the spoliator. Flury 427 F. 3d at 945. (citing Chapman v. Auto Owners Insurance Co., 469 S.E. 2d 783, 784 (1996)).

The burden of proof is on NetCE. The issues are whether the missing evidence would have been material, and, to determine whether sanctions of dismissal, striking of pleadings or adverse inference are warranted, whether Plaintiff acted in bad faith, and if and lesser sanctions will not suffice. Malice is not necessary, but negligence alone is not enough. Plaintiff had to fully appreciate the significance of the evidence to the litigation. Oil Equipment Co., Inc. v. Modern Welding Co., Inc., 661 Fed.Appx. 646, 653 (11th Cir. 2016).

In this case, it is undisputed that Dr. Jouria was on notice of his duty to preserve evidence. Although he did not cause his computer to crash, Dr. Jouria does not dispute that he discarded it after his own unsuccessful efforts to retrieve any remaining data, effectively preventing any records left on the hard drive from being retrieved forensically. Dr. Jouria also provided responses to written discovery which were, at best, misleading because they suggested the possibility that more records might be retrieved in the future, when, in fact, the computer was no longer available. On this record, the Court is not prepared to recommend terminating sanctions, however, the undersigned will recommend that the jury be informed that: (1) Dr. Jouria was served with a cease and desist order dated April 9, 2015, advising him of his duty to preserve evidence; (2) this lawsuit was initiated on June 2, 2015; (3) written discovery was propounded by NetCE in August of 2017; and (4) Dr. Jouria discarded his computer in June of 2017, allegedly because it had crashed and he was unable to recover anything further from it.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that NetCE's Motion for Terminating Sanctions (ECF No. 149) is GRANTED, in part, and that the Court inform the jury that: (1) Dr. Jouria was served with a cease and desist order dated April 9, 2015, advising him of his duty to preserve evidence; (2) that this lawsuit was initiated on June 2, 2015; (3) that written discovery was propounded by NetCE in August of 2017; and (4) that Dr. Jouria discarded his computer in June of 2017, because it had crashed and he was unable to recover anything further from it.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge.  Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice.  <u>See</u> 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 27th day of March, 2018.

*[signature]*
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
All Counsel of Record