IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:15-61165-WPD

| | |
|---|---|
| DR. JASSIN JOURIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant. | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant/Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DR. JASSIN JOURIA, | ) |
| | ) |
| Plaintiff/Counter-Defendant. | ) |
| CE RESOURCE, INC. d/b/a CME RESOURCE and NetCE, | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Elite Continuing Education, Inc. and Alpine Management Services III, LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |

**THIRD-PARTY DEFENDANT ELITE PROFESSIONAL EDUCATION, LLC'S
REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY**

## INTRODUCTION

In Opposition to Elite's *Daubert* Motion to exclude the proposed testimony of James Pampinella, NetCE attempts to rewrite the evidence, disclosures, and testimony in this case. Grasping at straws to keep its expert and his deficient lost profits analysis from being excluded, NetCE and its counsel grossly mischaracterize the course of discovery in this case, disavow NetCE's sworn deposition testimony, and rely on an untimely "supplemental" expert report that is on its face prohibited by Fed. R. Civ. P. 26. NetCE's improper tactics underscore the speculative, unreliable nature of James Pampinella's proposed testimony. At the same time, NetCE invites this Court to limit its *Daubert* analysis in a way expressly rejected by the U.S. Supreme Court in *Kumho Tire Co. v. Carmichael*. Contrary to NetCE's suggestion, the data upon which an expert relies in conducting an otherwise accepted methodology can and should serve as a basis for exclusion.

As an initial matter, NetCE has conceded the insufficiency of Pampinella's Initial Report by serving a lengthy "Supplemental Report" (DE 247, under seal), containing over 20 pages of new opinions, analyses, facts, and data that could have been included in his Initial Report. This so-called Supplemental Report, served on Elite more than three months after the close of discovery, 10 weeks after Elite filed its *Daubert* Motion, and just two business days before NetCE filed its *Daubert* Opposition, is untimely under Rule 26(a)(2)(D) and not a proper supplement under Rule 26(e). For those reasons, Elite has filed a Motion to Strike the report. (DE 250).

NetCE also argues that the insufficiency of Pampinella's analysis in his Initial Report is a result of purported discovery failings by Elite and Dr. Jouria. As shown by the Declaration of Kathryn G. Cole and the email communications and documents attached thereto (*see* Exhibit A, hereinafter "Cole Decl."), NetCE's counsel's characterization of discovery is misleading at best. More importantly, none of these discovery issues pertain in any way to Pampinella's proposed testimony. NetCE's unsupported complaints about discovery are simply a smokescreen to divert attention from the merits of Elite's *Daubert* Motion. A review of Pampinella's analysis—both in his Initial and Supplemental Reports—reveals that his lost profits opinions are based exclusively on speculative and cherry-picked information provided to him <u>by NetCE</u>. Neither NetCE nor Pampinella have actually identified any information from Elite or Dr. Jouria that would be necessary to or remedy the deficiencies in Pampinella's lost profits analysis. In other words: none of NetCE's discovery arguments pertain to the Court's *Daubert* analysis.

Even worse, having recognized the absence of any reliable evidence upon which to base a claim of lost profits, NetCE attempts to disavow significant portions of its deposition with a self-serving declaration that conveniently contradicts testimony as to speculation and otherwise seeks to evade the binding nature of Rule 30(b)(6) corporate testimony. As part of this effort to distance itself from its deposition testimony, NetCE and Pampinella engage in what can only be described as a shell game, each hiding behind the other in Elite's search for actual evidence: Pampinella relies on information provided to him by NetCE, but NetCE has admitted under oath that it would have to speculate to determine whether it lost any sales or profits from not publishing the Jouria Articles. When pressed by Elite for something more than speculation, NetCE simply points to Pampinella—but Pampinella is relying on information from NetCE. On the one hand, NetCE confirmed that each of the factual matters underlying Pampinella's lost profits methodology and opinion are subject to uncertainty and speculation, yet on the other hand, NetCE told Pampinella to assume all of those things in NetCE's favor, and he now uses those wholly speculative assumptions as the entire evidentiary basis for his $7 million+ damages calculation. The time has now passed for NetCE and Pampinella to rely on allegations based on nothing more than admitted speculation. Pampinella has simply taken NetCE's assumption that it lost profits from not publishing the Jouria Articles—an assumption which NetCE testified is based on layers of speculation—and then used basic math to arrive at a damages figure based on the historic sales data from two cherry-picked best-selling NetCE courses. This is precisely the type of speculative, unreliable "expert opinion" that the Court's gatekeeping function is designed to prohibit.

