## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

        Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

        Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC.,

        Third Party Defendants.

_____/

## NETCE'S RENEWED MOTION TO DOWNWARD DESIGNATE NON-PARTY AMERICAN NURSES CREDENTIALING CENTER'S  RECORDS PURSUANT TO THE STIPULATED PROTECTIVE ORDER

Pursuant to the Stipulated Protective Order (DE 118) entered by this Court on October 13,

2017, Defendant/Third-Party Plaintiff, CE Resource, Inc., d/b/a CME Resource and NetCE ("NetCE"), respectfully moves this Court for an Order requiring Third-Party Defendants, Elite Continuing Education, Inc. ("Elite"), to agree to a ***downward designation*** of non-Party American Nurses Credentialing Center's records[1] and the document Bates stamped ELT0052101 - 0052202[2] ("ANCC Records")—all from their provisional designation of "Attorneys' Eyes Only," to the more appropriate designation of "Confidential."

1.      On November 15, 2017—with leave from, and under the authority of this Court— NetCE issued a Rule 45 subpoena to non-party American Nurses Credentialing Center (the "ANCC"), a non-profit organization located in Maryland, which is a credentialing organization in the field of Continuing Education for nurses, and from which both NetCE and Elite have received accreditation as official CE providers for nurses throughout the United States.

2.      Elite sought to suppress NetCE's subpoena to the ANCC, but this Court denied Elite's Motion for Protective Order on March 22, 2018.

3.      On March 30, 2018, the ANCC produced to NetCE and Elite 86 separate records (1100 pages total) responsive to NetCE's subpoena.  By agreement of the parties, these records were provisionally designated—by the parties, ***not*** by the ANCC—as "Attorneys' Eyes Only."

4.      Now that the parties have reviewed the records, NetCE seeks to have them downward designated to "Confidential," so that it can benefit from its client's evaluation and assessment of the ANCC records and prepare to use them in negotiations with Elite, in pre-trial filings, and ultimately at trial.

5.      Elite, however, seeks continued Attorneys' Eyes Only ("AEO") protection of

---

[1]      A list of the Bates numbers of the ANCC records that warrant de-designation is attached hereto as <u>Exhibit A</u>.

[2]      This document was produced by ANCC and Elite, so Elite has no separate protections.

nearly all of the ANCC's records, but it has made no effort through multiple meet and confer emails and a telephone conference to compellingly articulate why the records are worthy of such an extraordinary designation.

6.      The burden to prove the ANCC records at issue warrant AEO designation belongs to Elite.[3]  The ANCC records designated as AEO include crucial documents, particularly (a) Elite's submissions to ANCC to obtain accreditation,  (b) ANCC's evaluation of the same, (c) the names of certain of Elite's staff, nurse planners, and editors, (d) the names of Elite's course authors, (e) the subject matter of Elite's courses, (f) the titles of Elite's courses, (g) the professions to which Elite was selling Continuing Education materials, (h) Elite customer surveys, and (i) some limited, internal ANCC notes re: the scoring of Elite's submissions for accreditation.

7.      Importantly, the ANCC records do not contain financial records, customer lists, proprietary models, schematics or drawings, personally identifiable information, strategic business plans, future marketing plans, patents, future course pricing rates, or source code.  *See Apple v. Samsung Electronics Co*., 727 F.3d 1214 1223-25.  (Fed. Cir. 2013) (material remained protected from disclosure, because the parties explained in specific detail for <u>each document</u> how disclosure of the information in the document would cause them competitive harm).

8.      NetCE acknowledges—and in no way disputes—that some of the information ANCC produced is indeed worthy of "Confidential" designation and, accordingly, that ***the dissemination of that information should be limited to the parties in this action and their counsel and for specific purposes related to this litigation only***.  NetCE will go a step further and acknowledge that even certain documents that appear innocuous, at first glance, when viewed as

---

[3]      Elite eventually agreed to a downward designation of 39 of 86 ANCC records; those de-designated consist almost entirely of documents irrelevant and useless to this case.  The 39 records account for a mere 89 pages of the 1,100 total pages that the ANCC produced.

standalone (*e.g.,* because they reflect information you might glean from Elite's website or otherwise obtain through some publically available means) may be commercially sensitive when evaluated in combination with other documents in the production (*i.e.,* taken as a whole, the documents can start to reflect Elite's business model or its strategic thinking).

9.    None of this, however, means that Elite is justified in over-designated the records as "Attorneys' Eyes Only" with no showing that such an extraordinary designation is necessary or appropriate.

10.    NetCE's trade secret misappropriation case is predicated, in part, on its allegation that Elite improperly accessed and used NetCE's accreditation strategies, processes, and application materials—all of which NetCE disclosed to Elite's former parent company (McKissock) pursuant to a Non-Disclosure Agreement.  McKissock's subsequent acquisition of Elite—and Elite's almost immediate transformation into a company modeled after and competing directly against NetCE (including by adopting NetCE's strategies for accreditation)—are at the core of this case.  *See* NetCE's Response in Opposition to Elite's Motion for Summary Judgment at 5-7 (DE 201).

