UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61165-WPD

DR. JASSIN JOURIA

    Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Counter-Plaintiff,

v.

DR. JASSIN JOURIA,

    Plaintiff/Counter-Defendant.

_____/

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

    Defendant/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC.,

    Third Party Defendants.

_____/

**CE RESOURCE, INC. d/b/a CME RESOURCE and NETCE's
RESPONSE TO DR. JOURIA'S PARTIAL APPEAL OF OMNIBUS ORDER (DKT. 244)**

1

Magistrate Judge Snow correctly held that NetCE is entitled to the Education Commission for Foreign Medical Graduates' ("ECFMG") documents, so that in the event Dr. Jouria explores his credentials at trial, NetCE may properly impeach him by showing Dr. Jouria's lack of credibility. In addition, Judge Snow correctly determined that Dr. Jouria's motion to strike NetCE's Expert Report be denied.

Contrary to Dr. Jouria's assertion otherwise, at no point did Magistrate Judge Snow (or this Court), preclude NetCE from obtaining discovery of relevant information from the ECFMG directly. Any prior ruling only precluded NetCE from propounding additional deposition or document discovery on Dr. Jouria. The discovery NetCE now seeks only allows NetCE to protect itself at trial, should Dr. Jouria continue to tout his credentials and medical standing in the same way he did at his deposition.

NetCE files this Response to Dr. Jouria's Objections and Partial Appeal of the Magistrate's Omnibus Order (Dkt. 244). Dr. Jouria's Response (Dkt. 257) fails to address any fundamental problem with the Omnibus Order, let alone show that it is clearly erroneous or contrary to law. Fed. R. Civ. Proc. 72. Thus, NetCE respectfully requests this Court overrule Dr. Jouria's Objections and affirm Judge Snow's Order regarding the ECFMG discovery and the Expert Report.

## I.     ECFMG Background

The ECFMG is a credentialing body for graduates of medical schools located outside the United States. As NetCE understands (and as Dr. Jouria testified at his deposition), to practice medicine in the United States, a foreign-educated graduate must be credentialed by the ECFMG. (Ex. 2 to Dkt. 130.) Based on NetCE's information and belief, and as alleged in NetCE's counterclaims (Dkt. 36), a conflict arose between ECFMG and Dr. Jouria regarding his submission of false letters of recommendation. Dr. Jouria, in a prior bankruptcy hearing, admitted he submitted false letters of

recommendation to the ECFMG.  (Dkt. 239 at 55-56.)  NetCE discovered this only after it had contracted with Dr. Jouria in reliance on Dr. Jouria's assurances that he was appropriately credentialed by the ECFMG.  The discovery of this issue led NetCE to conclude that it would no longer contract with Dr. Jouria.  NetCE also conducted further investigation into Dr. Jouria's credentials and vetted his submissions under his NetCE contracts more thoroughly.  The production of ECFMG records, importantly, will substantiate or confirm Dr. Jouria's sworn testimony before the bankruptcy court, and, of course, have direct bearing on his reliability as a witness.[1]

## II.  ECFMG Argument

### A.  Prior Orders Did Not Preclude Production of ECFMG Records

Dr. Jouria mischaracterizes NetCE's argument with respect to the ECFMG subpoena and his conflict with the ECFMG.  Dr. Jouria also mischaracterizes the Magistrate Judge's Order.  NetCE simply seeks documents from the ECFMG regarding Dr. Jouria's application, in particular Dr. Jouria's admissions that he submitted false letters of recommendation to the ECFMG with his application. NetCE did not—and does not—seek to circumvent any prior ruling.

Magistrate Judge Snow at the March 22, 2018, hearing agreed:

> "So, in fact, I don't think my prior order precludes this [ECFMG] subpoena. And I also think that there is a difference between -- even though there is an interest in Dr. Jouria in the third party's documents that is different from requiring him to produce them himself -- I believe that it is highly unlikely that these documents are admissible. But I think counsel makes a good point that depending on what bolstering of credibility goes on at trial, it is conceivable that a Judge might allow them to be used." (Dkt. 262 at 42.)

Magistrate Judge Snow properly recognized that NetCE sought ECFMG records as a purely defensive effort to protect itself at trial.  Magistrate Judge Snow also recognized that NetCE's burden to show ECFMG documents are relevant for discovery purposes is not the same as its burden to prove

---

[1] The ECFMG has filed no objections to the subpoena and has stated it will comply with the subpoena.

3

they are admissible at trial. *Id*. at 42-43; *see* Fed. R. Civ. Proc. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense....Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Magistrate Judge Snow's Order is a recognition of the difference.

