```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                     CASE NO. 15-CV-61165-WPD

 3   JASSIN JOURIA, DR.,
                                      Fort Lauderdale,  Florida
 4            Plaintiff(s),
                                      April 17, 2018
 5        vs.

 6   CE RESOURCE, INC,  doing business
     as CME RESOURCE AND NETCE, et al.,
 7
                  Defendant(s).      Pages 1 - 15
 8   ------------------------------------------------------------

 9                            HEARING
                 BEFORE THE HONORABLE LURANA S. SNOW
10                 UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12   FOR THE PLAINTIFF(S):   RICHARD S. ROSS, ESQ.
                             915 SE 2 Court
13                           Fort Lauderdale, Florida 33301
                             954-252-9110
14                           prodp@ix.netcom.com

15
     FOR THE DEFENDANT(S):   PHILIP ROTHSCHILD, ESQ.
16   CE Resource, Inc.       JOHN P. KERN, ESQ.
                             HOLLAND & KNIGHT
17                           515 E Las Olas Boulevard
                             Fort Lauderdale, Florida 33301
18                           954-468-7881
                             phil.rothschild@hklaw.com
19                           john.kern@hklaw.com

20
     FOR THIRD-PARTY         KATHRYN G. COLE, ESQ.
21   DEFENDANT:              MOORE & VAN ALLEN, PLLCS
     Elite Professional      100 North Tryon Street
22   Education, LLC          Charlotte, NC 28202
                             704-331-1000
23                           katecole@mvalaw.com

24   TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                             Court Reporter
25                           jemancari@gmail.com
```

```
 1                    (In open court)

 2               THE DEPUTY CLERK:  Calling case No. 15 61165, Jouria

 3    v. CE Resource, Inc.

 4               THE COURT:  All right.  May I have counsel's

 5    appearances, please.

 6               MS. COLE:  This is Kathryn Cole on behalf of

 7    third-party defendant Elite.

 8               MR. ROTHSCHILD:  Phil Rothschild, and with me is John

 9    Kern, for CE Resource, known as NetCE.

10               MR. ROSS:  Good afternoon.  Richard Ross on behalf of

11    Dr. Jassin Jouria.

12               THE COURT:  OK.  We are here on Elite's motion to

13    strike the supplemental report of Mr. Pampinella.  If you would

14    like to summarize your argument.

15               MS. COLE:  Thank you, your Honor.

16               You may recall that we were just in your courtroom a

17    few weeks ago on several discovery motions, one of which was

18    Dr. Jouria's motion addressed to Mr. Pampinella's initial

19    expert report.  The issue there was the timing of that initial

20    report.

21               At that hearing NetCE strongly argued that the

22    deadline for that report was not until mid-December.  They had

23    served it in November and so they argue that that report was

24    timely.  And your Honor agreed with that.

25               What NetCE did not tell the court or anyone else in
```

1    the courtroom was that the day before their expert had signed

2    and dated a supplemental report.  NetCE's counsel e-mailed that

3    to us three hours --

4              THE COURT:  The day before the hearing.

5              MS. COLE:  -- after we left that hearing.

6              I'm sorry?

7              THE COURT:  The day before the hearing.

8              MS. COLE:  Yes, your Honor.

9              THE COURT:  OK.

10             MS. COLE:  And then we learned about this three hours

11   after the hearing.

12             I don't know if you had a chance to review that

13   supplement, as they call it, but it has over 20 pages of any

14   discussion analysis from NetCE's damages expert.  It also cites

15   over 20 NetCE financial and related documents that had never

16   been produced to us and were not produced to us with the expert

17   report.  In fact, they only e-mailed those to us after we filed

18   our motion to strike.

19             The question before the court on Elite's motion is

20   quite simple.  Is this report a proper supplement under Rule

21   26(e)  And we submit that the answer is no.

22             There is no dispute that it was served months after

23   the close of discovery and months after the deadline for expert

24   reports.

25             Rule 26(e) does require that parties serve a

1    supplement if they learn that their initial report was in some

2    way inaccurate or incomplete.  But in order to determine what

3    is a proper supplement, it's useful to first review what is

4    required for an initial expert report.

5        Rule 26(a) requires that an initial report contain a

6    complete statement of all opinions the witness will express and

7    the bases and reasons for them as well as the facts or data

8    considered by the expert in forming that opinion.

