IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:15-61165-WPD

DR. JASSIN JOURIA,

      Plaintiff/Counter-Defendant,

v.

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

      Defendant/Counter-Plaintiff/Third Party Plaintiff,

v.

ELITE CONTINUING EDUCATION, INC. and ALPINE
MANAGEMENT SERVICES,

      Third Party Defendants.
_____/

## ORDER DENYING MOTION TO EXCLUDE EXPERT TESTIMONY

THIS CAUSE is before the Court upon Elite's Daubert Motion to Exclude Expert Testimony [DE 217], filed on January 8, 2018. The Court has carefully considered the Motion, the Response [DE 245], the Reply [DE 254], and is otherwise fully advised in the premises.

### I.  Background

This action was filed on June 2, 2015. [DE 1]. Plaintiff Dr. Jassin Jouria ("Jouria") filed the Complaint against CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE"), seeking a declaration that Plaintiff did not violate NetCE's copyrights and did not breach contracts entered into with NetCE. *See* [DE 1]. NetCE filed its original Answer and Counterclaims on October 6, 2015. [DE 33]. A seven-month-long bankruptcy stay followed, and NetCE sought leave to amend its Answer on September 23, 2016, [DE 33], which the Court granted. *See* [DE 35]. On October 21, 2016, NetCE filed the Amended Answer, Affirmative Defenses, Amended Counterclaim, and Third-Party Complaint. [DE 36]. The following claims remain against third-

party defendant Elite Continuing Education for: (Count 1) Copyright Infringement; (Count 4) Tortious Interference with Contractual Relations; and (Count 6) Misappropriation of Trade Secrets Under Florida's' Uniform Trade Secrets Acts (Civil Code §§ 688.01 *et. seq.*). *Id.* NetCE also asserted claims against third-party defendant Alpine Management Services III, LLC ("Alpine"), but Alpine has been dismissed from this action. *See* [DE 65].

NetCE is a California-based company that specializes in developing Continuing Medical Education ("CME") courses and materials. [DE 36 at 15]. To develop CME materials, NetCE contracts with independent authors, usually licensed medical professionals and/or credentialed medical scholars, ("Authors"). *Id.* The Authors work under standard template agreements, ("Freelance Writer Agreements" or "FWAs"), which are identical for all Authors except for the name, deadlines, and subject matter areas. *Id.* at 15–16. Under the Freelance Writer Agreements, Authors agree to draft and submit articles to CME on a specific subject, in a specific format, and by a specific deadline. *Id.* Authors agree that the articles they submit to NetCE are "works for hire" and all copyrights associated with these materials belong to NetCE unless and until NetCE rejects the materials. *See id.*; *see also* Freelance Writer Agreements at [DE 36-2].[1]

Third-party Defendant Elite ("Elite") also produces CME courses and materials and is a direct competitor of NetCE. [DE 36 at 17].

In 2012 and 2013, NetCE and Jouria executed ten Freelance Writer Agreements. [DE 36 at 18]. NetCE published three of the ten courses written by Jouria; the remaining seven courses that were not published by NetCE are at issue in this case (the "Seven Courses"). *Id.* at 19. In 2012, Alpine, an investment firm, approached NetCE to discuss the possibility of purchasing it. *Id.* Alpine and NetCE executed a Non-Disclosure Agreement ("NDA") to facilitate the exchange of confidential, proprietary, and sensitive information. *Id.* at 20. NetCE shared its plans to

---

[1] NetCE has registered copyrights for the seven courses at issue in this case, effective May 15, 2015. *See* [DE 36-1].

develop and commission courses (including the Seven Courses written by Jouria that are at issue in this action). *Id.* NetCE shared details about the Seven Courses, including Jouria's involvement and the timing of planned rollouts. *Id.* In late 2012, NetCE terminated discussions with Alpine. *Id.* Shortly thereafter, Alpine purchased an interest in NetCE's competitor, Elite. *Id.* After Alpine's investment in Elite, Elite hired Jouria. *Id.* at 36. In February 2015, NetCE discovered that Jouria had submitted the Seven Courses to Elite, and Elite published them, all without NetCE's permission. *Id.* at 25.

By the instant motion, Elite seeks to exclude expert testimony by NetCE's damages expert, James E. Pampinella ("Pampinella"), who has opined about the damages NetCE incurred due to five Jouria-authored courses published by Elite that were allegedly owned by NetCE.

## II.   Legal Standard

Rule 702,[2] as explained by *Daubert* and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). In *Daubert*, the Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert*, 509 U.S. 579 at 589. As stated in the Advisory Committee Notes accompanying Rule 702 of the Federal Rules of Evidence, "[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *See* Advisory Committee Notes to the 2000 Amendment to Rule 702. In

---

[2] Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

addition, the trial judge is afforded broad discretion in deciding *Daubert* issues. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

In *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit set forth a three-pronged approach to qualifying expert witnesses: To fulfill their obligation under *Daubert*, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Id.* at 1291–1292 (internal citations omitted). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. *See Id.* at 1292; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

### III.   Discussion

NetCE has proffered damages expert Pampinella, who has opined about the damages NetCE suffered by Elite's publication of five courses authored by Jouria and allegedly owned by NetCE. Elite moves to exclude Pampinella from testifying at trial under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence.

Having carefully considered the parties' arguments for and against the exclusion at trial of Mr. Pampinella's expert opinion, the Court denies the *Daubert* motion. Mr. Pampinella is sufficiently qualified in terms of both education and experience to provide helpful, relevant testimony that will likely assist the jury in understanding damages in this case, which are "beyond the understanding of the average lay person." *See U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). Moreover, the Court finds that the proffered expert testimony will have a

tendency not to confuse the jury, but rather to "logically advance[] material aspect[s] of the case.'" *See Coral Way, L.L.C. v. Jones*, No. 05-21934-CIV, 2006 WL 5249734, at *2 (S.D. Fla. Oct. 17, 2006) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004)). Finally, "[t]he qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)).

Elite argues that Pampinella's testimony is not reliable or helpful to the jury. Mainly, Elite takes issue with Pampinella's selected sample. Pampinella chose NetCE's profits from two courses authored by Jouria, and previously published by NetCE, as a "benchmark" for determining damages on the five courses at issue in this case. Elite argues, *inter alia*, that many factors impact the potential profits of any one course, and the benchmark courses selected may differ from the five courses in important ways. The Court has found Mr. Pampinella is qualified and proposes to give testimony that passes muster under *Daubert*. Therefore, he will not be excluded pretrial. Elite's criticisms of Mr. Brill's opinion may form the basis for "[v]igorous cross-examination and "presentation of contrary evidence" at trial. *See Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001); *see also Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. Sept. 7, 2011).

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that Elite's Daubert Motion to Exclude Expert Testimony [DE 217] is **DENIED**.

**DONE and ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of May, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

cc: All counsel of record