UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:15-61165-WPD**

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

    Plaintiff,

v.

DR. JASSIN JOURIA, and ELITE PROFESSIONAL EDUCATION, LLC.,

    Defendants.

_____/

DR. JASSIN JOURIA,

    Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

    Counter-Defendant,

_____/

**DEFENDANT ELITE PROFESSIONAL EDUCATION, LLC'S MOTION *IN LIMINE*
NO. 1 TO EXCLUDE EXPERT TESTIMONY OF JAMES PAMPINELLA
AND INCORPORATED MEMORANDUM OF LAW**

*ORAL ARGUMENT REQUESTED*

Pursuant to Federal Rule of Evidence 702, Defendant Elite Professional Education, LLC ("Elite") hereby moves *in limine* to preclude Plaintiff CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") from eliciting testimony from its damages expert, James Pampinella, as Mr. Pampinella's lost profits opinion is based purely on speculation.

## MEMORANDUM OF LAW

### INTRODUCTION

In support of its claim of $7.1 million in lost profits allegedly arising from NetCE's decision not to publish the Jouria Articles, NetCE has served an expert report from James Pampinella, a certified public accountant. In that report, Mr. Pampinella opines that "NetCE's damages may be measured based on the profits it lost for five of the Jouria Courses that it would have been able to publish but for Elite's alleged conduct," and further opines that "NetCE's lost profits through March 2018…is approximately $7.1 million." (Pampinella Report, DE 218, *under seal*, ¶¶ 36, 50). Mr. Pampinella conducted no independent analysis to determine whether there is any causal connection between Elite's publication of the accused courses and NetCE's claim of $7.1 million in lost profits. Instead, Mr. Pampinella relied exclusively on multiple assumptions provided to him by NetCE. However, NetCE's own testimony unequivocally shows that those assumptions are pure speculation. As a result, Mr. Pampinella's proposed testimony is premised on nothing more than speculation, and should be excluded at trial.

### ARGUMENT

Elite previously raised the issue of NetCE's speculative damages position in its Motion for Summary Judgment. (DE 186). In its Order denying Elite's motion, the Court stated "Elite's argument that NetCE's damages calculation is too speculative is best suited for a Motion in Limine." (DE 237, p. 7). Elite respectfully submits this motion in order to exclude Mr. Pampinella's proposed testimony at trial because his assumptions are not supported in the record and, indeed, NetCE has admitted that his assumptions are nothing but speculation.

In order to be admissible at trial, expert testimony must be "based on sufficient facts or data." Fed. R. Evid. 702(b). A motion *in limine* to exclude expert testimony should be granted where the proposed testimony is based on speculative assumptions. *Norfolk S. Corp. v. Chevron U.S.A., Inc.*, 279 F. Supp. 2d 1250, 1269 (M.D. Fla. 2003) ("'An expert's opinion, where based on assumed facts, **must find some support for those assumptions in the record**.'") (quoting

1

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000))) (emphasis added), *rev'd on other grounds*, 371 F.3d 1285 (11th Cir. 2004).

In order to provide his opinion as to lost profits in this case, Mr. Pampinella has assumed that, but for Elite's publication of the Accused Courses, NetCE would have developed, finalized, approved for publication, and published all five of the Jouria Articles. Mr. Pampinella has also assumed that each of those articles would have been published in the exact same catalogs for the exact same states, and would have realized the exact same sales, with the same profit margins, as two prior articles written by Dr. Jouria and published by NetCE (COPD and Multiple Sclerosis). As provided below, NetCE's Rule 30(b)(6) witness confirmed that these assumptions and Mr. Pampinella's conclusions as to lost profits are based on nothing more than unsupported speculation. Given that there is no support in the record for any of Mr. Pampinella's assumptions, he should be precluded from offering his lost profits opinion at trial.

First, there is no evidence to support the assumption that NetCE would have published any of the Jouria Articles. NetCE testified that there is "no guarantee" that any article written by a professional writer (such as Dr. Jouria) will be featured in a catalog. (DE 188-1, Deposition of NetCE ("NetCE Depo."), 138:9-12, 164:23-25). NetCE further testified that none of the Jouria Articles, with the exception of GERD, was ever scheduled to be published in any catalog. (NetCE Depo. 128:24-129:12, 133:16-134:2, 165:7-20). And while GERD was originally scheduled to be featured in one catalog, for nurses in Ohio in 2015, the use of GERD in that catalog was ultimately not possible due to length (a reason unrelated to any alleged conduct by Elite), and was replaced with another article by NetCE, as NetCE admitted. (NetCE Depo. 128:24-129:12, 132:1-20). Despite NetCE's admission, Mr. Pampinella assumed that each of the Jouria Articles would have been published, and further that each would have been published as many times and in as many catalogs and for as many states as COPD and Multiple Sclerosis. This is all speculation, is not supported by the record, and in fact is directly contradicted by NetCE's own testimony.

