# Exhibit A

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                           ---oOo---

 3   DR. JASSIN JOURIA                )
                                      )
 4        Plaintiff,                  )
     vs.                              )
 5                                    ) CASE NO:
     CE RESOURCE, INC., d/b/a         ) 0:15-61165-WPD
 6   CME RESOURCE and NetCE,          )
                                      )
 7        Defendant.                  )
     _____)
 8   CE RESOURCE, INC., d/b/a         )
     CME RESOURCE and NetCE,          )
 9                                    )
          Defendant/                  )
10        Counter-Plaintiff,          )
     vs.                              )
11                                    )
     DR. JASSIN JOURIA,               )
12                                    )
          Plaintiff/                  )
13        Counter-Defendant.          )
                                      )
14   CE RESOURCE, INC., d/b/a         )
     CME RESOURCE and NetCE,          )
15                                    )
          Defendant/Third-Party       )
16        Plaintiff,                  )
     vs.                              )
17                                    )
     Elite Continuing Education,      )
18   Inc. and Alpine Management       )
     Services III, LLC,               )
19                                    )
          Third-Party                 )
20        Defendants.                 )

21              DEPOSITION OF SARAH CAMPBELL
                        30(B)(6)
22
                   November 14, 2017
23

24

25   DEPOSITION REPORTER:  KAYLA KNOWLES, CSR
```

|  | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL. |  |
|---|---|---|
| 30(b)(6) | Sarah Campbell on 11/14/2017 | Page 2 |

```
 1                    I N D E X

 2                                                       PAGE

 3   EXAMINATION BY MR. WILSON                              6

 4   EXAMINATION BY MR. ROSS                              231

 5   FURTHER EXAMINATION BY MR. WILSON                    268

 6

 7
     Appearance Page                                        4
 8
     Reporter Certificate                                 270
 9
     Declaration Under Penalty of Perjury                 272
10

11

12                      E X H I B I T S

13   EXHIBIT              DESCRIPTION                    PAGE

14   Exhibit 74   Notice of Deposition                      5

15   Exhibit 75   Responses to Interrogatories              5

16   Exhibit 76   Collection of E-mails from NetCE,        19
                  Bates Numbers
17                NETCEB0003109-NETCEB0035072

18   Exhibit 77   E-mails From Dr. Jouria to NetCE,        45
                  Bates Numbers
19                NETCEB0002761-NETCEB0003068

20   Exhibit 78   E-mails from NetCE to Dr. Jouria,        45
                  Bates Numbers
21                NETCEB0004778-NETCEB0005265

22   Exhibit 79   TBI Course, Bates Numbers                51
                  NETCEB0007755-NETCEB0020594
23
     Exhibit 80   Chemotherapy Course, Bates              51
24                Numbers
                  NETCEB0006283-NETCEB0020686
25
     Exhibit 81   GERD Course, Bates Numbers              51
```

| | | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL. | |
|---|---|---|---|
| 30(b)(6) | | Sarah Campbell on 11/14/2017 | Page 3 |

```
 1                      NETCEB0006973-NETCEB0024807

 2       Exhibit 82    Depression vs. Dementia Course,      52
                       Bates Numbers
 3                     NETCEB0002993-NETCEB0022559

 4       Exhibit 83    Nonantibiotic Antimicrobial          52
                       Pharmacology Course, Bates
 5                     Numbers
                       NETCEB0007394-NETCEB0022750
 6
         Exhibit 84    Division Planner, Course             79
 7                     Approval, Bates Numbers
                       NETCEB0029016-NETCEB0029020
 8
         Exhibit 85    Courses Scheduled for Update        149
 9                     2016: Past Revenue, Bates Numbers
                       NAVIGANT00002-NAVIGANT00454
10
         Exhibit 86    E-mail from Erin Meinyer to Sarah   187
11                     Campbell, Bates Number
                       NETCEB0003137
12
         Exhibit 87    E-mail from Sarah Campbell to       188
13                     John Jurica, Bates Number
                       NETCEB0005017
14
         Exhibit 88    Declaration of Tracey Foster        221
15

