UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:15-61165-WPD**

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

    Plaintiff,

v.

DR. JASSIN JOURIA, and ELITE PROFESSIONAL EDUCATION, LLC.,

    Defendants.
_____/

DR. JASSIN JOURIA,

    Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

    Counter-Defendant,
_____/

**DEFENDANT ELITE PROFESSIONAL EDUCATION, LLC'S MOTION *IN LIMINE*
NO. 4 TO EXCLUDE COURSE COMPARISON DOCUMENTS
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

*ORAL ARGUMENT REQUESTED*

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), 37(c), and 37(d), and Fed. R. Evid. 403, 802, and 901, Defendant Elite Professional Education, LLC ("Elite") hereby moves *in limine* to preclude Plaintiff CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") from using at trial documents purportedly showing similarities or textual overlap in the courses at issue in this case. This includes documents listed on NetCE's pretrial exhibit list as Exhibit Nos. NC 202 — NC 209 (the "Plagiarism Checker X Reports") and proposed Trial Demonstrative Nos. 2, 5, 6, 7, and 8 with highlighted sections of courses that purportedly show overlap (the "Comparison Demonstratives"). NetCE intends to use these materials to support its claim that the accused courses published by Elite are substantially similar to the articles Dr. Jouria sold to NetCE, in which NetCE claims copyright rights. These documents were never produced in discovery. Instead, they were produced to Elite on May 2 and 8, 2018, just over three weeks before trial. The discovery rules were designed to prevent such pretrial ambush, and the prejudice to Elite from not having the opportunity to conduct discovery regarding these comparison analyses is substantial. These documents must be excluded at trial.

Leaving aside their untimely disclosure, any probative value in these documents is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury, requiring exclusion pursuant to Fed. R. Evid. 403. These documents also contain inadmissible hearsay, which must be excluded pursuant to Federal Rule of Evidence 803. Finally, the authentication of the Plagiarism Checker X Reports as required by Fed. R. Evid. 901 would require technical knowledge not possessed by any of NetCE's disclosed witnesses. For all of these reasons, Elite requests that the Court exclude the Plagiarism Checker X Reports and the Comparison Demonstratives at trial.

## MEMORANDUM OF LAW

### INTRODUCTION

In October and November 2017, near the close of discovery in this case, NetCE served verified interrogatory responses and testified at deposition that it conducted comparisons of the courses at issue upon first discovering Elite's publication of the accused courses (in 2015), and had recently conducted an additional technical analysis to determine the similarities between the courses at issue in this case. Despite this admission, NetCE never produced any documents related to its comparison of the courses or alleged similarities supporting its copyright claim. Earlier in discovery, Elite had served document requests seeking production of any results or reports of

1

comparisons NetCE conducted between the courses at issue. NetCE responded to those requests stating that it would produce responsive documents, but never did. Indeed, NetCE waited until after the deadline for pretrial disclosures, just a few weeks before trial, to disclose both the Plagiarism Checker X reports (comprising NetCE's trial Exhibit Nos. NC 202 — NC 209) and the Comparison Demonstratives (comprising NetCE's proposed Trial Demonstrative Nos. 2, 5, 6, 7, and 8).[1]

Given NetCE's failure to produce these materials in discovery (or to even disclose their existence at any time prior to identifying them in NetCE's late pretrial disclosures), Elite has been precluded from seeking discovery regarding how they were prepared and exactly what the highlighting purports to show. Indeed, NetCE has provided no information regarding which versions of which courses were submitted to the Plagiarism Checker X program to create these Reports, the program settings used to detect alleged "plagiarism," and whether these Reports purport to show plagiarism by Dr. Jouria of public domain material (as alleged in NetCE's pleading) or plagiarism between the articles Dr. Jouria sold to NetCE and those he sold to Elite. The same is true for the Comparison Demonstratives—Elite has been precluded from seeking discovery regarding how they were prepared and exactly what the highlighting purports to show. Elite's inability to seek discovery regarding this information underscores the impropriety of such surprise disclosures on the eve of trial.

