UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:15-61165-WPD**

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

    Plaintiff,

v.

DR. JASSIN JOURIA, and ELITE PROFESSIONAL EDUCATION, LLC.,

    Defendants.
_____/

DR. JASSIN JOURIA,

    Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME Resource and NetCE,

    Counter-Defendant,
_____/

**DEFENDANT ELITE PROFESSIONAL EDUCATION, LLC'S MOTION *IN LIMINE*
NO. 5 TO EXCLUDE INSUFFICIENTLY DEFINED TRADE SECRETS
AND INCORPORATED MEMORANDUM OF LAW**

45186197;1

Pursuant to Fed. R. Civ. P. 37(c) and 37(d), and Fed. R. Evid. 401, 402, and 403 Defendant Elite Professional Education, LLC ("Elite") hereby moves *in limine* to preclude Plaintiff CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE") from offering evidence or testimony at trial regarding undefined trade secrets.

## **MEMORANDUM OF LAW**
## INTRODUCTION

For its claim of trade secret misappropriation against Elite, NetCE alleged that Elite violated the Florida Uniform Trade Secrets Act ("FUTSA") by obtaining and using NetCE's confidential information that NetCE disclosed to Third-Party Defendant Management Services III ("Alpine"). (DE 36 ¶¶ 126-38).[1] More specifically, NetCE alleged that it shared some purported trade secret information with Alpine as part of discussions regarding a potential acquisition, and that Alpine must have shared these alleged trade secrets with Elite, in light of Alpine's relationship with Elite's parent company. (DE 36 ¶¶ 40-43, 46, 130-132).

Both in its Third-Party Complaint and during discovery, NetCE has maintained vague and conclusory descriptions of the purported trade secrets that Elite allegedly misappropriated. For example, in its Complaint, NetCE broadly alleged that its trade secrets include "NetCE's strategies for the marketplace, industry reports regarding competitors, the competitive landscape, and consumer needs, NetCE's process for curating courses, and NetCE's financial performance data—histories and projections." (DE 36 ¶ 127).[2]

Given these vague, broad categories of alleged trade secrets, Elite served an interrogatory during discovery requesting that NetCE "[i]dentify and describe in detail all trade secrets [NetCE] allege[s] were misappropriated by Elite." (DE 188-9, Interrogatory No. 3). Without specifically identifying particular "trade secrets" as such, NetCE stated that it provided the following information to Alpine:

---

[1] NetCE dismissed its claims against Alpine in April 2017. (DE 64).

[2] On December 22, 2016 Elite moved to dismiss NetCE's trade secret misappropriation claim. (DE 43). One of Elite's arguments was that NetCE failed to allege its purported trade secrets with reasonable particularity. (*Id.* at 10-12). By Order entered on July 17, 2017, the Court denied Elite's motion to dismiss NetCE's FUTSA claim. (DE 88). The Court did not specifically rule on Elite's argument that NetCE's trade secrets were insufficiently defined, but stated that NetCE alleged sufficient facts to withstand a motion to dismiss and that certain of Elite's trade secret arguments were better suited for a motion for summary judgment or at trial. (*Id.* at 12).

1

45186197;1

- Market strategies
- Industry reports regarding competitors and market need
- Information regarding the competitive landscape and consumer need
- Internal financial performance data (histories and projections)
- NetCE's process for curating courses
- Proprietary information concerning the type of content NetCE furnished, developed, and was planning to develop
- A list of courses currently in development
- Accreditation schedule
- Return-on-investment statistics
- Areas of future business development
- Direct mailing information
- Existing faculty
- Authors with whom NetCE executed, or was close to executing, Freelance Writer Agreements
- Drafts of certain of Dr. Jouria's courses (including three of the Accused Courses)
- Information related to courses in various stages of development

(DE 188-9, NetCE's Response to Interrogatory No. 3)[3]. These interrogatory responses were verified by Erin Meinyer, Executive Director of NetCE. (*Id.*, p. 19). In its initial disclosures served pursuant to Rule 26(a)(1)(A), NetCE did not disclose any documents or information embodying its trade secrets. Moreover, never in this case did NetCE provide any specificity or detail regarding these broad categories of information. For example, it did not identify in its pleading or its verified interrogatory response any particular "strateg[y] for the marketplace," any specific "industry report regarding competitor and market need," or any aspect of its "process for curating courses" or "direct mailing information."

