**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:15-cv-61165-WPD**

CE RESOURCE, INC. d/b/a CME RESOURCES
and NetCE,

     Plaintiff,

v.

DR. JASSIN JOURIA, and ELITE PROFESSIONAL EDUCATION, LLC.,

     Defendants.

_____/

DR. JASSIN JOURIA,

     Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCES
and NetCE,

     Counter-Defendant.

_____/

## JOINT PRETRIAL STIPULATION

Plaintiff CE Resource, Inc. d/b/a CME Resources and NetCE ("NetCE"), and Defendants

Dr. Jassin Jouria ("Dr. Jouria") and Elite Professional Education, LLC ("Elite") (collectively,

the "Parties"), submit this Joint Pretrial Stipulation pursuant to Local Rules 16.1(d) and (e),

and this Court's Order Adopting Joint Scheduling Report, Setting Pretrial Conference and

Trial, Establishing Pretrial Deadlines, and Establishing Pretrial and Trial Procedures.

# I.     STATEMENT OF THE CASE

## A.     NetCE's Statement of the Case

NetCE is a California-based company specializing in commissioning and publishing continuing education ("CE") courses for a variety of medical professionals in multiple subjects. To develop CE courses, NetCE contracts with independent writers through contracts termed Freelance Writing Agreements ("FWA"). These contracts are identical with the exception of the name of the author, dates, course topic, and signatures. In 2012 and 2013, Dr. Jassin Jouria and NetCE executed ten FWAs, five of which were on courses entitled: "Traumatic Brain Injury," "Non-Antibiotic Antimicrobial Pharmacology: A Review," "Gastroesophageal Reflux Disease," "Cancer and Chemotherapy," and "Depression and Dementia in the Elderly."

Each FWA assigned all rights to NetCE, provided the courses were "approved for publication." As this Court ruled in its Omnibus Order (DE 237), the courses in question were approved for publication. Despite being specifically forbidden by the FWAs and in violation of NetCE's copyright, Dr. Jouria offered the five courses to Elite for Elite's use. Elite published the other five courses in violation of NetCE's copyright. As a result of Defendants misuse and publication of the five courses, NetCE has suffered damages of approximately $7 million dollars.

Meanwhile, NetCE was in talks with Alpine Management Services III, LLC ("Alpine") regarding Alpine's potential acquisition of NetCE. In furtherance of that acquisition, NetCE and Alpine entered into a Non-Disclosure Agreement which prohibited Alpine from disclosing any of NetCE's confidential information. Pursuant to the acquisition, NetCE provided Alpine with confidential and trade secret information including financial, accreditation and course development information and strategies. Alpine requested information from NetCE on NetCE's competitors, including specifically Elite. NetCE provided this information. Alpine, meanwhile, secretly purchased Elite without informing NetCE. After its purchase of NetCE, Alpine sought

further information from NetCE on its practices, finances and internal procedures.  Alpine then provided this information through its affiliates to Elite.  Elite used these misappropriated trade secrets to gain a competitive advantage over NetCE.

NetCE has suffered damages as to each of its claims.

**B.      Dr. Jouria's Statement of the Case**

Dr. Jassin Jouria is a medical doctor, and medical researcher and writer of fact-based medical research papers.  NetCE is a publisher of continuing medical education courses sold to medical professionals.

Between 2012 and 2013, Dr. Jouria and NetCE entered into ten written contracts to write ten medical research papers on ten different medical topics.  NetCE required that each medical research paper written by Dr. Jouria be "supported by evidence based literature and in keeping with prevailing professional guidelines regarding scientific and medical accuracy." [DE 36 at 24 ¶58], which each did.  Upon receipt of each medical research paper, NetCE was to edit and curate it into a continuing medical education course to present to it to the public for purchase. For three of Dr. Jouria's medical research papers, NetCE did edit and curate them, and offered them to the public as courses for continuing medical education credit.  These three medical research papers are not part of this lawsuit.  For the seven remaining contracts, Dr. Jouria prepared and submitted to NetCE seven more medical research papers.  NetCE paid Dr. Jouria the parties' agreed-upon rate upon submission of the papers and prior to NetCE editing, curating and approving them for publication.  Ultimately, NetCE decided not to approve them for publication or publish any courses curated from the seven additional research papers.  As a result of NetCE's refusal to publish courses based upon Dr. Jouria's seven medical research papers, NetCE expressly rejected them.

