UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61165-WPD

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Plaintiff,

v.

DR. JASSIN JOURIA,

        Defendant.

_____/

DR. JASSIN JOURIA,

        Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Counter-Defendant,

_____/

**NETCE's OPPOSITION TO
DR. JASSIN JOURIA'S CONSOLIDATED MOTION IN LIMINE**

### I.    SUMMARY

Plaintiff CE Resource, Inc. d/b/a CME Resource and NetCE ("NetCE"), opposes the Consolidated Motion in Limine filed by Defendant Dr. Jassin Jouria ("Dr. Jouria"). DE 301.

This Court should not allow Dr. Jouria to prevent NetCE from presenting all admissible and relevant evidence to the jury. Nor should this Court tolerate Dr. Jouria's use of motions in limine to re-argue issues that have already been decided or to attempt to distract this Court as to

the plain issues to be decided at trial. To the extent the motions are not moot or do anything other than recite the law of the case, they should be denied.

## II.     THE ISSUES FOR TRIAL

NetCE resolved its claims against Elite Professional Education, LLC ("Elite"). The trial is necessary to resolve NetCE's claims against Dr. Jouria for breach of the Freelance Writer Agreements (FWAs) and for infringement of NetCE's copyright in the five Articles in question.[1]

It is undisputed, and indisputable, that NetCE owns all rights to the Articles, NetCE is the author of the Articles, and valid, registered copyrights protect NetCE's rights in the Articles.[2] At trial, NetCE will prove Dr. Jouria's breach of the FWAs and establish a prima facie case of his copyright infringement by showing that (1) NetCE owns a valid, registered copyright in each of the five Articles at issue, and (2) that Dr. Jouria copied them and Elite published the copies without substantial changes. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir. 1982).

NetCE will therefore introduce evidence at trial to show that there is a substantial similarity between (a) the five Articles in question owned by NetCE and protected by NetCE's copyright, on the one hand, and the five articles resold by Dr. Jouria to Elite that Elite published, on the other.

---

[1] Dr. Jouria sold seven Articles to NetCE. Following Elite's dismissal, five of these Articles are relevant to this trial, those used in conjunction with courses entitled "Traumatic Brain Injury", "Non-Antibiotic Antimicrobial Pharmacology: A Review", "Gastroesophageal Reflux Disease", "Cancer and Chemotherapy" and "Depression and Dementia in the Elderly." These are referred herein as "Articles" to conform to the FWAs.

[2] Each agreement assigned all rights to NetCE, provided that the courses were "approved for publication." This Court has determined that all five Articles (courses) in question were approved for publication. Omnibus Order Denying Motions for Summary Judgment (DE 237) at 6. Certificate of Copyright Registration, DE 36-1.

Evidence presented at trial will show such substantial similarity that the jury will conclude that Dr. Jouria copied in their entirety the five Articles owned by NetCE.

### III.   STANDARDS APPLICABLE FOR MOTIONS IN LIMINE

By definition, a motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." *XTEC, Inc. v. Cardsmart Techns., Inc.*, Case No.11-22866-CIV, 20 014 WL 10250973, at *1 (S.D.Fla. Dec. 2, 2014). Motions in limine are thus inappropriate as a means for resolving substantive issues in the case. *Royal Indemnity Co. v. Liberty Mutual Fire Ins. Co.*, No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D.Fla. June 5, 2008) ("a motion in limine is not the mechanism by which we address or narrow the issues to be tried … [n]or is it the means of testing issues of law").

Motions in limine are disfavored because "[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." *XTEC*, at *2. As this Court stated, evidentiary rulings are better made in the proper context provided by "a full development of all relevant facts constituting the introductory predicate for admission" of the evidence. *Roberts v. Charter Nat'l Life Ins. Co.*, 105 F.R.D. 492, 493 (S.D.Fla. 1985). Rulings on motions in limine are therefore not binding on a trial court and may be reconsidered during the course of trial when such issues are raised in a better context. *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. June 18, 2007).

