**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 0:15-cv-61165-WPD**

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                 Plaintiff,

v.


DR. JASSIN JOURIA, and ELITE PROFESSIONAL EDUCATION, LLC.,

                 Defendants.

_____/

DR. JASSIN JOURIA,

                 Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

                 Counter-Defendant,

_____/

**JOINT PROPOSED JURY INSTRUCTIONS[1]**

---

[1] Unless noted within a particular instructions, these are submitted jointly by the parties.

**1.1 General Preliminary Instruction[2]**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:   It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

---

[2] Unless otherwise noted, these instructions are the Eleventh Circuit Pattern Instructions downloaded from the Pattern Jury Instruction builder application on the website for the Court of Appeals at http://www.ca11.uscourts.gov/pattern-jury-instructions.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit

it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

4

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

NETCE PROPOSAL This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, NetCE, claims that Defendant Dr. Jassin Jouria violated NetCE's copyrights in certain medical education courses.  Plaintiff further claims that Dr. Jouria breached several contracts between NetCE and Dr. Jouria.  Dr. Jouria has counterclaimed that he did not violate any copyrights nor breached a contract.

DR. JOURIA PROPOSAL  This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, CE RESOURCE, INC. ALSO KNOWN AS NETCE, is in the business of publishing continuing medical education courses for medical professionals to stay up to date with their licensing requirements.  NETCE claims the Defendant, DR. JASSIN JOURIA, breached seven contracts that relate to seven different fact-based medical research papers, known as "works," that he wrote for NETCE.  NETCE also

referred to DR. JOURIA'S medical research papers "Articles" or "manuscripts."[3] DR. JOURIA actually wrote ten works for NETCE on different medical subject matters. NETCE took DR. JOURIA'S works, and for three of them, it revised, edited and published them in the form of completed continuing medical education courses for consumers to purchase. The three works that DR. JOURIA wrote, and that NETCE revised, edited and published, are not at issue in this case - the remaining seven works are. In addition to NETCE's claim that DR. JOURIA breached seven contracts for the seven works at issue in this case, NETCE also contends that DR. JOURIA infringed seven copyright registrations that NETCE obtained from the United States Copyright Office for the seven works, when DR. JOURIA sold revised versions of them to Defendant ELITE PROFESSIONAL EDUCATION, LLC ALSO KNOWN AS ELITE. ELITE, like NETCE, is also a publisher of continuing medical education courses. ELITE was a defendant at one point in this case, but is no longer involved. DR. JOURIA denies the contract claims by NETCE because DR. JOURIA never gave the seven works that he wrote for NETCE to ELITE, but only revisions of five of them which he contends the contracts allow; and because NETCE expressly rejected publishing the works which allowed DR. JOURIA to offer them to ELITE or anyone else. DR. JOURIA also contends that he did not

---

[3] DE 300, Section V ¶16.

violate any of the seven copyright registrations at issue because he is the owner of the seven works because NETCE never approved them for publication, which was required before NETCE could receive ownership of them from DR. JOURIA under the contracts.  DR. JOURIA also contends that he cannot infringe the seven works regardless because they are fact-based medical research papers, and facts are never original and cannot be protected by copyright despite the existence of NETCE'S certificates of copyright registration.  Finally, DR. JOURIA contends that he cannot infringed the seven works because his use of them was a fair use, and because DR. JOURIA relied on NETCE'S conduct that he could use them, so that NETCE is estopped, or prevented, from alleging copyright infringement.


Burden of proof:

NetCE has the burden of proving its case by what the law calls a "preponderance of the evidence." That means NetCE must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring NetCE and the evidence favoring Dr. Jouria on opposite sides of balancing scales, NetCE needs to make the scales tip to its side. If NetCE fails to meet this burden, you must find in favor of Dr. Jouria.

7

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Dr. Jouria has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Dr. Jouria must prove for any affirmative defense. After considering all the evidence, if you decide that Dr. Jouria has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

==NETCE PROPOSAL== Defendant Dr. Jouria also has brought a claim for declaratory relief against NetCE called a counterclaim. On this claim, Dr. Jouria has the same burden of proof that NetCE has for its claims.

==DR. JOURIA PROPOSAL== DR. JOURIA has also brought claims for relief against NETCE called counterclaims asking for a declaration that he did not breach the seven contracts at issue, and that he did not infringe any valid copyright registration claimed by NETCE.  On these claims, NETCE still has the same burden of proof because DR. JOURIA'S counterclaims seek a

8

declaration that is the exact opposite of NETCE'S claims of breach of contract and copyright infringement.[4]

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate

_____

[4] *See Anand Vihar LLC v. The Evans Group, Inc.*, Case No. 8:16-cv-841-T-27TBM (M.D. Fla. Aug. 10, 2017); *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S ___, 134 S.Ct. 843 (2014)(patentee has burden of proof of infringement in defense of declaration of non-infringement counterclaim).

with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, Instagram, Reddit, Snapchat, and Twitter.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to

the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony. Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, NetCE will present its witnesses and ask them questions. After NetCE questions the witness, Dr. Jouria may ask the witness questions – this is called "cross-examining" the witness. Then Dr. Jouria will present his witnesses, and NetCE may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

## DR. JOURIA PROPOSAL 1.4 Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better

12

position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

## <mark>DR. JOURIA PROPOSAL</mark> 1.5 Interim Statements

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

## 1.6.1 COPYRIGHT - - Preliminary Instructions

NETCE PROPOSAL - Overview of Copyrights

(Read Before Opening at Court's Discretion)

This case involves a dispute relating to copyrights. To help you understand the evidence in this case, I will explain some of the legal concepts and terms you may hear during the trial.

Copyright law reflects a balance between society's interest in encouraging the creation of original works by rewarding authors on the one hand, and society's competing interest in the free flow of ideas and information on the other hand. The goal of copyright law attempts to strike a balance between protecting an author's particular expression, while also protecting the right of others to use the same concepts, ideas or facts.

Copyright protects original works of authorship that are expressed in a form that can be perceived, reproduced, or communicated.

Works of authorship can include literary works, musical works, dramatic works, pantomimes, choreographic works, pictorial works, graphic works, sculptural works, motion pictures, audiovisual works, sound recordings, or architectural works.

Copyright protection, however, does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery,

regardless of the form in which it is described, explained, illustrated, or embodied in the work.

To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. A work may be original even though it closely resembles other works so long as the similarity is not the result of copying. To illustrate, assume that two poets, each unaware of the other, compose identical poems. Both poems may be considered original.

The owner of a copyright has the exclusive right to reproduce, or copy, distribute copies of, and prepare derivative works based on the copyrighted work for a specific period of time.

**ANNOTATIONS AND COMMENTS**

17 U.S.C. § § 101, 102, and 106; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-346, 111 S. Ct. 1282, 1287-1288, 113 L. Ed. 358 (1991); *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1248 (11th Cir. 1999).

DR. JOURIA PROPOSAL Overview of Copyrights

(Read Before Opening at Court's Discretion)

This case involves a dispute relating to copyrights. To help you understand the evidence in this case, I will explain some of the legal concepts and terms you may hear during the trial.

Copyright law reflects a balance between society's interest in encouraging the creation of original works by rewarding authors on the one hand, and society's competing interest in the free flow of ideas and information on the other hand. The goal of copyright law attempts to strike a balance between protecting an author's particular expression, while also protecting the right of others to use the same concepts, ideas or facts.

Copyright protects original works of authorship that are expressed in a form that can be perceived, reproduced, or communicated.

Works of authorship can include literary works, musical works, dramatic works, pantomimes, choreographic works, pictorial works, graphic works, sculptural works, motion pictures, audiovisual works, sound recordings, or architectural works.

Copyright protection, however, does not extend to any fact,[5] idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in the work.

To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was

---

[5] *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 344 (1991).

independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. A work may be original even though it closely resembles other works so long as the similarity is not the result of copying. To illustrate, assume that two poets, each unaware of the other, compose identical poems. Both poems may be considered original. Regardless of this, "[n]o one may claim originality as to facts. (citation omitted). This is because facts do not owe their origin to an act of authorship...the first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence."[6]

The owner of a copyright has the exclusive right to sell[7] copies of the copyrighted work for a specific period of time.

_____

[6] *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. at 347.
[7] DE 300 Section VI at 12, ¶3; *see* 17 U.S.C. §106(3).  NETCE identified no other exclusive rights under 17 U.S.C. §106 in the PTS.

# COPYRIGHT

## Preliminary Instructions

**1.6.2:** Overview of Copyrights

NETCE PROPOSAL In this case, NetCE claims ownership of a copyright in several medical education courses titled Gastroesophageal Reflux Disease, Cancer and Chemotherapy, Traumatic Brain Injuries, Depression v. Dementia in the Elderly, and Non-antibiotic Antimicrobial Pharmacology and claims Dr. Jouria has infringed the asserted copyright by preparing and distributing derivative works based on the work without NetCE's authorization. Dr. Jouria denies infringing the asserted copyrights, and claims that NetCE does not own valid copyrights, and asserts other defenses which I will describe later.

