**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(Fort Lauderdale Division)**

**CASE NO.:15-61165-CIV-DIMITROULEAS**

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Plaintiff,

v.

DR. JASSIN JOURIA, and ELITE PROFESSIONAL EDUCATION, LLC,

       Defendants,
_____/

DR. JASSIN JOURIA,

       Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

       Counter-Defendant.
_____/

**DEFENDANT DR. JASSIN JOURIA'S CONSOLIDATED POST-TRIAL MOTION**
**PURSUANT TO FED.R.CIV.P. 50, 59 AND 60;**
**MOTION TO STAY EXECUTION OF JUDGMENT**

      COMES NOW, the Defendant, Dr. Jassin Jouria ("Dr. Jouria"), who respectfully moves the court for post-trial relief under Rules 50, 59 and 60, Federal Rules of Civil Procedure. Dr. Jouria seeks relief on three grounds: 1) the settlement amount ("Settlement Amount") contained in the Settlement Agreement ("Settlement Agreement") between Plaintiff CE Resource, Inc. ("NetCE") and the settling-Defendant Elite Professional Education, LLC ("Elite") affords Dr. Jouria a reduction in the Final Judgment ("Judgment"), DE 351, under the one-satisfaction rule. *See BUC*

*International Corp. v. International Yacht Council Limited*, 517 F.3d 1271, 1275 (11th Cir. 2008); *see also* Fed.R.Civ.P. 60(b)(5)[1]; 2) regardless of Elite's Settlement Amount paid to NetCE, Dr. Jouria is entitled to judgment as a matter of law, or, in the alternative, to an amendment of the Judgment, on the issue of copyright infringement damages, *see* Fed.R.Civ.P. 50(b); 59(e); and 3) the court's contract construction of "Articles," DE 350 at 11, made after the close of evidence, precludes a finding of breach. *See* Fed.R.Civ.P. 50(b). In the alternative, Dr. Jouria seeks a new trial on the jury's contract damages verdict or a remittitur in lieu thereof.

I.      **FACTUAL BACKGROUND**

This case comes to the court on NetCE's first amended complaint, DE 36, alleging that Dr. Jouria breached five freelance writer agreements ("FWA"), and violated five United States copyright registrations, for five medical research papers ("Articles") that Dr. Jouria wrote for NetCE.[2] NetCE, a publisher of continuing medical education ("CME") courses, as alleged, was to use the Articles, once edited and revised by it, as CME courses to be offered to the public. As part of its complaint, NetCE alleged that Dr. Jouria breached the FWAs and violated its copyrights by,

---

[1] Dr. Jouria became aware of the possible existence of the Settlement Agreement when NetCE filed a stipulation of dismissal with prejudice between it and Elite on May 14, 2018. *See* DE 303. On May 16, 2018, Dr. Jouria filed a motion to compel the production of such Settlement Agreement. *See* DE 306. After reviewing the Settlement Agreement *in camera*, filed under seal, *see* DE 335-1, the court denied the motion without prejudice. DE 340 at 3. After trial, Dr. Jouria renewed his motion *ore tenus* to compel the agreement's production to which NetCE did not object. On June 5, 2018, NetCE produced the Settlement Agreement to Dr. Jouria. Because the Settlement Agreement has been filed under seal, Dr. Jouria directs the court to it, DE 335-1, for the exact Settlement Amount paid by Elite to resolve the copyright infringement claim at issue in this case.

[2] Originally NetCE had a claim for breach of seven FWAs, and seven copyrights, but dismissed claims for two of the Articles with prejudice, DE 305, which the court ruled at calendar call, held on May 25, 2018, that it would allow. *See also* DE 340 at 3.

2

among other things, selling substantially similar versions of the Articles to Elite, also a CME course publisher and a competitor of NetCE. NetCE's claims against Elite involved the same copyright infringement claims for the same Articles as those asserted against Dr. Jouria, and a separate trade secret misappropriation claim.

