## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:15-cv-61165-WPD

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE

        Plaintiff,

v.

DR. JASSIN JOURIA,

        Defendant.
_____/

DR. JASSIN JOURIA,

        Counter-Plaintiff,

v.

CE RESOURCE, INC. d/b/a CME RESOURCE
and NetCE,

        Counter-Defendant.
_____/

## **NETCE'S OPPOSITION TO DR. JOURIA'S CONSOLIDATED POST-TRIAL MOTION**

Plaintiff CE Resource, Inc. d/b/a/ CME Resource and NetCE ("NetCE"), respectfully submits this Memorandum of Law in Opposition to the consolidated post-trial motion of Defendant Dr. Jassin Jouria ("Dr. Jouria") (ECF No. 364), brought under Rules 60(b)(5), 50(b) and 59(e), for reduction of the jury's award against him, judgment as a matter of law, a new trial or *remittitur*, and reconsideration or amendment of part of the award. Dr. Jouria is not entitled to any of the relief he seeks in this motion, which, for the following reasons, should be denied in its entirety.

## DISCUSSION

### A. Dr. Jouria is Not Entitled to a Reduction in the Award

The first part of the motion (ECF No. 364, pp. 4-7) asks the Court to reduce the judgment against Dr. Jouria by misapplying the "one satisfaction rule." It should be denied.

The "one satisfaction rule" deals with a settlement and a judgment that compensate the plaintiff for the same injury. As a means to avoid double recovery, the rule has its roots in elementary principles of tort law, *BUC International Corp. v. International Yacht Council Limited*, 517 F.3d 1271, 1276 (11th Cir. 2008), and is embodied in the Restatement (Second) of Torts and the Restatement (Second) of Judgments. Section 50 of the Restatement (Second) of Judgments provides that,

> Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss.

The key determination for the Court is thus whether the settlement and the judgment compensate the plaintiff for the same injury, because a plaintiff is "entitled to only one full recovery." *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 436 (3d Cir. 1993). If the Court finds the settlement and judgment cover the same injury, the "amounts received in settlement ... are credited against judgments for the same injury against non-settling tortfeasors." *BUC Int'l Corp.*, *supra.*, at 1276. The rule thus "prevent[s] the plaintiff from recovering twice from the same assessment of liability." *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000). So the "one satisfaction" rule applies only where "the settlement and judgment represent common damages." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 599 (2d Cir. 1989). For example, in *BUC Int'l Corp.*, *supra.*, the court allowed a credit because it found that the claims settled by the plaintiff were for the same injury that accounted for by the jury's verdict and award. 517 F.3d at 1279.

By contrast, of course, if the settlement compensates the plaintiff for a different injury than the injury that is the subject of the judgment, the defendant is not entitled to a credit. *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir. 1988) ("where two or more defendants are responsible for separate injuries, an amount received in settlement from one defendant for one of the injuries may not be used to reduce the liability of the other defendant for the other injury.")

In this case, the settlement paid to NetCE by Third Party Defendant Elite Professional Education LLC ("Elite")[1], did not allocate the settlement amount to any of NetCE's injuries. And because NetCE contended that Elite caused substantial injuries that were different from the injuries for which Dr. Jouria was responsible, this Court therefore cannot reasonably determine that the settlement compensated NetCE for the same copyright infringement damages which the jury specifically found Dr. Jouria liable to pay, or the extent to which it might have done so.[2]

Dr. Jouria bears the burden of proving a reduction is warranted. *Boyett v. Keene Corp.*, 815 F. Supp. 204, 209 (E.D. Tex. 1993) ("The burden of proving that the settlement and the judgment represented common damages, such that the plaintiff would receive a double recovery if no offset were allowed, rests on the party seeking a credit.") He cannot begin to carry that burden in this case.

By its Third Party Complaint, ECF No. 36, NetCE sought to recover from Elite damages for three different injuries incurred by NetCE: First, Elite's infringement of NetCE's copyrights in the

---

[1] The Confidential Settlement Agreement and Release was filed herein under seal, ECF No. 335-1.