## ARGUMENT

**I.    Pampinella's Untimely "Supplemental" Report Does Not Salvage His Testimony.**

NetCE's primary argument in Opposition is based on the disingenuous suggestion that the deficiencies in Pampinella's analyses and opinions are a result of alleged discovery failings by Elite and Dr. Jouria. NetCE and its counsel are less than forthcoming in their recitation of the discovery exchanges in this case.[1] Citing those inaccurate characterizations of discovery, NetCE

---

[1] NetCE's counsel states that "Elite did not respond in time" to NetCE's interrogatories and requests for production. (DE 245-3 ¶¶ 10-11). This is not true. NetCE's counsel and Elite's counsel expressly agreed to a one-week extension of time for both Elite's and NetCE's discovery responses, and Elite then timely responded. (Cole Decl. ¶¶ 5-9, 12-17). NetCE's counsel also suggests that Elite's production of additional documents near the end of and after the discovery cut-off were somehow improper and impacted Pampinella's expert report. (DE 245-3 ¶¶ 12-14).

attempts to remedy Pampinella's analyses and opinions with a "Supplemental Report" (DE 247, sealed) served on the eve of its *Daubert* Opposition. NetCE now relies on opinions expressed for the first time in that Supplemental Report to argue against Pampinella's exclusion. NetCE goes so far as to argue that the Supplemental Report "meets every one of Elite's complaints." (DE 245 p. 20). Of course, since the Supplemental Report is based on information known to NetCE at the time of the Initial Report, those opinions should have been disclosed in the Initial Report. "Rule 26(e) solely permits supplemental reports for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Potish v. R.J. Reynolds Tobacco Co.*, 2017 U.S. Dist. LEXIS 196459, at *9 (S.D. Fla. Nov. 30, 2017) (emphasis added); *see also Cochran v. The Brinkmann Corp.*, 2009 U.S. Dist. LEXIS 114895, at *15 (N.D. Ga. Dec. 9, 2009) (Rule 26(e) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy."), *aff'd,* 381 F. App'x 968 (11th Cir. 2010).[2] Elite incorporates herein the arguments and law in its Motion to Strike (DE 250), and submits that the Supplemental Report must be stricken and any argument in NetCE's Opposition based on opinions or analysis not timely disclosed in the Initial Report should be disregarded.

**II.    Pampinella Relies Solely on Speculation to Support His Calculation of Lost Profits.**

In its *Daubert* Motion, Elite showed that Pampinella relied on speculative data in conducting his lost profits analysis. (DE 217 pp. 7-10). At deposition, NetCE repeatedly testified that it would require speculation to determine whether NetCE's revenues were impacted in any

---

In fact, Elite produced a total of only 32 documents on those dates, none of which have any bearing on Pampinella's lost profits analysis, as shown by the fact that Pampinella cited none of them for any of the opinions or analyses in his Supplemental Report. (Cole Decl. ¶¶ 18-27). NetCE's attempt to blame Elite for its failure to depose Elite's corporate designee (DE 245-3 ¶¶ 15-24) is similarly misleading. (*See* Cole Decl. ¶¶ 32-39).

[2] The fact that NetCE's Rule 30(b)(6) deposition took place just before Pampinella served his Initial Report does not change the analysis: any testimony provided by NetCE during that deposition was, by definition, known to NetCE well prior to the deposition. *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) ("[W]e disagree with [Plaintiff's] characterization of the necessity of the…deposition transcripts to [Plaintiff's expert's] written report…. [Plaintiff's expert] could have rendered a report based upon…factual assumptions furnished to him by [Plaintiff]. If those assumptions subsequently turned out to be erroneous, [Plaintiff's expert] could have supplemented the report at a later time."); *Potish*, 2017 U.S. Dist. LEXIS 196459, at *11 ("[N]othing prevented the expert from interviewing the decedent's family or collecting further information regarding the decedent at an earlier date to allow for a more timely report.").