11.    As it stands, Elite's AEO over-designation prejudices NetCE's ability to evaluate and prosecute this aspect of the case, because NetCE's counsel cannot share the ANCC documents with their client to discuss vital elements of its trade secret misappropriation claims.  It is critical that NetCE's lead planning nurse, its editorial staff, and its marketing staff review the ANCC-produced materials to assess the extent to which they reflect, copy, embody, or outright mimic the information NetCE disclosed to McKissock (Elite's former parent company) under the confidential terms of the acquisition deal's Non-Disclosure Agreement.  This is not a substantial similarity analysis that lawyers or an expert can perform.   This is a nuanced review that requires insider

4

understanding of the materials and the market.

12.     Likewise, NetCE's lawyers will not be able to testify about and describe for a jury at trial how these ANCC materials relate to the trade secrets NetCE contends that Elite stole and improperly used as the basis for re-making its own business.

13.     Elite, in its refusal to downward designate, seems to confuse the protection that the high bar of a "Confidential" designation already affords.   There is a reason courts disfavor "attorney's eyes only" provisions.  *See e.g. Vistakon Pharmaceuticals, LLC, et al. v. Bausch & Lomb, Inc.,* 2009 WL 1616475, *1 (M.D. Fla. June 9, 2009) ("The Court disfavors 'attorneys' eyes only' provisions so unless they can be agreed to, they should be eliminated.").  One such reason is that issuing protective orders can "restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor."  *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 24 (D.D.C. 2007).

14.     Under Elite's theory of designation, nearly every piece of confidential and commercially sensitive evidence would warrant an AEO designation.  In operation, then, every dispute involving intellectual property, financial data, marketing strategies, etc. (nearly every commercial case) would involve cumbersome, unworkable *in camera* proceedings and courtroom clearings every time a party needed to refer to evidence.  This is not the case.  *See In re Infant Formula Antitrust Litigation*, 1992 WL 503465, at *7 (N.D. Fla. 1992) (only materials that, if disclosed, would cause "a clearly defined and very serious injury" merit AEO protection); *Procaps S.A. v. Patheon Inc.,* 2015 WL 4430955, at *6 (S.D. Fla. July 20, 2015) (same).

15.     Here, a designation of "Confidential" will sufficiently protect from broad disclosure or improper use any information in the ANCC records Elite believes is proprietary.

16.     Operating in a similar fashion to the NDA at issue in the underlying case (or any

commercial NDA[4]), the Stipulated Protective Order in this case specifically restricts third party access to the ANCC records, and it provides that counsel may only share them *as reasonably necessary*, even to its own client.  (*see* DE 118 at ¶ 7.2).  Likewise, a designation of "Confidential" under the Stipulated Protective Order limits NetCE's use of the evidence for a specific, express purpose in this litigation, and prohibits NetCE from using it for any other purpose, *e.g.*, to compete commercially with Elite, or to disseminate to the public, or to bring suit against Elite in some other proceeding.

17.      As such, Section 6 of the Stipulated Protective Order allows NetCE to request Elite downward designate the ANCC records currently designated as AEO.  Elite's AEO designation is unnecessary given that a Confidential designation will adequately protect any proprietary information in the ANCC records.  Importantly, the AEO designation was never intended, and should not be used to hamstring one party's opportunity to prosecute or defend its case.  *See In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002) ("Once challenged, however, any decision to enter a Rule 26(c) protective order must be construed in light of the presumption in favor of public access to the courts.").

18.      Section 6.3 of the Order places the burden on the designating party to articulate why a particular record warrants an "Attorney's Eyes Only" designation.  It reads, in relevant part, "The burden of persuasion in any such challenge proceeding shall be on the Designating Party."

---

[4] Here, just as with commercial parties entering a non-disclosure agreement (e.g., to evaluate a merger), certain condition exists: You have (1) two businesses, (2) with built-in antagonisms and competitive postures towards one another, (3) who prefer not to share sensitive information with one another, but (4) who absolutely need to share that information with one another, (5) in order to achieve some shared goal (in the case of an NDA, perhaps a merger; in the case of litigation, an airing and adjudication of their conflict).  So what do they do?  They enter an agreement which permits them to share the sensitive information in a limited way, under specific conditions for us, with penalties for misuse.  They don't suppress access or review of the information from the very parties that are essential to evaluate it.

Elite therefore must prove that the remaining 47 (out of 86 total) records ANCC produced warrant this heightened designation (the parties have agreed to downward designate 39 of the documents). In fact, the ANCC, the entity whose records these are and who would have the most interest in keeping protected a trade secret or proprietary business information, *did not request* that the ANCC Records be designated "Attorneys' Eyes Only." Moreover, the AEO designation provides greater protection than Elite itself agreed to when submitting these records to the ANCC in the first place.