Dr. Jouria argues that because the ECFMG records may be inadmissible at trial, this Court should therefore bar their production. This argument lacks merit. *See Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2008 WL 2645680 *2 (S.D. Fla. June 26, 2008) ("But even if the information is only useful for purposes of impeachment or corroboration, it may still be discoverable whether or not it will ultimately be admissible in evidence at trial."); *Hickman v. Taylor*, 329 U.S. 495 (1947) ("such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration.").[2] Accordingly, this Court may ultimately disagree about the use of the ECFMG records at trial—but at the discovery stage—Dr. Jouria's argument is premature and not a basis to grant a protective order.

    **B.**    **The Magistrate Judge's Ruling Does Not Expand Rule 45 Discovery**

NetCE's initial discovery to Dr. Jouria sought broad information related to his dispute with the ECFMG. Magistrate Judge Snow rejected NetCE's request to compel Dr. Jouria to produce this broad information. (Dkt. 145.) But Magistrate Judge Snow's rejection of broad Rule 34 discovery does not prevent NetCE from seeking tailored information from a third party under Rule 45. Unsurprisingly, Dr. Jouria cites no case law in support of his argument that rejecting Rule 34 discovery at some point

---

[2] At Dr. Jouria's deposition during cross-examination he testified repeatedly regarding his credentials and medical achievements. Exh. 2 to Dkt. 130 at p. 206:22-207:24; *See* ECF No. 130-2 at p. 16 of 27.

during litigation forever bars a party from later seeking Rule 45 discovery.

Generally, courts have wide latitude to tailor discovery as they deem proper. *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993) ("The district court has broad discretion to control discovery.")  Magistrate Judge Snow acknowledged that there was overlap between NetCE's prior requests to Dr. Jouria and NetCE's subpoena to the ECFMG, but nevertheless recognized in her Order that NetCE's ability to rebut Dr. Jouria's credibility at trial warranted limited discovery:

> In support of its assertion that the information sought from ECFMG may be necessary to impeach Dr. Jouria's credibility at trial, NetCE requested that the Court take judicial notice, for purposes of this hearing only, of Dr. Jouria's prior deposition testimony in a bankruptcy proceeding. After hearing and considering the argument of counsel, the Court will take judicial notice of Dr. Jouria's deposition testimony (ECF No. 239-1, pgs. 55-58) for purposes of ruling on Dr. Jouria's motions for protective order and to quash only. Because the information sought by the ECFMG subpoena seeks information which may be used for impeachment purposes at trial, Dr. Jouria's motions are denied. (Dkt. 244 at 3-4.)

As articulated above, Magistrate Judge Snow did not preclude a third party from producing information that may be used to impeach a witness.[3]  *See* Dkt. 192.  Moreover, the ECFMG records are entirely different than the records that Dr. Jouria would have had to produce had Magistrate Judge Snow allowed NetCE access to Dr. Jouria's records.  Protective orders, like that sought by Dr. Jouria, are permissive. *McMullen v. GEICO Indem. Co.*, 2015 WL 2226537, at *2 (S.D. Fla. May 13, 2015) ("Protective orders, on the other hand, are permissive.")  Here, Dr. Jouria has articulated no reason why this Court should disturb Magistrate Judge Snow well-reasoned decision on the Rule 45 subpoena. *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) ("The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular

---

[3]   In practice, Dr. Jouria's argument results in the bizarre outcome where a party, if precluded from obtaining Rule 34 discovery, could not seek any discovery under Rule 45.  It also supposes that a prior discovery ruling forever forecloses a Court from granting a discovery request that is remotely related to a request previously denied, even when that earlier ruling is based on a mutable factor like relevance.

5

and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order.").

### III. NetCE's Expert Disclosure Was Not Untimely

#### A. Background

NetCE timely disclosed and produced its expert report. The scheduling order in this case did not include an expert disclosure deadline, therefore the applicable deadline under the Federal Rules of Civil Procedure is 90 days prior to the date the case was set for trial, or December 12, 2017.[4] Even if the Court construes November 15th as the discovery deadline, NetCE's 27-minute delay in formal service of the expert report is both harmless and excusable. *See Hyperphrase Techs. LLC v. Microsoft Corp.*, 2003 WL 21920041, at *1 (W.D. Wis. July 1, 2003).

This Court, on May 30, 2017, entered its Order Setting Trial Date & Discovery Deadlines (Dkt. 76) ("Scheduling Order"), setting Calendar Call for March 9, 2018, and the trial period to commence on March 12, 2018. In fact, both NetCE and Dr. Jouria had included an expert report exchange deadline in their respective schedules (Dkt. 70), however, the Court declined to specify an expert report disclosure deadline in the Scheduling Order. The Court did, however, set a specific deadline for *Daubert* motions directed at any such experts for January 8, 2018 ("Daubert Motions –60 days before Calendar Call").