9        This means, as reflected in a host of cases that we

10   cited, this means that a party cannot serve a supplement to

11   merely expand upon or bolster an opinion contained in a prior

12   initial report.

13       The cases say it has been repeatedly recognized that

14   Rule 26(e) solely permits supplemental reports for the narrow

15   purpose of correcting inaccuracies or adding information that

16   was not available at the time of the initial report.

17       Now, in their opposition brief NetCE bases their

18   entire opposing argument, it appears, on the false premise that

19   this supplemental report is based on new information.  They

20   point to two things.  One, additional documents produced by

21   Elite and, two, the deposition of their own corporate

22   representative.

23       NetCE expressly states in its opposition these two

24   events are the basis for Mr. Pampinella's supplement.  But a

25   review of that report shows that this is simply not true.

1    Pampinella does not cite or discuss any of that information in

2    these pages and pages and pages of additional analyses and

3    opinions.

4          If you flip through the supplemental report, nowhere

5    does he cite to any documents from Elite.  Nowhere does he cite

6    to anything new from after his initial report in November.  In

7    fact, if you flip through here, what you see is numerous

8    references to discussions with NetCE's own employees.  That

9    information was necessarily available to NetCE at the time of

10   his report.

11         He has numerous citations to accreditation

12   requirements and customer reviews and financial data from 2002,

13   2009, 2014.  This is rife with information that was available

14   to NetCE for months or years prior to service of the initial

15   report.

16         Because all this information was available at that

17   time -- this is a black-and-white issue -- it is not a proper

18   supplement under Rule 26(e).  Courts in this circuit routinely

19   and regularly strike so-called supplemental reports for this

20   exact same reason, and these decisions are upheld by the

21   Eleventh Circuit, as we cited to in our brief.

22         Your Honor, I'm at a loss to explain how NetCE can

23   submit argument to this court contending that the supplement is

24   based on new information.  All of this was available at the

25   time of his initial report, and there has been no explanation

1   for why now, months after discovery and weeks before calendar

2   call, we're being served with this new report based on

3   information available for years.

4          For that reason, Rule 37 requires that the court

5   impose a mandatory automatic sanction of exclusion, and the

6   only way NetCE can avoid that sanction is to meet its burden to

7   show that this disclosure was somehow substantially justified

8   or harmless.

9          Again, their only justification is the same one that

10  they tried to use to explain why they served this report in the

11  first place, claiming that it's based on new information.  But

12  Pampinella himself prepared a declaration to serve in

13  opposition to our motion where he had admitted that the new

14  information that came to light after his initial report did not

15  even change his opinions.  So that is obvious from a plain

16  review of this supplement, if you just even look at what he

17  cites to in the body of his report, but he himself admitted

18  that in his declaration.  There is no justification for this

19  late disclosure.

20         NetCE would also have the burden to show that this

21  disclosure was somehow harmless.  In an effort to show that

22  they simply argue, well, you can take his deposition.  But as

23  your Honor knows, discovery closed months ago.  We're about

24  five weeks from calendar call right now.

25         We cited cases to your Honor showing that a deposition

1    at this stage is unreasonable and impractical and, more

2    importantly, even if it was practical to depose Mr. Pampinella

3    at this point, the new information contained in his report

4    would require much more from us than just a deposition of him.

5            He now cites information from third-party accrediting

6    bodies.  We have had no opportunity to take depositions or seek

7    discovery from these third-party entities.

8            He cites information purportedly showing customer

9    reviews that have been in NetCE's possession for years.  We've

10   had no opportunity to take discovery from NetCE about these

11   customer reviews.

12           He has new information in here about the number of

13   pharmacology credits that these courses somehow would have

14   provided.  We've never seen this information before and have

15   never had an opportunity to seek discovery on it.

16           He talks about pharmacotherapies, a term that NetCE

17   has never put forth as a claim in this case and, frankly, I'm

18   not even sure what it means.

19           This report is full of information that not only have

20   we been precluded from deposing Mr. Pampinella about, but we've

21   been foreclosed from seeking discovery from NetCE on these

22   issues, from third parties on these issues, and from hiring a

23   rebuttal expert ourself to respond to some of these issues

24   related to accreditation and third-party requirements for those

25   types of things.