Next, there is no support in the record for Mr. Pampinella's assumption that each of the Jouria Articles would have resulted in additional profits for NetCE. NetCE has admitted that in rendering his lost profits opinion, Mr. Pampinella relied exclusively on information and assumptions provided to him by NetCE. (DE 245, p. 12). Yet, NetCE testified that it "does not know" whether its revenues were impacted in any way by Elite's alleged conduct; NetCE would have to speculate to determine what lost profits (*if any*) it might have realized if it had continued

2

its work to develop and publish the Jouria Articles and sold them to its customers in some undetermined number of catalogs; and it is possible that NetCE actually saw an <u>increase</u> in profits resulting from its decision <u>not</u> to publish the Jouria Articles (that possibility is as equally likely as the notion that NetCE lost profits in this case).  (NetCE Depo. 137:4-9, 143:23-144:1, 259:21-260:1).

As admitted by NetCE, there is no evidence supporting the position that NetCE lost any profits at all.  NetCE's witness designated on the topics of sales, revenue, and harm/damages allegedly caused by Elite testified that NetCE would have to "speculate" to determine whether it made more or less money by not publishing the Jouria Articles.  NetCE's relevant testimony on these issues is unequivocal:

> Q.  Were NetCE's revenues impacted, in any way, by the decision by NetCE not to continue developing the five courses at issue in this case?
> A.  **I don't know.**
> Q.  Can you point to a single sale that NetCE didn't make because it decided not to offer any of these five courses?
> A.  **I can't point to one that was lost or one that was gained. They weren't released –as we discussed, they weren't released; to do that would require speculation.**
>                    *     *     *
> Q.  Did NetCE offer any catalogs in 2013 through 2017 that were missing courses?
> A.· I'm not sure what you mean by "missing courses."
> Q.· That didn't include the number of courses that·that catalog called for?
> A.· We did not publish any partial catalogs.
> Q.· So every catalog from 2013 to the present published by NetCE had the full assortment of courses in it for NetCE's customers to review and take; is that correct?
> A.· We did not publish any catalogs with a course missing.
> Q.  Can you point to any revenue that NetCE lost because of the decision by NetCE not to publish the five courses at issue in this case?
> A.· In terms of lost revenue?
> Q.· Yes, ma'am.
> A.· We can only calculate that based on the example of already-released courses.
> Q.· But you just told me that all of your catalogs had their full allotment of courses in them; right?
> A.· All of the catalogs that we published between 2013 and 2017 included the number of courses that we found necessary.
> Q.· And so are you able to point to any revenue that NetCE lost because one of these five courses wasn't in one of those catalogs?
> A.· **That would require me to speculate about the value of those courses in relation to other courses, and I'm not able to do that.**
>                    *     *     *

3

45181160;1

> Q. The five courses at issue between NetCE and Elite, you can't predict with any certainty if those courses were included in any catalogs, whether their presence there might have actually caused a decrease in revenue for NetCE; correct?
> A. **I can't speculate as to whether it would have increased or decreased value**.

(NetCE Depo. 143:23-144:8, 151:23-153:4, 154:7-13) (emphasis added). NetCE's testimony underscores the inescapable conclusion that Mr. Pampinella's lost profits opinion is not based on any facts, but rather on speculation alone—speculation that NetCE admitted under oath.

Expert testimony based on speculative assumptions should be precluded from reaching the jury. For example, in *McMahan Securities Co. L.P. v. FB Foods, Inc.*, the court granted the plaintiff's motion *in limine* to exclude the testimony of the defendant's experts, where their proposed testimony was premised on several speculative assumptions, including a business plan that was a "best case scenario prediction" for the prospective launch of the product line at issue. 2007 U.S. Dist. LEXIS 14921, at *15 (M.D. Fla. Mar. 2, 2007). Excluding the proposed testimony, the court stated "while [defendant's] damages experts may be qualified to testify, the reliability of their methodology has not been sufficiently shown since their opinions as to future lost profits are impermissibly premised on the projected future earnings contained in [the business plan] and **on speculation with respect to the anticipated development, promotion, and sales** of the [product line at issue]." *Id.* at *16 (emphasis added). Similarly, the court in *Norfolk Southern Corp. v. Chevron U.S.A., Inc.*, granted a motion *in limine* to exclude proposed expert testimony based on speculative assumptions: "Sadat's theory…is based upon the assumptions that the pipelines would have been cleaned from the Gulf side and that any waste products from the pipelines would have been disposed of on the Gulf side. These assumptions, however, are based solely on speculation and possibility. As such, Sadat's opinion…is inadmissible." 279 F. Supp. 2d 1250, 1272 (M.D. Fla. 2003); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993) (in order to be admissible, expert testimony must be based on "more than subjective belief or unsupported speculation").

Reliance on speculative information as the basis for a lost profits calculation is precisely why Mr. Pampinella was excluded in *Flying J v. DOT*:

> Because Pampinella relied on Baker's assertion that a travel plaza at the Mojave site would perform like the travel plazas at the other sites, his testimony did not provide evidence that the Mojave site would perform in a manner substantially similar to the five sites used in his creation of a benchmark for the Mojave site. Pampinella's projections regarding lost profits will have probative value only if his

4

assumption that the sites were comparable is supported by evidence in the record. Consequently, we next consider the basis for Pampinella's assumption—the testimony of Baker regarding the comparability of the sites.