16

17                             ---oOo---

18

19

20

21

22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2

 3

 4    FOR THE PLAINTIFF DR. JASSIN:

 5                        ATRIUM CENTRE
                          Attorneys at Law
 6                        4801 S. University Drive, Suite 237
                          Fort Lauderdale, FL 33328
 7
                          E-MAIL:  Prodp@ix.netcom.com
 8
                          By:  RICHARD S. ROSS, ESQ.
 9

10    FOR CE RESOURCE, INC., d/b/a CME RESOURCE and NetCE:

11                        HOLLAND & KNIGHT
                          Attorneys at Law
12                        50 California Street, Suite 2800
                          San Francisco, CA 94111
13
                          PHONE:   415.743.6981
14                        E-MAIL:  John.kern@hklaw.com

15                        By:  JOHN P. KERN, ESQ.
                          By:  JESSICA E. LANIER, ESQ.
16

17    FOR ELITE PROFESSIONAL EDUCATION, LLC:

18                        MOORE & VAN ALLEN
                          Attorneys at Law
19                        100 North Tryon Street, Suite 4700
                          Charlotte, NC 28202-4003
20
                          PHONE:   704.331.1177
21                        E-MAIL:  Markwilson@mvalaw.com

22                        By:  J. MARK WILSON, ESQ.
                          By:  KATHRYN G. COLE, ESQ.
23

24    Also Present:  Crystal Cusic, Videographer

25
```

```
 1    Sacramento, California; Tuesday, November 14, 2017
 2                         9:15 a.m.
 3
 4           (Exhibit No. 74 marked for identification.)
 5           (Exhibit No. 75 marked for identification.)
 6           THE VIDEOGRAPHER:  This is the beginning of
 7    media number 1 in the deposition of Sarah Campbell in
 8    the matter of Jassin Jouria vs. CE Resource, Inc.
 9    Today's date is November 14, 2017, and time on the
10    monitor is 9:15 a.m.  My name is Crystal Cusic, and I'm
11    the videographer.  The court reporter is Kayla Knowles.
12    We are here with Huseby Global Litigation Services.
13           Counsel, please introduce yourselves, after
14    which the court reporter will swear in the witness.
15           MR. KERN:  John Kern and Jessi Lanier for
16    the defendant and counter-claimant NetCE and here
17    representing the 30(b)(6) witness, Sarah Campbell.
18           MR. WILSON:  Mark Wilson from Moore & Van
19    Allen here representing Elite Professional Education.
20           MS. COLE:  Katy Cole from Moore & VanAllen
21    also representing Elite.
22           MR. ROSS:  And Richard Ross appearing
23    telephonically by stipulation of the parties on behalf
24    of Plaintiff, Dr. Jassin Jouria.
25
```

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 7 of 17

| | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL. | |
|---|---|---|
| 30(b)(6) | Sarah Campbell on 11/14/2017 | Page 6 |

1  SARAH CAMPBELL,
2  having been sworn by the Certified Shorthand Reporter,
3  Kayla Knowles, to tell the truth, the whole truth, and
4  nothing but the truth, testified as follows:
5
6                          EXAMINATION
7  BY MR. WILSON:
8      Q.  Ms. Campbell, my name is Mark Wilson.  I'm an
9  attorney from Charlotte representing Elite Professional
10 Education.
11         You're aware of Elite Professional Education.
12 Yes?
13     A.  I am.
14     Q.  If I use the word "Elite," you'll know who I'm
15 talking about; right?
16     A.  Yes.
17     Q.  And I understand that you are here as the
18 corporate witness on behalf of CE Resource, Inc., doing
19 business as CME Resource and NetCE; correct?
20     A.  That's correct.
21     Q.  And if I refer to that entity as "NetCE," you'll
22 know who I'm talking about.  Yes?
23     A.  Yes.
24     Q.  In front of you, I've premarked before we arrived
25 this morning what we now call Exhibit 74.  It is the

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 8 of 17

| | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL. | |
|---|---|---|
| 30(b)(6) | Sarah Campbell on 11/14/2017 | Page 140 |