The absence of information regarding how the Plagiarism Checker X Reports were created and testimony about how the Plagiarism Checker X program functions to provide a plagiarism analysis also shows that those documents cannot be authenticated as required by Fed. R. Evid. 901, in the absence of testimony from someone with technical or specialized knowledge of the program. As NetCE has not identified an expert witness on this issue as would be required by Fed. R. Evid. 702 (or even any lay witness who could competently testify pursuant to Fed. R. Evid. 701), NetCE cannot authenticate the documents at trial.

---

[1] Pursuant to Fed. R. Civ. P. 26(a)(3)(B) and Local Rule 16.1(d), the deadline for filing and service of pretrial exhibit and witness lists was April 30, 2018. NetCE did not file or serve its exhibit list until May 1, 2018. (DE 279-2). NetCE then filed and served a "Corrected Exhibit List" on May 2, 2018. (DE 281). On that same day—two days after the deadline for pretrial disclosures—NetCE, for the first time, served the Plagiarism Checker X reports. Nearly a week later, May 8, 2018, NetCE sent to counsel copies of its proposed trial demonstratives, including the Comparison Demonstratives.

2

These documents are also inadmissible pursuant to Fed. R. Evid. 403 and 802. The Plagiarism Checker X Reports contain statements of "Similarity Found" percentages (ranging from 41% – 73%), the number of "words plagiarized," and "High Plagiarism Detected – Your Document Needs Critical Improvement," and purport to show specific plagiarized sections in red highlighting. Likewise, the Comparison Demonstratives contain statements of "Examples of Substantially Similar Text." This is hearsay. Further, this is unfairly prejudicial and will confuse the issues and mislead the jury. These comparison documents make no distinction between copying of facts or third-party content contained in Jouria's works—in which NetCE does not own copyright rights—and original expression in which NetCE may own copyright rights. Yet due to the broad conclusions of "plagiarism" and "substantial similarity" contained in these documents, and their broad swaths of red and yellow highlighting supposedly showing overlapping content, the jury will be confused and misled into believing that all such "similarity" is relevant to substantial similarity for purposes of infringement. The Court of Appeals for the Eleventh Circuit has concluded that it is difficult for a jury, even properly instructed, to separate protectable expression from non-protectable expression for purposes of a substantial similarity analysis, as is required for works such as those at issue here. As such, presenting to the jury these materials with broad swaths of highlighting showing alleged similarities, without any distinction between protectable and non-protectable content, is improper and should be precluded at trial. Likewise because Elite was unable to seek discovery regarding the highlighting shown in the documents (including to determine whether the highlighted areas cover protectable or non-protectable content) and prepare an appropriate defense to these materials, they must be excluded at trial.

**ARGUMENT**

**I.     NetCE Failed to Timely Produce Any Course Comparison Documents.**

Rule 37(c)(1) mandates that a party be precluded from using at trial any information not timely disclosed in discovery. NetCE should have disclosed and produced the Plagiarism Checker X Reports and the documents comprising the Comparison Demonstratives as part of its initial disclosures or a timely supplement thereto, or in response to Elite's requests for production. As part of a party's initial disclosures, Rule 26(a)(1)(A)(ii) requires that, without awaiting a discovery request, a party provide to the other parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Nowhere

in its initial disclosures, served on Elite in October 2017, or any supplement thereto did NetCE ever identify any comparison reports for the courses at issue in this case.

Additionally, in its requests for production served in discovery pursuant to Rule 34, Elite requested that NetCE produce "all Documents supporting Your allegation that 'Dr. Jouria's works were littered with plagiarized content,'" and "all Documents referring or relating to similarities and/or differences between the NetCE Courses and the Accused Courses, **including any results or reports of comparisons You made between the NetCE Courses and the Accused Courses**." NetCE stated that it would produce responsive documents in response to each of these requests. (*See* NetCE's Reponses to Elite's Requests for Production, attached hereto as Exhibit A, Request and Response Nos. 21, 23) (emphasis added).  At no time in discovery or any time prior to its belated pretrial disclosures did NetCE ever disclose the existence of (much less produce) any comparison reports for the courses at issue in this case.