Elite anticipates that, at trial, NetCE will attempt to argue that the foregoing generic categories of information constitute trade secrets. The Court should not allow this to happen pursuant to Rules 401, 402, and 403. Granting this motion will rightly limit NetCE to arguing its trade secrets claim only for the alleged trade secrets NetCE has arguably described with specificity,

---

[3] This list is a combination of the information listed in NetCE's Third Party Complaint and NetCE's verified response to Elite's Interrogatory No. 3. (DE 36, DE 188-9).

2

as required by the law. The only information that might fall into this category is NetCE's claims that it provided <u>Dr. Jouria's identity</u> and <u>drafts of certain of Dr. Jouria's courses</u> (hereinafter, the "Jouria Information"). (DE 188-9, NetCE's Response to Interrogatory No. 3). Additionally, during discovery, Alpine produced copies of <u>specific documents that NetCE provided to Alpine</u> during the above-referenced acquisition discussions, which documents contain (1) a discussion of NetCE's "history, products and services, and future plans," (2) specific financial statements for the years 2005-2012, (3) a "Sales by Month" spreadsheet for the years 2005-2012, and (4) a spreadsheet entitled "Sales Projection 2012" (hereinafter, the "Alpine Documents"). (DE 188-11, *under seal*). Elite submits that the Jouria Information and the Alpine Documents, as defined above, are the only alleged trade secrets identified during discovery with any reasonable specificity or particularity. As such, Elite requests that the Court preclude NetCE from offering evidence, testimony, or argument regarding any of the other generic categories of alleged trade secrets identified above, or any other previously undisclosed or undefined alleged trade secrets.

Elite also anticipates that NetCE may seek to introduce never-before-disclosed information regarding specific trade secrets not previously defined or disclosed in discovery. Indeed, during a May 9, 2018 meet-and-confer teleconference among the parties regarding pretrial motions *in limine*, counsel for NetCE stated that counsel is still—only weeks before trial—"working with witnesses on what constitutes trade secrets." Given NetCE's disclosure obligations under Rule 26(a)(1)(A) and its verified interrogatory responses served pursuant to under Rule 33, the Court should preclude NetCE from introducing evidence or testimony at trial regarding purported trade secrets either not disclosed at all during discovery or not disclosed in specific detail during discovery, namely anything beyond the Jouria Information and Alpine Documents. Fed. R. Civ. P. 37(c), 37(d).

## ARGUMENT

Pursuant to the Florida Uniform Trade Secrets Act, a "trade secret" is information that (1) derives economic value from not being generally known to or readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy. FLA. STAT. §§ 688.002(4). "For there to be actionable misappropriation, the [plaintiff] … bears the dual burden of describing the alleged trade secret information and also showing that it has taken reasonable steps to protect this secrecy." *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007). This requires the alleged trade secrets to be pleaded with "reasonable particularity." *Id.* If the allegations of

3

trade secret information are not sufficiently specific to place a defendant "on notice of the claims it must defend," they are "too vague to support a claim for misappropriation of trade secrets." *Swiss Watch Int'l, Inc. v. Movado Group, Inc.*, 2010 U.S. Dist. LEXIS 101400, at *8 (S.D. Fla. June 10, 2010).