Thereafter, Dr. Jouria inquired of Elite, another continuing medical education company, if it wanted to engage his services as a medical research writer.  Dr. Jouria asked Elite if it wanted medical research papers on the same medical topics as had had researched for NetCE, and on different medical topics as well.  Dr. Jouria informed Elite of his prior relationship with other continuing education providers, including NetCE, and Elite and Dr. Jouria agreed that he would rewrite new medical research papers based upon five of the seven medical topics for which he had done researched for NetCE.  In addition, Dr. Jouria wrote ten more medical research papers for Elite that he did not at all write for NetCE.  Elite edited and curated Dr. Jouria's five rewritten and ten brand new medical research papers into continuing medical education courses that it offered to the purchasing public.

NetCE asserts Dr. Jouria violated his seven contracts by offering the same medical research papers to Elite that NetCE chose not to approve for publication.  Dr. Jouria denies that he ever offered the same medical research papers to Elite.  NetCE also asserts that Dr. Jouria infringed copyrights in the seven medical research papers that it claims it owns by virtue of the seven contracts.  Dr. Jouria disputes NetCE's copyright claim in the seven medical research papers, and also disputes that his rewritten and brand new medical research papers infringe any copyright that NetCE might own.

Dr. Jouria has suffered monetary losses defending against NetCE's allegations in the form of litigation costs and attorney's fees.

### C.    Elite's Statement of the Case

Elite and NetCE are competitors in the field of continuing professional education services and materials.  Elite has been in the continuing education business since 1999.  Elite offers continuing education courses to a multitude of professions, including electricians, funeral

directors, veterinary professionals, parenting, barbers, cosmetology, dental, infection control, massage therapist, occupational therapy, pharmacist, pharmacy technicians, physical therapy, professional counselors, psychology, social work/mental health, and nursing professionals.  Both Elite and NetCE—and other companies that compete with both Elite and NetCE, including NurseCE4Less—have offered continuing education materials for nurses that were authored by Dr. Jouria.

NetCE believes Dr. Jouria sold similar versions of certain continuing education courses for nurses to both NetCE and Elite, in alleged violation of NetCE's copyright rights.  NetCE has accused the following five Elite continuing education courses of infringing its purported copyright rights ("Accused Courses"):

1.      Traumatic Brain Injury ("TBI")

2.      Cancer and Chemotherapy (Parts 1 and 2)

3.      Depression vs. Dementia in the Elderly (Parts 1 and 2)

4.      Gastroesophageal Reflux Disease ("GERD")

5.      Non-Antibiotic Antimicrobial Pharmacology (Parts 1 and 2)

Dr. Jouria represented and warranted in a contract with Elite that "[a]ll materials created by [Dr. Jouria] during the course of engagement by [Elite], do not, and will not infringe the trademark, copyright, patent or other rights of any third-party; and [Dr. Jouria] is the sole and exclusive author and owner of each Curriculum."  Dr. Jouria suggested the topics for the Accused Courses without any indication that he submitted courses on the same or similar topics to NetCE.

After being notified of NetCE's allegations involving Dr. Jouria, and before NetCE filed its third-party complaint against Elite, Elite took steps to remove the Accused Courses from its

website.  As a result, Elite's realized profits from sales of the Accused Courses in the amount of only $16,332.

NetCE stopped development of the materials submitted to it by Dr. Jouria after discovering the Accused Courses from Elite.  NetCE never published any of the materials from Dr. Jouria that form the basis of NetCE's copyright claims.  Even so, NetCE is seeking lost profits in the amount of approximately $7.1 million dollars for Elite's alleged copyright infringement, even though NetCE has admitted that (i) NetCE cannot point to a single sale that it did not make because it decided not to offer any of the articles; (ii) NetCE does not know whether its revenues were impacted in any way by NetCE's decision not to continue developing the articles at issue in this case; (iii) it would require speculation to determine lost sales of the articles at issue given that the articles were not published by NetCE; (iv) it would require speculation to determine whether any of the articles would have increased or decreased NetCE's revenue if the articles were included in any catalogs; and (v) NetCE did not publish any partial catalogs, no articles were missing from any catalogs, and all catalogs offered by NetCE between 2013-2017 had the full assortment of courses for its customers to review and take.  Pursuant to copyright law, NetCE may be entitled to recover any profits of Elite that are attributable to any proven infringement; however, NetCE is not entitled to recover any supposed "lost profits" of its own, given this overwhelming, and admitted, speculation and lack of evidence showing any actual damages suffered by NetCE.