### IV.   RESPONSE TO THE SPECIFIC MOTIONS

#### A.   The First Motion, Regarding "Derivative Work," Should be Denied

The first motion in limine incorrectly assumes that it is significant that NetCE's complaint and its statement in the pretrial stipulation of the trial issues do not include a specific allegation

that the five articles Elite published are "derivative works," as that term is defined in 17 U.S.C. § 101. It is not significant: this characterization is irrelevant.

To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the work and (2) the defendant copied protected elements from the work. *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1300 (11th Cir. 2008). In this case, the only issue for trial is whether Jouria copied the five Articles protected by NetCE's valid, registered copyrights.

Calling Dr. Jouria's copies or the articles Elite published "derivative works" that are adaptations of the corresponding preexisting five Articles makes no difference to the determination of whether they infringe NetCE's copyright. Labeling a work a "derivative work" does not by itself entitle that work to a separate copyright. As owner and author of the NetCE copyrighted Articles, NetCE has "the exclusive rights to do and to authorize any of the following: (2) to prepare derivative works based upon the copyrighted work ..." 17 U.S.C. § 106; *Peter Letterese*, 533 F.3d at 1297 n.9. To qualify for a separate copyright, a "derivative work" must be "non-infringing and sufficiently original." *Latimer v. Roaring Toyz, Inc.*, 574 F.Supp.2d 1265, 1274 (M.D.Fla. 2008); 17 U.S.C. § 1703. Whether or not Dr. Jouria's copies or Elite's copies are "derivative works" does not alter the fact that that they are substantially similar, not sufficiently original, and not authorized by NetCE. As such, they infringe NetCE's copyright. Calling the copies infringing "derivative works" does not add anything to the analysis.

Under the circumstances, the characterization of the copies of the Articles made by Jouria and Elite as "derivative works" does not affect the admissibility of the evidence of substantial similarity that NetCE will present at trial. The motion should be denied.

### B.  The Second Motion, Regarding "Text v. Compilation," Should be Denied

The second motion in limine is unspecific as to the evidence of substantial similarity that it seeks to prevent NetCE from presenting at trial. This is because the distinction that Dr. Jouria tries to draw, between the "text" of the Articles, on the one hand, and the "selection, coordination or arrangement of preexisting material, facts or data, contained in" the Articles[3], on other hand, is illusory and makes no sense.

NetCE owns the entirety of the Articles, as original works, and, because each of the Articles was a "work made for hire," NetCE is the author of the Articles. Accordingly, NetCE is entitled to a copyright in the entire text of the Articles. This is properly reflected in the certificates. DE 36-1. NetCE is entitled to present evidence showing the substantial similarity of the text of the Articles with the texts of the copies of the five Articles made by Jouria and then published by Elite.

Since "the *sine qua non* of copyright is originality," *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991), the determination of the substantial similarity of the works at issue must exclude any of the components of the NetCE copyrighted works that are not original to the author, such as the author's incorporation of underlying facts. *Id*. at 348-9. "In an action for infringement, it must be determined both whether the similarities between the works are substantial from the point of view of the lay reader and whether those similarities involve copyrightable material." *Herzog v. Castle Rock Entm't*, 193 F. 3d 1241, 1248 (11th Cir. 1999).

The five Articles in this case contain elements, such as facts and publicly-available information, that are not themselves copyrightable. But that does not affect the validity of NetCE's

---

[3]  Consolidated Motion, pp. 4-5.

copyright in the original elements of these five Articles, because the original expression in the text of the Articles extends to the way that those facts and information are selected and arranged.

As the Supreme Court stated in *Feist Publications, Inc., supra*:

"if the compilation author clothes facts with an original collocation of words, he or she may be able to claim a copyright in this written expression. Others may copy the underlying facts from the publication, but not the precise words used to present them. [ . . . ] Where the compilation author adds no written expression but rather lets the facts speak for themselves, the expressive element is more elusive. The only conceivable expression is the manner in which the compiler has selected and arranged the facts. Thus, if the selection and arrangement are original, these elements of work are eligible for copyright protection. No matter how original the format, however, the facts themselves do not become original through association. [ . . . ] Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." [499 U.S. 340 at 348-9.]