DR. JOURIA PROPOSAL (Read Before Opening at Court's Discretion)

In this case, NETCE claims ownership of a copyright in seven fact-based medical research papers authored by DR. JOURIA titled:  1) 852 Gastroesophageal Reflux Disease; 2)  9538 Nonantibotic Antimicrobial Pharmacology:  A Review; 3) 875 The Lymphatic and Immune Systems:  A Review; 4) 511 Clinical Cardiovascular Pharmacology; 5) 025 Traumatic Brain Injury; 6) 3528 Cancer and Chemotherapy; and, 7) 3679 Depression and Dementia in the Elderly, and claims DR. JOURIA has infringed the asserted copyrights by selling the papers without authorization from NETCE. DR.

JOURIA denies infringing the asserted copyrights, claims that NETCE does not own valid copyrights, that he has not sold the works, and asserts other defenses which I will describe later.

**2.1 Stipulations**

Sometimes the parties agree that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**2.2 Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Deposition testimony may be presented to you is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

DR. JOURIA PROPOSAL **2.4 Interim Statements**

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Soon, MR. KERN, an attorney for NETCE, is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the lawyers – is MR. KERN'S view of the evidence or of what he anticipates the evidence will be, but isn't itself evidence.  When MR. KERN is done, MR. ROSS, the attorney for DR. JOURIA, will give you his opening statement.

**2.5 Judicial Notice**

<mark>DR. JOURIA PROPOSAL</mark> The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted the fact that lists or tables taken from public documents or other common sources are not protectible by copyright[8] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

---

[8] DE 302; 302-1

**NETCE PROPOSAL** **2.6 Use of Interrogatories**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**DR. JOURIA PROPOSAL** **2.6 Use of Interrogatories and Document Production Responses**

[You'll now hear/You've heard] answers that NETCE and/or DR. JOURIA gave in response to written questions and document production responses the other side submitted. The questions are called "interrogatories" and the document production responses are just that, responses that NETCE gave to DR. JOURIA before this trial regarding document production requests.

You must consider NETCE'S or DR. JOURIA'S answers to the interrogatories and document production responses  as though NETCE or DR. JOURIA gave the answers on the witness stand.

**3.1 Introduction**

**(After closing arguments)**

<u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**3.3 Consideration of Direct and Circumstantial Evidence;
Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### 3.6.2 Expert Witness – When Expert Fees Represent a Significant Portion of the Witness's Income

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

**NETCE'S PROPOSAL - DR. JOURIA OBJECTION, n.4,** *supra*

**3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence**

In this case it is the responsibility of the party bringing any claim to prove every essential part of the claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the party's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a party's claims by a preponderance of the evidence, you should find for the defendant or counter-defendant as to that claim.

30

**DR. JOURIA PROPOSAL**

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the NETCE to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that NETCE'S claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against NETCE. When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of NETCE'S claims by a preponderance of the evidence, you should find for DR. JOURIA as to that claim.

### 3.7.2 Responsibility for Proof – Affirmative Defense
####     Preponderance of the Evidence

In this case, Dr. Jouria asserts the affirmative defenses of fair use and estoppel. Even if the NetCE proves its copyright claims by a preponderance of the evidence, Dr. Jouria can prevail in this case as to those claims if he proves an affirmative defense by a preponderance of the evidence.

As  more than one affirmative defense is involved, you should consider each one separately.

I caution you that Dr. Jouria does not have to disprove NetCE's claims, but if Dr. Jouria raises an affirmative defense, the only way he can prevail on that specific defense is if he proves that defense by a preponderance of the evidence.

**300. Breach of Contract**[9]

Introduction

NETCE claims that it and DR. JOURIA entered into seven contracts for DR. JOURIA to author medical research papers on seven different medical subject matters. NETCE claims that DR. JOURIA breached the contracts by selling[10] those research papers to ELITE. NETCE also claims that DR. JOURIA's breach of the contracts caused harm to NETCE for which DR. JOURIA should pay. DR. JOURIA denies that he sold the research papers to ELITE, rather DR. JOURIA claims that he rewrote his research papers and sold the revised papers to ELITE.  DR. JOURIA contends that he was only prohibited from selling to ELITE the very same research papers that he wrote for NETCE, and thus he did not breach the contracts.  DR. JOURIA also contends that he did not breach the contracts because NETCE expressly rejected his papers by refusing to approve them for publication or publish them as the contracts required NETCE to do if it wanted to own them.

_____

[9] Adapted from Judicial Council of California Civil Jury Instructions (Nov. 2017).
[10] DE 300 at 12.

**303. Breach of Contract**

Essential Factual Elements

To recover damages from DR. JOURIA for breach of contract, NETCE must prove all of the following:

1. That NETCE and DR. JOURIA entered into a contract which is not in dispute;

2. That NETCE did all, or substantially all, of the significant things that the contract required it to do;

3. That DR. JOURIA did something that the contract prohibited him from doing;

4. That NETCE was harmed; and,

5. That DR. JOURIA's breach of contract was a substantial factor in causing NETCE's harm.

**DR. JOURIA PROPOSAL**

**NETCE objects** to this instruction as the Court has already determined what the disputed words in the contract mean in its Omnibus Order on Summary Judgment (DE 237)("Order").  NETCE proposes that the jury be instructed that "within the meaning ascribed by the FWAs, the Articles were 'approved for publication.'"  See p. 6 of Order.

314. Interpretation

Disputed Words

NETCE and DR. JOURIA dispute the meaning of the following words in their contract:  ARTICLES, APPROVED FOR PUBLICATION and EXPRESSLY REJECTS. NETCE claims that the word ARTICLES means the medical research papers DR. JOURIA wrote for it and any other medical research papers that are similar to them;  that the words APPROVED FOR PUBLICATION mean ARTICLES for which payment has been made by NETCE to DR. JOURIA; and that EXPRESSLY REJECTS means to reject in writing.  DR. JOURIA claims that the word ARTICLES means only the medical research papers he wrote for NETCE and not revised or rewritten medical research papers; that APPROVED FOR PUBLICATION means the actual act of NETCE approving for publication each of the medical research papers that DR. JOURIA wrote for it; and that EXPRESSLY REJECTS means any act by NETCE that establishes that it would not publish any of DR. JOURIA'S medical

research papers. The burden is on NETCE to prove that its interpretation is correct because NETCE is the party that drafted the language in the contracts.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contracts were created. You may consider the usual and ordinary meaning of the language used in the contracts as well as the circumstances surrounding the making of the contracts. The following instructions may also help you interpret the words of the contracts:

**DR. JOURIA PROPOSAL**

<mark>**NETCE objects**</mark> to this instruction as the Court has already determined what the disputed words in the contract mean in its Omnibus Order on Summary Judgment (DE 237)("Order").  NETCE proposes that the jury be instructed that "within the meaning ascribed by the FWAs, the Articles were 'approved for publication.'"  See p. 6 of Order.

**315. Interpretation**

Meaning of Ordinary Words

You should assume that the parties intended the words in their contracts to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

**DR. JOURIA PROPOSAL**

**NETCE objects** to this instruction as the Court has already determined what the disputed words in the contract mean in its Omnibus Order on Summary Judgment (DE 237)("Order").  NETCE proposes that the jury be instructed that "within the meaning ascribed by the FWAs, the Articles were 'approved for publication.'"  See p. 6 of Order.

**317. Interpretation**

Construction of Contract as a Whole

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**DR. JOURIA PROPOSAL**

**NETCE objects** to this instruction as the Court has already determined what the disputed words in the contract mean in its Omnibus Order on Summary Judgment (DE 237)("Order").  NETCE proposes that the jury be instructed that "within the meaning ascribed by the FWAs, the Articles were 'approved for publication.'"  See p. 6 of Order.

**318. Interpretation**

Construction by Conduct

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

**DR. JOURIA PROPOSAL**

==NETCE objects== to this instruction as the Court has already determined what the disputed words in the contract mean in its Omnibus Order on Summary Judgment (DE 237)("Order").  NETCE proposes that the jury be instructed that "within the meaning ascribed by the FWAs, the Articles were 'approved for publication.'"  See p. 6 of Order.

**320. Interpretation**

Construction Against Drafter

In determining the meaning of the words of the contract, you must first consider all of the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contracts against NETCE, the party that drafted the words in dispute.

**350. Introduction to Contract Damages**

If you decide that NETCE has proved its claim against DR. JOURIA for breach of contract, you also must decide how much money will reasonably compensate NETCE for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put NETCE in as good a position as it would have been if DR. JOURIA had performed as promised. To recover damages for any harm, NETCE must prove that when the contracts were made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contracts. NETCE also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages. NETCE'S damages cannot, however, exceed what it would have received if the contract had been fully performed on both sides.[11]

---

[11] California Civil Code § 3358.

**358. Mitigation of Damages**

If DR. JOURIA breached the contracts and the breach caused harm, NETCE is not entitled to recover damages for harm that DR. JOURIA proves NETCE could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of NETCE's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship. If NETCE made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

**360. Nominal Damages**

If you decide that DR. JOURIA breached the contracts but also that NETCE was not harmed by the breach, you may still award it nominal damages such as one dollar.

**9.1: Copyright – Validity – General Charge**

NetCE has also brought claims against Dr. Jouria for copyright infringement.  To establish infringement, NetCE must prove two things:

First, you must find that NetCE owned a valid copyright.

And second, you must find that Dr. Jouria copied the work's original components.

I'll begin with instructions on validity and then explain ownership and infringement. After that I'll explain defenses and remedies.

**NETCE PROPOSAL** 9.2: Copyright – Validity – Originality

To qualify for copyright protection, the claimed work must be original to the author. "Original" means only that the author independently created the work – the author didn't copy it from other works – and it possesses at least a minimal degree of creativity.