NetCE alleged in its first amended complaint: 1) that Dr. Jouria sold "nearly identical" Articles to Elite, *see* DE 36 at 11 ¶1; 2) that Elite's predecessor was given trade secret information from NetCE including the name of Dr. Jouria and copies of the Articles he wrote for NetCE, *id*. at 21 ¶¶45, 46; 3) that NetCE's copyrights were infringed by the collective efforts of Elite, its predecessor, and Dr. Jouria, *id*. at 25 ¶69; at 26 ¶77; 4) that Elite used the trade secret information learned from its predecessor to infringe NetCE's copyrights, *id*. at 27, ¶¶78, 79; 5) that Dr. Jouria and Elite together infringed NetCE's copyrights (Claim One), *id*. at 29 ¶¶82-86; and, 6) that Elite, through its predecessor, misappropriated NetCE's confidential work product by publishing "offending articles" created from the Articles Dr. Jouria authored for NetCE. *Id*. at 36-38 ¶¶127-134.

At trial, NetCE's chief fact witness and long-time employee of NetCE, Ms. Sarah Campbell, testified that NetCE had no evidence of any lost sales resulting from Dr. Jouria's or Elite's conduct. She testified that Dr. Jouria submitted revised versions of the Articles to Elite, and not the Articles Dr. Jouria wrote for NetCE. She testified at length about the revised Articles and made specific references to them, NetCE trial exhibits NC-22 - 29 which were admitted into evidence, and noted which sections she believed were substantially similar and which were not. NetCE trial exhibits NC-22 - 29 clearly evidence the medical research papers Dr. Jouria submitted to Elite were not the medical research papers Dr. Jouria wrote for NetCE. Dr. Jouria testified on

3

multiple occasions that he never submitted the medical research papers he wrote for NetCE to any third party, including Elite, but that he only submitted revised medical research papers to Elite. This testimony was fully in line with that of Ms. Campbell's. Finally, Mr. James Pampinella, NetCE's damages expert, testified only to the issue of copyright actual damages which were exclusively based upon "Elite's alleged misconduct." He testified that without any proof of lost sales, NetCE could not claim any copyright damages in the form of lost profits. NetCE's sole damages claim for copyright infringement was lost profits. *See* DE 350 at 31.

## II.     LEGAL ARGUMENT

### A.     Dr. Jouria Is Entitled to a Credit for the Elite Settlement Amount.

"[M]otions seeking credit for settlement amounts obtained against joint tortfeasors are appropriately brought under Rule 60(b)(5)[, Federal Rules of Civil Procedure]." *BUC International Corp. v. International Yacht Council Limited*, 517 F.3d at 1275. In *BUC*, the Eleventh Circuit resolved precisely the same issue presented by this motion, and held that the one-satisfaction rule applies to copyright infringement claims. *Id*. at 1278 ("[W]e join the Second Circuit in holding that the rule does indeed apply to infringement actions under the Copyright Act."). "The rule generally provides that a plaintiff is entitled to only **one satisfaction for a single injury**, such that amounts received in settlement from an alleged tortfeasor are credited against judgments **for the same injury** against non-settling tortfeasors." *Id*. at 1276 (Emphasis Added). "[T]he one-satisfaction rule...is not a right created to protect defendants, but to limit plaintiffs." *Id*. at 1278.

The facts in *BUC* mirror those in this action for copyright infringement in which the jury returned a verdict against Dr. Jouria for $2 million dollars. *See* DE 349 at 4. In *BUC*, some defendants settled while others did not. Here, Elite settled and Dr. Jouria did not. Dr. Jouria was

4

found liable for infringement of the same copyright registrations that were included in Elite's Settlement Agreement, and, like in *BUC*, seeks a reduction in liability by the Settlement Amount. "[T]he Copyright Act allows only a single recovery for a single sale; where multiple defendants are all involved with sales, as are the [non-settling] and the settling defendants here, their liability is joint and several and recovering from one reduces the liability of the others." *Id*. at 1278 (internal quotation marks omitted). The Eleventh Circuit concluded by holding in *BUC* that the non-settling defendants were "entitled to a reduction in the judgment against them by the amounts received by BUC in settlement of claims for the same injury. " *Id*. Accordingly, Dr. Jouria seeks a reduction in the copyright infringement judgment against him by the Settlement Amount received by NetCE from Elite.