[2] It is undisputed NetCE's case against Elite involved claims not at issue in its case against Dr. Jouria. It could even be argued that NetCE's dispute with Elite, settled prior to trial, was an entirely ***different case*** than its case against Dr. Jouria. The procedural history is that in the Summer of 2015—before filing its Answer and Counterclaim to Dr. Jouria's Declaratory Judgment Complaint in this Court—NetCE had sued Elite for trade secret misappropriation and copyright infringement in the Eastern District of California. NetCE voluntarily dismissed that action, and agreed to re-plead its case against Elite as a Third-Party action before this Court, only after Elite moved to transfer and consolidate the actions in Florida ostensibly to avoid duplicative discovery related to Dr. Jouria's role in the copyright infringement (but in reality because Elite sought to benefit from Dr. Jouria's bankruptcy stay).

3

five articles that Elite published (Claim One); second, Elite's tortious interference with the Freelance Writer Agreements and the Non-Disclosure Agreement NetCE had entered into with Alpine Management Services III, LLC (the "NDA") (Claim Four); and third, Elite's misappropriation of NetCE's trade secrets through its use and exploitation of the confidential and proprietary information NetCE had provided under the NDA (Claim Six.)  When the settlement between NetCE and Elite was agreed, May 14, 2018, two of NetCE's claims against Elite remained: the copyright infringement claim and the misappropriation of trade secrets claim.  It is reasonable to assume, therefore, that the Elite settlement related to the damages that NetCE incurred as a result of Elite's copyright infringement and also its misappropriation of trade secrets.

There are no grounds for this Court to assess how much, if anything, Elite paid to NetCE to compensate NetCE for the injury NetCE suffered as a result of Elite's misappropriation of its trade secrets and no grounds to determine how much, if anything, Elite may have paid with respect to the copyright infringement injury.[3]  The Confidential Settlement Agreement and Release does not disclose how the settlement amount was derived.

In the absence of such evidence, it would be wrong for the Court to guess at why Elite might have agreed to the settlement amount.  Because NetCE chose to settle the claims against Elite and go to trial to recover its copyright infringement damages against Dr. Jouria alone, this Court has no basis upon which to determine if the sum NetCE received by way of the settlement and the sum NetCE was

---

[3] Nor are there grounds for this Court to assess the impact of a variety of other variables on the value of the settlement reached between NetCE and Elite, including without limitation NetCE's desire to avoid the disruption of its day-to-day business operations which would have been caused by calling 3-4 additional fact witnesses to the claims against Elite, NetCE's desire to eliminate Elite's damages rebuttal expert from the trial, Elite's desire to end the litigation which was delaying its consummation of unrelated business transactions, etc.

awarded in its judgment against Dr. Jouria are compensation for the <u>same injury</u>. The Court cannot therefore apply the "one satisfaction rule" in this instance.[4]

Dr. Jouria may argue that because Elite was also facing a potential copyright infringement claim, it can be assumed that at least some part of the settlement amount it paid was meant by Elite to compensate NetCE for the injury caused by the copyright infringement. But NetCE could argue, <u>with equal force</u>, that because Elite's exposure for the trade secret misappropriation claim involved far greater compensatory damages, punitive damages, and attorneys' fees, there is every reason to assume that Elite chose the settlement amount based on the misappropriation claim only, or alternatively, that Elite was simply settling to avoid the expense of trial. Although NetCE believes, of course, that its argument should prevail, one must concede that <u>both</u> contentions are merely speculation.

This Court should not speculate. Given the trade secret misappropriation claim and Elite's exposure for punitive damages and attorneys' fees, this Court cannot determine if and to what extent the settlement covered the same injury as the judgment.

---

[4] As this Court is aware, there is a principle applicable to actions under Florida state law providing that if a settlement recovery is not apportioned between (a) claims for which co-defendants are jointly and severally liable with the co-defendant and (b) claims which are only asserted against the settling defendant, the entire amount of the undifferentiated recovery is allowable as a set-off. *Dionese v. City of West Palm Beach*, 500 So. 2d 1347 (1987). Every instance in which courts have properly applied this principle involve a situation where the settlement and the judgment concern the <u>same injury</u>. For instance, in *Addison Construction Corp. v. Vecellio*, 240 So. 3d 757 (2018), the settlements and the judgments all related to the same injury, the plaintiff's property damage, despite there being different causes of action alleged against different defendants. In *Cornerstone SMR, Inc. v. Bank of America*, 163 So.3d 565 (2015), the claims against the defendants, although based on different causes of action, involved the same injury to the plaintiff -- financial loss caused by an embezzlement. *Dionese* involved 2 plaintiffs asserting the same claims for personal injury arising from a single accident against a settling defendant and judgment debtor; to do justice, the court held that the judgment debtor was entitled to offset entire combined settlement with other responsible party against the entire combined judgment. Accordingly, these cases, although not directly applicable to this motion, are consistent with the federal "one-satisfaction rule." It should be noted that, under Florida law, where the settlement agreement identifies the portion allocable to the same injury as compensated by the judgment, only that portion should be set off against the judgment. *Escadote I Corp. v. Ocean Three Limited Partnership*, 211 So.3d 1059 (2016).