way—either positively or negatively—by its decision not to publish the Jouria Articles. (*See, e.g.,* DE 188-1 ("NetCE Depo.") 154:7-13) ("Q. [Y]ou can't predict with any certainty if those courses were included in any catalogs, whether their presence there might have actually caused a decrease in revenue for NetCE; correct? A. I can't speculate as to whether it would have increased or decreased value.")). Elite has shown that NetCE's testimony as to speculation is extensive and unequivocal. (*See* DE 217 pp. 9-10). In Opposition, NetCE submits a declaration from its Rule 30(b)(6) designee, in which she attempts to recast and disavow NetCE's sworn testimony. (DE 245-2). In that declaration, NetCE offers a new characterization of nearly every deposition excerpt cited by Elite.³ Elite submits that this declaration should be disregarded pursuant to the sham affidavit rule. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 n.6 (11th Cir. 2012).

Leaving aside the unfair prejudice to Elite by NetCE's attempt to change its corporate testimony at this late stage of the litigation, the fact remains that NetCE and Pampinella are essentially pointing to each other for evidence to support a claim of lost profits, with neither able

---

³ At least some portions of this declaration directly contradict NetCE's deposition testimony, such as the new claim that "NetCE knows that…it could have published additional catalogs with the Jouria content." (DE 245-2 ¶ 20). This is contradicts NetCE's testimony that there is no guarantee that any Jouria Article would have been in any catalog. (DE 187 ¶¶ 33, 37). Moreover, if NetCE truly could have published "additional catalogs" with the Jouria Articles, it is nonsensical for its witness to have testified that NetCE "[does not] know" if its revenues were impacted in any way by not finalizing the Jouria Articles for publication. (NetCE Depo. 143:23-144:1). The most common theme underlying Ms. Campbell's revisionist declaration is that she was only testifying as to her personal knowledge, rather than on behalf of NetCE. (DE 245-2, ¶¶ 22, 25, 27, 29, 31) ("I did not say and did not mean that, as a universal statement, no person could determine lost sales—only that I personally would have to speculate…."); ("I made clear that answering Elite's questions would require *me* to speculate. I made and make no claims that Elite's question would require *everyone* to speculate. NetCE hired Mr. Pampinella precisely for the purpose of calculating the value of the Jouria courses."); ("I made clear that answering Elite's questions would require *me* to speculate. I made and make no claims that Elite's question would require *everyone* to speculate. NetCE hired Mr. Pampinella precisely for the purpose of calculating the change to NetCE's revenues as a result of including the Jouria articles in any catalogs."). There is no dispute that Ms. Campbell was designated to testify on behalf of NetCE; she confirmed her understanding of that designation at the outset of the deposition. (NetCE Depo. 6:24-7:18). As such she was required to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents. A Rule 30(b)(6) designee presents the corporation's position on the listed topics." *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. Jan. 30, 2012). Moreover, at no point during her deposition, held on November 14, 2017, did she identify Pampinella as the designee to provide information beyond her speculation—despite the fact that NetCE served Pampinella's report just two days later.

4

to identify anything beyond speculation resting on speculation. According to NetCE, Pampinella "based his 'assumptions' on NetCE's answers given in interviews with the relevant NetCE employees who had firsthand knowledge of the facts upon which he based his report." (DE 245 p. 11). Yet Ms. Campbell—one of those very "NetCE employees"—testified as NetCE's Rule 30(b)(6) designee that all of those assumptions are based on speculation. (*See* DE 217 pp. 9-10). Now, in her contradictory declaration submitted with NetCE's Opposition, NetCE suggests that its speculation is of no moment, because NetCE planned to rely on Pampinella. (DE 245-2, ¶¶ 22, 25, 27, 29, 31). But Pampinella did not perform any independent analysis to verify that these assumptions were reasonable, reliable, or accurate. Instead, he relied solely on NetCE and Ms. Campbell. (DE 245 p. 11) ("Ms. Campbell provided all of the data necessary for Pampinella to determine the revenue decline over time."). At some point, this circular explanation of the reliability of Pampinella's assumptions must stop: Pampinella is relying on NetCE, who has admitted to speculating; yet NetCE believes it can simply rely on Pampinella, who has admitted to relying solely on NetCE. NetCE's arguments beg the question: *Where is the evidence?*