19. Moreover, the AEO designation at issue here resulted from NetCE's own suggestion at the March 22, 2018, hearing before Magistrate Snow, where NetCE and Elite were tussling over the properness of NetCE's subpoena to the ANCC. During that hearing NetCE suggested as a compromise—in response to Elite's stated concern that the ANCC Records *could be* of some highly sensitive nature—that the records, when produced, could provisionally be designated as "Attorneys' Eyes Only," until all counsel had an opportunity to review. Counsel have now had that opportunity, and the ANCC Records—while certainly of a commercial nature—do not rise to a level of sensitivity requiring the highest designation.

20. Perhaps most importantly here, the documents at issue reflect Elite's submissions to the ANCC seeking accreditation, and the ANCC's evaluation of those submissions. The contents of those submissions—dealing with Elite's strategies for accreditation and the content it relied on—*are relevant to NetCE's trade secret misappropriation claims in this case*. Simply put, NetCE has alleged Elite stole its ideas about what accreditations to seek, and how to obtain them. Client input is required and crucial to evaluate the meaning and weight of this new evidence which goes directly to NetCE's trade secret misappropriation claim. *Arvco Container Corp. v. Weyerhaeuser,* 2009 WL 311125, at *6 (W.D.Mich. Feb. 9, 2009) (the use of AEO designation poses "a significant handicap on the restricted litigant" because "[d]iscovery, trial preparation, and

trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant."); *K & M Int'l, Inc. v. NDY Toy, L.L.C.,* 2015 WL 520969, at *5 (N.D. Ohio Feb. 9, 2015) (same).

21.     Additionally, Section 5.1 of the Stipulated Protective Order prohibits "Mass, indiscriminate or routinized designations," and offers potential sanctions against the Designating Party, Elite, if the designations are clearly unjustified and not timely corrected.  To the extent Elite continues to object to downward designation of the 47 records at issue, it must clearly articulate and describe why each document is designated as such.

22.     Finally, with trial upcoming at the end of May, it is important to consider that the Protective Order will not govern the use of ANCC records at trial.  Section 3 states, "Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial."  As such, to prepare for trial and the undoubted use of the ANCC records at trial, it is imperative that NetCE receive client input on the materials now rather than on the eve of trial or during the trial.

CERTIFICATE OF COUNSEL pursuant to L.R. 7.1(a)(3):  Undersigned counsel certifies that it has made reasonable, good faith efforts to confer with Elite on this matter, but that the parties have been unable to resolve the issue.  NetCE counsel, Daniel Kappes, met and conferred by telephone with Elite's counsel requesting Elite's agreement to the downward designation of the ANCC records on April 10, 2018.  Likewise, the parties have exchanged numerous communications regarding this issue both before the telephone conference on April 10, and after the telephone conference, but have been unable to reach agreement on 47 of the 86 documents at issue.

#56537375_v2

WHEREFORE, NetCE respectfully requests that this Court enter an order that would:

1) grant NetCE's Motion and designate that the ANCC Records be considered "Confidential";

2) grant NetCE attorneys' fees[5]; and 3) grant any further and other relief as this Court deems necessary and proper.

Dated: April 13, 2018                                   Respectfully submitted,

                                                        HOLLAND & KNIGHT LLP

                                                        */s/ Philip E. Rothschild*
                                                        Philip E. Rothschild
                                                        Florida Bar No. 0088536
                                                        Email: phil.rothschild@hklaw.com
                                                        HOLLAND & KNIGHT LLP
                                                        515 East Las Olas Blvd., 12th Floor
                                                        Fort Lauderdale, FL 33301
                                                        Telephone: (954)525-1000
                                                        Facsimile: (954)463-2030

                                                        */s/ John P. Kern*
                                                        John P. Kern, Esq. (pro hac vice)
                                                        Email: john.kern@hklaw.com
                                                        Daniel Kappes, Esq. (pro hac vice)
                                                        daniel.kappes@hklaw.com
                                                        HOLLAND & KNIGHT LLP
                                                        50 California Street, Suite 2800
                                                        San Francisco, CA 94111
                                                        Telephone: (415)743-6918
                                                        Facsimile: (415)743-6910
                                                        Attorneys for CE RESOURCE, INC.
                                                        d/b/a CME RESOURCE and NetCE

---

[5]      *Procaps S.A. v. Patheon Inc*., 2015 WL 4430955, at *6 (S.D. Fla. July 20, 2015) ("The 'failure to obey a protective order's prohibition against indiscriminate designations is covered by Rule 37' and its fee-shifting presumption in favor of the party prevailing on a motion to compel.") (citing *Del Campo v. Am. Corrective Counseling Serv., Inc*., 2007 WL 3306496, at *4 (N.D.Cal., Nov. 6, 2007)).

#56537375_v2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 13, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Philip E. Rothschild*
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.
Kristen M. McKinney, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

#56537375_v2