The discovery cutoff was set for November 15, 2017, while a separate Substantive Pretrial Motions deadline was set for December 15, 2017. NetCE formally served its expert disclosures with a written report from expert James E. Pampinella of Navigant Consulting just minutes after midnight Eastern time the night of November 15, 2017, the close of discovery. (Dkt 156-1.) Lead counsel for

---

[4] This date was subsequently altered by a continuance of the March 12, 2018, trial commencement date.

NetCE is based in San Francisco, and although NetCE believed the expert report service date was still four weeks away (explained below), counsel intended to serve the report on November 15, 2017. (Dkt 171 at ¶ 9.)  Due to the time difference with the San Francisco, the report was not formally served until 12:27 AM, on November 16, 2017.

### B.  Dr. Jouria Knew NetCE Had Hired an Expert

Counsel for Dr. Jouria incorrectly argues that service of the expert report was the first time he learned of a damages expert from Navigant Consulting. (Dkt. 257 at 8.) NetCE lead counsel John Kern raised the issue of an expert report with counsel for Dr. Jouria on multiple occasions during the course of discovery, including at a discovery hearing before Judge Snow (when she inquired about pending discovery), during a break in the deposition of Dr. Jouria, back on September 28, 2017, and in numerous emails regarding NetCE's production of expert reliance materials leading up to NetCE's disclosure and production of the report. (Dkt. 171 at ¶¶ 3-5, 7-8.)  On November 10, 2017, NetCE informed counsel for Dr. Jouria by a letter emailed to him that the documents relied upon by the damage expert from Navigant Consulting were being mailed to him by UPS Next Day Air. (Dkt. 171-1.)  Furthermore, counsel for NetCE has previously informed counsel for Dr. Jouria that the expert, Mr. Pampinella, was available for deposition (and he still is), and that NetCE had no opposition to Jouria's retention of a rebuttal expert, allowed under the Rules to be disclosed 30 days after service of NetCE's expert report. (Dkt. 171-1 ¶¶ 10, 12.)

### C.  Pursuant to the Court's Scheduling Order and the Federal Rules of Civil Procedure The Expert Disclosure Deadline is December 12, 2017

Rule 26(a)(2)(D)(i) of the Federal Rules of Civil Procedure states that: "Absent a stipulation or a court order, the [expert] disclosures must be made (i) at least 90 days before the date set for trial

or for the case to be ready for trial. . . ." Therefore because the Scheduling Order did not set a date for disclosure of expert reports, that date is December 12, 2017, 90 days from the beginning of the trial period. This interpretation is supported by the remaining deadlines within the Scheduling Order itself, which provides for a January 8, 2018, deadline for Daubert Motions directed to any experts.

The case law relied upon by Dr. Jouria is all inapplicable. For example, in *De Armas v. Miabraz LLC*, Case No. 12-20063-civ, 2012 WL 3067439, *1 (S.D. Fla. July 27, 2012), only the expert's name was first disclosed at a specific deadline for expert discovery, without service of a report at all. In addition, the trial was just two months away, not almost four months as was the case here. In *Cruz v. United States*, Case No. 12-21518-civ, 2013 WL 246763, *2 (S.D. Fla. Jan. 22, 2013), Cruz disclosed his expert three weeks after the discovery cutoff and eight days after the United States filed a summary judgment motion at the deadline for such motions. Neither *De Armas* nor *Cruz* addressed NetCE's argument regarding the Rule 26(a)(2)(D)(i) default deadline of 90 days prior to the trial period for service of expert disclosures and reports.

The additional case law cited by Dr. Jouria is also distinguishable. In *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 811 (11th Cir. 2017), the district court's scheduling order contained a specific expert report disclosure deadline. There is no dispute that a party cannot rely on the default deadline of Rule 26(a)(2)(D)(i) when the district court includes a specific expert report disclosure deadline. But in the case at bar, there was no such deadline, and the inclusion of a January 8, 2018, *Daubert* motion deadline, several weeks after the summary judgment deadline, leads to the eminently reasonable conclusion—uncontroverted by any agreement or order—that the expert report deadline was 90 days prior to the trial period, or December 12, 2017.