1           For that reason, and as set forth in our brief, we

2     request that this entire supplemental report be stricken.

3           THE COURT:  OK.  Let's hear from NetCE.

4           MR. ROTHSCHILD:  Thank you, your Honor.

5           Let's see.  First of all, it's important to note, as

6     counsel did state, that the opinions didn't change.  The

7     evidence changed because more evidence became available after

8     the close of discovery, as we have explained in our response.

9           To the argument that --

10          THE COURT:  How is the deposition of your own officer

11    newly-discovered evidence?

12          MR. ROTHSCHILD:  Well, of course the expert had

13    interviewed and relied on testimony of the officers in

14    preparing his initial report.  But as is always the case with

15    depositions, the nature and scope of having the opposing party

16    part of that question-and-answer process elicited information

17    that hadn't been previously considered.  Typically experts do

18    rely on 30(b)(6) depositions even if they have interviewed the

19    client beforehand.

20          At the time that he issued the report, he specifically

21    put everybody on notice that he was reserving the right to

22    supplement the report once he reviewed the deposition testimony

23    and at that time was expecting to have at least 30(b)(6)

24    deposition testimony, which ultimately didn't happen for

25    reasons that were discussed at the last hearing.

1          Then also Elite's productions continued into December.

2     If you recall on the timing, the productions continued into

3     December.  The parties briefed summary judgment.  Elite had a

4     rebuttal witness, Dr. Bone, that did his report, I believe, in

5     late December.  Then the mediation happened in the first week

6     of January, and the parties put the litigation aside for part

7     of the time in the hopes that that settlement could -- that a

8     settlement could ultimately be reached.  Unfortunately, it

9     didn't happen.  So things were on hold for two months.

10          Once it became clear the beginning of March that there

11    wasn't going to be a final settlement signed, Mr. Pampinella

12    picked up the file again and supplemented his report.

13          We argued timely under Rule 26(a)(3) -- I'm sorry.

14    26(e)(3).  I'm sorry.  26(b)(2), which is the expert witness

15    supplementation rule, which ties into 26(a)(3), which is the

16    pretrial disclosure rule, which basically sets sort of a

17    default deadline of supplementation 30 days before trial.

18          On the timing issue of being before you at the last

19    hearing, I mean, if you had stricken the initial report

20    obviously we couldn't serve the supplement.  In addition, the

21    particular timing of this case, if you recall the --

22          THE COURT:  Yes, but it might have been more candid to

23    have told everybody about it at that time, don't you think?

24          MR. ROTHSCHILD:  Yes.  The timing was not -- there

25    also was the response to Elite's Daubert motion, which had been

1    continued until, I believe, March 23rd.  So there wasn't an

2    attempt to sandbag.  I mean, it was timely under the

3    peculiarities of what was happening in this case.

4          THE COURT:  I suppose, but I think it might have been

5    helpful to me to have known that that is what you were planning

6    to do.  But go ahead.

7          MR. ROTHSCHILD:  As far as what is relied on in the

8    supplement, again, the key -- and this is a distinguishing

9    feature of the supplement -- is that it didn't change the

10   opinions.  The damage opinion went from 7.1 in the original to

11   7.2 only because of the two-month delay in the trial, from when

12   the trial was originally going to be in March and then it got

13   moved to May.

14         So there is no change in the damages opinion and there

15   is no change in the methodology that the expert used.  There

16   was just more evidence available to support the existing

17   opinions.  And I think that would distinguish it from many of

18   the typical types of exclusions that you would see.

19         As far as Elite, the argument that, well, he didn't

20   really rely on the Elite documents, I mean, he obviously needed

21   to review what Elite had produced late.  Ultimately he didn't

22   rely on it for his opinions.  It's not something he could have

23   known until he had actually reviewed it.  And several of the

24   specific facts that they argue are new were actually discussed

25   in his original report, and we went through that in our

1    opposition to the motion to strike, where he wasn't bringing

2    out new concepts.  He was supporting what he had already

3    included in his initial report.

4            Also, as your Honor is aware, we have offered

5    Mr. Pampinella for deposition for five months now and no side

6    has taken up our offer, which would have taken care of

7    prejudice, any prejudice to the other side a long time ago.