2012 Cal. App. Unpub. LEXIS 392, at *29 (Jan. 19, 2012). Finding that the testimony of Baker—another expert retained by the party—did not provide "proof to a reasonable certainty of either the existence or, more particularly, the extent of potential lost profits," *id.* at *33, the court found that Pampinella's testimony must be excluded. The same holds true here. When the Court "consider[s] the basis for Pampinella's assumptions" (*id.* at *29)—namely, NetCE's own information—it will find nothing more than speculation, as repeatedly shown by NetCE's deposition testimony.

This is not a situation where vigorous cross-examination and presentation of contrary evidence will cure the problems inherent with the proposed testimony from Mr. Pampinella. Rather, allowing him to testify in the face of NetCE's own admissions that his assumptions are pure speculation would be reversible error. <u>Courts have rejected this precise argument</u> that reliance on speculative assumptions merely goes to the weight of testimony, not its admissibility:

> [Plaintiff] responds that price erosion is a well-accepted economic principle and that weaknesses in [plaintiff's expert's] opinion go to weight, not admissibility. But the question at hand is the reliability of [the expert's] application of price erosion principles, not the reliability of price erosion as an economic principle. Perceived flaws in an expert's opinion go to weight only if they fall within the accepted norms of the discipline **and have a non-speculative basis in fact**.

*Multimatic, Inc. v. Faurecia Interior Sys. USA*, 358 Fed. Appx. 643, 655 (6th Cir. 2009) (emphasis added) (affirming district court's exclusion of proposed expert testimony pursuant to Rule 702, based upon finding that opinion rested on speculation) (citing *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). Given that Mr. Pampinella's lost profits opinion is premised on multiple assumptions that have no factual support in the record, and are instead based only on admitted speculation, his proposed testimony should be excluded from trial.

## CONCLUSION

For the foregoing reasons, Elite respectfully requests that the Court issue an order precluding James Pampinella from testifying at trial.

**Request for Hearing**

Pursuant to Local Rule 7.1(b)(2), Elite requests a hearing on this motion. Elite respectfully submits that this motion presents an important evidentiary challenge on a material issue that directly affects the respective positions of the parties in the scheduled trial of this case. Elite believes that the Court's decision making process will be aided by hearing from Elite prior to any ruling. Elite estimates that 15 minutes will be needed for oral argument on this motion.

**Certificate of Good Faith Conference**

Pursuant to Local Rule 7.1(a)(3)(A), on May 9, 2018, counsel for Elite conferred with counsel for NetCE and Dr. Jouria about this Motion via email. Counsel made a good faith effort to resolve the issues raised in the motion and were unable to do so.

Dated: May 11, 2018

Respectfully submitted,

/s/ Peter A. Chiabotti
Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
AKERMAN LLP
peter.chiabotti@akerman.com
kristen.mckinney@akerman.com
777 South Flagler Driver
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
Minnie Kim (*pro hac vice*)
minniekim@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
*Attorneys for Third Party Defendant Elite Professional Education, LLC*

**Certificate of Service**

      I hereby certify that on May 11, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                    /s/ Peter A. Chiabotti
                    Peter A. Chiabotti

**Service List**

Richard S. Ross
915 SE 2nd Court
Fort Lauderdale, FL 33301
Telephone: (954) 252-9110
Fax: (954) 252-9192
Email: prodp@ix.netcom.com
*Attorney for Defendant and Counter-Plaintiff Dr. Jassin Jouria*

Philip E. Rothschild
Holland & Knight, LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-1000
Fax: (954) 463-2030
Email: phil.rothschild@hklaw.com
*Attorneys for Plaintiff and Counter-Defendant CE Resource, Inc. d/b/a CME Resource and NetCE*

John P. Kern
Jessica E. Lanier
Daniel P. Kappes
David I. Holtzman
Holland & Knight, LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 743-6900
Fax: (415) 743-6910
Email: john.kern@hklaw.com
Email: jessica.lanier@hklaw.com
Email: daniel.kappes@hklaw.com
Email: david.holtzman@hklaw.com
*Attorneys for Plaintiff and Counter-Defendant CE Resource, Inc. d/b/a CME Resource and NetCE*

Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Fax: (561) 659-6313
Email: peter.chiabotti@akerman.com
Email: kristen.mckinney@akerman.com
*Attorneys for Defendant Elite Professional Education, LLC*

J. Mark Wilson (*pro hac vice*)
Kathryn G. Cole (*pro hac vice*)
Minnie Kim (*pro hac vice*)
Moore & Van Allen PLLCS
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Fax: (704) 331-1159
Email: markwilson@mvalaw.com
Email: katecole@mvalaw.com
Email: minniekim@mvalaw.com
*Attorneys for Defendant Elite Professional Education, LLC*

45181160;1