```
 1   catalog or it be just online, can influence how a course
 2   performs; right?  I think we covered that one already.
 3       A.  Sure.
 4       Q.  Where a course is made available, meaning is it
 5   in a catalog for nurses in California, or is it in a
 6   catalog for nurses in Rhode Island, which I'm guessing
 7   has much less nurses, can influence how a course
 8   performs; right.
 9       A.  Potentially.
10       Q.  And whether or not the course or the offering
11   entity has approvals is an accepted source for
12   continuing education credits can influence how it
13   performs; right?
14       A.  I am not sure I understand.
15       Q.  Who's publishing it.
16       A.  Sure.  Maybe.
17       Q.  Some -- some companies in your business just do
18   better; isn't that correct?
19       A.  For whatever reason, yes.
20       Q.  Isn't it true that you don't know how any course
21   will actually perform sales-wise until you offer it?
22       A.  There is no way of knowing for sure what the
23   revenue for a course is before it is released, but we do
24   have an idea of the amount of interest we have in
25   advertising and featuring courses and using courses to
```

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 9 of 17

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017
30(b)(6)
Page 141

1  meet specific market needs.  So you're correct that we
2  don't have a number, and I'll leave it at that.
3     Q.  In the Ohio 15 -- OH15 catalog where GERD was
4  scheduled to appear, absent its word count deficiencies,
5  when you replaced that course with the ischemic stroke
6  course, did the OH15 catalog perform better than, worse
7  than, or the same as expected?
8     A.  I don't know specifically.
9     Q.  Do you know generally?  If you don't know -- I am
10 not trying to be difficult, but when you say "I don't
11 know specifically," I have to follow up.  And if you
12 don't know, you don't know, and I'll move on.  But if
13 you do know something, I have to -- I have to know that.
14    A.  I don't know.
15    Q.  During the time period when these courses
16 potentially could have been published by NetCE -- and I
17 know that the courses weren't -- I know they weren't
18 published.  We've talked about that, and I know that we
19 just said there was no decision made by NetCE where to
20 put them.
21        But during the time period when you were
22 considering having these courses to offer, did NetCE
23 still have a full slate of course offerings to provide
24 to its customers around the country?
25    A.  During the period that we were developing these

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 10 of 17

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
30(b)(6)                Sarah Campbell on 11/14/2017                Page 142

1  courses or after we decided not to go forward?  Can you
2  clarify?
3      Q.  You know I am going to ask for both.
4      A.  Okay.  We specifically chose to move forward with
5  these topics -- these subjects because we had identified
6  a need or a gap in our offerings to meet a pharmacology
7  requirement for advanced practice nurses and certified
8  nurses.  And this would have substantially closed that
9  gap.
10         We still, to this day, do not offer the amount of
11 pharmacology credit that would have been possible by
12 developing these five courses.
13         And just to clarify, we don't have the amount of
14 pharmacology credit available in courses that have been
15 released since we stopped developing these courses that
16 would have replaced this pharmacology credit.
17     Q.  Has NetCE performed any analysis to find out --
18 well, let me ask it this way.
19         I think we talked earlier that there were two
20 courses out of these five that were
21 pharmacology-oriented; is that correct?  That's the
22 nonantibiotic antimicrobial course and the cancer and
23 chemotherapy course; is that right?
24     A.  Those -- those two courses are purely
25 pharmacology courses.  But all five courses have content

1    that would allow us to issue partial pharmacology credit
2    for completion of the full course.
3        Q.   When did you make that determination, that the
4    content allows you to issue partial credit?
5        A.   Based on my knowledge of the standards for
6    issuing pharmacotherapeutic pharmacology credit and the
7    subject matter being covered, my -- our intent through
8    the development process was to ensure that it would meet
9    those standards.  So upon contracting these courses, I
10   knew that the final drafts would contain pharmacology
11   credit.
12       Q.   Does that have to be approved by someone before