Elite went even further and requested this information in an interrogatory served on NetCE. Elite requested that NetCE "identify all similarities and/or differences that [NetCE] believe[s] exist between the NetCE courses and the Accused Courses, on a course-by-course basis." (DE 188-9, Elite's Interrogatory No. 6).  In its verified response served on October 10, 2017 , NetCE stated, *inter alia*:

> The similarities between the two sets of courses, visible through a side-by-side comparison, were and are apparent, remarkable, and extensive.  Each of the infringing courses exhibit literal and nonliteral similarity, copying of whole swaths of text from NetCE's copyrighted courses, copying the organization of the courses, and/or paraphrasing large passages, leaving the essential expression unchanged. Sarah Campbell conducted an initial analysis in 2015, when NetCE discovered the infringement.  **A second, technical manual analysis** of the versions introduced at Dr. Jouria's deposition and served on NetCE thereafter **is underway. NetCE will supplement its response(s) to these interrogatories once it completes such analysis.**

(DE 188-9, NetCE's Verified Response to Interrogatory No. 6) (emphasis added).  NetCE never supplemented this interrogatory, despite its promise to do so.

Even more, during its Rule 30(b)(6) deposition taken in November 2017, NetCE testified that it had already run comparison reports as early as September 2017:

> Q.· Have you ever performed an analysis that went all the way through from beginning to end any of the courses?
> A.· When you say "analysis," do you mean the visual side-by-side comparison?
> Q.· Any analysis.

> A.· We -- after we had access to these five courses -- so we compared the PDFs of these five courses from -- excuse me -- the Word document of these five courses from Jouria to PDFs of the Elite courses -- again, there are more than five -- through Plagiarism Checker X or 10 to do some additional analysis to determine the percent of similarity between the courses in question.
> Q.· And when was that performed with Plagiarism Checker X?
> A.· **That was conducted within the last two months.**

(Excerpts of Rule 30(b)(6) Deposition of NetCE, attached hereto as Exhibit B (hereinafter "NetCE Depo.") 101:2-18) (emphasis added).[2] Yet, NetCE never produced these documents.

It is unfathomable that NetCE would only now disclose to Elite the Plagiarism Checker X Reports and the documents comprising the Comparison Demonstratives. The mere fact that NetCE or its counsel apparently did not print the Plagiarism Checker X Reports until April 30 and May 1, 2018 (according to information shown on the documents themselves) does not justify these extremely belated disclosures. Indeed, to hold otherwise would create a loophole for parties to ambush their opponents at trial. Having sued Elite and Dr. Jouria for copyright infringement, NetCE has the burden to show, *inter alia*, substantial similarity between the works at issue. It would be disingenuous for NetCE to argue that any of these comparison reports were not previously available—NetCE has had the underlying course documents for years (NetCE Depo. 86:25-87:7), and apparently conducted its comparison analysis before the close of discovery, as early as September 2017 according to NetCE's sworn deposition testimony (NetCE Depo. 101:2-18). NetCE promised to, but never did, supplement its interrogatory response with this information and even testified about these very reports, but did not provide them to Elite until now. There is no justification for NetCE's failure to provide these documents to Elite long before trial.[3]

---

[2] According to NetCE's testimony, NetCE conducted its comparison analysis between September 14 and November 14, 2017. NetCE served its initial disclosures on October 4, 2017, yet included no information about this analysis or any related reports. NetCE supplemented its initial disclosures only once, on April 27, 2018. That supplement likewise makes no mention of these Reports or any other course comparisons.

[3] In a meet-and-confer teleconference held among counsel for the parties on May 9, 2018, counsel for NetCE argued that NetCE's course comparison analysis in or around September 2017 was done in conjunction with counsel and that the results of that analysis were therefore protected by the work product doctrine. This sword-and-shield approach to discovery and pretrial disclosures is inappropriate. NetCE cannot use the work product doctrine to withhold reports of a comparison analysis that it intends to use at trial, and then produce later-printed versions of that same analysis on the eve of trial.