"[I]t is insufficient to describe the trade secrets by generic category…. Rather, [the trade secret claimant] must identify the specific characteristics of each trade secret, such as a **particular** drawing, process, procedure or cost/pricing data." *Knights Armament Co. v. Optical Sys. Tech.*, *Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) (emphasis added). District courts within the Eleventh Circuit have considered purported trade secrets defined in a manner similar to that defined by NetCE, and have found them to be broad, generic, and insufficiently defined. *See Am. Registry, LLC v. Yonah,* 2013 U.S. Dist. LEXIS 171889, at *9 (M.D. Fla. Dec. 5, 2013) (finding categories such as "financial data", "sales and marketing strategies and data", "statistics," and "information related to products offered by [plaintiff]" to be "broad and generic" and "so broad as to be meaningless"); *Swiss Watch*, 2010 U.S. Dist. LEXIS 101400, at *8 ("[Plaintiff] lists both customer lists and operational techniques and processes as trade secrets that have been misappropriated by [defendant]. This information, as alleged, is still too vague to support a claim for misappropriation of trade secrets. … [and] **fails to place [defendant] on notice of the claims it must defend**….") (emphasis added).

"[S]pecificity is required…so that the defendant can defend himself adequately against claims of trade secret misappropriation…**and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation**." *sit-up Ltd. v. IAC/Interactive Corp.*, 2008 U.S. Dist. LEXIS 12017, at *34 (S.D.N.Y. Feb. 20, 2008) (emphasis added); *see also Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014) (noting specificity requirement set forth in *sit up Ltd.* and stating that **"each Circuit Court of Appeals to have opined on this issue has required a comparable degree of specificity, as have numerous district courts across the country,"** including at least one district court in the Eleventh Circuit) (emphasis added).

In keeping with this specificity requirement, which is particularly important as a trade secret claim proceeds to a jury trial, courts have granted motions *in limine* directed to insufficiently defined trade secrets. *See, e.g., Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 U.S. Dist. LEXIS 54698, at *28-35 (N.D. Ill. July 26, 2007), *vacated on other grounds* (granting motion

4

*in limine* to exclude alleged trade secrets not sufficiently disclosed during discovery); *Cardiovention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 844 (D. Minn. 2007) ("In order to proceed with trial and in order for the Court to be able to correctly instruct the jury, [plaintiff] must specify precisely what items of information constitute the trade secrets that [defendant] allegedly misappropriated. Thus, the Court orders [plaintiff] to submit a specific, clear, detailed, and precise list of the trade secrets at issue in this case.").

The categories of information that NetCE has maintained are its misappropriated trade secrets are broad, generic, and meaningless. As it stands, neither Elite nor the jury can tell specifically what NetCE claims was misappropriated. For example, the Court will provide a charge to the jury instructing them on the law, and will ask them to fill out a verdict form. What should be included in the jury instructions and verdict form for NetCE's alleged trade secrets? The cases cited above show that the ill-defined categories listed by NetCE are insufficient. It would be error for the Court to follow NetCE's lead and continue with a trial over alleged trade secrets that NetCE has refused to define with specificity. The law requires more than what NetCE has done here. Elite asked during discovery for more information, and NetCE refused to provide it. NetCE cannot now benefit from its discovery failings, for the prejudice to Elite is and will continue to be substantial and overwhelming.

Given these requirements of specificity, any testimony or argument regarding NetCE's generic categories of information cannot support its claim of misappropriation, and therefore bears no relevance to any matter at issue in this action. *See* Fed. R. Evid. 401, 402. And even if the Court viewed these categories of information as having some relevance, their probative value is substantially outweighed by the dangers of confusing the issues and misleading the jury as to whether such information can be considered a trade secret for purposes of NetCE's FUTSA claim. *See* Fed. R. Evid. 403. Finally, the Court should preclude NetCE from introducing evidence or testimony regarding trade secrets with a more specific definition than what was disclosed in discovery, given its obligations to have disclosed such information either in its initial disclosures under Rule 26(a)(1)(A) or in response to Elite's interrogatories under Rule 33. Rule 37(c)(1) states that "[i]f a party fails to provide information…as required by Rule 26(a) or 26(e), the party is not allowed to use that information…to supply evidence…at a trial, unless the failure was substantially justified or is harmless." Likewise, Rule 37(d) states that the court may order sanctions "if a party, after being properly served with interrogatories under Rule 33…, fails to serve its answers,

5

45186197;1

objections, or written response." Sanctions may include "prohibiting the disobedient party from…introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii), 37(d)(3). There is no justification for NetCE's failure to describe its trade secrets allegedly misappropriated by Elite with the specificity required by law, and Elite would be unduly prejudiced by any new definition or description at trial, given that it has been foreclosed from seeking discovery and preparing a defense regarding any such undisclosed matters.