NetCE has also asserted that Elite misappropriated NetCE's alleged trade secrets. NetCE's claim is based on discussions NetCE had with Alpine Management Services III, LLC ("Alpine").  NetCE claims that it shared information about its business with Alpine, including the identity of Dr. Jouria and the materials he prepared for NetCE, which then must have shared

this information with Elite.  Alpine testified that NetCE's allegations are false.  NetCE has

admitted that it has no reason to contest Alpine's testimony, and further that NetCE has no

evidence to support its allegations that any information disclosed by NetCE was shared with

Elite.  Finally, NetCE has not shown that it suffered any actual loss, or that Elite was unjustly

enriched, by any alleged trade secret misappropriation, nor has NetCE provided any computation

of damages for this claim.

## II.   BASIS OF FEDERAL JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 101 et

seq. (the Copyright Act), 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act), and 28

U.S.C. §§ 1331, 1337, 1338, and 1367.

## III.   PLEADINGS RELATED TO THE ISSUES

The following pleadings relate to the issues in this action:

- Dr. Jouria's Complaint for Declaratory Judgment [ECF 1].

- NetCE's Amended Answer, Affirmative Defenses and Amended Counterclaim to Dr. Jouria's Complaint and Third Party Complaint against Elite [ECF 36].

- Dr. Jouria's Amended Answer to NetCE's Amended Complaint [ECF 37].

- Elite's Answer and Complaint for Declaratory Relief [ECF 93].

- NetCE's Answer to Elite's Complaint [ECF 95].

## IV.   PENDING MOTIONS REQUIRING ACTION BY THE COURT

The following motions are pending:

1.   NetCE's Motions in Limine.

2.   Dr. Jouria's Consolidated Motion in Limine.

3.   Elite's Motions in Limine.

## V.   JOINT STATEMENT OF STIPULATED FACTS WHICH WILL REQUIRE NO PROOF AT TRIAL

1.      NetCE is a California corporation, with its principal place of business at 1482 Stone Point Drive, Suite 120, Roseville, California, 95661.

2.      Elite is a Delaware limited liability company, with a principal place of business at 1452 North U.S. Highway 1, Suite 100, Ormond Beach, Florida 32174.

3.      Alpine is an investment firm with a principal place of business in San Francisco, California.

4.      NetCE and Elite are both continuing education providers, and are competitors in the field of continuing professional education services and materials.

5.      Elite has been in the continuing education business since 1999.

6.      Elite offers continuing education courses to a multitude of professions, including electricians, funeral directors, veterinary professionals, parenting, barbers, cosmetology, dental, infection control, massage therapist, occupational therapy, pharmacist, pharmacy technicians, physical therapy, professional counselors, psychology, social work/mental health, and nursing professionals.

7.      NetCE offers continuing education courses to a multitude of professions, including Nurses, Nurse Practitioners, Social Workers, Counselors/Therapists, Psychologists, Certified Surgical Assistants, Physicians, Physician Assistants, CSTs/CSFAs, Certified Case Managers, Certified Diabetes Educators, Dentists, Dental Hygienists/Assistants, Nursing Home Administrators, Certified Nurse Assistants, Dietetic Technicians-Registered.

8.      Elite has offered continuing education courses to nurses since at least 2006.

9.      Dr. Jassin Jouria is a medical doctor, medical researcher, and writer.

10.     Dr. Jouria promoted his research and writing services by selling medical research papers to continuing education providers as a subject matter expert.

11.     In April 2012, Dr. Jouria approached NetCE about preparing several medical research papers.

12.     In 2012 and 2013, NetCE and Dr. Jouria executed ten Freelance Writer Agreements ("FWAs").

13.     The FWAs were drafted solely by NetCE.

14.     Dr. Jouria submitted drafts of the following medical research papers to NetCE: "The Lymphatic and Immune Systems"; "Traumatic Brain Injury"; "Non-Antibiotic Antimicrobial Pharmacology"; "Cardiovascular Pharmacology"; "Gastroesophageal Reflux Disease"; "Cancer and Chemotherapy"; and "Depression vs. Dementia in the Elderly" (collectively "Articles").