Thus, in determining the substantial similarity between the text of the five copyrighted Articles and the copies made by Dr. Jouria and Elite, the jury must see all the evidence to determine whether the articles in question contain "no written expression but rather let the facts speak for themselves," and if so, whether the expression consists of "the manner in which the author has selected and arranged those facts." If the written expression or the selection and arrangements of facts are substantially similar, as the evidence will show here, the jury can and should properly reach the conclusion that Dr. Jouria infringed NetCE's copyrights.

It makes no sense to argue, as Dr. Jouria appears to do, that the word "text" in the copyright certifications somehow excludes any original expression in the works as to how the facts or non-copyrightable material have been selected and arranged within the "text." In this context, "text" can only mean the original copyrightable expression that the author has chosen to include in the work. As the Supreme Court stated in *Feist Publications*, that expression may be written expression or, if the only "conceivable expression is the manner in which the compiler has selected

6

and arranged the facts," the "selection and arrangement" of the facts, provided that selection and arrangement is original. 499 U.S. at 348-9. The term "text" refers to the entire text of the Articles and necessarily includes the way in which preexisting materials or data have been compiled within the Articles, if that arrangement or compilation is original and copyrightable.

NetCE will demonstrate clear evidence of extensive written expression in the five Articles that is the same or substantially similar to the written expression in the articles offered by Jouria to Elite. This substantial similarity raises a proper inference that large portions of the copies were lifted word-for-word from the five NetCE Articles.

Even if that were not the case, NetCE would not, by the use of the word "text" in the certifications, be precluded from presenting evidence of the manner in which the facts are selected and arranged within the articles. None of the cases included in Jouria's motion includes any finding or statement that would suggest otherwise; indeed, one of the cases referred to, *Fourth Estate Public Benefit Corp. v. Wall-Street.com LLC*, 856 F.3d 1338 (11th Cir. 2017), does not stand for the proposition for which it has been quoted.[4] The motion should be denied.

---

[4] Neither *BUC International Corp. v. International Yacht Council*, 489 F.3d 1129 (11th Cir. 2007) nor *Harper House, Inc. v. Thomas Nelson*, 889 F.2d 197 (9th Cir. 1989) address the effect of a certificate that refers to "text" and does not include "compilation" language. *Fourth Estate Public Benefit Corp. v. Wall-Street.com LLC*, 856 F.3d 1338 (11th Cir. 2017) involved the issue of whether a suit for copyright infringement could be brought before the Register of Copyrights approves or denies an application to register a copyright; and, contrary to the statement in the motion at page 4, did not address whether the owner of a copyright "should be prohibited from claiming 'compilation' rights … because the certificate does not recite a compilation work." Nor did the Court in *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) make any such ruling or statement.

### C. The Third Motion, Regarding "Indirect Copyright Infringement," Should be Denied

Dr. Jouria did not commit indirect copyright infringement. Dr. Jouria committed direct infringement of NetCE's copyrights in the five Articles in question, and breached the FWAs, when he sold the five substantially similar articles to Elite for publication, which constituted an "offering to distribute …for further distribution." 17 U.S.C. §101; *see also Selchow & Righter Co. v. Goldex Corp.*, 612 F. Supp. 19 (S.D. Fla. Feb. 20, 1985) ("Unauthorized use of copyrighted material which is inconsistent with the exclusive rights enumerated in Section 106 constitutes copyright infringement").

Dr. Jouria's infringement of NetCE's copyright occurred irrespective of whether Elite published the articles. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1030 (11th Cir. 2012) ("Publication also occurs when an authorized offer is made to dispose of the work in any such manner … [as defined in 17 U.S.C section 101] …, even if a sale or other such disposition does not in fact occur"); *Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F.Supp.3d 1340 (S.D. Fla. 2017). Elite's subsequent publication of the five substantially similar Articles is relevant to the damages that were incurred by NetCE.

The evidence at trial will show, of course, that Dr. Jouria knew about Elite's publication of the substantially similar five articles, and that he induced, caused and materially contributed to Elite's infringement. NetCE does not need evidence of these facts to prove that Dr. Jouria infringed NetCE's copyrights and breached the FWAs, although as stated just above, Elite's publication of the five substantially similar Articles is relevant to the damages that were incurred by NetCE. The motion should be denied.