**ANNOTATIONS AND COMMENTS**

"Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity… To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble, or obvious' it might be." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991) (internal citations omitted).

**DR. JOURIA PROPOSAL** 9.2: Copyright – Validity – Originality

To qualify for copyright protection, the claimed work must be original to the author. "Original" means only that the author independently created the work – the author didn't copy it from other works – and it possesses at least a minimal degree of creativity. However, facts are never original."[12]

DR. JOURIA challenges the validity of NETCE'S copyrights in the claimed works on the ground that the works only contain text, and that text is not original because it is based on previously written, researched and known medical facts. You may only find that NETCE'S copyrights are valid if you

_____

[12]*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. at 347.

45

find that NETCE has shown by a preponderance of the evidence that the works' text is original to its author or that there is original text that possesses at least a minimum degree of creativity because they are fact-based medical research papers.

**NETCE PROPOSAL** **9.4: Copyright – Validity – Effect of Registration**

For original works created after 1977, the work is automatically copyrighted at the moment of creation – even if the work is never registered with the United States Copyright Office. But generally, no suit for copyright infringement can be brought if the copyright hasn't been registered.

A certificate of registration made within five years after the first publication of the claimed work is evidence of the copyright's validity and the facts stated in the certificate. Specifically, the copyright registration creates a rebuttable presumption of validity. This means that the presumption shifts NetCE's burden of proving validity to Dr. Jouria to prove that the claimed copyright is invalid.

## ANNOTATIONS AND COMMENTS

"[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights." 17 U.S.C. § 411(a); *see also Montgomery v. Noga*, 1168 F.3d 1281, 1288 (11th Cir. 1999) (for works created after 1977, copyright automatically inheres in original works of authorship, but "[i]n order to bring an action for copyright infringement… the author must first register the copyright.") (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 & n.4 (11th Cir. 1990)); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).

This Special Interrogatory includes a request that the jury identify the date of the registration. It may be used in conjunction with a Special Interrogatory requesting the jury to identify the date(s) of infringement. Such requests may not be required if the information is not required in the case to analyze the application of statutory remedies or other matters. *See* 17 U.S.C. § 412 (registration is a prerequisite to certain remedies for infringement).

If Defendant is challenging the validity of Plaintiff's copyright registration on the basis that there has been a fraud on the Copyright Office, the jury should be instructed regarding that defense, and the Court may wish to add the following at the end of the instruction above: "In this case, Defendant has raised the affirmative defense of Fraud on the Copyright Office. I will separately instruct you on the law pertaining to that defense."

If Defendant is challenging Plaintiff's copyright on the ground that the claimed work is not original, this instruction should also include the following:

Defendant challenges the validity of Plaintiff's copyright in the claimed work on the ground that the work is not original. If you find that Plaintiff has a valid copyright registration made before or within five years after first publication of the claimed work, you may only find that Plaintiff's copyright is invalid if you find that Defendant has shown by a preponderance of the evidence that the work was not original to its author or that the work does not possess at least a minimum degree of creativity.

If the rebuttable presumption of validity applies and Defendant challenges Plaintiff's copyright on the ground that the claimed work is not original, additional questions may be included in the Special Interrogatory above as follows:

[3. Do you find that Defendant has shown by a preponderance of the evidence that the work was <u>not</u> original to its author?

Answer Yes or No        _____

4. Do you find that Defendant has shown by a preponderance of the evidence that the claimed work <u>does not</u> possess at least a minimum degree of creativity?

Answer Yes or No        _____

If the answer to either of the foregoing questions is "Yes," do not continue with your analysis of Plaintiff's claim for infringement.]

48

**DR. JOURIA PROPOSAL** 9.4; 9.7: Copyright – Validity – Effect of Registration

Copyright automatically exists in a work the moment it is created. The owner may register the copyright by depositing a copy of the copyrighted work in the Library of Congress's Copyright Office. After determining that the material is copyrightable and that legal and formal requirements have been satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner. There's no administrative investigation on the originality or uniqueness of the work or a determination of the claim's validity. A certificate of copyright registration is refused only if the work falls outside the broad category of matter eligible for copyright registration.

So while the existence of a copyright registration may create some presumption that a work is indeed entitled to copyright protection, the fact that a copyright registration has been issued doesn't conclusively establish whether the work is entitled to copyright protection.

A certificate of registration made within five years after the first publication of the claimed work is evidence of the copyright's validity and the facts stated in the certificate. Specifically, the copyright registration creates a rebuttable presumption of validity.

However, in this case, NETCE has not made of evidence any of the deposited copies of the copyright works in this case.  As a result, NETCE continues to have the burden of proving the claimed copyrights are valid.[13]

_____

[13]*Tavory v. NTP, Inc.*, 495 F. Supp. 2d 531, 536 (E.D. Va. 2007)(The deposit requirement "serves an evidentiary function.  The copies that are submitted in connection with an application for registration then become part of a record by which claims of infringement are tested."); *Lanard Toys Ltd. v. Novelty, Inc.*, No. 05-cv-8406-CAS, 2007 WL 2439505, at *-7 (C.D. Cal. 2006)(certificates of registration, without the deposited copy, even when combined with the declaration of plaintiff, insufficient to establish ownership); *Alaska Stock, LLC v. Pearson Education, Inc.*, 975 F. Supp. 2d 1027 (D. Alaska 2013)(same); *Abro Industries, Inc. v. 1 New Trade, Inc.*, Cause No. 3:14-CV-1984-TLS , at *9-11 (N.D Ind. Oct. 30, 2017)(burden on copyright claimant to establish what was deposited with Copyright Office).  *See also E. Mishan & Sons, Inc. v. Marycana, Inc*, 662 F. Supp. 1339 (an infringement analysis requires a comparison of work deposited with Copyright Office).

DR. JOURIA OBJECTIONS - AUTHENTICITY, FOUNDATION, INADMISSIBLITY, IRRELEVANCE, UNDULY PREJUDICIAL - THE REGISTRATION CERTIFICATES CLAIM "TEXT" AS THE AUTHORSHIP, NOT "DERIVATIVE" OR "COLLECTIVE" AUTHORSHIP.   SEE DE 36-1; FED.R.EVID. 1002.  NETCE HAS NOT ASSERTED AS AN ISSUE TO BE TRIED IN THE PTS WHETHER ANY OF THE WORKS ARE "DERIVATIVE" OR "COLLECTIVE" WORKS. NETCE HAS NOT ALLEGED IN THE OPERATIVE PLEADING, DE 36, OWNERSHIP IN "COLLECTIVE" WORKS. *SEE ALSO* 17 U.S.C. §101.

## 9.5: Copyright – Validity – Registration of a Derivative or Collective Work

To advance a copyright-infringement action, the work that NetCE claims has been infringed must be registered (or preregistered). But a doctrine called "effective registration" allows a plaintiff to proceed with an infringement action without registration if a later-created derivative or collective work has been registered and the registration certificate specifically refers to the work that NetCE has made the subject of the infringement action. Put another way, the earlier work is deemed effectively registered by its identification in the later registration.

Dr. Jouria asserts that NetCE doesn't have a registration for the claimed work. If true, this would usually defeat a copyright-infringement action. But NetCE can proceed with this infringement action if you find that it has effectively registered the work.

To establish that NetCE effectively registered the work that is the subject of this action, you must review the "Preexisting Material" section of the

registration certificate of the derivative or collective work (what you can think of as the later-created work). For the effective-registration doctrine to apply, that section must reference or identify the work that is the subject of this infringement action. If you review the registration certificate and don't find any reference to or identification of the claimed work, NetCE can't advance this infringement action.

## ANNOTATIONS AND COMMENTS

This jury instruction applies when the Plaintiff does not have a registration for the work that is the subject of the copyright infringement claim (an earlier created work, or preexisting work), but has a registration for a derivative or collective work (a later created work) that references or identifies the preexisting work. The effective registration doctrine permits a plaintiff to advance an infringement suit if the Plaintiff owns both the preexisting work and a later created work and the certificate of registration for the later created work identifies the preexisting work. *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229-31 (11th Cir. 2008).

A situation that is effectively the reverse of the "effective registration" doctrine may also occur; that is, where the alleged infringement is of a later, unregistered version of an earlier-registered work. The earlier registration may be effective to support an infringement action as to those portions of the earlier work incorporated into the later, unregistered version at issue in the suit. *See Montgomery v. Noga*, 168 F.3d 1282, 1292-93 (11th Cir. 1999).

**NETCE PROPOSAL (SEE DR. JOURIA PROPOSAL 9.4;9.7 ABOVE)**

**9.7: Copyright – Validity – How Obtained**
   **(For Use Where No Presumption of Validity Applies)**

Copyright automatically exists in a work the moment it is created. The owner may register the copyright by depositing a copy of the copyrighted work in the Library of Congress's Copyright Office. After determining that the material is copyrightable and that legal and formal requirements have been satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner. There's no administrative investigation on the originality or uniqueness of the work or a determination of the claim's validity. A certificate of copyright registration is refused only if the work falls outside the broad category of matter eligible for copyright registration.

So while the existence of a copyright registration may create some presumption that a work is indeed entitled to copyright protection, the fact that a copyright registration has been issued doesn't conclusively establish whether the work is entitled to copyright protection.

In this case, NetCE's copyright isn't entitled to a presumption of validity. It has the burden of establishing by a preponderance of the evidence that it owns a valid copyright.