There can be no doubt but that the Settlement Amount received from Elite is for the same copyright infringement injury to which Dr. Jouria was found liable for two reasons. First, the Settlement Agreement between NetCE and Elite actually settled the copyright infringement claims that are identical to the claims (the same copyright registrations for the same research papers) that NetCE made against Dr. Jouria. Second, the only remaining claim against Elite, other than copyright infringement claim, was NetCE's trade secret misappropriation claim. However, that claim alleges the same injury which "injury is in essence identical to the injury caused by the infringing acts" of Dr. Jouria. *See id*. at 1279 (The *BUC* court found that a breach of contract claim alleged the same injury as the copyright infringement claim.). As recited in the factual background above and noted again here,[3] NetCE's alleged misappropriation claim resides in the fact that Elite published articles

---

[3]NetCE alleged in its first amended complaint that: 1) that Elite's predecessor was given trade secret information from NetCE including the name of Dr. Jouria and copies of the Articles he wrote for NetCE, DE 36 at 21 ¶¶45, 46; 2) that NetCE's copyrights were infringed by the

authored by Dr. Jouria. This is the same injury alleged in NetCE's copyright infringement claim made against both Elite and Dr. Jouria.

Finally, Dr. Jouria seeks a *pro tonto* dollar-for-dollar reduction approach to the one-satisfaction rule as did the non-settling defendants in *BUC* which the court ordered without remand. NetCE has waived any right to assert otherwise, including a proportionate-share approach to the rule. First, NetCE did not assert a proportionate-share approach even though it knew of the Settlement Agreement terms prior to trial. Second, NetCE did not assert a proportionate-share approach in conjunction with the jury instructions or the verdict form to which it agreed without objection on this issue. Third, the jury did not assess a percentage of blame against Dr. Jouria or Elite. Fourth, NetCE argued, which the court allowed over the objection of Dr. Jouria, for a jury instruction on contributory infringement, *see* DE 350 at 28, which would make Dr. Jouria 100% liable for the conduct of Elite. If Dr. Jouria was liable for 100% of Elite's conduct,[4] then he should be entitled to a 100% reduction of the Settlement Amount payment. Finally, while the Eleventh Circuit commented on the possibility of applying a proportionate-share approach to the one-satisfaction rule, Dr. Jouria has been unable to locate any case law applying that approach in a copyright infringement action.

Accordingly, under the binding precedent of *BUC*, Dr. Jouria seeks from this court

---

collective efforts of Elite, its predecessor, and Dr. Jouria, *id*. at 25 ¶69; at 26 ¶77; 3) that Elite used the trade secret information learned from its predecessor to infringe NetCE's copyrights, *id*. at 27, ¶¶78, 79; 4) that Dr. Jouria and Elite together infringed NetCE's copyrights (Claim One), *id*. at 29 ¶¶82-86; and, 5) that Elite, through its predecessor, misappropriated NetCE's confidential work product by publishing "offending articles" created from the Articles Dr. Jouria authored for NetCE. *Id*. at 36-38 ¶¶127-134.

[4]On cross-examination, Mr. Pampinella conceded that his opinion was based upon "Elite's alleged misconduct."

an order reducing the copyright infringement $2 million verdict against him by the full Settlement Amount contained in the NetCE-Elite Settlement Agreement, *pro tonto*. Upon entry of that reduction, Dr. Jouria respectfully requests the court amend the Judgment accordingly.

> **B.** **Copyright Infringement Damages Are Not Supported by the Evidence.**

In addition to Dr. Jouria's request for a reduction in the Judgment based upon the Elite Settlement Amount, Dr. Jouria also seeks judgment as a matter of law, or an amended judgment, remitting the copyright infringement damages to zero because there was no evidence to support NetCE's sole actual damages claim based upon a theory of lost profits. Fed.R.Civ.P. 50(b); 59(e).

> "The question before the district court regarding a motion for judgment as a matter of law remains whether the evidence is 'legally sufficient to find for the party on that issue,' Fed.R.Civ.P. 50(a)(1), regardless of whether the district court's analysis is undertaken before or after submitting the case to the jury." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). "'In considering the sufficiency of the evidence that supports the jury's verdict, we review the evidence in the light most favorable to, and with all reasonable inferences in favor of, the nonmoving party.' If reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions based on the evidence presented, the motion should be denied." *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299-1300 (11th Cir. 2007)(quoting *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999)). "We will reverse only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1275 (11th Cir. 2008)(internal quotation marks omitted).

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1247 n.8 (11th Cir. 2008).