Not only is it impossible to determine whether <u>any part</u> of Elite's settlement payment was intended to compensate NetCE for its copyright infringement, it is also unclear that the jury intended its verdict to be interpreted so that the judgment against Dr. Jouria extended also to injuries caused by Elite's copyright infringement, and therefore should be offset by any settlement paid by Elite.

While we do not and cannot know the nature of the jury's deliberations, in its verdict the jury was quite specific that its judgment was awarded <u>against Dr. Jouria alone</u>.[5]  The jury verdict form, which Dr. Jouria proposed and, over NetCE's objection, was accepted by the Court, did not ask the jury to assess the extent of NetCE's overall injury from the copyright infringement.  Part of that verdict form, question 5, was addressed to Dr. Jouria's liability for breach of contract; and part, question 9, to his liability for copyright infringement.  Question 9 was as follows:

> 9. What is the total amount of damages caused by Dr. Jouria's copyright infringement? Do not include any damages here that you have already awarded in question 5, if any.
>
> $ 2,000,000

The jury received an instruction regarding joint and several liability and evidence about Elite's conduct, but there is no basis for this Court or anyone outside the jury room, to conclude that its answer to question 9 should be interpreted as a finding that the $2 million awarded covered the damages caused by Dr. Jouria and Elite jointly—that is not what the answer says.  As question 9 was written and presented to the jury, it asked the jury only to determine how much damage Dr. Jouria's copyright infringement caused NetCE.  This Court should interpret the verdict as written.

---

[5] And this is not unexpected, as NetCE's claim for copyright infringement against Dr. Jouria—which is based on Dr. Jouria's sale of five medical courses to Elite—*is quite distinct from* its claim of copyright infringement against Elite (which was based on Elite's publication of those five medical courses).

6

Attempting to second-guess the jury is not a proper function for this Court in determining a Rule 60(b)(5) motion. As the moving party, Dr. Jouria effectively carries the burden to show that the plain language of the jury's answer to question 9 should be disregarded—or at least manipulated to comply with his interpretation. That is not justifiable in this instance. To qualify for relief under Rule 60(b)(5), Dr. Jouria must establish that "a significant change of circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992).

The application of Rule 60(b)(5) requires this Court conduct a balancing test, weighing the justice of the situation against the requirement for the Court to adhere to and respect "the sanctity of final judgments." *See*, *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988). In this case, there are no proper grounds to upset the sanctity of the jury's finding, in question 9 of the verdict form, that "the total amount of damages caused by Dr. Jouria's copyright infringement" is "$2,000,000."

Dr. Jouria should pay NetCE the full amount of the damages the jury expressly found him liable to pay. Nowhere in his motion does Dr. Jouria even attempt to identify how much of the settlement should be applied to the judgment. This is because there is no basis to determine that amount. The motion should be denied.

> **B.** **Dr. Jouria is Not Entitled to Relief Under Rules 50 or 59**
>
> 1. The Legal Standard

The balance of Dr. Jouria's motion (ECF No. 364, pp. 7-11) requests various relief under Rule 50(b) and Rule 59(e). In applying Rules 50 and 59 motion, this Courts should consider all the evidence and draw all reasonable inferences from the evidence in the light most favorable to the non-movant. *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997).

With respect to Dr. Jouria's request for a new trial, this Court should only grant such a request if it believes the jury verdict was contrary to the great weight of the evidence. *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). The Court may not determine the credibility of witnesses, and it may not substitute its choice for that of the jury when conflicting evidence exists. *Rixey v. W. Paces Ferry Hosp., Inc.*, 916 F.2d 608, 611 (11th Cir. 1990). A motion for a new trial should be granted on evidentiary grounds only when, at a minimum, "the verdict is against the great— not merely the greater—weight of the evidence." *Id*. (internal quotations omitted).

Dr. Jouria initially raised these arguments in his *ore tenus* motion for judgment as a matter of law at the close of NetCE's case. The Court denied this oral motion, finding that NetCE submitted more than sufficient evidence to allow its claims to go to the jury. This motion offers nothing new.