"*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see also R&R Int'l, Inc. v. Manzen, LLC*, 2010 U.S. Dist. LEXIS 94550, at *40 (S.D. Fla. Sept. 10, 2010) ("[T]here is nothing scientific or reliable about pure speculation and conjecture."). While it may be reasonable for an expert to look to a party's documents or employees to provide information and assumptions, it is unreasonable for an expert to rely on such information and assumptions when they are shown to be speculative. In its Opposition, NetCE misstates Elite's position, claiming that "Elite argues, essentially, that one cannot use the past to predict the future because the future might change." (DE 245, p. 16). It may be true that proof of damages "may be indirect and…may include estimates based on assumptions," that is only the case "so long as the assumptions rest on adequate data." *Manzen*, 2010 U.S. Dist. LEXIS 94550, at *26 (emphasis added) (citing *Lehrman v. Gulf Oil. Corp.*, 500 F.2d 659, 668 (5th Cir. 1974)).

The heart of NetCE's Opposition is that because benchmark analyses have been accepted by Eleventh Circuit courts, Pampinella's testimony must be admissible; NetCE suggests that any further challenge is beyond *Daubert* and goes only to his credibility. (DE 245 pp. 10, 14-15). But the Supreme Court rejected that exact same proposition in *Kumho Tire Co. v. Carmichael*, explaining that the gate-keeping function of *Daubert* requires consideration of not just the

5

proposed expert's methodology, but also the reliability of the proposed testimony's "factual basis, data, principles, methods, [and] their application." 526 U.S. 137, 149 (1999) (affirming district court's exclusion of expert testimony). The Supreme Court agreed that even where the proposed methodology may be generally acceptable, the district court is nonetheless required to examine how the expert drew his relevant conclusions based on the evidence at issue in the particular case:

> [C]ontrary to respondents' suggestion, the specific issue before the court was not the reasonableness in general of a tire expert's use of a visual and tactile inspection to determine whether overdeflection had caused the tire's tread to separate from its steel-belted carcass. Rather, it was the reasonableness of using such an approach, <u>along with Carlson's particular method of analyzing the data thereby obtained</u>, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant. That matter concerned the likelihood that a defect in the tire at issue caused its tread to separate from its carcass. . . . The relevant issue was <u>whether the expert could reliably determine the cause of this tire's separation</u>.

*Id.* at 153-154 (emphasis added). The question here is similar: in light of the data he considered, can Pampinella reliably determine the amount of profits, if any, NetCE lost as a result of Elite's alleged conduct? NetCE repeatedly testified that it would require speculation to make that determination, yet Pampinella relied exclusively on NetCE for the data underlying his analysis. As in *Kumho*, there is no reliable basis for Pampinella's testimony, and it should be excluded.

Reliance on speculative information as the basis for a lost profits calculation is precisely why Pampinella was excluded in *Flying J v. DOT*:

> Because Pampinella relied on Baker's assertion that a travel plaza at the Mojave site would perform like the travel plazas at the other sites, his testimony did not provide evidence that the Mojave site would perform in a manner substantially similar to the five sites used in his creation of a benchmark for the Mojave site. Pampinella's projections regarding lost profits will have probative value only if his assumption that the sites were comparable is supported by evidence in the record. Consequently, we next consider the basis for Pampinella's assumption—the testimony of Baker regarding the comparability of the sites.

Cal. App. Unpub. LEXIS 392, at *29 (Jan. 19, 2012). Finding that the testimony of Baker—another expert retained by the party—did not provide "proof to a reasonable certainty of either the existence or, more particularly, the extent of potential lost profits," *id.* at *33, the court found that Pampinella's testimony must be excluded. The same holds true here. When the Court "consider[s] the basis for Pampinella's assumptions" (*id.* at *29)—namely, NetCE's own information—it will find nothing more than speculation, as repeatedly shown by NetCE's deposition testimony.