The one case that could support Dr. Jouria's argument, *Hassebrock v. Bernhoft*, 815 F.3d 334, 340-41 (7th Cir. 2016), is not binding authority, and it is distinguishable because in that case the expert

report was disclosed three days after the discovery cutoff, as opposed to 27 minutes (like here). In addition, one month prior to the discovery deadline at a hearing, the "Hassebrocks made it clear that they understood the May 10 deadline as the final date to conclude all discovery: They promised to disclose their expert's report 'well before the discovery cutoff of May 10, 2014.'" 815 F.3d at 341. In the present case, since the issuance of the Scheduling Order NetCE has operated under the reasonable interpretation that, given the lack of an expert disclosure deadline in the Order and the inclusion of a January 8 *Daubert* motion deadline, that the expert report disclosure deadline was December 12, based upon the default date in the Federal Rules. Counsel for Dr. Jouria never informed NetCE that he took a different position—he waited until service of the report to move to strike. This Court should affirm Judge Snow's order and conclude that NetCE's expert report disclosure is timely.

### D. If November 15 is Ruled to be the Deadline, the Report Should Not be Stricken as Service of the Report was Substantially Justified and Harmless

Even if the Court concludes that Plaintiff's interpretation that the Court had impliedly set an otherwise undisclosed expert report deadline for some point prior to November 15, 2017, is reasonable, it is just as reasonable for NetCE to conclude that the deadline was December 12, 2017. Most importantly, for purposes of the underlying motion that seeks to strike the expert report under Rules 26 and 37, the service of the expert report shortly after midnight on November 15, given the above explanation, is substantially justified under Rule 37(c)(1), as it is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply." Cruz, 2013 WL 246763 at *2 (internal citations omitted).

The service of the report just after midnight on November 15 is also harmless, despite Dr. Jouria's protestations to the contrary. NetCE previously had informed counsel for Dr. Jouria at the September 28 deposition that a damages expert was likely. (Dkt. 171 at ¶ 5.) NetCE had also let both

9

Elite's counsel and Dr. Jouria's counsel know that NetCE has no opposition to service of a rebuttal report pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii), nor any opposition to counsel taking Mr. Pampinella's deposition. (Dkt. 171 at ¶¶ 8, 10, 12.)  Dr. Jouria's counsel, who markets himself as an experienced practitioner in the field of intellectual property, should have known since the case was filed that damages were a significant issue.  In any event, NetCE put him on notice that a damages expert report was forthcoming weeks before November 15, 2017.  He cannot claim surprise, he has suffered no prejudice, and he had ample time and opportunity for months prior to trial to choose to depose the expert.  Dr. Jouria's strategic decision not to depose the expert is not the fault of NetCE.

**IV.    Conclusion**

For all the reasons argued above this Court should affirm the Magistrate's Order as to the ECFMG subpoena and the timeliness of NetCE's expert report, and reject Dr. Jouria's partial appeal of Magistrate's Order.

Dated: April 17, 2018                                                      Respectfully submitted,

                                                                                          HOLLAND & KNIGHT LLP

                                                                                          */s/ Philip E. Rothschild*
                                                                                          Philip E. Rothschild
                                                                                          Florida Bar No. 0088536
                                                                                          Email: phil.rothschild@hklaw.com
                                                                                          HOLLAND & KNIGHT LLP
                                                                                          515 East Las Olas Blvd., 12th Floor
                                                                                          Fort Lauderdale, FL 33301
                                                                                          Telephone: (954)525-1000
                                                                                          Facsimile: (954)463-2030

                                                                                          */s/ John P. Kern*
                                                                                          John P. Kern, Esq. (pro hac vice)
                                                                                          Email: john.kern@hklaw.com
                                                                                          Jessica E. Lanier, Esq. (pro hac vice)
                                                                                          Email: Jessica.Lanier@hklaw.com
                                                                                          HOLLAND & KNIGHT LLP
                                                                                          50 California Street, Suite 2800
                                                                                          San Francisco, CA 94111

Telephone: (415)743-6918  
Facsimile: (415)743-6910  
Attorneys for CE RESOURCE, INC.  
d/b/a CME RESOURCES and NetCE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Philip E. Rothschild*  
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.  
RICHARD S. ROSS, ESQ.  
915 S.E. 2nd Court  
Ft. Lauderdale, Florida 33301  
(Attorney for Plaintiff Dr. Jassin Jouria)  
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.  
Kristen McKinney, Esq.  
AKERMAN LLP  
777 South Flagler Drive  
Suite 1100, West Tower  
West Palm Beach, FL 33401  
(Attorneys for Elite Continuing Education, Inc.)  
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.  
Kathryn G. Cole, Esq.  
MOORE & VAN ALLEN PLLC  
100 North Tryon Street, Suite 4700  
Charlotte, North Carolina 28202  
(Attorneys for Elite Continuing Education, Inc.)  
**[VIA ELECTRONIC MAIL SERVICE]**

11