8            Without mentioning substantially justified, I think

9    I've already hit on the timing of the events in this case that

10   make this supplement substantially justified.  And on the lack

11   of prejudice, as I said, if the offer to depose Mr. Pampinella

12   had happened in January, he could have discussed these things

13   and probably would not have even needed to supplement.  But

14   that deposition never happened.

15           Upon the case restarting again at the beginning of

16   March, he put together the supplement, and we contend that it

17   is entirely appropriate to, not to strike his supplement to his

18   expert report.

19           If the court has any other questions or anything else.

20           THE COURT:  I don't think so.

21           MS. COLE:  May I respond briefly?

22           THE COURT:  Yes, you may.

23           MS. COLE:  A couple of points, your Honor.  This

24   notion that their own 30(b)(6) representative's deposition

25   transcript gives them the right to supplement --

```
1            THE COURT:  That makes no sense to me.  You don't have
2     to argue that.
3            MS. COLE:  OK.  Thank you.
4            A lot of what we heard from counsel a couple of
5     minutes ago was that more evidence became available after the
6     initial report, but I still have not heard what evidence, what
7     new evidence is the basis for any of these pages and pages and
8     paragraphs and paragraphs of new discussion.
9            Everything Mr. Pampinella discusses and cites to is
10    based on information that was available to NetCE long before
11    the initial report.
12           Rule 26(e) and the case law interpreting it, including
13    the case law from this Circuit and the Eleventh Circuit, is
14    crystal clear on this point.  If the information was available
15    to the party at the time of the initial report, that is when it
16    had to be included.
17           The only reason a party can serve a supplemental
18    report under Rule 26(e) is if new information becomes
19    available.  It can't be from their own representatives.
20           We cited the Potish case from this court and the Reiss
21    case from the Eleventh Circuit that says:  If the information
22    was in the possession of the party's own representatives, that
23    does not provide a basis to supplement.  It's a black-and-white
24    issue.
25           We heard that this was a timely supplement under the
```

1    peculiarities of this case with reference to Rule 26(a)(3),

2    saying that a supplement has to be served 30 days before trial,

3    but you don't get to that timing analysis if it's not a proper

4    supplement in the first place.  And that's exactly what we have

5    here.

6           Counsel argued that Mr. Pampinella's opinions didn't

7    change.  If I can briefly read an excerpt from the Boca Raton

8    case out of this court.  The court said:  The only remaining

9    point to address is plaintiff's attempt to minimize the

10   prejudice to defendant by suggesting that the supplement

11   contains no new opinions but merely addresses some issues that

12   had come up since then.

13          To the extent the supplement seeks to clarify the

14   expert's earlier opinions by bolstering them, this is not a

15   proper supplementation.

16          It does not matter that these opinions and methodology

17   were in the initial report.  Rule 26(a) clearly requires that

18   that initial report had to contain a complete statement of his

19   opinions and the facts and bases and reasons for them.

20          Rule 26(e) does not provide an opportunity for him to

21   bolster them or explain them or expound upon them.  Their

22   expert is not provided the opportunity to offer new opinions

23   based on previously-available information or to bolster his

24   already-expressed opinions based on previously-available

25   information.

```
 1              Without having pointed to any new information that

 2    became available after the initial report, there is simply no

 3    basis for a supplement here, your Honor.

 4              Do you have any questions?

 5              THE COURT:  No.

 6              MS. COLE:  OK.  Thank you.

 7              THE COURT:  All right.  I don't know, maybe I'm

 8    missing something, but I do not believe this is a close

 9    question.

10              The 30(b)(6) information was available.  To the extent

11    that there were new documents, the fact that he looked at them

12    is immaterial if he didn't incorporate them in any way, shape

13    or form in the new report.  And I believe that this supplement

14    is not the kind of supplement that was contemplated under the

15    rules.  This information should have been included in the

16    initial report, and the motion to strike is granted.

17              MS. COLE:  Thank you, your Honor.

18              THE COURT:  All right.

19              The court is in recess.

20              (Adjourned)

21

22

23

24

25
```

1

2                          C E R T I F I C A T E

3

4         I hereby certify that the foregoing is an accurate

5    transcription of the taped proceedings in the above-entitled

6    matter.

7

8

9    May 2, 2018              /s/ Joanne Mancari
                              Joanne Mancari, RPR, CRR, CSR
10                            Court Reporter
                              jemancari@gmail.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25