13   you can issue that pharmacology credit?
14       A.   No.
15       Q.   How do you know what the final drafts would have
16   included when you stopped work before you even got close
17   to a final draft?
18       A.   Well, at the contract stage, I know what our
19   editorial intent would be; so I can just say that,
20   through the development process, we would have made sure
21   that the content met those requirements.  That was our
22   intent for all five of the courses.
23       Q.   Were NetCE's revenues impacted, in any way, by
24   the decision by NetCE not to continue developing the
25   five courses at issue in this case?

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 12 of 17

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
30(b)(6)          Sarah Campbell on 11/14/2017          Page 192

1  these five courses?
2      A.  I have not considered that.
3      Q.  I didn't ask if you had.
4          Has NetCE?
5      A.  NetCE has not considered that.
6      Q.  Is it possible that NetCE will consider that?
7      A.  No.
8      Q.  Why not?
9      A.  For the reasons that I detailed before about the
10 diminished value of these courses in light of their
11 already being offered, customer confusion, which is an
12 ongoing issue, and a disinclination to put additional
13 work into these courses when that value is -- inherently
14 already been stripped from them.
15     Q.  And what do you base your testimony that the
16 value has been stripped from these courses?
17     A.  There is a value in being the first to market.
18 There is a value in being the only provider of specific
19 content, and that cannot be regained at this point.
20     Q.  What do you base your belief that there's value
21 in being the first to market with certain content?
22     A.  We have feedback from customers that they have
23 confusion when a course has a similar or same title.
24 But, also, we have feedback from customers that they
25 wanted a specific topic, and they completed it with

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 13 of 17

| | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL. | |
|---|---|---|
| 30(b)(6) | Sarah Campbell on 11/14/2017 | Page 193 |

1  whatever provider had that topic at the time.
2      Q.  So your testimony about diminished value relates
3  to the subject matter of these particular courses; is
4  that correct?  Titles, the topics, the subject matter?
5      A.  These subjects specifically, that's true.
6      Q.  In your -- NetCE's interrogatory responses, NetCE
7  said that it -- that there was a market need for
8  continuing education courses on the subject matters of
9  the seven courses.
10         Now, it's five courses now, but at the time, it
11 was seven courses.  You're aware of that statement that
12 there was market need?
13     A.  Yes.
14     Q.  It's in interrogatory number 5.  That's the
15 complaint.  Wrong document.
16         MR. KERN:  Does she need to see it?
17         MR. WILSON:  No.
18 BY MR. WILSON:
19     Q.  What market need is NetCE referring to?
20     A.  Specifically, the areas of pharmacology and
21 advanced sciences.
22     Q.  What basis do you have to say there was a market
23 need at the time on the subject matters of these
24 courses?
25     A.  The ANCC had a requirement that certified nurses

1  complete a minimum number of hours in pharmacology, and
2  that that con- -- that continuing education was required
3  to be completed over the span of their certification in
4  order to maintain their standing as an advanced practice
5  or certified nurse.
6      Q.  Not all of the courses at issue here are in the
7  field of pharmacology; correct?
8      A.  As we discussed, two of the courses pertain
9  solely to pharmacology.  That would be the nonantibiotic
10 antimicrobial pharmacology course and the cancer and
11 chemotherapy course.
12         The other three courses in question contained
13 content or would contain content that fulfilled at least
14 partial pharmacology credit.
15     Q.  Did NetCE determine that there was a market need
16 for the five courses at issue based off of their subject
17 matter more specific than generally pharmacology?  I'm
18 just reading what you said in the interrogatory
19 response, and, obviously, I'll have some more questions
20 related to it.
21     A.  Then maybe I should read the interrogatory.
22     Q.  It's on page 7 of Exhibit 75.
23     A.  Oh, I got it.
24     Q.  Response to interrogatory number 5.  It's one
25 sentence down at the bottom.  It says, "At the time

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 15 of 17

30(b)(6)  DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017                    Page 195