5

NetCE has completely circumvented Elite's ability to seek discovery regarding how these comparisons were created (necessitating discovery from both NetCE and the non-party Plagiarism Checker X entity), how the Plagiarism Checker X program detects similarities, the settings used to run these particular comparisons, the alleged similarities shown in the documents, and how the Plagiarism Checker X system could provide a conclusion of "High Plagiarism Detected," as shown on the front of the Plagiarism Checker X Reports.  Elite has also been precluded from retaining an expert witness to respond to these purported "plagiarism" and "substantial similarity" analyses for purposes of defending against NetCE's copyright claim.

Rule 37(c)(1) states that "[i]f a party fails to provide information…as required by Rule 26(a) or 26(e), the party is not allowed to use that information…to supply evidence…at a trial, unless the failure was substantially justified or is harmless."  Likewise, Rule 37(d) states that the court may order sanctions "if a party, after being properly served with…a request for inspection under Rule 34, fails to serve its answers, objections, or written response."  Failure to produce responsive documents called for in requests for production warrants sanctions under Rule 37(d), including the sanction of striking of a claim.  *OFS Fitel, LLC v. Epstein*, 549 F.3d 1344, 1360 (11th Cir. 2008) (affirming district court's order striking claim for attorney's fees as a sanction for party's refusal to produce copies of its attorney's fee agreement and bills).  Rule 37(d)(3) provides that sanctions may include any of the following orders listed in 37(b)(2)(A)(i)-(vi):

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part; [or]
> (vi) rendering a default judgment against the disobedient party.

The resulting harm to Elite is substantial.  Elite has been foreclosed from seeking discovery regarding whether the highlighted areas cover <u>protectable or non-protectable content</u>, an issue that implicates NetCE's copyright claim (discussed in more detail in Section II., *infra*).  Elite was likewise foreclosed from potentially retaining an expert witness to review and respond to these highlighted documents and the conclusions NetCE wishes for the jury to draw from them.  Given NetCE's failure to disclose these materials as part of its initial disclosures or a timely supplement thereto, failure to produce the documents in response to Elite's request for production of any

6

"results or reports of comparisons" of the courses at issue, and failure to supplement its interrogatories with this information (despite promising to do so in its verified responses), Elite requests that, at a minimum, the Court exclude them from trial.

**II.   Any Probative Value in Plagiarism Checker X Reports or the Comparison Demonstratives Is Substantially Outweighed by the Danger of Unfair Prejudice.**

Even if these materials had been timely disclosed, they would otherwise be inadmissible as their probative value, if any, is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. As explained above, both the Plagiarism Checker X Reports and the Comparison Demonstratives appear to show instances of "plagiarism" or "substantial similarity" between the courses at issue in this case.[4] Unknown to Elite—because their untimely production meant that Elite was unable to seek discovery regarding how they were created—is whether any of these documents purport to show Dr. Jouria's use of public domain material in drafting the courses he sold to NetCE,[5] or Dr. Jouria's use of portions of materials he sold to NetCE when he prepared separate courses for Elite.

Either way, use of these materials at trial will create unfair prejudice to Elite and mislead the jury into believing that the purported "plagiarism" or "substantial similarity" shown therein is indicative of copyright infringement. NetCE has alleged and testified that the Jouria Articles contain pre-existing material copied from third-party sources.[6] NetCE also testified, rightly so, that it does not claim to own such third-party content contained in the Jouria Articles. (NetCE Depo. 60:15-23, 66:2-6). Importantly, NetCE confirmed that in conducting its similarity analysis, including that done through Plagiarism Checker X, <u>it did not exclude from such comparison the third-party content in which it does not own copyright rights</u>:

---

[4] Elite submits that the statements contained on the front page of each Plagiarism Checker X Report ("Similarity Found" percentage, the number of "words plagiarized," and "High Plagiarism Detected – Your Document Needs Critical Improvement") are hearsay, if offered for the truth of the matter asserted in those statements. Fed. R. Evid. 801. Such hearsay is inadmissible pursuant to Fed. R. Evid. 802.

[5] In its Third Party Complaint, NetCE alleged that the Jouria Articles were "littered with plagiarized content." (DE 36, ¶ 55). Likewise, NetCE testified at deposition that it suspects all of the Jouria Articles contain third party content. (NetCE Depo. 61:10-13). While the Reports appear to be analysis of plagiarism, Elite is unaware of whether they relate to NetCE's allegations of plagiarism of public domain material or the alleged copyright infringement in this case.