## CONCLUSION

For the foregoing reasons, Elite respectfully requests that the Court issue an order precluding NetCE from offering evidence, testimony, or argument regarding purported trade secrets beyond the Jouria Information and the Alpine Documents, as defined herein.

### Request for Hearing

Pursuant to Local Rule 7.1(b)(2), Elite requests a hearing on this motion. Elite respectfully submits that this motion presents an important evidentiary challenge on a material issue that directly affects the respective positions of the parties in the scheduled trial of this case. Elite believes that the Court's decision making process will be aided by hearing from Elite prior to any ruling. Elite estimates that 15 minutes will be needed for oral argument on this motion.

### Certificate of Good Faith Conference

Pursuant to Local Rule 7.1(a)(3)(A), on May 9, 2018, counsel for Elite conferred with counsel for NetCE and Dr. Jouria about this Motion via email. Counsel made a good faith effort to resolve the issues raised in the motion and were unable to do so.

Dated: May 11, 2018

Respectfully submitted,

/s/ Peter A. Chiabotti
Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
AKERMAN LLP
peter.chiabotti@akerman.com
kristen.mckinney@akerman.com
777 South Flagler Driver
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313

J. Mark Wilson (*pro hac vice*)
markwilson@mvalaw.com
Kathryn G. Cole (*pro hac vice*)
katecole@mvalaw.com
Minnie Kim (*pro hac vice*)
minniekim@mvalaw.com
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159

*Attorneys for Third Party Defendant
Elite Professional Education, LLC*

## Certificate of Service

I hereby certify that on May 11, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                      /s/ Peter A. Chiabotti
                                                      Peter A. Chiabotti

## Service List

Richard S. Ross
915 SE 2nd Court
Fort Lauderdale, FL 33301
Telephone: (954) 252-9110
Fax: (954) 252-9192
Email: prodp@ix.netcom.com
*Attorney for Defendant and Counter-Plaintiff Dr. Jassin Jouria*

Philip E. Rothschild
Holland & Knight, LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-1000
Fax: (954) 463-2030
Email: phil.rothschild@hklaw.com
*Attorneys for Plaintiff and Counter-Defendant CE Resource, Inc. d/b/a CME Resource and NetCE*

John P. Kern
Jessica E. Lanier
Daniel P. Kappes
David I. Holtzman
Holland & Knight, LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 743-6900
Fax: (415) 743-6910
Email: john.kern@hklaw.com
Email:  jessica.lanier@hklaw.com
Email: daniel.kappes@hklaw.com
Email: david.holtzman@hklaw.com
*Attorneys for Plaintiff and Counter-Defendant CE Resource, Inc. d/b/a CME Resource and NetCE*

Peter A. Chiabotti
Florida Bar No. 0602671
Kristen M. McKinney
Florida Bar No. 96677
Akerman LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Fax: (561) 659-6313
Email: peter.chiabotti@akerman.com
Email: kristen.mckinney@akerman.com
*Attorneys for Defendant Elite Professional Education, LLC*

J. Mark Wilson (*pro hac vice*)
Kathryn G. Cole (*pro hac vice*)
Minnie Kim (*pro hac vice*)
Moore & Van Allen PLLCS
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Fax: (704) 331-1159
Email: markwilson@mvalaw.com
Email: katecole@mvalaw.com
Email: minniekim@mvalaw.com
*Attorneys for Defendant Elite Professional Education, LLC*

8

45186197;1