15.     Dr. Jouria drafted and submitted to NetCE an Article pursuant to each FWA.

16.     NetCE, in the course of conduct with Dr. Jouria, also referred to the "Articles" as "manuscripts" and "monographs".

17.     The Articles under the FWAs are "works made for hire," as that phrased is used in Paragraph 9 of the FWAs.

18.     NetCE paid Dr. Jouria under the FWAs.

19.     On January 24, 2013, Elite posted a request for course writers in the field of nursing through the elance.com website.

20.     On January 26, 2013, Dr. Jouria responded to Elite's job posting on the elance.com website.

21.     In late January and early February 2013, a representative from Elite and Dr. Jouria discussed Dr. Jouria's potential engagement as a freelance writer for Elite.

22.     On January 30, 2013, Dr. Jouria entered into an Independent Contractors agreement with Elite.

23.     Dr. Jouria had no decision-making authority over, or control of, Elite.

24.     On November 8, 2013, Dr. Jouria entered into an Independent Contractor Agreement with Elite.

25.     Dr. Jouria submitted to Elite the following seven medical research papers for continuing education courses titled: Cardiovascular Diseases:  The Leading Cause of Death in Women, The Basics of Pathophysiology, Traumatic Brain Injury (TBI), Depression vs. Dementia in the Elderly Part I, Depression vs. Dementia in the Elderly Part II, Cancer and Chemotherapy: A Comprehensive Review Part I, Cancer and Chemotherapy: A Comprehensive Review Part II, Non-Antibiotic Antimicrobial Pharmacology: A Comprehensive Review Part I, Non-Antibiotic Antimicrobial Pharmacology: A Review—Part II, and Gastroesophageal Reflux Disease (GERD): A Comprehensive Review.

26.     NetCE has alleged the following Elite continuing education courses of infringing its purported copyright rights: Traumatic Brain Injury, Cancer and Chemotherapy (Parts 1 and 2), Depression vs. Dementia in the Elderly (Parts 1 and 2), Non-Antibiotic Antimicrobial Pharmacology (Parts 1 and 2), and Gastroesophageal Reflux Disease ("collectively, "At Issue Courses").

27.     Elite paid Dr. Jouria the following amounts: TBI - $2,700; Depression vs. Dementia in the Elderly Part I - $4,050; Depression vs. Dementia in the Elderly Part II - $4,050; Cancer and Chemotherapy: A Comprehensive Review Part I - $4,050; Cancer and Chemotherapy: A Comprehensive Review Part II - $3,600; Non-Antibiotic Antimicrobial Pharmacology: A

Comprehensive Review Part I - $3,600; Non-Antibiotic Antimicrobial Pharmacology: A Review Part II - $4,050; and GERD - $2,700.

28.     Elite marketed and sold the At Issue Courses to nursing professionals beginning in June 2014.

29.     NetCE discovered the alleged infringement in February 2015.

30.     NetCE's lawyers sent a letter to Elite in April 2015 alleging Elite violated copyright law.

31.     NetCE's lawyers sent a letter to Dr. Jouria in April 2015 alleging Dr. Jouria violated copyright law.

32.     Elite has stopped marketing and selling the At Issue Courses.

33.     NetCE stopped development of the Articles after discovering the alleged infringement.

34.     Before stopping its development work, NetCE began editing two of the Articles (Cancer and Chemotherapy and GERD); however, the three remaining Jouria Papers (TBI, Depression v. Dementia in the Elderly, and Non-Antibiotic Antimicrobial Pharmacology) were not edited.

35.     Elite and NetCE—and other companies that compete with both Elite and NetCE, including NurseCE4Less—have offered continuing education materials for nurses that were authored by Dr. Jouria

36.     NetCE is not claiming a copyright of any facts.

37.     On May 27, 2017, NetCE conceded that it is not entitled to recover statutory damages or attorneys' fees regarding its allegations of copyright infringement.

38.     Discovery closed on November 15, 2017.

## VI.   ISSUES OF FACT REMAINING FOR TRIAL

### NetCE's Issues of Fact for Trial

- **The facts relating to Dr. Jouria that will be litigated at trial by NetCE:**

1.      Whether Dr. Jouria misrepresented his educational background to NetCE.

2.      Whether Dr. Jouria breached the at issue FWAs by selling the Articles to Elite.

3.      Whether Dr. Jouria committed copyright infringement by selling the Articles to Elite.

4.      Whether the Articles Dr. Jouria submitted to Elite are substantially similar to the Articles NetCE copyrighted.

5.      The extent of NetCE's damages resulting from Dr. Jouria's copyright infringement and breach of the at issue FWAs.