### D.     The Fourth Motion, Regarding "Statutory Damages and Attorney Fees," is Moot

NetCE does not seek statutory damages or attorneys' fees for Dr. Jouria's copyright infringement.  Dr. Jouria's fourth motion in limine is moot.

### E.     The Fifth Motion, Regarding "Non-Admissibility of ECFMG Subject Matter," Should Be Denied

The fifth motion in limine seeks to preclude NetCE from raising any of the records obtained from the Educational Commission for Foreign Medical Graduates ("ECFMG").  In other words, it seeks to undo precisely what this Court already considered and decided, and contrary to the Federal Rules of Civil Procedure and Evidence.

This Court originally denied NetCE's motion to take discovery with respect to the ECFMG from Jouria.  On March 26, 2018 (DE 244; 275), however, this Court permitted NetCE to take discovery directly from the ECFMG.  The Court permitted that discovery for precisely the reason that Dr. Jouria seeks to exclude it: to impeach Jouria's credibility.  Dr. Jouria claims that NetCE intends to argue that "Jouria's conduct with the ECFMG is probative of his character for truthfulness" and that therefore Fed. R. Evid. 608(b) prevents the admissibility of such evidence.  DE 301 at 7.  Dr. Jouria misreads the law.

Pursuant to Fed. R. Evid. 607, "[a]ny party, including the party that called the witness, may attack the witness's credibility."  There is similarly no question that Fed. R. Evid. 608(b)(1) expressly permits, on cross examination, inquiry into specific instances of a witness's conduct "if they are probative of the character for truthfulness or untruthfulness of: (1) the witness…".  This applies especially when calling a hostile witness, such as NetCE will do with Dr. Jouria.  The

9

only question, therefore, is whether NetCE's calling Dr. Jouria as an adverse witness under Fed. R. Evid. 611 gives NetCE the right to use the ECFMG evidence pursuant to 608(b)(1). It does.

The Fifth Circuit Court of Appeals confronted the question of whether direct examination of a hostile witness constituted cross-examination and found that it did. *Rossano v. Blue Plate Foods, Inc*., 314 F.2d 174, 178 (5th Cir. 1963) ("There is no specific provision concerning cross-examination of a witness … though there is persuasive precedent that the Court may in its discretion allow a party to cross-examine and impeach his own witness if it appears that the witness is hostile"). Since direct examination of a hostile witness constitutes cross-examination for purposes of the Federal Rules of Evidence, NetCE may rely on all such rules, including Fed. R. Evid. 608(b)(1). The ECFMG materials are therefore admissible and not excluded by 608(b).

However, in the event that the Court believes the ECFMG material should be excluded, NetCE respectfully requests the right to use the material specifically to rebut Dr. Jouria's likely attempt to bolster his credibility by relying on his medical credentials. "Impeachment evidence is, of course, available to a party even if that evidence is ultimately not admissible in evidence at trial." *Jeld-Wen, Inc. v. Nebula Glass Intern., Inc*., 2007 WL 1526649, *2 (S.D. Fla. May 22, 2007). Dr. Jouria already relied on this tactic once. After he maintained during NetCE's direct examination at his deposition that disputes about the veracity of his credentials were "irrelevant," Dr. Jouria insisted during cross-examination by counsel for Elite that he was properly credentialed. Jouria Deposition Transcript at 206:22-207 (see Exhibit A). If Dr. Jouria tries this again at trial, NetCE should have the ability to properly rebut him with the ECFMG records.

### F. The Sixth Motion, Regarding "NetCE's Damages Expert Testimony," Has Already Been Denied

Dr. Jouria, and Elite, previously sought to exclude the testimony of NetCE's expert Jim Pampinella. This Court denied their motion (DE 286), ruling:

> "Having carefully considered the parties' arguments for and against the exclusion at trial of Mr. Pampinella's expert opinion, the Court denies the Daubert motion. Mr. Pampinella is sufficiently qualified in terms of both education and experience to provide helpful, relevant testimony that will likely assist the jury in understanding damages in this case, which are 'beyond the understanding of the average lay person.'" *Id*. at 4.