## ANNOTATIONS AND COMMENTS

This instruction should be used for works as to which no presumption of validity applies. 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."); *see also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 n.4 (11th Cir. 1990).

An author has a valid copyright in an original work at the moment it is created and fixed in a tangible medium of expression. *See* 17 U.S.C. § 102(a); *McCaskill v. Ray*, 279 Fed. Appx 913, 916 (11th Cir. 2008) (citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 823 n.1 (11th Cir. 1982)). "Copyright registration is not a prerequisite to copyright protection. Moreover, registration of a copyright 'is not obligatory, although registration is a prerequisite to an infringement suit in certain circumstances and also is a prerequisite to certain infringement remedies.'" *Id*. (internal citation omitted); *see also* 17 U.S.C. §§ 408, 411, 412.

A certificate of copyright registration is refused only if it falls outside the broad category of matter eligible for copyright registration. *See* 17 U.S.C. § 410(a).

DR. JOURIA OBJECTIONS - AUTHENTICITY, FOUNDATION, INADMISSIBLITY, IRRELEVANCE, UNDULY PREJUDICIAL - THE REGISTRATION CERTIFICATES CLAIM "TEXT" AS THE AUTHORSHIP, NOT "COMPILATION" OR "COLLECTIVE" AUTHORSHIP.    SEE DE 36-1; FED.R.EVID. 1002.  NETCE HAS NOT ASSERTED AS AN ISSUE TO BE TRIED IN THE PTS WHETHER ANY OF THE WORKS ARE "COMPILATION" OR "COLLECTIVE" WORKS.   DE 300.  NETCE HAS NOT ALLEGED IN THE OPERATIVE PLEADING, DE 36, OWNERSHIP IN "COMPILATION" OR "COLLECTIVE" WORKS.  *SEE ALSO* 17 U.S.C. §101.

## 9.9: Copyright – Validity – Compilations and Collective Works

NetCE claims in the alternative that its work is a compilation and that its selection, arrangement, and coordination of preexisting materials, rather than the materials themselves, are protectable.

The selection, arrangement, and coordination of preexisting materials or data in a compilation or collective work does not possess the required degree of creativity for copyright protection if that arrangement or coordination of pre-existing materials is typical, commonplace, or expected as a matter of course.

For example, the arrangement of last names in a telephone directory in alphabetical order isn't creative. Similarly, the arrangement of a business telephone directory in an alphabetized list of business types, with individual businesses listed in alphabetical order under the applicable headings, isn't original.

## ANNOTATIONS AND COMMENTS

As used in copyright law, "original" means that a work was independently created by its author and possesses at least some minimal degree of creativity. *See Utopia Provider Systems, Inc. v. Pro-Med Clinical Systems, LLC*, 596 F.3d 1313, 1319-20 (11th Cir. 2010) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed 2d 358 (1991)).

The examples of insufficient creativity in the selection, arrangement, and coordination of preexisting materials or data comprising a compilation that are provided in this instruction come from *Bellsouth Adver. & Publ'g. Corp. v. Donnelly Info. Publ'g., Inc.*, 999 F.2d 1436, 1440 (11th Cir. 1993). *See Bellsouth Adver. & Publ'g*, 999 F.2d at 1440 ("[T]here is nothing remotely creative about arranging names alphabetically in a white pages directory. It is an old-age practice, firmly rooted in tradition and so commonplace that is has come to be expected as a matter of course."); *see also Id*. at 1442 (stating that arrangement of business telephone directory in an alphabetized list of business types, with individual businesses listed in alphabetical order under the applicable headings, "is not only unoriginal, it is practically inevitable").

## <mark>NETCE PROPOSAL</mark> 9.10 Copyright – Validity – Ideas and Expression

Copyright protection doesn't extend to all the elements of a copyrighted work. Elements covered by the copyright protection are called "protected matter," and non-covered elements are "unprotected matter." Because unprotected matter isn't entitled to copyright protection, another author may copy it.

There are various types of unprotected matter. They include:

• a portion of the work that isn't original to the author;

• a portion of the work that's in the public domain; and

• an idea, concept, principle, discovery, fact, actual event, process, or method contained in a work.

A work that's "in the public domain" is one that does not have copyright protection, so anyone may use all or part of it in another work without charge.

In copyright law, it's important to distinguish between the ideas in a work and the author's expression of the ideas. The ideas in a work are unprotected matter. But an idea must be expressed in some way, and the expression or means of expression of an idea is protected matter.

For example, copyright law doesn't protect the idea of a determined captain hunting a giant whale. But copyright law does protect the particular expression of this idea in the book *Moby-Dick*.

Put another way, the author of a work has no exclusive right to the underlying ideas, concepts, principles, discoveries, facts, actual events, processes, or methods contained in a work. But the author's copyright does extend to the means by which those are expressed, described, depicted, implemented, or otherwise communicated in the work.

If you find that NetCE is seeking copyright protection in:

- a portion of a work that isn't original to the author;

- a portion of the work that's in the public domain; or

- an idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work, you should exclude that material from the protected matter NetCE's copyright-infringement claim can be based on.

## ANNOTATIONS AND COMMENTS

No author may copyright facts or ideas. The copyright is limited to those aspects of the work that display the stamp of the author's originality. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 349-50, 111 S. Ct. 1282, 1290, 113 L. Ed. 2d 358 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547-548, 105 S. Ct. 2218, 2223-24, 85 L. Ed. 2d 588 (1985)).

The example of Herman Melville's *Moby-Dick* is for the purpose of illustration only. That novel is in the public domain. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1143 (11th Cir. 2007) (utilizing *Moby-Dick* in order to illustrate idea-expression dichotomy).

In addition to the statute and precedents discussed above, this charge is drawn from the American Bar Association, Section of Litigation's MODEL JURY INSTRUCTIONS, COPYRIGHT, TRADEMARK, AND TRADE DRESS LITIGATION. *See* MODEL JURY INSTRUCTIONS, COPYRIGHT, TRADEMARK AND TRADE

DRESS LITIGATION §§ 1.4.2, 1.4.3, 1.4.4 (Todd S. Holbrook and Alan Nathan Harris eds., American Bar Association Section of Litigation, 2008).

==DR. JOURIA PROPOSAL== **9.10 Copyright – Validity – Ideas and Expression**

Copyright protection doesn't extend to all the elements of a copyrighted work. Elements covered by the copyright protection are called "protected matter," and non-covered elements are "unprotected matter." Because unprotected matter isn't entitled to copyright protection, another author may copy it.

There are various types of unprotected matter. They include:

- a portion of the work that isn't original to the author;

- a portion of the work that's in the public domain; and

- an idea, concept, principle, discovery, fact, lists or tables taken from public documents or other common sources,[14] actual event, process, or method contained in a work.

A work that's "in the public domain" is one that does not have copyright protection, so anyone may use all or part of it in another work without charge.

In copyright law, it's important to distinguish between the ideas in a work and the author's expression of the ideas. The ideas in a work are unprotected matter. But an idea must be expressed in some way, and the expression or means of expression of an idea is protected matter.

---

[14] *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989) cited with approval in *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 89 F. 3d at 1559; U.S. Copyright Office, Circular R-32 (DE 302).

For example, copyright law doesn't protect the idea of a determined captain hunting a giant whale. But copyright law does protect the particular expression of this idea in the book *Moby-Dick*.

Put another way, the author of a work has no exclusive right to the underlying ideas, concepts, principles, discoveries, facts, lists or tables taken from public documents or other common sources,[15] actual events, processes, or methods contained in a work. But the author's copyright does extend to the means by which those are expressed, described, depicted, implemented, or otherwise communicated in the work.

Copyright law states that facts are not original and therefore may not be copyrighted.[16]

If you find that NETCE is seeking copyright protection in:

• a portion of a work that isn't original to the author;

• a portion of the work that's in the public domain; or

• an idea, concept, principle, discovery, fact, list or table taken from public documents or other common sources, actual event, process, or method expressed or described in a work, you should exclude that material from the protected matter NETCE'S copyright-infringement claim can be based on.

---

[15] DE 302.

[16] *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. at 350.

<mark>DR. JOURIA PROPOSAL</mark> **9.11 Copyright – Validity – The Merger Doctrine**

Copyright law provides that an author can usually copy unprotected matter but not copy the manner another author selected for expressing a particular matter. But there's an exception to this prohibition if there's only one way, or only a few ways, of expressing the ideas or other unprotected matter in a work. In such cases, an author may copy the expression in the work to the extent necessary to express the unprotected matter. DR. JOURIA claims that this exception applies in this case.

This exception is called the "merger doctrine" because when there are only a few ways of expressing unprotected matter, the expression is said to have "merged" with the unprotected matter. [17] The merger doctrine can apply to any unprotected matter such as ideas, facts, or events. The doctrine can apply to literal text, such as when facts can be effectively expressed only by using specific words or a limited range of words.

---

[17] *Buc International Corp. v. International Yacht Council* Limited, 489 F. 3d 1129, 1143 (11th Cir. 2007).

==NETCE PROPOSAL - DR. JOURIA OBJECTIONS THE NETCE PROPOSAL DOES NOT PROPERLY TITLE THE WORKS, AND OMITS TWO WORKS==

## 9.12 Copyright – Ownership – General Charge

Now that I've explained validity, we'll move to the issue of ownership.