No reasonable person could reach a conclusion in favor of NetCE's lost profit damages claim, *see* DE 350 at 31 (jury instruction on copyright actual damages claim restricted to lost profits), based upon the evidence presented. In this regard, Ms. Campbell testified that she had no facts supporting any NetCE lost sales resulting from the conduct of Dr. Jouria. NetCE's financial

damages expert, Mr. Pampinella, testified on cross-examination that without proof of lost sales, there would be no basis to claim lost profits. There was no other evidence on the issue to support lost profits as copyright infringement damages.

NetCE's primary fact witness conceded no lost sales; its expert witness testified that without lost sales there would be no lost profits. Thus, no reasonable jury could arrive at a verdict of lost profits as damages based upon the evidence, contrary to the result that occurred here, *see* DE 349 at 4. Accordingly, Dr. Jouria requests that the court grant him judgment as a matter of law on the issue of copyright infringement actual damages based upon NetCE's theory of lost profits. There was no evidence supporting the theory and the $2 million dollar verdict for copyright infringement damages should be reduced to zero.

### C. The Court's Contract Construction of "Articles," DE 350 at 11, Precludes a Finding of Breach Based upon the Evidence.

Dr. Jouria also moves this court for judgment as a matter of law because the court's contract construction of the term "Articles" in the FWAs, made for the first time after the close of all evidence, precludes a finding of breach based upon that evidence. Fed.R.Civ.P. 50(b). If the court concurs, then the jury's verdict for breach of contract should be struck from the Judgment. In the alternative, Dr. Jouria moves for a new trial on the $1 million dollar contract damages verdict, an amount unsupported by any evidence presented at trial, or in the second alternative, for a remittitur. Fed.R.Civ.P. 59(a).

The court construed "Articles" as "only the medical research papers that Dr. Jouria wrote for NetCE," and so instructed the jury. DE 350 at 11. This construction is the same as that argued by Dr. Jouria in his motion for summary judgment, *see* DE 183 at 7-8, which the court did

not address in its denial of that motion.  *See generally* DE 237.  The court, in its construction, rejected an interpretation of "Articles" to include rewrites or revisions.  The evidence presented supports Dr. Jouria's summary judgment argument, and his Rule 50(a) and renewed Rule 50(a) motions, that the medical research papers Dr. Jouria submitted to Elite were not <u>the</u> medical research papers he wrote for NetCE.

Dr. Jouria testified that he submitted revised medical research papers to Elite.  Ms. Campbell testified that the Elite medical research papers were not identical to the NetCE medical research papers, but only were similar or substantially similar.  NetCE's trial exhibits bear this out.

NetCE introduced and had admitted into evidence all five of the medical research papers at issue.  Those Dr. Jouria wrote for it were only one-part papers with the number of pages in brackets:  NC-277 [74 pages] (Gastroesophageal Reflux Disease); NC-279 [66 pages] (Traumatic Brain Injury); NC-284 [244 pages] (Non-Antibiotic Antimicrobial Pharmacology); NC-288 [198 pages] (Cancer and Chemotherapy); and, NC-289 [204 pages] (Depression and Dementia in the Elderly).  The medical research papers that NetCE had admitted into evidence purporting to represent those Dr. Jouria wrote for Elite[5] were both one-part papers (NC-025 [64 pages] Gastro-Esophageal Reflux Disease (GERD): Comprehensive Review; and, NC-022 [72 pages] Traumatic Brain Injury), and two-part papers (NC-023 and 024 [204 total pages] Non-Antibiotic Antimicrobial Pharmacology: Comprehensive Review Part I and Part II, respectively; NC-026 and 027 [197 total pages] Cancer and Chemotherapy: A Comprehensive Review Part I and Part II, respectively; and, NC-028 and 029 [216 total pages] Depression vs. Dementia in the Elderly Part I and Part II, respectively).

---

[5]Admitted over the objections of Dr. Jouria.

Ms. Campbell testified that the papers that Dr. Jouria wrote for NetCE and those he wrote for Elite were not the same ones. Dr. Jouria testified that the papers he wrote for Elite were revisions of the papers he wrote for NetCE. Accordingly, the testimony from both NetCE and Dr. Jouria aligns, and confirms that Dr. Jouria did not submit to Elite (or any other third party) the "Articles"that he wrote for NetCE. This subjective testimony is supported by the objective exhibits admitted into evidence themselves, where, at a minimum, the papers do not have the same number of pages, and three of the five at issue were converted from one-part papers to two-part papers. A physical or actual reading of the subject papers also confirms, objectively, that they are not the same, as NetCE text was removed, and new text added, to Elite's papers.