2.    The Motions Should be Denied

(a)    There is Significant Evidence to Support The Award of Copyright Damages

Dr. Jouria misunderstands the damage testimony. His argument that there is no evidence of copyright damages is made on two grounds: First, Dr. Jouria claims that Ms. Campbell could not identify by name an individual customer that did not buy NetCE's catalog because that customer instead bought Elite's course, DE 364, p. 7-8[6]; second, Dr. Jouria claims that Mr. Pampinella, NetCE's damages expert, "testified on cross-examination that without proof of lost sales, there would be no basis to claim lost profits." Neither ground provides a valid reason for modifying the jury's award. Dr. Jouria already argued this theory to the jury, which found against him.

At trial, Dr. Jouria elicited testimony from Ms. Campbell regarding the identification of specific customers. She agreed she could not identify anyone by name. Dr. Jouria also posed this

---

[6] Dr. Jouria made this same argument in *three separate* pre-trial motions—Motion for Summary Judgment, Daubert Motion, and Motion in Limine—all denied by this Court.

8

same question to Mr. Pampinella, who also agreed he could not identify anyone by name. However, as Mr. Pampinella explained, there was no reason to do so. As he explained, damages are not determined by taking broad surveys of people who may or may not have purchased a NetCE product that never, in fact, existed. Damages in this circumstance may be determined by use of damages models. So Mr. Pampinella created a damages model, based upon actual sales of other Jouria-written articles to actual customers.

The jury found that Pampinella's damages model was credible and awarded the judgment against Dr. Jouria. There is no basis to overturn the jury's finding as unreasonable.

(b)     The Court's Construction of "Articles" Does Not Preclude a Finding of Breach

Dr. Jouria argues for a new trial as to the jury's breach of contract finding based on a contention, raised in this motion for the first time, that the Court's interpretation of the term "Articles," as used in the jury instructions, warrants a new trial.

Dr. Jouria failed to timely or properly object to the jury instructions. Rule 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto *before the jury retires to consider its verdict* stating distinctly the matter objected to and the grounds of the objection." (emphasis added). By not raising his objections on the record at the appropriate time, Dr. Jouria has waived his right to seek a new trial on that ground.

Dr. Jouria's objection with respect to the instructions is simply too late. *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 3232274, at *30 (S.D. Fla. Oct. 31, 2007) ("The Eleventh Circuit has interpreted Rule 51 strictly, requiring a party to clearly object to a jury instruction or jury verdict form prior to jury deliberations…"). There was no timely objection and a review of his claimed "errors" reveals that the jury was given accurate and adequate guidance and a new trial (or *remittur*) is not warranted.

9

The parties and this Court devoted significant time to the jury instructions. The instruction ultimately used, incorporated in large part Dr. Jouria's own proposed instructions, *included Dr. Jouria's interpretation of "Articles."* At no point until now has Dr. Jouria argued that the interpretation precluded a finding of contract breach.

A party seeking a new trial based on defective jury instructions has to meet a high standard. *Bateman v. Mnemonics, Inc*., 79 F.3d 1532, 1543 (11th Cir.1996) ("So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions."); *United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995) (the issue is "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." (internal citation omitted)); *see also KMS Rest. Corp. v. Wendy's Int'l, Inc*., 194 Fed.Appx 591, 601 (11th Cir. 2006) ("Jury instructions must be put in context; [a trial court should] consider the allegations of the complaint, the evidence presented, and the arguments of counsel when determining whether the jury understood the issues or was misled"). In this case, Dr. Jouria fails to prove that the Court's instructions did not fairly and adequately present the issues in the case without confusing or misleading the jury.

In any event, Dr. Jouria's argument is flat wrong. Simply because the Court construed "Articles" as "only the medical research papers that Dr. Jouria wrote for NetCE," does not mean that Dr. Jouria did not breach his contracts. The Court's construction does not mean superfluous changes to the medical research papers Dr. Jouria wrote for NetCE bars a finding of breach. Given the introduced evidence that he sold NetCE's copyrighted works to Elite, and that the contracts prevented Dr. Jouria from reselling <u>any part</u> of the Articles, the jury correctly concluded he breached the contracts. There is no inconsistency in that finding.

Dr. Jouria's alternative argument for *remittitur* fares no better. The standard for *remittitur* requires that "a damage award must endure unless it is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Taber Partners I v. Insurance Co. of North America, Inc.*, 917 F. Supp. 112, 119 (D.P.R. 1996)(citations and internal quotations omitted). An award of $1 million for breach of contract damages cannot be considered "grossly excessive" or "shocking to the conscience", especially where the damages sought were so much higher.