6

### III. Pampinella's Selection of Data Points for his Benchmark Analysis is Unreliable.

Elite has shown that Pampinella's use of two prior NetCE best-selling courses, arbitrarily selected from over 1,000 courses offered by NetCE in the past two decades, renders his benchmark methodology unreliable. (*See* DE 217, pp. 10-13). In another transparent attempt to salvage that analysis, NetCE relies on Pampinella's Supplemental Report. As discussed in Section I., *supra*, this Supplemental Report should be stricken. Moreover, the very fact that NetCE has served this purported "supplement"—based on information known to NetCE at the time of Pampinella's Initial Report—underscores Elite's point. If the methodology and opinions set forth in his Initial Report were sufficient, there would be no need for a supplement. More than *15 pages* of the Supplemental Report are directed to an analysis of why the selected data point courses—COPD and Multiple Sclerosis—were appropriate to use as the basis for the "Benchmark Jouria Course." (*See* DE 247, ¶¶ 14-34). Much of this information, and the purported facts and data supporting his discussion, has never been disclosed to Elite. (Cole Decl., ¶¶ 44-45). And all of the "supplemental" opinions and analyses contained therein are based on information known to NetCE at the time of Pampinella's Initial Report. It is fundamentally unfair for NetCE to wait for Elite to file its *Daubert* motion and then—months after the discovery cut-off and service of the Initial Report, and only two days before filing an opposition—bolster Pampinella's methodology and selection of data points with a "supplemental" report based on information long known to NetCE. As noted in *Companhia Energetica Potiguar v. Caterpillar Inc.*,

> I do not agree that a supplemental declaration filed in response to a [*Daubert*] motion…is somehow immune from being stricken. **It is hardly surprising that a party would seek to bolster its expert's opinions after a *Daubert* motion points out significant flaws**…. [A] contrary rule would mean that the experienced expert could simply lie in wait so as to express his genuine opinions only after [the opposing party] discloses hers. The same concern arises when an expert waits until after a *Daubert* challenge to "supplement" an opinion in order to address the criticisms of his conclusions.

2016 U.S. Dist. LEXIS 72102, at *26-27 (S.D. Fla. June 2, 2016) (emphasis added) (internal citation omitted).[4] As discussed in Elite's Motion to Strike (DE 250), NetCE's arguments arising

---

[4] It is noteworthy that among the various new analyses expressed for the first time in Pampinella's Supplemental Report, the factors he now claims to have allegedly considered in selecting the COPD and Multiple Sclerosis courses ("audience," "featured course designation," "author," "content," "geography," "pricing," "customer reviews," and "timing of publication") (DE 247, under seal, ¶¶ 14-34) are identical to the factors about which counsel for Elite questioned NetCE

from the Supplemental Report should be disregarded. The fact remains that, pursuant to the only timely expert disclosure, COPD and Multiple Sclerosis were selected for the Benchmark Course with no analysis whatsoever by Pampinella. Indeed, the only commonalities he considered between those courses and the Jouria Articles, were that they shared the same author. Because Pampinella has not shown that he "compare[d] apples with apples" in selecting data points, his "analysis does not rest on adequate data." *Manzen*, LLC, 2010 U.S. Dist. LEXIS 94550, at *39.

Even if the Court could properly consider the untimely Supplemental Report, NetCE still cannot escape the additional speculation supporting Pampinella's use of COPD and Multiple Sclerosis to create the Benchmark Jouria Course. Pampinella assumed that each of the Jouria Articles would have been finalized and offered for sale in a course catalog, despite NetCE's testimony that the Jouria Articles were incomplete, rough drafts that had not gone through the editing process,[5] and that there is no guarantee that a course written by a professional writer will be featured in a catalog. (NetCE Depo. 75:22-76:22, 138:9-12). Pampinella assumed that each of the Jouria Articles would be the same number of credit hours as COPD and Multiple Sclerosis, despite NetCE's admission that at least the GERD Jouria Article was fewer credit hours and that the remaining articles had not been edited (meaning NetCE did not know how many credit hours the hypothetical as-published courses might have). (DE 200-3 p. 3; NetCE Depo. 135:8-136:18). Pampinella assumed that each of the Jouria Articles would have been published in the exact same catalogs, for the same number of years, as COPD and Multiple Sclerosis, despite NetCE's testimony that none of the Jouria Articles were ever scheduled to be published in any catalog and no determination had been made as to how many times the Jouria Articles might have been featured in any catalogs or over what period of time. (NetCE Depo. 128:24-129:12, 133:16-134:2, 165:7-20). Pampinella assumed that each of the Jouria Articles would have resulted in sales <u>exactly the same</u> as COPD and Multiple Sclerosis, despite NetCE's testimony that it does not know whether any of the Jouria Courses would have performed better <u>or worse</u>. (NetCE Depo. 137:4-9).