```
 1   NetCE planners approved concepts for the seven courses,
 2   there was a market need for continuing education courses
 3   on the subject matters of the seven courses."
 4       A.   Okay.  Yes.  So when we say "subject matters,"
 5   that means that the subjects would address those needs
 6   in the market.  So not that they specifically needed to
 7   be on cancer and chemotherapy, for example, but that it
 8   would fulfill the need for pharmacology credit
 9   specifically.
10       Q.   There were lots of other continuing education
11   providers offering pharmacology courses at the time;
12   correct?
13       A.   Pharmacology courses, sure.  Yes.
14       Q.   So there wasn't a market need for pharmacology
15   courses.  There was a need at NetCE to offer
16   pharmacology courses; isn't that correct?
17       A.   No.  Certified nurses require a large number of
18   pharmacology credit, and, actually, a certain percentage
19   of those credits have to be completed through an ANCC
20   accredited provider; so whether or not other providers
21   were offering pharmacology credits, it could potentially
22   not meet the needs of those customers specifically.
23       Q.   Do you have any evidence and did you produce it
24   in this case to support your testimony about a market
25   need?
```

Case 0:15-cv-61165-WPD   Document 294-1   Entered on FLSD Docket 05/11/2018   Page 16 of 17

| 30(b)(6) | DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.<br>Sarah Campbell on 11/14/2017 | Page 196 |

1  A.  The evidence that we have is knowledge of the
2  market in general but also feedback from customers
3  requesting additional pharmacology credits and
4  expressing difficulty obtaining all of the credits they
5  needed.
6  Q.  In the complaint, which is Exhibit 42, paragraph
7  69 -- it's on page 25 -- NetCE states, "NetCE's
8  competitive advantage and profitability for its courses
9  depends upon a first-to-market posture.  Elite's,
10  Alpine's, and Dr. Jouria's actions deprived NetCE of
11  this hard-fought advantage.  For NetCE to publish the
12  seven articles after Elite had done so would have
13  involved additional expenditures and investments that
14  the prospect for diminishing returns is no longer
15  justified."
16      Do you see that?
17  A.  I do.
18  Q.  And is the basis for that the same as what you
19  just testified about as to why NetCE can no longer use,
20  according to you, the courses Dr. Jouria provided
21  through you?
22  A.  My testimony, yes, would be the same in response
23  to that.
24  Q.  And that's related to the titles, the content,
25  the subject matter of these courses, if NetCE were to

Case 0:15-cv-61165-WPD Document 294-1 Entered on FLSD Docket 05/11/2018 Page 17 of 17

DR. JASSIN JOURIA vs. CE RESOURCE, INC., ET AL.
Sarah Campbell on 11/14/2017

30(b)(6)

Page 197

1  publish them now, they would not be the first to market;
2  is that correct?
3     A.  That's correct.
4     Q.  And then in Exhibit -- excuse me -- paragraph 69,
5  it continues and says, "For NetCE to publish the seven
6  articles after Elite had done so would have involved
7  additional expenditures and investments that the
8  prospect for diminishing returns is no longer
9  justified."
10         And the basis for that is the same; is that
11  correct?
12     A.  That is correct.
13     Q.  Did NetCE do any analysis of the market prior to
14  contracting with Dr. Jouria to see if others had
15  published courses with the same titles or subject matter
16  as the five courses at issue here?
17     A.  The five courses at issue here represent general
18  medical topics that I would expect that other providers
19  have similar offerings on.  But the credit types and the
20  exact content I would expect to be different.
21     Q.  In your work on at least the GERD and cancer and
22  chemotherapy articles, what Dr. Jouria submitted to you
23  was never going to be published in its submitted form;
24  right?
25     A.  The GERD course and the cancer and chemotherapy