[6] *See* footnote 5, *supra*. Dr. Jouria likewise testified that all of the articles at issue are based on scientific facts. (DE 200-5, Deposition of Jassin Jouria ("Jouria Depo."), 228:7-229:25).

> Q.· And in both the side-by-side comparison that you performed for these five courses and the later computer analysis using Plagiarism Checker X, you included the entirety of the Dr. Jouria courses sent to NetCE in your analysis; correct?
> A.· That's correct.
> Q.· And **you did not endeavor to exclude from that analysis any content that Dr. Jouria might have plagiarized from any other source**; correct?
> A.· I did not try to make that determination.
> Q.· And **you did not determine whether the portions that you found to be the same or similar between the NetCE version of the course and the Elite version of the course were protected or protectable expression owned by NetCE**; correct?
> A.· I don't feel like I have the expertise to make that determination.
> Q.· You didn't endeavor to find out, when you located a similarity or something that you thought was similar -- similar, whether that portion of the article was written by somebody other than Dr. Jouria; correct?
> A.· I did some searching -- Internet searching to determine if Dr. Jouria had published the courses somewhere else in addition to Elite.· And I also did some searching to determine if the courses were copied in their entirety from another source.  **But in terms of parts or sections, I didn't attempt to make that determination**.

(NetCE Depo. 108:20-109:22) (emphasis added).

Neither the Plagiarism Checker X Reports nor the Comparison Demonstratives make any distinction between "plagiarism" or "substantial similarity" between public domain materials, unprotectable facts, and third-party content, on the one hand, and protectable elements, on the other.  These documents will confuse the issues and mislead the jury into believing that the highlighting is indicative of substantial similarity for purposes of copyright infringement.  But there is no dispute that not all copying is infringement.  (Joint Pretrial Stipulation, Section VII (3)).  The likelihood that the jury will be misled is underscored by the Eleventh Circuit's analysis in *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.*:

> Because a judge will more readily understand that **all copying is not infringement**, particularly in the context of works that are compilations, the "substantial-similarity" test is more often correctly administered by a judge rather than a jury -- even one provided proper instruction.  The reason for this is plain -- the ability to separate protectable expression from non-protectable expression is, in reality, a question of law or, at the very least, a mixed question of law and fact.  It is difficult for a juror, even properly instructed, to conclude, after looking at two works, that there is no infringement **where, say, 90% of one is a copy of the other, but only 15% of the work is protectable expression that has not been copied**.

554 F.3d 914, 920 (11th Cir. 2008) (internal quotation omitted).

In light of the foregoing, the dangers of unfair prejudice, confusing the issues, and misleading the jury substantially outweigh any probative value in these Reports. As a result, Elite submits that the Reports should be excluded at trial pursuant to Fed. R. Evid. 403.

### III. NetCE Has Identified No Witness Who Can Authenticate the Plagiarism Checker X Reports.

An additional basis for exclusion of the Plagiarism Checker X Reports at trial is NetCE's inability to authenticate them. Fed. R. Evid. 901 requires that in order to authenticate "an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." NetCE undoubtedly intends to offer these Reports as print-outs from the Plagiarism Checker X program showing either (1) that Dr. Jouria plagiarized third-party content in writing the Jouria Articles he sold to NetCE, or (2) that Dr. Jouria plagiarized the Jouria Articles he sold to NetCE when he prepared the Accused Courses later published by Elite. In either event, NetCE has identified no evidence or witness who can provide evidence to support a finding that the Reports are what NetCE claims them to be.