- **The facts relating to Elite that will be litigated at trial by NetCE:**

1.      Whether the Articles Elite published are substantially similar to the Articles NetCE copyrighted.

2.      The extent of NetCE's damages resulting from Elite's copyright infringement.

3.      Whether information NetCE disclosed to Mike Duran, Dan Cremons, Alpine or McKissock is a trade secret.

4.      Whether NetCE provided trade secret information to Mike Duran, Dan Cremons, Alpine or McKissock.

5.      Whether that trade secret information was disclosed to Elite.

6.      Whether Elite used NetCE's trade secret information.

7.      Whether Elite gained a competitive advantage from the use of NetCE's trade secret information.

8.      Whether NetCE took proper steps to protect trade secret information.

9.      The extent of NetCE's damages resulting from Elite's misappropriation of trade secrets.

### Dr. Jouria's Issues of Fact for Trial

1.      Whether the term "Articles" in the FWAs means the specific medical research papers written by Dr. Jouria for NetCE, or whether it means similar yet not the same medical research papers written by Dr. Jouria.

2.      Whether NetCE expressly rejected Dr. Jouria's seven medical research papers by its conduct in refusing to publish them.

3.      What did Dr. Jouria and NetCE intend regarding contract rights for Dr. Jouria's medical research papers not approved for publication by NetCE, and whether NetCE's course of conduct deviated from the FWAs' contract terms regarding if and when approval for publication occurred.

4.      Whether NetCE paid Dr. Jouria upon submission of his medical research papers prior to approval for publication for the seven at-issue medical research papers.

5.      Whether NetCE deviated in its course of conduct from its established Overview of Course Development procedure when it paid Dr. Jouria upon submission of his medical research papers rather than wait until he "signed off" on a final edited paper.

6.      Whether NetCE received any copyright registration for works other than for "text."

7.      Whether Dr. Jouria is the owner of a copyright in his seven at-issue medical research papers.

8.      Whether Dr. Jouria's medical research papers are fact-based works.

9.      Whether all of Dr. Jouria's medical research papers contain medical facts.

10.     Whether any of Dr. Jouria's medical research papers written for NetCE are identical to the medical research papers he wrote for Elite.

11.     Whether any of Dr. Jouria's medical research papers contain a sufficient amount of original expression warranting copyright protection to "text."

12.     To the extent any of Dr. Jouria's medical research papers contain original expression, whether any of that expression is de minimis and not significant to the overall papers.

13.     Whether Dr. Jouria's medical research papers written for NetCE are covered by NetCE's purported copyright registrations.

14.     Whether Dr. Jouria submitted ten other medical research papers for Elite's continuing education courses, which are not alleged by NetCE to infringe any copyright and are not part of this lawsuit.

15.     Whether Dr. Jouria wrote any medical research papers for Elite for courses titled: Cardiovascular Pharmacology, or The Lymphatic and Immune Systems, in which NetCE also claims copyright.

16.     Whether Dr. Jouria was a partner, partner-in-fact, or joint venturer with Elite.

17.     Whether the court entered judgment in favor of Dr. Jouria and against NetCE on its Claim Five for Unfair Business Practices Under California Business & Professional Code that NetCE alleged against him.

18.     Whether any of the revised medical research papers that Dr. Jouria wrote for Elite are identical to any of the medical research papers he wrote for NetCE.

19.     Whether any of Dr. Jouria's Articles contain public domain content.

20.     Whether NetCE published courses based upon any of the Articles.

21.     Costs expended by Dr. Jouria in connection with his contractual relationship with NetCE including those expended in this litigation.