Jouria now seeks to rehash arguments this court already denied. Therefore, this Court should deny Jouria's Sixth Motion.[5]

### G.   The Seventh Motion, Regarding "Jouria's Alleged Misrepresentation of Educational Background," Should be Denied

Jouria's misrepresentations regarding his educational background are relevant for three reasons. First, this case involves the jury's evaluation of the credibility of Jouria's claim that he did not merely copy the articles he had sold to NetCE largely word-for-word, and the jury should conduct that evaluation in the light of the fact that he lied to NetCE about his education. Second, Jouria's misrepresentations to NetCE about his educational background help explain why NetCE contracted with and paid Jouria. Third, the jury is entitled to receive all background evidence regarding Jouria to understand the case. Fed. R. Evid. 401, Advisory Committee Notes (found at p. 358 of 2018 Edition of Federal Civil Judicial Procedure and Rules (Thomson Reuters, 2018) ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").

Jouria provided NetCE a resume and cover letter which listed his medical school as Ross University School of Medicine, New Jersey. Ross University is a school located on the island of Dominica. Jouria lied about his educational history. If Jouria cannot explain this satisfactorily to

---

[5]   NetCE incorporates its arguments in its Opposition to the *Daubert* Motion to Exclude Expert Testimony (DE 245) as if set forth fully herein.

the jury, they may be inclined not to find him 100% credible. That alone justifies disclosure. Jouria's motion should be denied.

### H. The Eighth Motion, Regarding "Offering," is Moot

NetCE does not allege that an offer by Jouria to sell courses to Elite infringed NetCE's copyrights would, by itself, constitute the infringement. Jouria infringed NetCE's copyright when he offered to distribute copies of the Articles to Elite and sold those copies to Elite for the purposes of Elite publishing them. Jouria's Eighth Motion is moot.

### I. The Ninth Motion, Regarding "Presumption of Validity of Registration Rebuttable," Should be Denied

In the Ninth Motion, Jouria essentially asks this Court to enter summary judgment in his favor by way of a motion in limine. That is not procedurally proper. *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997) (motion in limine cannot be used as a de facto motion for summary judgment). Jouria states, "NetCE's copyright infringement claim cannot be sustained because there is no evidence for a reasonable jury to consider to find that NetCE owns any valid copyrights in the Works." That is not an argument to raise in a motion in limine, that is a summary judgment argument.[6] *Johnson v. Inland Steel Co.*, 140 F.R.D. 367, 371 (N.D. Ill. 1992) ("A motion in limine is designed to narrow evidentiary issues for trial, not resolve factual disputes or weigh evidence.")

Jouria is wrong that to prevail on its copyright claims, NetCE must produce a deposit copy of the five courses at issue. This statement is not supported by any case authority. And it is not

---

[6] Jouria first raised the issue of copyright validity by way of this motion.

12

the law. The Copyright Act requires that a complete copy of the work be deposited with the copyright application. *See* 17 U.S.C. § 408(b)(1); *see also* 37 C.F.R. § 202.20(b) (discussing definition of a complete copy). NetCE deposited complete works (the *exact* courses submitted were not produced for this reason—because they now reside with the copyright office) and received copyright certificates. DE 36-2.

NetCE has produced its copyright certificates. A certificate of copyright constitutes prima facie evidence of ownership and originality as a whole. 17 U.S.C. § 410(c). Once a certificate is produced the burden shifts to the defendant to attack the validity of the copyright. *See CMM Cable Rep. Inc. v. Ocean Coast Props. Inc.*, 97 F3d. 1504, 1513 (1st. Cir. 1996). Jouria bears that burden at trial. The motion falls well short of satisfying the burden. *Roberts v. Gordy*, 877 F.3d 1024, 1030 (11th Cir. 2017) ("*Roberts*") ("to invalidate a registration, (1) the application must contain inaccuracies, (2) the inaccuracies must be material, and (3) the applicant must have the required scienter of intentional or purposeful concealment").