NetCE must prove ownership of a copyright in Gastroesophageal Reflux Disease, Cancer and Chemotherapy, Traumatic Brain Injuries, Depression v. Dementia in the Elderly, and Non-antibiotic Antimicrobial Pharmacology by a preponderance of the evidence. NetCE can prove ownership by evidence showing that it:

- is an author (or creator) of the work [and didn't transfer to another the exclusive rights being asserted], or

- acquired legal ownership by transfer of the copyright in the exclusive right[s] Dr. Jouria allegedly infringed.

## ANNOTATIONS AND COMMENTS

The legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement of that particular right committed while he or she is the owner of it. 17 U.S.C. § 501(b).

17 U.S.C. § 201(a) (Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work.). "Authorship" as set forth in the charge above can include individual author, joint author and the employer as the "author" under the "work-for-hire" doctrine. Individual charges addressing each of these situations is set forth in other jury charges herein.

The term "creator" may be used in place of "author" to avoid confusion over the term author when dealing with non-literary works.

17 U.S.C. § 101 definition of copyright owner reflects fact that exclusive licensees are treated as copyright owners for purpose of protection and remedy pursuant to 17 U.S.C. § 201(d)(2). 17 U.S.C. § 101 ("Copyright owner," with

respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.). 17 U.S.C. § 201(d) provides:

> (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

> (2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d).

Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.

17 U.S.C. § 202. Section 204 addresses transfers of copyright ownership:

(a) A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

(b) A certificate of acknowledgement is not required for the validity of a transfer, but is prima facie evidence of the execution of the transfer if - -

> (1) in the case of a transfer executed in the United States, the certificate is issued by a person authorized to administer oaths within the United States; or

> (2) in the case of a transfer executed in a foreign country, the certificate is issued by a diplomatic or consular officer of the United States, or by a person authorized to

administer oaths whose authority is proved by a certificate
of such an officer.

17 U.S.C. § 204(a).

## DR. JOURIA PROPOSAL

### 9.12 Copyright – Ownership – General Charge

Now that I've explained validity, we'll move to the issue of ownership.

NETCE must prove ownership of a copyright in the asserted works by a preponderance of the evidence. NETCE can prove ownership by evidence showing that it:

- is an author (or creator) of the work, or

- acquired legal ownership by transfer of the copyright in the exclusive rights DR. JOURIA allegedly infringed.

**NETCE PROPOSAL** 9.15 Copyright – Ownership – Work Made for Hire

NetCE claims ownership of Gastroesophageal Reflux Disease, Cancer and Chemotherapy, Traumatic Brain Injuries, Depression v. Dementia in the Elderly, and Non-antibiotic Antimicrobial Pharmacology (the "Five Courses") based on the creation of the works for it as works made for hire, under the terms of five (5) contracts between NetCE and Dr. Jouria known as the "Freelance Writer Agreements" (FWAs). If the work is a work made for hire, NetCE is considered the author and the copyright's owner. To prove ownership of a work for hire, NetCE must prove one of the following:

First, that Dr. Jouria  created the Five Courses within the scope of the FWAs, and that  NetCE didn't sign a written document giving the copyright to the Dr. Jouria.

Or second, that NetCE specifically ordered or commissioned the Five Courses for use as an instructional text, and NetCE and Dr. Jouria  signed a written document confirming that the work was to be considered a work made for hire.

**ANNOTATIONS AND COMMENTS**

17 U.S.C. §  101; 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.").

It is suggested that the instruction above be modified to include only those categories of specially ordered or commissioned works at issue in the case to avoid confusion.

A "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes.

An "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities. *M.G.B. Homes v. Ameron Homes*, 903 F.2d 1486, 1492 (11th Cir. 1990). *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737, 109 S. Ct. 2166, 2170, 104 L. Ed 2d, 811 (1989) (discussing factors for determining whether person is an "employee" for purposes of work-made-for-hire doctrine).

**DR. JOURIA PROPOSAL** **9.15 Copyright – Ownership – Work Made for Hire**

NETCE claims ownership of the asserted works based on the creation of the works for it as a work made for hire. If the work is a work made for hire, NETCE is considered the author, but not the copyright owner if there is a written agreement to the contrary.[18] To prove ownership of a work for hire, NETCE must prove that it specifically ordered or commissioned the asserted works, that and the person who created the works, DR. JOURIA, signed a written document confirming that the works were to be considered works made for hire, and that there is no written agreement regarding ownership to the contrary.   DR. JOURIA claims that while the asserted works were works made for hire, there is a written agreement that provides that NETCE would not be the owner of the works unless NETCE approved them for publication.   DR. JOURIA claims because the asserted works were not approved for publication by NETCE, he is the owner of the copyrights.

---

[18] *Community For Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); 17 U.S.C.§201(b).

**NETCE PROPOSAL** 9.17 Copyright – Infringement – Introduction to Elements

If you're persuaded that NetCE owns a valid copyright, you can consider whether Dr. Jouria improperly copied NetCE's copyrighted material. It is the burden of NetCE to show that Dr. Jouria infringed on its valid copyright. This is called "infringement" of a copyright. NetCE must show that Dr. Jouria infringed on its valid copyright.

In this case, NetCE claims that Dr. Jouria infringed its copyright in the Five Courses by copying parts of each course and including the copied material in courses published by and Elite Professional Education, LLC ("Elite"), entitled Gastroesophageal Reflux Disease, Cancer and Chemotherapy, Traumatic Brain Injuries, Depression v. Dementia in the Elderly, and Non-antibiotic Antimicrobial Pharmacology (the "Five Courses"). To succeed on this claim, NetCE must prove that Dr. Jouria copied the parts of NetCE's copyrighted work that the law protects.

There are two ways in which NetCE can prove a claim of copyright infringement.

First, NetCE can show direct evidence that Dr. Jouria actually copied the copyrighted material. For example, NetCE could introduce believable

eyewitness testimony or an admission by Dr. Jouria. Such direct evidence is rare.

Or second, NetCE can show indirect or circumstantial evidence that Dr. Jouria copied its work. For example, indirect evidence of infringement may be proof that Dr. Jouria tried to get a copy of NetCE's work and then published a course that is substantially similar to Plaintiff's courses. In general, the two elements of infringement are (1) access and (2) substantial similarity.

## <mark>DR. JOURIA PROPOSAL</mark> 9.17 Copyright – Infringement – Introduction to Elements

If you're persuaded that NETCE owns a valid copyright, and that NETCE has established what the deposit copies were that it submitted to the Copyright Office, you can consider whether DR. JOURIA improperly copied NETCE'S deposited copyrighted material. It is the burden of NETCE to show that DR. JOURIA infringed on its valid copyrights. This is called "infringement" of a copyright. NETCE must show that DR. JOURIA infringed on its valid copyrights.

In this case, NETCE claims that DR. JOURIA infringed its copyrights in NETCE'S asserted works by selling[19] revised medical research papers to ELITE. To succeed on this claim, NETCE must prove that DR. JOURIA sold the parts of NETCE'S copyrighted works that the law protects.

NETCE can prove a claim of copyright infringement by showing the two elements of infringement:  (1) access and (2) substantial similarity of original, protectible expression.[20]

---

[19] DE 300 at 12.

[20] Dr. Jouria accepts the standard of substantial similarity of original expression, if the Court admits into evidence the works that were deposited with the Copyright Office, and if so, that the expression only pertains to "text."  However, if the Court concludes that the works pertain to a "compilation" or "collective," then Dr. Jouria asserts that the standard is "virtual identicality."  *See Mitek Holdings, Incorporated v. Arce Engineering*

## NETCE PROPOSAL - DR. JOURIA OBJECTION - DR. JOURIA CONCEDES ACCESS

### 9.18 Copyright – Infringement – Access

Remember, I described the two general elements of infringement as (1) access and (2) substantial similarity. I'll now discuss access in more detail.

NetCE can show that Dr. Jouria had "access" to its work by showing that Dr. Jouria had a reasonable opportunity to see the work. It isn't necessary to show that Dr. Jouria actually saw NetCE's work before creating Dr. Jouria's own work if the evidence reasonably establishes that Dr. Jouria could have seen it and could have copied it.

But you can't base a finding that Dr. Jouria had access to NetCE's work on mere speculation, conjecture, or a guess. To support a finding of access, there must be more than just a slight possibility of access. There must be a reasonable possibility of access.

---

*Company, Incorporated*, 89 F. at 1558-59 citing *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F. 2d 197, 205 (9th Cir.1989) (stating that "[a]s with factual compilations, copyright infringement of compilations consisting of largely uncopyrightable elements should not be found in the absence of 'bodily appropriation of expression'") ("bodily appropriate of expression" and "virtual identicality" are synonymous, *Mitek* n.24.).  Accord *Nautical Solutions Mktg., Inc. v. Boats.com*, No. 8:02-CV-760-T-23TGW, 2004 WL 783121 (M.D. Fla. Apr. 1, 2004) citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994).  *See also Buc International Corp. v. International Yacht Council* Limited, 489 F. 3d at 1149-51.

Sometimes a plaintiff can't show that a defendant had access to its work before he/she created an alleged copy. In these cases, a plaintiff can still establish a rebuttable presumption of copying by showing that the material defendant allegedly copied is so strikingly similar to its copyrighted material that the similarity is unlikely to have occurred unless there was copying.