NetCE asserted breach of the FWAs upon Paragraph 5(d), *see, e.g.*, NC-275, which prohibited Dr. Jouria from submitting "the Article to any other party for publication...." Because there is no evidence of record to support that Dr. Jouria submitted "only the medical research papers that [he] wrote for NetCE," DE 350 at 11, to any other party for publication, no reasonable jury could have arrived at a verdict of breach by Dr. Jouria. Without evidentiary support of a breach, Dr. Jouria is entitled to judgment as a matter of law. The jury's verdict finding a breach, and its finding of $1 million dollars in damages, *see* DE 349 at 3, should be struck.

In the alternative, Dr. Jouria seeks a remittitur of the contract damages verdict in lieu of a new trial. *See* Fed.R.Civ.P. 59(a). The jury's verdict of $1 million dollars is wholly unsupported by the evidence. NetCE never presented at trial any contract damages other than the fees it paid to Dr. Jouria for writing the five research papers totaling $43,950.00.[6] The jury's

---

[6] Mr. Pampinella provided no testimony on contract damages between NetCE and Dr. Jouria.

determination is clearly contrary to the facts and testimony offered by NetCE, and also is contrary to the court's instruction on contract damages. *See* DE 350 at 12 ("You must not speculate or guess in awarding damages. NetCE's damages cannot, however, exceed what it would have received if the contract had been fully performed on both sides."). If the court does not strike the contract damages verdict for a lack of breach, Dr. Jouria seeks, in the alternative to a new trial, a remittitur of contract damages to $43,950.00.

### D. Motion to Stay Execution Pending Resolution of Post-Trial Motion.

Finally, Dr. Jouria respectfully moves the court to continue the automatic stay in effect pursuant to the rules of procedure pending resolution of this consolidated motion. At a minimum, under the authority of *BUC*, *supra*, Dr. Jouria should be entitled to a substantial reduction in the Judgment amount. Until that amount has been finally determined by the court, Dr. Jouria submits that execution of a judgment amount that would be far in excess of a lower, amended judgment would be extraordinarily prejudicial to him.

### III. CONCLUSION

Wherefore, Dr. Jouria respectfully moves this court for relief from the Judgment and/or a new trial. Dr. Jouria submits that he is entitled to a reduction of the Judgment amount in its entirety to zero as a matter of law. Otherwise, Dr. Jouria seeks a reduction of the Judgment in an amount equal to the Settlement Amount paid by Elite to NetCE, plus a reduction in contract damages to that which is supported by the evidence, to wit: $43,950.00.

## CERTIFICATE OF PRE FILING CONFERENCE

Pursuant to Local Rule 7.1(a)(3), counsel have communicated regarding the relief sought in this motion, but could not reach agreement. NetCE has expressed an intention to oppose the motion.

Respectfully submitted,

/s/ Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
Attorney for Defendant Dr. Jassin Dr. Jouria
Fla. Bar No. 436630
915 S.E. 2 Court
Ft. Lauderdale, Florida 33301
Tel 954/252-9110
Fax 954/252-9192
E mail: prodp@ix.netcom.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Richard S. Ross
Richard S. Ross, Esq.

**SERVICE LIST**
CE Resource, Inc. v. Dr. Jassin Dr. Jouria et al.
Case No.: 15-61165-CIV-DIMITROULEAS
United States District Court, Southern District of Florida
(Ft. Lauderdale Division)

Philip E. Rothschild, Esq.
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Ft. Lauderdale, FL 33301
Method of Service: NEF
*(Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE)*

Daniel Kappes, Esq.
David Holtzman, Esq.
John P. Kern, Esq.
HOLLAND & KNIGHT, LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Method of Service: NEF
*(Attorneys for CE Resource, Inc. d/b/a CME Resource and NetCE)*

Peter A. Chiabotti, Esq.
Kristen McKinney, Esq.
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Method of Service: NEF
*(Attorneys for Elite Continuing Education, Inc.)*

J. Mark Wilson, Esq.
Kathryn G. Cole, Esq.
Minnie Kim, Esq.
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Method of Service: NEF
*(Attorneys for Elite Continuing Education, Inc.)*