The award is well-supported by the evidence adduced at trial. Three witnesses (Sarah Campbell, Julie Goodwin, and James Pampinella) testified regarding NetCE's lost profits, company goodwill, and ability to be first to market in a highly profitable emerging market for pharmacology continuing education content. NetCE presented testimony regarding customer confusion and that NetCE was unable to compete as effectively in the pharmacology marketplace as a result of Dr. Jouria's misconduct. The jury was entitled to, and did, believe NetCE's extensive testimony that, after many years of being a market leader in such highly profitable markets, NetCE was damaged by Dr. Jouria's breach of contracts.

(c)     A Further Stay Should Not Be Allowed Unless Appropriate Security is Posted

NetCE now has the right to execute on its judgment. By the plain terms of Rule 62(a), the automatic 14-day stay expired on June 18, 2018. Despite this, Dr. Jouria makes a "motion" (ECF No. 364, p. 11) to "continue the automatic stay" pending resolution of the present motion.

Dr. Jouria's argument ignores the requirements of Rule 62(b), which governs the present period when a Rule 59 motion is pending, and also Rule 62(d), which governs the period once a notice of appeal is filed. The Court may stay execution of a judgment only during the present period "on appropriate terms for the opposing party's security." Fed. R. Civ. P. 62(b). That should mean that Dr.

Jouria posts a bond in the amount of $3 million now in order to avoid execution of the judgment against him. Dr. Jouria suggests that such a bond would be prejudicial to him, but offers no alternative to the posting of a bond to secure the judgment. NetCE is entitled to such security.

In order to obtain a stay a party should post a bond for the full amount of the judgment. *Advanced Estimating System, Inc. v. Riney*, 171 F.R.D. 327, 328 (S.D. Fla. 1997) (court rejected defendant's proposal to substitute a copyright as alternative security to a full bond), quoting *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189 (5th Cir. 1979). While these cases involved the posting of security pending appeal under Rule 62(d), we submit that the same principles should apply under Rule 62(b). The period under Rule 62(b) will typically be a shorter period than the period under Rule 62(d).

Dr. Jouria must "objectively demonstrate a present financial ability to facilely respond to a money judgment and present to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal." *Advancing Estimating*, 171 F.R.D at 328; *Poplar Grove*, 600 F.2d at 1191. Anything less than a full security *supersedeas* bond should only be allowed under "extraordinary circumstances." 171 F.R.D at 328. If this Court were to decide to allow Dr. Jouria to post security in a lesser or substituted amount, it should include "an appropriate restraint on the judgment debtor's financial dealings." *Poplar Grove*, 600 F.2d at 1191.

Dr. Jouria has failed to come close to meeting these standards for a lesser bond. According to his trial testimony, he is employed as an emergency room doctor in Indiana. There is no showing that he cannot afford to pay for a full bond. In order to be eligible to post security for a lesser amount, Dr. Jouria must demonstrate and provide a financially secure plan to maintain his ability to pay the judgment during any appeal. As the Court is aware, Dr. Jouria has three times previously filed for bankruptcy. He cannot meet the required standard.

The Court should reject this request to impose a stay of judgment unless Dr. Jouria posts a full bond for the total amount of the judgment.

## CONCLUSION

For the foregoing reasons, NetCE respectfully requests this Court deny Dr. Jouria's consolidated post-trial motions.

Dated: July 2, 2018

Respectfully submitted,

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email: phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Blvd., 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954)525-1000
Facsimile: (954)463-2030

*/s/ John P. Kern*
John P. Kern, Esq. (pro hac vice)
Email: john.kern@hklaw.com
Daniel P. Kappes (pro hac vice)
Email: daniel.kappes@hklaw.com
David I. Holtzman (pro hac vice)
david.holtzman@hklaw.com
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415)743-6918
Facsimile: (415)743-6910
(Attorneys for CE RESOURCE, INC.
d/b/a CME RESOURCES and NetCE)

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I electronically filed the foregoing Document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing Document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Philip E. Rothschild*
Philip E. Rothschild

## SERVICE LIST

Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ.
915 S.E. 2nd Court
Ft. Lauderdale, Florida 33301
(Attorney for Plaintiff Dr. Jassin Jouria)
**[VIA ELECTRONIC MAIL SERVICE]**