---

during deposition. (*See* NetCE Depo. 137:17-140:19, 154:14-19, 163:24-164:6). This shows that NetCE already knew of the relevance of these factors in determining potential course revenue, meaning that Pampinella's resulting "supplemental" opinions are not based on information previously unavailable to NetCE, as required for a proper supplement under Rule 26(e).

[5] Given NetCE's allegations that the Jouria Articles were "littered with plagiarized content" (DE 36, ¶ 55), it is unreasonable for Pampinella to make any conclusions about how the Jouria Articles might have fared had they gone through the full editing process.

8

As discussed in Section II, *supra*, Pampinella's only basis for his assumptions is information provided by NetCE. NetCE's testimony shows that each of those assumptions is based on speculation. NetCE's tries to downplay the speculative nature of those assumptions, claiming that NetCE's testimony (cited above and in Elite's *Daubert* Motion) shows only "the mere existence of some trivial uncertainty regarding the specific amount of damages." (DE 245, p. 13). At the risk of beating a dead horse, Elite submits that such belated attempts to recast the evidence in this case are beyond zealous advocacy and must be rejected. NetCE's witness never suggested that these uncertainties were "merely trivial." NetCE's testimony at issue was unequivocal: "There's no guarantee that [a course] will be featured." "It could have been more or less [credit hours] after editing. That is true." "The use of GERD in the Ohio nurses 2015 catalog was not possible due to length.· But whether or not it was scheduled for other catalogs as a five-hour course is not clear." "[GERD] was the only one that we had scheduled that far in advance.· The others were reserved to be considered in the meeting that spring." "Because we weren't able to release them, we don't know if they would have done better or worse than the multiple sclerosis course." (NetCE Depo. 138:9-12, 136:1-7, 132:6-9, 129:5-7, 137:7-9). *Daubert* requires the Court to prohibit expert testimony based on speculative underlying assumptions from reaching the jury. Lacking any reliable basis for his assumptions, all of which underlie his methodology and $7 million+ damages calculation, Pampinella's proposed testimony must be excluded as unreliable.

## CONCLUSION

For the reasons stated herein and in Elite's opening Memorandum, Elite respectfully requests that the Court exclude James E. Pampinella, and prohibit him from testifying.

Dated: April 2, 2018

Respectfully submitted,

/s/Peter A. Chiabotti
Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Fax: (561) 659-6313
Email: peter.chiabotti@akerman.com
Email: kristen.mckinney@akerman.com

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
*Attorneys for Third Party Defendant*
*Elite Professional Education, LLC*

**Certificate of Service**

      I hereby certify that on April 2, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                           /s/ Peter A. Chiabotti
                                                           Peter A. Chiabotti

**Service List**

Richard S. Ross
915 SE 2nd Court
Fort Lauderdale, FL 33301
Telephone: (954) 252-9110
Fax: (954) 252-9192
Email: prodp@ix.netcom.com
*Attorney for Plaintiff Dr. Jassin Jouria*

Philip E. Rothschild
Holland & Knight, LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-1000
Fax: (954) 463-2030
Email: phil.rothschild@hklaw.com
*Attorney for CE Resource, Inc. d/b/a CME Resource and NetCE*

John P. Kern
Jessica E. Lanier
Holland & Knight, LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 743-6900
Fax: (415) 743-6910
Email: john.kern@hklaw.com
Email: jessica.lanier@hklaw.com
*Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE*

Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Fax: (561) 659-6313
Email: peter.chiabotti@akerman.com
Email: kristen.mckinney@akerman.com
*Attorneys for Third-Party Defendant Elite Professional Education, LLC*

J. Mark Wilson (*pro hac vice*)
Kathryn G. Cole (*pro hac vice*)
Moore & Van Allen PLLCS
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Fax: (704) 331-1159
Email: markwilson@mvalaw.com
Email: katecole@mvalaw.com
*Attorneys for Third-Party Defendant Elite Professional Education, LLC*