Each of the witnesses listed on NetCE's Witness List (DE 279-1) were previously identified, along with their areas of relevant knowledge, in NetCE's initial disclosures and supplemental disclosures. None of those witnesses were disclosed as having knowledge regarding the Plagiarism Checker X program. As a result, none of them can testify based on personal knowledge regarding how the program works, how many adjacent words must be found in a phrase or sentence for the program to make a finding of plagiarism, the reliability of the program and its findings, the basis for or meaning of a finding of "High Plagiarism Detected" as stated at the top of each of the Reports, or what each Report's "Similarity Found" percentage means. This type of information, at a minimum, is required to authenticate the Reports. *See, e.g., Lohan v. Perez*, 924 F. Supp. 2d 447, 458 (E.D.N.Y. 2013) ("Defendants have also submitted a 'Similarity Report,' which they generated on March 9, 2012 using the website https://research.ithenticate.com/, 'a plagiarism and duplication screening program.' Defendants have, however, provided the Court with no information as to how this program works, the reliability of its findings, or precisely what a 'similarity index' of 64% means."). Indeed, Elite submits that this type of information must be provided by expert testimony based on technical knowledge of how this plagiarism detection program functions, pursuant to Fed. R. Evid. 702. Because NetCE does not have an expert (or any other witness) who can provide adequate testimony regarding these issues, Elite submits that the Plagiarism Checker X Reports must also be excluded pursuant to Fed. R. Evid. 901.

9

## CONCLUSION

For the foregoing reasons, Elite respectfully requests that the Court issue an order excluding NetCE's proposed Exhibit Nos. NC-202 – NC-209 and proposed Trial Demonstrative Nos. 2, 5, 6, 7, and 8, entitled "Examples of Substantially Similar Text."

## Request for Hearing

Pursuant to Local Rule 7.1(b)(2), Elite requests a hearing on this motion. Elite respectfully submits that this motion presents an important evidentiary challenge on a material issue that directly affects the respective positions of the parties in the scheduled trial of this case. Elite believes that the Court's decision making process will be aided by hearing from Elite prior to any ruling. Elite estimates that 15 minutes will be needed for oral argument on this motion.

## Certificate of Good Faith Conference

Pursuant to Local Rule 7.1(a)(3)(A), on May 9, 2018, counsel for Elite conferred with counsel for NetCE and Dr. Jouria about this Motion via email. Counsel made a good faith effort to resolve the issues raised in the motion and were unable to do so.

Dated: May 11, 2018

Respectfully submitted,

/s/ Peter A. Chiabotti
Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
AKERMAN LLP
peter.chiabotti@akerman.com
kristen.mckinney@akerman.com
777 South Flagler Driver
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
Minnie Kim (*pro hac vice*)
minniekim@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159

*Attorneys for Third Party Defendant*
*Elite Professional Education, LLC*

## Certificate of Service

      I hereby certify that on May 11, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                              /s/ Peter A. Chiabotti
                                                               Peter A. Chiabotti

## Service List

Richard S. Ross
915 SE 2nd Court
Fort Lauderdale, FL 33301
Telephone: (954) 252-9110
Fax: (954) 252-9192
Email: prodp@ix.netcom.com
*Attorney for Defendant and Counter-Plaintiff Dr. Jassin Jouria*

Philip E. Rothschild
Holland & Knight, LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-1000
Fax: (954) 463-2030
Email: phil.rothschild@hklaw.com
*Attorneys for Plaintiff and Counter-Defendant CE Resource, Inc. d/b/a CME Resource and NetCE*

John P. Kern
Jessica E. Lanier
Daniel P. Kappes
David I. Holtzman
Holland & Knight, LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 743-6900
Fax: (415) 743-6910
Email: john.kern@hklaw.com
Email: jessica.lanier@hklaw.com
Email: daniel.kappes@hklaw.com
Email: david.holtzman@hklaw.com
*Attorneys for Plaintiff and Counter-Defendant CE Resource, Inc. d/b/a CME Resource and NetCE*

Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Fax: (561) 659-6313
Email: peter.chiabotti@akerman.com
Email: kristen.mckinney@akerman.com
*Attorneys for Defendant Elite Professional Education, LLC*

J. Mark Wilson (*pro hac vice*)
Kathryn G. Cole (*pro hac vice*)
Minnie Kim (*pro hac vice*)
Moore & Van Allen PLLCS
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Fax: (704) 331-1159
Email: markwilson@mvalaw.com
Email: katecole@mvalaw.com
Email: minniekim@mvalaw.com
*Attorneys for Defendant Elite Professional Education, LLC*