## Elite's Issues of Fact for Trial

1.     Has NetCE proved that it is the owner of any protectable copyright rights?

2.     Does NetCE own a copyright in any materials provided by Dr. Jouria?

3.     Do any of the materials in which NetCE purports to have obtained a copyright contain protectable expression?

4.     Is any material in which NetCE claims a copyright original?

5.     Was any material in which NetCE claims a copyright independently created?

6.     Does any material in which NetCE claims a copyright possess at least a minimal degree of creativity?

7.     Is any material in which NetCE claims a copyright copied from other works?

8.     What portions of materials, if any, are protected by which copyright registration asserted by NetCE?

9.     Is NetCE claiming copyright protection in a portion of any materials that is not original?

10.     Is NetCE claiming copyright protection in a portion of any materials that was copied from other works?

11.     Is NetCE claiming copyright protection in a portion of any materials that is in the public domain?

12.     Is NetCE claiming copyright protection in an idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work?

13.     Is NetCE seeking copyright protection in matter that may only be expressed in so few ways that to protect the expression would effectively grant NetCE a monopoly over matter that isn't protectable by copyright?

14.     Did Elite have access to any materials in which NetCE claims a copyright?

15.     Are any of the Accused Courses substantially similar to any original, protectable expression in any materials for which NetCE purports to have obtained a copyright?

16.     Which portions, if any, of any of the Accused Courses are substantially similar to which portions of any materials for which NetCE purports to have obtained a copyright?

17.     Has NetCE satisfied its burden of showing substantial similarity of protectable expression between any materials for which NetCE purports to have obtained a copyright and any of the Accused Courses?

18.     Has NetCE satisfied its burden of showing substantial similarity between those elements that purport to provide copyrightability to the allegedly infringed materials?

19.     Were any of the Accused Courses independently created?

20.     Is Elite liable for copyright infringement for any of the Accused Courses?

21.     Which of NetCE's alleged copyrights, if any, were infringed by Elite?

22.     Is NetCE entitled to an award of damages for alleged copyright infringement?

23.     Did NetCE suffer any loss because of any copyright infringement?

24.     Was any loss suffered by NetCE caused by Elite's alleged acts of copyright infringement?

25.     Would any loss suffered by NetCE have occurred even if there had been no alleged copyright infringement by Elite?

26.     What amount of money, if any, is adequate to compensate NetCE for any actual damages caused by Elite's alleged copyright infringement?

27.     Did Elite receive profits as a result of its alleged infringement of any materials in which NetCE claims a copyright?

28.     What amount of money, if any, is profits of Elite that are attributable to the alleged infringement of any materials in which NetCE claims a copyright?

29.     Has NetCE satisfied its burden of proving that it was damaged by Elite's alleged copyright infringement?

30.     What amount of damages, if any, has NetCE satisfied its burden of proving for alleged copyright infringement as against Elite?

31.     Has NetCE proved that it has protectable trade secrets?

32.     What information, if any, is protectable as a trade secret owned by NetCE?

33.     Is any information claimed to be a trade secret by NetCE generally known to another person who can obtain economic value from the disclosure or use of the information?

34.     Is any information claimed to be a trade secret by NetCE readily discoverable through proper means?

35.     Does any information that NetCE claims to be a trade secret derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use?

36.     Was any information that NetCE claims to be a trade secret subject of efforts that are reasonable under the circumstances to maintain its secrecy?

37.     What trade secrets, if any, were disclosed by NetCE?

38.     Is Elite liable for trade secret misappropriation?

39.     Which trade secrets, if any, were misappropriated by Elite?

40.     Did Elite acquire any protectable trade secret under circumstances giving rise to a duty to maintain its secrecy or limit its use?

41.     Did Elite know or should have known that any protectable trade secret was acquired by improper means?

42.     Did Elite disclose or use any protectable trade secret from NetCE?

43.     Did Elite lawfully acquire any information claimed by NetCE to be a trade secret by reverse engineering, independent derivation, or in some other lawful way?

44.     Is NetCE entitled to an award of damages for alleged trade secret misappropriation?

45.     Did NetCE suffer any actual loss caused by any trade secret misappropriation by Elite?

46.     Was Elite unjustly enriched by any trade secret misappropriation from NetCE?

47.     What amount of money, if any, has NetCE satisfied its burden of proving for alleged trade secret misappropriation as against Elite?

48.     Has NetCE made a claim of trade secret misappropriation against Elite in bad faith?

## VII.   UNCONTESTED ISSUES OF LAW

1.      Claim One of the Third-Party Complaint (Copyright Infringement) is governed by 17 U.S.C. § 101 *et seq.*

2.      To establish copyright infringement, two elements must be proven by NetCE:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.