Absent fraud, clerical errors are immaterial and inconsequential to the validity of the copyright and a party's infringement action. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1160 (1st Cir. 1994) ("It is well established that immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration"); *Hearst Corp. v. Stark*, 639 F.Supp.970 (N.D. Cal. 1986) ("Misstatements or errors in a registration application, unless by fraud, do not invalidate the copyright or render the registration certificate incapable of supporting an infringement action."); *Roberts* at 1030 ("failure of the first registration to correctly assert a published work …as opposed to an unpublished work that was still awaiting album publication" not sufficient to invalidate registrations); 2 Nimmer § 7.20, at 7–201 ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not

invalidate the copyright nor render the registration certificate incapable of supporting an infringement action.").

As it happens, in the deposition of Sarah Campbell, NetCE produced sufficient documentation regarding its copyrights and NetCE's 30(b)(6) witness testified extensively regarding how it obtained its copyrights:

- [Questioner]   And I will take this however we need to do it, but my question for each of the five courses – course materials in front of you is: Which version of each course did NetCE submit to the copyright office to obtain the registrations being asserted in this case?
- [Campbell]   In this case, the version submitted to the copyright office were the drafts received from Dr. Jouria.
- [Questioner]   Can you identify those for us in the exhibits before you? [Campbell] For each course?
- [Questioner]   Yes.
- [Campbell]   [Proceeds to identify each deposit copy]
     …
- [Questioner]  Did she submit these materials electronically, or did she mail them in?
- [Campbell]   The trademark office requires that we mail the specimens; so the specimens were mailed, but the filing was done electronically.
- [Questioner]   Who printed and mailed these specimens?
- [Campbell]   C.C. Chernev.

Deposition of Sarah Campbell, 53:05-59:22, attached as Exhibit B.

Jouria's Ninth Motion should be denied.

### J.     The Tenth Motion in Limine, Regarding "NetCE's Waiver of Motion for Terminating Sanctions," Should be Denied

NetCE has not sought and does not seek to reargue its motion for terminating sanctions (DE 149), except as permitted by the Court. This Court has previously ordered the parties to address proposed adverse jury instructions (DE 269) and has deferred ruling on "whether NetCE should be awarded attorneys' fees." *Id*. at 2.  NetCE abides by the Court's order, and therefore has not included the motion as a "pending motion" in the pretrial stipulation.

However, NetCE has preserved its objection to the Magistrate's Order and this Court's subsequent ruling (DE 269), and therefore preserved this issue for the charge conference when jury instructions will be decided upon by the Court. For this purpose, NetCE has included a proposed jury instruction regarding an adverse inference instruction in the proposed instructions that will be filed today per the Court's pretrial order..

Under the circumstances, the Tenth Motion should be denied.

### V.     CONCLUSION

For the foregoing reasons, the Consolidated Motion in Limine filed by Defendant Dr. Jassin Jouria should be denied.

Dated: May 18, 2018

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email: phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954)525-1000
Facsimile: (954)463-2030

*/s/ John P. Kern*
John P. Kern, Esq. (pro hac vice)
Email: john.kern@hklaw.com
Daniel P. Kappes, Esq. (pro hac vice)
Email: Daniel.kappes@hklaw.com
David Holtzman, Esq. (pro hac vice)
Email: david.holtzman@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415)743-6918
Facsimile: (415)743-6910
Attorneys for CE RESOURCE, INC.

                                                                                                              d/b/a CME RESOURCES and
NetCE

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                                                                             */s/ Philip E. Rothschild*
                                                                                                            Philip E. Rothschild

## **SERVICE LIST**

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
Email:  prodp@ix.netcom.com;
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**

Peter A. Chiabotti, Esq.
Kristen M. McKinney, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Email:  peter.chiabotti@akerman.com; kristen.mckinney@akerman.com
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
Minnie Kim, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Email:  markwilson@mvalaw.com; katecole@mvalaw.com; minniekim@mvalaw.com
(Attorneys for Elite Continuing Education, Inc.)
**[VIA ELECTRONIC MAIL SERVICE]**