Put another way, if NetCE's work and Dr. Jouria's work are so strikingly similar that a reasonable person would assume Dr. Jouria copied from NetCE's work and that there is no possibility of independent creation, coincidence, or prior common source, then NetCE is entitled to a rebuttable presumption that copying occurred. "Strikingly similar" is a greater degree of similarity than "substantially similar." An accused work is substantially similar to an original piece if an ordinary observer would conclude that the accused work's creator unlawfully took protectable material of substance and value from the original piece. Even if there is little similarity between the pieces, the accused work can still be substantially similar if the copied parts from the original piece are the important quality. A "rebuttable presumption" means that you assume that copying occurred unless Dr. Jouria proves that it didn't happen.

If NetCE shows (1) that Dr. Jouria had access to the copyrighted material and that there is substantial similarity between the two works, or (2) that the works are strikingly similar, then the burden of proof shifts to Dr. Jouria to

prove that its work is an independent creation – not a copy. Proof that a work is

an independent creation overcomes a presumption of copying.

## ANNOTATIONS AND COMMENTS

This jury instruction applies when one party accuses another party of copyright infringement by means of copying from a copyrighted work and using the copied material in another later work. It can be used where printed materials are involved or in cases involving other copyrighted material.

Because direct evidence of copying is rare, the law provides for proof by circumstantial evidence as to all necessary elements. To the extent that Plaintiff relies on circumstantial evidence as to access or similarity, however, the presumption he creates is rebuttable. If the Defendant can prove independent creation, even if the two works appear to be copies, the Plaintiff cannot recover for copyright infringement.

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982); *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1248 (11th Cir. 1999).

*Baby Buddies, Inc. v. Toys 'R Us, Inc.*, 611 F. 3d 1308, 1315 (11th Cir. 2010) ("A plaintiff may prove copying directly, but because direct evidence of copying is rare a plaintiff may instead rely on indirect proof."); *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) ("Striking similarity exists where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.").

74

**<mark>DR. JOURIA PROPOSAL</mark> 9.18 Copyright – Infringement – Access**

Remember, I described the two general elements of infringement as (1) access and (2) substantial similarity of original, protectible expression. I'll now discuss access in more detail.

NETCE can show that DR. JOURIA had "access" to its works by showing that DR. JOURIA had a reasonable opportunity to see the works. DR. JOURIA concedes that he had access to the works because he wrote them for NETCE.

**NETCE PROPOSAL - DR. JOURIA OBJECTION - *SEE* n.20, *supra***

**9.19 Copyright – Infringement – Substantial Similarity**

Having discussed access, I'll now discuss the issue of substantial similarity. NetCE must prove that Dr. Jouria's accused work is substantially similar to its copyrightable expression in the copyrighted work. Dr. Jouria's accused work is substantially similar in expression to NetCE's if an ordinary observer would conclude that Dr. Jouria unlawfully took NetCE's protectable expression by taking material of substance and value.

Even if the degree of similarity between NetCE's copyrighted work and Dr. Jouria's accused work is small in quantity, you can still find that there's substantial similarity if the copied portions of NetCE's copyrighted work are important in quality.

But if Dr. Jouria's copying is minimal or trivial, you shouldn't find infringement.

## ANNOTATIONS AND COMMENTS

The Eleventh Circuit's general test for substantial similarity is the "lay observer" or "ordinary observer" test, and it applies to works that can be seen or heard. *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 n.5 (11th Cir. 2008); *Bateman v. Mnemonics Inc.*, 37 U.S.P.Q.2d 1225 (11th Cir. 1995), *vacated in part, reversed in part and remanded,* 38 U.S.P.Q.2d 1225 (11th Cir. 1996); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982).

**DR. JOURIA PROPOSAL (*SEE* n.20, *supra*)**

**9.19 Copyright – Infringement – Substantial Similarity**

Having discussed access, I'll now discuss the issue of substantial similarity. NETCE must prove that DR. JOURIA's accused works are substantially similar to the original, protectible copyrightable text, if any, in the copyrighted works.  Recall my earlier instruction that a facts are never original.[21]

Only if you find original, protectible copyrightable text in NETCE'S copyrighted works can you then assess if DR. JOURIA'S accused works are substantially similar to that copyrightable text.  Even if you find original, protectible text in NETCE'S copyrighted works, if you also find that there are only a few ways to express an idea or fact embodied within that text, not even the expression is protected by copyright and you should not assess any substantial similarity.[22]

After considering if there is original, protectible copyrightable text  in NETCE'S copyrighted works that can be expressed in more than a few ways,

---

[21] *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. at 358. ("[I]n determining whether a fact-based work  is an original work of authorship, [courts] should focus on the manner in which the collected facts have been selected, coordinated, and arranged.  This is a straightforward application of the originality requirement.").

[22] *Buc International Corp. v. International Yacht Council* Limited, 489 F. 3d at 1143.

then you should consider the amount of text copied.  If the amount of original text copied, if that is what you find, is so small in quantity, it will not justify a finding of substantial similarity.[23]   Also, if you find only a small quantity of original text has been appropriated, but also find it was not significant to DR. JOURIA'S medical research papers, then you should not find substantial similarity.[24]

---

[23] *Mitek Holdings, Incorporated v. Arce Engineering Company, Incorporated*, 89 F. 3d at 1560.
[24] *Id*.

**DR. JOURIA OBJECTIONS** - **THE ISSUE OF TERMINATING SANCTIONS WAS NOT INCLUDED BY NETCE IN THE PTS, INCLUDING AS A MOTION REQUIRING RESOLUTION IN THE PTS,** *SEE* **DE 300 AT 7, AND THEREFORE HAS BEEN WAIVED; THE PROPOSED INSTRUCTION IS DIFFERENT THAN THAT WHICH WAS RECOMMENDED BY THE MAGISTRATE, DE 249; THE RECOMMENDED INSTRUCTION WAS NOT ADOPTED BY THE COURT, DE 269; THE INSTRUCTION IS UNDULY PREJUDICIAL TO DR. JOURIA AND NOT SUPPORTED BY LAW.** *SEE* **DE 163.**

**PLAINTIFF'S PROPOSED NEGATIVE INFERENCE INSTRUCTION REGARDING DESTRUCTION OF DR. JOURIA'S COMPUTER[25]**

The Court further instructs the jury that the jury shall treat the following paragraph as facts proven by Plaintiff by a preponderance of the evidence.

Dr. Jouria was served with a cease and desist order dated April 9, 2015, advising him of his duty to preserve evidence.  This lawsuit was initiated on June 2, 2015.   Dr. Jouria intentionally discarded his computer in June 2017, allegedly because it had crashed and he was unable to recovery anything further from it.  Written discovery was served upon Dr. Jouria by NetCE in August and September of  2017, with Dr. Jouria signing discovery responses indicating that his computer had "crashed," and stating that further supplementation of his

_____

[25] Dr. Jouria opposes this instruction.

responses was forthcoming.   Dr. Jouria did not admit to NetCE that he threw away his computer until September 28, 2017, months after its destruction.

You may presume the evidence Dr. Jouria disposed of was both relevant and favorable to NetCE's claims and defenses.

**Source:**  Magistrate Judge's Report and Recommendations (DE 249); NetCE's Partial Objections (DE 264); Court's Order Adopting in Part Magistrate's Report and Recommendation (DE 269); NetCE's Motion for Terminating Sanctions (DE 149).

DR. JOURIA OBJECTIONS TO INDIRECT INFRINGEMENT - CONTRIBUTORY INFRINGEMENT WAS NOT ALLEGED IN NETCE'S PLEADING, DE 36; CONTRIBUTORY INFRINGEMENT WAS NOT IDENTIFIED AS AN ISSUE TO BE TRIED IN THE PTS, DE 300; ELITE HAS BEEN DISMISSED WITH PREJUDICE AND AS SUCH CANNOT BE A DIRECT INFRINGER WHICH IS A REQUIRED ELEMENT TO PROVE CONTRIBUTORY INFRINGEMENT; ELITE AND NETCE ENTERED INTO A SETTLEMENT AGREEMENT WHICH MAY HAVE RELEASED ELITE FROM ANY COPYRIGHT LIABILITY SO, AGAIN, THERE WOULD BE NO DIRECT INFRINGEMENT ELEMENT. SEE DE 306 (DR. JOURIA MOTION TO COMPEL PRODUCTION OF ELITE SETTLEMENT AGREEMENT).

**9.20 Copyright – Infringement – Contributory Infringement**

In this case, NetCE claims that in addition to direct infringement, Dr. Jouria also is a contributory infringer. A "contributory infringer" is one who, with knowledge of another's infringing conduct, induces, causes, or materially contributes to the infringing conduct. "Knowledge" means the alleged contributory infringer actually knew, or had reason to know, of the infringement. If you find that there has been a direct infringement of NetCE's copyrighted materials by one party (*e.g*., as here, by a company called elite Professional Education, which is no longer a party in the case), you can also consider whether there has been "contributory infringement" by another defendant (or a third party).

**ANNOTATIONS AND COMMENTS**

This jury instruction applies when there is a claim of contributory infringement. Before there can be contributory infringement by one Defendant, there must first be a direct or primary infringement by another. Further, before there can be contributory infringement, the Defendant must have acted with the requisite knowledge.

82

The above change does not include a requirement that the alleged contributory infringer have acted "intentionally." *See Cable/Home Communication Cooperation et al v. Network Productions*, 902 F.2d 829, 845 (11th Cir. 1990); *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) ("The test for contributory infringement has been formulated as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'").