3.      Not all copying is infringement.

4.      Claim Six of the Third-Party Complaint (Misappropriation of Trade Secrets under Florida's Uniform Trade Secrets Act) is governed by Florida Civil Code § 688.001 *et seq.*

5.      The FWAs executed between NetCE and Dr. Jouria are binding, and controlled under California state law.

6.      California state law provides that if a contract's terms are ambiguous, the ambiguity is supposed to be construed against the entity the drafted it.

## VIII.    A CONCISE STATEMENT OF ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT

- NetCE's, Dr. Jouria's and Elite's Joined Contentions

1.      Whether either NetCE or Dr. Jouria breached any of the FWAs.

2.      Whether NetCE is entitled to an award of lost profits pursuant to 17 U.S.C. § 504.

3.      Whether NetCE is entitled to an award of damages for trade secret misappropriation pursuant to Florida's Uniform Trade Secrets Act, Civil Code §§ 688.001 *et seq.*

4.      Whether NetCE is entitled to an injunction against Elite pursuant to 17 U.S.C. § 502.

5.      Whether NetCE is entitled to an injunction against Elite pursuant to Florida's Uniform Trade Secrets Act, Civil Code §§ 688.003.

6.      Whether Elite and/or Dr. Jouria is/are entitled to the recovery of full costs, including attorney's fees, pursuant to 17 U.S.C. § 505.

7.      Whether Elite is entitled to an award of its attorney's fees pursuant to Florida's Uniform Trade Secrets Act, Civil Code §§ 688.005.

8.      Whether NetCE is entitled to an award of its attorney's fees pursuant to Florida's Uniform Trade Secrets Act, Civil Code §§ 688.005.

- Dr. Jouria's Additional Separate Contentions

1.      What text, if any, of the materials in which NetCE is claiming copyright is protected under each purported copyright registration.

2.      Whether any copyright registration asserted by NetCE in which the authorship claimed is "text" warrants no protection, protection by a standard of virtual identicality, or by a standard of substantial similarity.

3.      Whether NetCE has complied with the applicable statutory formalities to establish a presumption of ownership of valid copyrights.

4.      Whether facts are never original.

5.      Whether there are so few ways of expressing medical facts that such expression of those facts merges with the facts themselves and are not protected by copyright under the merger doctrine.

**X.      EXHIBIT LISTS** – Please see attached Exhibits A, B and C for the Parties' respective exhibit lists.  Exhibit G contains NetCE's list of demonstrative exhibits.

**XI.      WITNESS LISTS** – Please see Exhibits D, E and F for the Parties' respective witness lists.

**XII.      ESTIMATED TRIAL TIME**

NetCE estimates that the trial should take 7-8 trial days.

Elite believes that the trial should take 5-6 days.

Dr. Jouria believes that the trial should take 5-6 days.

**XIII.      EACH PARTY'S ESTIMATE OF THE MAXIMUM AMOUNT OF ATTORNEYS' FEES PROPERLY ALLOWABLE, IF ANY**

- **NetCE's Estimate**

NetCE contends that the Court has the discretionary authority to award attorney's fees and costs in whatever amount it deems appropriate for the willful and malicious misappropriation of NetCE's trade secrets.  NetCE's fees are in excess of $2 million.

- **Dr. Jouria's Estimate**

Dr. Jouria contends that he may be entitled to a reasonable attorney's fees and full costs. 17 U.S.C. §505.  Dr. Jouria estimates his fees and full costs to be $250,000.

- **Elite's Estimate**

Elite intends to seek an award of its attorney's fees from the Court as the prevailing party under either of NetCE's claims of copyright infringement or misappropriation of trade secrets.  *See* 17 U.S.C. § 505 and Uniform Trade Secrets Act § 688.005.  Elite estimates that its attorney's fees will be approximately $1,300,000.

Dated: May 11, 2018

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/
Philip E. Rothschild
Florida Bar No. 0088536
Email: phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954)525-1000
Facsimile: (954)463-2030

/s/
John P. Kern, Esq. (pro hac vice)
Email: john.kern@hklaw.com
Jessica E. Lanier, Esq. (pro hac vice)
Email: Jessica.Lanier@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415)743-6918
Facsimile: (415)743-6910
Attorneys for CE RESOURCE, INC.
d/b/a
CME RESOURCE and NetCE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2018, that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via Electronic Mail.

/s/ Phil Rothschild
Phil Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.
Kristen M. McKinney, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**