However, after *Casella*, the United States Supreme Court included a specific reference to an "intentional" inducement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d, 781 (2005) ("*Grokster*") ("One infringes contributorily by intentionally inducing or encouraging direct infringement."). *See also BUC Intern. Corp. v International Yacht Council*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007). ("Contributory infringement refers to the intentional inducement, causation or material contribution to another's infringing conduct."). Under the Eleventh Circuit's prior panel precedent rule, the *Casella* version of contributory infringement (rather than the *Grokster* language) was incorporated into this jury instruction. *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007) (quoting *NLRB v. Datapoint Corp.*, 642 F.2d 123, 129 (5th Cir. 1981)); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000).

The Eleventh Circuit's standard for "knowledge" in a contributory infringement case is objective: "Knowledge or have reason to know." *Casella*, 820 F.2d at 365.

In *Grokster*, the Supreme Court held that intent can be found from "[e]vidence of active steps… taken to encourage direct infringement… such as advertising an infringing use or instructing how to engage in an infringing use . . . ." *Id.* at 936. Nonetheless, where the claim for contributory infringement is based on sale of a copying device, "mere knowledge of infringing potential or of actual infringing uses" of the defendant's device is not enough to support a finding of intent. 545 U.S. at 937. "Thus, where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement," the "staple-article rule" in *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 442, 104 S. Ct. 774, 788; 78 L. Ed. 2d 574 (1984), "will not preclude liability."

The Supreme Court has looked to other intellectual property law for guidance as to contributory infringement copyright claims. For example, *Grokster* looked to patent infringement jurisprudence for guidance in determining the standard to be applied in a case claiming contributory infringement. *Id. See also, Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 179 L. Ed. 2d 1167, 1175 (2011) (*Global-Tech* established a "willful blindness" standard for the knowledge element in a contributory infringement claim in a patent case.).

DR. JOURIA OBJECTIONS TO INDIRECT INFRINGEMENT - VICARIOUS INFRINGEMENT WAS NOT ALLEGED IN NETCE'S PLEADING, DE 36; VICARIOUS INFRINGEMENT WAS NOT IDENTIFIED AS AN ISSUE TO BE TRIED IN THE PTS, DE 300; ELITE HAS BEEN DISMISSED WITH PREJUDICE AND AS SUCH CANNOT BE A DIRECT INFRINGER WHICH IS A REQUIRED ELEMENT TO PROVE VICARIOUS INFRINGEMENT; ELITE AND NETCE ENTERED INTO A SETTLEMENT AGREEMENT WHICH MAY HAVE RELEASED ELITE FROM ANY COPYRIGHT LIABILITY SO, AGAIN, THERE WOULD BE NO DIRECT INFRINGEMENT ELEMENT. SEE DE 306 (DR. JOURIA MOTION TO COMPEL PRODUCTION OF ELITE SETTLEMENT AGREEMENT).

## 9.21 Copyright – Infringement – Vicarious Infringement

If you find that there is a direct infringement, you can then consider whether there has also been a vicarious infringement. A "vicarious infringer" is one who profits from a direct infringement while declining to exercise its right and ability to stop or limit the infringement.

Under this doctrine a party is responsible for the direct infringer's acts if the party controlled or supervised, or had the right and ability to control or supervise, the direct infringer's actions.

If you find that there has been a direct infringement of NetCE's copyrighted materials by one defendant (or third party), you can consider whether there has been "vicarious infringement" by another defendant.

To find that Dr. Jouria is liable for another party's infringement, you must first find that Dr. Jouria had the right and ability to control or supervise the other party's infringing action and either controlled the action, or failed to exercise

its right and ability to prevent the infringement. Also, you must find that Dr.

Jouria directly profited from the other's infringement.

## ANNOTATIONS AND COMMENTS

The United States Supreme Court has observed that "'the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn…' [citation omitted]. The lack of clarity in this area may, in part, be attributable to the fact that an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright owner." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n.17, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984).

This pattern instruction is based on the common law doctrine of vicarious infringement recognized in *Metro-Goldwyn-Mayer Studios Inc. Grokster, Ltd.*, 545 U.S. 913, 931 n.9, 125 S. Ct. 2764, 2777, 162 L. Ed. 2d 781, (2005) (vicarious liability was not at issue in *Grokster*; this statement of the law is dicta), and in *BUC Intern. Corp. v. International Yacht Council*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (quoting *Grokster* n.9; jury's finding with respect to vicarious liability was not an issue on appeal). *See also Southern Bell Tel. and Tel. Co. v. Associated Tel Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) ("An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement [citations to district court cases omitted] even if they were ignorant of the infringement;" however, Court noted that "all appellants had actual knowledge of this solicitation.").

In *Grokster*, MGM had argued a vicarious liability theory seeking to impose liability "even if the defendant initially lacks knowledge of the infringement." 545 U.S. at 931 n.9. The *Grokster* court also announced the requirement that a defendant "profit directly." *Id*. The Supreme Court did not address MGM's vicarious liability theory in *Grokster*, and instead resolved the case based on an inducement theory. Nevertheless, the Supreme Court referred to the vicarious liability theory as articulated in *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963), which is the test set forth in this instruction.

**9.25 Copyright – Defenses – Affirmative Defense – Fair Use**

Dr. Jouria claims, as an affirmative defense, that his use of NetCE's copyrighted work is a fair use. A fair use isn't an infringement of copyright. Dr. Jouria must prove fair use by a preponderance of the evidence.

Certain uses recognized as favoring fair use include criticism, parody, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, and research. (These examples are illustrative.)

To determine whether Dr. Jouria's use of NetCE's work qualifies as a "fair use," consider the following four factors:

1. the purpose and character of Dr. Jouria's use of the work;

2. the nature of NetCE's work;

3. the amount and importance of the portion of NetCE's copyrighted work that Dr. Jouria used; and

4. the effect of the use upon the potential market for or value of NetCE's copyrighted work.

1. The Purpose and Character of Dr. Jouria's Use.

The first factor looks at whether Dr. Jouria's use supersedes the use of NetCE's copyrighted work or, instead, adds new meaning, expression, or otherwise uses NetCE's work for a different purpose. It asks whether, and to what extent, Dr. Jouria's use is transformative. One example of a transformative use is a parody, which uses the original copyrighted work to comment on or criticize it.

The first factor also looks at whether the use is commercial or noncommercial. The focus of this distinction isn't whether the motive of the use is monetary gain, but whether the user stands to profit from using the copyrighted work without paying the customary price.

Analysis of the first factor can affect the remaining factors. The more transformative the use, the less likelihood that the use substitutes for the copyrighted work, and thus the less significance is to be afforded other factors, such as the effect on the potential market for or value of NetCE's work.

2. The Nature of NetCE's Copyrighted Work.

The second factor recognizes that some works may be used more freely, or more fairly, than others. Uses of factual, purely useful, or derivative works are more likely to amount to fair use than uses of works such as fiction. Similarly, uses of published works are more likely to amount to fair use than uses of unpublished works.

Also, out-of-print works that are no longer available for purchase through normal channels are more susceptible to fair use.

3. The Amount and Importance of the Portion Used.

The third factor considers whether the amount and importance of the portion taken was reasonable in light of the purpose of Dr. Jouria's use and the

likelihood that Dr. Jouria's use will supersede the use of NetCE's copyrighted work.

4. The Effect on the Potential Market or Value of NetCE's Copyrighted Work.

Under this factor, you should consider not only actual markets for NetCE's copyrighted work, but also markets likely to be developed. And you should consider not only the harm caused by Dr. Jouria's use, but also whether widespread uses of the same sort by others would result in a substantial adverse effect on a market, or potential market, for NetCE's copyrighted work. Ask yourself: does Dr. Jouria's use supersede or impermissibly harm the market or potential market for NetCE's copyrighted work?

NetCE can't preclude some transformative uses – even if the use may result in some harm to its markets. For example, an effective parody may lower demand for the original copyrighted work, but this isn't the type of harm considered under this factor.

Balancing the Four Factors

You should explore all four factors and weigh the results together. You should consider the purposes of copyright: first, to promote public access to knowledge and new ideas, and second, to give authors an incentive to create copyrighted works for the public's benefit.

### 9.28 Copyright – Defenses – Affirmative Defense – Copyright Estoppel (Advisory Jury)

Dr. Jouria claims that NetCE is barred from asserting its copyright-infringement claim against Dr. Jouria by the doctrine of estoppel. To establish estoppel, Dr. Jouria must prove each of the following elements by a preponderance of the evidence:

First, you must find that NetCE knew the facts of Dr. Jouria's infringing conduct.

Second, you must find that NetCE's statement or conduct (either action or inaction) caused Dr. Jouria to believe that NetCE wouldn't pursue a claim for copyright infringement against him.

Third, you must find that NetCE intended for Dr. Jouria to act on its statement or conduct, or Dr. Jouria had a right to believe NetCE so intended.

Fourth, you must find that Dr. Jouria didn't reasonably believe that NetCE would pursue a claim for copyright infringement against him.

And fifth, you must find that Dr. Jouria was injured as a result of his reliance on NetCE's statement or conduct.

If you find that Dr. Jouria has proved these elements by a preponderance of the evidence, your verdict must be for him on the claim for copyright infringement.

**NETCE PROPOSAL** **9.30 Copyright – Damages – General Charge**

If you find that NetCE has failed to prove its copyright-infringement claim or that Dr. Jouria has proved its affirmative defense[s] by a preponderance of the evidence, you won't consider the question of damages. If you find that NetCE has proved by a preponderance of evidence that Dr. Jouria has infringed NetCE's copyright, and Dr. Jouria has not proved a defense, then you must determine whether NetCE has proved damages.  NetCE may recover its actual damages plus Dr. Jouria's profits attributable to infringement.

## ANNOTATIONS AND COMMENTS

This jury instruction provides a general statement of the circumstances under which a Plaintiff may recover damages from a Defendant. Upon finding by a preponderance of the evidence that a Defendant has infringed Plaintiff's copyright, the jury determines whether the Plaintiff can recover damages. *See Donald Frederick Evans & Assocs., Inc. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986) (establishing a prima facie copyright infringement claim requires proof by a preponderance of the evidence). A prevailing Plaintiff is entitled to recover his actual damages plus the Defendant's profits attributable to the infringement found, or elect to recover statutory damages. *See* 17 U.S.C. § 504 (a & b) (actual damages and profits); *id.* § 504(c) (statutory damages); *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997). Though a Plaintiff may elect between these two forms of recovery before the jury is instructed, the statute allows a Plaintiff to elect statutory damages (at any time before a final judgment is rendered). 17 U.S.C. § 504 (c); *Jordan*, 111 F.3d at 104. To cover all the possible permutations, the instruction provides two alternatives.

It is important that the Jury understand that if it is asked to determine statutory and actual damages, the Plaintiff may select one or the other (once awarded) but not both. *See, Yellow Pages Photos, Inc. v. Ziplocal, L.P.*, 795 F3d 1255, 1284 (11th Cir. 2015).

Joint and several liability may extend to an infringer's profits if the defendants act as partners, joint venturers, or partners-in-fact. *See Belford, Clarke & Co. v. Scribner*, 144 U.S. 488, 507-08, 12 S. Ct. 734, 36 L. Ed. 514 (1892).

**DR. JOURIA PROPOSAL** **9.30 Copyright – Damages – General Charge**

If you find that NETCE has failed to prove ownership of a valid copyright or failed to prove by a preponderance of the evidence its copyright infringement claim, or that DR. JOURIA has proved either of his affirmative defenses by a preponderance of the evidence, you are not to consider the question of damages. If you find that NETCE has proved by a preponderance of evidence that DR. JOURIA has infringed one or more of NETCE's valid copyrights that it owns, then you must determine whether NETCE has proved damages. NETCE may recover its actual damages plus DR. JOURIA's profits attributable to infringement, if any.

In the next instruction, I'll define how you must determine the amount of damages, if any, to award to NETCE.

**NETCE PROPOSAL - DR. JOURIA OBJECTIONS - NETCE HAS NOT ALLEGED A REASONABLE LICENSE FEE OR "OTHER MEASURE SPECIFIC TO THE CASE" AS DAMAGES, DE 36; THE PTS DOES NOT IDENTIFY AS DAMAGES A REASONABLE LICENSE FEE, OR "OTHER MEASURE SPECIFIC TO THE CASE;" IT ONLY CLAIMS LOST PROFITS AS DAMAGES. DE 300 AT 19.**

### 9.31 Copyright – Damages – Actual Damages

NetCE is entitled to recover any actual damages suffered because of the infringement found. "Actual damages" means the amount of money adequate to compensate NetCE for any losses caused by the infringement. In this case, NetCE claims its actual damages are measured by:

1. a reasonable license fee that Dr. Jouria should have paid for the use found to be an infringement;

2. the profits NetCE should have received for sales lost because of the infringement; or

3. other measure specific to the case.

NetCE has the burden of first proving to a reasonable probability a causal connection between Dr. Jouria's alleged acts of infringement and any loss claimed. If NetCE does so, Dr. Jouria must show that the claimed loss would have occurred even if there had been no infringement by Dr. Jouria.

### ANNOTATIONS AND COMMENTS

By statute, the "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." 17 U.S.C. 504(b). The damages suffered are to compensate of the copyright for any injury to the market value of the copyrighted work, and it "often is measured by the revenue that the plaintiff lost as a result of the infringement." *Montgomery v. Noga*, 168 F.3d 1282, 1294, 1295 n.19

(11th Cir. 1999). To collect actual damages, a copy right claimant must demonstrate a causal connection between the infringing party's activity and any injury to the market value of the copyrighted work at the time of infringement. Id. at 1294.

A plaintiff's statutory burden must also be read in conjunction with the well-established principle that any claim of damages may not be based on pure speculation. *See, e.g.*, *Telecom Tech. Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004) (addressing claim that damages were too speculative); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974) (noting that "the defendant is normally not assessed damages on wholly speculative expectations of profits"). "[O]nce a copyright holder establishes with reasonable probability the existence of a causal connection between the infringement and the loss of revenue, the burden shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression." *Harper & Row Publishers v. National Enterprises*, 471 U.S. 539, 567 105 S. Ct. 2218, 2233, 85 L. Ed. 2d 588 (1985).

Such a claim for actual damages may include a retroactive license fee measured by what the Plaintiff would have earned by licensing the infringing use to the Defendant. *See, e.g.*, *Montgomery*, 168 F.3d at 1295-96 (affirming jury award of actual damages based on retroactive license fee).

**DR. JOURIA PROPOSAL** **9.31 Copyright – Damages – Actual Damages**

NETCE is entitled to recover any actual damages suffered because of the infringement found. "Actual damages" means the amount of money adequate to compensate NETCE for any losses caused by the infringement. In this case, NETCE claims its actual damages are measured by:

1. the profits NETCE should have received for sales lost because of the infringement; or

NETCE has the burden of first proving to a reasonable probability a causal connection between DR. JOURIA's alleged act of infringement and any loss claimed.  If NETCE does so, DR. JOURIA must show that the claimed loss would have occurred even if there had been no infringement by DR. JOURIA.

However, any actual damages that you might find against DR. JOURIA should be based upon his acts alone, and not upon acts of any other person or entity.

**NETCE PROPOSAL** 9.33: Copyright – Damages – Disgorgement of Profits

In addition to actual damages, NetCE is also entitled to Dr. Jouria's profits that are attributable to the infringement you found, but only to the extent they are not already taken into account in calculating NetCE's actual damages. An award of Dr. Jouria's profits may not include any amounts that were accounted for in calculating NetCE's actual damages to avoid double recovery.

In calculating Dr. Jouria's profits, you should determine the gross revenues received by Dr. Jouria that were attributable to the infringement you found, and then subtract the deductible expenses incurred by Dr. Jouria, any portions of the gross revenues attributable to factors other than infringement, and any amount already taken into account in calculating actual damages. NetCE has the burden of proving, by a preponderance of the evidence, Dr. Jouria's gross revenue attributable to the infringement you found, and a causal relationship between the infringement and Dr. Jouria's profits. Dr. Jouria has the burden of proving, by a preponderance of the evidence, any deductible expenses incurred and any portions of the revenue that are attributable to factors other than infringement.

**DR. JOURIA PROPOSAL**:  **9.33: Copyright – Damages – Disgorgement of Profits**

In addition to actual damages, NetCE is also entitled to Dr. Jouria's profits that are attributable to the infringement you found, but only to the extent they are not already taken into account in calculating NetCE's actual damages. An award of Dr. Jouria's profits may not include any amounts that were accounted for in calculating NetCE's actual damages to avoid double recovery.

In calculating Dr. Jouria's profits, you should determine the gross revenues received by Dr. Jouria that were attributable to the infringement you found, and then subtract the deductible expenses incurred by Dr. Jouria, any portions of the gross revenues attributable to factors other than infringement, and any amount already taken into account in calculating actual damages. You should calculate the profits made by DR. JOURIA alone because DR. JOURIA never acted as a partner, partner-in-fact, or joint venturer,[26] with any other person or entity.  NetCE has the burden of proving, by a preponderance of the evidence, Dr. Jouria's gross revenue attributable to the infringement you found, and a causal relationship between the infringement and Dr. Jouria's profits. Dr.

---

[26] Joint and several liability may extend to an infringer's profits if the defendants act as partners, joint venturers, or partners-in-fact.  *See Belford, Clarke & Co. v. Scribner*, 144 U.S. 488, 507-08, 12 S. Ct. 734, 36 L. Ed. 514 (1892).

Jouria has the burden of proving, by a preponderance of the evidence, any deductible expenses incurred and any portions of the revenue that are attributable to factors other than infringement.

### 3.8.1 Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

Dated: May 18, 2018

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ *Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email:
phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th
Floor
Fort Lauderdale, FL 33301
Telephone: (954)525-1000
Facsimile: (954)463-2030

/s/ *John P. Kern*
John P. Kern, Esq. (pro hac
vice)
Email: john.kern@hklaw.com
Daniel Kappes, Esq. (pro hac
vice)
Email:
daniel.kappes@hklaw.com
David Holtzman, Esq. (pro hac
vice)
Email:
david.holtzman@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415)743-6918
Facsimile: (415)743-6910
Attorneys for CE RESOURCE,
INC. d/b/a
CME RESOURCE and NetCE

/s/*Richard S. Ross*
Richard S. Ross
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
Email:  prodp@ix.netcom.com;
(Attorney for Plaintiff Dr.
Jassin Jouria)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Philip E. Rothschild*
Philip E. Rothschild

## <u>SERVICE LIST</u>

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
Email:  prodp@ix.netcom.com;
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**